# EXHIBIT "1"

*1208*

SEWAGE TREATMENT PLANT

AGREEMENT

BETWEEN

SAN JOSE AND SANTA CLARA

- - - - - -

FORM DATE:  MARCH 30, 1959

- - - - - -

I̲ N̲ D̲ E̲ X̲

|  | Pages |
|---|---|
| Preamble | 1 - 2 |
| I. DEFINITIONS: | 3 |
| A. Treatment Plant | 3 |
| B. Existing Treatment Plant | 3 |
| C. Future Capital Assets | 3 |
| D. Future Capital Costs | 3 |
| E. Operating Supplies and Materials | 4 |
| F. Operating Costs | 4 |
| G. Sewage | 4 |
| H. Sanitary Sewage | 4 |
| I. Industrial Wastes. | 5 |
| J. Outside Users | 5 |
| K. Fiscal Year | 5 |
| L. Assessed Value | 5 |
| M. "City's Average Assessed Valuation" | 5 |
| N. "Average Assessed Valuation of Both Cities" | 6 |
| II. PAYMENT BY SANTA CLARA FOR ITS PAST USE OF TREATMENT PLANT | 6 |
| III. MUTUAL OWNERSHIP, EXPANSION, MAINTENANCE, OPERATION AND USE OF TREATMENT PLANT; AND PURPOSE THEREOF | 7 |
| IV. SHARING OF COSTS OF EXISTING TREATMENT PLANT | 8 |
| A. Agreed Capital Costs of Existing Treatment Plant | 8 |
| 1. Agreed Total Capital Cost of Existing Treatment Plant | 8 |
| 2. Agreed Cost of Land in Existing Treatment Plant | 8 |
| 3. Agreed Cost of Depreciable Property in Existing Treatment Plant | 8 |
| B. Initial Sharing of "Agreed Total Capital Cost of Existing Treatment Plant" | 8 |
| 1. Santa Clara's Initial Contribution | 8 |
| 2. San Jose's Initial Contribution | 9 |
| C. Annual Adjustments in Sharing of "Agreed Total Capital Cost of Existing Treatment Plant" | 9 |
| 1. Agreed Cost of Depreciable Property in Existing Treatment Plant". | 9 |
| 2. Amount of Annual Adjustment | 10 |
| V SHARING OF FUTURE CAPITAL COSTS | 12 |
| A. Future Capital Costs Incurred in 1958-59 | 12 |
| B. Future Capital Costs Incurred After June 30, 1959 | 13 |
| C. Annual Adjustments in Sharing of Costs of "Special Future Capital Assets". | 14 |
| 1. Definition of "Special Future Capital Asset" | 14 |
| 2. Definition of "Land" | 15 |
| 3. Agreement for Annual Adjustments | 15 |
| (a) Amortization of Cost of Special Future Capital Asset, Excluding Cost of Land | 15 |
| (b) Determination of "Unamortized Cost of Special Future Capital Asset" | 15 |
| (c) Amount of Annual Adjustment | 16 |

I N D E X

|  |  | Pages |
|---|---|---|
| Preamble | | 1 - 2 |
| I. | DEFINITIONS: | 3 |
|  | A. Treatment Plant | 3 |
|  | B. Existing Treatment Plant | 3 |
|  | C. Future Capital Assets | 3 |
|  | D. Future Capital Costs | 3 |
|  | E. Operating Supplies and Materials | 4 |
|  | F. Operating Costs | 4 |
|  | G. Sewage | 4 |
|  | H. Sanitary Sewage | 4 |
|  | I. Industrial Wastes. | 5 |
|  | J. Outside Users | 5 |
|  | K. Fiscal Year | 5 |
|  | L. Assessed Value | 5 |
|  | M. "City's Average Assessed Valuation" | 5 |
|  | N. "Average Assessed Valuation of Both Cities" | 6 |
| II. | PAYMENT BY SANTA CLARA FOR ITS PAST USE OF TREATMENT PLANT | 6 |
| III. | MUTUAL OWNERSHIP, EXPANSION, MAINTENANCE, OPERATION AND USE OF TREATMENT PLANT; AND PURPOSE THEREOF | 7 |
| IV. | SHARING OF COSTS OF EXISTING TREATMENT PLANT | 8 |
|  | A. Agreed Capital Costs of Existing Treatment Plant | 8 |
|  |    1. Agreed Total Capital Cost of Existing Treatment Plant | 8 |
|  |    2. Agreed Cost of Land in Existing Treatment Plant | 8 |
|  |    3. Agreed Cost of Depreciable Property in Existing Treatment Plant | 8 |
|  | B. Initial Sharing of "Agreed Total Capital Cost of Existing Treatment Plant" | 8 |
|  |    1. Santa Clara's Initial Contribution | 8 |
|  |    2. San Jose's Initial Contribution | 9 |
|  | C. Annual Adjustments in Sharing of "Agreed Total Capital Cost of Existing Treatment Plant" | 9 |
|  |    1. Agreed Cost of Depreciable Property in Existing Treatment Plant". | 9 |
|  |    2. Amount of Annual Adjustment | 10 |
| V | SHARING OF FUTURE CAPITAL COSTS | 12 |
|  | A. Future Capital Costs Incurred in 1958-59 | 12 |
|  | B. Future Capital Costs Incurred After June 30, 1959 | 13 |
|  | C. Annual Adjustments in Sharing of Costs of "Special Future Capital Assets". | 14 |
|  |    1. Definition of "Special Future Capital Asset" | 14 |
|  |    2. Definition of "Land" | 15 |
|  |    3. Agreement for Annual Adjustments | 15 |
|  |       (a) Amortization of Cost of Special Future Capital Asset, Excluding Cost of Land | 15 |
|  |       (b) Determination of "Unamortized Cost of Special Future Capital Asset" | 15 |
|  |       (c) Amount of Annual Adjustment | 16 |

I N D E X
(Continued)

|  |  | Pages |
|---|---|---|
| VI. | SHARING OF OPERATING COSTS | 19 |
|  | A. Operating Costs Incurred in 1958-59 | 19 |
|  | B. Operating Costs Incurred After June 30, 1959 | 20 |
| VII | EXTENT OF OWNERSHIP INTERESTS OF SAN JOSE AND SANTA CLARA, RESPECTIVELY | 22 |
|  | A. Ownership in Each Item of Property Comprising "Existing Treatment Plant" | 22 |
|  |    1. San Jose's Interest | 22 |
|  |    2. Santa Clara's Interest | 22 |
|  | B. Ownership in Each Item of "Future Capital Assets". | 23 |
|  | C. Ownership in Each Item of "Operating Supplies and Materials" | 23 |
|  | D. Division of and Ownership of Treatment Plant Income | 24 |
|  | E. Division of and Ownership of Proceeds from Sales to Any Third Party of any Treatment Plant Property Other Than the Products or By-products of Sewage Treatment | 25 |
|  | F. Ownership in Other Property | 26 |
|  | G. Monies Collected by Each City Within its Borders | 26 |
| VIII. | ADMINISTERING AGENCY | 27 |
|  | A. San Jose to be Administering Agency | 27 |
|  | B. Powers and Duties of Administering Agency, Scope and Exercise | 27 |
|  | C. Manner of Exercising Powers or Performing Duties | 28 |
|  | D. Expenses of Administering Agency | 28 |
| IX | SAN JOSE-SANTA CLARA TREATMENT PLANT ADVISORY COMMITTEE | 30 |
|  | A. Creation; Membership | 30 |
|  | B. Alternate Members | 30 |
|  | C. Chairman | 31 |
|  | D. Secretary | 31 |
|  | E. Meetings | 31 |
|  | F. Procedure | 31 |
|  | G. Powers & Duties | 32 |
|  | H. Expenses | 33 |

INDEX
(Continued)

| | | Pages |
|---|---|---|
| X. | BUDGETARY AND OTHER FISCAL PROVISIONS | 34 |
| A. | Budget: Preparation & Submission ----------- | 34 |
| B. | Budget: Contents -------------------------- | 34 |
| C. | Budget: Adoption -------------------------- | 35 |
| D. | Budget: Time of Adoption ------------------ | 35 |
| E. | Budget: Failure to Agree on Budget; Adoption by San Jose Only ----------- | 35 |
| | 1. Operating Costs ----------------------- | 36 |
| | 2. Future Capital Assets ----------------- | 36 |
| F. | Budget: Failure to Adopt Within Time -------- | 37 |
| G. | Expenditures ------------------------------ | 37 |
| H. | Capital Expenditures Exceeding $500,000 ------- | 38 |
| I. | Supplemental Agreements --------------------- | 38 |
| XI. | MISCELLANEOUS PROVISIONS -------------------- | 40 |
| A. | Amount of Sewage from Each City -------------- | 40 |
| B. | Outside Users ----------------------------- | 40 |
| C. | Restrictions and Regulations on the Nature, Kind, Strength and Type of Sewage Entering the Treatment Plant ----------- | 41 |
| D. | Liability for Public Liability for Damages --------------------------------- | 42 |
| E. | Delayed Payments --------------------------- | 43 |
| F. | Calculation of Percentages ------------------ | 43 |
| XII. | DURATION AND TERMINATION OF AGREEMENT; BREACH OF AGREEMENT; DISPOSITION OF ASSETS UPON TERMINATION OF AGREEMENT -------------------- | 44 |
| A. | Duration ---------------------------------- | 44 |
| B. | Extension, Renewal or Amendment of Agreement --------------------------------- | 44 |
| C. | Breach of Agreement ----------------------- | 44 |
| D. | Sales of Assets on Termination --------------- | 45 |
| | 1. Determination of Value of Each Item of Property, and of Each City's Ownership Interest Therein -------- | 45 |
| | 2. San Jose's Option to Purchase ------------ | 45 |
| | 3. Santa Clara's Option to Purchase ---------- | 46 |
| | 4. Place & Manner of Payment of Price, if Option is Exercised by Either City; Documents Conveying Title ---------- | 46 |
| | 5. Sale to Third Parties --------------------- | 47 |
| | 6. Operation of Plant Pending Sale of Assets ------------------------------ | 47 |

AGREEMENT BETWEEN SAN JOSE AND
SANTA CLARA RESPECTING SEWAGE
TREATMENT PLANT

    The following Agreement is made and entered into this
_6_ day of ____*may*____, 19 *59*, by and between the
CITY OF SAN JOSE, a municipal corporation, hereinafter referred
to as "San Jose", and the CITY OF SANTA CLARA, a municipal cor-
poration, hereinafter referred to as "Santa Clara";

W I T N E S S E T H:

    WHEREAS, both parties to this Agreement are municipal
corporations, each having the power to own, construct, maintain
and operate sewage treatment and disposal plants and works; and

    WHEREAS, pursuant to Title I, Division 7, Chapter Five
of the Government Code of the State of California, commonly known
as the Joint Exercise of Powers Act, two or more public agencies
by agreement may jointly exercise any power common to the contract-
ing parties; and

    WHEREAS, pursuant to Title V, Division 2, Part 2, Chap-
ter One, Article 5 of the Government Code of the State of Cali-
fornia, (Sections 55110 through 55115) a local agency, upon terms
prescribed by its legislative body, may enter into an agreement
with other local agencies for the joint construction, ownership
or use of sewage treatment plants and other sewage disposal works,
or for the purchase or sale of any percentage of the capacity in
any such plant or works; and

    WHEREAS, the City of San Jose has an existing treatment
plant, which said plant presently has an excess of capacity for
the treatment of sewage over and above the present needs of San
Jose; and

    WHEREAS, the City of Santa Clara and various persons,
firms, corporations, sanitation districts, sanitary districts and

- 1 -

other cities, all situate outside the City of San Jose, (such
persons, firms, corporations, districts and other cities being
hereinafter referred to as "outside users") are discharging sew-
age into said existing treatment plant; and

WHEREAS, the State Water Pollution Control Board of
the State of California has suggested to the City of Santa Clara
that Santa Clara attempt to obtain permanent rights for treat-
ment of sewage of Santa Clara in the said existing treatment
plant; and

WHEREAS, Santa Clara has made application to said State
Water Pollution Control Board for said purpose; and

WHEREAS, it will be to the mutual benefit of San Jose
and Santa Clara to enter into an agreement whereby San Jose and
Santa Clara agree to mutually own, operate, maintain and use a
treatment plant, which said agreement shall take into consideration
the existing rights, if any, of various other persons, firms, cor-
porations, districts, cities, or others, in the existing treatment
plant or in any future capital assets, or its or their use, or in
any sewer lines or their use; and

WHEREAS, Santa Clara has funds presently available for
the above purpose; and

WHEREAS, of the total amount of sewage presently being
discharged into said existing treatment plant by San Jose and by
Santa Clara (excluding the sewage discharged into the treatment
plant by the outside users other than Santa Clara), San Jose is
discharging approximately seventy-nine and six hundred five
thousandths per cent (79.605%), and Santa Clara is discharging
approximately twenty and three hundred ninety-five thousandths
per cent (20.395%); and

WHEREAS, of the total present assessed valuation of
both cities, San Jose has approximately 79.605% and Santa Clara
has approximately 20.395%;

NOW, THEREFORE, for and in consideration of the mutual
covenants, promises and undertakings, and the obligations, agree-
ments and other provisions herein contained, made or assumed by
the parties hereto, the parties hereto do hereby agree as follows:

I

DEFINITIONS

As used in and for the pruposes of this agreement, the following terms and words shall be deemed to have the following meanings:

A.  Treatment Plant.  The words "Treatment plant" mean and shall include all of the following property:

1. All of the "existing treatment plant";

2. All "future capital assets";

3. All other property acquired, after date of this agreement, by San Jose as administering agency of this agreement.

B.  Existing Treatment Plant.  The words "existing treatment plant" mean and include all the real property described in Exhibit A, entitled "Existing Treatment Plant", said exhibit being hereto attached and being hereby incorporated herein by reference the same as if fully set forth herein verbatim, and all the personal property described in that certain document entitled, "San Jose Sewage Treatment Plant Inventory of Equipment and Materials", dated October 1, 1958, on file in the office of the City Clerk of the City of San Jose, said document being hereby incorporated herein by reference the same as if fully set forth herein verbatim.

C.  Future Capital Assets.  The words "future capital assets" mean and include all land, interests in land, property rights, buildings, structures, improvements, equipment, machinery, vehicles, furniture, fixtures, devices, arrangements of all or any of such property, and all other property, acquired or made or ordered made by San Jose, as administering agency of this agreement, after date of this agreement, excepting "operating supplies and materials"; together with all similar treatment plant assets acquired, made or ordered made by San Jose from and after July 1, 1958 and prior to date of this agreement.

D.  Future Capital Costs.  The words "future capital costs" mean and include all costs and expenses incurred by San Jose, as administering agency of this agreement, for any and all "future capital assets", including but not limited to the following:

2

1. The prices paid for "future capital assets";

2. All other costs and expenses incurred in connection with the acquisition, construction or making of any "future capital assets", including but not limited to the cost and expense of appraisal services, negotiation services, title insurance, revenue stamps, escrow and other closing costs, legal services, court costs, engineering or other technical or professional services, surveys, studies, reports.

E.  Operating Supplies and Materials.  The words "operating supplies and materials" mean and include any and all supplies and materials and other property used in the administration, operation, care, repair and maintenance of the treatment plant, including but not limited to office supplies, furniture, laboratory supplies, tools, gasoline, oil, chlorine or other gas, chemicals and other such supplies and materials.

F.  Operating Costs.  The words "operating costs" mean and include any and all costs and expenses incurred by San Jose, as administering agency of this agreement, for the administration, operation, maintenance and repair of the treatment plant, and for administration or execution of this agreement, including but not limited to the cost of "operating supplies and materials", but excluding "future capital costs"; together with all similar treatment plant operating costs and expenses incurred by San Jose from and after July 1, 1958 and prior to date of this agreement. In particular, all costs and expenses incurred by San Jose before and after the date of this agreement, pursuant to that certain agreement made and entered into on the 5th day of May, 1958, between San Jose and Brown and Caldwell, Civil Engineers, which provides for studies and reports with respect to reasonable and practicable methods of secondary treatment of sewage entering the treatment plant, shall be deemed to be included in "operating costs".

G.  Sewage.  The word "sewage" means and includes both sanitary sewage and industrial wastes.

H.  Sanitary Sewage.  The words "sanitary sewage" mean and include all water-carried wastes from residences, business buildings or establishments, institutions, industrial or other establishments, excluding storm waters and excluding industrial wastes.

I.  Industrial Wastes.  The words "industrial wastes" mean and
include the water-carried wastes of producing, manufacturing and
processing operations of every kind and nature.

J.  Outside Users.  The words "outside users" mean and include
all persons, firms, corporations, sanitation districts, sanitary
districts and cities, other than San Jose and Santa Clara, who
by virtue of agreements, existing as of the date of this agree-
ment, between San Jose or Santa Clara and all or any of such per-
sons, have any right, privilege or license to discharge any sewage
into the treatment plant or sewer lines leading thereto, or any
right or privilege to take sludge or any by-products from the
treatment plant, or who, with the mutual consent of San Jose and
Santa Clara, are, after date of this agreement, given any right,
privilege or license to discharge any sewage into the treatment
plant or sewer lines leading thereto.

K.  Fiscal Year.  The words "fiscal year" mean and include a
twelve-month period beginning on July first of a calendar year
to and including June thirtieth of the succeeding calendar year.

L.  Assessed Value.  The words "assessed value" mean and include
the value of property for a given fiscal year as shown on the
last equalized assessment roll of the County of Santa Clara,
California, for such fiscal year.

M.  "City's Average Assessed Valuation".  The words "city's aver-
age assessed valuation" mean the sum total of the assessed values
of all property in a given city for each of a given number of
years, divided by the given number of years for which such aver-
age assessed valuation is being computed.  For example, a city's
average assessed valuation for a two-year period, where the as-
sessed value of property in such city was $1,000,000 in the first
year, and $2,000,000 in the second year, would be $1,000,000 plus
$2,000,000 divided by two; that is, $1,500,000.

N. "Average Assessed Valuation of Both Cities".    The words "average assessed valuation of both cities" mean the San Jose's average assessed valuation for a given number of years, plus Santa Clara's average assessed valuation for the same given number of years, divided by two.


## II

### PAYMENT BY SANTA CLARA FOR ITS PAST USE OF TREATMENT PLANT

Santa Clara hereby agrees to pay to San Jose, and San Jose hereby agrees to accept from Santa Clara, as and for the total amount due and owing by Santa Clara to San Jose for Santa Clara's use of the "existing treatment plant" prior to date of this agreement, the sum of Thirty-eight Thousand Four Hundred Four and 11/100 Dollars ($38,404.11) lawful money of the United States, said payment to be made at the office of the City Treasurer of the City of San Jose concurrently with the execution of this agreement.    Said payment shall not be deemed to include such monies as may be due and owing by Santa Clara to San Jose for use of any sewer lines of San Jose other than those sewer lines which may be included in the definitions of the treatment plant.

III

MUTUAL OWNERSHIP, EXPANSION, MAINTENANCE,
OPERATION AND USE OF TREATMENT PLANT: AND
PURPOSE THEREOF

Pursuant to the provisions of Title 1, Division 7, Chapter 5 of the Government Code of the State of California, and pursuant to the provisions of Title 5, Division 2, Part 2, Chapter 1, Article 5 of the Government Code of the State of California, the parties hereto do hereby agree to mutually own, operate, maintain and use the treatment plant, defined and described in Section I A of this agreement, and to do all things reasonably necessary to provide for its expansion, replacement, improvement, operation, maintenance and use, in accordance with and subject to the terms, conditions and provisions of this agreement, for the purpose of treating adequately all sewage of San Jose and Santa Clara and of any and all "outside users" and to provide for the conveyance and disposal of effluent into San Francisco Bay, and for other legal disposal of such sewage, its by-products and effluent, without pollution of the Bay or other waters.

IV

SHARING OF COSTS OF
EXISTING TREATMENT PLANT

A. Agreed Capital Costs of Existing Treatment Plant.

1. Agreed Total Capital Cost of Existing Treatment
Plant. It is mutually agreed that, for purposes of this agree-
ment, the total capital cost heretofore incurred for the "Exist-
ing Treatment Plant" is and shall be deemed to be Four Million,
One Hundred Twenty-five Thousand Five Hundred Forty Dollars
($4,125,540.00); and that said total capital cost shall herein-
after be referred to as "Agreed Total Capital Cost of Existing
Treatment Plant".

2. Agreed Cost of Land in Existing Treatment Plant.
It is further mutually agreed that Three Hundred Thirty-nine
Thousand One Hundred Seventy-two Dollars ($339,172.00) of said
"Agreed Total Capital Cost of Existing Treatment Plant" is and
shall be deemed to be the cost heretofore incurred for land, ex-
cluding improvements thereto; and that said cost of land, exclud-
ing improvements, shall hereinafter be referred to as "Agreed
Cost of Land in Existing Treatment Plant".

3. Agreed Cost of Depreciable Property in Existing
Treatment Plant. It is further mutually agreed that Three Mil-
lion Seven Hundred Eighty-six Thousand Three Hundred Sixty-
eight Dollars ($3,786,368.00) of said "Agreed Total Capital Cost
of Existing Treatment Plant" is and shall be deemed to be the
cost heretofore incurred for improvements to land and for all
other property in the Existing Treatment Plant other than land;
and that said cost of said improvements to land and property
other than land shall hereinafter be referred to as "Agreed
Cost of Depreciable Property in Existing Treatment Plant".

B. Initial Sharing of "Agreed Total Capital Cost of Existing
Treatment Plant".

1. Santa Clara's Initial Contribution. It is mutually
agreed that, upon and concurrently with the execution of this agree-
ment, Santa Clara shall pay to San Jose, as its initial share of

- 8 -

the "Agreed Total Capital Cost of Existing Treatment Plant", a
sum of money equal to 20.395% of said agreed total capital cost,
to-wit; the sum of Eight Hundred Forty-one Thousand, Four Hundred
Three and 88/100's Dollars ($841,403.88).

    2. <u>San Jose's Initial Contribution</u>.  It is understood
and agreed that San Jose has heretofore paid the entire amount of
said "Agreed Total Capital Cost of Existing Treatment Plant"; and
that, upon receipt by San Jose from Santa Clara of the $841,403.88
which Santa Clara is to pay as its initial share of said agreed
total capital costs, San Jose shall be deemed to have paid, as
its initial share of the "Agreed Total Capital Cost of Existing
Treatment Plant", a sum of money equal to 79.605% of said agreed
total capital cost, to-wit; the sum of Three Million Two Hundred
Eighty-four Thousand One Hundred Thirty-six and 12/100's Dollars
($3,284,136.12).

C. <u>Annual Adjustments in Sharing of "Agreed Total Capital Cost
of Existing Treatment Plant</u>." It is mutually agreed that annually,
in each of the nineteen (19) fiscal years from July 1, 1959 to
June 30, 1978, and no longer, adjustments shall be made in the
share of the "Agreed Total Capital Cost of Existing Treatment
Plant" which is to be borne by San Jose and Santa Clara, re-
spectively.  The amount of each such annual adjustment shall be
determined as follows:

    1. <u>"Agreed Cost of Depreciable Property in Existing
Treatment Plant"</u>.  It is mutually agreed that the "Agreed Cost
of Depreciable Property in Existing Treatment Plant", here-
inabove defined in paragraph A3 of this Section IV, shall be
amortized equally over the twenty (20) fiscal years beginning
July 1, 1958 and ending June 30, 1978, inclusive, as follows:
One twentieth (1/20) of said cost shall be amortized and written
off for each of the fiscal years within said twenty-(20)-year
period; that is, One Hundred Eighty-nine Thousand Three Hundred

Eighteen and 40/100's Dollars ($189,318.40) of said cost shall be amortized and written off as of the end of each of said twenty fiscal years. As of July 1 of any given year in said twenty fiscal years, the unamortized portion of said "Agreed Cost of Depreciable Property in Existing Treatment Plant", said unamortized cost being hereinafter referred to as the "Unamortized Cost of Depreciable Property in Existing Treatment Plant", shall be the amount of annual amortization ($189,318.40) multiplied by the number of fiscal years between July 1 of said given year to June 30, 1978, as illustrated by the following formula:

$$\$189,318.40 \quad X \quad \begin{matrix} \text{Number of Fiscal} \\ \text{Years from July 1} \\ \text{of Given Fiscal} \\ \text{Year to June 30,} \\ \text{1978.} \end{matrix} \quad = \quad \begin{matrix} \text{Unamortized Cost} \\ \text{of Depreciable} \\ \text{Property in Ex-} \\ \text{isting Treatment} \\ \text{Plant as of July} \\ \text{first of Given} \\ \text{Year.} \end{matrix}$$

2. <u>Amount of Annual Adjustment</u>. Within six (6) months after the commencement of each of the nineteen (19) fiscal years beginning July 1, 1959 and ending June 30, 1978, San Jose or Santa Clara, as the case may be, shall pay to the other a sum of money the amount of which shall be determined by application of the following formulae. In determining the amount, if any, to be paid by San Jose, the term "City's Average Assessed Valuation" as used in said formulae shall mean San Jose's average assessed valuation; and in determining the amount, if any, to be paid by Santa Clara, the term "City's Average Assessed Valuation" as used in said formulae shall mean Santa Clara's average assessed valuation. The amount to be paid by each city, as an annual adjustment, shall be the amount, if any, by which the figure arrived at by application of the following Formula A should exceed the figure arrived at by application of the following Formula B, to-wit:

FORMULA A

City's Average Assessed Valuation for Fiscal Years from July 1, 1958 to June 30 of Current Fiscal Year within which Adjustment is to be Paid.

─────────────────────

Average Assessed Valuation of Both Cities for Fiscal Years from July 1, 1958 to June 30 of Current Year within which Adjustment is to be Paid.

X    "Unamortized Cost of Depreciable Property in Existing Treatment Plant" as of July 1 of Current Fiscal Year within which Adjustment is to be Paid.    +    Agreed Cost of Land in Existing Treatment Plant.

minus

FORMULA B

City's Average Assessed Valuation for Fiscal Years from July 1, 1958 to June 30 of the Fiscal Year Immediately Preceding the Current Fiscal Year within which Adjustment is to be Paid.

─────────────────────

Average Assessed Valuation of Both Cities for Fiscal Years from July 1, 1958 to June 30 of the Fiscal Year Preceding the Current Fiscal Year within which Adjustment is to be Paid.

X    "Unamortized Cost of Depreciable Property in Existing Treatment Plant as of July 1 of Current Fiscal Year within which Adjustment is to be Paid.    +    Agreed Cost of Land in Existing Treatment Plant.

Each annual adjustment hereinabove required to be paid by San Jose or Santa Clara may be paid by depositing the amount of such adjustment in the special fund, hereinafter provided for in Section V of this agreement, which is to be designated as the "San Jose-Santa Clara Treatment Plant Capital Fund", to the credit of the city entitled to such adjustment.

-11-

V

## SHARING OF FUTURE CAPITAL COSTS

The parties hereto mutually agree to share any and all future capital costs, as follows:

A. Future Capital Costs Incurred in 1958-1959.  Concurrently with the execution of this agreement, Santa Clara shall pay to San Jose as administering agency of this agreement the sum of Six Thousand Three Hundred Twenty-three and 47/100 Dollars ($6,323.47) as Santa Clara's estimated share of future capital asset costs incurred and to be incurred in the fiscal year 1958-1959.  At the same time, San Jose shall pay to itself, as said administering agency, the sum of Twenty-four Thousand Six Hundred Eighty-one Hundred and 53/100 Dollars ($24,681.53) less all sums expended by San Jose from and after July 1, 1958 and prior to date of this agreement for any future capital assets, as San Jose's estimated share of future capital costs incurred or to be incurred in said fiscal year.

All such money shall be deposited by San Jose, as said administering agency, in a special fund to be known as the "San Jose-Santa Clara Treatment Plant Capital Fund".  Santa Clara shall be credited with having paid $6,323.47 into said fund, and San Jose shall be credited with having paid $24,681.53 into said fund.  All expenditures made by San Jose for future capital assets from and after July 1, 1958 and before date of this agreement shall be charged to said fund, and all future payments for future capital assets shall be made from said fund.

Upon conclusion of the fiscal year 1958-59 and ascertainment of the total future capital costs incurred in said fiscal year, each party's share of such costs shall be determined as follows: Each City's share shall be that proportion of all such costs which the assessed value of all property in such city in such fiscal year bears to the assessed value of all property in both cities in said fiscal year.

Upon determination of each party's share of said costs for said year, each party shall pay to San Jose, as administering agency of this agreement, for payment into said special fund, the amount, if any, by which its share of said costs for said fiscal year exceeds the amount theretofore advanced by it as its estimated share of such costs for said year.  If a party's share of said costs is less than the amount theretofore advanced by it as its estimated share of

such costs, then such party shall be entitled to reimbursement from
or credit in said special fund for the amount by which its estimated
share of such costs, theretofore paid by it, exceeds its share of
such costs as calculated at the end of the year.

The amount advanced by each party as its estimated share
of said costs, plus such additional amount, if any, as is paid by
such party at the end of the year pursuant to the above provisions,
less the amount, if any, for which such party received reimburse-
ment or credit pursuant to the above provisions, shall be deemed
to be such party's contribution to "Future Capital Costs" for said
fiscal year, subject to adjustments hereinafter provided for.

B.  Future Capital Costs Incurred After June 30, 1959.  After the
beginning of each fiscal year, beginning with the fiscal year
1959-60, each party shall pay to San Jose, as the administering
agency of this agreement, that proportion of the total amount
budgeted for future capital costs for such fiscal year as the as-
sessed value of all property in such city for the preceding fiscal
year should bear to the assessed value of all property in both
said cities for the preceding fiscal year.  Fifty per cent (50%)
of the amount payable by each city shall be paid on or before the
20th day of August after the beginning of the fiscal year, and
the balance shall be paid on or before the 30th day of December after
the beginning of the fiscal year.  The payments thus made by each of
said parties is and shall be deemed to be advance payments of such
party's estimated share of said costs for said fiscal year.

All such money shall be deposited by San Jose, as said
administering agency, in the above mentioned "San Jose-Santa Clara
Treatment Plant Capital Fund"; and all payments for future capital
costs shall be made from said fund.

Upon conclusion of each of said fiscal years and upon
ascertainment of the total future capital costs incurred in such
fiscal year, each party's share of such costs for such year shall
be determined as follows:  Each city's share shall be that pro-
portion of all such costs incurred in such year which the assessed

-13-

value of all property in such city in such fiscal year should
bear to the assessed value of all property in both cities in
said fiscal year.

Upon determination of each party's share of said
costs for said year, each party shall pay to San Jose, as ad-
ministering agency of this agreement, for payment into said
special fund, the amount, if any, by which its share of said
costs for said fiscal year should exceed the amount thereto-
fore advanced by it as its estimated share of such costs for
such year.  If a party's share of said costs should be less
than the amount theretofore advanced by it as its estimated
share of such costs, then such party shall be entitled to re-
imbursement from or credit in said special fund for the amount
by which its estimated share of such costs, theretofore paid
by it, should exceed its share of such costs as calculated at
the end of such year.

The amount advanced by each party as its estimated
share of said costs for each fiscal year, plus such additional
amount, if any, as is paid by such party at the end of the year
pursuant to the above provisions, less the amount, if any, for
which such party received reimbursement or credit pursuant to
the above provisions, shall be deemed to be such party's contri-
bution to "Future Capital Costs" for such fiscal year, subject
to adjustments hereinafter provided for.

C.  Annual Adjustments in Sharing of Costs of "Special Future
Capital Assets".

1.  Definition of "Special Future Capital Asset".  It
is mutually agreed that a "Special Future Capital Asset", as said
term or words are used in this agreement, is and means any "fu-
ture capital asset" whose cost is not less than Two Hundred Fifty
Thousand Dollars ($250,000.00) and which, in addition, has an
estimated useful life expectancy, considering depreciation and
obsolescence, of not less than twenty (20) years.    Any item

- 14 -

of property whose cost is less than said minimum sum, or which
has an estimated useful life expectancy of less than twenty
(20) years. shall not be deemed to be a "Special Future Capital
Asset". The foregoing estimates shall be made by the admini-
strative agency and shall be deemed to be official and binding
upon both parties hereto.

2. Definition of "Land". It is understood and agreed
that a "Special Future Capital Asset" may consist of land, im-
provements to land, or other property included within the defini-
tion of "Special Future Capital Asset". It is mutually agreed
that the word "land" as used in this agreement shall mean land
without any existing or added improvements thereto.

3. Agreement for Annual Adjustments. It is mutually
agreed that annually, in each of the nineteen (19) fiscal years
immediately following the fiscal year within which acquisition
of a "Special Future Capital Asset" is completed, and no longer,
adjustments shall be made in the share of the cost of such "Special
Future Capital Asset" which is to be borne by San Jose and Santa
Clara, respectively, the amount of such adjustment to be deter-
mined as follows:

(a) Amortization of Cost of Special Future Capital
Asset, Excluding Cost of Land. It is mutually agreed that the
cost of each "Special Future Capital Asset", excluding the cost
of "land", shall be amortized equally over the twenty (20) fiscal
years immediately following the beginning of the fiscal year
within which the acquisition of such asset is completed; that is,
one twentieth (1/20) of the cost of such asset, excluding the
cost of land, shall be amortized and written off as of the end
of each of the fiscal years within said twenty-(20)-fiscal-year
period.

(b) Determination of "Unamortized Cost of Special Fu-
ture Capital Asset". It is mutually agreed that, as of July 1
of any given year within the twenty (20) fiscal years herein-
above specified in the immediately preceding sub-paragraph (a),

-15-

the unamortized cost of any special future capital asset shall be a sum of money equal to the following, to-wit:

(1) The unamortized cost of any "land", as of any given fiscal year, shall be the cost of such "land", or the estimated cost thereof where such "land" was purchased together with other property without a breakdown of the cost of all such property.

(2) The unamortized cost of any improvement to "land", or of any property other than land, as of any given fiscal year, shall be one twentieth (1/20) of the cost of such improvement or property other than land (or 1/2 of the estimated cost thereof where such property was purchased together with other property without a breakdown of the cost of all such property) multiplied by the number of fiscal years between July 1 of said given year to June 30 of the twentieth (20th) fiscal year following the beginning of the fiscal year within which acquisition of such asset is completed, as expressed by the following formula, to-wit:

$$\text{1/20 of Cost of Special Future Capital Asset.} \times \text{No. of Fiscal Years from July 1 of Given Fiscal Year to June 30 of 20th Fiscal Year following the beginning of the Fiscal Year within which Acquisition of Asset is Completed} = \text{Unamortized Cost of Special Future Capital Asset, as of July 1 of Given Year}$$

(c) <u>Amount of Annual Adjustment</u>. Within six (6) months after the commencement of each of the nineteen (19) fiscal years following the fiscal year within which the acquisition of a "Special Future Capital Asset" is completed, San Jose or Santa Clara, as the case may be, shall pay to the other, as an adjustment in the sharing of the cost of such "Special Future Capital Asset", a sum of money the amount of which shall be determined by application of the following formulae. In determining the amount, if any, to be paid by San Jose, the term "City's Average Assessed Valuation" as used in said formulae shall mean San Jose's average assessed valuation; and in determining the

- 16 -

amount, if any, to be paid by Santa Clara, the term "City's
Average Assessed Valuation" as used in said formulae shall mean
Santa Clara's average assessed valuation.  The amount to be paid
by each city, as an annual adjustment, shall be the amount, if
any, by which the figure arrived at by application of the fol-
lowing Formula A should exceed the figure arrived at by appli-
cation of the following Formula B, to wit:

<u>FORMULA A</u>

$$\frac{\text{City's Average Assessed Valuation for Fiscal Years from July 1 of Fiscal Year within which Acquisition of the "Special Future Capital Asset" is Completed to June 30 of Current Fiscal Year within which Adjustment is to be Paid.}}{\text{Average Assessed Valuation of Both Cities for Fiscal Years from July 1 of Fiscal Year within which Acquisition of "Special Future Capital Asset" is Completed to June 30 of Current Fiscal Year within which Adjustment is to be Paid.}} \quad X \quad \text{Unamortized Cost of "Special Future Capital Asset, as of July 1 of Current Fiscal Year within which Adjustment is to be Paid, Computed in Accordance with Directions and Formula Set Forth in the Immediately preceding sub-paragraph (b).}$$

<u>minus</u>

<u>FORMULA B</u>

$$\frac{\text{City's Average Assessed Valuation for Fiscal Years from July 1 of Fiscal Year within which Acquisition of the "Special Future Capital Asset" is Completed to June 30 of the Fiscal Year Immediately Preceding the Current Fiscal Year within which Adjustment is to be Paid.}}{\text{Average Assessed Valuation for Fiscal Years from July first of Fiscal Year within which Acquisition of the "Special Future Capital Asset" is Completed to June 30 of the Fiscal Year Immediately Preceding the Current Fiscal Year within which Adjustment is to be Paid.}} \quad X \quad \text{Unamortized Cost of "Special Future Capital Asset", as of July 1 of Current Fiscal Year within which Adjustment is to be Paid, Computed in Accordance with Directions and Formula Set Forth in Immediately Preceding sub-paragraph (b).}$$

Each annual adjustment hereinabove required to be paid
by San Jose or Santa Clara shall be paid by depositing the amount

of such adjustment in the special fund, herein provided for in
this Section V, which is to be designated as the "San Jose-
Santa Clara Treatment Plant Capital Fund", to the credit of
the city entitled to such adjustment.

VI

SHARING OF OPERATING COSTS

The parties hereto mutually agree to share any and all operating costs as follows:

A. Operating Costs Incurred in 1958-1959.  Concurrently with the execution of this agreement, Santa Clara shall pay to San Jose as administering agency of this agreement the sum of Eighty-two Thousand, Eight Hundred Ten and 3/100 Dollars ($82,810.03) as Santa Clara's estimated share of operating costs incurred or to be incurred in the fiscal year 1958-1959.  At the same time, San Jose shall pay to itself, as said administering agency, the sum of Three Hundred Twenty-three Thousand, Two Hundred Twenty-three and 97/100 Dollars ($323,223.97) less all sums expended by San Jose from and after July 1, 1958 and prior to date of this agreement for any operating costs, as San Jose's estimated share of operating costs for said fiscal year.

All such money shall be deposited by San Jose, as said administering agency, in a special fund to be known as the "San Jose-Santa Clara Treatment Plant Capital Fund".  Santa Clara shall be credited with having paid $82,810.03 into said fund and San Jose shall be credited with having paid $323,223.97 into said fund. All expenditures made by San Jose for operating costs from and after July 1, 1958 and before date of this agreement shall be charged to said fund, and all future payments for operating costs shall be made from said fund.

Upon conclusion of said fiscal year 1958-59 and ascertainment of the total operating costs incurred in said fiscal year, each party's share of such costs shall be determined as follows:  Each city's share shall be that proportion of all such costs which the assessed value of all property in such city in such fiscal year bears to the assessed value of all property in both cities in said fiscal year.

Upon determination of each party's share of said costs for said year, each party shall pay to San Jose as the administering agency of this agreement, for payment into said special operating fund, the amount, if any, by which its share of said costs for

said fiscal year should exceed the amount theretofore advanced by it as its estimated share of such costs for said year. If a party's share of said costs should be less than the amount theretofore advanced by it as its estimated share of such costs, then such party shall be entitled to reimbursement from or credit in said special operating fund for the amount by which its estimated share of such costs, theretofore paid by it, should exceed its share of such costs as calculated at the end of the year.

B. Operating Costs Incurred After June 30, 1959. After the beginning of each fiscal year, beginning with the year 1959-60, each party shall pay to San Jose, as the administering agency of this agreement, that proportion of the total amount budgeted for operating costs for such fiscal year as the assessed value of all property in such city for the preceding fiscal year should bear to the assessed value of all property in both cities for the preceding fiscal year. Fifty per cent (50%) of the amount payable by each city shall be paid on or before the 20th day of August after the beginning of the fiscal year, and the balance shall be paid on or before the 30th day of December after the beginning of said fiscal year. The payment thus made by each of said parties is and shall be deemed to be an advance payment of such party's estimated share of said costs for said fiscal year.

All such money shall be deposited by San Jose, as said administering agency, in the above mentioned "San Jose-Santa Clara Treatment Plant Operating Fund"; and all payments for operating costs shall be made from said fund.

Upon conclusion of each of said fiscal years and upon ascertainment of the total operating costs incurred in such fiscal year, each party's share of such costs for such year shall be determined as follows: Each city's share shall be that proportion of all such costs incurred in such year which the assessed value of all property in such city in such fiscal year should bear to the assessed value of all property in both cities in said fiscal year.

Upon determination of each party's share of said costs for said year, each party shall pay to San Jose, as administering agency of this agreement, for payment into said special

operating fund, the amount, if any, by which its share of such costs for said fiscal year should exceed the amount theretofore advanced by it as its estimated share of such costs for such year. If a party's share of such costs should be less than the amount theretofore advanced by it as its estimated share of such costs, then such party shall be entitled to reimbursement from or credit in said special operating fund for the amount by which its estimated share of such costs, theretofore paid by it, should exceed its share of such costs as calculated at the end of such year.

VII

EXTENT OF OWNERSHIP INTERESTS OF
SAN JOSE AND SANTA CLARA, RESPECTIVELY

A. Ownership in Each Item of Property Comprising "Existing
Treatment Plant".

1. San Jose's Interest.  It is mutually agreed that,
as of any particular time, San Jose shall be deemed to be, and
shall be, owner of an undivided interest in each item of property
comprising the "existing treatment plant", said interest in each
such item to be that proportion of each such item which San
Jose's investment in the "existing treatment plant", as of such
time, should bear to the total investment of both San Jose and
Santa Clara in such plant as of such particular time.  San Jose's
investment in the "existing treatment plant", as of any particular
time, shall be deemed to be San Jose's initial contribution to
the cost of the Existing Treatment Plant ($3,284,136.12), plus
such payments as shall have been made by San Jose to Santa Clara
by way of adjustment pursuant to the provisions of Section IV-C
of this agreement, less such payments as shall have been received
by San Jose from Santa Clara by way of adjustment pursuant to the
provisions of Section IV-C of this agreement.

2. Santa Clara's Interest.  It is mutually agreed
that, as of any particular time, Santa Clara shall be deemed
to be, and shall be, owner of an undivided interest in each item
of property comprising the "existing treatment plant", said in-
terest in each such item to be that proportion of each such item
which Santa Clara's investment in the "existing treatment plant",
as of such time should bear to the total investment of both San
Jose and Santa Clara in such plant as of said particular time.
Santa Clara's investment in the "existing treatment plant", as of
any particular time shall be deemed to be Santa Clara's initial
contribution to the cost of the Existing Treatment Plant ($841,403.88)
plus such payments as shall have been made by Santa Clara to San Jose
by way of adjustment pursuant to the provisions of Section IV-C of
this agreement, less such amounts as shall have been received by

- 22 -

Santa Clara from San Jose by way of adjustment pursuant to the provisions of Section IV-C of this agreement.

B.  Ownership in Each Item of "Future Capital Assets".  It is mutually agreed that, as of any particular time, San Jose and Santa Clara, respectively, shall each be deemed to be, and shall be, owner of an undivided interest in each item of property included within the definition of "future capital assets", said interest in each such item to be that proportion of such items which such city's investment in such item, as of such time, should bear to the total investment of both San Jose and Santa Clara in such item as of such particular time.  Each city's investment in such item, as of any particular time, shall be deemed to be the share of the cost of such item theretofore paid by such city pursuant to the provisions of Sections V-A and V-B of this agreement, plus all payments theretofore made by such city to the other city as adjustments in the sharing of costs of such item, where such item consists of a "special future capital asset", pursuant to the provisions of Section V-C of this agreement, less all payments theretofore received by such city from the other city as adjustments in the sharing of costs of such item, where such item is a "special future capital asset", pursuant to the provisions of Section V-C of this agreement.

C.  Ownership in Each Item of "Operating Supplies and Materials".  It is mutually agreed that, as of any particular time, San Jose and Santa Clara, respectively, shall each be deemed to be, and shall be, owner of an undivided interest in each item of property included within the definition of "operating supplies and materials",  said interest in each such item to be that proportion of such item which such city's investment in such

-23-

item, as of such time, should bear to the total investment of
both San Jose and Santa Clara in such item as of such particular
time.  Each city's investment in each such item, as of any
particular time, shall be deemed to be the share of the cost
of such item theretofore paid by such city pursuant to the
provisions of Section VI of this agreement.

D.  Division of and Ownership of Treatment Plant Income.   It
is mutually agreed that any and all income derived from "Out-
side Users" for use of the treatment plant during the term of
this agreement, and any and all income derived from the sale,
during the term of this agreement, of sludge, effluent or other
products or by-products of sewage treatment, and any and all in-
come derived from the rental, during the term of this agreement,
of any treatment plant property, shall be collected and kept by
San Jose, as administering agency of this agreement, in a spe-
cial fund to be known as the "San Jose-Santa Clara Treatment
Plant Income Fund", and that each of said cities, respectively,
shall be credited with ownership of, and shall be owner of, that
proportion of any such income earned during each fiscal year
which the assessed value of all property in such city in such
fiscal year should bear to the total assessed value of all prop-
erty in both said cities in such fiscal year.  Monies of either
party in such fund may from time to time be transferred by San
Jose, as administering agency of this agreement, from said fund
to the "San Jose-Santa Clara Treatment Plant Capital Fund" or
to the "San Jose-Santa Clara Treatment Plant Operating Fund",
or to any other fund, to the extent necessary to make up any
delinquent payments owed by such party which are payable into
any such fund or funds; or may otherwise be used by San Jose,
as administering agency of this agreement, for the acquisition,
expansion, replacement, improvement or operation of the treat-
ment plant, to the extent that other monies available for such
purposes are not sufficient for such purposes.

E.  <u>Division of and Ownership of Proceeds from Sales to Any</u>
<u>Third Party of any Treatment Plant Property Other Than the</u>
<u>Products or By-products of Sewage Treatment</u>.    It is mutually
agreed that any and all income derived from the sale to any
third party or third parties, during the term of this agreement
or any extension or renewal thereof, of any item of treat-
ment plant property, excepting the sale of sludge, effluent or
other products or by-products of sewage treatment, shall be
collected and kept by San Jose, as the administering agency
of this Agreement, in the special fund hereinabove mentioned
in Section VII D, entitled "San Jose-Santa Clara Treatment
Plant Income Fund", and that each of said cities, respectively
shall be credited with ownership of, and shall be owner of,
that proportion of the income derived from the sale of such
item of property which such city's investment in such item of
property should bear to the total investment of both cities in
such item as of the time of sale of said item.  Each city's
investment in any such item, as of any particular time, shall
be deemed to be the share of the cost of such item theretofore
paid by such city, as such costs may have been adjusted by said
parties prior to said time.  Such monies of either party in said
fund may from time to time be transferred by San Jose, as admin-
istering agency of this agreement, from said fund to the "San
Jose-Santa Clara Treatment Plant Capital Fund" or to the "San
Jose-Santa Clara Treatment Plant Operating Fund", or to any other
fund, to the extent necessary to make up any delinquent payments
owed by such party which are payable into any such fund or
funds;  or may otherwise be used by San Jose, as the administering
agency of this agreement, for the acquisition, expansion,
replacement, improvement or operation of the treatment plant
to the extent that other monies available for such purpose
are not sufficient for such purpose.

F. <u>Ownership in Other Property</u>.   Except as may otherwise be
provided elsewhere in this agreement, it is mutually agreed
that, with respect to any item of treatment plant property other
than those hereinabove mentioned in this Section VII, as of any
particular time, San Jose and Santa Clara, respectively, shall
each be deemed to be, and shall be, owner of an undivided in-
terest in each such item of property, each said city's interest
in such item to be that proportion of such item which such city's
investment in such item, as of such time, shall bear to the total
investment of both San Jose and Santa Clara in such item as of
such particular time.  Each city's investment in any such item,
as of any particular time shall be deemed to be the share of the
cost of such item theretofore paid by such city, as such costs
may have been adjusted between said parties prior thereto.

G. <u>Monies Collected by Each City Within its Borders</u>.  Any and
all taxes, special assessments, connection fees, operating or
maintenance or service or other fees, and any and all other
charges or monies, of whatsoever kind or nature, levied, assessed,
charged, made or collected by either city against or upon any
property or the owners, tenants or users of any property situate
within their respective boundaries, as said boundaries may now
or hereafter be, or against or upon any other person or persons,
for the privilege of connecting any such property to the treatment
plant or any sewer lines leading thereto, or for the privilege of
using said treatment plant or any part thereof, or for the
construction, operation, maintenance, repair or expansion of said
treatment plant or any part thereof, shall not be deemed to be
property or assets of said treatment plant nor income therefrom,
but shall be deemed to be and is the sole property of the city
levying, assessing, charging, making or collecting the same.

- 26 -

VIII

ADMINISTERING AGENCY

A.  San Jose to be Administering Agency.  It is mutually agreed
that the City of San Jose is and shall be the administering
agency of this agreement, and, as such, shall execute and ad-
minister this agreement.

B.  Powers and Duties of Administering Agency, Scope and Exercise.
Subject to such limitations as may be imposed in this agreement,
the administering agency shall have the following powers and duties:

1.  To maintain, repair, expand, replace, improve and
operate the treatment plant, and to do any and all things which it
shall find to be reasonably necessary, with respect to its
maintenance, repair, expansion, replacement, improvement and
operation (subject to the provision of funds therefor in accordance
with the provisions of this agreement), to treat and dispose of
all sewage (and by-products thereof) of San Jose and Santa Clara
and of any and all "Outside Users" now or hereafter authorized
to discharge or convey sewage into or to said treatment plant or
any sewer lines leading thereto, so that said sewage and all
effluent from said plant will not pollute the waters of San Francisco
Bay, or any other waters, and so that said sewage will be disposed
of in a manner authorized by law.

2.  To make, award and enter into contracts with third
parties for the construction, improvement, replacement, expansion,
or repair of the treatment plant or any part or parts thereof.

3.  To acquire, by purchase, condemnation or otherwise,
any and all real or personal property which it should find to be
reasonably necessary for treatment plant purposes.

4.  To receive, be the depository for, expend and dis-
burse, for the purposes of this agreement, any and all funds or
monies advanced, contributed or paid by the parties hereto to
said administering agency pursuant to the provisions of this
agreement, together with all income collected from "Outside Users",
all other treatment plant income, and all other treatment plant funds.

5. To keep accurate accounts of all receipts and disbursements of the above-mentioned funds and monies.

6. To provide and supply any and all personnel and services, including but not limited to legal, engineering and accounting services, which it should find to be reasonably necessary for the maintenance, repair, expansion, replacement, improvement and operation of said treatment plant, the cost and expense of providing such personnel and services to be charged to and shared by San Jose and Santa Clara as part of operating or other treatment plant costs as elsewhere provided in this agreement.

7. To exercise any and all other powers, common to both San Jose and Santa Clara, with respect to the maintenance, repair, expansion, replacement, improvement and operation of the treatment plant.

8. To do any and all things reasonably necessary to treat and dispose of all sewage entering the treatment plant in such manner as will comply with all applicable laws and regulations.

9. To do any and all other things which the administering agency is required or authorized to do by other provisions of this agreement.

C. <u>Manner of Exercising Powers or Performing Duties</u>. The manner in which the administering agency shall exercise its powers and perform its duties is and shall be subject to the restrictions upon the manner in which the City of San Jose could exercise such powers and perform such duties; and shall not be subject to any restrictions applicable to the manner in which the City of Santa Clara could exercise such powers or perform such duties.

D. <u>Expenses of Administering Agency</u>. It is mutually agreed that the City of San Jose shall be reimbursed from treatment plant funds for all costs and expenses incurred by it as administering agency of this agreement, including but not limited

- 28 -



to salaries and wages paid by San Jose to its officers and em-
ployees for services rendered by them for treatment plant pur-
poses.  It is further agreed that San Jose shall be paid, from
treatment plant funds, an amount equal to seventeen and three
hundred thirteen one thousandths per cent (17.313%) of all the
above mentioned salaries and wages as and for the following over-
head expenses incurred by San Jose in furnishing said services
and in administering this agreement, to wit:  payments made by
San Jose for retirement benefits, payments made by San Jose for
medical and hospital insurance covering officers and employees,
miscellaneous overhead expenses of the auditing, purchasing and
engineering departments of San Jose.

        The percentage or amount of overhead allowance or ex-
pense payable to San Jose shall be increased or decreased from
year to year to truly reflect actual overhead and incidental
costs and expenses incurred by San Jose for treatment plant pur-
poses to the extent that such costs and expenses are not included
in other items of cost or expense for which San Jose is otherwise
reimbursed from treatment plant funds.

IX

SAN JOSE-SANTA CLARA
TREATMENT PLANT
ADVISORY COMMITTEE

A.  Creation; Membership.  It is mutually agreed that a treat-
ment plant advisory committee, consisting of five (5) members,
shall be immediately created, said committee to be designated
and to be known as the "San Jose-Santa Clara Treatment Plant
Advisory Committee".  Two of the members shall be members of
the Council of the City of San Jose, shall be appointed by said
Council, and shall serve at the pleasure of said Council.  Two
of the members shall be members of the Council of the City of
Santa Clara, shall be appointed by the Council of the City of
Santa Clara, and shall serve at the pleasure of said Council.
The fifth member shall be an engineer employed in the Public
Works Department of the City of San Jose, shall be appointed
by the Council of the City of San Jose, and shall serve at the
pleasure of the Council of the City of San Jose.

B.  Alternate Members.  The Council of the City of San Jose and
the Council of the City of Santa Clara may each appoint one of
its Council members as an alternate member of said advisory com-
mittee.  Said alternate member appointed by the Council of the
City of San Jose shall serve in the place and stead of either of
the regular Council members appointed by said Council whenever
said regular member should be absent from a meeting of said Com-
mittee.  The alternate member appointed by the Council of the
City of Santa Clara shall serve in the place and stead of either
of the regular Council members appointed by said Council when-
ever said regular member should be absent from a meeting of said
committee.  In addition, the Council of the City of San Jose shall
appoint an engineer of the Department of Public Works of the City
of San Jose as an alternate member of said advisory committee,
to serve in the place and stead of the regular member appointed
from said Department of Public Works whenever said regular member
should be absent from a meeting of said committee.

- 30 -



C.  Chairman.  At its first meeting in each fiscal year, the members of the advisory committee shall elect one of themselves to serve as Chairman of said committee.  The Chairman shall serve as such until the election of his successor in the next fiscal year, or until cessation of his membership on the committee, whichever is earlier.  Vacancies in the office of chairman occurring in between regular elections may be filled by the committee electing a chairman to serve until the next regular election.  The chairman shall preside at all meetings of said committee.  In the event the chairman should be absent from any meeting, the members of the committee may elect a chairman protem to serve as chairman during the latter's absence.

D.  Secretary.  The administering agency shall provide a secretary for the advisory committee.  Said secretary shall keep minutes of said committee's proceedings, and shall also have custody of all books, records and papers of said committee.

E.  Meetings.  Regular meetings of said advisory committee shall be held at a time and place to be determined by the committee.  Special meetings may be called at any time by the chairman or by any two other members, to be held at a reasonable time and place specified in the notice calling the special meeting. Such notice shall be given of special meetings as may be required by resolution of the committee, subject to applicable requirements of law.

F.  Procedure.  Except as may otherwise be provided by resolution of the committee, the procedure to be followed by the advisory committee at its meetings shall be that set forth in Robert's Rules of Order.  The advisory committee may act by resolution or motion;  a motion duly passed by the committee and entered at length on the committee's minutes shall be deemed to be a resolution.

- 31 -

G. <u>Powers and Duties</u>.  The advisory committee shall have the following powers and duties:

1.  Tender its advice to the administering agency and to San Jose and Santa Clara with respect to any and all matters relating to the treatment plant and its maintenance, repair, expansion, replacement, improvement and operation, and policies relative thereto.

2.  Tender its advice to the legislative bodies of both San Jose and Santa Clara with respect to amendments to this agreement.

3.  Make recommendations to both San Jose and Santa Clara with respect to the advisability of selling interests in the treatment plant to persons other than San Jose and Santa Clara.

4.  Make recommendations to both San Jose and Santa Clara with respect to the advisability of entering into contracts with other persons desiring to use the treatment plant on a rental or other basis.

5.  Make recommendations to the administering agency and to San Jose and Santa Clara as to type and amount of insurance to be purchased.

6.  Make recommendations to both San Jose and Santa Clara with respect to rental rates to be charged "Outside Users" for use of the treatment plant.

7.  Annually, on or before the first day of May in each fiscal year beginning on May 1, 1959, the advisory committee shall prepare and file with the legislative bodies of both San Jose and Santa Clara a proposed budget for the ensuing fiscal year for the maintenance, expansion, replacement, improvement and operation of the treatment plant.  Said budget shall provide a complete financial plan recommended by said advisory committee for the ensuing fiscal year, and shall comply with other provisions of this agreement respecting the same.

- 32 -

H.  _Expenses_.  It is mutually agree that members of the advisory committee shall be reimbursed for all expenses reasonably incurred by them in the performance of their duties, and that provision therefor shall be made in the annual budget.  Such expenses shall be considered as "operating costs" of the treatment plant.  It is further agreed that the advisory committee heretofore appointed by both cities to study and make recommendations respecting said treatment plant and its use, and contracts relating thereto, shall be reimbursed for all expenses reasonably incurred by them in the performance of their duties from and after January 14, 1959.

X

BUDGETARY AND OTHER FISCAL PROVISIONS

A.  Budget:   Preparation and Submission.  On or before the
1st day of May of each fiscal year, beginning May 1, 1959,
the San Jose-Santa Clara Treatment Plant Advisory Committee
shall prepare and submit to the legislative bodies of San Jose
and Santa Clara a proposed budget for the ensuing fiscal year,
as recommended by said committee, for the maintenance, repair,
expansion, replacement, improvement and operation of the treat-
ment plant, together with an explanatory budget message.

B.  Budget:   Contents.  The budget shall provide a complete
financial plan, for the budget year, for the maintenance, repair,
expansion, replacement, improvement and operation of the treat-
ment plant, including the following:

1.  An itemized statement of estimated income and
revenues of the treatment plant from "Outside Users", from sale
of by-products, and from other sources, together with a com-
parative statement of income and revenues for the last complete
fiscal year and the year in progress, plus a statement of esti-
mated unencumbered balances at the beginning of the budget year.

2.  An itemized statement of proposed expenditures and
reserves for the budget year, together with a comparative state-
ment of the expenditures and revenues for the last complete fis-
cal year and the year in progress, with the proposed expenditures
and reserves for "operating costs" and the proposed expenditures
and reserves for "future capital assets" separately stated.

3.  Statement of estimated share of "future capital
costs", for budget year, to be advanced by San Jose and Santa
Clara, respectively, pursuant to Section V B of this agreement;
and statement of estimated share of "operating costs" to be
advanced by San Jose and Santa Clara, respectively, pursuant
to Section VI B of this agreement.

- 34 -

4.  Such other information as may be deemed essential or advisable.

C.  Budget:   Adoption.   Upon receipt of a proposed budget from the Advisory Committee, the legislative body of San Jose and the legislative body of Santa Clara shall each consider the same, and may each recommend the increase, decrease or omission of any item, or the insertion of new items.  Each legislative body shall consider the recommendations of the other, and shall finally adopt a budget mutually satisfactory to both bodies, containing such changes or amendments as they may mutually agree upon.  The budget finally adopted by both legislative bodies, meeting separately, shall be the official budget, for the budget year, for the maintenance, repair, expansion, replacement, improvement and operation of the treatment plant.

D.  Budget:   Time of Adoption.   The budget shall be agreed upon and adopted by the legislative body of San Jose and the legislative body of Santa Clara no later than the 15th day of June immediately preceding the budget year for which such budget is made.

E.  Budget:   Failure to agree on Budget;  Adoption by San Jose Only.  In the event the respective legislative bodies of San Jose and Santa Clara should fail to agree upon and to adopt, on or before the time hereinabove specified, a budget mutually satisfactory to both bodies, then in that event the legislative body in San Jose shall adopt, on or before June 30, such budget as it deems advisable, and such budget, as adopted by the legislative body of San Jose, shall be the official budget for the budget year for the maintenance, repair, expansion, replacement, improvement and operation of the treatment plant; provided, however, that any such budget adopted by the legislative body of San Jose without the approval of the legislative body of

- 35 -

Santa Clara shall be subject to the following limitations, to wit:

1. <u>Operating Costs</u>. The total estimated expenditures and reserves for operating costs, budgeted for the budget year 1959-60, shall not exceed the total expenditures and reserves for operating costs of the treatment plant for the fiscal year 1958-59 by a greater percentage than that percentage which is represented by the increase in assessed valuation of all property in both San Jose and Santa Clara in the fiscal year 1958-59 over the fiscal year 1957-58, plus an additional ten percent (10%); and the total estimated expenditures and reserves for operating costs budgeted for each budget year after 1959-60 shall not exceed the total estimated expenditures and reserves for operating costs set forth in the budget for the preceding fiscal year by a greater percentage than that percentage which is represented by the increase in assessed valuation of all property in both San Jose and Santa Clara in the fiscal year within which the budget is prepared over the immediately preceding fiscal year, plus an additional ten percent (10%); provided, that said estimated expenditures and reserves for "operating costs" may be increased above the above limitations when the increased expenditures are reasonably necessary to enable the administering agency to fully and efficiently execute and administer this agreement, or in order to comply with the State laws or orders, rules or regulations of the State Water Pollution Board or other public agencies.

2. <u>Future Capital Assets</u>. The total estimated expenditures and reserves for future capital assets shall not be subject to the limitations applicable to "operating costs" or any other limitations. However, in the event the estimated expenditures and reserves for future capital assets budgeted for a fiscal year should exceed the total expenditures and reserves budgeted for future capital costs for the immediately preceding fiscal year by a greater percentage than that percentage which represents the increase in assessed valuation of all property in both San Jose and Santa Clara in the fiscal year within which the budget

- 36 -

is prepared over the assessed value of all property in both
cities in the immediately preceding fiscal year, plus ten per
cent (10%), then in such event, except as may be hereinafter
otherwise provided, San Jose and Santa Clara shall each have
twelve (12) months' time after adoption of the budget for such
fiscal year within which to advance to the administering agency
its share of that portion of said estimated expenditures and
reserves for future capital assets which exceeds the above men-
tioned percentage plus ten per cent (10%).

F.  Budget:  Failure to Adopt Within Time.  If a budget should
not be adopted within the time hereinabove provided, then in
that event the administering agency may subsequently adopt such
budget; but in such event no advance payments for the budget
year need be made by either party until such budget shall have
been adopted.

G.  Expenditures.  It is mutually agreed that the several amounts
stated in the budget as proposed or estimated expenditures for a
budget year may be expended in such year (or in the following
fiscal year or years to the extent that payments under contracts
awarded or executed in such budget year should become payable in
the following year or years) by the administering agency for the
purposes and objects mentioned or specified in the budget.  It is
further agreed that unused balances of any amount set forth in
the budget as a proposed or estimated expenditure for one purpose
may be expended by the administering agency for any other treat-
ment plant purpose or purposes mentioned in the budget.  It is
further agreed that any unused balances may be used for any other
treatment plant purpose or purposes not mentioned in the budget
if such expenditure is reasonably necessary to carry out the gen-
eral purposes of the agreement or to comply with orders, regula-
tions or directives of the State Water Pollution Board or any
State law.

It is further agreed that San Jose may, at any time or
times, advance additional monies than its share of the expenditures
provided for in the budget, for the purpose of expending the same

for any purpose or purposes which it should find to be reason-
ably necessary to accomplish the purposes of this agreement, or
to avoid pollution of waters, or to comply with State law or
any order or regulation of the State Water Pollution Board, or
to make any unforeseen expenditure which it should find to be
reasonably necessary, and, as administering agency, it may ex-
pend such money for such purpose or purposes; however, in such
event, Santa Clara, although it must reimburse San Jose for
Santa Clara's share of such advances, need not do so until the
due date for its first advances in the immediately following
fiscal year.

H.  Capital Expenditures Exceeding $500,000.  It is understood
and agreed that extensive expansion, enlargement and improvement
of the treatment plant is necessary to provide greater and bet-
ter primary treatment and secondary treatment of sewage.  It is
agreed that San Jose shall determine when such enlargements and
expansions shall be effected.  It is agreed that when any par-
ticular expansion, enlargement or improvement project should en-
tail the estimated expenditure of Five Hundred Thousand Dollars
($500,000) or more, San Jose shall give Santa Clara written no-
tice of the proposed expansion, enlargement or improvement, of
the total estimated cost of the same, and of the approximate share
which it is estimated Santa Clara will be required to advance.
Notwithstanding anything to the contrary elsewhere in this agree-
ment, it is agreed that each city shall have twelve (12) months'
time commencing from date of delivery of such notice to Santa
Clara within which to obtain and pay to the administering agency
its estimated share of such expenditures.

I.  Supplemental Agreements.  It is agreed that during any fiscal
year of this agreement, after the adoption of a treatment plant
budget for such fiscal year, the parties hereto, by mutual agree-
ment, may amend or supplement such budget, or may make any other

agreement, agreed to by both cities, for the purpose of increasing, decreasing or otherwise changing the amounts of money to be paid by the parties as their respective shares of capital, operating or other costs, for the purpose of adding to, amending or decreasing the purposes for which budgeted or other monies may be expended, or for any other lawful purpose.

XI

MISCELLANEOUS PROVISIONS

A.  Amount of Sewage from Each City.  Subject to such limita-
tions and restrictions as are set forth elsewhere in this agree-
ment, it is agreed that San Jose and Santa Clara shall have equal
rights to discharge into the treatment plant, free of any charges
other than the sharing of costs as provided for in this agreement,
any and all sewage from any and all property or territory situate
within their respective municipal boundaries, as such boundaries
now exist or as they may hereafter be changed by virtue of an-
nexations, consolidations or otherwise, subject, however, to the
availability of capacity in the treatment plant, and subject to
the further limitation that both cities shall limit their use of
the treatment plant so as not to prevent "Outside Users" from
discharging into the plant, and having treated therein, such
quantities of sewage as they may at any time be authorized to
discharge into the plant by virtue of any agreements existing as
of the date of this agreement with San Jose or with Santa Clara,
or with San Jose and Santa Clara or for any other reason.

B.  Outside Users.  It is agreed that any and all rights and
property herein conveyed or given by San Jose to Santa Clara
are and shall be subject to any and all rights, if any, which
"Outside Users" presently have in the treatment plant or its use
by virtue of any agreements existing as of the date of this agree-
ment between said users and San Jose or Santa Clara or by virtue
of any laws;  and San Jose and Santa Clara both agree to honor
said rights and agreements, and jointly assume all obligations
therein imposed upon or incurred by San Jose with respect to
the treatment plant or its use.  It is further agreed, however,
that no existing outside users shall be given any new or addi-
tional rights in the treatment plant or its use, and no addi-
tional territory outside the city limits of San Jose and
Santa Clara (as said city limits may now or hereafter exist)

-40-

shall be authorized to discharge sewage into the treatment plant, except by written agreement authorized or approved by ordinance or resolution of each legislative body of both San Jose and Santa Clara, and then only upon such terms and conditions as are set forth in any such agreement. It is further agreed that there shall be no change in rates charged to present outside users, or any rates established for any new outside users, except by mutual agreement of the parties.

C.  Restrictions and Regulations on the Nature, Kind, Strength and Type of Sewage Entering the Treatment Plant.  Reference is hereby made to Sections 5401.1 to 5402.17, and 5402.19, of Article IV, Chapter 4 of the San Jose Municipal Code on file in the office of the City Clerk of the City of San Jose.  The parties hereto mutually agree that neither of them shall discharge, or cause, allow or permit to be discharged, into the treatment plant or into any sewer line or lines which convey any sewage into the treatment plant, any of the substances which are in said sections prohibited from being discharged into the sanitary sewer system of San Jose. Santa Clara further agrees that it will adopt and enforce an ordinance or ordinances imposing the same restrictions upon the discharge of sewage and industrial wastes into the Santa Clara sewer system and into the treatment plant as have been imposed by San Jose in its above-mentioned Code sections upon the discharge of sewage and industrial wastes into the sewer system of San Jose.

It is further mutually agreed that San Jose, after receiving an advisory report thereon from the San Jose-Santa Clara Treatment Plant Advisory Committee, may at any time or from time to time amend, increase or add to said restrictions or otherwise increase the regulations or restrictions on the type, nature, quality and strength of sewage permitted to be or prohibited from being discharged into the treatment plant.  It is agreed, however, that no restrictions or regulations having the effect of decreasing any existing restrictions or regulations shall be adopted without the consent of both parties.  Each of the parties agrees to adopt and enforce within their respective borders such

- 41 -

ordinances as may be necessary to enforce any such regulations
or restrictions.

D.  Liability for Public Liability for Damages.  Anything in this
agreement to the contrary notwithstanding, it is mutually agreed
that any liability of San Jose and/or Santa Clara, or of San
Jose as the administrative agency of this agreement, or of any
separate entity created under law by virtue of this agreement,
to any person or persons (other than San Jose, Santa Clara,
San Jose as administrative agency of this agreement, or said
separate entity) for any damage to any such person or persons
or to any property of any such person or persons, arising or
resulting from any dangerous or defective condition in the
treatment plant or any part or property thereof, or arising
or resulting from any act or omission of San Jose, Santa Clara,
San Jose as administrative agency of this agreement, or of said
separate entity, or their respective officers, agents, employees or
contractors, in the control, administration, construction, expan-
sion, installation, operation, maintenance or repair of said
treatment plant or any part or property thereof, shall be mutually
shared, borne and paid for by San Jose and Santa Clara as follows:
San Jose and Santa Clara, respectively, shall each bear and pay
such proportion of any such damages or liability as the assessed
value of all property in such city, for the fiscal year within
which such liability is incurred, should bear to the total
assessed value of all property in both San Jose and Santa Clara
for such fiscal year.  In the event a judgment should be procured
against less than all of the above-mentioned parties, each City
will reimburse and indemnify the other, for damages paid out
pursuant to any such judgment, to the extent necessary to pro-
vide for contribution by both San Jose and Santa Clara pursuant
to the above provisions.

- 42 -

Nothing herein contained shall be deemed to forbid San Jose, as administrative agency of this agreement, from procuring public liability insurance to protect both San Jose and Santa Clara from said liability, the cost of such insurance to be charged as part of operating cost of the treatment plant. San Jose, as administrative agency, is hereby authorized to procure such public liability and other insurance as it should deem advisable, charging the cost thereof to operating costs.

E. <u>Delayed Payments</u>. Whenever either party to this agreement shall have failed to make any payment required of it by the provisions of this agreement on or before the date herein provided for such payment, such party shall pay, in addition to said payment, reasonable interest thereon for and during the period of such delay.

F. <u>Calculation of Percentages</u>. Whenever, for purposes of carrying out the purposes of this agreement, it is necessary to calculate percentages of anything, such percentages shall be carried out to three decimal places, as follows:  .001%.

XII

DURATION AND TERMINATION OF AGREEMENT;
BREACH OF AGREEMENT; DISPOSITION OF AS-
SETS UPON TERMINATION OF AGREEMENT

A.  Duration.  It is mutually agreed that the term of this agree-
ment shall be forty-two (42) years beginning July 1, 1958 and
ending June 30, 2000, or until sooner rescinded or terminated
by mutual written agreement of the parties hereto.

B.  Extension, Renewal or Amendment of Agreement.  It is mutually
agreed that the term of this agreement may be extended or renewed
by mutual written agreement of the parties hereto, and that this
agreement may at any time be amended by mutual written agreement
of said parties.

C.  Breach of Agreement.

1.  In the event either party to this agreement should
at any time claim that the other party has in any way breached
or is breaching this agreement, the complaining party shall file
with the legislative body of the other party, and with the above
mentioned San Jose Santa Clara Treatment Plant Advisory Committee,
a written claim of said breach, describing the alleged breach and
otherwise giving full information respecting the same.  The Ad-
visory Committee shall thereupon, at a reasonable time and place
specified by it, give both parties full opportunity to be heard
on the matter, and shall, upon conclusion of said hearing, give
the legislative bodies of both parties a full report of its find-
ings and recommendations.  Said report, findings and recommenda-
tions shall be deemed advisory only, shall not in any way bind
either of the parties hereto, and shall not be deemed to estab-
lish any facts, either presumptively or finally.  Upon receipt
of said report and recommendations, if either party should be
dissatisfied with or disagree with the same, the legislative

bodies of both cities shall jointly meet with each other at a
reasonable time and place to be determined by them, for the
purpose of resolving their differences.  No action for breach
of this agreement, and no action for any legal relief because
of any breach or alleged breach of this agreement shall be filed
or commenced, and nothing shall be done by either party to
rescind or terminate this agreement, unless and until the above
provisions of this paragraph have been complied with and unless
the complaining party has first given to the other party a rea-
sonable time after conclusion of said joint meeting of the two
legislative bodies within which to cure any breach or alleged
breach.

D.  Sale of Assets on Termination.

    1.  Determination of Value of Each Item of Property,
And of Each City's Ownership Interest Therein.  Upon expiration
of the term of this agreement or any extension or renewal thereof,
or upon sooner termination of the term thereof,  the parties hereto
shall mutually ascertain, as of the date of such termination, the
fair market value of each item of treatment plant property and
the percentage of ownership interest of each party in each such
item.  If the parties should fail to agree on such values or
with respect to the ownership interest of each party in each
item, then either party may institute proceedings to have the
controversy adjudicated by a court of competent jurisdiction.

    2.  San Jose's Option to Purchase.  Upon ascertainment
of such values and percentages of ownership interests, either by
mutual agreement or by a court of competent jurisdiction, San
Jose shall have the option to purchase all of Santa Clara's right,
title and interest in all of said items of property, the price
for each such item to be that proportion of the agreed or adjudi-
cated value of such item which Santa Clara's agreed or adjudicated
ownership interest in such item should bear to the total owner-
ship of both San Jose and Santa Clara in such item.  In order to

exercise such option, San Jose shall, within six (6) months after ascertainment of said values by mutual agreement or adjudication, give Santa Clara written notice of its intention to exercise said option. San Jose shall then have two (2) years within which to get authorization for the issuance of, and to sell, general obligation bonds for such purpose, or to otherwise procure the necessary funds for such purpose, and to complete said purchase.

3. <u>Santa Clara's Option to Purchase</u>. If San Jose should fail to purchase the said property pursuant to its said option, then Santa Clara shall have an option to purchase all of San Jose's right, title and interest in all of said items of property, the price for each item to be that proportion of the agreed or adjudicated value of such item which San Jose's ownership interest in such item should bear to the total ownership of San Jose and Santa Clara in such item. In order to exercise such option, Santa Clara shall, within six (6) months after failure of San Jose to exercise its option as above provided, give San Jose written notice of its intention to exercise its option. Santa Clara shall then have two years within which to get authorization for the issuance of, and to sell, general obligation bonds for such purpose, or to otherwise procure the necessary funds for such purpose, and to complete the purchase.

4. <u>Place & Manner of Payment of Price, if Option is Exercised by Either City; Documents Conveying Title</u>. If either party should exercise its above-mentioned option, it shall, within the time above provided for completion of the purchase, place the full purchase price in escrow with the City Auditor of the purchasing city, with instructions to pay the same to the selling city upon delivery by the selling city to the purchasing city of such written documents as may be necessary to convey all of the seller's right, title and interest in the purchased property to the purchasing city, and shall give the selling city written notice

That said money has been so deposited for such purpose.  The
selling city shall thereupon deliver said written documents con-
veying title to the purchasing city, at the office of the City
Auditor of the purchasing city, delivery to be effected con-
currently with the payment of said price.  In the event the
purchasing city should be dissatisfied with the form or contents
of the documents conveying title, any delay in payment of the
purchase price caused by such controversy and the settlement
thereof shall be added to the time within which the purchasing
city may pay said purchase price and complete said purchase.

    5.  <u>Sale to Third Parties</u>.  If neither party should
elect to purchase said property, the parties may then dispose
of all their right, title and interest in the same in such other
manner as they may agree upon.  If they should fail to reach any
agreement, then either party may institute appropriate proceedings
in a court of competent jurisdiction for such relief as it may be
entitled to.  Proceeds from any sale to third parties of each
item of property shall be divided between the parties hereto,
after payment of expenses of sale, in proportion to their respec-
tive ownership interests in such property.  Either or both of the
parties may tender bids at any sale; and in such event, if either
of them is the successful bidder or purchaser, it need only pay,
as the purchase price for each item so purchased, that proportion
of its bid which the other party's ownership interest in such item
should bear to the total ownership interests of both parties in
such item, less the other city's proportionate share of expenses
of sale, said purchase price being all payable to the other party
and not to be divided between the parties hereto.

    6.  <u>Operation of Plant Pending Sale of Assets</u>.  It is
mutually agreed that after expiration of the term of this agree-
ment, or any extension or renewal thereof, or sooner termination
thereof, pending final sale or disposition of the treatment plant
property, the treatment plant shall continue to be maintained and

operated by the administering agency in accordance with the
provisions of this agreement and with each party sharing in
the payment of all costs and expenses the same as if the term
of this agreement had not been terminated; excepting, however,
that no future capital assets shall be acquired or constructed
or installed except to the extent necessary to continue opera-
tion of the plant and to comply with applicable laws pending
final disposition of all property.

    IN WITNESS WHEREOF the parties hereto have hereto
signed their names the day and year herein first above mentioned.

ATTEST:

_Thomas L. Greine_
City Clerk of San Jose

CITY OF SAN JOSE, a municipal
corporation,

By _____ Mayor

And _____
            City Manager

"SAN JOSE"

CITY OF SANTA CLARA, a muni-
cipal corporation,

By _____ Mayor Pro-T.
            April 14, 1957

And _____
            City Clerk

"SANTA CLARA"

APPROVED AS TO FORM:

_Ferdinand P. Palla_
City Attorney, San Jose

APPROVED AS TO FORM:

_Robert Morgan_
City Attorney, Santa Clara

EXHIBIT A

REAL PROPERTY INCLUDED IN EXISTING TREATMENT PLANT

The real property included within the "existing treatment plant", as said term is used in Paragraph B of Section I of the foregoing agreement, means and includes all of the City of San Jose's right, title and interest in all of the following real property, to wit:

PARCEL ONE. All that real property conveyed by Birger E. Williamson and Hulda M. Williamson, his wife, to City of San Jose, a municipal corporation of the State of California, by deed dated October 26, 1949 and recorded on November 4, 1949 in the office of the County Recorder of Santa Clara County, California, in Book 1871, page 435, Official Records of Santa Clara County, California.

PARCEL TWO. All that real property conveyed by J. R. Watrous, also known as John R. Watrous, and Mabel Watrous, his wife, to City of San Jose, a municipal corporation of the State of California, by deed dated July 28, 1954 and recorded on July 30, 1954 in the office of the County Recorder of Santa Clara County, California, in Book 2928, page 224, of Official Records of Santa Clara County, California.

Subject to (a) such rights as John R. Watrous and Mabel G. Watrous, or their successors or assigns, may have in and to said real property or its use under and by virtue of that certain agreement heretofore entered into between said persons and the City of San Jose, dated the 28th day of July, 1954, a copy of said agreement being on file in the office of the City Clerk of the City of San Jose and reference being made thereto for full particulars; and (b) such rights or privileges as the Santa Clara Valley Water Conservation District may have in and to said real property or its use under and by virtue of that certain "License Agreement" heretofore entered into between said District and the City of San Jose, dated August 11, 1958, a copy of which is on file in the office of the City Clerk of San Jose and reference being hereby made thereto for full particulars.

PARCEL THREE. All that real property conveyed by John Medina and Emily Medina to City of San Jose, a municipal corporation of the State of California, by deed dated August 20, 1954 and recorded on August 30, 1954 in the office of the County Recorder of Santa Clara County, California, in Book 2947, page 639, of Official Records of Santa Clara County, California.

PARCEL FOUR. All that real property conveyed by James A. Clayton & Co., Trustee, to City of San Jose, a municipal corporation of the State of California, by deed dated April 10, 1958 and recorded on April 16, 1958 in the office of the County Recorder of Santa Clara County, California, in Book 4053, page 302, of Official Records of Santa Clara County, California.

Subject to that certain lease set forth in Part II of that certain agreement, between the City of San Jose and James A. Clayton & Co., a corporation, as Trustee for J. Bradley Clayton,

operated by the administering agency in accordance with the provisions of this agreement and with each party sharing in the payment of all costs and expenses the same as if the term of this agreement had not been terminated, excepting, however, that no future capital assets shall be acquired or constructed or installed except to the extent necessary to continue operation of the plant and to comply with applicable laws pending final disposition of all property.

IN WITNESS WHEREOF the parties hereto have hereto signed their names the day and year herein first above mentioned.

ATTEST:

FRANCIS L. GREINER
City Clerk of San Jose

(Seal of the City
of San Jose)

CITY OF SAN JOSE, a municipal corporation,

By    LOUIS S. SOLARI
                                Mayor

And    A. P. HAMANN
                        City Manager
                        "SAN JOSE"

CITY OF SANTA CLARA, a municipal corporation,

By    ANTHONY TOLEDO
                                Mayor

And    A. S. BELICK
                        City Clerk
                        "SANTA CLARA"

APPROVED AS TO FORM:
FERDINAND P. PALLA
City Attorney, San Jose

(Seal of the City
of Santa Clara)

APPROVED AS TO FORM
ROBLEY E. MORGAN
City Attorney, Santa Clara

Olive A. Clayton, Frazier O. Reed, Helen Ayer Reed, Willis S. Clayton, Helen R. Clayton, George S. Abel, Suzanne Abel, Warren L. Holmes, Byrd M. Holmes, Beatrice M. Standish, and for Bank of America National Trust & Savings Association, a corporation, and Hugo A. Oswald, Trustees under the Last Will and Testament of Allan Morgan Standish, also known as Allan N. Standish, deceased, entitled "Agreement for Purchase of Real Property North of Los Esteros Road and Lease Back" dated April 9, 1958, and that certain supplemental agreement dated April 9, 1958 entitled "Agreement Amending 'Agreement for Purchase of Real Property North of Los Esteros Road and Lease Back'", between the same parties, both of which agreements are on file in the office of the City Clerk of the City of San Jose, reference being hereby made to them for full particulars.

PARCEL FIVE. All that real property conveyed by Los Altos Garbage Company, a copartnership, to City of San Jose, a municipal corporation, by deed dated August 11, 1955 and recorded on October 27, 1955 in the office of the County Recorder of Santa Clara County, California, in Book 3316, page 390, of Official Records of Santa Clara County, California.

PARCEL SIX. All that real property conveyed by Cora B. Zanker to the City of San Jose, a municipal corporation, by deed dated the 25th day of July, 1955 and recorded on August 1, 1955 in the office of the County Recorder of Santa Clara County, California, in Book 3244, Page 90 of Official Records of Santa Clara County, California.

Subject to any and all of such rights, as said Cora B. Zanker, her successors or assigns, may have under and by virtue of that certain agreement heretofore entered into between her and the City of San Jose dated the 25th day of July, 1955, said agreement being on file in the office of the City Clerk of the City of San Jose, and the same being hereby referred to for full particulars.

PARCEL SEVEN. That certain existing outfall sanitary sewer line presently owned by the City of San Jose, running from the northerly line of the above mentioned Parcel Two to San Francisco Bay; together with a right of way over a strip of land, thirty (30) feet in width, extending from said northerly line of said Parcel Two to San Francisco Bay, the center line of said strip of land being the center line of the above mentioned existing outfall sanitary sewer line which runs from the northerly line of said Parcel Two to San Francisco Bay, for the purpose of constructing, maintaining and operating, within said strip of land, said existing outfall sewer line, and new or additional sewer lines, to conduct sewage effluent from the treatment plant to San Francisco Bay.

SUBJECT TO any and all reservations, exceptions, covenants or encumbrances of record relating to all or any or any part of the above mentioned seven parcels of property.

AND RESERVING AND EXCEPTING from the above described seven parcels all of the following property which shall continue to be owned exclusively by the City of San Jose and shall not be deemed to be part of the "existing treatment plant", to wit:

(a) Any and all sewer lines, situate within the above described seven parcels of land, which are presently owned by the City of San Jose and which convey sewage into the treatment plant structures for treatment; and

-2-

(b) A right to continue to maintain and operate said sewer lines within said seven parcels, and to construct new and additional sewer lines within said seven parcels, for the purpose of conducting sewage through such lines into the treatment plant structures for treatment and disposal.

EXECUTED this __6__ day of _____May_____, 1959.

CITY OF SAN JOSE, a municipal corporation,

ATTEST:

By ___LOUIS S. SOLARI___
                                    Mayor

FRANCIS L. GREINER
City Clerk of San Jose

And ___A. P. HAMANN___
                                City Manager

(Seal of the City of San Jose)

CITY OF SANTA CLARA, a municipal corporation,

ATTEST:

By _____Anthony Toledo_____
                                    Mayor

A. S. Belick
City Clerk of Santa Clara

And ___A. S. BELICK___
                                City Clerk

(Seal of the City of Santa Clara)

APPROVED AS TO FORM:

FERDINAND P. PALLA
City Attorney, San Jose

APPROVED AS TO FORM:

ROBLEY E. MORGAN
City Attorney, Santa Clara

-3-

SECRETARY'S CERTIFICATE

I, PATRICIA L. O'HEARN, Assistant Secretary of SAN JOSE-SANTA CLARA CLEAN WATER FINANCING AUTHORITY, hereby certify that the foregoing Sewage Treatment Plant Agreement, dated as of March 30, 1959, between the City of San Jose and the City of Santa Clara, is a full, true and correct copy of said agreement on file and of record in my office.

Dated:   July 9, 1987

_____
Assistant Secretary of San
Jose-Santa Clara Clean Water
Financing Authority

1312S