# EXHIBIT "2"

CITY OF SAN JOSE

APR 0 5 1983

_____

MASTER AGREEMENT

FOR

WASTEWATER TREATMENT

BETWEEN

CITY OF SAN JOSE, CITY OF SANTA CLARA

AND

COUNTY SANITATION DISTRICT #4


dated as of
March 1, 1983

_____



Document received by the CA 6th District Court of Appeal.

JOINT TRIAL EXHIBIT
**JTX 0003**
No. 18CV325480

RECEIVED APR 1 1 1983

1916

T A B L E   O F   C O N T E N T S

PART I      DEFINITIONS. . . . . . . . . . . . . . . . . . . . . 1

PART II     CAPACITY RIGHTS GRANTED TO AGENCY. . . . . . . . . . . . 4
            A.  General . . . . . . . . . . . . . . . 4
            B.  Capacity Rights . . . . . . . . . . . . 4
            C.  San Jose/Santa Clara Water Pollution Control
                Plant Engineering Study . . . . . . . . . 5
            D.  Restrictions and Regulations Respecting
                Nature, Kind, Type and Strength of Sewage . . . 5
            E.  Reports, Data and Maps to be Provided
                by Agency . . . . . . . . . . . . . . . 5
            F.  Area Restrictions . . . . . . . . . . . . 5

PART III    FUTURE DISCHARGE CAPACITY RIGHTS . . . . . . . . . . 6
            A.  Redistribution of Capacity Rights . . . . . . 6
            B.  Acquisition of Additional Capacity Rights
                with Plant Expansion. . . . . . . . . . . 6
            C.  Acquisition of Additional Capacity Rights
                without First Parties Initiated Plan
                Expansion . . . . . . . . . . . . . . . 7
            D.  Adjustments to Capacity Rights Due to
                Operating Conditions . . . . . . . . . . . 7

PART IV     LAND . . . . . . . . . . . . . . . . . . . . . . 8
            A.  Participation . . . . . . . . . . . . . . 8
            B.  Sale of Land . . . . . . . . . . . . . . 9

PART V      AMOUNTS PAYABLE BY AGENCY TO FIRST PARTIES . . . . . . 9
            A.  Payments for Existing Capacity Rights
                in the Intermediate-term and
                First Stage Expansion Projects . . . . . . 9
            B.  Payments for Additional Capacity Rights . . . . 9
            C.  Payments for Future Improvements . . . . . . 10
            D.  Payments for Operation and Maintenance Costs. . 10
            E.  Method of Payment . . . . . . . . . . . . 11
            F.  Credits . . . . . . . . . . . . . . . . 12
            G.  General . . . . . . . . . . . . . . . . 12

PART VI     SAN JOSE-SANTA CLARA TREATMENT PLANT ADVISORY COMMITTEE. 13
            A.  Creation and Membership . . . . . . . . . 13
            B.  Alternate Members . . . . . . . . . . . . 13
            C.  Chair . . . . . . . . . . . . . . . . . 14
            D.  Secretary . . . . . . . . . . . . . . . 14
            E.  Meetings . . . . . . . . . . . . . . . . 14
            F.  Procedure . . . . . . . . . . . . . . . 14
            G.  Powers and Duties . . . . . . . . . . . . 14
            H.  Action Upon Recommendation . . . . . . . . 16
            I.  Expenses . . . . . . . . . . . . . . . . 17

PART VII    MISCELLANEOUS PROVISIONS . . . . . . . . . . . . 17
            A.  Effective Date and Duration
                of Agreement . . . . . . . . . . . . . 17
            B.  Extension, Renewal or Amendment to the
                Agreement . . . . . . . . . . . . . . . 17
            C.  Use of Treatment Plant after Expiration
                of Term . . . . . . . . . . . . . . . . 18
            D.  Termination . . . . . . . . . . . . . . 18
            E.  Sale or Transfer by First Parties . . . . . . 18
            F.  Industrial Waste Program . . . . . . . . . 18
            G.  Claims of Breach of Agreement of Inequities . . 19
            H.  Liability . . . . . . . . . . . . . . . 20
            I.  Compliance with Federal and State Laws
                and Regulations. . . . . . . . . . . . . 20
            J.  Assignment . . . . . . . . . . . . . . . 21
            K.  Successors and Assigns . . . . . . . . . . 21
            L.  Waivers . . . . . . . . . . . . . . . . 21
            M.  Performance . . . . . . . . . . . . . . 21
            N.  Insurance . . . . . . . . . . . . . . . 22
            O.  Notices . . . . . . . . . . . . . . . . 22
            P.  Notices . . . . . . . . . . . . . . . . 23

PART VIII   SPECIAL PROVISIONS . . . . . . . . . . . . . . . 23
            A.  Termination of Agreements . . . . . . . . 23

Document received by the CA 6th District Court of Appeal.

EXHIBIT A   ESTIMATED REPLACEMENT COST OF PLANT AND EQUIPMENT

EXHIBIT B   AGENCY TREATMENT PLANT CAPACITY ALLOCATION

EXHIBIT C   LAND DISTRIBUTION

EXHIBIT D   AGENCY PARTICIPATION IN INTERMEDIATE-TERM AND FIRST
            STAGE EXPANSION PROJECTS

EXHIBIT E   ADMINISTERING AGENCY

EXHIBIT F   SERVICE AREA

EXHIBIT G   ANNEXATION AND DETACHMENT

Document received by the CA 6th District Court of Appeal.

RJL/SF/gy
02/22/83

          AGREEMENT BETWEEN CITIES OF SAN JOSE AND SANTA CLARA
          AND AGENCY RELATING TO SAN JOSE/SANTA CLARA WATER
          POLLUTION CONTROL PLANT.

    This AGREEMENT is made and entered into this 10th day of May,
1982, by and between the CITY OF SAN JOSE and the CITY OF SANTA CLARA,
both being municipal corporations of the State of California (hereinafter
referred to as "First Parties"), and COUNTY SANITATION DISTRICT #4
(hereinafter referred to as "Agency").

                            PART I

                          DEFINITIONS

    A.    Administering Agency.

          The City of San Jose is and shall be the Administering Agency

          of this Agreement and as such shall execute and administer

          this Agreement in accordance with Section VIII of the 1959

          Agreement attached hereto as Exhibit E.

    B.    Agencies.

          The term "Agencies" shall be those tributary agencies dis-

          charging wastewater into the San Jose/Santa Clara Water

          Pollution Control Plant, previously referred to as "outside

          users" in the 1959 Agreement.

    C.    1959 Agreement.

          The term "1959 Agreement" shall mean the Agreement between San

          Jose and Santa Clara, dated May 6, 1959 and entitled "Agree-

          ment between San Jose and Santa Clara Respecting Sewage Treat-

          ment Plant," as such Agreement now reads or as it may here-

          after from time to time be amended or renegotiated.

    D.    Capacity.

          The term "capacity" shall mean the Mean Peak Five (5) Day Dry

          Weather Plant Treatment capacity as contained in Exhibit "A,"

          attached hereto and incorporated herein by reference as if

          fully set forth.

    E.    Director.

          The term "Director" shall mean the Director of Water Pollution

          Control for the City of San Jose.

    F.    Engineering Study.

0716B

Document received by the CA 6th District Court of Appeal.

1919

RJL/SF/gy
02/22/83

The term "Engineering Study" shall mean those studies that the
First Parties shall cause to be made when the Plant has reach-
ed eighty-five percent (85%) of its designed capacity, begin-
ning with 167 MGD and for every incremental capacity increase
thereafter.  The first Engineering Study shall be performed
when the mean peak five day dry weather flow to the Plant
reaches 142 MGD.  The Engineering Study shall include an
analysis of capacity needs, the size and nature of proposed
facilities to be constructed, a construction timetable and an
estimate of total project costs, and an estimate of each
participating agency's share of project cost.

G.    Exhibits.

The term "Exhibits" shall mean those Exhibits attached to this
Agreement and incorporated into this Agreement by reference as
if fully set forth.  These Exhibits may be modified as
contract amendments or amended from time to time as necessary
to reflect changes of fact.  The Exhibits shall be reviewed
annually, or at such other times as significant changes occur,
by the Treatment Plant Advisory Committee, which body shall
recommend any modifica- tions or amendments required.

H.    First Stage Expansion.

The term "First Stage Expansion" shall mean that portion, as
is presently described in the report of CH2M Hill, engineers,
entitled "San Jose/Santa Clara Water Pollution Control Plant,
Capital Improvement Program, Executive Summary, Revised June,
1982" and dated June 25, 1982, or as amended or revised, which
consists of improvements to all areas of the Plant and expan-
sion of the Liquid Process, Process Control System, Sludge
Processing and Disposal and will provide a capacity of 167 mgd.

I.    Interest.

Interest will be to the extent permitted by law, equal to the
rate of interest set forth in the monthly report to the
Council of the City of San Jose, prepared by the Director of
Finance of San Jose, with respect to said City's portfolio and
interest earnings thereon.

Document received by the CA 6th District Court of Appeal.

0716B
00508

**1920**

RJL/SF/gy
02/22/83

J.  Intermediate-Term Improvements.

The term "Intermediate-Term Improvements" shall mean that por-
tion, as is presently described in the report of CH2M Hill,
engineers, entitled "San Jose/Santa Clara Water Pollution Con-
trol Plant, Capital Improvement Program, Executive Summary,
Revised June, 1982" and dated June 25, 1982, or as amended or
revised, which consists of six (6) elements, as outlined in
Chapter 2 of said report, which are designated to provide the
Plant with a mean peak five (5) day dry weather treatment
capacity of 143 mgd.

K.  Operating and Maintenance Costs.

Any and all costs and expenses incurred by the Administering
Agency, for the administration, operation, maintenance and
repair of the Plant, including but not limited to supplies and
materials, labor, services, power, chemicals, laboratory
control and monitoring, insurance, general administration and
incidental items incurred during normal operations.  Also
included are those expenditures for ordinary repairs necessary
to keep the facilities in proper operating conditions.

L.  Parameters.

The term "parameters" shall mean the four (4) treatment para-
meters of Flow, Biochemical Oxygen Demand (BOD), Suspended
Solids (SS), and Ammonia ($NH_3$) as expressed in terms of es-
timates which are the common denominator for computing annual
and/or daily loadings.

M.  Plant (Existing Treatment Plant).

The term "Plant" shall mean the "San Jose/Santa Clara Water
Pollution Control Plant".

N.  Replacement Costs.

All capital expenditures for obtaining and installing equip-
ment, accessories or appurtenances which are necessary during
the service life of the Plant to maintain the capacity and
performance for which the Plant was designed and constructed
except:

1.  Major rehabilitation which will be needed as individual

-3-

Document received by the CA 6th District Court of Appeal.

0716B
00508

1921

RJL/SF/gy
02/22/83

unit processes or other facilities near the end of their

useful lives;

2.   Structural rehabilitations;

3.   Plant expansions or upgrades to meet future user demands.

O.   Replacement Fund.

Replacement fund shall mean those monies deposited with the

administering agency for the replacement of capital facilities

at the Plant.

P.   TPAC.

The term "TPAC" shall mean the Treatment Plant Advisory

Committee.

PART II

CAPACITY RIGHTS GRANTED TO AGENCY

A.   General.

Commencing on the effective date of this Agreement, and there-

after during the term of this Agreement, and subject to all

the conditions, limitations, restrictions, terms and provi-

sions contained in this Agreement, and Agency's faithful com-

pliance with and performance of the same, First Parties hereby

grant to Agency a right to discharge wastewater into the Plant

and to have the same treated and disposed of in and by said

Plant the same as wastewaters of First Parties.

B.   Capacity Rights.

First Parties have designed the Plant to provide for capacity

to treat and dispose the volume and strength of wastewater

specified in Exhibit "A".  Agency shall be entitled for the

duration of this Agreement to use the capacity as set forth in

said Exhibit "A".  First Parties and Agency agree not to dis-

charge more than its capacity in the parameters as is speci-

fied in said Exhibit "A", except with the approval and agree-

ment of the First Parties hereto in accordance with the terms

and conditions hereinafter provided, or as provided in

Part III.  Any continuous and intentional violation of

capacity rights will be considered a material breach of this

Agreement and will be given priority in the claim of breach

-4-

Document received by the CA 6th District Court of Appeal.

07168
00505

**1922**

RJL/SF/gy
03/02/83

process as set forth in Part VII Section G.

C. San Jose/Santa Clara Water Pollution Control Plant Engineering Study.

First Parties agree to make an Engineering Study to redefine all Agencies' future needs as set forth in Part I, Section F.

D. Restrictions and Regulations Respecting Nature, Kind, Type and Strength of Sewage.

First Parties shall inform Agency of the Industrial Waste Ordinance of the City of San Jose concerning the type and condition of discharge which would be detrimental to the Plant. Each party to this Agreement shall adopt and enforce ordinances, resolutions, rules and regulations to conform to the restrictions of said Ordinance. Any waiver to the above must be authorized by written Resolution of both the Council of the City of San Jose and the Council of the City of Santa Clara. Each party to this Agreement shall also comply with the applicable statutes, ordinances, rules and regulations of agencies of the United States of America, and the State of California.

E. Reports, Data and Maps to be Provided by Agency.

It is mutually agreed that all parties shall prepare and file with the Director reports, data and maps as deemed necessary by the Director and Agency.

F. Area Restrictions.

Agency, unless otherwise authorized by written resolutions of the governing boards of both the City of San Jose and the City of Santa Clara shall not, and agrees that it will not, discharge or cause, allow, permit or suffer to be discharged into the Plant, or into any sewer line or lines which convey either directly or indirectly any wastewater to the Plant, any wastewater which is produced in, or emanates, or comes from any territorial property situated outside the service area map attached as Exhibit F.

First Parties and Agency further agree not to discharge, or cause to be discharged, any wastewater into any sewer line or lines of the other party, either directly or indirectly,

Document received by the CA 6th District Court of Appeal.

-5-

1923

RJL/SF/gy
02/22/83

conveying wastewater to the Plant without written authoriza-
tion of the owner of the sewer line.

PART III

FUTURE DISCHARGE CAPACITY RIGHTS

A.  Redistribution Of Capacity Rights.

1.  In order to dispose of capacity, any Agency or First
    Parties may designate all or a portion of its capacity
    right as "excess pooled capacity," which shall be
    available for disposal as hereinafter provided.

2.  Any Agency or First Parties may acquire excess pooled
    capacity as recommended by TPAC.  Any Agency or First
    Parties may acquire excess pooled capacity at the
    replacement cost as described in Exhibit "B" plus that
    portion of the selling party's replacement balance
    remaining in the Replacement Fund maintained by the
    Administering Agency.

3.  If requests for excess pooled capacity total more than
    the excess pooled capacity available, then TPAC will
    allocate the pooled capacity actually available in a
    manner to most closely achieve the same planning horizon
    for all requesting parties.

B.  Acquisition of Additional Capacity Rights With Plant Expansion.
Agency shall have the right to participate in Plant expansions
for the purpose of increasing the capacity right into the ex-
panded Plant, subject to the following terms and conditions:

1.  Before commencing the design of any such additions, im-
    provements or changes, First Parties shall give Agency
    written notice of their intention to expand the Plant,
    and the design year for the proposed expansion, as set
    forth in the Engineering Study prepared in accordance
    with Part II, Section C.

2.  Within ninety (90) days from and after the giving of such
    notice, Agency shall notify First Parties in writing whe-
    ther it wishes to participate in the proposed expansion,

0716B

Document received by the CA 6th District Court of Appeal.

**1924**

RJL/SF/gy
03/02/83

and the amount of capacity desired to serve until the
design year.  If Agency fails to give such notice within
such time, it shall be deemed to have elected not to
participate in such expansion.

3.   If Agency elects not to participate in such expansion, it
will pay no part of the cost of the additions, improve-
ments and changes which are made for the purpose of in-
creasing the capacity of the Plant.

4.   If Agency elects to participate in such expansion, it
shall pay to First Parties that part of the total cost of
such additions, improvements and changes as defined in
Part V, Section B.

5.   If the needs of all parties are different than the next
feasible increment of plant expansion capacity as des-
cribed in the Engineering Study, then TPAC will allocate
the capacity available in a manner to most closely
achieve the same planning horizon for all requesting
parties.

C.   Acquisition of Additional Capacity Rights Without First Parties
Initiated Plant Expansion.

If Agency should desire to increase its capacity right into
the Plant at a time when no expansion of the Plant as des-
cribed in the Engineering Study, is proposed by First Parties
and no excess pooled capacity is available, then Agency may
seek additional capacity by the following method:

If requested by Agency, First Parties shall initiate a
Special Engineering Study to determine the most feasible
means to add to the Plant that capacity requested by
Agency.  When Agency agrees to pay for such increment,
then First Parties shall expand the Plant by such incre-
ment.  This right shall not be exercised within five (5)
years of completion of the latest Engineering Study.

D.   Adjustment to Capacity Rights Due to Operating Conditions.

1.   In the event of a major Plant facility failure caused by
an earthquake, explosion, war, flooding or the like,

-7-

Document received by the CA 6th District Court of Appeal.

0716B

RJL/SF/gy
03/02/83

reductions in operational capacity and any cost of restoration shall be borne by all Agencies, including San Jose/Santa Clara and Agency in accordance with a revised Exhibit "A", and the cost of restoration shall be borne proportionately.

2.    Any changes in Plant capacity which either increase or decrease the capacity of the Plant, resulting from any means whatsoever, shall be proportioned to each agency including San Jose and Santa Clara in accordance with a revised Exhibit "A".

3.    TPAC shall determine annually, during the month of November, the operational capacity and productive use of the Plant in all parameters for all parties and the re-maining design capacity of the Plant.

4.    Agency and First Parties shall not exceed the capacity rights agreed upon pursuant to Exhibit "A".

5.    If at any time, prior to the completion of the Intermediate-term Improvements, it becomes necessary to allocate connections to the sewer systems of the combined agencies; in that event, to the extent permitted by law, First Parties will receive forty percent (40%) of the connections of whatever type and all other dischargers will receive sixty percent (60%) of the connections of whatever type. Agency's share will be determined by Agreement among the Agencies. This paragraph shall only remain in effect until completion of the Intermediate -term Improvements.

PART IV

LAND

A.    Participation.

Participation and rights in Plant land shall be as described in Exhibit "C".

Document received by the CA 6th District Court of Appeal.

-8-

07168

**1926**

RJL/SF/gy
02/22/83

B.   Sale of Land.

It is mutually agreed between First Parties and Agency that if First Parties should, during the term of this Agreement, sell or otherwise dispose of any of the lands of Exhibit "C" which is or are no longer needed for Plant purposes, Agency shall have the right to share in any revenue derived from such sale by First Parties proportionaly in accordance with Exhibit "C."


PART V

AMOUNTS PAYABLE BY AGENCY TO FIRST PARTIES

A.   Payments For Existing Capacity Rights In The Intermediate Term And First Stage Expansion Projects.

Payments for capacity rights in the Intermediate-term and First Stage Expansion projects shall be as described in Exhibit "D".

B.   Payments For Additional Capacity Rights.

   1.   Payments With Plant Expansion.  All payments associated with a Plant expansion as outlined in Part III, Section B, shall be paid for in proportion to the capacity rights requested in the basic parameters or based upon appropriate ratios of Agency design parameters to total project design parameters times total project cost.

   2.   Payments Without Planned Expansion.  Should Agency elect to obtain additional capacity rights at a time when First Parties do not intend to expand Plant as designated in Part III, Section B, the expenses associated with this addition of capacity rights shall be the sole responsibility of Agency.  All payments for studies, designs and construction to provide additional capacity shall be deposited with the Administering Agency.

   3.   Payments for Transfer of Capacity Rights.  Transfers of capacity rights between First Parties and Agency or between Agency and Agencies, shall be recommended by the Treatment Plant Advisory Committee and approved by First Parties and based upon the pooled capacity cost deter-

Document received by the CA 6th District Court of Appeal.

0716B
00508

**1927**

RJL/SF/gy
02/22/83

Document received by the CA 6th District Court of Appeal.

mined in Part IV, Section A.  Transfer of capacity rights
shall be based upon written agreement between the
participating parties.  Payment shall be due and payable
as provided in said agreement.

C.    Payments For Future Improvements.

1.    All payments associated with future improvements at the
Plant shall be made on the basis of Agency's existing
capacity rights.  Final payment shall be determined based
upon actual project cost.  This payment shall be a
proportional share in accordance with a revised Exhibit
"A".

2.    First Parties shall, not later than March 1st, of any
fiscal year, provide Agency with a preliminary estimate
of the amount of money required from Agency for future
improvements or replacements for the ensuing fiscal
year.

D.    Payments For Operation And Maintenance Costs.

1.    First Parties, Agency and Agencies shall bear the cost of
the operations and maintenance expenses of the Plant.
This cost shall be determined based upon the parameters
of Agency's actual discharge into the Plant.  Agency
shall provide to First Parties, by December 1st of each
year, data indicating expected discharge for the ensuing
fiscal year.

2.    First Parties shall, not later than March 1st of each
year, provide Agency with a preliminary estimate of the
amount of money required to operate and maintain the
Plant for the ensuing fiscal year.  In addition, First
Parties shall indicate Agency's estimated annual share
for operation and maintenance costs as apportioned to
treatment parameters.

3.    Agency shall provide to First Parties a copy of Agency's
adopted annual sewer revenue program by August 1st of
each year.  This revenue program shall conform to all
federal and/or state guidelines as now exist or may exist
in the future.

-10-

0716B
00508

**1928**

RJL/SF/gy
02/22/83

4.  During the first quarter of each fiscal year, TPAC shall
    review each Agency's total discharge to the Plant for the
    preceding fiscal year in terms of the parameters.  Adjust-
    ments in costs, if any, resulting from this review shall
    be made in accordance with Part V, Section E, Paragraph
    3b herein.

E.  Method Of Payment.

    1.  Capital and Land Acquisition.  All payments for capital
        and land acquisition shall be on a quarterly basis, the
        first quarter beginning July 1st.  These invoices shall
        be presented at the beginning of the quarter in which the
        obligation is anticipated to occur.  The date of
        financial obligations for capital expenses and land
        acquisitions shall be the date of award of contract.
        These payments shall be based upon the budget for capital
        costs for the Plant as recommended by TPAC and approved
        by the Administering Agency.

    2.  Operation and Maintenance Costs.  All payments for opera-
        tion & maintenance expenses shall be made on a quarterly
        basis, the first quarter beginning July 1st.  Invoices
        for these payments shall be presented at the beginning of
        the quarter in which the obligation is anticipated to
        occur.  These payments shall be based upon the budget for
        operation and maintenance costs for the Plant as recom-
        mended by TPAC and approved by the Administering Agency.

    3.  General Information.

        a.  All bills shall be paid to the Administering Agency
            within Forty-five (45) days from presentation.  In-
            terest will be charged on any late or unpaid bills.

        b.  Adjustments in any payment described above shall be
            on the basis of actual payment to actual
            expenditures and shall be made no later than the
            third quarter billing of the following fiscal
            year.  A statement outlining the method of
            adjusting costs and actual adjustments shall be
            included.

-11-

Document received by the CA 6th District Court of Appeal.

0716B
00509

**1929**

RJL/SF/gy
01/03/83

    c.    Any and all monies which Agency is herein required to pay to First Parties shall be paid to the Administering Agency.

F.    Credits.

    1.    Grants or Outside Financial Assistance.  Any grants, recoveries, or outside financial assistance received, and any interest earned thereon, shall be credited to First Parties, Agencies and Agency in the quarter following receipt, along with a statement outlining the source of grant
revenue and method of distribution.  Grants or outside financial assistance shall be shared on the basis of the Agency's participation in the program for which the outside financial assistance is received.

    2.    Interest.  Interest on moneys advanced, credits held for Agency, or amounts due from Agency, shall be determined on a monthly basis.

    3.    Revenues and Income.  If First Party should, during the term of this Agreement, receive any income or revenues related to land, products or services at the Plant, then Agency shall be entitled to a share of the income. Agency's share shall be that proportion of such income based on Agency's contribution to the capital cost or O & M cost,
whichever is applicable, during the fiscal year of receipt of such income.

G.    General.

    Payment to Agency of any moneys to which it may become en-titled may be made by off-setting the amount of such moneys against any payments which Agency may be obligated to pay to First Parties under the provisions of this Agreement or Agency may request cash reimbursement of any credit balance.  The request for cash reimbursement shall be honored by First Parties within forty-five (45) days following receipt of notice.  Any additional payments requested from Agency shall be made with the third quarter payment.

0210A
0042b

Document received by the CA 6th District Court of Appeal.

**1930**

RJL/SF/gy
02/22/83

PART VI

SAN JOSE-SANTA CLARA TREATMENT PLANT

ADVISORY COMMITTEE

A.    Creation and Membership.

The San Jose-Santa Clara Treatment Plant Advisory Committee
(TPAC), created by the 1959 Agreement, shall consist of nine
(9) members.  Three (3) of the members shall be members of the
Council of the City of San Jose, shall be appointed by said
Council, and shall serve at the pleasure of said Council.  Two
(2) of the members shall be members of the Council of the City
of Santa Clara, shall be appointed by the Council of the City
of Santa Clara, and shall serve at the pleasure of said
Council.  One (1) of the members shall be a member of the
Council of the City of Milpitas, shall be appointed by said
Council, and shall serve at the pleasure of said Council.  One
(1) of the members shall be a member of the governing body of
the County Sanitation District No. 4 of Santa Clara County,
shall be appointed by the governing body of the County
Sanitation District No. 4, and shall serve at the pleasure of
said body.  One (1) of the members shall be a member of the
governing body of the Cupertino Sanitary District, shall be
appointed by the governing body of the Cupertino Sanitary
District, and shall serve at the pleasure of said body.  The
ninth (9th) member shall be the City Manager of San Jose or a
designated representative.  No member shall have more than one
(1) vote.

B.    Alternate Members.

The Council of the City of San Jose may appoint three (3) of
its Council members as alternate members of TPAC.  The Council
of the City of Santa Clara may appoint two (2) of its Council
members as alternate members of TPAC.  The Council of the City
of Milpitas may appoint one (1) of its Council members as an
alternative member of TPAC.  The governing body of the County

0716B

1931

Document received by the CA 6th District Court of Appeal.

RJL/SF/gy
03/02/83

Sanitation District No. 4 and the governing body of the
Cupertino Sanitary District may each appoint one (1) of its
members as an alternate member of TPAC.  Said alternate
members shall serve in the place and stead of any of the
regular members whenever said regular member should be absent
from a meeting of TPAC.

C.  Chair.

At its July meeting, the members of TPAC shall elect a Chair
of TPAC.  The Chair shall serve as such until the election of
his successor, or until cessation of membership on the TPAC,
whichever is earlier.  Vacancies in the office of the Chair
occurring in-between regular elections, may be filled by TPAC
electing a Chair elected to serve until the next regular
election.  The Chair shall preside at all meetings.  In the
event the Chair should be absent from any meeting, the members
of TPAC may elect a Chair pro tem to serve as Chair during the
latter's absence.

D.  Secretary.

The Administering Agency shall provide a secretary for TPAC.
Said secretary shall keep minutes of TPAC proceedings and
shall also have custody of all books, records and papers of
TPAC.

E.  Meetings.

Regular meetings of TPAC shall be held at a time and place to
be determined by TPAC.  Special meetings may be called at any
time by the Chair, to be held at a reasonable time and place
specified in the notice calling the special meeting, subject
to applicable requirements of law.

F.  Procedure.

Except as may otherwise be provided by Resolution of TPAC, the
procedure to be followed by TPAC at its meetings shall be that
set forth in Robert's Rules of Order.  TPAC may act by
resolution or motion; a motion duly passed by TPAC and entered
at length on TPAC's minutes may be deemed to be a resolution.

Document received by the CA 6th District Court of Appeal.

-14-

0716B

**1932**

RJL/SF/gy
03/02/83

G.   Power and Duties.

TPAC shall have the following powers and duties with respect to those items to be considered.

1.   Make recommendations to First Parties and Agencies with respect to policy relating to the Plant and its maintenance, repair, expansion, replacement, improvement and operation.

2.   Make recommendation to the legislative bodies of First Parties and Agencies with respect to proposed amendments and revisions to exhibits to this Agreement.

3.   Make recommendations to both First Parties and Agencies with respect to the advisability of selling interests in the Plant.

4.   Make recommendations to First Parties with respect to the advisability of entering into contracts with other entities desiring to use the Plant on a rental or other basis.

5.   Make recommendations to the Administering Agency and Agencies as to type and amount of insurance to be purchased for the Plant.

6.   Annually, during the month of May in each fiscal year, TPAC shall review and recommend to the legislative bodies of First Parties and Agencies, a proposed budget for the ensuing fiscal year for the maintenance, expansion, replacement, improvement and operation of the Plant.

7.   Make recommendations to the Administering Agency with respect to the award of consultant, construction or service contracts relating to the Plant.

8.   Annually, TPAC shall file with the legislative bodies of First Parties and Agencies, a report on Plant capacity pursuant to Part III, Section D, paragraph 3.

9.   Make recommendations to First Parties and Agencies with respect to the redistribution of pooled excess capacity pursuant to Part III, Section A, paragraphs 1 and 2.

10.  Periodically, TPAC shall review and make current, long range plans for expansion and/or improvement of the Plant

-15-

Document received by the CA 6th District Court of Appeal.

07168

RJL/SF/gy
02/22/83

to provide for the anticipated Plant capacity required to accommodate the general plans of San Jose, Santa Clara and Agencies and to meet current wastewater discharge requirements.

11. Make recommendations to the legislative bodies of First Parties and Agencies with respect to claim of breach proceedings pursuant to Part VII, Section G.

H.    Action Upon Recommendations.

The legislative bodies of First Parties or the Agencies, shall not adopt any motion, Resolution or Ordinance that is contrary to any recommendation submitted to it by TPAC with respect to the Plant and its maintenance, repair, expansion, replacement, improvement and operation without a finding of fact or facts justifying such contrary action.  The finding of fact or facts shall be submitted in writing to TPAC within fifteen (15) days after any contrary action.  All policy matters as determined by the Director requiring an adoption of a motion, Resolution or Ordinance by the Council of the City of San Jose relating to the Plant and its maintenance, repair, expansion, replacement, improvement and operation, shall first be submitted to TPAC for its recommendation and in sufficient time, as determined by the Administering Agency, to allow TPAC to make a recommendation thereon.  The Council of the City of San Jose shall not act upon any such policy matter until it has received the recommendation from TPAC.  If TPAC does not submit its recommendation to the Council of the City of San Jose within the prescribed time, the City Council may adopt such a motion, Resolution or Ordinance.  If a legislative body is presented with any evidence not considered by TPAC in the making of any recommendation, then, prior to the taking of action contrary to said recommendation, if time permits as determined by the Administering Agency, the legislative body shall refer the matter back to TPAC for a supplementary report.  Said supplementary report shall be submitted by TPAC

-16-

Document received by the CA 6th District Court of Appeal.

0716B
0050\

**1934**

RJL/SF/gy
02/22/83

within thirty (30) days after reference, or such longer period
as may be designated by the legislative body.  If TPAC fails
to make such supplementary report within the time specified,
the legislative body is free to consider such evidence without
TPAC recommendations.  In the event of an emergency as
determined by the Director, the above procedure may be
waived.

I.    Expenses.

Members of TPAC shall be reimbursed for all expenses rea-
sonably incurred by them in the performance of their duties,
and that provision therefor, shall be made in the annual
budget.  Such expenses shall be considered as "operating
costs" of the Plant.

PART VII

MISCELLANEOUS PROVISIONS

A.    Effective Date and Duration of Agreement.

It is hereby agreed that the effective date of this Agreement
shall be the date on which all parties to this Agreement have
executed same, and that this Agreement shall be in force and
effect for a term beginning on said effective date and extend-
ing to, and including, and ending on January 1, 2031, or until
sooner termination by mutual written agreement of the parties
hereto or by operation of law or because of a material breach
by one of the parties hereto.

B.    Extension, Renewal or Amendment to The Agreement.

It is mutually agreed that the term of this Agreement may be
extended or renewed only by mutual written agreement of the
parties hereto and that this Agreement, including exhibits,
may be amended or supplemented by a mutual written agreement
of the parties hereto.  This Agreement shall be reviewed in
its entirety by First Parties and Agency in the year 2002.
First Parties and Agency further agree that in the year 2030,
they will meet and confer in good faith to negotiate a revised
or new Agreement.

0716B
0050B

Document received by the CA 6th District Court of Appeal.

1935

RSL/SF/gy
02/22/83

C.    Use of Treatment Plant After Expiration of Term.

If for any reason the contract cannot be renewed in the year
2031, or subsequent to the termination date, the discharging
Agency shall have the right to continue discharging to the
Plant, provided all payments of Agency's share of Plant costs
are made.  All other rights under this Agreement shall cease.

D.    Termination.

If for any reason this Agreement is terminated by mutual con-
sent of both parties, then the discharging capacity rights of
the Agency shall be considered "excess pooled capacity" pur-
suant to the terms of Paragraph III Section A.
This capacity shall be reserved for the Agency and Agency
shall continue to pay for all costs associated with such capa-
city until such time as that capacity is either purchased by
other users pursuant to the terms of this Agreement, or until
failure of the Plant to treat wastewater.

E.    Sale Or Transfers By First Parties.

Nothing in this Agreement contained shall be deemed to prohi-
bit or restrict First Parties, or either of them, from sell-
ing, granting, assigning or otherwise transferring this Agree-
ment or any part or interest therein, or the Plant or any part
or interest therein, or any right to discharge wastewater
therein and to have the same therein treated and disposed of,
to any corporation, district, governmental organization or en-
tity or to any other person or persons, provided that any such
transaction shall be subject to such rights and privileges as
First Parties and Agency may have under and by virtue of the
provisions of this Agreement.

F.    Industrial Waste Program.

The Administering Agency agrees to maintain personnel for the
specific purposes of assisting all parties with matters
concerning industrial waste.  Such responsibilities shall
include industrial waste monitoring, sampling and analysis,
technical advice and surveillance of all industrial
dischargers tributary to the Plant.  The Administering Agency

-18-

Document received by the CA 6th District Court of Appeal.

1936

RJL/SF/gy
02/22/83

agrees to be responsible for issuing notices of
non-conformance within Agency's service area for violations of
the ordinance requirements in Part II, Section D.  Agency
shall be responsible for the adoption and enforcement of any
Industrial Waste Ordinance requirements.  The Administering
Agency shall endeavor to keep all dischargers informed of
federal, state, county and city laws, rules, regulations,
standards and ordinances relating to industrial waste
requirements.

G.   Claims of Breach of Agreement or of Inequities.

In the event any party to this Agreement should at any time
claim that the other party has in any way breached or is
breaching this Agreement, or that the Agreement is inequit-
able, the complaining party shall file with the legislative
body or bodies of the other parties, and with TPAC, a written
claim of said breach or inequity, describing the alleged
breach or inequity and otherwise giving full information re-
specting the same.  TPAC shall within two (2) months at a
place specified by it, give all concerned parties full
opportunity to be heard on the matter, and shall, upon
conclusion of said hearing, give the legislative bodies of
both parties a full report of its findings and
recommendations.  Said report, findings and recommendations
shall be deemed advisory only; shall not in any way bind any
of the parties hereto; and shall not be deemed to establish
any facts, either presumptively or finally.  Upon receipt of
said report and recommendations, if any party is dissatisfied
with or disagree with same, the legislative bodies of all
parties concerned shall jointly meet with each other within
two (2) months at a place to be determined by them, for the
purpose of resolving their differences.  No action for breach
of this Agreement, and no action for any legal relief because
of any breach or alleged breach of this Agreement shall be
filed or commenced, and nothing shall be done by either party
to rescind or terminate this Agreement, unless and until the

-19-

Document received by the CA 6th District Court of Appeal.

0716B
00505

1937

RJL/SF/gy
02/22/83

above provisions of this paragraph have been complied with and
unless the complaining party has first given to the other
party three (3) months from the conclusion of said joint
meeting of said legislative bodies within which to cure any
breach or alleged breach.

H.  Liability.

It is mutually agreed that any liability of San Jose and/or
Santa Clara, or of San Jose as the administrative agency for
any damage to any such person or property arising or resulting
from any dangerous or defective condition in the Plant or any
part or property thereof, or arising or resulting from any act
or omission of San Jose or Santa Clara or their respective
officers, agents, employees or contractors, in the control,
administration, construction, expansions, installation, opera-
tion, maintenance or repair of said Plant or any part or pro-
perty thereof, shall be mutually shared and paid for by First
Parties and Agencies on the basis of operations and
maintenance or capital costs, whichever is applicable.

It is understood and agreed that First Parties in granting to
Agencies certain discharge capacity rights in the Plant and to
have wastewater treated and disposed of in said Plant, are not
guaranteeing or warranting that the Plant will be able to
satisfactorily treat such wastewater.  In the event the Plant
should for any reason other than by the gross negligence or
intentional misconduct of First Parties be incapable of
satisfactorily treating wastewater discharged into the Plant
by Agency or First Parties, First Parties shall in no way be
liable to Agency for any damages arising or resulting from or
suffered because of the failure of the Plant to satisfactorily
receive, hold, treat or otherwise dispose of wastewater.

I.  Compliance With Federal and State Laws and Regulations.

Agency and First Parties agree to comply with any and all
Federal, State, or local laws, the rules, regulations,
standards and requirements of any Federal, State, or local
board, commission, agency or similar body, and the decisions

Document received by the CA 6th District Court of Appeal.

0716B
0050B

**1938**

RJL/SF/gy
02/22/83

of any court of competent jurisdiction which must be complied
with to enable First Parties to qualify for Federal or State
grants for the construction, improvement, administration,
operation, maintenance, or repair of the Plant.

J.   Assignment.

Agency shall not assign or transfer any interest nor the per-
formance of any of Agency's obligations hereunder without the
prior written consent of First Parties, and any attempt by
Agency to so assign this Agreement or any rights, duties or
obligations arising hereunder without written consent shall be
void and of no effect.

K.   Successors and Assigns.

It is mutually agreed by all the parties hereto that the agree-
ments, covenants, conditions, limitations, restrictions and
undertakings herein contained shall, subject to the provisions
as to assignment, apply to and bind the successors and assigns
of the respective parties hereto as if they were in all cases
named.

L.   Waivers.

One or more waivers of any term, covenant or condition by
either party shall not be construed as a waiver of a subse-
quent breach of the same or any other term, covenant or condi-
tion and the consent or approval by either party to any act
shall not be deemed to waive or render unnecessary either
party's consent or approval for any subsequent similar act by
the other party.

M.   Performance and Time to be of The Essence.

It is understood and agreed that full and faithful compliance
with and performance of each and every covenant and provision
of this Agreement by the party or parties required to comply
with or perform each such covenant or provision is and shall
be of the essence; also that time is and shall be of the es-
sence; also that such full and faithful compliance with and
performance of each and every covenant and provision of this
Agreement shall be deemed to be a material condition of this
Agreement.

07168
00508

**1939**

Document received by the CA 6th District Court of Appeal.

RJL/SF/gy
02/22/83

N.  Insurance.

First Parties shall at all times maintain with responsible in-
surer or insurers sufficient insurance against loss or damage
to the Plant as is customarily maintained with respect to loss
and property of like character.  Each party hereto shall be
named as a co-insured.  First Parties shall maintain with a
responsible insurer or insurers, workmen's compensation insur-
ance and insurance against public liability and property dam-
age.  The premiums on all such insurance shall be a part of
maintenance and operating expenses.

O.  Titles and Headings.

The sub-headings and titles of this Agreement are inserted for
the convenience of reference only and shall not be taken or
considered as having any bearing on the interpretation
thereof.

P.  Notices.

All notices shall be mailed to the address designated beneath
the signatures of the parties hereto or as subsequently desig-
nated in writing by the parties.

Document received by the CA 6th District Court of Appeal.

0716B
00503

1940

RJL/SF/gy
03/02/83

PART VIII

SPECIAL PROVISIONS

A.   TERMINATION OF AGREEMENTS.

It is mutually agreed by all parties hereto that the following agreements heretofore entered into between the CITY OF SAN JOSE and COUNTY SANITATION DISTRICT #4; or between the CITY OF SANTA CLARA and COUNTY SANITATION DISTRICT #4; or between COUNTY SANITATION DISTRICT #4, and both the CITY OF SAN JOSE and the CITY OF SANTA CLARA relating to the Plant, and any and all supplements, addendums, changes, or amendments thereto, are hereby terminated.

6.   Agreement By and Between the Cities of San Jose, Santa Clara, and County Sanitation District No. 4 Providing Interm Allocation of Treatment Capacity, dated April 13, 1981.

5.   Settlement Agreement By and Between the Cities of San Jose, Santa Clara, and County Sanitation District No. 4, dated January 14, 1981.

4.   Agreement between Cities of San Jose, Santa Clara, and County Sanitation District No. 4 Relating to Sharing of Operating Costs of The Sewage Treatment Plant, dated April 29, 1976.

3.   Agreement Providing for the Sharing of Cost to be Incurred in Connection with the Employment of a Consultant for the Preparation of a Study for Ultimate Disposition of South San Francisco Bay Waste Water, dated May 26, 1970.

2.   Agreement Supplementing Agreements with CSD #4 and Cupertino Sanitary District and City of Santa Clara, dated June 1, 1966.

1.   Agreement between Cities of San Jose and Santa Clara and County Sanitation District No. 4 Relating to Sewage Treatment Plant, dated April 1, 1965.

07168

Document received by the CA 6th District Court of Appeal.

1941

RJL/SF/gy
03/01/83

B.    ANNEXATION AND DETACHMENTS

1.    GENERAL.

It is contemplated that territories within the boundaries of
Agency will become either annexed, consolidated, or otherwise
a part of either of the First Parties.  It is agreed by First
Parties and Agency that when any Agency territory becomes a
part of either of the First Parties, Agency will do all that
it can legally do to facilitate the detachment of such
territory from Agency.  In no event shall Agency be obligated
to initiate detachment proceedings.

2.    TRANSFER OF CAPACITY RIGHTS.

Agency shall, when any Agency territory becomes a part of
either of First Parties and is detached from Agency, transfer
to First Parties capacity rights as specified in Exhibit "G".

3.    PAYMENTS FOR TRANSFER OF CAPACITY RIGHTS.

The capacity rights being used by existing developments in a
territory being transferred from Agency to either of First
Parties shall be computed using the parameters of Agency's
actual discharge into the Plant and the amounts subtracted
from the amounts of capacity rights to be transferred to
determine the amount of unused capacity rights.  First Parties
shall pay Agency an amount as specified in Exhibit "F" for the
unused capacity rights transferred to either of the First
Parties.  Payment shall be made within ninety (90) days of
detachment of territory from Agency.  If the capacity rights
being used by existing developments in a territory being
transferred from Agency to either of First Parties exceeds the
amount of capacity rights being transferred, First Parties
shall be credited an amount as specified in Exhibit "G"  for
the excess used capacity.  Credits shall be applied to future

Document received by the CA 6th District Court of Appeal.

0716B

**1942**

RJL/SF/gy
03/01/83

payments to be made by the First Parties to the Agency
pursuant to this Section.

IN WITNESS WHEREOF, San Jose, Santa Clara and County Sanitation
District #4 have caused this Agreement to be executed in their respective
names and their respective seals to be affixed hereunto by their duly
authorized officers, all as of the date first above written.

APPROVED AS TO FORM:

_____
Deputy City Attorney

ATTEST:

_____
City Clerk    Helen E. Jackson

CITY OF SAN JOSE, a municipal
corporation

By _____
        Mayor    Thomas McEnery

Address    CITY CLERK
           Room 115, City Hall
           801 No. First Street
           San Jose, Calif. 95110

Telephone No. (408) 277-4424

APPROVED AS TO FORM:

_____
Deputy City Attorney

ATTEST:

_____
City Clerk

CITY OF SANTA CLARA, a municipal
corporation

By _____
        Mayor

By _____
        City Manager

Address 1500 WARBURTON AVE

SANTA CLARA, Calif   95050

Telephone No. (408) 984-3101

"First Parties"

APPROVED AS TO FORM:

_____
Attorney

ATTEST:

_____
Clerk

COUNTY SANITATION DISTRICT #4

By _____
        Chairperson Brent Ventura

By _____
        Secretary of
        Board of Directors

Address COUNTY SANITATION DISTRICT NO. 4
        OF SANTA CLARA COUNTY
        100 E. SUNNYOAKS AVENUE
        CAMPBELL, CALIFORNIA 95008

Telephone No. (408) 378-2407

"Agency"

-25-

0716B
0050B

**1943**

Document received by the CA 6th District Court of Appeal.

12/82

EXHIBIT A

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

TREATMENT PLANT CAPACITY ALLOCATIONS


The attached Tables 1-5 contain the Agencies' and First Parties'
present permanent capacities in the 101 MGD Plant and capacities
achieved by chemical use or implementation of the Intermediate-term
Improvements and First Stage Expansion.

Table 1 - 101 MGD Present Permanent Capacity.  The "Cost Allocation of
Intermediate-term Improvements", excluding Phase II C, was approved by
the Treatment Plant Advisory Committee on June 9, 1982.  The capacities
shown on Table 1 are the Agencies' and First Parties' downrated,
permanent capacities in the 101 MGD Plant which served as the basis for
the cost sharing calculations.

Table 2 - 132 MGD Chemically Assisted Plant.  The Agencies' and First
Parties' capacities contained in Table 2 were determined using the same
method as in the "Cost Allocation of Intermediate-term Improvements."
That is, the Agencies' and First Parties' 1979 anticipated capacities
were reduced proportionally to determine their capacities in the 132
MGD chemically assisted Plant.

Table 3 - 138 MGD Chemically Assisted Plus Intermediate-term Phase I.
Capacity increases beyond 132 MGD are allocated on a 60%-40% basis,
with 60% of additional capacity going to the Agencies and 40% going to
the First Parties, until such time as the Agencies' capacities in the
143 MGD Plant are restored.


A-1 of 7

Document received by the CA 6th District Court of Appeal.

The Agencies' 60% of additional capacity is redistributed to each Agency proportionally based on their existing capacities. In instances where an Agency does not need its full allotment of increased capacity, the exess capacity is reallocated to the other Agencies.

First Parties share 40% of additional capacity based on assessed valuation as provided in their 1959 Agreement.

Table 4 - 143 MGD Plant, Intermediate-term Improvements Implemented. Table 4 contains the Agencies' and First Parties' share of the permanent 143 MGD Plant capacity to be provided by completion of the Intermediate-term Improvements.

Table 5 - 167 MGD Plant, First Stage Expansion. Increased capacity was allocated only to those Agencies that have elected to participate in Plant expansion to 167 MGD. Milpitas was allocated 2 MGD of the 24 MGD expansion, and the First Parties' share the remaining 22 MGD based on assessed valuation. BOD, SS, and Ammonia capacities were allocated in the same proportion as Flow. The other Agencies' capacities remain the same as in the 143 MGD Plant (Table 4).

Document received by the CA 6th District Court of Appeal.

12/82

TABLE 1

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

101 MGD PLANT
SUMMARY OF CAPACITY ALLOCATION*
(Present Permanent Capacity)

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San Jose | 63.804 | 316.391 | 232.025 | 14.169 |
| Santa Clara | 14.579 | 72.300 | 53.018 | 3.237 |
| Subtotal | 78.383 | 388.691 | 285.043 | 17.406 |
| CSD #4 | 10.100 | 30.614 | 23.630 | 2.442 |
| Cupertino | 5.428 | 13.420 | 11.551 | 1.426 |
| Milpitas | 5.365 | 12.968 | 13.288 | 1.619 |
| CSD #2-3 | 1.250 | 4.832 | 3.685 | 0.386 |
| Burbank | 0.253 | 0.676 | 0.674 | 0.081 |
| Sunol | 0.221 | 1.799 | 2.129 | 0.040 |
| Subtotal | 22.617 | 64.309 | 54.957 | 5.994 |
| TOTAL | 101.000 | 453.000 | 340.000 | 23.400 |

*The term "capacity" is defined as the mean peak five-day dry weather
plant treatment capacity.

A-3 of 7

Document received by the CA 6th District Court of Appeal.

1946

12/82

TABLE 2

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

132 MGD PLANT
SUMMARY OF CAPACITY ALLOCATION*
(Chemically Assisted Capacity)

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San Jose | 83.386 | 370.175 | 346.671 | 15.489 |
| Santa Clara | 19.054 | 84.585 | 79.215 | 3.539 |
| Subtotal | 102.440 | 454.760 | 425.886 | 19.028 |
| CSD #4 | 13.200 | 35.561 | 36.851 | 2.370 |
| Cupertino | 7.095 | 16.327 | 18.014 | 1.506 |
| Milpitas | 7.012 | 15.777 | 20.723 | 1.486 |
| CSD #2-3 | 1.634 | 5.311 | 3.724 | 0.479 |
| Burbank | 0.330 | 0.823 | 1.052 | 0.070 |
| Sunol | 0.289 | 1.441 | 1.750 | 0.061 |
| Subtotal | 29.560 | 75.240 | 82.114 | 5.972 |
| TOTAL | 132.000 | 530.000 | 508.000 | 25.000 |

*The term "capacity" is defined as the mean peak five-day dry weather
plant treatment capacity.

A-4 of 7

Document received by the CA 6th District Court of Appeal.

1947

12/82

TABLE 3

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

138 MGD PLANT
SUMMARY OF CAPACITY ALLOCATION*
(Chemically Assisted Plus Intermediate-term Phase I)

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San Jose | 85.340 | 375.059 | 351.230 | 15.489 |
| Santa Clara | 19.500 | 85.701 | 80.256 | 3.539 |
| Subtotal | 104.840 | 460.760 | 431.486 | 19.028 |
| CSD #4 | 13.550 | 35.561 | 37.346 | 2.370 |
| Cupertino | 8.586 | 20.566 | 21.665 | 1.506 |
| Milpitas | 8.486 | 20.360 | 24.922 | 1.486 |
| CSD #2-3 | 1.790 | 5.311 | 3.724 | 0.479 |
| Burbank | 0.399 | 1.001 | 1.107 | 0.070 |
| Sunol | 0.349 | 1.441 | 1.750 | 0.061 |
| Subtotal | 33.160 | 84.240 | 90.514 | 5.972 |
| TOTAL | 138.000 | 545.000 | 522.000 | 25.000 |

*The term "capacity" is defined as the mean peak five-day dry weather
plant treatment capacity.

A-5 of 7

Document received by the CA 6th District Court of Appeal.

1948

12/82

TABLE 4

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

143 MGD PLANT
SUMMARY OF CAPACITY ALLOCATION*
(Intermediate-term Improvements Implemented)

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San Jose | 89.385 | 389.759 | 358.460 | 15.489 |
| Santa Clara | 20.425 | 89.060 | 81.909 | 3.539 |
| Subtotal | 109.810 | 478.819 | 440.369 | 19.028 |
| CSD #4 | 13.550 | 35.561 | 37.346 | 2.370 |
| Cupertino | 8.600 | 20.566 | 22.663 | 1.506 |
| Milpitas | 8.500 | 22.301 | 25.041 | 1.486 |
| CSD #2-3 | 1.790 | 5.311 | 3.724 | 0.479 |
| Burbank | 0.400 | 1.001 | 1.107 | 0.070 |
| Sunol | 0.350 | 1.441 | 1.750 | 0.061 |
| Subtotal | 33.190 | 86.181 | 91.631 | 5.972 |
| TOTAL | 143.000 | 565.000 | 532.000 | 25.000 |

*The term "capacity" is defined as the mean peak five-day dry weather
plant treatment capacity.

A-6 of 7

Document received by the CA 6th District Court of Appeal.

1949

12/82

TABLE 5

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

167 MGD PLANT
SUMMARY OF CAPACITY ALLOCATION*
(First Stage Expansion)

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San Jose | 107.293 | 420.351 | 406.215 | 19.219 |
| Santa Clara | 24.517 | 96.051 | 92.821 | 4.392 |
| Subtotal | 131.810 | 516.402 | 499.036 | 23.611 |
| CSD #4 | 13.550 | 35.561 | 37.346 | 2.370 |
| Cupertino | 8.600 | 20.566 | 22.663 | 1.506 |
| Milpitas | 10.500 | 25.718 | 30.374 | 1.903 |
| CSD #2-3 | 1.790 | 5.311 | 3.724 | 0.479 |
| Burbank | 0.400 | 1.001 | 1.107 | 0.070 |
| Sunol | 0.350 | 1.441 | 1.750 | 0.061 |
| Subtotal | 35.190 | 89.598 | 96.964 | 6.389 |
| TOTAL | 167.000 | 606.000 | 596.000 | 30.000 |

*The term "capacity" is defined as the mean peak five-day dry weather
plant treatment capacity.

A-7 of 7

Document received by the CA 6th District Court of Appeal.

1950

EXHIBIT B

12/82

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

REPLACEMENT COST OF PLANT & EQUIPMENT
JUNE 1982

| FACILITY | ACQUISITION YEAR | ORIGINAL COST | REPLACEMENT COST |
|---|---|---|---|
| Original Primary Plant | 1958 | $ 3,786,400 | $ 20,013,700 |
| Plant Additions | 1960 | 1,370,200 | 6,661,200 |
| Plant Additions and New Secondary Facility | 1963 | 24,166,800 | 112,840,300 |
| Final Tanks | 1965 | 1,183,000 | 4,822,300 |
| Digesters | 1966 | 993,600 | 3,673,000 |
| Other Projects 1965-66 | 1965 | 103,900 | 423,500 |
| Other Projects 1966-67 | 1966 | 253,800 | 938,200 |
| Other Projects 1967-68 | 1967 | 24,200 | 81,800 |
| Other Projects 1968-69 | 1968 | 322,100 | 1,003,700 |
| Other Projects 1969-70 | 1969 | 59,900 | 173,100 |
| Other Projects 1970-71 | 1970 | 102,700 | 276,600 |
| Sludge Lagoons | 1968 | 839,000 | 2,614,500 |
| Foam Flotation Program | 1970 | 23,000 | 61,900 |
| 1970 94 MGD Improvements | 1970 | 5,809,400 | 15,646,400 |
| 1970 66 MGD Additions | 1970 | 23,049,000 | 62,077,600 |
| Advanced Waste Treatment Facilities | 1977 | 62,810,900 | 95,549,200 |
| Other Projects 1977-78 | 1977 | 745,500 | 1,134,100 |
| Other Projects 1978-79 | 1978 | 312,200 | 435,100 |
| Other Projects 1979-80 | 1979 | 1,421,100 | 1,872,500 |
| Other Projects 1980-81 | 1980 | 2,028,100 | 2,250,900 |
| TOTAL | | $129,404,800 | $332,549,600 [1] |

[1] Plant and equipment replacement cost is distributed to parameters using the percentages contained in the most current Revenue Program (Form 8, "Summary of Distribution of Capital Costs").

NOTE:

A.  Major plant facilities or equipment items shall be added to this Exhibit in the year purchased.  Construction projects shall be added to this Exhibit in the year of acceptance at full construction value.

B.  Process related facilities and equipment that cost in excess of $2 million shall be allocated to parameters (flow, BOD, SS, ammonia) based on engineering design. Capital costs that are less than $2 million and/or are not process related shall be allocated to parameters using the replacement allowance percentages contained in the most current Revenue Program.

C.  This Exhibit shall not include replacement or rehabilitation costs.

D.  Facilities and equipment sold or otherwise disposed shall be deleted from this Exhibit.

E.  This Exhibit shall be updated annually using the June ENR (San Francisco) construction cost index.

Document received by the CA 6th District Court of Appeal.

1951

12/82

EXHIBIT C

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
LAND DISTRIBUTION

1.  Land participation shall be based upon the 167 MGD capacity (Flow,
    BOD, Suspended Solids, and Ammonia) of the Plant.  This means that
    any Agency's percentage of participation shall be based upon their
    capacity rights in the 167 MGD Plant.

2.  Percentage of participation at the Plant shall be based upon the
    total 1,764 acres and not on an individual parcel basis.

3.  The value of the existing acreage shall be as developed in the
    attached San Jose/Santa Clara Water Pollution Control Plant Land
    Purchases which is based upon 1982 values.  No additional interest
    shall be applied to the land cost values from June 1982 forward.
    These values have been developed using the Plant allocation
    percentages and by present worthing the value of the land to 1982
    dollars using interest received on investments by the City of San
    Jose.

4.  Agencies which still owe the City of San Jose and County Sanitation
    District No. 4 for their percentage of land shall pay all the costs
    of this land from sale, lease or rental revenues to be received
    from the Water Pollution Control Plant properties.  Percentage of
    revenue shall be based upon each Agency's full capacity percentage.
    The land will be paid off only from sale, lease or rental revenues
    of the Plant property and shall have no fixed term.

5.  Sale, lease or rental revenues from Water Pollution Control Plant
    property shall be first applied to an Agency's debt, and only upon
    completion of that debt will revenues be passed on to the Agency.

Document received by the CA 6th District Court of Appeal.

1952

6.  If and when expansion of the facilities takes place in the future,
    land values shall again be adjusted based upon the new MGD
    denominator.  Each Agency's percentage of participation in land
    shall at that time be recomputed based upon total 1982 land cost
    shown in the Land Cost Allocation.

7.  All purchases of land in the future shall be distributed to all
    Agencies in the percentage of discharge capacity at the Plant.

Document received by the CA 6th District Court of Appeal.

1953

12/82

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
LAND COST ALLOCATION METHODOLOGY

1.   Attachment A is a Treatment Plant Property map.

2.   Table 1 includes the original land purchase price for each parcel.
     This amount was then applied to the City of San Jose's average
     yearly rate of return for investments and compounded to establish a
     June 30, 1982 value for all land.

3.   Recently the Technical Committee, Treatment Plant Advisory
     Committee, San Jose and Santa Clara City Councils approved the
     replacement allowance as the method of allocating future capital
     costs which are not process related.

     Tables 2, 3, and 4 show the allocation of the replacement cost of
     the existing Primary, Secondary, and Advanced Waste Treatment
     Facilities, and the Capital Improvement Program to First Parties
     and Agencies based on their 167 MGD Plant capacities.

     Table 4 contains First Parties' and Agencies' proportions of the
     replacement cost of the 167 MGD Plant which appear as "% Share" on
     Table 5 and were used to determine the amounts that should have
     been paid for land.

4.   Table 5 shows First Parties' and Agencies' share of land costs.
     First Parties and Agencies paid in monies through the years for
     land purchases.  Each payment for land was applied to the City of
     San Jose's average yearly rate of return for investments and
     compounded to establish a June 30, 1982 value for each payment.

     First Parties' and Agencies' payments at June 30, 1982 values were
     transferred to the "Amount Paid" column of Table 5.

     By subtracting the "Amount Paid" column from the "Amount Should
     Have Paid" column in Table 5, the amounts due or credits due are
     determined.

C-3 of 9

Document received by the CA 6th District Court of Appeal.



C-4 of 6

Grand
Boulevard

Los Esteros Road

First Street

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

1764 ACRES

Zanker
Road

Coyote
Creek

LEGEND:

— ·· — Boundary Of
SJ/SC WPCP

LAND MAP
SJ/SC WPCP

Drawn By:  MJE
August 9, 1982

Scale NTS

Highway 237

ATTACHMENT A

d by the CA 6th District Court of Appeal.

**1955**

TABLE 1

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
LAND PURCHASES

| Parcel | Acres | Original Cost | Purchase Date | June 30, 1982 Cost* |
|---|---|---|---|---|
| Berger Williamson | 43.668 | $    15,284 | 8/49 | $     88,282 |
| Coolidge Quitclaim | -- | 150 | 3/52 | 805 |
| John R. Watrous | 106.747 | 101,043 | 7/54 | 490,206 |
| John R. Medina | 16.970 | 15,067 | 8/54 | 73,106 |
| Other Costs (Easement-Condemnation) | -- | 23,468 | 1956-57 | 106,183 |
| Curtner-Zanker | .776 | 1,000 | 7/55 | 5,082 |
| Los Altos Garbage | 2.045 | 1,000 | 8/55 | 4,692 |
| James Clayton | 181.680 | 182,160 | 4/58 | 795,944 |
| A. M. Standish | .197 | 120 | 10/61 | 457 |
| Spring Valley | .180 | 50 | 4/62 | 189 |
| Beatrice Standish | 39.888 | 55,109 | 7/62 | 202,258 |
| Other Costs (Unallocated) | -- | 603 | 3/65 | 2,048 |
| Nine-Par | 46.970 | 201,515 | 1/68 | 596,405 |
| A. L. Kricheberg | 41.13 | 162,170 | 4/69 | 452,708 |
| Anselmo-Campi | 34.48 | 208,771 | 7/69 | 541,583 |
| Casteel | 117.78 | 932,240 | 11/69 | 2,418,376 |
| Chisolm-Hopham | Parcel | 5,232 | 8/70 | 12,738 |
| Rankin-Gilman | Parcel | 600 | 8/70 | 1,461 |
| Owens-Corning | 3.16 | 23,743 | 11/70 | 57,801 |
| Standish | 630.0 | 2,831,034 | 4/71 | 6,892,016 |
| Owens-Corning | 2.58 | 17,133 | 6/71 | 41,713 |
| Phillips-Bosio | Parcel | 2,136 | 12/71 | 4,943 |
| Zanker Ranch | 145.7 | 1,496,478 | 8/72 | 3,446,515 |
| Garcia | 19.54 | 236,328 | 12/72 | 517,884 |
| Martin-Moore | 16.47 | 200,446 | 1/73 | 439,257 |
| Tempco | 12.33 | 327,153 | 7/75 | 566,730 |
| County of Santa Clara | Parcel | 4,495 | 1975-76 | 7,788 |
| County of Santa Clara | 2.98 | 13,476 | 4/76 | 20,716 |
| Brazil | 54.546 | 513,359 | 7/76 | 841,819 |
| McCarthy (1st) | 43.0 | 483,880 | 12/76 | 793,479 |
| McCarthy (2nd) | 43.0 | 483,879 | 4/77 | 793,478 |
| McCarthy (3rd) | 43.0 | 483,879 | 1/78 | 743,861 |
| Other Costs (Unallocated) | -- | 47,693 | 1978-79 | 67,043 |
| Calvo | 58.415 | 586,405 | 1/78 | 901,473 |
| Leslie Salt | Parcel | 820 | 9/78 | 1,153 |
| Graham-Cassin | 52.8 | 3,339,932 | 8/80 | 3,775,793 |
| Geomax | 4.2 | 273,972 | 1/81 | 291,849 |
| TOTAL: | 1,764.23 | $13,271,823 | | $25,997,834 |

*June 30, 1982 cost was calculated using the City of San Jose's yearly
12-month average return on investments compounded from the beginning of
the fiscal year following the date of purchase (per Technical Committee
meeting of September 7, 1982).

**Represents costs not allocable to a specific land purchase (e.g.,
appraisal of land not purchased).

Document received by the CA 6th District Court of Appeal.

**1956**

TABLE 2

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT

SUMMARY OF DISTRIBUTION OF CAPITAL COSTS TO PARAMETERS

| | FLOW | BOD | SS | NH$_3$ | TOTAL PROJECT COST (1) |
|---|---|---|---|---|---|
| Primary, (1) Secondary AWTF | 58.850 % $ 195,705,700 | 19.357 % $ 64,371,700 | 9.827 % $ 32,679,700 | 11.966 % $ 39,792,900 | 100% $332,550,000 |
| Capital Improvement Program | 31.359 % $ 44,962,000 | 46.390 % $ 66,511,000 | 17.335 % $ 24,854,000 | 4.916 % $ 7,048,000 | 100% $143,375,001 |
| TOTAL | 50.568 % $ 240,667,700 | 27.501 % $ 130,882,700 | 12.089 % $ 57,533,700 | 9.842 % $ 46,840,900 | 100% $475,925,000 |

(1) Cost of existing facilities inflated to 1982 cost using Engineering News Record construction cost index.

C-6 of 6

1957

Filed by the CA 6th District Court of Appeal.

TABLE 3                                                                12/82

SAN-JOSE/SANTA-CLARA WATER POLLUTION CONTROL PLANT

SUMMARY OF CAPACITY ALLOCATIONS

| AGENCY | FLOW | | BOD | | SS | | NH$_3$ | |
|---|---|---|---|---|---|---|---|---|
| | MGD | % | K lbs/day | % | K lbs/day | % | K lbs/day | % |
| San Jose[2] | 107.293 | 64.247 | 420.351 | 69.365 | 406.215 | 68.157 | 19.219 | 64.063 |
| Santa Clara[2] | 24.517 | 14.681 | 96.051 | 15.850 | 92.821 | 15.574 | 4.392 | 14.640 |
| Subtotal | 131.810 | 78.928 | 516.402 | 85.215 | 499.036 | 83.731 | 23.611 | 78.703 |
| CSD #4[1] | 13.550 | 8.114 | 35.561 | 5.868 | 37.346 | 6.266 | 2.370 | 7.900 |
| Cupertino[1] | 8.600 | 5.150 | 20.566 | 3.394 | 22.663 | 3.802 | 1.506 | 5.020 |
| Milpitas[2] | 10.500 | 6.287 | 25.718 | 4.244 | 30.374 | 5.096 | 1.903 | 6.343 |
| CSD #2-3[1] | 1.790 | 1.072 | 5.311 | 0.876 | 3.724 | 0.625 | 0.479 | 1.597 |
| Burbank[1] | 0.400 | 0.240 | 1.001 | 0.165 | 1.107 | 0.186 | 0.070 | 0.233 |
| Sunol[1] | 0.350 | 0.209 | 1.441 | 0.238 | 1.750 | 0.294 | 0.061 | 0.204 |
| TOTAL | 167.000 | 100% | 606.000 | 100% | 596.000 | 100% | 30.000 | 100% |

[1] Capacity allocations in the restored 143 MGD plant which were used in the compromise cost allocation of Intermediate-term Improvements.

[2] Increased BOD, SS, and ammonia capacities in the 167 MGD plant allocated to San Jose, Santa Clara and Milpitas in the same proportion as flow:  San Jose/Santa Clara 22/24 and Milpitas 2/24.

C-70H

d by the CA 6th District Court of Appeal.

TABLE 4

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
ALLOCATED SHARE OF COST OF FACILITIES

| AGENCY | FLOW | BOD | SS | AMMONIA | TOTAL | SHARE OF TOTAL COST |
|---|---|---|---|---|---|---|
| San Jose | $154,622,600 | $ 90,786,600 | $39,213,200 | $30,007,900 | $314,630,300 | 66.109% |
| Santa Clara | 35,332,000 | 20,744,900 | 8,960,300 | 6,857,500 | 71,894,700 | 15.106% |
| Subtotal | $189,954,600 | $111,531,500 | $48,173,500 | $36,865,400 | $386,525,000 | 81.215% |
| CSD #4 | $ 19,527,200 | $ 7,680,400 | $ 3,605,100 | $ 3,700,400 | $ 34,513,100 | 7.252% |
| Cupertino | 12,393,700 | 4,441,800 | 2,187,700 | 2,351,400 | 21,374,600 | 4.491% |
| Milpitas | 15,131,800 | 5,554,500 | 2,932,100 | 2,971,300 | 26,589,700 | 5.587% |
| CSD #2-3 | 2,579,600 | 1,147,100 | 359,500 | 747,900 | 4,834,100 | 1.016% |
| Burbank | 576,400 | 216,200 | 106,900 | 109,300 | 1,008,800 | 0.212% |
| Sunol | 504,400 | 311,200 | 168,900 | 95,200 | 1,079,700 | 0.227% |
| TOTAL | $240,667,700 | $130,882,700 | $57,533,700 | $46,840,900 | $475,925,000 | 100% |

C-8
of
9

by the CA 6th District Court of Appeal.

12/82

TABLE 5

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

LAND COST ALLOCATION

| AGENCY | % SHARE | AMOUNT SHOULD HAVE PAID 1982 DOLLARS | AMOUNT PAID 1982 DOLLARS | AMOUNT PAYABLE <DUE> |
|---|---|---|---|---|
| San Jose | 66.109 | $17,186,908 | $19,061,883 | <$1,874,975> |
| Santa Clara | 15.106 | 3,927,233 | 3,216,962 | 710,271 |
| CSD #4 | 7.252 | 1,885,363 | 1,945,035 | <    59,672> |
| Cupertino | 4.491 | 1,167,563 | 1,141,582 | 25,981 |
| Milpitas | 5.587 | 1,452,499 | 523,426 | 929,073 |
| CSD #2-3 | 1.016 | 264,138 | 89,477 | 174,661 |
| Burbank | 0.212 | 55,115 | 9,203 | 45,912 |
| Sunol | 0.227 | 59,015 | 10,266 | 48,749 |
| TOTAL | 100% | $25,997,834 | $25,997,834 | -0- |

C-9 of 9

Document received by the CA 6th District Court of Appeal.

1960

12/82

EXHIBIT D

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

PARTICIPATION IN
INTERMEDIATE-TERM AND FIRST STAGE EXPANSION PROJECTS

The estimated construction and design cost of the Capital Improvement
Program (CIP) is $143,375,000 and is comprised of the Intermediate-term
Improvements Project ($112,940,000) for restoration of the Plant
capacity to 143 MGD and the First Stage Expansion Project ($30,435,000)
for expansion of Plant capacity to 167 MGD.

INTERMEDIATE-TERM IMPROVEMENT PROJECTS
On June 9, 1982 the Treatment Plant Advisory Committee (TPAC) approved
a cost sharing method whereby First Parties and Agencies would
participate in Intermediate-term Improvement projects (excluding Phase
II C) proportionately, based on the additional capacity to be would
received.  The San Jose City Council has deferred construction of Phase
II C pending analysis of the reduction in flow anticipated by the food
processing industry.

The cost sharing method was a compromise of two concepts for allocating
Intermediate-term Improvement project costs among First Parties and
Agencies---(1) Alternate G', which allocates costs based on flow and
loadings, and (2) Alternate B, which allocates costs based on flow
only.  The cost sharing compromise required First Parties and Agencies
to pay 90% of their allocated costs based on Alternate G' plus 10% of
their allocated costs based on Alternate B.  Both Alternates G' and B
recognized the fact that there are different capacity rights in the
Advanced Waste Treatment Facilities and the secondary treatment
process.

Tables 1-4 are based on the compromise cost sharing method approved by
TPAC and include Phase II C, even though deferred, to account for all
Intermediate-term Improvement project costs:

Document received by the CA 6th District Court of Appeal.

**1961**

Table 1 - Participation in Intermediate-term Improvement Projects, Alternate G' Cost Sharing Concept.  Contains First Parties' and Agencies' percentage shares of Flow, BOD, SS, and Ammonia costs under Alternate G'.

Table 2 - Intermediate-term Improvements Project Cost Allocation According to Constituent. Contains CH2M Hill's estimated project costs which will be shared by First Parties and Agencies in the proportions contained in Table 1.

Table 3 - Participation in Intermediate-term Improvement Projects, Alternate B Cost Sharing Concept.  Contains First Parties' and Agencies' percentage shares of costs taking into account the different capacity rights in Plant facilities.

Table 4 - Intermediate-term Improvements Project Cost.  Contains CH2M Hill's estimated project costs which will be shared by First Parties and Agencies in the proportions contained in Table 3.

Table 5 - Participation in Intermediate-term Improvement Projects. This is the compromise cost sharing formula as applied to the estimated Intermediate-term Improvement project costs, excluding Phase II C.

First Parties' and Agencies' shares of the Intermediate-term Improvement project costs shall be determined by adding 90% of their allocated costs based on Alternate G   (Tables 1 and 2) and 10% of their allocated costs based on Alternate B (Tables 3 and 4). Recognizing that the compromise cost sharing was based on estimated costs and that the extent of participation in Intermediate-term Improvement costs is based on the additional capacity to be received, it is intended that the estimated costs shown in Tables 2 and 4 shall be adjusted when actual costs are determined and that First Parties' and Agencies' percentage shares of costs shown in Tables 1 and 3 shall remain constant.

D-2 of 10

Document received by the CA 6th District Court of Appeal.

**1962**

FIRST STAGE EXPANSION

San Jose and Santa Clara, as joint owners of the Plant, and Milpitas
will participate in the First Stage Expansion project.  The First Stage
Expansion Project will provide an additional 24 MGD (143 to 167 MGD) of
Plant capacity.  First Parties and Milpitas shall participate
proportionately in the expansionary cost, based on the additional
capacity to be received.

   Table 6 – Participation in First Stage Expansion Project.   Contains
   First Parties' and Milpitas' percentage shares of costs.

   Table 7 – First Stage Expansion Project.   Contains CH2M Hill's
   estimated project costs.

It is intended that First Parties' and Milpitas' percentage share of
cost shown on Table 5 shall remain constant and that the estimated
costs shown on Table 6 shall be adjusted when actual costs are
determined.

Document received by the CA 6th District Court of Appeal.

12/82

TABLE 1

San Jose/Santa Clara
Water Pollution Control Plant

PARTICIPATION IN INTERMEDIATE-TERM PROJECTS [1]

ALTERNATE G' COST SHARING CONCEPT

| AGENCY | FLOW AWTF | FLOW SECONDARY | BOD | SS | AMMONIA |
|---|---|---|---|---|---|
| San Jose/Santa Clara [2] | 77.243 | 74.833 | 80.205 | 80.718 | 88.125 |
| CSD No. 4 | 9.485 | 8.214 | 4.393 | 7.141 | -0- |
| Cupertino | 6.000 | 7.548 | 6.366 | 5.785 | 5.000 |
| Milpitas | 5.939 | 7.452 | 8.321 | 6.117 | -0- |
| CSD No. 2-3 | 0.818 | 1.286 | 0.429 | 0.016 | 5.625 |
| Burbank | 0.273 | 0.357 | 0.286 | 0.223 | -0- |
| Sunol | 0.242 | 0.310 | -0- | -0- | 1.250 |
| TOTAL | 100% | 100% | 100% | 100% | 100% |

[1] The percentages presented in this table represent First Parties' and Agencies' shares of capacity provided by the Intermediate-term projects.

[2] San Jose and Santa Clara shall share cost and capacity between themselves in accordance with their 1959 Agreement (i.e., assessed valuation).

Document received by the CA 6th District Court of Appeal.

**1964**

12/82

TABLE 2

San Jose/Santa Clara
Water Pollution Control Plant

INTERMEDIATE-TERM IMPROVEMENT PROJECTS
COST ALLOCATION ACCORDING TO CONSTITUENT
(x $1 million)

| PROJECT | TOTAL | FLOW AWTF | FLOW SECONDARY | BOD | SS | AMMONIA |
|---|---|---|---|---|---|---|
| 1982 Priority Imp. | $ 2.020 | $2.020 | $ — | $ — | $ — | $ — |
| Intermediate-term Improvements Phase I | 10.470 | 3.484 | — | — | — | 6.986 |
| Sludge Process – Inter- mediate | 16.305 | — | — | 5.707 | 10.598 | — |
| Intermediate-term Improvements Phase II A & B | 43.942 | — | 12.750 | 21.830 | 9.362 | |
| Intermediate-term Improvements Phase II C | 40.203 | — | 4.009 | 36.194 | — | |
| TOTAL | $112.940 | $5.504 | $16.759 | $63.731 | $19.960 | $6.98 |

SOURCE:   CH2M Hill's "Facilities and Cost Allocation Analysis", January 1982.

CH2M Hill's "Technical Memorandum, Alternate San Jose/Santa Clara Water
Pollution Control Plant Cost Allocation", March 1982 (revised because of
decreased cannery loads).

CH2M Hill's letter dated January 20, 1982, Subject:  Phasing Schedule
of Plant Improvement (revised because of decreased cannery load).

Document received by the CA 6th District Court of Appeal.

1965

12/82

TABLE 3

San Jose/Santa Clara
Water Pollution Control Plant

PARTICIPATION IN INTERMEDIATE-TERM PROJECTS[1]
ALTERNATE B COST SHARING CONCEPT

| AGENCY | AWTF | SECONDARY |
|---|---|---|
| San Jose/Santa Clara[2] | 77.243 | 74.833 |
| CSD No. 4 | 9.485 | 8.214 |
| Cupertino | 6.000 | 7.548 |
| Milpitas | 5.939 | 7.452 |
| CSD No. 2-3 | 0.818 | 1.286 |
| Burbank | 0.273 | 0.357 |
| Sunol | 0.242 | 0.310 |
| TOTAL | 100% | 100% |

[1] The percentages presented in this table represent the First Parties'
and Agencies' shares of flow capacity provided by the Intermediate-
term projects.

[2] San Jose and Santa Clara shall share cost and capacity between themselves
in accordance with their 1959 Agreement (i.e., assessed valuation).

D-6 of 10

1966

Document received by the CA 6th District Court of Appeal.

12/82

## TABLE 4

San Jose/Santa Clara
Water Pollution Control Plant

INTERMEDIATE-TERM PROJECT COSTS

(x $1 million)

| PROJECT | TOTAL | AWTF | SECONDARY |
|---|---|---|---|
| 1982 Priority Improvements | $ 2.020 | $ 2.020 | $ — |
| Intermediate-term Improvements Phase I | 10.470 | 10.470 | — |
| Sludge Process - Intermediate | 16.305 | 16.305 | — |
| Intermediate-term Improvements Phase II A & B | 43.942 | — | 43.942 |
| Intermediate-term Improvements Phase II C | 40.203 | — | 40.203 |
| TOTAL | $112.940 | $28.795 | $84.145 |

Document received by the CA 6th District Court of Appeal.

1967

12/82

## TABLE 5

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

PARTICIPATION IN INTERMEDIATE-TERM PROJECTS[1]

COMPROMISE ALTERNATE:  90% G' PLUS 10% B

(x $1 million)

| AGENCY | % | COMPROMISE 90% G' PLUS 10% B | ALTERNATE G' 100% | ALTERNATE G' 90% | ALTERNATE B 100% | ALTERNATE B 10% |
|---|---|---|---|---|---|---|
| San Jose | 64.7 | $47.085 | $47.332 | $42.598 | $44.871 | $4.487 |
| Santa Clara | 14.8 | 10.759 | 10.815 | 9.734 | 10.253 | 1.025 |
| Subtotal (100%) | 79.5 | $57.844 | $58.147 | $52.332 | $55.124 | $5.512 |
| CSD #4 | 6.1 | 4.418 | 4.204 | 3.784 | 6.340 | 0.634 |
| Cupertino | 6.3 | 4.599 | 4.549 | 4.094 | 5.045 | 0.505 |
| Milpitas | 6.6 | 4.809 | 4.789 | 4.310 | 4.985 | 0.499 |
| CSD #2-3 | 1.0 | 0.731 | 0.723 | 0.651 | 0.801 | 0.080 |
| Burbank | 0.3 | 0.189 | 0.185 | 0.166 | 0.236 | 0.023 |
| Sunol | 0.2 | 0.147 | 0.140 | 0.126 | 0.206 | 0.021 |
| TOTAL | 100% | $72.737 | $72.737 | $65.463 | $72.737 | $7.274 |

[1] Excluding Phase IIC.

Document received by the CA 6th District Court of Appeal.

1968

12/82

## TABLE 6

### San Jose/Santa Clara
### Water Pollution Control Plant

### PARTICIPATION IN FIRST STAGE EXPANSION

| AGENCY | %[1] | ESTIMATED COST |
|---|---|---|
| San Jose/Santa Clara[2] | 91.667 | $27.899 |
| CSD #4 | –0– | –0– |
| Cupertino | –0– | –0– |
| Milpitas | 8.333 | 2.536 |
| CSD #2-3 | –0– | –0– |
| Burbank | –0– | –0– |
| Sunol | –0– | –0– |
| TOTAL | 100% | $30.435 |

[1] Represents the First Parties' and Milpitas' shares of 24 MGD provided by the First Stage Expansion:  San Jose/Santa Clara 22 MGD and Milpitas 2 MGD.  BOD, SS, and ammonia capacity shall be allocated in the same proportions.

[2] San Jose and Santa Clara shall share cost and capacity between themselves in accordance with their 1959 Agreement (i.e., assessed valuation).

Document received by the CA 6th District Court of Appeal.

**1969**

12/82

TABLE 7

San Jose/Santa Clara
Water Pollution Control Plant

FIRST STAGE EXPANSION

(x $1 million)

| PROJECT | COST |
|---|---|
| First Stage Expansion – Liquid Stream | $22.905 |
| Sludge Process | 7.530 |
| TOTAL | $30.435 |

SOURCE:  CH2M Hill's "Facilities and Cost Allocation Analysis",
January 1982.

CH2M Hill's "Technical Memorandum, Alternate San Jose/Santa Clara
Water Pollution Control Plant Cost Allocation", March 1982 (revised
because of decreased cannery loads).

CH2M Hill's letter dated January 20, 1982, Subject:  Phasing
Schedule of Plant Improvements (revised because of decreased
cannery loads).

Document received by the CA 6th District Court of Appeal.

1970

RJL/SF/gy
03/01/83

Document received by the CA 6th District Court of Appeal.

ADMINISTERING AGENCY

    A.   San Jose to be Administering Agency.  It is mutually agreed that the City of San Jose is and shall be the Administering Agency of this Agreement, and, as such, shall execute and administer this Agreement.

    B.   Powers and Duties of Administering Agency, Scope and Exercise.  Subject to such limitations as may be imposed in this Agreement, the Administering Agency shall have the following powers and duties:

    1.  To maintain, repair, expand, replace, improve and operate the treatment Plant, and to do any and all things which it shall find to be reasonably necessary, with respect to its *maintenance*, repair, expansion, replacement, improvement and operation (subject to the provision of funds therefor in accordance with the provisions of this Agreement), to treat and dispose of all sewage (and by-products thereof) of San Jose and Santa Clara and of any and all "Outside Users" now or hereafter authorized to dischrge or convey sewage into or to said treatment plant or any sewer lines leading thereto, so that said sewage and all effluent from said Plant will not pollute the waters of San Francisco Bay, or any other waters, and so that said sewage will be diposed of in a manner authorized by law.

    2.  To make, award and enter into contracts with third parties for the construction, improvement, replacement, expansion, or repair of the Treatment Plant or any part or parts thereof.

    3.  To acquire, by purchase, condemnation or otherwise, any and all real or personal property which it should find to be reasonably necessary for Treatment Plant purposes.

    4.  To receive, be the depository for, expend and disburse, for the purposes of this Agreement, any and all

-1-

EXHIBIT E

07168
0050B

1971

RJL/SF/gy
03/01/83

funds or monies advanced, contributed or paid by the parties
hereto to said Administering Agency pursuant to the provisions
of this Agreement, together with all income collected from
"Outside Users", all other Treatment Plant income, and all
other Treatment Plant funds.

5.   To keep accurate accounts of all receipts and
disbursements of the above-mentioned funds and monies.

6.   To provide and supply any and all personnel and services,
including, but not limited to, legal, engineering and
accounting services, which it should find to be reasonably
necessary for the maintenance, repair, expansion, replacement,
improvement and operation of said Treatment Plant, the cost
and expense of providing such personnel and services to be
charged  to and shared by San Jose and Santa Clara as part of
operating or other Treatment Plant costs as elsewhere provided
in this Agreement.

7.   To exercise any and all other powers, common to both San
Jose and Santa Clara, with respect to the maintenance, repair,
expansion, replacement, improvement and operation of the
Treatment Plant.

8.   To do any and all things reasonably necessary to
treatment and dispose of all sewage entering the Treatment
Plant in such manner as will comply with all applicable laws
and regulations.

9.   To do any and all other things which the Administering
Agency is required or authorized to do by other provisions of
this Agreement.

C.   Manner of Exercising Powers or Performing Duties.  The manner
in which the Administering Agency shall exercise its powers and
perform its duties is and shall be subject to the restrictions upon
the manner in which the City of San Jose could exercise such powers
and perform such duties; and shall not be subject to any
restrictions applicable to the manner in which the City of Santa
Clara could exercise such powers or perform such duties.

Document received by the CA 6th District Court of Appeal.

-2-

0716B
0050B

1972

RJL/SF/gy
03/01/83

D.   Expenses of Administering Agency.  It is mutually agreed that
the City of San Jose shall be reimbursed from Treatment Plant funds
for all costs and expenses incurred by it as Administering Agency
of this Agreement, including, but not limited to, salaries and
wages paid by San Jose to its officers and employees for services
rendered by them for Treatment Plant purposes.  It is further
agreed that San Jose shall be paid, from Treatment Plant funds, an
amount equal to seventeen and three hundred thirteen one
thousandths per cent (17.313%) of all the above mentioned salaries
and wages as and for the following overhead expenses incurred by
San Jose in furnishing said services and in administering this
Agreement, to wit:  payments made by San Jose for retirement
benefits, payments made by San Jose for medical and hospital
insurance covering officers and employees, miscellaneous overhead
expenses of the auditing, purchasing and engineering departments of
San Jose.

The percentage or amount of overhead allowance or expense
payable to San Jose shall be increased or decreased from year to
year to truly reflect actual overhead and incidental costs and
expenses incurred by San Jose for Treatment Plant purposes to the
extent that such costs and epenses are not included in other items
of cost or expense for which San Jose is otherwise reimbursed from
Treatment Plant Funds.

Document received by the CA 6th District Court of Appeal.

-3-

0716B
0050B

1973



COUNTY SANITATION DISTRICT NO.4
SANTA CLARA COUNTY, CALIFORNIA
SERVICE AREA
FEBRUARY, 1983

Document received by the CA 6th District Court of Appeal

1974

EXHIBIT G

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

TRANSFER OF AND PAYMENT FOR CAPACITY RIGHTS
ON ANNEXATION AND DETACHMENT OF TERRITORY

Table 1 sets forth the amount of capacity rights to be
transferred from Agency to First Parties on annexation
of Agency territory by either of First Parties and
detachment of the territory from Agency.

TABLE 1

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

AMOUNT OF CAPACITY RIGHTS TO BE TRANSFERRED
ON ANNEXATION AND DETACHMENT OF TERRITORY

| Capacity Parameter | Transfer Per Acre of Territory |
|---|---|
| Flow | 759.60 GD |
| BOD | 1.44 lbs/day |
| SS | 1.37 lbs/day |
| Ammonia | 0.19 lbs/day |

Table 2 sets forth the amount of payment by First
Parties to Agency for unused capacity transferred
to First Parties on annexation of Agency territory
by either of First Parties and detachment of the
territory from Agency.

TABLE 2

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

AMOUNT PAYABLE FOR TRANSFER OF UNUSED CAPACITY RIGHTS
ON ANNEXATION AND DETACHMENT OF TERRITORY

| Capacity Parameter | Unit Amount of Payment |
|---|---|
| Flow | $0.79 per GD |
| BOD | $191.35 per lbs/day |
| SS | $230.45 per lbs/day |
| Ammonia | $693.79 per lbs/day |

G-1 of 1

Document received by the CA 6th District Court of Appeal.

1975

JRG:DLC:el
10/9/85

CITY OF SAN JOSE

NOV 2 6 1985

6f(2)

Res. 58752

1208

#1369

## FIRST AMENDMENT TO
## MASTER AGREEMENT FOR WASTEWATER TREATMENT
### BETWEEN
## CITY OF SAN JOSE, CITY OF SANTA CLARA
### AND
## COUNTY SANITATION DISTRICT NO. 4

THIS AGREEMENT is made and entered into this ____17th____ day of

____December____, 1985, by and between the CITY OF SAN JOSE

and the CITY OF SANTA CLARA, both being municipal corporations of

the State of California (hereinafter referred to as "FIRST PARTIES"),

and COUNTY SANITATION DISTRICT NO. 4 (hereinafter referred to as

"AGENCY").

WHEREAS, FIRST PARTIES and AGENCY have previously entered

into a Master Agreement for Wastewater Treatment ("Master

Agreement"), dated March 1, 1983; and

WHEREAS, changes in treatment plant capacity and Capital

Improvement Program costs have been previously approved,

necessitating amendments to the Master Agreement in the form of

revisions to Exhibits A, C, and D thereto;

NOW, THEREFORE, the parties agree that the Master Agreement

is hereby amended as follows:  Exhibits A, C, and D to said

Agreement are hereby amended to read as set forth in the attached

documents entitled, "Exhibit A", "Exhibit C", and "Exhibit D",

respectively.

All other provisions of said Master Agreement shall remain

unchanged.

IN WITNESS WHEREOF, FIRST PARTIES and AGENCY have caused this

Agreement to be executed in their respective names and their

respective seals to be affixed hereunto by their duly authorized

Document received by the CA 6th District Court of Appeal.

8700a/3218a                    -1-

**1976**

JRG:DLC:el
10/9/85

officers, all as of the date first above written.

"FIRST PARTIES"

APPROVED AS TO FORM:

_____
Deputy City Attorney

ATTEST:

_____
City Clerk  Andrea M. Pavone

CITY OF SAN JOSE,
a municipal corporation

_____
Mayor  Thomas McEnery

801 North First Street
San Jose, CA  95132

APPROVED AS TO FORM:

_____
Deputy City Attorney

ATTEST:

_____
City Clerk

CITY OF SANTA CLARA,
a municipal corporation

_____
Mayor

_____
City Manager

1500 Warburton Avenue
Santa Clara, CA  95050
Telephone: (408) 984-3140

"AGENCY"

APPROVED AS TO FORM:

_____
Attorney

ATTEST:

_____
Clerk

COUNTY SANITATION DISTRICT
NO. 4

By: _____

Title: Chairperson, Board of Directors

By: _____

Title: Manager and Engineer

Address: 100 E. Sunnyoaks Avenue

_____  Campbell, CA 95008

Telephone: _378-2407_

8700a/3218a

-2-

Document received by the CA 6th District Court of Appeal.

1977

9/85

EXHIBIT A


SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT


TREATMENT PLANT CAPACITY ALLOCATIONS


The attached Tables 1 and 2 contain the Agencies' and First
Parties' treatment plant capacities achieved by implementation
of the Intermediate-term Improvements and First Stage Expansion.

Table 1 - 143 MGD Plant, Intermediate-term Improvements Implemented.
Table 1 contains the Agencies' and First Parties' share of the
present 143 MGD Plant capacity.


Table 2 - 167 MGD Plant, First Stage Expansion Implemented.
Increased capacity was allocated only to those Agencies that have
elected to participate in Plant expansion to 167 MGD. Milpitas
was allocated 4 MGD of the 24 MGD expansion, and the First Parties'
share the remaining 20 MGD based on assessed valuation. BOD, SS,
and Ammonia capacities were allocated in the same proportion as
Flow. The other Agencies' capacities remain the same as in the
143 MGD Plant (Table 1).

Document received by the CA 6th District Court of Appeal.

A-1 of 3

1978

9/85

## TABLE 1

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

143 MGD Plant
Summary of Capacity[1] Allocation
(Intermediate-term Improvements Implemented)

| AGENCY | FLOW MGD | BOD K lbs/Day | SS K lbs/Day | NH$_3$ K lbs/Day |
|---|---|---|---|---|
| San Jose | 90.393 | 348.352 | 308.587 | 29.940 |
| Santa Clara | 21.333 | 82.212 | 72.827 | 7.066 |
| CSD No. 4 | 13.424[2] | 32.417[2] | 30.790[2] | 3.248[2] |
| Cupertino | 8.600 | 16.419 | 17.856 | 2.506 |
| Milpitas | 8.500 | 17.986 | 15.958 | 1.619 |
| Burbank | 0.400 | 0.815 | 0.853 | 0.297 |
| Sunol | 0.350 | 1.799 | 2.129 | 0.324 |
| TOTAL | 143.000 | 500.000 | 449.000 | 45.000 |

(1)
   The term "Capacity" is defined as the mean peak five-day dry weather plant treatment capacity.

(2)
   Reflects transfer of capacity from CSD No. 4 to San Jose and Santa Clara resulting from annexations as of June 1985.

Note:  C.S.D. No. 2-3 has an agreement with First Parties which entitles it to determine annually, within certain limits, its capacity requirements.  Capacity requirements may vary from year to year and, accordingly, a fixed capacity for C.S.D. No. 2-3 is not shown on this table.  C.S.D. No 2-3's capacity requirements will be met from First Parties' capacities shown on this table.

Document received by the CA 6th District Court of Appeal.

**1979**

TABLE 2

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

167 MGD Plant
Summary of Capacity (1) Allocation
(First Stage Expansion Implemented)

| AGENCY | FLOW MGD | BOD K lbs/Day | SS K lbs/Day | $NH_3$ K lbs/Day |
|---|---|---|---|---|
| San Jose | 106.574 | 375.996 | 333.533 | 33.041 |
| Santa Clara | 25.152 | 88.735 | 78.714 | 7.798 |
| CSD No. 4 | 13.424[2] | 32.417[2] | 30.790[2] | 3.248 [2] |
| Cupertino | 8.600 | 16.419 | 17.856 | 2.506 |
| Milpitas | 12.500 | 24.819 | 22.125 | 2.386 |
| Burbank | 0.400 | 0.815 | 0.853 | 0.297 |
| Sunol | 0.350 | 1.799 | 2.129 | 0.324 |
| TOTAL | 167.000 | 541.000 | 486.000 | 49.600 |

(1)
    The term "Capacity" is defined as the mean peak five-day dry weather
    plant treatment capacity.

(2)
    Reflects transfer of capacity from CSD No. 4 to San Jose and
    Santa Clara resulting from annexation as of June 1985.

Note:  C.S.D. No. 2-3 has an agreement  with First Parties which entitles
    it to determine annually, within certain limits, its capacity
    requirements.  Capacity requirements may vary from year to year and,
    accordingly, a fixed capacity for C.S.D. No. 2-3 is not shown on
    this table.  C.S.D. No. 2-3's capacity requirements will be met
    from First Parties' capacities shown on this table.

A-3 of 3

Document received by the CA 6th District Court of Appeal.

1980

## EXHIBIT C

### SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
### LAND DISTRIBUTION

1. Land participation shall be based upon the 167 MGD capacity (Flow, BOD, Suspended Solids, and Ammonia) of the Plant. This means that any Agency's percentage of participation shall be based upon their capacity rights in the 167 MGD Plant.

2. Percentage of participation at the Plant shall be based upon the total 1,764 acres and not on an individual parcel basis.

3. The value of the existing acreage shall be as developed in the attached San Jose/Santa Clara Water Pollution Control Plant Land Purchases which is based upon 1982 values. No additional interest shall be applied to the land cost values from June 1982 forward. These values have been developed using the Plant allocation percentages and by present worthing the value of the land to 1982 dollars using interest received on investments by the City of San Jose.

4. Agencies which still owe the City of San Jose and County Sanitation District No. 4 for their percentage of land shall pay all the costs of this land from sale, lease or rental revenues to be received from the Water Pollution Control Plant properties. Percentage of revenue shall be based upon each Agency's full capacity percentage. The land will be paid off only from sale, lease or rental revenues of the Plant property and shall have no fixed term.

5. Sale, lease or rental revenues from Water Pollution Control Plant property shall be first applied to an Agency's debt, and only upon completion of that debt will revenues be passed on to the Agency.

Document received by the CA 6th District Court of Appeal.

1981

6.  If and when expansion of the facilities takes place in the future,
    land values shall again be adjusted based upon the new MGD
    denominator.  Each Agency's percentage of participation in land
    shall at that time be recomputed based upon total 1982 land cost
    shown in the Land Cost Allocation.

7.  All purchases of land in the future shall be distributed to all
    Agencies in the percentage of discharge capacity at the Plant.

Document received by the CA 6th District Court of Appeal.

1982

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
LAND COST ALLOCATION METHODOLOGY

1.  Attachment A is a Treatment Plant Property map.

2.  Table 1 includes the original land purchase price for each parcel.
    This amount was then applied to the City of San Jose's average
    yearly rate of return for investments and compounded to establish a
    June 30, 1982 value for all land.

3.  On June 9, 1982 the Treatment Plant Advisory Committee approved
    the replacement allowance as the method of allocating future
    capital costs which are not process related.

    Tables 2, 3, and 4 show the allocation of the replacement cost of
    the existing Primary, Secondary, and Advanced Waste Treatment
    Facilities, and the Capital Improvement Program to First Parties
    and Agencies based on their 167 MGD Plant capacities.

    Table 4 contains First Parties' and Agencies' proportions of the
    replacement cost of the 167 MGD Plant which appear as "% Share" on
    Table 5 and were used to determine the amounts that should have
    been paid for land.

4.  Table 5 shows First Parties' and Agencies' share of land costs.
    First Parties and Agencies paid in monies through the years for
    land purchases.  Each payment for land was applied to the City of
    San Jose's average yearly rate of return for investments and
    compounded to establish a June 30, 1982 value for each payment.

    First Parties' and Agencies' payments at June 30, 1982 values were
    transferred to the "Amount Paid" column of Table 5.

    By subtracting the "Amount Paid" column from the "Amount Should
    Have Paid" column in Table 5, the amounts due or credits due are
    determined.

C-3 of 9

Document received by the CA 6th District Court of Appeal.



LAND USE MAP
SAN JOSE / SANTA CLARA
WATER POLLUTION CONTROL
PLANT

DEPARTMENT OF WATER
POLLUTION CONTROL

designed by *TNT*
scale *none*
date *4-20-84*

approved
*E.H. BRAATELIEN JR.*
Director
R.C.E.    34042

C-4 of 9

ATTACHMENT A

by the CA 6th District Court of Appeal.

1984

TABLE 1

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
LAND PURCHASES

| Parcel | Acres | Original Cost | Purchase Date | June 30, 1982 Cost* |
|---|---|---|---|---|
| Berger Williamson | 43.668 | $  15,284 | 8/49 | $  88,282 |
| Coolidge Quitclaim | -- | 150 | 3/52 | 805 |
| John R. Watrous | 106.747 | 101,043 | 7/54 | 490,206 |
| John R. Medina | 16.970 | 15,067 | 8/54 | 73,106 |
| Other Costs (Easement/ Condemnation) | -- | 23,468 | 56-57 | 106,183 |
| Curtner-Zanker | .776 | 1,000 | 7/55 | 5,082 |
| Los Altos Garbage | 2.045 | 1,000 | 8/55 | 4,692 |
| James Clayton | 181.680 | 182,160 | 4/58 | 795,944 |
| A. M. Standish | .197 | 120 | 10/61 | 457 |
| Spring Valley | .180 | 50 | 4/62 | 189 |
| Beatrice Standish | 39.888 | 55,109 | 7/62 | 202,258 |
| **Other Costs (Unallocated) | -- | 603 | 3/65 | 2,048 |
| Nine-Par | 46.970 | 201,515 | 1/68 | 596,405 |
| A. L. Kricheberg | 41.13 | 162,170 | 4/69 | 452,708 |
| Anselmo-Campi | 34.48 | 208,771 | 7/69 | 541,583 |
| Casteel | 117.78 | 932,240 | 11/69 | 2,418,376 |
| Chisolm-Hopham | Parcel | 5,232 | 8/70 | 12,738 |
| Rankin-Gilman | Parcel | 600 | 8/70 | 1,461 |
| Owens-Corning | 3.16 | 23,743 | 11/70 | 57,801 |
| Standish | 630.0 | 2,831,034 | 4/71 | 6,892,016 |
| Owens-Corning | 2.58 | 17,133 | 6/71 | 41,713 |
| Phillips-Bosio | Parcel | 2,136 | 12/71 | 4,943 |
| Zanker Ranch | 145.7 | 1,496,478 | 8/72 | 3,446,515 |
| Garcia | 19.54 | 236,328 | 12/72 | 517,884 |
| Martin-Moore | 16.47 | 200,446 | 1/73 | 439,257 |
| Tempco | 12.33 | 327,153 | 7/75 | 566,730 |
| County of Santa Clara | Parcel | 4,495 | 75-76 | 7,788 |
| County of Santa Clara | 2.98 | 13,476 | 4/76 | 20,716 |
| Brazil | 54.546 | 513,359 | 7/76 | 841,819 |
| McCarthy (1st) | 43.0 | 483,880 | 12/76 | 793,479 |
| McCarthy (2nd) | 43.0 | 483,879 | 4/77 | 793,478 |
| McCarthy (3rd) | 43.0 | 483,879 | 1/78 | 743,861 |
| **Other Costs (Unallocated) | -- | 47,693 | 78-79 | 67,043 |
| Calvo | 58.415 | 586,405 | 1/78 | 901,473 |
| Leslie Salt | Parcel | 820 | 9/78 | 1,153 |
| Graham-Cassin | 52.8 | 3,339,932 | 8/80 | 3,775,793 |
| Geomax | 4.2 | 273,972 | 1/81 | 291,849 |
| TOTAL: | 1,764.23 | $13,271,823 | | $25,997,834 |

*June 30, 1982 cost was calculated using the City of San Jose's yearly
12-month average return on investments compounded from the beginning of
the fiscal year following the date of purchase (per Technical Committee
meeting of September 7, 1982).

**Represents costs not allocable to a specific land purchase (e.g.,
appraisal of land not purchased).

C-5 of 9

Document received by the CA 6th District Court of Appeal.

1985

9/85

TABLE 2

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
SUMMARY OF DISTRIBUTION OF CAPITAL COSTS TO PARAMETERS

|  | FLOW | BOD | SS | AMMONIA | TOTAL PROJECT COST |
|---|---|---|---|---|---|
| Primary[1] Secondary AWTF | 58.850% $195,705,700 | 19.357% $ 64,371,700 | 9.827% $32,679,700 | 11.966% $39,792,900 | 100% $332,550,000 |
| Capital Improvement Program | 39.262% $ 44,641,000 | 33.423% $ 38,001,600 | 22.369% $25,433,500 | 4.946% $ 5,624,100 | 100% $113,700,200 |
| TOTAL | 53.859% $240,346,700 | 22.941% $102,373,300 | 13.023% $58,113,200 | 10.177% $45,417,000 | 100% $446,250,200 |

[1] Cost of existing facilities inflated to 1982 cost using Engineering News Record construction cost index.

C-6 of 9

1986

by the CA 6th District Court of Appeal.

9/85

TABLE 3

| AGENCY | FLOW | | BOD | | SS | | NH3 | |
|---|---|---|---|---|---|---|---|---|
| SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT SUMMARY OF CAPACITY ALLOCATION | | | | | | | | |
| | MGD | % | K lbs/Day | % | K lbs/Day | % | K lbs/Day | % |
| San Jose | 106.574 | 63.817 | 375.996 | 69.499 | 333.533 | 68.629 | 33.041 | 66.615 |
| S. a Clara | 25.152 | 15.061 | 88.735 | 16.402 | 78.714 | 16.196 | 7.798 | 15.722 |
| CSD No. 4 [1] | 13.424 | 8.038 | 32.417 | 5.992 | 30.790 | 6.335 | 3.248 | 6.548 |
| Cupertino | 8.600 | 5.150 | 16.419 | 3.035 | 17.856 | 3.674 | 2.506 | 5.052 |
| Milpitas | 12.500 | 7.485 | 24.819 | 4.588 | 22.125 | 4.552 | 2.386 | 4.811 |
| Burbank | 0.400 | 0.239 | 0.815 | 0.151 | 0.853 | 0.176 | 0.297 | 0.599 |
| Sunol | 0.350 | 0.210 | 1.799 | 0.333 | 2.129 | 0.438 | 0.324 | 0.653 |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | 167.000 | 100% | 541.000 | 100% | 486.000 | 100% | 49.600 | 100% |

[1] Reflects transfer of capacity from CSD No. 4 to San Jose and Santa Clara resulting from annexations as of June 1985.

C-7 of 9

by the CA 6th District Court of Appeal.

1987

9/85

TABLE 4

SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT

ALLOCATED SHARE OF COST OF FACILITIES

| AGENCY | FLOW | BOD | SS | AMMONIA | TOTAL COST | % SHARE OF TOTAL COST |
|---|---|---|---|---|---|---|
| ˉ ˉ Jose | $153,382,137 | $ 71,148,484 | $39,882,226 | $30,254,795 | $294,667,642 | 66.032 |
| Santa Clara | 36,198,533 | 16,791,204 | 9,412,296 | 7,140,200 | 69,542,233 | 15.584 |
| CSD No. 4 | 19,319,068 | 6,134,208 | 3,681,471 | 2,973,905 | 32,108,652 | 7.195 |
| Cupertino | 12,377,855 | 3,107,030 | 2,135,079 | 2,294,467 | 19,914,431 | 4.463 |
| Milpitas | 17,989,950 | 4,696,887 | 2,645,313 | 2,185,012 | 27,517,162 | 6.166 |
| Burbank | 574,429 | 154,584 | 102,279 | 272,048 | 1,103,340 | 0.247 |
| Sunol | 504,728 | 340,903 | 254,536 | 296,573 | 1,396,740 | 0.313 |
| TOTAL | $240,346,700 | $102,373,300 | $58,113,200 | $45,417,000 | $446,250,200 | 100.0% |

C-8 of 9

d by the CA 6th District Court of Appeal..

1988

## TABLE 5

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

#### Land Cost Allocation

| AGENCY | % Share | Amount Should Have Paid 1982 Dollars | Amount Paid 1982 Dollars | Amount Payable <Due to> |
|--------|---------|--------------------------------------|--------------------------|-------------------------|
| San Jose | 66.032 | $17,166,891 | $19,134,275 | <$1,967,384> |
| Santa Clara | 15.584 | 4,051,502 | 3,234,047 | 817,455 |
| CSD No. 4 | 7.195 | 1,870,544 | 1,945,035 | <74,491> |
| Cupertino | 4.463 | 1,160,283 | 1,141,582 | 18,701 |
| Milpitas | 6.166 | 1,603,026 | 523,426 | 1,079,600 |
| Burbank | 0.247 | 64,215 | 9,203 | 55,012 |
| Sunol | 0.313 | 81,373 | 10,266 | 71,107 |
| TOTAL | 100% | $25,997,834 | $25,997,834 | Ø |

Note:  C.S.D. No. 2-3 has entered into an agreement with First Parties
       which does not entitle it to participate in land and,
       therefore, has not been allocated any land cost as described in
       this Exhibit C.

C-9 of 9

Document received by the CA 6th District Court of Appeal.

1989

9/85

EXHIBIT D

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

PARTICIPATION IN
INTERMEDIATE-TERM AND FIRST STAGE EXPANSION PROJECTS

The estimated construction and design cost of the Capital Improvement
Program (CIP) is $113,700,200 and is comprised of the
Intermediate-term Improvements Project ($86,530,200) for restoration
of the Plant capacity to 143 MGD and the First Stage Expansion
Project ($27,170,000) for expansion of Plant capacity to 167 MGD.

TABLE 1 - PARTICIPATION IN INTERMEDIATE-TERM IMPROVEMENT PROJECTS
On June 9, 1982 the Treatment Plant Advisory Committee (TPAC)
approved a cost sharing method whereby First Parties and Agencies
would participate in Intermediate-term Improvement projects
proportionately, based on the additional capacity to be received.

The cost sharing methods was a compromise of two concepts for
allocating Intermediate-term Improvement project costs among First
Parties and Agencies---(1) Alternate G', which allocates costs based
on flow and loadings, and (2) Alternate B, which allocates costs
based on flow only.  The cost sharing compromise required First
Parties and Agencies to pay 90% of their allocated costs based on
Alternate G' plus 10% of their allocated costs based on Alternate B.
Both Alternate G' and B recognized the fact that there are different
capacity rights in the Advanced Waste Treatment Facilities and the
secondary treatment process.

Table 1 contains First Parties' and Agencies' allocation of estimated
Intermediate-term project costs based on the compromise cost sharing
method approved by TPAC.

D-1 of 4

Document received by the CA 6th District Court of Appeal.

1990

TABLE 2 - PARTICIPATION IN FIRST STAGE EXPANSION

San Jose and Santa Clara, as joint owners of the Plant, and Milpitas
will participate in the First Stage Expansion project.  The First
Stage Expansion Project will provide an additional 24 MGD (143 to
167 MGD) of Plant capacity.  First Parties and Milpitas shall
participate proportionately in the expansionary cost, based on the
additional capacity to be received.

Table 2 contains the participating Cities allocation of estimated
First Stage Expansion costs.

D-2 of 4

Document received by the CA 6th District Court of Appeal.

1991

TABLE 1

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

Participation in Intermediate-term Projects

| AGENCY | PERCENT | ESTIMATE COST (x1,000) |
|---|---|---|
| San Jose | 64.7 | $55,955 |
| Santa Clara | 15.3 | 13,206 |
| CSD No. 4 | 6.2 | 5,408 |
| Cupertino | 6.4 | 5,553 |
| Milpitas | 6.9 | 5,986 |
| Burbank | 0.3 | 273 |
| Sunol | 0.2 | 149 |
| TOTAL | 100% | $86,530 |

Note:    C.S.D. No. 2-3 has entered into an agreement with First Parties
that provides for participation in Intermediate-term project
costs on a different basis than the other Agencies, as described
on pages D-1 and 2 of 4.  The agreement provides for C.S.D.
No. 2-3 to make annual payments to First Parties for the life of
the Clean Water Financing Authority Series A Revenue Bonds.  The
agreement also provides for adjusting payments to reflect
changes in C.S.D. No. 2-3's flow and loadings.  The agreement
between C.S.D. No. 2-3 and First Parties do not effect the other
Agencies' participation in Intermediate-term projects.

D-3 of 4

Document received by the CA 6th District Court of Appeal.

1992

TABLE 2

SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

Participation in First Stage Expansion

| AGENCY | (1) PERCENT | ESTIMATE COST (x1,000) |
|---|---|---|
| San Jose | 67.4 | $18,319 |
| Santa Clara | 15.9 | 4,323 |
| CSD No. 4 | -0- | -0- |
| Cupertino | -0- | -0- |
| Milpitas | 16.7 | 4,528 |
| Burbank | -0- | -0- |
| Sunol | -0- | -0- |
| TOTAL | 100% | $27,170 |

(1)

Represents First Parties' and Milpitas' shares of flow, BOD, SS
and ammonia capacity provided by First Stage Expansion.

D-4 of 4

Document received by the CA 6th District Court of Appeal.

1993

JRG:MJD:mjw
10/18/95

*9-26-95*
*9 d (3)(6)(2)*
*Res. 66723*

ORIGINAL

## SECOND AMENDMENT TO MASTER
## AGREEMENT FOR WASTEWATER TREATMENT
## BETWEEN
## CITY OF SAN JOSE, CITY OF SANTA CLARA
## AND
## WEST VALLEY SANITATION DISTRICT

THIS AGREEMENT is made and entered into this ~~4th~~ day of
_December_ , 1995, by and between the CITY OF SAN JOSE and the
CITY OF SANTA CLARA both being municipal corporations of the State of
California (hereinafter referred to as "FIRST PARTIES"), and WEST VALLEY
SANITATION DISTRICT, formerly County Sanitation District No. 4 (hereinafter
referred to as "AGENCY.")

WHEREAS, FIRST PARTIES and the AGENCY have previously entered
into a Master Agreement for Wastewater Treatment dated March 1, 1983 and a
First Amendment to Master Agreement for Wastewater Treatment, dated
December 17, 1985 (collectively referred to as "MASTER AGREEMENT"); and

WHEREAS, changes in treatment plant discharge requirements and
Capital Improvement Program costs have been previously approved
necessitating certain additional amendments to the MASTER AGREEMENT;

NOW, THEREFORE, the parties agree that the MASTER AGREEMENT
is hereby amended as follows:

/ / /

/ / /

/ / /

/ / /

Document received by the CA 6th District Court of Appeal.

25055_1.DOC

**1994**

JRG:MJD:mjw
10/18/95

**SECTION 1.** Section A of Part V of the MASTER AGREEMENT is hereby amended to read as follows:

"A.    Payments for Participation in Intermediate-Term, First Stage Expansion Projects and Phase 1 Water Recycling Program.

Payments for participation in the Intermediate-term, First State Expansion and Phase 1 Water Recycling Program shall be as described in SECOND AMENDMENT EXHIBIT "D" attached hereto and incorporated by reference herein."

**SECTION 2.** Exhibit "D" of the MASTER AGREEMENT is amended to read as set forth in the attached SECOND AMENDMENT EXHIBIT D attached hereto and incorporated by reference herein.

**SECTION 3.** Section D of Part V of the MASTER AGREEMENT is hereby amended to read as follows:

"D.    Payments for Operation and Maintenance Costs.

1.    FIRST PARTIES, AGENCY and other agencies shall bear the cost of the operations and maintenance expenses of the Plant, including all reclamation facilities operated by the Plant. The cost of operation and maintenance of reclamation facilities shall be determined based upon the actual flow (in million gallons per day) of AGENCY's discharge into the Plant. All other operation and maintenance expenses of the Plant shall be determined based upon the parameters of AGENCY's actual discharge into the Plant. AGENCY shall provide to FIRST PARTIES, by December 1st of

25055_1.DOC

Document received by the CA 6th District Court of Appeal.

**1995**

JRG:MJD:mjw
10/18/95

each year, data indicating expected flow and discharge for the ensuing fiscal year.

2.     FIRST PARTIES shall, not later than March 1st of each year, provide AGENCY with a preliminary estimate of the amount of money required to operate and maintain the Plant, including all reclamation facilities operated by the Plant, for the ensuing fiscal year. In addition, FIRST PARTIES shall indicate AGENCY's estimated annual share for operation and maintenance costs as apportioned to treatment parameters, and for operation and maintenance costs for reclamation as apportioned to flow.

3.     AGENCY shall provide to FIRST PARTIES a copy of AGENCY's adopted annual sewer revenue program by August 1st of each year. This revenue program shall conform to all federal and/or state guidelines as now exist or may exist in the future.

4.     During the first quarter of each fiscal year, TPAC shall review each agencies total flow and total discharge to the Plant for the preceding fiscal year in terms of the parameters. Adjustments and costs, if any, resulting from this review shall be made in accordance with Part V, Section E, Paragraph 3b herein.

**SECTION 4.** All other provisions of said MASTER AGREEMENT shall remain unchanged.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Document received by the CA 6th District Court of Appeal.

25055_1.DOC

**1996**

JRG:MJD:mjw
10/18/95

IN WITNESS WHEREOF, FIRST PARTIES and WEST VALLEY SANITATION
DISTRICT have caused this Second Amendment to Master Agreement to be
executed in their respective names and their respective seals to be affixed
hereunto by their duly authorized officers, all as of the date first above written.

"FIRST PARTIES"

APPROVED AS TO FORM:

_MOLLIE J. DENT_
MOLLIE J. DENT
Senior Deputy City Attorney

CITY OF SAN JOSE,
a municipal corporation

REGINA V.K. WILLIAMS
City Manager
801 North First Street
San Jose, CA 95110

APPROVED AS TO FORM:

Attorney

ATTEST:

City Clerk

CITY OF SANTA CLARA,
a municipal corporation

Mayor

City Manager
1500 Warburton Avenue
Santa Clara, CA 95050
Telephone (408) 984-3140

"AGENCY"

WEST VALLEY SANITATION DISTRICT

APPROVED AS TO FORM:

Attorney

ATTEST:

Secretary

President/ Chairperson
100 E. Sunnyoaks Avenue
Campbell, CA 95008
(408)378-2407

Document received by the CA 6th District Court of Appeal.

25055_1.DOC

4

**1997**

JRG:MJD:mjw
10/18/95

## EXHIBIT D

## SAN JOSE/SANTA CLARA
## WATER POLLUTION CONTROL PLANT

## PARTICIPATION IN INTERMEDIATE-TERM
## AND FIRST STAGE EXPANSION PROJECTS AND PHASE 1 RECYCLING
## PROGRAM

The construction and design cost of the Intermediate-term Improvement Project for restoration of the Plant capacity to 143 MGD was Eighty-Nine Million Three Hundred Thousand Two Hundred and Thirty Dollars ($89,300,230.00).  The construction costs and design cost of the First Stage Expansion Project for expansion of Plant capacity to 167 MGD was Twenty-Seven Million Eighty-Four Thousand Eight Hundred and Four Dollars ($27,084,804.00).  The estimated construction and design cost of the CIP for the Phase 1 Water Recycling Program is One Hundred Thirty-Nine Million Eight Hundred Forty Thousand ($139,840,000) Dollars.

## TABLE 1 - PARTICIPATION IN INTERMEDIATE-TERM IMPROVEMENT PROJECTS

On June 9, 1982 the Treatment Plant Advisory Committee (TPAC) approved a cost sharing method whereby FIRST PARTIES and AGENCIES would participate in Intermediate-term Improvement projects proportionately, based on the additional capacity to be received.

The cost sharing methods was a compromise of two concepts for allocating Intermediate-term Improvement project costs among FIRST PARTIES and AGENCIES --- (1)  Alternate G', which allocates costs based on flow and loadings, and (2) Alternate B, which allocates costs based on flow only.  The costs sharing compromise required FIRST PARTIES and AGENCIES to pay ninety (90%) percent of their allocated costs based on Alternate G' plus ten (10%) percent of their allocated costs based on Alternate B.  Both Alternate G' and B recognized the fact that there are different capacity rights in the Advanced Waste Treatment Facilities and the secondary treatment process.

Table 1 contains FIRST PARTIES and AGENCIES' allocation of Intermediate-term project costs based on the compromise cost sharing method approved by TPAC.

## TABLE 2 - PARTICIPATION IN FIRST STAGE EXPANSION

San Jose and Santa Clara, as joint owners of the Plant, and Milpitas participated in the First Stage Expansion project.  The First Stage Expansion Project will

Document received by the CA 6th District Court of Appeal.

D-1

**1998**

JRG:MJD:mjw
10/18/95

provide an additional 24 MGD (143 to 167 MGD) of Plant capacity. FIRST PARTIES and Milpitas participate proportionately in the expansionary cost, based on the additional capacity created by the First Stage Expansion Project.

Table 2 contains the participating FIRST PARTIES and AGENCIES' allocation of First Stage Expansion costs.

## TABLE 3 - PARTICIPATION IN PHASE I WATER RECYCLING PROGRAM

In October 1991, the Regional Water Quality Control Board (RWQCB) approved the San Jose Action Plan which includes development of a reclamation program to reclaim a portion of the San Jose/Santa Clara Water Pollution Control Plant's (WPCP) effluent, thereby providing an alternative to discharging treated effluent to South San Francisco Bay (Bay). In October 1993, the RWQCB incorporated the Action Plan into the WPCP's NPDES permit. The South Bay Recycling Program (SBWRP) is intended to satisfy this permit requirement.

Implementation of the SBWRP has been divided into two phases. Under the Phase 1 Water Recycling Program, approximately 9,000 acre-feet per year (up to 21.1 million gallons per day) of recycled water will be produced and distributed beginning in November 1997. The cost of Phase I is estimated at $139 Million. A future Phase II targeting an additional 27,000 acre-feet per year of reduction in dry weather discharge may be implemented at a later date.

On January 12, 1995, TPAC approved a cost sharing method whereby FIRST PARTIES and AGENCIES would participate in payment for the Phase 1 Water Recycling Program based on their respective flows to the WPCP. Table 3 contains FIRST PARTIES' and AGENCIES' allocation of estimated Phase 1 Water Recycling Program capital costs based on the cost sharing method. The final cost allocation will be adjusted to reflect the actual cost of the SBWRP when construction of the facilities is competed.

Document received by the CA 6th District Court of Appeal.

25055_1.DOC

**1999**

JRG:MJD:mjw
10/18/95

## TABLE 1

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

#### Participation in Intermediate Term Projects

| Agency | Percent | Intermediate Term Project Costs |
|---|---|---|
| City of San Jose | 64.7% | $57,938,416 |
| City of Santa Clara | 15.3% | $13,679,047 |
| West Valley Sanitation District | 6.2% | $5,395,929 |
| Cupertino Sanitary District | 6.4% | $5,718,164 |
| City of Milpitas | 6.9% | $6,178,887 |
| Burbank Sanitation District | .3% | $241,301 |
| Sunol Sanitary District | .2% | $148,486 |
| TOTAL | 100% | $89,300,230 |

\* County Sanitation District 2-3 (CSD 2-3) has entered into an agreement with FIRST PARTIES for participation in Intermediate-term project costs on a different basis than the other AGENCIES, as described on pages D-1 and 2 of 4. The agreement provides for CSD 2-3 to make annual payments to FIRST PARTIES for the life of the Clean Water Finance Authority Series A Revenue Bonds. The agreement also provides for adjusting payments to reflect changes in CSD 2-3's flow and loadings. The agreement between CSD 2-3 and FIRST PARTIES does not effect the other AGENCIES participation in Intermediate-term projects.

25055_1.DOC

Document received by the CA 6th District Court of Appeal.

2000

JRG:MJD:mjw
10/18/95

## TABLE 2

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

Participation in First Stage Expansion Projects

| Agency | Percent (1) | Intermediate Term Project Costs |
|---|---|---|
| City of San Jose | 67.4% | $18,261,607 |
| City of Santa Clara | 15.9% | $4,309,248 |
| West Valley Sanitation District | -0- | $-0- |
| Cupertino Sanitary District | -0- | $-0- |
| City of Milpitas | 16.7% | $4,513,949 |
| Burbank Sanitary District | -0-% | $-0- |
| Sunol Sanitary District | -0-% | $-0- |
| TOTAL | 100% | $27,084,804 |

(1)  Represents FIRST PARTIES and Milpitas share of flow, BOD, SS and ammonia capacity provided by First Stage Expansion.

D-4

25055_1.DOC

Document received by the CA 6th District Court of Appeal.

**2001**

JRG:MJD:mjw
10/18/95

## TABLE 3

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

Participation in South Bay Water Recycling Program
Phase I Capital Cost

| Agency | Percent | Phase I Estimated Costs |
|---|---|---|
| City of San Jose | 63.833% | $89,264,067.20 |
| City of Santa Clara | 14.256% | $19,935,590.40 |
| West Valley Sanitation District | 7.816% | $10,929,894.40 |
| Cupertino Sanitary District | 5.150% | $7,201,760.00 |
| City of Milpitas | 7.485% | $10,467,024.00 |
| County Sanitation District 2-3* | 1.010% | $1,412,384.00 |
| Burbank Sanitary District | .240% | $335,616.00 |
| Sunol Sanitary District | .210% | $293,664.00 |
| TOTAL | 100% | $139,840,000 |

\* County Sanitation District 2-3 (CSD 2-3) has entered into an agreement with FIRST PARTIES for sharing Water Pollution Control Plant costs on a different basis that the other AGENCIES.  The agreement provides for adjusting payments to reflect changes in CSD 2-3's flow and loadings.  The agreement between CSD 2-3 and FIRST PARTIES do not effect the other AGENCIES participation in the South Bay Water Recycling Program Phase 1 capital costs.

Document received by the CA 6th District Court of Appeal.

25055_1.DOC

**2002**

RD:MJD
3/28/06

ORIGINAL

*3/21/06*
*7.1*
*73109*

### THIRD AMENDMENT TO MASTER
### AGREEMENT FOR WASTEWATER TREATMENT
### BETWEEN
### CITY OF SAN JOSE, CITY OF SANTA CLARA
### AND
### WEST VALLEY SANITATION DISTRICT

**THIS THIRD AMENDMENT TO MASTER AGREEMENT** is dated for convenience this 7ᵗʰ day of _August_, 2006 by and between the CITY OF SAN JOSE and the CITY OF SANTA CLARA both being municipal corporations of the State of California (hereinafter referred to as "FIRST PARTIES"), and WEST VALLEY SANITATION DISTRICT, formerly County Sanitation District No. 4 (hereinafter referred to as "AGENCY".)

**WHEREAS**, FIRST PARTIES and the AGENCY have previously entered into a Master Agreement for Wastewater Treatment dated March 1, 1983, a First Amendment to Master Agreement for Wastewater Treatment, dated December 17, 1985, and a Second Amendment to Master Agreement for Wastewater Treatment, dated December 4, 1995 (collectively referred to as "MASTER AGREEMENT"); and

**WHEREAS**, AGENCY has designated a portion of the San José/Santa Clara Water Pollution Control Plant ("Plant") capacity allocated to AGENCY under the MASTER AGREEMENT as "excess pooled capacity" in accordance with Part III of the MASTER AGREEMENT; and

**WHEREAS**, AGENCY and the City of Milpitas have negotiated for the sale by AGENCY of one million gallons per day (1 mgd) of AGENCY's Plant allocated Plant capacity to the City of Milpitas; and

**WHEREAS**, AGENCY and the City of Milpitas have also negotiated for the transfer of the portion of AGENCY's interest in Plant buffer lands that is associated with 1 mgd in Plant capacity;

1

T-338.003/343865

Document received by the CA 6th District Court of Appeal.

RD:MJD
3/28/06

**NOW, THEREFORE**, AGENCY and FIRST PARTIES agree that Exhibits, A, B, C, and D are amended to read as set forth in "Revised Exhibit A", "Revised Exhibit B", "Revised Exhibit C", and "Revised Exhibit D" respectively, as attached hereto and incorporated by reference herein.

**SECTION 2.**     All other provisions of said MASTER AGREEMENT not amended by this THIRD AMENDMENT shall remain unchanged.

**SECTION 3.**     This THIRD AMENDMENT shall be effective as of 12:01 a.m., July 1, 2006.

**SECTION 4.**     For and in consideration of the approval of this THIRD AMENDMENT by FIRST PARTIES, AGENCY has agreed to defend, indemnify, and hold harmless FIRST PARTIES, and officers, contractors, consultants, attorneys, employees and agents from any and all claim(s), action(s), or proceeding(s) (collectively referred to as "proceeding") brought against FIRST PARTIES or their officers, contractors, consultants, attorneys, employees, or agents to challenge, attack, set aside, void or annul this THIRD AMENDMENT and/or any action taken to provide related environmental clearance under the California Environmental Quality Act of 1970, as amended ("CEQA") by FIRST PARTIES or their officers, contractors, consultants, attorneys, employees, agents, advisory agencies, boards or commissions, appeals boards or commissions.

    A.     AGENCY's indemnification is intended to include, but not be limited to, damages, fees and/or costs awarded against or incurred by FIRST PARTIES, if any, and costs of suit, claim or litigation, including without limitation, attorneys' fees and other costs, liabilities and expenses incurred in connection with such proceeding whether incurred by AGENCY, FIRST PARTIES, and/or parties initiating or involved in such proceeding.

2

Document received by the CA 6th District Court of Appeal.

**2004**

RD:MJD
3/28/06

B.    AGENCY further agrees to indemnify FIRST PARTIES City for all
of FIRST PARTIES' City's costs, fees, and damages incurred in enforcing
the indemnification provisions of this THIRD AMENDMENT; and to
defend, indemnify and hold harmless FIRST PARTIES and their officers,
contractors, consultants, attorneys, employees and agents from and for all
costs and fees incurred in additional investigation or study of, or for
supplementing, redrafting, revising, or amending, any document (such as
an environmental impact report, negative declaration, specific plan, or
general plan amendment) if made necessary by said proceeding and if
AGENCY desires to pursue such City approvals and/or clearances, after
initiation of the proceeding and that are conditioned on the approval of
these documents.

C.    In the event that AGENCY is required to defend FIRST PARTIES in
connection with such proceeding, each FIRST PARTY shall have and
retain the right to approve:

    1.  The counsel to so defend FIRST PARTY; and

    2.  All significant decisions concerning the manner in which the
        defense is conducted; and

    3.  Any and all settlements, which approval shall not be
        unreasonably withheld.

D.    FIRST PARTIES shall also have and retain the right to not
participate in the defense, except that each FIRST PARTY agrees to
reasonably cooperate with AGENCY in the defense of the proceeding. If
a FIRST PARTY chooses to have counsel of its own defend any
proceeding where AGENCY has already retained counsel to defend City
in such matters, the fees and expenses of the additional counsel selected
by FIRST PARTY shall be paid by FIRST PARTY. Notwithstanding the
immediately preceding sentence, if a FIRST PARTY City Attorney's Office

Document received by the CA 6th District Court of Appeal.

T-338.003/343865

3

2005

RD:MJD
3/28/06

participates in the defense, all City Attorney fees and costs shall be paid
by AGENCY.

**IN WITNESS WHEREOF**, FIRST PARTIES and WEST VALLEY SANITATION
DISTRICT have caused this THIRD AMENDMENT to MASTER AGREEMENT
as to be executed in their respective names and their respective seals to be
affixed hereunto by their duly authorized officers, all as of the date first above
written.

"FIRST PARTIES"

APPROVED AS TO FORM:

MOLLIE J. DENT
Senior Deputy City Attorney


CITY OF SAN JOSE,
a municipal corporation

Deanna Santana
Deputy City Manager
200 East Santa Clara Street
San José, CA  95113-1905


APPROVED AS TO FORM:

Attorney

ATTEST:

City Clerk


CITY OF SANTA CLARA,
a municipal corporation

Mayor

City Manager
1500 Warburton Avenue
Santa Clara, CA  95050
Telephone (408) 984-3140

"AGENCY"

WEST VALLEY SANITATION DISTRICT


APPROVED AS TO FORM:

Attorney    Charles T. Kilian

ATTEST:

Secretary


President    Nick Streit
100 E. Sunnyoaks Avenue
Campbell, CA 95008
(408)378-2407

4

T-338.003/343865

Document received by the CA 6th District Court of Appeal.

RD:MJD
3/28/06

<u>EXHIBIT A</u>

**SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT**

<u>**TREATMENT PLANT CAPACITY ALLOCATIONS**</u>

The attached Table 1 contains the Agencies' and First Parties' treatment plant
capacities achieved by implementation of the Intermediate-term Improvements and
First Stage Expansion.  Table 2 shows the Agencies' and First Parties' treatment plant
capacities, as effective with the transfer of 1 MGD from West Valley to Milpitas (July 1,
2006.)

<u>Table 1 - 167 MGD Plant, Intermediate Term Improvements and First Stage Expansion</u>.
Increased capacity was allocated only to those Agencies that elected to participate in
Plant expansion to 167 MGD.  Milpitas was allocated 2 MGD of the 24 MGD expansion,
and the First Parties' share the remaining 22 MGD based on assessed valuation.  BOD,
SS, and Ammonia capacities were allocated in the same proportion as Flow.

<u>Table 2– 167 MGD Plant, After transfer of 1 MGD from West Valley to Milpitas</u>.  Table 2
shows the Agencies' and First Parties' treatment plant capacities, as effective with the
transfer of 1 MGD from West Valley to Milpitas (July 1, 2006.)  The other Agencies'
capacities remain the same as in the 143/167 MGD Plant (Table 2).

T-338.003/343865

A-1 of 3

Document received by the CA 6th District Court of Appeal.

**2007**

RD:MJD
3/28/06

**TABLE 1**

**SAN JOSE/SANTA CLARA**
**WATER POLLUTION CONTROL PLANT**

**167 MGD PLANT**
**SUMMARY OF CAPACITY ALLOCATION***
**(Intermediate-Term, First Stage Expansion & South Bay Water Recycling**
**Improvements Implemented)**

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San José[a] | 110.754 | 390.229 | 346.198 | 34.318 |
| Santa Clara[a] | 21.344 | 75.206 | 66.719 | 6.613 |
| Subtotal[b] | 132.098 | 465.435 | 412.917 | 40.931 |
| West Valley | 13.052 | 31.713 | 30.12 | 3.156 |
| Cupertino | 8.600 | 16.419 | 17.856 | 2.506 |
| Milpitas | 12.500 | 24.819 | 22.125 | 2.386 |
| Burbank | 0.400 | 0.815 | 0.853 | 0.297 |
| Sunol | 0.350 | 1.799 | 2.129 | 0.324 |
| Subtotal | 34.902 | 75.565 | 73.083 | 8.669 |
| TOTAL | 167.000 | 541.001 | 486.000 | 49.600 |

*The term "capacity" is defined as the mean peak five-day dry weather plant treatment capacity.

Footnotes:
  a.  San José and Santa Clara allocations vary annually according to assessed property value; values shown are effective as of July 1, 2006.
  b.  CSD 2-3 rents capacity from San José and Santa Clara.  Allocations vary annually depending flow from CSD 2-3.

Document received by the CA 6th District Court of Appeal.

T-338.003/343865

A-2 of 3

**2008**

RD:MJD
3/28/06

**TABLE 2**

**SAN JOSE/SANTA CLARA**

**WATER POLLUTION CONTROL PLANT**


**167 MGD PLANT**

**SUMMARY OF CAPACITY ALLOCATION***

**(After Transfer of 1 MGD from West Valley to Milpitas)**

| AGENCY | FLOW MGD | BOD K LBS/DAY | SS K LBS/DAY | AMMONIA K LBS/DAY |
|---|---|---|---|---|
| San José[a] | 110.754 | 390.229 | 346.198 | 34.318 |
| Santa Clara[a] | 21.344 | 75.206 | 66.719 | 6.613 |
| Subtotal[b] | 132.098 | 465.435 | 412.917 | 40.931 |
| | | | | |
| West Valley | 12.052 | 29.283 | 27.812 | 2.914 |
| Cupertino | 8.600 | 16.419 | 17.856 | 2.506 |
| Milpitas | 13.500 | 27.249 | 24.433 | 2.628 |
| Burbank | 0.400 | 0.815 | 0.853 | 0.297 |
| Sunol | 0.350 | 1.799 | 2.129 | 0.324 |
| Subtotal | 34.902 | 75.565 | 73.083 | 8.669 |
| TOTAL | 167.000 | 541.000 | 486.000 | 49.600 |

*The term "capacity" is defined as the mean peak five-day dry weather plant treatment capacity.


Footnotes:

    a.    San José and Santa Clara allocations vary annually according to assessed property value; values shown are effective as of July 1, 2006.

    b.    CSD 2-3 rents capacity from San José and Santa Clara. Allocations vary annually depending flow from CSD 2-3.

Document received by the CA 6th District Court of Appeal.

**2009**

RD:MJD
3/28/06

## EXHIBIT B

**SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT**
**REPLACEMENT COST OF PLANT & EQUIPMENT**
June 2005

| FACILITY | ACQUISITION DATE | ORIGINAL COST | REPLACEMENT COST | ENR COST INDEXES |
|---|---|---|---|---|
| Asset #1 - Original primary plant | 1958 | 3,786,400 | 34,813,300 | 899.60 |
| Asset #2 - Plant Additions | 1960 | 1,370,200 | 11,587,000 | 978.10 |
| Asset #3 - Plant Additions & New | | | | |
|    Secondary Facility | 1963 | 24,166,800 | 196,282,700 | 1,018.37 |
| Asset #4 - Final Tank | 1965 | 1,183,000 | 8,388,200 | 1,166.50 |
| Asset #5 – Digestors | 1966 | 993,600 | 6,389,100 | 1,286.30 |
| Other Projects: | | | | |
|    1965-66 | 1965 | 103,900 | 736,700 | 1,166.50 |
|    1966-67 | 1966 | 253,800 | 1,632,000 | 1,286.30 |
|    1967-68 | 1967 | 24,200 | 142,400 | 1,406.10 |
|    1968-69 | 1968 | 322,100 | 1,746,000 | 1,525.90 |
|    1969-70 | 1969 | 59,900 | 301,100 | 1,645.70 |
|    1970-71 | 1970 | 102,700 | 481,100 | 1,765.50 |
| Sludge Lagoons | 1968 | 839,000 | 4,547,800 | 1,525.90 |
| Foam Flotation Program | 1970 | 23,000 | 107,800 | 1,765.50 |
| 1970 94/MGD Improvements | 1970 | 5,809,400 | 27,216,500 | 1,765.50 |
| 1970 66/MGD Additions | 1970 | 23,049,000 | 107,982,400 | 1,765.50 |
| A.W.T.F. | 1977 | 62,810,900 | 166,205,400 | 3,125.78 |
| Other Projects: | | | | |
|    1977-78 | 1977 | 745,500 | 1,972,700 | 3,125.78 |
|    1978-79 | 1978 | 312,200 | 756,800 | 3,411.98 |
|    1979-80 | 1979 | 1,421,100 | 3,257,200 | 3,608.71 |
|    1980-81 | 1980 | 1,962,300 | 3,788,400 | 4,284.29 |
|    1981-82 | 1981 | 535,200 | 1,006,100 | 4,400.00 |
|    1982-83 | 1982 | 1,777,765 | 2,861,000 | 5,139.51 |
| CAPITAL IMPROVEMENT PROGRAM: | | | | |
|    Intermediate-term Improvement | 1987 | 88,699,500 | 132,975,800 | 5,517.18 |
|    First Stage Expansion | 1987 | 20,035,100 | 30,036,100 | 5,517.18 |
| 1987 Capitalized Expenditures | 1987 | 894,900 | 1,341,600 | 5,517.18 |
| 1989 Capitalized Expenditures | 1989 | 527,473 | 760,600 | 5,735.84 |
| 1990 Capitalized Expenditures | 1990 | 823,720 | 1,127,500 | 6,042.56 |
| 1991 Capitalized Expenditures | 1991 | 114,902 | 155,000 | 6,131.10 |
| 1992 Capitalized Expenditures | 1992 | 407,154 | 537,800 | 6,262.14 |
| 1993 Capitalized Expenditures | 1993 | 1,291,825 | 1,660,800 | 6,433.55 |
| 1994 Capitalized Expenditures | 1994 | 255,378 | 322,100 | 6,557.48 |
| 1995 Capitalized Expenditures | 1995 | 10,595,576 | 13,394,700 | 6,542.75 |
| 1996 Capitalized Expenditures | 1996 | 3,396,270 | 4,287,600 | 6,551.75 |
| 1997 Capitalized Expenditures | 1997 | 9,320,130 | 11,505,400 | 6,700.22 |
| 1998 Capitalized Expenditures | 1998 | 2,829,981 | 3,460,300 | 6,764.62 |
| 1999 Capitalized Expenditures | 1999 | 133,138,713 | 161,426,600 | 6,821.78 |
| 2000 Capitalized Expenditures | 2000 | 2,464,590 | 2,845,100 | 7,165.08 |
| 2001 Capitalized Expenditures | 2001 | 3,866,326 | 4,316,200 | 7,409.12 |
| 2002 Capitalized Expenditures | 2002 | 930,265 | 1,004,200 | 7,662.33 |
| 2003 Capitalized Expenditures | 2003 | 1,663,511 | 1,763,600 | 7,801.70 |
| 2004 Capitalized Expenditures | 2004 | 3,321,630 | 3,371,800 | 8,148.25 |
| 2005 Capitalized Expenditures | 2005 | 665,760 | 665,800 | 8,271.20 |
| **TOTAL** | | **416,894,669** | **959,160,300** | **(*)** |

*T-338.003/343865*

Document received by the CA 6th District Court of Appeal.

**2010**

RD:MJD
3/28/06

(*)   Plant and equipment replacement cost is distributed to parameters using the percentages contained in the most current Revenue Program (Form No. 8, Summary of the Distribution of Capital Costs).

NOTE:
A.   Major plant facilities or equipment items shall be added to this Exhibit in the year purchased.  Construction projects shall be added to this Exhibit in the year of acceptance at full construction value.

B.   Process related facilities and equipment that cost in excess of $2 million shall be allocated to parameters (flow, BOD, SS, Ammonia) based on engineering design.  Capital costs that are less than $2 million and/or are not process related shall be allocated to parameters using the percentages contained in the most current Revenue Program(Form No. 8, Summary of Distribution of Capital Costs).

C.   This Exhibit shall not include replacement or rehabilitation costs.

D.   Facilities and equipment sold or otherwise disposed shall be deleted from this exhibit.

E.   This exhibit shall be updated annually using the June ENR (San Francisco) Construction cost index.

*T-338.003/343865*

Document received by the CA 6th District Court of Appeal.

**2011**

RD:MJD
3/28/06

## EXHIBIT C

## SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
## LAND DISTRIBUTION

1.      Table 1 includes the original land purchase price for each parcel purchased before June 30, 1982 ("Pre-1982 Land."). The City of San José's average yearly rate of return for all investments was applied to this amount and compounded to establish a June 30, 1982 value for all Pre-1982 Land.

2.      Land participation for Pre-1982 Lands was based upon the 167 MGD capacity of the Plant (Flow BOD, Suspended Solids and Ammonia). Percentage of participation in Pre-1982 Land is based upon the total acreage and not on an individual parcel basis.

3.      Agencies which still owe the City of San José and West Valley Sanitation District for their allocated share of cost for Pre-1982 Land shall pay all the costs of this land from sale, lease or rental revenues to be received from the Water Pollution Control Plant properties. Percentage of revenue shall be based upon each Agency's full capacity percentage. The Pre-1982 Land costs will be paid off only from sale, lease or rental revenues of the Plant property and shall have no fixed term. Table 2 shows First Parties' and Agencies' allocations and amounts/credits due for Pre-1982 Land costs as of June 30, 2005.

4.      Table 3 shows the original purchase price, date of purchase and cost allocation for all land purchased on or after July 1, 1982 ("Post 1982 Land"). Cost allocation in Post 1982 Land was based on the flow and wastewater strength allocations for First Parties and Participating

T-338.003/343865

Document received by the CA 6th District Court of Appeal.

2012

RD:MJD
3/28/06

Agencies, except for land purchased for recycled water facilities, which is based on flow allocation only.

5.   Table 4 shows the percentage participation in Pre-1982 Land and Post-1982 Land for First Parties and Agencies effective July 1, 2006.

6.   Sale, lease or rental revenues from Water Pollution Control Plant property shall be first applied to an Agency's debt, and only upon completion of that debt, will revenues be passed on to the Agency.

7.   If and when expansion of the facilities takes place in the future, land values shall again be adjusted based upon the new MGD denominator. Each Agency's percentage of participation in land shall, at that time, be recomputed based upon total land cost shown in the applicable Land Cost Allocation.

8.   All purchases of land in the future shall be distributed to all Agencies in the percentage of discharge capacity at the Plant, except that land purchased for recycling improvements shall be based on the Agencies' and First Parties' purchased capacity in the 167 MGD Plant for the flow parameter only.

Document received by the CA 6th District Court of Appeal.

**2013**

RD:MJD
3/28/06

# SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
## LAND COST ALLOCATION METHODOLOGY

1.      Attachment A is a Treatment Plant Property map.

2.      Table 1 includes the original land purchase price for each parcel
        purchased before June 31, 1982.  This amount was then applied to the
        City of San José's average yearly rate of return for all investments and
        compounded to establish a June 30, 1982 value for the Pre-1982
        Land.

3.      Table 2 shows the First Parties' and Agencies share of Pre-1982 land
        Costs.  Table 2 also shows the amounts still due or owing by First
        Parties and Agencies for Pre-1982 Land Costs, as of June 30, 2005.

4.      Table 3 shows the land allocation for First Parties and Agencies for all
        land purchased on or after July 1, 1982, based on the amount actually
        paid by First Parties and Agencies for land purchased on or after July
        1, 1982.

5.      Table 4 shows the land participation allocation, effective July 1, 2006,
        for West Valley and Milpitas, reflecting the transfer of land equivalent
        to 1 MGD capacity from West Valley to Milpitas.  The transfer of
        capacity and adjusted land allocation percentages shall not affect the
        amounts due or owing by Milpitas or West Valley for Pre-1982 Land
        Costs.

Document received by the CA 6th District Court of Appeal.

T-338.003/343865                    C-3 of 8

**2014**

RD:MJD
3/28/06

## TABLE 1

### SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT

### PRE-1982 LAND PURCHASES

| Pre-1982 Purchases Parcel | Acres | Original Cost | Purchase Date | Cost* |
|---|---|---|---|---|
| Berger Williamson | 43.668 | $    15,284 | 8/49 | $    88,282 |
| Coolidge Quitclaim | - - | 150 | 3/52 | 805 |
| John R. Watrous | 106.747 | 101,043 | 7/54 | 490,206 |
| John R. Medina | 16.970 | 15,067 | 8/54 | 73,106 |
| Other Costs (Easement-Condemnation)* | - - | 23,468 | 1956-57 | 106,183 |
| Curtner-Zanker | .776 | 1,000 | 7/55 | 5,082 |
| Los Altos Garbage | 2.045 | 1,000 | 8/55 | 4,692 |
| James Clayton | 181.680 | 182,160 | 4/58 | 795,944 |
| A. M. Standish | .197 | 120 | 10/61 | 457 |
| Spring Valley | .180 | 50 | 4/62 | 189 |
| Beatrice Standish | 39.888 | 55,109 | 7/62 | 202,258 |
| Other Costs (Unallocated)* | - - | 603 | 3/65 | 2,048 |
| Nine-Par | 46.970 | 201,515 | 1/68 | 596,405 |
| A. L. Kricheberg | 41.13 | 162,170 | 4/69 | 452,708 |
| Anselmo-Campi | 34.48 | 208,771 | 7/69 | 541,583 |
| Casteel | 117.78 | 932,240 | 11/69 | 2,418,376 |
| Chisolm-Hopham | Parcel | 5,232 | 8/70 | 12,738 |
| Rankin-Gilman | Parcel | 600 | 8/70 | 1,461 |
| Owens-Corning | 3.16 | 23,743 | 11/70 | 57,801 |
| Standish | 630.0 | 2,831,034 | 4/71 | 6,892,016 |
| Owens-Corning | 2.58 | 17,133 | 6/71 | 41,713 |
| Phillips-Bosio | Parcel | 2,136 | 12/71 | 4,943 |
| Zanker Ranch | 145.7 | 1,496,478 | 8/72 | 3,446,515 |
| Garcia | 19.54 | 236,328 | 12/72 | 517,884 |
| Martin-Moore | 16.47 | 200,446 | 1/73 | 439,257 |
| Tempco | 12.33 | 327,153 | 7/75 | 566,730 |
| County of Santa Clara | Parcel | 4,495 | 1975-76 | 7,788 |
| County of Santa Clara | 2.98 | 13,476 | 4/76 | 20,716 |
| Brazil | 54.546 | 513,359 | 7/76 | 841,819 |
| McCarthy (lst) | 43.0 | 483,880 | 12/76 | 793,479 |
| McCarthy (2nd) | 43.0 | 483,879 | 4/77 | 793,478 |
| McCarthy (3rd) | 43.0 | 483,879 | 1/78 | 743,861 |
| Other Costs (Unallocated) | - - | 47,693 | 1978-79 | 67,043 |
| Calvo | 58.415 | 586,405 | 1/78 | 901,473 |
| Leslie Salt | Parcel | 820 | 9/78 | 1,153 |
| Graham-Cassin | 52.8 | 3,339,932 | 8/80 | 3,775,793 |
| Geomax | 4.2 | 273,972 | 1/81 | 291,849 |
| TOTAL | 1,764.23** | $13,271,823 | | $25,997,834 |

Document received by the CA 6th District Court of Appeal.

**2015**

RD:MJD
3/28/06

*Represents costs not allocable to a specific land purchase (e.g., appraisal of land not purchased).

**Acreage has been and will be reduced by the following completed and pending conveyances:

- Santa Clara Valley Water District - flood control easement dated November 25, 1986.

- State of California – 14.8 acres for widening of State Route 237, Grant Deed dated March 17, 1997.

- PG&E - various completed and pending easements.

- Los Esteros Critical Energy Facility - access road easement conveyed November 3, 2003, pursuant to Conveyance Agreement dated November 22, 2002, as amended May 4, 2005; open space easement and pole line license pursuant to Conveyance Agreement dated pending as of March 2006.

- City of Santa Clara, Silicon Valley Power, electric transmission line easement pursuant to Conveyance Agreement dated July 15, 2003, pending as of March 2006.

- Various Agency sanitary sewer trunkline easements.

Document received by the CA 6th District Court of Appeal.

T-338.003/343865

**2016**

RD:MJD
3/28/06

## TABLE 2

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

### LAND COST ALLOCATION
### PRE-1982 PURCHASES

| AGENCY | % SHARE | AMOUNT SHOULD HAVE PAID 1982 DOLLARS | AMOUND PAID 1982 DOLLARS | AMOUNT PAYABLE <DUE> AS OF JUNE 30, 2005 |
|---|---|---|---|---|
| San José | 66.181 | $17,205,627 | $19,134,275 | <$747,289> |
| Santa Clara | 15.620 | $4,060,862 | $3,234,047 | $0 |
| West Valley | 7.009 | $1,822,188 | $1,945,035 | <$47,671> |
| Cupertino | 4.463 | $1,160,283 | $1,141,582 | $0 |
| Milpitas | 6.166 | $1,603,026 | $523,426 | $704,692 |
| Burbank | 0.248 | $64,215 | $9,203 | $40,192 |
| Sunol | 0.313 | $81,373 | $10,266 | $52,076 |
| TOTAL | 100% | $25,997,834 | $25,997,834 | |

County Sanitation District 2-3 rents capacity from San José and Santa Clara. The rental agreement does not entitle it to share in land revenue.

Document received by the CA 6th District Court of Appeal.

**2017**

RD:MJD
3/28/06

## TABLE 3

### SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT

### LAND COST ALLOCATION POST-1982 LAND PURCHASES

| AGENCY | SOUTH Bay Water Recycling (Phase 1 easements $265,000; 1996-1997) | Moseley Tract (56 acres; $460,000; 9/96) | McCarthy Ranch (6 acres; $6,534,000; 8/00) | Cargill Pond A-18 (856 acres; $13,301,250; 10/05) | Silver Creek Reservoir (4.839 acres fee;1.97 acres permanent easements; $7,800,000; 3/05) |
|---|---|---|---|---|---|
| San José | 64.659% | 67.607% | 67.069% | 67.015% | 64.659% |
| Santa Clara | 14.440% | 14.511% | 15.049% | 15.103% | 14.440% |
| West Valley | 7.816% | 6.928% | 6.928% | 6.928% | 7.816% |
| Cupertino | 5.150% | 4.360% | 4.360% | 4.360% | 5.150% |
| Milpitas | 7.485% | 6.040% | 6.040% | 6.040% | 7.485% |
| Burbank | 0.240% | 0.238% | 0.238% | 0.238% | 0.240% |
| Sunol | 0.210% | 0.316% | 0.316% | 0.316% | 0.210% |
| TOTAL | 100% | 100% | 100% | 100% | 100% |

County Sanitation District 2-3 rents capacity from San José and Santa Clara.

The rental agreement does not entitle it to share in land revenue.

Document received by the CA 6th District Court of Appeal.

T-338.003/343865

2018

RD:MJD
3/28/06

## TABLE 4

### SAN JOSE/SANTA CLARA WATER POLLUTION CONTROL PLANT
### LAND PARTICIPATION ALLOCATION
### EFFECTIVE JULY 1, 2006

| AGENCY | Pre-1982 Land | Moseley Tract , McCarthy, Cargill Pond A-18 | South Bay Water |
|---|---|---|---|
| San José | 66.181 | 67.607% | 64.65% |
| Santa Clara | 15.620 | 14.511% | 14.440% |
| West Valley | 6.472 | 6.397% | 7.217% |
| Cupertino | 4.463 | 4.360% | 5.150% |
| Milpitas | 6.703 | 6.571% | 8.084% |
| Burbank | 0.248 | 0.238% | 0.240% |
| Sunol | 0.313 | 0.316% | 0.210% |
| TOTAL | 100% | 100% | 100% |

County Sanitation District 2-3 rents capacity from San José and Santa Clara.
The rental agreement does not entitle it to share in land revenue.

Document received by the CA 6th District Court of Appeal.

**2019**

RD:MJD
3/28/06

## EXHIBIT D

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

### PARTICIPATION IN MAJOR PROCESS RELATED IMPROVEMENTS

#### Intermediate Term Improvements and First Stage Expansion

The construction and design cost of the Intermediate-term Improvement Project for restoration of the Plant capacity to 143 MGD was Eighty-Nine Million Three Hundred Thousand Two Hundred and Thirty Dollars ($89,300,230.00). The construction costs and design cost of the First Stage Expansion Project for expansion of Plant capacity to 167 MGD was Twenty-Seven Million Eighty-Four Thousand Eight Hundred and Four Dollars ($27,084,804.00). AGENCY has fully paid all amounts due for its capacity in the Intermediate Term Improvements and the First Stage Expansion Project.

#### Water Recycling Improvements

In October 1991, the Regional Water Quality Control Board (RWQCB) approved the San José Action Plan which included development of a reclamation program to reclaim a portion of the San José/Santa Clara Water Pollution Control Plant's (WPCP) effluent, thereby providing an alternative to discharging treated effluent to South San Francisco Bay (Bay). In October 1993, the RWQCB incorporated the Action Plan into the WPCP's NPDES permit. The South Bay Recycling Program (SBWRP) is intended to satisfy this permit requirement.

Implementation of the SBWRP has been divided into two phases. Under the Phase 1, Water Recycling Program, approximately 9,000 acre-feet per year (up to 21.1 million gallons per day) of recycled water will be produced and distributed beginning in November 1997. The budgeted cost of Phase I was $139,840,000. Construction of Phase II is now underway, with an estimated cost of $100,000,000.

On January 12, 1995, TPAC approved a cost sharing method whereby FIRST PARTIES and AGENCIES would participate in payment for the Water Recycling Program based on their respective flows to the WPCP. Table 1 contains FIRST PARTIES' and AGENCIES' final allocation of Phase 1 recycling costs. Table 2 contains FIRST PARTIES and AGENCIES share of Phase 2 Recycling costs. The final Phase 2 cost allocation will be adjusted to reflect the actual cost when construction of the Phase 2 facilities is competed.

T-338.003/343865

D-1 of 6

Document received by the CA 6th District Court of Appeal.

**2020**

RD:MJD
3/28/06

FIRST PARTY SANTA CLARA and AGENCY MILPITAS elected to cash fund their share of the Phase 1 Recycling Costs. Table 3 shows the debt service allocation for the bond issued by San José for Phase 1 costs for FIRST PARTY SAN JOSE, and all AGENCIES except MILPITAS.

Only AGENCY MILPITAS elected to cash fund its share of the Phase 2 Recycling Costs. FIRST PARTIES and all other AGENCIES chose to utilize State Revolving Loan Fund proceeds for their share of the Phase 2 Recycling costs. Table 4 shows the debt service allocation for the SRLF proceeds.

Document received by the CA 6th District Court of Appeal.

**2021**

RD:MJD
3/28/06

### TABLE 1

### SAN JOSE/SANTA CLARA
### WATER POLLUTION CONTROL PLANT

Participation in South Bay Water Recycling Program
Phase 1 Capital Costs

| Agency | Percent | Phase 1 Budgeted Costs |
|---|---|---|
| City of San José | 63.833% | $89,264,067.20 |
| City of Santa Clara | 14.256% | $19,935,590.40 |
| West Valley Sanitation District | 7.816% | $10,929,894.40 |
| Cupertino Sanitary District | 5.150% | $7,201,760.00 |
| City of Milpitas | 7.485% | $10,467,024.00 |
| County Sanitation District 2-3* | 1.010% | $1,412,384.00 |
| Burbank Sanitary District | .240% | $335,616.00 |
| Sunol Sanitary District | .210% | $293,664.00 |
| TOTAL | 100% | $139,840,000 |

*County Sanitation District 2-3 (CSD 2-3) has entered into an agreement with FIRST PARTIES for sharing Water Pollution Control Plant costs on a different basis that the other AGENCIES. The agreement provides for adjusting payments to reflect changes in CSD 2-3's flow and loadings. The agreement between CSD 2-3 and FIRST PARTIES do not effect the other AGENCIES participation in the South Bay Water Recycling Program Phase 1 capital costs.

Document received by the CA 6th District Court of Appeal.

**2022**

RD:MJD
3/28/06

## TABLE 2
## SAN JOSE/SANTA CLARA
## WATER POLLUTION CONTROL PLANT

Participation in South Bay Water Recycling Program
Phase 2 Capital Cost

| Agency | Percent | Phase 2 Estimated Costs |
|---|---|---|
| City of San José | 63.833% | $63,833,000 |
| City of Santa Clara | 14.256% | 14,256,000 |
| West Valley Sanitation District | 7.816% | 7,816,000 |
| Cupertino Sanitary District | 5.150% | 5,150,000 |
| City of Milpitas | 7.485% | 7,485,000 |
| County Sanitation District 2-3* | 1.010% | 1,010,000 |
| Burbank Sanitary District | .240% | 240,000 |
| Sunol Sanitary District | .210% | 210,000 |
| TOTAL | 100% | $100,000,000 |

*County Sanitation District 2-3 (CSD 2-3) has entered into an agreement with
FIRST PARTIES for sharing Water Pollution Control Plant costs on a different
basis that the other AGENCIES.  The agreement provides for adjusting
payments to reflect changes in CSD 2-3's flow and loadings.  The agreement
between CSD 2-3 and FIRST PARTIES do not effect the other AGENCIES
participation in the South Bay Water Recycling Program Phase 2 capital costs.

Document received by the CA 6th District Court of Appeal.

2023

RD:MJD
3/28/06

## TABLE 3
## SAN JOSE/SANTA CLARA
## WATER POLLUTION CONTROL PLANT

## PHASE 1 RECYCLING DEBT ALLOCATION

Series 2005 A Refunding Bonds - Principle $54,020,000; last payment due
November 15, 2016

Series 2005 B Refunding Bonds - Principle $27,130,000; last payment due
November 15, 2020

| San José | West Valley | Cupertino | District 2-3 | Sunol | Burbank |
|----------|-------------|-----------|--------------|-------|---------|
| 80.21% | 10.594% | 7.377% | 1.436% | .237% | .075% |

Document received by the CA 6th District Court of Appeal.

**2024**

RD:MJD
3/28/06

TABLE 4
SAN JOSE/SANTA CLARA
WATER POLLUTION CONTROL PLANT

STATE REVOLVING LOAN FUND DEBT ALLOCATION FY 1998 thru 2019

| Repayment Period(s) | Annual Debt Service Payment 100.000% | Annual San José 68.998% | Annual Santa Clara 15.409% | Annual West Valley 8.448% | Annual Cupertino 5.567% | Annual Sanitation District 2-3 1.092% | Annual Burbank 0.259% | Annual Sunol 0.227% |
|---|---|---|---|---|---|---|---|---|
| FY 1998/1999 | $1,661,799 | $1,146,608 | $256,067 | $140,389 | $92,512 | $18,147 | $4,304 | $3,772 |
| FY 1999/2000 thru FY 2017/2018 | $4,463,882 | $3,079,989 | $687,840 | $377,109 | $248,504 | $48,746 | $11,561 | $10,133 |
| FY 2018/2019 | $1,804,020 | $1,244,738 | $277,981 | $152,404 | $100,430 | $19,700 | $4,672 | $4,095 |

T-338.003/343865

2025

RD:MJD
1/27/2009

# ORIGINAL

## FOURTH AMENDMENT TO MASTER AGREEMENT FOR WASTEWATER TREATMENT BETWEEN CITY OF SAN JOSE, CITY OF SANTA CLARA AND WEST VALLEY SANITATION DISTRICT

**THIS FOURTH AMENDMENT TO MASTER AGREEMENT** is dated for convenience this _16_ day of _June_, 2009 by and between the CITY OF SAN JOSE ("SAN JOSE") and the CITY OF SANTA CLARA ("SANTA CLARA") both being municipal corporations of the State of California (hereinafter collectively referred to as ("FIRST PARTIES"), and WEST VALLEY SANITATION DISTRICT, formerly County Sanitation District No. 4 (hereinafter referred to as ("AGENCY").

**WHEREAS**, FIRST PARTIES and the AGENCY have previously entered into a Master Agreement for Wastewater Treatment dated March 1, 1983; a First Amendment to Master Agreement for Wastewater Treatment, dated December 17, 1985; a Second Amendment to Master Agreement for Wastewater Treatment, dated December 4, 1995; and a Third Amendment to Master Agreement for Wastewater Treatment, dated August 7, 2006 (collectively referred to as ("MASTER AGREEMENT"); and

**WHEREAS**, AGENCY desires to reduce its obligation for debt service under the Master Agreement by making a cash payment to SAN JOSE in the amount of TWO MILLION EIGHT HUNDRED SEVENTY-FOUR THOUSAND ONE HUNDRED FIFTY-TWO DOLLARS ($2,874,152.00), to be used by SAN JOSE to reduce certain outstanding indebtedness incurred for the San José/Santa Clara Water Pollution Control Plant ("Plant") improvements constructed pursuant to the Master Agreement; and

Document received by the CA 6th District Court of Appeal.

T-338.011/529384.doc

**2026**

RD:MJD
1/27/2009

**WHEREAS,** SAN JOSE desires to accept AGENCY's cash payment to SAN JOSE in the amount of TWO MILLION EIGHT HUNDRED SEVENTY-FOUR THOUSAND ONE HUNDRED FIFTY-TWO DOLLARS ($2,874,152.00) for use by SAN JOSE to reduce certain outstanding indebtedness incurred for the San José/Santa Clara Water Pollution Control Plant ("Plant") improvements constructed pursuant to the Master Agreement

**NOW, THEREFORE,** AGENCY and FIRST PARTIES agree as follows:

<u>**SECTION 1.**</u>    AGENCY agrees to make payment to SAN JOSE, on or before 4 P.M. Pacific Time on January 20, 2009, in the amount of TWO MILLION EIGHT HUNDRED SEVENTY-FOUR THOUSAND ONE HUNDRED FIFTY-TWO DOLLARS ($2,874,152.00), which sum represents the present cash value of AGENCY's allocable share of the remaining debt service payments on the San José-Santa Clara Clean Water Financing Authority Variable Rate Sewer Revenue Refunding Bonds, Series 2005B.

<u>**SECTION 2.**</u>    Table 3 of Exhibit D of the MASTER AGREEMENT is amended to read as set forth in "Revised Exhibit D - Table 3", as attached hereto and incorporated by reference herein.

<u>**SECTION 3.**</u>    All other provisions of said MASTER AGREEMENT not amended by this FOURTH AMENDMENT shall remain unchanged.

<u>**SECTION 4.**</u>    This FOURTH AMENDMENT shall be effective as of 12:01 a.m., January 20, 2009.

Document received by the CA 6th District Court of Appeal.

*T-338.011/529384.doc*

**2027**

RD:MJD
1/27/2009

**IN WITNESS WHEREOF**, FIRST PARTIES and WEST VALLEY SANITATION DISTRICT have caused this FOURTH AMENDMENT to MASTER AGREEMENT as to be executed in their respective names and their respective seals to be affixed hereunto by their duly authorized officers, all as of the date first above written.

"FIRST PARTIES"

APPROVED AS TO FORM:

_____
MOLLIE J. DENT
Senior Deputy City Attorney

CITY OF SAN JOSE,
a municipal corporation

_____
DEANNA SANTANA
Deputy City Manager
200 East Santa Clara Street
San José, CA  95113-1905

APPROVED AS TO FORM:

_____
Attorney

ATTEST:

_____
City Clerk

CITY OF SANTA CLARA,    Approved by Council
a municipal corporation    05/19/09

_____
Mayor

_____
City Manager
1500 Warburton Avenue
Santa Clara, CA  95050
Telephone (408) 984-3140

ATTEST:

_____
City Clerk

"AGENCY"

APPROVED AS TO FORM:

_____
Attorney

ATTEST:

_____
Secretary

WEST VALLEY SANITATION DISTRICT

_____
General Manager
100 E. Sunnyoaks Avenue
Campbell, CA 95008
(408) 378-2407

Document received by the CA 6th District Court of Appeal

T-338.011/529384

3

**2028**

RD:MJD
1/27/2009

**REVISED EXHIBIT D**
**TABLE 3**
**SAN JOSE/SANTA CLARA**
**WATER POLLUTION CONTROL PLANT**

**PHASE 1 RECYCLING DEBT ALLOCATION**

Series 2005 A Refunding Bonds - Principle $54,020,000; last payment due November 15, 2016

Series 2005 B Refunding Bonds - Principle $27,130,000; last payment due November 15, 2020[1]

| San José | West Valley | Cupertino | Milpitas | District 2-3 | Sunol | Burbank |
|----------|-------------|-----------|----------|--------------|-------|---------|
| 80.281% | 10.594% | 6.734% | 0.643% | 1.436% | .075% | .237% |

---

[1] The 2005B Bonds scheduled to be refunded on January 29, 2009 and replaced with 2009A Refunding Bonds in the Principal Amount of $21,420.00. West Valley's payment of $2,874,152.00 is scheduled to be used to buy back 2005B Refunding Bonds. If West Valley payment of $2,874,152.00 is received by January 20, 2009 and 2009A Refunding is successful, West Valley will have no further obligation for 2005B debt and no obligation for 2009A Refunding bonds. If West Valley's payment of $2,874,152.00 is not received by January 20, 2009 or 2009A Refunding is unsuccessful, West Valley will be obligated for the 2005B or 2009A debt in the percentage stated for the 2005B debt.

*T-338.011/529384_2*

d by the CA 6th District Court of Appeal.

**2029**