SVEND BRANDT-ERICHSEN (WA BN 23923)
sbrandterichsen@nossaman.com
*Pro Hac Vice*
JENNIFER J. SEELY (AK BN 63021)
jseely@nossaman.com
*Pro Hac Vice*
NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone:  206.395.7630
Facsimile:   206.257.0780


BRENDAN F. MACAULAY (CA BN 162313)
bmacaulay@nossaman.com
NOSSAMAN LLP
50 CALIFORNIA STREET, 34TH FLOOR
San Francisco, CA 94111
Telephone:    415.398.3600
Facsimile:    415.398.2438

*Attorneys for Defendant City of Santa Clara*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ASHLEY M. GJØVIK, AN INDIVIDUAL,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a corporation, CITY OF SANTA CLARA, a local government, MR. KALIL/KHALIL JENAB, individually, & as Agent/Member/Manager of: JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, & as Trustee/Agent of: THE JENAB FAMILY TRUST,<br><br>Defendants. | Case No:     5:25-cv-07360-PCP<br><br>**DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**Date:**     **June 25, 2026**<br>**Time:**     **10:00 am**<br>**Location:**  **Courtroom 8 – 4th Floor**<br>           **280 South 1st Street**<br>           **San Jose, CA**<br><br>**Judge:**    **Hon. P. Casey Pitts** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................................2

III.  ARGUMENT.........................................................................................................................3

    A.    Legal standard for preliminary injunctive relief. .........................................................3

    B.    Gjøvik's claims against the City have no merit............................................................3

        i.    Gjøvik has no RCRA claim against the City. ......................................................3

        ii.   Gjøvik has no CAA claim against the City..........................................................6

        iii.  Gjøvik has no CWA claim against the City.........................................................6

        iv.   Gjøvik has no public nuisance claim against the City. .......................................9

    C.    Gjøvik has not demonstrated irreparable harm to her interests in the absence of preliminary relief from the City....................................................................10

    D.    The balance of equities tips sharply against Gjøvik. ...................................................12

    E.    An injunction against the City is not in the public interest..........................................13

IV.   CONCLUSION.....................................................................................................................13

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................................3

*California River Watch v. City of Vacaville*, 39 F.4th 624 (9th Cir. 2022) ...................................4

*City of Fairborn, Ohio v. U.S. E.P.A.*, No. 3:22-CV-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023)..........................................................................................................5

*City of Olmstead Falls v. U.S. E.P.A.*, 233 F. Supp. 2d 890 (N.D. Ohio 2002) .............................5

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180 (E.D. Wash. 2015) .........................................................................................................4

*Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) ...................................................................................................................................4

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ..............................................3

*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010) ..........................................................12

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................................. *passim*

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .............................................................4

*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) ..................................................................................................................................4, 8, 9

*Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)...................................................13

*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) ........................................................... *passim*

*W. Watersheds Project v. Salazar*, No. CV 11-00492 DMG (EX), 2011 WL 13124018 (C.D. Cal. Aug. 10, 2011)...............................................................................12

*Winter. Los Angeles Unified Sch. Dist. v. S&W Atlas Iron & Metal Co.*, 506 F. Supp. 3d 1018 (C.D. Cal. 2020)..............................................................................11

*Winter v. NRDC*, 555 U.S. 7 (2008) ....................................................................................... *passim*

**State Cases**

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) .......................................................9

*Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350 (2017)...............................................................................................................................9, 10

*People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51 (2017) ............................................9

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**Federal Statutes**

33 U.S.C. § 1319(f)...............................................................................................................6, 7

33 U.S.C. § 1365.......................................................................................................................1

33 U.S.C. § 1365(a)(1)..............................................................................................................8

33 U.S.C. § 1365(a)(2)..............................................................................................................8

42 U.S.C. § 6972.......................................................................................................................1

42 U.S.C. § 6972(a)(1)(B) ..............................................................................................3, 4, 12

42 U.S.C. § 7002.......................................................................................................................1

42 U.S.C. § 7604.......................................................................................................................1

42 U.S.C. § 7604(a)(1)...............................................................................................................6

42 U.S.C. § 7604(a)(3)...............................................................................................................6

**State Statutes**

Cal. Civ. Code § 3479................................................................................................................9

Cal. Civ. Code § 3480................................................................................................................9

Cal. Civ. Code § 3482................................................................................................................9

Cal. Code Civ. Pro. § 338 .......................................................................................................10

**Other Authorities**

*In Re Allen Family Foods, Inc.*, EPA Docket No. CWA-3-2001-00022002, 2002
    WL 461746 (March 18, 2002) ............................................................................................7

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## I.     **INTRODUCTION**

Plaintiff Ashley Gjøvik (Gjøvik) cannot justify preliminary injunctive relief against the City of Santa Clara (City). Gjøvik cannot prevail on the merits of the underlying claims, she has made no showing of irreparable injury, and both the balance of equities and public policy weigh sharply against granting a preliminary injunction.  Accordingly, the City respectfully urges the Court to deny Gjøvik's motion for a preliminary injunction.

Gjøvik's request for preliminary injunctive relief relies on a subset of the claims alleged in her Amended Complaint. She seeks a preliminary injunction based upon alleged violations of three federal environmental laws. ECF No. 80 ¶¶ 22–35 (Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972), ¶¶ 36–42 (Clean Air Act (CAA), 42 U.S.C. § 7002), ¶¶ 43–50 (Clean Water Act (CWA), 33 U.S.C. § 1365). The bulk of her merits arguments under these statutes are directed at Apple and its facility. As to the City, Gjøvik alleges nothing more than nonactionable lapses in enforcement. ECF No. 80 ¶¶ 33, 50, 52. Putting aside the lack of evidence supporting that claim, enforcement decisions are inherently discretionary and generally unreviewable by the courts. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Even if she could overcome that hurdle, Gjøvik's claims are based on "citizen suit" provisions that do not authorize judicial review of discretionary regulatory actions. 42 U.S.C. § 6972 (RCRA); 42 U.S.C. § 7604 (CAA); 33 U.S.C. § 1365 (CWA); *Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001). Gjøvik also advances her public nuisance claim as a basis for preliminary injunctive relief, but she has not offered any evidence that zoning and planning decisions the City made a decade or more ago caused the alleged current nuisance. ECF No. 80 ¶¶ 51–52. Moreover, she questions City actions that occurred long before any applicable statute of limitations.

Gjøvik has not shown that a harmful release of pollutants from the Apple facility is likely in the absence of a preliminary injunction and has offered only conclusory assertions that public parks and residences near the Apple facility are subject to pollution from that facility. She also has failed to demonstrate that irreparable harm is likely without a freeze on planning and zoning around the Apple facility, park closures, and signs in the parks that she seeks to impose on the City. ECF No. 80 ¶ 61.

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

The balance of equities and the public interest also weigh against granting Gjøvik's proposed preliminary injunction against the City. Depriving the public of the use of parks and barring property owners who are not parties to this litigation from obtaining planning and zoning authorizations, depriving them of property interests without due process, would harm the public interest for the sake of speculative risk based on no concrete evidence. The balance of hardships tilts sharply against issuance of a preliminary injunction against the City.

## II.    FACTUAL BACKGROUND

Gjøvik's case concerns Apple's facility at 3250 Scott Blvd in Santa Clara, CA ("the Apple facility") and alleged emissions and discharges from that facility. ECF No. 48 ¶ 1; ECF No. 80 ¶ 10. The City's connection to the Apple Facility is solely as a regulator. Gjøvik has observed that the hazardous materials division of the City's Fire Department is a California Certified Unified Program Agency ("CUPA"). ECF No. 48 ¶ 43. The court may take judicial notice of the City's CUPA status.[1] Through the Fire Department, the City has assumed regulatory oversight of the Apple facility's compliance with specific hazardous waste and hazardous materials laws that have been delegated to the City through the CUPA program. *Id.* Gjøvik makes general allegations that the City has permitted and facilitated operations at the Apple Facility, failed to enforce environmental regulations, and concealed violations from affected residents and other regulatory agencies. ECF No. 48 ¶ 3; ECF No. 80 ¶ 3. All of these allegations relate to the City's regulatory role under the CUPA program, or to land use actions that occurred more than a decade ago.

The Apple facility's water discharges are regulated under Clean Water Act programs. It holds a wastewater discharge permit from the San José-Santa Clara Regional Wastewater Facility ("RWF"), which runs the wastewater treatment plant to which the Apple facility discharges. ECF No. 48 ¶ 565. The City is a 20% minority owner of the RWF treatment plant and the RWF's regulatory compliance is the City of San José's responsibility. ECF No. 59 Ex. 1 at PDF pgs. 33–

---

[1] A CUPA is a local agency certified by the California Environmental Protection Agency to implement and enforce six state hazardous waste and hazardous materials regulatory management programs. CalEPA, *More about the Unified Program*, available at: https://calepa.ca.gov/cupa/about/; California CUPA Forum, *What is a CUPA?*, available at: https://calcupa.org/about/mission.html. As relevant to this motion, the CUPA programs include enforcement of RCRA requirements.

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

35; Ex. 2 at PDF pgs. 5; 22–23; 57–59. The Apple facility also discharges to the City's stormwater system, for which the City holds a municipal separate storm sewer system ("MS4") permit. ECF No. 78 ¶¶ 25, 28. The MS4 permit obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains. *Id.* at 25. The City has performed its MS4 permit obligations at the Apple facility. ECF No. 48 ¶¶ 428, 578, 580, 654, 679, 680. Gjøvik alleges that the City should have commenced enforcement actions related to both the Apple facility's wastewater and stormwater discharges. ECF No. 80 ¶ 50.

## III.    ARGUMENT

### A.    Legal standard for preliminary injunctive relief.

Preliminary injunctive relief is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). "A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (alteration in original) (quoting *Winter*, 555 U.S. at 20). A plaintiff must establish all four factors.

As to the first and third injunction factors, the Ninth Circuit applies a "serious questions" test: it is sufficient for a plaintiff to demonstrate that there are "serious questions going to the merits" if the balance of hardships "tips sharply" in the plaintiff's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). However, plaintiffs still must meet the other two prongs of the *Winter* test, showing that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135.

### B.    Gjøvik's claims against the City have no merit.

#### i.    Gjøvik has no RCRA claim against the City.

Gjøvik's preliminary injunction motion rests primarily on a RCRA claim under 42 U.S.C. § 6972(a)(1)(B). ECF No. 80 ¶ 18. To prevail on this claim, a plaintiff must establish: "(1) a 'person,' as defined under RCRA, has 'contributed' or 'is contributing' to, (2) the 'past or present

handling, storage, treatment, transportation, or disposal of' any 'solid or hazardous waste,' and (3) the waste in question 'may present an imminent and substantial endangerment to health or the environment.' *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1218 (E.D. Wash. 2015) (citing *Ecol. Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 514 (9th Cir. 2013)). Gjøvik is not likely to succeed on the merits of this claim against the City, as the RCRA claim against the City fails on all three prongs.

With regard to the first prong, Gjøvik argues that the City "contributes" to endangerment with "deficient oversight" of the Apple facility from its CUPA program. ECF No. 80 ¶ 33. However, the City has not, within the meaning of this statute, "contributed to" the "past or present handling, storage, treatment, transportation, or disposal" of hazardous waste at the Apple facility. 42 U.S.C. § 6972(a)(1)(B). To state a claim "predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011) (holding that dry cleaning equipment manufacturers are not liable as contributors under RCRA); *see also California River Watch v. City of Vacaville*, 39 F.4th 624, 631–633 (9th Cir. 2022) (holding that that a city was not contributing to past or present "transportation" of hazardous waste by "incidentally" carrying it through its pipes when pumping water to residents).

The Ninth Circuit has specifically considered the scope of contributor liability for regulators. *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023). "An agency's choice not to regulate despite authority to do so does not manifest the type of actual, active control contemplated by RCRA." *Id.* at 954; *see also Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934–935 (C.D. Cal. 2023) (holding the City of Long Beach did not have "actual control" or "actually contributed" to RCRA violations at the Port of Long Beach simply by owning several of the piers). As such, the City has not "contributed" to the handling, storage, treatment, transportation, or disposal of hazardous waste at the Apple facility. 42 U.S.C. § 6972(a)(1)(B). In any case, neither courts nor Gjøvik are empowered to direct the City's enforcement discretion with regard to its oversight of the Apple facility through its CUPA

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

program. *Heckler*, 470 U.S. at 831–833; *Sierra Club*, 268 F.3d at 902 (9th Cir. 2001); *see also City of Olmstead Falls v. U.S. E.P.A.*, 233 F. Supp. 2d 890, 900–901 (N.D. Ohio 2002); *City of Fairborn, Ohio v. U.S. E.P.A.*, No. 3:22-CV-102, 2023 WL 2478572, at *9 (S.D. Ohio Mar. 13, 2023).

Gjøvik's own evidence also refutes her claims regarding the City's oversight. She shows that the City has inspected and enforced RCRA at the Apple facility, ECF No. 48 ¶¶ 168, 172, 203, 207, 208, 253, 304, and followed up on citizen complaints, *id.* ¶ 189. And as to the City's response to incidents, Gjøvik has submitted records regarding eleven occasions when the Fire Department responded to calls or alarms from the Apple facility. Gjøvik Decl., Ex. J., ECF No. 80-4. Each time, the Fire Department's units were on site within four to seven minutes of receiving a call. *Id.* Some of the calls involved small releases to hooded cabinets or interior spaces. *Id.* at 40, 43–44, 47, 57–58, 63. Two included the venting of small amounts of gas out of the building, with no evidence of impacts outside of the facility. *Id.* at 51, 57–58. Others were false alarms or medical responses, including responses unrelated to hazardous materials. *Id.* at 64, 67–68, 70–71, 73, 75. These records demonstrate the Fire Department's competent and professional response to the only recorded hazardous material incidents at the Apple facility, none of which posed a threat to the surrounding community. Thus, Gjøvik's own evidence refutes her allegations of deficient oversight of the Apple facility.

With regard to the second prong, the City does not own or operate the Apple facility, and Gjøvik has not claimed that the City is treating, storing, or disposing of hazardous waste from that facility. Gjøvik has not and cannot allege that the City is a generator or transporter of Apple's hazardous waste, or a past or present operator of Apple's facility. *See* ECF No. 48 ¶ 32.

For the third prong, Gjøvik has offered no evidence that any imminent or substantial endangerment exists at residences or the City's public parks near the Apple facility. ECF No. 80 ¶ 33. She has offered evidence that the Apple facility stores and uses hazardous materials. However, she has offered no evidence that those materials have been released in quantities that pose a hazard beyond the facility's boundaries, or that any such release is likely to occur while this case is pending (the relevant timeframe for a preliminary injunction motion). As just discussed,

the records of Fire Department responses she has submitted to the Court prove the opposite.

But even if she had offered any such evidence, that still would not provide the basis for a claim against the City, as the City does not control releases from the Apple facility. Gjøvik's theory is that imminent hazards are posed by materials being released from the Apple facility, but she cannot assign any responsibility for hazardous materials or wastes at the Apple facility to the City. The City is not generating, transporting, storing, or disposing of hazardous waste at that Apple facility, or at the parks she has asked to be closed to the public. ECF No. 80 ¶ 33. As a result, even if she did have evidence of RCRA violations at the facility resulting in imminent risk of offsite releases, that would not provide the basis for preliminary injunctive relief against the City.

In sum, Gjøvik's RCRA claim against the City has no likelihood of success on the merits, thereby failing the first *Winter* prong.

### ii.    Gjøvik has no CAA claim against the City.

Gjøvik asserts no CAA claim against the City in her motion for a preliminary injunction; she does not mention the City at all in that portion of her motion. ECF No. 80 ¶¶ 36–42. Even if Gjøvik did attempt to assert a CAA claim against the City, she has none. The CAA citizen suit provision authorizes suit against persons who violate "an emission standard or limitation" or an order respecting such a standard or limitation, 42 U.S.C. § 7604(a)(1), or who construct an air-pollution-emitting facility without the appropriate permit or violate such a permit, 42 U.S.C. § 7604(a)(3). Gjøvik has not alleged that the City violated an air pollution emission standard or constructed an air-pollution-emitting facility without a permit, nor could she, since she has acknowledged that the City neither owns nor operates the Apple facility. *See* ECF No. 48 ¶ 32.  As such, Gjøvik has no CAA claim against the City.

### iii.    Gjøvik has no CWA claim against the City.

In her preliminary injunction motion, Gjøvik introduces a new argument and asserts that CWA Section 1319(f) imposes an affirmative enforcement duty on owners of certain wastewater treatment facilities who know an industrial user is violating effluent standards. ECF No. 80 ¶ 50. However, she offers no evidence of the factual predicate triggering that provision and in any event it is not enforceable by citizen suit. This provision authorizes EPA, if the agency "finds that an

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

owner or operator of any source is introducing a pollutant into a treatment works," to notify the owner or operator and the State. 33 U.S.C. § 1319(f). Then, if the "owner or operator of the treatment works does not commence appropriate enforcement action within 30 days of the date of such notification, [EPA] may commence a civil action[.]" *Id.* By its own text, the provision does not authorize action by private parties. Gjøvik asserts that the City's "failure to commence appropriate enforcement action authorizes this citizen suit," but she does not allege that EPA made any finding or notification that Apple was introducing a pollutant into a treatment works that would trigger the provision. ECF No. 80 ¶ 50. Section 1319(f) gives EPA one of several "enforcement choices" under the CWA, *In Re Allen Family Foods, Inc*., EPA Docket No. CWA-3-2001-00022002, 2002 WL 461746, *2 (March 18, 2002); it does not empower Gjøvik or any court to direct an owner or operator of a treatment works in the exercise of their enforcement discretion. *Heckler*, 470 U.S. at 832–833; *Sierra Club*, 268 F.3d at 905.

In any case, the City is a minority owner of the San José-Santa Clara Regional Wastewater Facility, and the treatment plant and its regulatory compliance is the City of San José's responsibility. ECF No. 59 Ex. 1 at PDF pgs. 33–35; Ex. 2 at PDF pgs. 5; 22–23; 57–59. The documents Gjøvik has submitted in support of her motion provide additional evidence that the City of San José is responsible for the wastewater facility. ECF No. 88 ¶ B.1, B.2, Ex. D (City of San José lab reports for effluent from the Apple facility), Ex. E (City of San José source control self monitoring report checklist for the Apple facility). All demonstrate the City of San José's role as administrator of the treatment plant, including oversight of industrial dischargers.

Gjøvik also submitted her own observations of storm drains and stormwater flows. She did not document any improper discharges to storm drains from the Apple facility and she admits that her test strip observations of the outfall do not meet regulatory standards. ECF No. 80-3 ¶¶ 38–40. Gjøvik also submitted the same information to EPA as a complaint, which EPA referred to the State and the State forwarded to the City. Declaration of Svend Brandt-Erichsen (Brandt-Erichsen Decl.), Ex. 1. The City investigated the complaint and found no evidence of improper stormwater discharges, pollutant sources, or impacts to water quality or aquatic habitat. Brandt-Erichsen Decl., Ex. 2. In conducting its investigation, the City inspected 1.38 miles of San Tomas Aquino Creek,

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

including the confluence with Saratoga Creek, and inspected 133 storm drain manholes and catch basins along 18,789 linear feet of storm drain line, including the stormwater treatment measures at the Apple facility. *Id*. The City identified one discharge to the storm drain system that has its own permit from the Regional Water Quality Control Board. *Id*. All other drains and laterals were consistent with typical dry weather conditions and the inspection did not reveal any identifiable sources. *Id*. Gjøvik also sent the same complaint to the Santa Clara Valley Water District, which owns or has easements for the creek channels in the area. Brandt-Erichsen Decl., Ex. 3. Valley Water also investigated Gjøvik's allegations but found no issues in the area. *Id*.

Gjøvik has not offered credible evidence of improper stormwater discharges from the Apple facility and her complaints have been investigated by the City's stormwater professionals. But even if she had done so, that would not provide a basis for a claim against the City. Gjøvik is not entitled to direct how the City enforces its stormwater program under its stormwater permit. *Heckler*, 470 U.S. at 832–833; *Sierra Club*, 268 F.3d at 905.

Gjøvik also makes meritless CWA citizen suit claims against the City in her motion for a preliminary injunction. ECF No. 80 ¶¶ 1, 16, 20. The CWA citizen suit statute authorizes suit against any person who is alleged to be in violation of an "effluent standard or limitation" or an order issued by EPA or a state with respect to such a standard or limitation. 33 U.S.C. § 1365(a)(1). It also authorizes suit against the EPA where the EPA is alleged to have failed to perform a nondiscretionary duty. 33 U.S.C. § 1365(a)(2). In her preliminary injunction motion, Gjøvik does not allege that the City is unlawfully discharging or that EPA has failed to perform a nondiscretionary duty; indeed, she does not substantively discuss the citizen suit elements. ECF No. 80 ¶¶ 1, 16, 20.

In other filings, she has made the conclusory allegation that the City is "responsible and liable due to their contribution to these issues." ECF No. 48 ¶ 437. She attributes the alleged contribution to the City's assumption of the CUPA program, failure to warn, design and siting, concealment of information from the public, negligent advice, and ownership of adjacent public property, "among other theories of liability." *Id*. As noted above, the CUPA program regulates hazardous materials; it does not include CWA authority. This case is like *Los Angeles*

*Waterkeeper*, 702 F. Supp. 3d at 934, where the plaintiff "generally group[ed]" the defendant City of Long Beach with industrial facility operators but did not plausibly allege that it had, "in its own right, acted in such a way that it could reasonably be considered to be in violation of federal pollution control requirements." 702 F. Supp. 3d at 934 (quoting *Puget Soundkeeper All. v. Total Terminals Int'l, LLC*, 371 F. Supp. 3d 857, 863 (W.D. Wash. 2019)).

In sum, Gjøvik has no claim against the City under the CWA, let alone reasonable prospects for success on the merits.

### iv.    Gjøvik has no public nuisance claim against the City.

In her preliminary injunction motion, Gjøvik argues that the City is liable for public nuisance because she says public officials made statements that housing should not be approved in industrial areas. ECF No. 80 ¶ 52. Even if true, that would not support a nuisance claim against the City. A nuisance is anything "which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway[.]" Cal. Civ. Code § 3479. A public nuisance "is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482.

Causation is "an essential element of a public nuisance claim." *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017). A plaintiff must establish a "connecting element" or a "causative link" between the defendant's conduct and the threatened harm. *Id.* (quoting *In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005)). The defendant also must be more than just a link in the causation chain. A plaintiff must show the defendant's conduct was a "substantial factor" in causing the alleged harm. *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009) (holding that the defendant apartment complex's conduct was a substantial factor in causing a secondhand tobacco smoke hazard because it provided ashtrays and permitted its employees to smoke); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51,

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

102 (2017) (holding that defendant companies' conduct was a substantial factor in causing a lead paint nuisance because they had affirmatively promoted lead paint for interior residential use); *contra City of San Diego*, 8 Cal. App. 5th at 361 (holding that defendant City's conduct was not a substantial factor in causing a noxious sea lion waste odor at La Jolla Cove because the City's fence had not impacted sea lion population dynamics or behavior).

Here, Gjøvik argues that the Apple Facility is a public nuisance because she alleges it is releasing and emitting substances that harm the community. ECF No. 80 ¶ 51; ECF No. 48 ¶¶ 757–758. She alleges that the City allowed this public nuisance to happen by permitting the Apple facility and nearby housing. ECF No. 80 ¶ 52. Any offsite impacts from releases at the Apple facility are caused by the facility, not by the City. To the extent Gjøvik is arguing that better City enforcement could have avoided or mitigated those impacts, the City's conduct did not cause the impacts and the City's enforcement decisions under the CUPA program are not subject to judicial review or direction. *Heckler*, 470 U.S. at 838; *Sierra Club*, 268 F.3d at 905. The City's conduct is not a "substantial factor" in any nuisance related to the Apple facility. *City of San Diego*, 8 Cal. App. 5th at 361. Additionally, as Gjøvik acknowledged, the CEQA and zoning procedures for the Apple facility and Santa Clara Square Apartments were 10–15 years ago. ECF No. 48 ¶¶ 109–159. CEQA statutes of limitation are 30–35 days depending on the procedures used by the public agency. Cal. Code Reg. Tit. 14, § 15112. The statute of limitations for nuisance is three years, Cal. Code Civ. Pro. § 338, and a 10-year-old zoning decision is not a continuing nuisance. By any measure, over 10 years after these CEQA and zoning decisions is too late to challenge them in court. Gjøvik's public nuisance claim against the City has no chance of success on the merits, and it therefore fails the first *Winter* prong.

**C.**      **Gjøvik has not demonstrated irreparable harm to her interests in the absence of preliminary relief from the City.**

Gjøvik has not shown that her interests would be irreparably harmed in the absence of a preliminary injunction. Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction. *Winter*, 555 U.S. at 22. The plaintiff must show that, in the absence of a preliminary injunction, they are "likely to suffer irreparable harm

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

before a decision on the merits can be rendered," because a preliminary injunction "will not be issued simply to prevent the possibility of some remote future injury." *Id.* Issuing an injunction on such a *possibility* of irreparable harm is inconsistent with the Supreme Court's "characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Gjøvik has demonstrated no harm to her interests, let alone irreparable harm, in the absence of a freeze on planning and zoning around the Apple facility, park signs, and park closures. She has offered no evidence whatsoever—only conclusory assertions—that public parks and residences near the Apple facility are subject to pollution from that facility. *E.g.*, ECF No. 48 ¶¶ 633, 787, 793, 804; ECF No. 80 ¶¶ 13, 49. More broadly, Gjøvik has not shown that a harmful release of hazardous substances, water, or air pollution from the Apple facility is likely in the absence of a preliminary injunction. She has alleged that the environmental review for the Apple facility included the risk of a hazardous materials release, including emergency response planning, ECF No. 48 ¶¶ 147–148, and that Apple refined its emergency response for employee evacuations, *id.* ¶ 181.

With regard to the City, she shows that the City has inspected and enforced RCRA at the Apple facility, ECF No. 48 ¶¶ 168, 172, 203, 207, 208, 253, 304, and followed up on citizen complaints, *id.* ¶ 189. In her motion for a preliminary injunction, she does not allege that the City has anything to do with air emissions from the Apple facility, ECF No. 80 ¶¶ 36–45, and indeed recognizes in her opposition to the City's motion to dismiss that the City is not the air permitting authority for the Apple facility. ECF No. 78 ¶ 38. She likewise does not allege any likely irreparable harm to her interests related to water quality, and in fact recognizes that inspectors from the City and the Regional Wastewater Facility have inspected the Apple facility. ECF No. 80 ¶¶ 45–46. None of these allegations show a likely risk of irreparable harm from hazardous substances, air, or water pollution from the Apple facility, let alone any risk related to the City.

Specific to RCRA, even if Gjøvik could show that she is likely to succeed on the merits of her RCRA claim for imminent and substantial endangerment, that does not "translate into likely imminent harm" under *Winter. Los Angeles Unified Sch. Dist. v. S&W Atlas Iron & Metal Co.*,

506 F. Supp. 3d 1018, 1035 (C.D. Cal. 2020). Under RCRA, a plaintiff must show that the defendant's conduct "may" present an imminent and substantial endangerment, 42 U.S.C. § 6972(a)(1)(B), but under *Winter*, imminent harm must be "likely" before a preliminary injunction can be issued. *Winter*, 555 U.S. at 20. Gjøvik has not met this standard here, and irreparable harm in the absence of a preliminary injunction is not likely.

### D.    The balance of equities tips sharply against Gjøvik.

To obtain a preliminary injunction, a plaintiff must show "that the balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. An injunction is a matter of equitable discretion, and the "assignment of weight to particular harms is a matter for district courts to decide." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010). Courts consider economic harms in this analysis. *Id*; *W. Watersheds Project v. Salazar*, No. CV 11-00492 DMG (EX), 2011 WL 13124018, at *20 (C.D. Cal. Aug. 10, 2011).

Here, depriving the public of the use of parks and barring property owners who are not parties to this litigation from obtaining planning and zoning authorizations would harm the public interest for the sake of speculative risk based on no concrete evidence. Gjøvik has offered only conclusory assertions that "Meadow Park, Creekside Park, the children's playgrounds within five hundred feet, and the trail segments within one thousand feet" are polluted or at risk of being polluted by the Apple facility, and zero supporting evidence. ECF No. 80 ¶ 61. Installing "signage" during the pendency of this litigation would alarm and mislead the public. *Id.* In the case of noncompliance by Apple, which Gjøvik leaves vaguely unspecified, *id.*, closing parks and trails near the Apple facility would deprive the public of access to their own parks and playgrounds. Suspending the processing of planning and zoning applications near the Apple facility would economically harm people who are not parties to this case and cannot speak for themselves in this matter and would deprive people of the value of their property without due process and a hearing. Even a delay in processing of planning and zoning applications could cause substantial economic harm to these third parties and/or jeopardize the financial feasibility of much-needed residential projects. The balance of hardships tilts sharply against issuance of a preliminary injunction against the City.

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**E.    An injunction against the City is not in the public interest.**

Gjøvik's proposed injunction against the City would harm the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); *see also Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). Gjøvik seeks a freeze on planning and zoning around the Apple facility, park signs and park closures. ECF No. 80 ¶ 61. As discussed *supra*, these would harm the public. Protecting the public from the risk of exposure to hazardous substances may be in the public interest, but Gjøvik's motion for a preliminary injunction is not supported by any evidence demonstrating such exposures are likely to occur in this case. ECF No. 80. And she also has not made any case for the Court to intervene in the City's exercise of its role as regulator of the Apple facility. Gjøvik has specifically acknowledged that the City has inspected and enforced the RCRA[2] and stormwater programs[3] at the Apple facility. She wants different enforcement activity, but the City's discretion is not hers to direct. *Sierra Club*, 268 F.3d at 902. The City is protecting the public interest at the Apple facility by performing its duties; Gjøvik seeks to harm the public interest with an overbroad and heavy-handed injunction that would deprive the public of access to public spaces and municipal permitting.

## IV.    CONCLUSION

Gjøvik's claims against the City are not likely to succeed on the merits, she cannot show irreparable injury, the balance of equities tips sharply against her and against granting preliminary injunctive relief, and a preliminary injunction would not be in the public interest.  Accordingly, the City respectfully urges the Court to deny Gjøvik's motion.

---

[2] ECF No. 48 ¶¶ 168, 172, 203, 207, 208, 253, 304.
[3] ECF No. 48 ¶¶ 578, 580; ECF No. 80 ¶ 46.

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

DATED:  May 28, 2026

NOSSAMAN LLP
SVEND BRANDT-ERICHSEN
BRENDAN F. MACAULAY
JENNIFER J. SEELY


By:  */s/ Svend Brandt-Erichsen*
Svend Brandt-Erichsen
sbrandterichsen@nossaman.com
*Pro Hac Vice*
Jennifer J. Seely
jseely@nossaman.com
*Pro Hac Vice*
NOSSAMAN LLP
719 Second Avenue, Suite 120
Seattle, WA 98104
Telephone: 206.395.7630
Facsimile: 206.257.0780

Brendan F. Macaulay
CA Bar # 162313
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:     415.398.3600
Facsimile:     415.398.2438
bmacaulay@nossaman.com

*Attorneys for Defendant City of Santa Clara*

DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May, 2026, I electronically filed the foregoing **DEFENDANT CITY OF SANTA CLARA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Svend Brandt-Erichsen*