# Exhibit B

FILED
Oct 27, 2025
2:45 pm
U.S. EPA REGION IX
HEARING CLERK
Regional

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION IX

| | | |
|---|---|---|
| In the matter of: | ) | U.S. EPA Docket No. |
| | ) | |
| | ) | RCRA-09-2026-0006 |
| Apple, Inc. | ) | |
| CAR 000 278 176 | ) | |
| | ) | CONSENT AGREEMENT AND |
| | ) | FINAL ORDER PURSUANT TO |
| Respondent. | ) | 40 C.F.R. SECTIONS 22.13 AND |
| | ) | 22.18 |
| | ) | |

## CONSENT AGREEMENT

### A. PRELIMINARY STATEMENT

1. This is a civil administrative enforcement action instituted pursuant to Section 3008(a)(1) of the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6928(a)(1), and the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation/Termination or Suspension of Permits, as codified at 40 C.F.R. Part 22 ("Consolidated Rules").

2. The Administrator has delegated enforcement authority under Section 3008 of RCRA, 42 U.S.C. § 6928, to the Regional Administrator of the EPA Region 9, who in turn has delegated this authority to the Director of the Enforcement and Compliance Assurance Division, hereinafter, "Complainant."

3. Respondent is Apple Inc., a California corporation ("Respondent").

4. This Consent Agreement and Final Order ("CA/FO"), which contains the elements of a complaint required by 40 C.F.R. § 22.14(a)(1)-(3) and (8), simultaneously commences and concludes this penalty proceeding, as authorized by 40 C.F.R. §§ 22.13(b) and 22.18(b)(2) and (3).

5. Complainant and Respondent agree that settling this action without the filing of a complaint or the adjudication of any issue of fact or law is in their respective interest and in the public interest.

In the Matter of Apple, Inc.
Consent Agreement and Final Order

6. Notice of this action has been given to the State of California pursuant to Section 3008(a)(2) of RCRA, 42, U.S.C. § 6928(a)(2).

## B. PARTIES BOUND

7. This CA/FO shall apply to and be binding on Respondent, Respondent's officers, directors, partners, agents, employees, contractors, successors and assigns. Action or inaction of any persons, firms, contractors, employees, agents, or corporations acting under, through, or for Respondent shall not excuse any failure of Respondent to fully perform its obligations under this CA/FO. Changes in ownership, real property interest, or transfer of personal assets shall not alter Respondent's obligations under this CA/FO.

## C. STATUTORY AND REGULATORY FRAMEWORK

8. Subtitle C of RCRA requires the EPA Administrator to promulgate regulations establishing a hazardous waste management program. Section 3006 of RCRA, 42 U.S.C. § 6926, provides, *inter alia*, that authorized state hazardous waste management programs are carried out under Subtitle C of RCRA. Therefore, a violation of any requirement of a law under an authorized state hazardous waste program is a violation of a requirement of Subtitle C of RCRA.

9. The State of California received authorization to administer the hazardous waste management program in lieu of the federal program pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, and 40 C.F.R. Part 271, on or about August 1, 1992. This authorization was updated on September 26, 2001 (*see* 66 FR 49118, September 26, 2001), on October 7, 2011 (*see* 76 FR 62303, October 7, 2011), and again on January 14, 2020 (*see* 85 FR 2038, as corrected [*see* 86 FR 29207, June 1, 2021]). The authorized hazardous waste program is established pursuant to the Hazardous Waste Control Law, Chapter 6.5 of Division 20 of the California Health and Safety Code, and the regulations promulgated thereunder at Title 22, Division 4.5 of the California Code of Regulations, 22 C.C.R. §§ 66001 *et seq.* The State is authorized for all the hazardous waste management regulations referenced in this CA/FO.[1]

10. A violation of the State of California's authorized hazardous waste program, found at Health & Safety Code § 25100 *et seq.*, constitutes a violation of Subtitle C of RCRA and, therefore, a person who violates California's authorized hazardous waste program is subject to the powers vested in the EPA Administrator by Section 3008 of RCRA, 42 U.S.C. § 6928.

---

1. All citations to the "C.C.R." refer to Division 4.5 of Title 22 of the current California Code of Regulations. EPA is enforcing California hazardous waste management program requirements as approved and authorized by the United States. As a convenience, corresponding Federal citations are provided in brackets.

In the Matter of Apple, Inc.
Consent Agreement and Final Order

11. Section 3008 of RCRA, 42 U.S.C. § 6928, authorizes the EPA Administrator to issue orders assessing a civil penalty and/or requiring compliance immediately or within a specified time for violation of any requirement of Subtitle C of RCRA, Section 3001 of RCRA et seq., 42 U.S.C. § 6921 *et seq*.

**D.    GENERAL ALLEGATIONS**

12. In or about June 2023, EPA received a report of potential regulatory violations ("Tip and Complaint") at Respondent's facility located at 3250 Scott Boulevard, Santa Clara, California, EPA ID CAR 000 278 176 (the "Facility").

13. On August 17-18, 2023, and on January 16, 2024, EPA conducted inspections at the Facility. EPA informed Respondent that the EPA inspection was related to a Tip and Complaint from the public. During the August 17, 2023 inspection, EPA was accompanied by a representative of the Santa Clara Fire Department (the local Certified Unified Program Agency under California's hazardous waste program). During the August 18, 2023 inspection, both an EPA RCRA inspector and an EPA risk management program representative were onsite at the Facility.

14. During and after each inspection, EPA requested additional information from the Facility. Respondent provided responses to these inspection-related information requests from EPA.

15. On April 30, 2024, EPA sent Respondent a Notice of Violation and Request for Information pursuant to Section 3007(a) of RCRA, 42 U.S.C. § 6927(a).

16. On April 30, 2024, EPA sent Respondent a Compliance Evaluation Inspection Report containing findings, observations, and areas of concern from EPA's inspections and also identifying potential violations.

17. On November 6, 2024, EPA sent Respondent a second Request for Information pursuant to Section 3007(a) of RCRA, 42 U.S.C. § 6927(a).

18. Respondent provided responses to the Notice of Violation and to each Request for Information. Respondent also undertook compliance actions to address and resolve regulatory issues identified by EPA during the inspections and in related communications to Respondent, including areas of concern and potential violations.

19. On June 26, 2025, EPA sent Respondent a Notice of Potential Enforcement pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

20. Based upon the factual findings EPA made during the inspections that were initiated following review of the Tip and Complaint, and additional information obtained in connection with and subsequent to the inspections, EPA has determined that

3

In the Matter of Apple, Inc.
Consent Agreement and Final Order

Respondent violated California Health & Safety Code § 25100 *et seq.* and the regulations adopted pursuant thereto, as approved and authorized by the United States.

21. Because Respondent has undertaken compliance actions to address and resolve regulatory issues identified by EPA during the inspections and in related communications to Respondent, including the issues described specifically in the Counts below, EPA is not requiring additional compliance actions in this CA/FO.

22. Respondent is a "person" as defined in 22 C.C.R. § 66260.10 [40 C.F.R. § 260.10].

23. Respondent is the "owner" and/or "operator" of a facility as defined in 22 C.C.R. § 66260.10 [40 C.F.R. § 260.10].

24. Respondent is a "generator" of hazardous waste as defined in 22 C.C.R. § 66260.10 [40 C.F.R. § 260.10].

25. Respondent is or has been engaged in "treatment," "storage," and/or "disposal" of "hazardous waste" as defined in 22 C.C.R. §§ 66260.10 and 66261.3 [40 C.F.R. §§ 260.10 and 261.3].

26. At the Facility, Respondent generates and accumulates, or has generated and accumulated, "hazardous waste" as defined in California Health & Safety Code § 25117, and 22 C.C.R. §§ 66260.10 and 66261.3 [*see also* RCRA § 1004(5), and 40 C.F.R. §§ 260.10 and 261.3]. These hazardous wastes include but are not limited to the following hazardous waste codes: D001, D002, D003, D004, D011, D035, F003 and F005.

27. At the time of the Inspection, Respondent did not apply for or have a permit or grant of interim status to store hazardous waste under 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1].

28. At the time of the Inspection and at all times relevant to this CA/FO, Respondent has generated over 1,000 kg of hazardous waste per calendar month, and is therefore considered a Large Quantity Generator pursuant to 22 C.C.R. § 66262.13 [40 C.F.R. § 262.13].

<u>Count I</u>
**Failure to make an accurate waste determination**

29. Paragraphs 1 through 28 above are incorporated herein by reference.

30. 22 C.C.R. § 66262.11 [40 C.F.R. § 262.11] requires a person who generates a waste, as defined by 22 C.C.R. § 66261.2, to determine if that waste is a hazardous waste. Pursuant to 22 C.C.R. §§ 66262.11(a)-(b), to make such a determination, the generator shall first determine if the waste is excluded from regulation under 22 C.C.R. § 66261.4

4

In the Matter of Apple, Inc.
Consent Agreement and Final Order

or Section 25143.2 of the California Health and Safety Code, and shall then determine if the waste is listed as a hazardous waste in Title 22, Division 4.5, Chapter 11, Article 4 of the California Code of Regulations, 22 C.C.R. §§ 66261.30-66261.50. The generator is then required to determine whether the waste exhibits any of the characteristics set forth in Title 22, Division 4.5, Chapter 11, Article 3 of the California Code of Regulations, 22 C.C.R. §§ 66261.20-66261.24.

31. During the inspection EPA observed six 1-gallon containers of corrosive waste and three small containers of unknown waste that were not marked as hazardous waste or dated, though they were subsequently determined to be hazardous waste. In addition, EPA inspectors observed that the contents of the 1700-gallon solvent waste tank were being managed as Non-RCRA Hazardous Waste Liquid (CA-133 waste).  Certain solvents utilized in Respondent's process are characteristic for ignitability (D001 waste) and/or corrosivity (D002 waste) when spent.

32. Respondent subsequently updated its characterization and management of the spent solvent waste stream to comply with RCRA requirements.

33.  EPA alleges that by failing to determine if these wastes were hazardous wastes in accordance with 22 C.C.R. §§ 66261.20-24, Respondent failed to make an accurate hazardous waste determination in violation of 22 C.C.R. § 66262.11 [40 C.F.R. § 262.11].

<u>Count II</u>
**Failure to determine land disposal restriction requirements and provide written notification of determination**

34. Paragraphs 1 through 28 above are incorporated herein by reference.

35. 22 C.C.R. § 66268.7(a) [40 C.F.R. § 268.7(a)] requires a generator of hazardous waste to determine if waste has to be treated before it can be land disposed, to certify that the waste has been examined and that an appropriate Land Disposal Restriction (LDR) determination has been made, to notify an off-site facility receiving waste of the appropriate LDR determination, and to maintain on-site any records relied upon to make an appropriate LDR determination.  Alternatively, the generator may choose not to make the determination of whether the waste requires treatment, in which case the generator must notify the receiving facility of the applicable hazardous waste codes and direct the facility to make the appropriate determination, and place a copy of the notification in the generator's file.

36. During the inspection and attendant records review EPA observed that on 105 days between June 29, 2022, and March 1, 2024, Respondent shipped hazardous waste from the solvent waste tank offsite for treatment or disposal under the waste code CA-133 (California-only hazardous waste – water with solvents), and without an accompanying RCRA hazardous waste code. Respondent did not notify the off-site receiving facility of

5

In the Matter of Apple, Inc.
Consent Agreement and Final Order

the LDR determination for this waste stream (with appropriate records) nor direct the receiving facility to make such determination.

37. Respondent subsequently updated its characterization and management of the spent solvent waste stream to comply with RCRA requirements.

38.  EPA alleges that by failing to determine whether hazardous waste from the solvent waste tank met LDR standards (with appropriate records and notification to the receiving facility) or to direct the receiving facility to make such a determination (with identification of applicable RCRA hazardous waste codes), Respondent violated 22 C.C.R. § 66268.7(a) [40 C.F.R. § 268.7(a)].

### Count III
### Accumulation of hazardous waste over 90 days in central accumulation area

39. Paragraphs 1 through 28 above are incorporated herein by reference.

40. 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1] requires that, with certain exceptions, owners and operators must have interim status or obtain a permit for treatment, storage, or disposal of hazardous waste.

41. 22 C.C.R. § 66262.17(a) [40 C.F.R. § 262.17(a)] exempts generators of hazardous waste from the permit requirements of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1] and allows generators to accumulate hazardous waste on-site for up to ninety days provided that they meet certain conditions.

42. During the inspection EPA observed one 5-gallon waste container containing D002 waste that had been stored at the Facility for more than ninety days. The container was stored on-site from March 2, 2023, until August 17, 2023, when it was sent off-site for disposal.

43. Where a generator fails to comply with the conditional requirements for the permit exemption, it is operating a hazardous waste management facility without a permit in violation of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1]. Therefore, EPA alleges that Respondent operated without a permit for storage of hazardous waste in violation of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1] due to failure to meet the condition for exemption in 22 C.C.R. § 66262.17(a) [40 C.F.R. § 262.17(a)] limiting hazardous waste accumulation time to 90 days.

### Count IV
### Failure to determine applicability of air emission standards for tanks and to control air emissions from the Solvent Waste Lift Station tank

44. Paragraphs 1 through 28 above are incorporated herein by reference.

6

In the Matter of Apple, Inc.
Consent Agreement and Final Order

45. 22 C.C.R. § 66265.1085(b) [40 C.F.R. § 265.1085(b)] states that the owner or operator of a tank subject to Subpart CC shall control air pollutant emissions from each tank, and 22 C.C.R. § 66265.1085(c) [40 C.F.R. § 265.1085(c)] describes the requirements for Tank Level 1 controls, including that each opening on a fixed roof be either equipped with a closure device or connected by a closed-vent system that is vented to a control device.

46. During the inspection and attendant document review, EPA determined that the solvent waste lift station tank is a "tank" within the meaning of 22 C.C.R. § 66260.10 [40 C.F.R. § 260.10].

47. During the inspection and attendant document review, EPA observed that piping from the solvent waste lift station tank that may contain solvent exhaust was connected to the general exhaust system, which vents directly to the atmosphere.

48. In response to EPA's observations, Respondent subsequently installed a conservation pressure/vacuum breather vent to serve as a closure device on the solvent waste lift station tank.

49. EPA alleges that Respondent violated 22 C.C.R. § 66265.1085(b) [40 C.F.R. § 265.1085(b)] by failing to route emissions from the solvent waste lift station tank to an appropriate control device.

## Count V
### Failure to label containers as to their contents and with dates clearly visible for inspection

50. Paragraphs 1 through 28 and 40 above are incorporated herein by reference.

51. 22 C.C.R. § 66262.17(a)(5)(A) [40 C.F.R. § 262.17(a)(5)(i)] exempts generators of hazardous waste from the permit requirements of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1] and allows generators to accumulate hazardous waste on-site for up to 90 days provided that they meet certain conditions, including that that waste is accumulated in containers that are labelled and clearly marked for visual inspection with: the words "Hazardous Waste;" the composition and physical state of the wastes; an indication of the hazards of the contents; and the date upon which the period of accumulation began.

52. During the August 17, 2023 inspection EPA documented two 5-gallon containers of corrosive (D002) waste in Respondent's central accumulation area that were not labelled or dated, and eleven 5-gallon containers of corrosive (D002) waste with labels that were not clearly visible for inspection. During the January 16, 2024 inspection, EPA documented three 5-gallon containers of corrosive (D002) waste in Respondent's central accumulation area and eight 5-gallon containers of ignitable (D001) waste with labels that were not clearly visible for inspection.

7

In the Matter of Apple, Inc.
Consent Agreement and Final Order

53. Where a generator fails to comply with the conditional requirements for the permit exemption, it is operating a hazardous waste management facility without a permit in violation of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1]. Therefore, EPA alleges that Respondent operated without a permit for storage of hazardous waste in violation of 22 C.C.R. § 66270.1 [40 C.F.R. § 270.1] due to failure to meet the condition for exemption in 22 C.C.R. § 66262.17(a)(5)(A) [40 C.F.R. § 262.17(a)(5)(i)] relating to labelling of hazardous waste storage containers.

## Count VI
### Failure to follow container management standards for central accumulation area

54. Paragraphs 1 through 28 above are incorporated herein by reference.

55. 22 C.C.R. § 66265.173(a) [40 C.F.R. § 265.173(a)] states that a container holding hazardous waste shall always be closed during accumulation, except when it is necessary to add or remove waste.

56. During the inspection, EPA observed one 55-gallon container marked as corrosive liquid (D002) that was open in Respondent's central accumulation area.

57. EPA alleges that Respondent violated 22 C.C.R. § 66265.173(a) [40 C.F.R. § 265.173(a)] by failing to follow container management standards, specifically, with respect to the one 55-gallon container that was open, to maintain containers closed, in the central accumulation area.

## Count VII
### Failure to perform and document daily inspections of hazardous waste tank

58. Paragraphs 1 through 28 above are incorporated herein by reference.

59. 22 C.C.R. § 66265.195 [40 C.F.R. § 265.195] requires the owner or operator of a tank system to inspect at least once each operating day and to document in the operating record that specific items enumerated in the regulation have been inspected.

60. During the inspection and attendant record review, EPA determined that Respondent failed to perform and document daily inspections on its solvent waste lift station tank, and failed to perform and document inspections of its solvent waste tank on weekends and holidays when there was hazardous waste being stored in the tanks.

61. EPA alleges that Respondent violated 22 C.C.R. § 66265.195 [40 C.F.R. § 265.195] by failing to perform daily inspections of the solvent waste lift station tank and solvent waste tank.

8

In the Matter of Apple, Inc.
Consent Agreement and Final Order

## E.    CIVIL PENALTY

62. Respondent agrees to pay a civil penalty in the amount of TWO HUNDRED SIXTY-ONE THOUSAND TWO HUNDRED EIGHTY-THREE DOLLARS ($261,283) ("Assessed Penalty") within thirty (30) calendar days of the Effective Date of this CA/FO. The Effective Date of this CA/FO as defined in Section K, below, is the date the Final Order, signed by the Regional Judicial Officer, is filed with the Regional Hearing Clerk.

63. Respondent shall pay the Assessed Penalty and any interest, fees, and other charges due using any method, or combination of appropriate methods, as provided on the EPA website: https://www.epa.gov/financial/makepayment. For additional instructions see: https://www.epa.gov/financial/additional-instructions-making-payments-epa.

64. When making a payment, Respondent shall:

   a. Identify every payment with Respondent's name and the docket number of this Agreement, RCRA-09-2026-0006.

   b. Concurrently with any payment or within 24 hours of any payment, Respondent shall serve proof of such payment to the following persons via electronic mail:

   **Regional Hearing Clerk**
   U.S. Environmental Protection Agency, **Region 9**
   R9HearingClerk@epa.gov

   Christopher Rollins
   Enforcement and Compliance Assurance Division
   U.S. Environmental Protection Agency - Region 9
   rollins.christopher@epa.gov

   and

   U.S. Environmental Protection Agency
   Cincinnati Finance Center
   CINWD_AcctsReceivable@epa.gov

   "Proof of payment" means, as applicable, a copy of the check, confirmation of credit card or debit card payment, or confirmation of wire or automated clearinghouse transfer, and any other information required to demonstrate that payment has been made according to EPA requirements, in the amount due, and identified with the appropriate docket number and Respondent's name.

65. Interest, Charges, and Penalties on Late Payments. Pursuant to 31 U.S.C. § 3717, 31 C.F.R. § 901.9, and 40 C.F.R. § 13.11, if Respondent fails to timely pay the full amount of

9

In the Matter of Apple, Inc.
Consent Agreement and Final Order

the Assessed Penalty per this Agreement, EPA is authorized to recover, in addition to the amount of the unpaid Assessed Penalty, the following amounts.

a. Interest. Interest begins to accrue from the Filing Date. If the Assessed Penalty is paid in full within thirty (30) days, interest accrued is waived. If the Assessed Penalty is not paid in full within thirty (30) days, interest will continue to accrue until any unpaid portion of the Assessed Penalty as well as any interest, penalties, and other charges are paid in full. To protect the interests of the United States the rate of interest is set at the IRS large corporate underpayment rate, any lower rate would fail to provide Respondent adequate incentive for timely payment.

b. Handling Charges. Respondent will be assessed monthly a charge to cover EPA's costs of processing and handling overdue debts. If Respondent fails to pay the Assessed Penalty in accordance with this Agreement, EPA will assess a charge to cover the costs of handling any unpaid amounts for the first thirty (30) day period after the Filing Date. Additional handling charges will be assessed every thirty (30) days, or any portion thereof, until the unpaid portion of the Assessed Penalty as well as any accrued interest, penalties, and other charges are paid in full.

c. Late Payment Penalty. A late payment penalty of six percent (6%) per annum, will be assessed monthly on all debts, including any unpaid portion of the Assessed Penalty, interest, penalties, and other charges, that remain delinquent more than ninety (90) days. Any such amounts will accrue from the Filing Date.

66. Late Penalty Actions. In addition to the amounts described in the prior Paragraph, if Respondent fails to timely pay any portion of the Assessed Penalty, interest, or other charges and penalties per this Agreement, EPA may take additional actions. Such actions EPA may take include, but are not limited to, the following.

a. Refer the debt to a credit reporting agency or a collection agency, per 40 C.F.R. §§ 13.13 and 13.14.

b. Collect the debt by administrative offset (i.e., the withholding of money payable by the United States government to, or held by the United States government for, a person to satisfy the debt the person owes the United States government), which includes, but is not limited to, referral to the Internal Revenue Service for offset against income tax refunds, per 40 C.F.R. Part 13, Subparts C and H.

c. Suspend or revoke Respondent's licenses or other privileges, or suspend or disqualify Respondent from doing business with EPA or engaging in programs EPA sponsors or funds, per 40 C.F.R. § 13.17.

10

In the Matter of Apple, Inc.
Consent Agreement and Final Order

      d.  Refer this matter to the United States Department of Justice for litigation and collection, per 40 C.F.R. § 13.33.

67. <u>Allocation of Payments.</u> Pursuant to 31 C.F.R. § 901.9(f) and 40 C.F.R. § 13.11(d), a partial payment of debt will be applied first to outstanding handling charges, second to late penalty charges, third to accrued interest, and last to the principal that is the outstanding Assessed Penalty amount.

68. <u>Tax Treatment of Penalties.</u> Penalties, interest, and other charges paid pursuant to this Agreement shall not be deductible for purposes of federal taxes.

## F.    ADMISSIONS AND WAIVERS OF RIGHTS

69. In accordance with 40 C.F.R. § 22.18(b), for the purpose of this proceeding, Respondent:

    a.  admits the jurisdictional allegations of this CA/FO;

    b.  neither admits nor denies specific factual allegations contained in this CA/FO;

    c.  consents to the assessment of any stated civil penalty, to the issuance of any specified compliance or corrective action order, and to any conditions specified in this CA/FO; and

    d.  waives any right to contest the allegations and its right to appeal the proposed final order accompanying this consent agreement.

70. By signing this Consent Agreement, Respondent waives any rights or defenses that Respondent has or may have for this matter to be resolved in federal court, including but not limited to any right to a jury trial, and waives any right to challenge the lawfulness of the final order accompanying the consent agreement.

## G.    CERTIFICATION OF COMPLIANCE

71. In executing this CA/FO, Respondent certifies under penalty of law to EPA that it has taken steps necessary to comply with RCRA, 42 U.S.C. § 6901 *et seq.*, and its implementing regulations for the specific violations at the Facility alleged in this CA/FO.

72. This certification is made to the best of Respondent's knowledge and belief formed after reasonable inquiry of individuals immediately responsible for compliance at the Facility.

## H.    DELAY IN PERFORMANCE/STIPULATED PENALTIES

73. In the event Respondent fails to meet any requirement set forth in this CA/FO, Respondent shall pay stipulated penalties as follows: FIVE HUNDRED DOLLARS ($500)

11

In the Matter of Apple, Inc.
Consent Agreement and Final Order

per day for the first to fifteenth day of delay, ONE THOUSAND DOLLARS ($1,000) per day for the sixteenth to thirtieth day of delay, and FIVE THOUSAND DOLLARS ($5,000) per day for each day of delay thereafter. For the purposes of this Section, Respondent's obligation to meet any and all requirements set for this in this CA/FO shall include completion of any and all activities required under this CA/FO in a manner acceptable to EPA and within the specified time schedules in and approved under this CA/FO.

74. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations.

75. Stipulated penalties shall begin to accrue on the day after performance is due and shall continue to accrue through the final day until performance is complete. All stipulated penalties owed to EPA shall be due within thirty (30) days of receipt by Respondent of a notification of noncompliance. Such notification shall describe the noncompliance and shall indicate the amount of penalties due.

76. In addition to any stipulated penalties assessed, interest and penalties shall accrue in accordance with 40 C.F.R. § 13.11.

77. Payment of stipulated penalties shall be made in accordance with the procedure set forth for payment of penalties in Section E of this CA/FO.

78. The payment of stipulated penalties specified in this Section shall not be deducted by Respondent or any other person or entity for federal taxation purposes.

79. Notwithstanding any other provision of this Section, EPA may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this CA/FO.

I.    **RESERVATION OF RIGHTS**

80. In accordance with 40 C.F.R. § 22.18(c), full compliance with this CA/FO shall only resolve Respondent's liability for federal civil penalties for the violations specifically alleged herein and does not in any case affect the right of the EPA to pursue appropriate injunctive or other equitable relief or criminal sanctions for any violations of law.

81. This CA/FO is not a permit or modification of any existing permit issued pursuant to any federal, state, or local laws or regulations. This CA/FO shall in no way relieve or affect Respondent's obligations under any applicable federal, state or local laws, regulations, or permits.

82. Nothing in this CA/FO shall be construed to limit the authority of the EPA to take enforcement action against Respondent for any future violations of RCRA and the

12

In the Matter of Apple, Inc.
Consent Agreement and Final Order

implementing regulations, including the authorized California hazardous waste program, and to enforce the terms and conditions of this CA/FO.

83. Respondent reserves any and all rights to dispute the merits of, and to contest or otherwise challenge, the factual and legal allegations contained in this CA/FO in any proceeding unrelated to the implementation of this CA/FO initiated by EPA, and this CA/FO shall not be construed to limit any of Respondent's rights or defenses in any proceeding unrelated to implementation of this CA/FO initiated by EPA.

## J.    MISCELLANEOUS

84. This CA/FO can be signed in counterparts.

85. The headings in this CA/FO are for convenience of reference only and shall not affect interpretation of this CA/FO.

86. Each party to this action shall bear its own costs and attorneys' fees.

87. EPA and Respondent consent to entry of this CA/FO without further notice.

88. By signing this CA/FO, Respondent acknowledges that this CA/FO will be available to the public and agrees that this CA/FO does not contain any confidential business information or personally identifiable information.

89. Pursuant to 26 U.S.C. § 6050X and 26 C.F.R. § 1.6050X-1, EPA is required to send to the Internal Revenue Service ("IRS") annually, a completed IRS Form 1098-F ("Fines, Penalties, and Other Amounts") with respect to any court order or settlement agreement (including administrative settlements), that require a payor to pay an aggregate amount that EPA reasonably believes will be equal to, or in excess of, $50,000 for the payor's violation of any law or the investigation or inquiry into the payor's potential violation of any law, including amounts paid for "restitution or remediation of property" or to come "into compliance with a law." EPA is further required to furnish a written statement, which provides the same information provided to the IRS, to each payor (i.e., a copy of IRS Form 1098-F). Failure to comply with providing IRS Form W-9 or Tax Identification Number ("TIN"), as described below, may subject Respondent to a penalty, per 26 U.S.C. § 6723, 26 U.S.C. § 6724(d)(3), and 26 C.F.R. § 301.6723-1. To provide EPA with sufficient information to enable it to fulfill these obligations, Respondent shall complete the following actions as applicable:

    a.  Respondent shall complete an IRS Form W-9 ("Request for Taxpayer Identification Number and Certification"), which is available at https://www.irs.gov/pub/irs-pdf/fw9.pdf;

13

In the Matter of Apple, Inc.
Consent Agreement and Final Order

    b.  Respondent shall therein certify that its completed IRS Form W-9 includes Respondent's correct TIN or that Respondent has applied and is waiting for issuance of a TIN;

    c.  Respondent shall email its completed Form W-9 to Jessica Chalifoux in EPA's Cincinnati Finance Department at chalifoux.jessica@epa.gov, on or before the date the Respondent's penalty payment is due, pursuant to Paragraph 65, or within 7 days should the order become effective between December 15 and December 31 of the calendar year. EPA recommends encrypting IRS Form W-9 email correspondence; and

    d.  In the event that Respondent has certified in its completed IRS Form W-9 that it does not yet have a TIN but has applied for a TIN, Respondent shall provide EPA's Cincinnati Finance Division with Respondent's TIN, via email, within five (5) days of Respondent's receipt of a TIN issued by the IRS.

## K.    EFFECTIVE DATE

90. In accordance with 40 C.F.R. §§ 22.18(b)(3) and 22.31(b), the effective date of this CA/FO (Effective Date) shall be the date that the Final Order contained in this CA/FO, having been approved and issued by the Regional Judicial Officer, is filed with the Regional Hearing Clerk.

IT IS SO AGREED.

In the Matter of Apple, Inc.
Consent Agreement and Final Order


FOR RESPONDENT, APPLE INC.:


10/23/2025
_____

Date

Elizabeth Schmidt
Director of Environment, Health and Safety
Apple Inc.

15

In the Matter of Apple, Inc.
Consent Agreement and Final Order

FOR COMPLAINANT, U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION IX:

AMY MILLER-
BOWEN

Digitally signed by AMY
MILLER-BOWEN
Date: 2025.10.27 09:27:12
-07'00'

Amy C. Miller-Bowen, Director
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region IX

16

In the Matter of Apple, Inc.
Consent Agreement and Final Order

## FINAL ORDER

IT IS HEREBY ORDERED that this Consent Agreement and Final Order pursuant to 40 C.F.R. Sections 22.13 and 22.18 (U.S. EPA Docket No. RCRA-09-2026-0006 be entered and that Respondent pay a civil penalty of TWO HUNDRED SIXTY-ONE THOUSAND TWO HUNDRED EIGHTY-THREE DOLLARS ($261,283), due within thirty (30) days from the Effective Date of this Consent Agreement and Final Order, in accordance with all terms and conditions of this Consent Agreement and Final Order.

This Final Order shall be effective upon filing by the Regional Hearing Clerk.

Beatrice Wong    Digitally signed by
                 Beatrice Wong
                 Date: 2025.10.27
                 14:43:39 -07'00'

Beatrice Wong
Regional Judicial Officer
United States Environmental Protection Agency,
Region IX

17

## CERTIFICATE OF SERVICE

I certify that the original of the fully executed Consent Agreement and Final Order in the matter of Apple, Inc. (Docket No. RCRA-09-2026-0006) was filed with Regional Hearing Clerk, U.S. EPA, Region IX, 75 Hawthorne Street, San Francisco, CA 94105, and that a true and correct copy of the same was served on the parties, via electronic mail, as indicated below:

**RESPONDENT:**

Elizabeth Schmidt
Director of Environment, Health and Safety
1 Apple Park Way, M/S 319 EHS
Cupertino, CA 95014
Eschmidt@apple.com

**COMPLAINANT:**

Tessa Allen
Assistant Regional Counsel
U.S. EPA – Region IX
Hazardous Waste Section II (ORC-3-2)
75 Hawthorne Street
San Francisco, CA 94105
Allen.Tessa@epa.gov

Tu, Ponly
Digitally signed by Tu, Ponly
Date: 2025.10.27 14:46:46 -07'00'

Ponly Tu
Regional Hearing Clerk
Office of Regional Counsel, Region IX

cc (via email):
Tara Frost, U.S. EPA, Frost.Tara@epa.gov
Christopher Rollins, U.S. EPA, Rollins.Christopher@epa.gov
Augustus Winkes, Beveridge & Diamond PC, Awinkes@bdlaw
Aaron Goldberg, Beveridge & Diamond PC, Agoldberg@bdlaw.com