# Exhibit C

**Response to Preliminary Injunction – Assessment of SB01 RMP/PHA Documentation**

Apple, 3250 Scott Boulevard; **Gjovik** case

| Plaintiff's point (numbering is from the PI file) | Regulatory explanation/requirements | Plain language interpretation |
|---|---|---|
| I.4<br>Apple's own engineering team has, in declaration under penalty of perjury, identified specific failure modes for these chemicals and assigned to each consequence column the phrase "*personnel exposure resulting in injury and/or fatality (site personnel or neighbors).*" Pl. Decl., Ex. E. The phrase appears across at least eleven distinct nodes in the operator's own hazard analysis covering fire, explosion, sabotage, truck fire, and toxic gas leak failure modes for arsine, chlorine, ammonia, phosphine, diborane, silane, and the pyrophoric organometallics. | **Consequence Severity**<br><br>The potential failure modes and consequences are indicated on the PHA tables within the RMP.<br><br>Explanation of the requirement:<br><br>Under the California Accidental Release Prevention (CalARP) program, a Process Hazard Analysis (PHA) is a required element of the Risk Management Plan (RMP) prevention program for covered processes subject to Program 3 requirements. The requirement is triggered when a stationary source has a regulated substance present in a process at or above the threshold quantities specified in California Code of Regulations (CCR), Title 19, Section 5130.6. | **Consequences Explanation**<br><br>For each scenario reviewed during the PHA, the team first considers what could happen if the event occurred without taking credit for existing safety systems or other protections. This helps the team understand the worst credible outcome associated with the hazard. As the "What If" name suggests, these scenarios are hypothetical and the descriptions do not represent the actual level of risk during normal operations. The "What If" outcomes may never even occur, since most processes already have multiple layers of protection in place, such as alarms, interlocks, ventilation systems, procedures, and operator actions, which prevent or reduce the impact of an event.<br><br>The facility has experienced several alarm events over past years that resulted in notification and response by |

| | The PHA conducted for the covered Apple processes used a What-If methodology, which is one of the several specific methods mentioned as appropriate in the regulation. Within the (PHA), the analysis team systematically evaluates credible failure modes and abnormal operating conditions by posing structured "What-If" questions intended to challenge the process design, operation, maintenance activities, external events and human interactions with the system.<br><br>For each scenario evaluated, the team identifies the potential consequences assuming the initiating event occurs and before credit is taken for existing safeguards or protective measures. | the local fire department. A review of these events determined that many were not associated with actual potentially hazardous conditions such as significant gas or liquid leaks, but instead involved nuisance or precautionary alarm activations. Examples include instrument drift, such as a pH probe gradually moving out of calibration and resulting in a false reading that is outside of the expected limits, or gas detection alarms initiated by electrical power surges, voltage dips, or transient signal drift affecting detector performance. Other examples include routine operational activities, such as gas cylinder changeouts, where a very small residual gas release may occur when disconnecting or removing a distribution line. In these situations, the release is associated with normal handling activities rather than a cylinder or system leak, and personnel performing the work are equipped with appropriate personal protective equipment (PPE) and follow established procedures. Under local jurisdictional requirements, alarm activations meeting defined criteria are automatically or immediately communicated to the local fire |
|---|---|---|

| | | department, and the facility is not permitted a delay period to investigate or verify the alarm condition prior to external notification and emergency response dispatch. For this reason, in many instances emergency response is dispatched in the absence of any hazard. |
|---|---|---|
| IV. 24<br>***The operator's own engineers admit failure modes producing injury or fatality to neighbors.*** The September 2020 PHA Revalidation, prepared by Apple's retained consultant and signed under penalty, identifies specific failure modes and assigns to each consequence column the phrase "personnel exposure resulting in injury and/or fatality (site personnel or neighbors)." The phrase appears across at least eleven distinct nodes — toxic gas leak (arsine, phosphine), fire, explosion, hostile act/sabotage, truck fire, arsine and chlorine fire/explosion/sabotage, and bulk ammonia fire/explosion/sabotage/truck fire — at PHA nodes Q1, Q10, Q11, Q13, Q14, Q15, Q41–Q45, Q80–Q82, and Q92–Q93. Pl. Decl., Ex. E at 00003386, 00003388, 00003392, | **Failure Modes**<br>The identification of credible failure modes and associated consequences is a fundamental requirement of the PHA process under the California Environmental Protection Agency California Accidental Release Prevention (CalARP) Program regulations. Under Title 19 California Code of Regulations (CCR) §2762.4, the PHA must address the hazards of the process, engineering and administrative controls applicable to the hazards and their interrelationships, consequences of failure of engineering and administrative controls, and a qualitative evaluation of the range of possible safety and health effects on employees and the public. | **See consequence explanation in I.4**<br><br>As explained above, the PHA models a worst credible outcome. During the PHA, the team identifies credible failure modes and abnormal conditions that could occur within the process, then evaluates the potential consequences assuming the event occurs in the absence of safeguards or protective measures. As a result, the analysis describes what appear to be severe consequences but may never occur. Instead, the analysis is intended to establish the potential inherent hazard of the scenario and then evaluate the effectiveness of existing controls and determine whether additional safeguards or recommendations are necessary to reduce risk to an acceptable level. |

3

| 00003393, 00003402, 00003432–34, 00003447–48, 00003614–17. | | The Critical Equipment Maintenance Program was reviewed, maintenance actions are up to date, and the program effectively managed. |
|---|---|---|
| IV. 29<br>***The safety controls the law requires are documented across seven regulators to be failing.*** Apple's own retained consultant — BSI EHS Services and Solutions — affirmatively marked seventeen findings "Not Compliant" in the April 2019 RMP Audit, including: no employees had completed required emergency response training four years into operation; SOPs for arsine and chlorine lacked emergency procedures; Management of Change training had not been delivered; the Construction Contractor Safety Program was not implemented; and contractor training on covered processes was nonexistent. Pl. Decl., Ex. C at 00003228–230, 00003253. PHA action items remain open five years past their certified completion date. Pl. Decl., Ex. E at 00003515–22. EPA's April 2024 inspection identified 19 Potential Violations, 14 still outstanding when the NOV issued — including the still-outstanding RCRA § 3005 violation in PV | **Closure of action items**<br>Under both OSHA Process Safety Management (PSM) and California Accidental Release Prevention (CalARP) regulations, there is a requirement to address and resolve findings and recommendations from Process Hazard Analyses (PHAs), but the regulations generally do not prescribe a single fixed number of days for closure of all action items. Instead, they require that recommendations be resolved in a timely manner, with documented schedules and interim safeguards where necessary. | **Open Action Items Have Been Addressed**<br>Actions are documented during the PHA when questions, assumptions, or potential improvements cannot be fully evaluated or verified during the analysis session. Upon completion of the PHA report, certain action items may remain open and are assigned to responsible personnel for tracking and closure. Open items and their resolution status are always reviewed during subsequent PHA revalidations. The consolidated action item tracking system maintained by Apple was reviewed, and during the May 6 site visit all applicable actions were verified as closed, including the 17 findings referred to in Plaintiff's motion.<br>Specific PHA nodes referenced in the PI document were reviewed. The engineering controls identified during the analysis were confirmed to be implemented as part of the original process and facility design basis. These controls include, but are not limited to, cylinder restrictive flow orifices, |

4

| | | |
|---|---|---|
| #6 (Apple "*improperly treating the waste . . . by diluting the solvent waste with water and other wastes");* Subpart BB leak detection calibrated only 1 of 34 times on a day of monitoring use over four years (PV #17); fifteen weekly RCRA inspections missed in 2023 including twelve consecutive weeks immediately before EPA arrived (PV #16); forty-eight daily tank inspections missed on weekends (PV #18); Subpart CC applicability for SW-TNK-2 and SW-LS never evaluated (PV #19); activated carbon abatement neither permitted nor managed (PVs #7, #11); and 228 D001 ignitable hazardous-waste manifests shipped off-site as Non-RCRA between June 2022 and December 2023 (PVs #14, #15). ECF No. 48-4 (EPA April 30, 2024 Compliance Inspection Report). | | automatic fire detection and suppression systems, ventilated gas cabinets, and exhaust monitoring systems with alarm and automatic shutdown functions. |

5