**Pages 1 - 34**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable P. Casey Pitts, Judge

ASHLEY M. GJOVIK, )
)
Plaintiff, )
)
VS. ) **NO. C 25-07360 PCP**
)
APPLE, INC., et al., )
)
Defendants. )
)

San Jose, California
Thursday, June 25, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
2108 N Street - Suite 4553
Sacramento, California 95816
**BY: ASHLEY M. GJOVIK, PRO SE**

For Defendants:
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
**BY: WILLIAM F. TARANTINO, ATTORNEY AT LAW**
**ALBERTO J. CORONA, ATTORNEY AT LAW**

NOSSAMAN LLP
719 Second Avenue - Suite 1200
Seattle, Washington 98104
**BY: SVEND BRANDT-ERICHSEN, ATTORNEY AT LAW**
**JENNIFER SEELY, ATTORNEY AT LAW**
(via videoconference)

Remotely Reported: Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**Thursday - June 25, 2026** **10:01 a.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** Now calling 25-CV-07360, Gjovik versus Apple, Inc., et al.

May I please have appearances beginning with the Plaintiff. And I'm sorry, Plaintiff, please approach the podium and state your appearance for the record.

**MS. GJOVIK:** I'm the Plaintiff. My name is Ashley Gjovik.

**THE COURT:** Good morning.

**MS. GJOVIK:** Good morning.

**MR. TARANTINO:** Good morning, Your Honor, William Tarantino for Apple, Inc. and the Jenab Defendants joined by my colleague Alberto Corona.

**THE COURT:** Good morning.

**MR. BRANDT-ERICHSEN:** Good morning, Your Honor, Svend Brandt-Erichsen for the City of Santa Clara, and with me is my co-counsel Jennifer Seely.

**THE COURT:** Good morning.

So, we are here today on several motions. We have, I believe, three motions to dismiss as well as a motion for a preliminary injunction.

It seems to me the place to start is with the motions to dismiss and particularly with the motions to dismiss from Apple

and the Jenab Defendants because one of the arguments there is that the existing complaint fails to plead standing. And if the complaint doesn't feel -- doesn't plead Article III standing, then I don't have jurisdiction to do much of anything at this point.

So, I will hear -- let's start that discussion and talk about the issue of standing. And then if we can think about whether there is a place to address any other issues at this time.

So, I will start -- I will hear from Apple regarding particularly the standing issue.

**MR. TARANTINO:** Thank you, Your Honor.

We obviously briefed the issue of standing in the course of the opening brief and the reply. I think part of the challenge is with making these standing arguments and entangling them is recognizing that, you know, ordinarily you don't have an environmental citizen enforcement case that brings so many statutes to bear.

We have the Clean Air Act, the Clean Water Act, RCRA -- the Resource Conversation Recovery Act -- and others. Each of those statutory schemes require that the Plaintiff identify an injury-in-fact and an injury to their aesthetic recreational other interests that flow from the impairment and challenged conduct.

So, we have an issue where there is a variety of conduct

that was alleged in both the notice and the complaint. And, you know, as we argue that the notice leaves us guessing as to what the complaint is alleging is a violation of the complaint expands on that notice significantly.

But the core issue is that Plaintiff has failed to establish injury-in-fact for each of the statutes at issue. There has been allegations that were health impacts related to volatile organic chemicals. Theoretically, those health impacts, you know, if they were current and if they were experienced at the time of the litigation, those could be related to air emissions. Those could be related to Clean Air Act issues. There is nothing to tie those to any of the other challenged claims; RCRA, Clean Water Act and otherwise.

In fact, as we argue in our motion to dismiss, when the Plaintiff filed this case, she was nowhere near the facility. She was living in Boston. She had alleged that, you know, she had experienced health impacts. Those health impacts had disappeared when she left Boston. And then as evidenced in her opposition and otherwise, she moved back to California after we made the arguments in our motion about the fact that she was nowhere near the facility. She visited creeks. She went to Whole Foods.

It certainly appears that this is litigation motivated conduct. There was no allegation in the notice or complaint that she had concrete plans to return. Under *Lujan*, if you

don't have that redressable injury at the time of the notice and the time of the complaint, you do not have standing to pursue these claims.

And this is not an ordinary standing. This is basically allowing a citizen to step in the shoes of a government enforcer, which is why the standing issue has to be construed so narrowly as well as the notice issues that we can discuss separately. She hasn't alleged and she hasn't established injury to her aesthetic or recreational interest.

**THE COURT:** Right. I mean, just to be clear, am I right that you are pursuing a facial attack on the -- you are attacking the sufficiency of her pleading as to standing on this motion; correct?

**MR. TARANTINO:** Absolutely, right. I mean, the notice doesn't establish standing. As a result, the complaint cannot.

**THE COURT:** Well, separate and apart from the notice issue, I thought -- I mean, the argument is essentially -- the simple form of the argument is that at the time she filed the complaint, she was residing in Boston.

**MR. TARANTINO:** Correct.

**THE COURT:** Or in the East Coast and that the statement of an intent to return to California generally is insufficient to plead the kind of concrete interest that *Lujan* requires; correct?

**MR. TARANTINO:** That's absolutely correct. That was

nowhere in the complaints and that's what our argument was and then it was she moved back and filed her opposition. Basically, litigation driven conduct to artificially create standing after the fact.

**THE COURT:** Well, I guess there is a question -- I'm not even sure whether there is litigation conduct or otherwise is particularly relevant --

**MR. TARANTINO:** That's right.

**THE COURT:** -- I mean, to the question of a facial attack on standing, I think I'm just looking at the four corners of the complaint --

**MR. TARANTINO:** Correct.

**THE COURT:** -- to see whether it meets the element of Article III standing; correct?

**MR. TARANTINO:** You are absolutely correct. And the cases we cited, *Candlestick* and *Demeral* (phonetic), stand for that proposition.

**THE COURT:** Okay. Do you agree -- I mean, and I don't know that this was fleshed out in the briefing -- but my quick research suggests that where there is a failure to plead standing and it is potentially fixable, that the Ninth Circuit has instructed that I should be providing leave to amend to attempt to address that issue. So, am I right in thinking about the relevant law?

**MR. TARANTINO:** Here, we don't see how an amendment

could cure that issue, to kind of recreate her concrete plans to return as that was not pled at the time. You know, leave to amend is granted liberally. And if she has a good-faith basis to allege that she had standing at the time --

**THE COURT:** I mean, I guess the question is does she have to allege that -- does she have to allege that she had standing at the time she filed the complaint or is she able to file an amended complaint that would allege standing as of the time of the filing of the amended complaint?

**MR. TARANTINO:** I think it is tough to disentangle this with the written inherent problems with the notice because I think the notice does, you know, prevent her from filing an amendment complaint regardless.

But, you know, I think that if she didn't have standing at the time of the filing of the complaint, I think she has to allege that when the complaint was filed, she had standing at that time; that she hasn't acquired standing afterwards.

**THE COURT:** Okay. Just what's the authority for that, the general principle that if a lawsuit was filed and there wasn't standing at the time of the filing of the lawsuit, that jurisdiction never attaches?

**MR. TARANTINO:** That's correct. I mean, I think the inherent -- I mean, again, I know I keep going back to this -- the inherent issue here is what gives the Court jurisdiction in addition to standing is the existence of a competent and

suitable notice.

And so, we think amendment here is particularly improper because the notice doesn't provide the requisite detail. It doesn't technically comply with what's required. The amendment couldn't cure that even if she were to cure the standing allegations.

**THE COURT:** I guess, what I'm struggling with is that that -- that can't be an Article III standing issue, is it? We are talking about statutory standing.

**MR. TARANTINO:** It is subject matter jurisdiction, yes. It is not Article III.

**THE COURT:** And it's not -- I mean, Article III is subject matter jurisdiction.

**MR. TARANTINO:** Correct, correct, correct. I mean, what grants the Court subject matter jurisdiction to hear a citizen's suit under these statutes is statutory provision.

**THE COURT:** Right. So, it is a failure of the statutory requirements to pursuit --

**MR. TARANTINO:** Right.

**THE COURT:** -- it is not a question of whether -- a federal question whether I have -- whether there is a case of controversy. It is not a question in that sense; right?

**MR. TARANTINO:** I think that's correct. The issue here, though, however is that the allegations would have to establish that she had an injury to her aesthetic and

recreational interest paired with concrete plans to return tied to each of the statutory violations complained of, which are unclear. And because the notice is unclear, those can't be cured by amendment.

So, I --

**THE COURT:** Right. I am --

**MR. TARANTINO:** -- assuming the notice -- sorry, Your Honor. Go ahead.

**THE COURT:** I'm trying to -- there are distinct questions. You know, the first question is -- in all cases is do I have Article III jurisdiction. And unless -- and I'm sorry that I haven't rereviewed them this morning -- but unless the provisions that you are identifying about notice say, you though, the jurisdiction -- the statutorily defined jurisdiction of the federal court exists only upon the filing of a proper notice.

**MR. TARANTINO:** I'm sorry. Go ahead.

**THE COURT:** No. As opposed to saying a prerequisite filing a suit -- such a suit and standing in the feet of the government and enforcing these laws is, you know, a proper notice.

**MR. TARANTINO:** Well, I mean, the cases that have looked at the notice requirement and then have dismissed them -- I think *Center for Biological Diversity versus Marina Point* is the most important one in the Ninth Circuit. It is a

2008 case -- that case they -- it was a Clean Water Act case and Endangered Species Act case. Article III wasn't at issue. It was a notice issue. It was -- judgment was entered in favor of the plaintiff. It went up on appeal. The court reversed and vacated it for lack of subject matter jurisdiction for failure to comply with the notice requirements.

So, I mean, it is not an issue of Article III standing but it is jurisdictional.

**THE COURT:** The problem is that there has been a -- there was a period of time where people were using subject matter jurisdiction, fast and loose. And I think the Supreme Court has helped sort of reign us in, in being very careful about what is a question of subject matter jurisdiction --

**MR. TARANTINO:** Correct.

**THE COURT:** -- what's a question of statutory ability to proceed. And I think that -- I mean, I will take a look at it, but I -- you know, I wonder if this is one of -- an example of the cases where the court was being a little bit loose with its language in terms of saying -- what it was saying is the court couldn't proceed because there wasn't adequate notice, but subject matter jurisdiction is really -- when we say that, we mean Article III and within Section 1331 or 1332 or the other provisions that define the jurisdictions of the federal court.

**MR. TARANTINO:** Yes. To be absolutely fair, it was an

aggressive opinion in terms of how it construed the requirements. I mean, I do think at the end of the day, the failure to have a compliant notice and to have strict and technical compliance with that notice renders this Court unable to hear this case. And that notice cannot be cured by an amendment of the complaint.

**THE COURT:** Okay. Let me hear from Plaintiff.

**MS. GJOVIK:** Yeah. Thank you, Your Honor.

So, I'm sorry this is extremely complicated but I think we are looking at maybe three different types of standing. So, we have the Article III of, you know, diversity jurisdiction or federal question.

So, I argue that if we are talking about me moving after I file, back here, I would arguably lose diversity jurisdiction if we were to re-set Article III after I moved.

**THE COURT:** I don't think Article III -- I don't think diversity matters. We have federal questions here. So, we have federal question jurisdiction.

I mean, as I understand it -- am I right that on the complaint that's before me, the allegation is that you lived on the East Coast due to circumstances created by Apple but intended to return to California when able; correct?

**MS. GJOVIK:** Yeah, that's true.

**THE COURT:** And I think sort of the basic concern they have raised or their argument is that under the *Lujan* case,

that there has to be -- essentially just to plead standing -- prospective standing in order to pursue the kinds of claims that are being pursued for prospective relief, you have to plead a concrete interest in, you know, aesthetic interest or enjoyment interest or of the sort. And that's what *Lujan* says you need in order to pursue these kinds of claims.

And they are saying that sentence is not enough. I mean, sort of -- they might -- it might be the case returning -- even being in California generally is not enough let alone residing outside California; that what would need to be pleaded is at the very least, a concrete and somewhat imminent intent to return to take advantage of the particular sites that are at issue in this case.

And in the absence of that, there is just not a -- the concrete injury required to establish Article III standing hasn't been satisfied.

**MS. GJOVIK:** Thank you. And I think maybe it's also being merged with the standing for the citizens suit itself, which sounds like it has its own federal standing requirements. Though it is not the same as Article III, it is, like, supplementary. It doesn't seem completely well defined.

I do think I have multiple theories. It is not just aesthetic or not just intent to return. I would argue things like me actively participating in the federal and state investigations into that facility in the years where I was

filing it and returned -- so, being the key complainant and supporting witness for the EPA or CRA auction for the facility, the Bay Air Equality Management District investigation. Both of those had administrative enforcement actions, and I was the stated complainant for that. I also feel like I have -

**THE COURT:** But the question is -- I mean, the question is on Article III for a -- if you are seeking -- and I think if I'm right, the relief being sought in this case is forward looking relief?

**MS. GJOVIK:** Yes, and fines potentially but that's --

**THE COURT:** We are not talking about retrospective relief.

**MS. GJOVIK:** Nothing personal for me. This would just be public, yeah.

**THE COURT:** So, the Supreme Court has said for that, you need to show that you are facing an injury -- an injury now and going into the future.

**MS. GJOVIK:** Yeah, for that -- sorry.

**THE COURT:** So, that residing outside of California and not at the time using the site, expressing an intent to be at the site means that you haven't pleaded that you are currently or and will in the future face that kind of Article III injury.

**MS. GJOVIK:** I understand. I do feel that even though -- fortunately, it appears most of my health issues have

re-solved after moving, I still maintain PTSD from the experience. That was part of my IED claim in the private suit, which will be for appeal for Ninth Circuit. So, that is a lifetime fear of cancer from the exposure and from the toxic gas exposure I suffered.

Fear of cancer is recognized in California as an ongoing injury from those types of injuries.

And then I also feel like the area specifically is difficult for the typical nearby location because it is prohibitarily expensive. There is only one residential area to live. Santa Clara Square Apartments, I checked last week and the starting rent is still at $3,500 a month. So, it is really difficult to even live there.

**THE COURT:** And I understand that. And that -- but, again, the problem is Article III limits my jurisdiction.

**MS. GJOVIK:** Okay.

**THE COURT:** And so, it may be that if -- you know, if you still resided there or if someone who resided there were bringing the case that -- as difficult as it may be to do that and to afford living in the Bay Area generally let alone in that particular complex -- but that in order for us to proceed in this case, there needs to be an allegation that -- and there has to be an allegation in the complaint because they are proceeding on a facial challenge to the sufficiency of the allegations. There has to be an allegation that at the time of

the filing of the complaint you were facing an -- you were being injured and would be injured going forward by virtue of the conditions at the site.

**MS. GJOVIK:** I have a couple of other theories I would argue. I would also cite *Northstar Fin. Advisors v. Schwab*, which says that if you were to prove a supplemental pleading, also an amended pleading, that would cure it is different than the alleged litigation conduct.

So, I think there may be room to add more. I feel like I did plead -- sorry, were you going to say something, Your Honor?

**THE COURT:** No, no, no. Just to be clear, I mean, I think as to your circumstances at the time of the filing of the complaint and your interest in the location -- I'm looking at paragraph 25 and that's what I have quoted -- there is nothing I'm missing as to that; correct?

**MS. GJOVIK:** I need to look at paragraph 25 to be sure. I was also thinking my role as a community advocate including in addition to people at that apartments [sic], but I also started writing articles expressing concerns what was happening there back in early 2021. I have continued to be a point of contact when people want to reach out with concerns and organizing, which I feel brings me home. I feel like it would be an artificial constraint contrary to Congressional intent to say that only the people that live in Santa Clara

Square Apartments can be the ones to bring a citizen's suit about the --

**THE COURT:** I don't think it is only them. If there is someone else who were to say, you know, at the time of the filing of the complaint, I regularly visited the location, the creek, I was regularly there and I intended to do so going forward, that's what the Supreme Court -- you know, whether rightly or wrongly, that's what the Supreme Court has said you have to say to pursue these types of claims is to say, you know, I am someone -- I'm concerned about the pollution of this particular -- and it is a park that I go to regularly and I bring my children there and this is what we do there and I have plans to go there next month and I -- you know, these are the kinds of things that Supreme Court said in *Lujan* are required. And as said, a community -- an interest as a member of the community, an interest in the issue is not enough.

**MS. GJOVIK:** I feel like I have a portfolio, though. A lot of these cases seem to look at one example for each case. I feel like I have a multiple kind of stakes in here.

I was precluded from coming and visiting because I am insolvent and I am still in Chapter 7 bankruptcy in Boston. I don't have permanent housing here. I'm still living in a hotel that's paid for by public donations, specifically someone that works next to that ship fab who has been supporting me with donations to help keep the fight going.

So, it is not like I didn't want to come back. It was only after the public donations that I can afford to come back and have the hotel paid. So, if it is screening for bad-faith conduct, I feel like that would be --

**THE COURT:** And it's not. I mean, unfortunately, it's not a question of bad faith. It is really not a question of valid interest overall. It is just what the Supreme Court has pretty narrowly defined has -- it is a trend over the last, you know, 30 years of the Supreme Court decisions about saying who is the proper party to be in federal court under Article III.

**MS. GJOVIK:** I feel like what you have described, I already have in the declaration to start and I can plead more since I have been visiting since I have been back.

**THE COURT:** Right. And I think the issue is they are bringing a facial challenge, so I think their position is a declaration submitted is not -- can't fix a problem in the pleading because one of the things you do have to do is plead jurisdiction in your complaint. And so, what they are saying is the complaint fails to do that. And so, that's where they are at.

And then there's the separate question -- and it is one that, you know, you will have to think about if I agree with them that the current complaint is inadequate, but I'm inclined to provide leave to amend -- is whether, as they say, you have to complete standing at the time of the filing of the original

complaint or whether it is permissible to say whether or not I had standing at the time I filed the complaint, I now have standing. That is not something I'm going to opine on without having fully considered that issue right today.

**MR. TARANTINO:** Just very briefly, Your Honor, I think one of the important things with standing that I mentioned at the outset is that it is not just a general aesthetic and recreational interest in the region. It has to be how the complained of conduct impacts that aesthetic or recreational interest. So, that really has to be done on a statute-by-statute -- you know, violation-by-violation alleged basis.

In terms of generally understanding, okay, if there is an impairment to water, if there is an impairment to the, you know, the compliance with TSCA as a result -- the compliance with TSCA impair my recreational enjoyment. It can't just be a generalized belief that, you know, the environment would be impacted. It has to be connected to the complaint -- the issues complained of.

**THE COURT:** I mean, I guess for Article III, I mean, I think you would have to explain how the conduct impairs your aesthetic or interest.

**MR. TARANTINO:** Right.

**THE COURT:** You know, I think that the particular statute at issue only seem to come in -- would come in on the

redressability on Article III standing. You know, I think the theory would be if you can't tie it to the statute you are seeking to enforce, then you might have a redressability problem. I'm not sure it goes to the existence of a concrete harm for purposes of Article III.

**MR. TARANTINO:** I think it does in terms of the general environmental media; air, water, waste. Those are how the statutes are organized. And how does air pollution, how does alleged water pollution, and what are the issues complained of in terms of --

**THE COURT:** Yeah, I think you have to say this is what they are doing and this is how my interests are harmed. Okay.

**MS. GJOVIK:** I would also just raise again that not only do I feel I have a number of different standing theories outside the typical aesthetic or recreational, but I do have the pending civil private claims that will go through appeal -- they are dismissed under the statute of limitations -- saying that I should have figured out -- when I thought I was so sick that I was dying and so disabled -- that I should have figured out it was that facility at 3250 Scott earlier and sued Apple or others earlier. So, my statute of limitations expired.

I think there was a mistake of law on the statute of limitations test, but the theory was it was so dangerous once you knew what it was doing -- it was ultrahazardous activities essentially -- that I should have immediately knew I was at

harm.

But because that was dismissed and I was asking for an injunction in that case, that would protect the community. I'm living with this burden every day since I figured out what was going on and that was dismissed, that if something was to happen to the community next to that facility, that it was my fault for pleading wrong or missing it and not being under the injunction, which led to me filing a separate case because I wanted to make sure that it could be held in court.

I was really concerned that that dismissal could create precedent; that anyone else that would then try to sue Apple over it would have the same statute of limitations issue; that they should have known based on their operations.

So, I feel like I carry a unique burden with that. I know those are unique theories to argue.

**THE COURT:** I don't think -- I'm not sure any of them are cognizable under the *Lujan* case. And, you know, I don't want to discredit your interest and your sincerity and your belief in this. I think the problem is a *Lujan* problem.

**MS. GJOVIK:** I would very much appreciate another chance to plead it, and I will do additional research and try to hit all those points. I believe I have enough facts that I should be able to. It sounds like I just need to hone them in on exactly what they are looking for in that specific test.

**THE COURT:** Is there anything else you would like to

offer on the standing issue at this time?

**MS. GJOVIK:** Yeah. For the tests, it sounds like there is a lot of leaning into the aesthetic and recreational. I would say that if I have an ongoing injury from my own personal exposure at that site, that that could have its own separate theory. I also do like the recreational -- I included in my --

**THE COURT:** I guess the challenge with that would be to say how is an ongoing injury resulting from a past exposure mean that you are entitled to forward looking relief as to the present? So, there is a disconnect between the relief that's sought, which is prospective relief based on future exposure or future limited ability to access the site, as opposed to the relief that would be provided for an ongoing injury resulting from past conduct. So, I think that's the reason that under the Article III that may not be sufficient.

**MS. GJOVIK:** It's not always accepted but I would argue that is my fear for others as well; that they could be actively exposed, even like children at the playground and all the folks around. And I'm not sure *Lujan* requires the perspective at the time. I think there might be multiple -- so, it sounds like I'm going to have a standing obstacle course that I'm happy to try to plead through.

And I would say the recreational aesthetic I do feel is met. I included in my declaration when I was applying to join

the Santa Clara Planning Commission as a Planning Commissioner, my application and the transcript -- when I was talking to Mayor Gillmor -- and this is before I knew about what was happening at that facility. It was 2022 -- and I was talking about how much I love Santa Clara Square Apartments, and how beautiful it was, how that area was. So, I do think I have an interest in there.

I'm living up in San Jose right now. It wasn't just going down and taking pictures when I was there. It is a beautiful area. I'm also kind of obsessed with that creek and trying to make sure it stays clean too. All of this seems like if I can't meet that burden, I'm not sure who can.

**THE COURT:** Well, I mean, again, I think what -- is there anything else you would like to offer on the issue of Article III standing?

**MR. TARANTINO:** No, Your Honor. I mean, we maintain the position that, again -- as we have already articulated -- the standing needs to exist at the time the complaint was filed, and we don't see how the facts as alleged can be cured to create that standing at the time.

**THE COURT:** Okay. Anything else you would like?

**MS. GJOVIK:** Yes, one more thing would be if that's true -- if the case was dismissed, if I was just to re-file -- if you dismiss without prejudice and I refiled when I was living here, would it be then be sufficient in which case

supplemental pleading perhaps or --

**THE COURT:** It is the case that any dismissal for lack of Article III jurisdiction is inherently a dismissal without prejudice. So, it certainly wouldn't have -- the whole point of me lacking jurisdiction is that I have no power to issue any rulings that have binding effect in the future. So, but is there any reason I'm wrong in thinking about that?

**MR. TARANTINO:** No, Your Honor.

**THE COURT:** I mean, it is interesting. And there is a separate issue --

**MS. GJOVIK:** Judicial economy.

**THE COURT:** Well, I'm not -- if, in fact -- one thing that happens in these cases -- if Article III jurisdiction is lacking but there is a statutory right to pursue the claim, then sometimes the place where that claim is to be pursued is in state court, which is not subject to the limitations of Article III.

**MS. GJOVIK:** I think unfortunately with the federal statutes, they have to be in federal court.

**THE COURT:** I suspect they are exclusive federal jurisdiction statutes. I haven't looked at that.

**MS. GJOVIK:** And then I would also -- sorry.

**MR. TARANTINO:** Just very briefly, I think if you were to find -- if it was dismissed without prejudice, the complaint -- you know, obviously, the complaint could or should

not be filed upon the same notice, but that's a whole separate issue to discuss with the adequacy of the notice.

**THE COURT:** Okay.

**MS. GJOVIK:** Sorry, one more. I just wonder there is the California public nuisance claim which is a state claim, which is also why I think I raised diversity.

So, if for some reason the citizens suit, the federal statutes were dismissed, I potentially -- if my California public nuisance claim was not dismissed, could still pursue in this case under diversity jurisdiction?

**THE COURT:** Well, I can't -- you need Article III standing to pursue any claim in federal court be it a federal claim or a state law claim. So, the absence of Article III standing is -- you know, without that, I can't do anything on any claim.

**MS. GJOVIK:** Okay.

**THE COURT:** Because the Supreme Court has said there is no case or controversy for me. So, before we even think about -- I mean, standing does in places get into the question of the particular claims you are pursuing. But at precursor to doing any of that is establishing Article III standing.

**MS. GJOVIK:** Okay.

**THE COURT:** Anything else from Apple on this issue?

**MR. TARANTINO:** No, Your Honor.

**THE COURT:** So, I -- for the reasons we have talked

about, I do think that the allegations in paragraph 25 of the current complaint -- amended complaint are inadequate to plead Article III standing.

**MS. GJOVIK:** Okay.

**THE COURT:** And so, I am going to grant Apple -- I'm going to grant the motions to dismiss on the grounds that the current complaint fails to plead standing.

The same issue -- even though it wasn't raised by Santa Clara, I have an obligation to consider my jurisdiction sua sponte. So, I think that the objection applies with equal force and requires dismissal of the existing claims against Santa Clara.

So, I am going to grant the motions to dismiss. I'm doing it orally so everyone can have guidance and we can move forward. I will grant leave to amend --

**MS. GJOVIK:** Thank you.

**THE COURT:** -- to see if you can address the standing issues. And in doing so, I think obviously you will need to take a close look at the authorities the Plaintiffs have cited as well as the question of whether the allegations have to be about standing at the time of the filing of the original complaint versus standing at the time of amendment.

And what I will do is ask that any amended complaint be filed within 42 days.

**MS. GJOVIK:** Okay.

**THE COURT:** Six weeks.

**MS. GJOVIK:** Thank you.

**THE COURT:** Yeah. And obviously, this is without prejudice to the renewal of any of the motions -- the arguments -- other arguments or arguments about the sufficiency of the pleading of standing in the amended complaint that might be raised by the Defendants in opposition or in responding to the motion.

If there is going to be motions to dismiss, which presumably because there are a lot of legal issues that remain outstanding, I would encourage everyone involved to speak to one another in advance and see if you can agree upon a briefing and hearing schedule that will work well for all the parties and provide sufficient time.

I feel like the last time around it sort of took a while for us to get everything teed up. I know there may have been health issues and otherwise. Hopefully you can agree on a schedule that makes sense. And as long as I have everything 14 days in advance of the date you have agreed for the hearing, that's fine.

The other thing, you know, I do think there are a lot -- there have been a lot of other issues that are raised in terms of the sufficiency of the notice, the sufficiency of the pleadings and also the clarity of the pleadings.

So, I would use this as an opportunity to take seriously

all of the arguments that have been raised in the motions to dismiss, to, you know, look at their authorities and determine if -- there may be some arguments that you think they are probably right on that and maybe I don't move forward on this claim or I modify it.

I mean, I understand these -- sort of first there was a complaint that was not as detailed. Now, there is a very -- there is a lot of detail in the complaint. I do think I would like a concise complaint that sort of very clearly says, okay, this is my cause of action arising under this statute and premised on this particular substance, this particular conduct, you know, just to be really clear because there were some points where I think, like, you know, your response was, I'm not actually bringing a claim on that but it is there for detail.

I think as much clarity in terms of the structure of which claims you are bringing, what the basis is for that and the particularity of the allegations --

**MS. GJOVIK:** Thank you, Your Honor. I was going to ask permission if I can revise the rest in response to their motions too.

**THE COURT:** That's always an option. A new complaint -- there are some -- you know, you can't -- well, if you contradict what you said in a prior complaint, I can consider that contradiction on a subsequent motion, but it is

an opportunity to comprehensively rework the complaint.

**MS. GJOVIK:** I appreciate that. Thank you, Your Honor.

**MR. TARANTINO:** I know this is a complicated complaint and there are a lot of factual allegations in there. Is the Court willing to give any sort of guidance as in terms of what an expected page range might be for a complaint like this?

**THE COURT:** You know, I'm reluctant to provide specific guidance. I understand the difficulty in responding to an incredibly lengthy complaint. It is also difficult to respond to an incredibly sparse complaint.

So, what I will just ask, it's a lot -- it is a burden for the Court as well as for the parties when it's an incredibly lengthy complaint. So, I think really focus on as much as concision and really just the key facts and legal theories needed to set forth the claims.

**MS. GJOVIK:** I'm happy to do that, Your Honor. I would just ask -- I guess it is on the transcript -- that then Apple maybe not argue that it is not detailed enough. So, we will probably be back and forth in motions again.

**THE COURT:** Well, we will cross that bridge when we get there.

**MS. GJOVIK:** In between, okay.

**THE COURT:** Okay.

**MS. GJOVIK:** Thank you.

**THE COURT:** So, in light of that, I think I'm also going to obviously deny the motion for preliminary injunction since at this point I don't have power to issue a preliminary injunction in the absence of a complaint that states the basis for my jurisdiction here. So, given that, is there anything else we need to do this morning?

**MS. GJOVIK:** For the case management conference, I assume we would want to wait on starting discovery until we have -- unless Your Honor would prefer that we start maybe a limited phase one on parallel or --

**THE COURT:** I'm inclined to say it probably makes sense to make sure that we have a pleading that sets forth a basis for jurisdiction before moving to that. I'm sorry. Did we --

**MS. GJOVIK:** We haven't really done it yet. I would prefer to do initial disclosures if we can but also willing to wait if Your Honor would prefer.

**MR. TARANTINO:** Obviously we object to that, Your Honor.

**THE COURT:** I apologize. I had forgotten that we had also scheduled the initial case management conference today. I think I'm going to postpone our initial case management conference until -- at the very least until we have a pleading on file, until there is an answer to the complaint on file. I think what makes it appropriate -- I will vacate all deadlines

for initial disclosures and otherwise and hold discovery in abeyance until we get to that point.

**MR. TARANTINO:** As Your Honor can appreciate, opposing the motion for preliminary injunction required a lot of investment of time and energy. I would request that any motion related to the preliminary injunction be heard after the motion to dismiss to determine -- so we are not in the same position again where we are re-opposing a case where there may not be a claim.

**MS. GJOVIK:** I would argue that would be a preemptive denial of a motion for preliminary injunction. That would be a pre-decision that there is no emergency.

**THE COURT:** I mean, I think -- again, I'm reluctant in advance to say there can't possibly be a need for a preliminary injunction. I do think -- I did look at the preliminary injunction quickly. And I think the question of whether there's a -- I mean, one of the elements is a likelihood of irreparable injury, and likelihood is a question of whether the risks that you have identified -- they may be risks but they may -- the question is showing there is imminent likelihood if their realization is a different question in light of the regulatory history that has taken place. So, I think thinking about whether that has been satisfied --

**MS. GJOVIK:** I would argue it wasn't. And one of my primary arguments is they are toxic gases, which are especially

regulated gas because many of them are chemical weapons and they can kill you within moments. And that was not addressed by any of these actions. And I also had a personal injury where I had documented arsine gas exposure in my bedroom in the Santa Clara Square Apartments. It was in my blood while I was having one of my 3:00 in the morning choking, dying, heart failure spells.

So, I think there is evidence that they are having leaks of these toxic gases. Recent records from Santa Clara shows that they don't have any records of regulating them and they are supposed to be the ones that are, and they have reported other leaks. So, those can cause a mass fatality event and kill thousands in minutes.

**THE COURT:** I get that. The issue is I have -- to grant the preliminary injunction, I would have to conclude there is a likelihood of that occurring. And obviously, so far it hasn't. There has been some conduct. So, I think that is a -- there is quite an evidentiary showing if that is -- especially if it's premised on the risk of a mass fatality event, I have to conclude it is not just possible, it is likely. It used to not be the standard but the Supreme Court has made clear in the *Winter* decision that likelihood of the injury that you are concerned about is a prerequisite to preliminary injunctive relief so.

**MS. GJOVIK:** Sorry.

THE COURT: Again, I'm not going to prejudge that -- the issue. I do think their argument that it makes that sense that there is a logistical sense to figuring out if we have a case here --

MS. GJOVIK: Understand.

THE COURT: -- and whether I have jurisdiction to act in the first place and a complaint that states the basis for jurisdiction so we can move forward before we decide whether we need to preliminary relief, there is a lot of sense to that. So, I would encourage you to hold off until we get to that point.

MS. GJOVIK: I understand.

THE COURT: And because that -- you know, we will have a much stronger sense of what claims are there, what are we moving forward on, which obviously likelihood of success is its own aspect of this.

So, you know, and fact of the matter is if we are doing -- we are proceeding at this point. And if things change, you know, temporary restraining order relief and preliminary injunctive relief on a shortened timeframe do remain available. I'm not encouraging that. My encouragement would be not to move forward until we get kind of a ruling that I have a complaint before me that establishes my jurisdiction and states potential claims.

MS. GJOVIK: Understood. I don't know if this is

typical or could be part of an ADR process, but I did try to negotiate with the Defendants to at least do some harm mitigation and risk mitigation measures, which I wasn't able to get any resolution from. And generally, the outcome of these lawsuits is injunctive relief like the stuff I was asking for; warnings, monitoring, if possible.

**THE COURT:** You know, if we get to the point of doing -- if we get to our case management conference, we get to that point, one of the things I will ask the parties to do is to determine whether -- to figure out what form of alternative dispute resolution is appropriate. That will be a question for down the road.

**MS. GJOVIK:** Okay.

**MR. TARANTINO:** And, Your Honor, just for clarity of the record, I want to obviously dispute what the Plaintiff has said about the presence of toxic gas ordinance compliance records. I know we are not arguing that at the moment. I just don't want to leave that unanswered.

**THE COURT:** I --

**MR. TARANTINO:** The other issue is that -- you know, again to clarify the record, that Plaintiff knows that we engaged in multiple e-mail exchanges around her proposed injunctive relief at the outset of this lawsuit protected by confidential settlement communications. So, there was an effort to engage with this Plaintiff on this issue.

**THE COURT:** And, you know, until there is -- until I have jurisdiction, it is sort of not really my business.

**MR. TARANTINO:** Just for the record.

**THE COURT:** Okay. Thank you.

**MS. GJOVIK:** Thank you, Your Honor.

**THE COURT:** Have a good morning.

**MS. GJOVIK:** You too.

(Proceedings adjourned at 10:42 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: June 26, 2026

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter