Ashley M. Gjovik, JD
*In Propria Persona*
San José, California
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# United States District Court
## Northern District of California

**Ashley M. Gjovik**,
*an individual*,

**Citizen Plaintiff**,

vs.

**Apple Inc.**,
*a corporation*,

**City of Santa Clara**,
*a local government*,

**Property Owners**
*(Mr. Kalil Jenab, Mr. James Lindsey, various trusts and business entities, et al.)*

**The Defendants.**

**Case No. 25-CV-07360-PCP**

**Environmental Citizen Suit; Public Nuisance**

**PLAINTIFF'S OPPOSITION TO ADMIN. MOTION BY JULIA LINDSEY AND KATHLEEN WOODRUFF TO STRIKE SUMMONS (DKT. 113)**

# PLAINTIFF'S OPP. TO ADMIN. MOTION BY JULIA LINDSEY AND KATHLEEN WOODRUFF TO STRIKE SUMMONS

## I. INTRODUCTION

1. The Lindsey Family Trust, Lindsey Julia Family Trust, Lindsey Property Trust, and Woodruff Kathleen Trust are named defendants in the operative Second Amended Complaint ("SAC"). (Dkt. 102); id. ¶¶ 50–54; Counts 4–6, 8–12, 16–20, 23, 25–26, 32, 34.) Under California law, a trust holds property, acts, sues, and is sued exclusively through its trustee. A summons directed to a trustee of a named-defendant trust, in her representative capacity, is therefore directed to a defendant already in this case. Fed. R. Civ. P. 4(a)(1)(B) requires nothing more, and Movants' own counsel identified Movants as the relevant owners through these trusts on August 18, 2026 — the day before counsel filed this motion.

2. Plaintiff proceeds against Julia Lindsey and Kathleen Woodruff in their representative capacities as trustees of the named defendant trusts. Plaintiff reserves the right to seek leave to add individual-capacity claims should discovery support them. That representation resolves the only imperfection Movants identify: where a summons names both an individual and a representative capacity, the surplus capacity is severable, and service in the correctly-named representative capacity (the greater including the lesser) remains effective. No amendment is required; but if the Court considers the wording material, the remedy is to deem the Summons (Dkt. 112) amended under Rule 4(a)(2) to state representative capacity only, effective without re-service.

3. Finally, the relief Movants request (an order compelling a full Rule 15 motion cycle) would add months of delay to a suit alleging an ongoing public-safety hazard, unwind the briefing schedule the parties stipulated to and filed the same day as this motion (Dkt. 111), and reward nearly a year of Movants' counsel's refusal to identify the trustees of the trusts that hold title to the property at issue. The Court has faster tools: Rule 4(a)(2), Rule 21, or leave to amend.

## II. FACTUAL BACKGROUND

4. Plaintiff has sought the identity of the persons and entities holding title to 3250 Scott Blvd since 2025. (Gjovik Decl. ¶ 3, 9; Ex. B, G). Counsel for the Jenab declined to confirm Mr. James Lindsey's ownership status or identify the trustees. (Ex. B; see Dkt. 109 at 7 (meeting notes).) Plaintiff repeatedly provided counsel an Intelius title report for the property. (Gjovik Decl. ¶ 2, Ex. A.)

5. On August 6, 2026, Plaintiff filed the 2AC, naming as defendants the "Property Owners," including Mr. James Lindsey "individually as Agent and/or Member and/or Manager and/or Trustee of Lindsey Family Trust, Lindsey Julia Family Trust, Lindsey Property Trust, and Woodruff Kathleen Trust," based on the Intelius title report Plaintiff had repeatedly provided to counsel. (Dkt. 102 ¶¶ 52–53;

Gjovik Decl. ¶ 2, Ex. A.) The 2AC expressly alleged that counsel "has refused to confirm if Mr. Jenab's business partner, Mr. Lindsey, still holds title." (Id. ¶ 52.)

6. On August 11, 2026, the Clerk issued a summons naming the four trusts (Dkt. 104). On August 14, 2026, Mr. Tarantino wrote that Mr. Lindsey had "sold his interests to his daughters," and that counsel was "working to (1) confirm the current trustees." (Gjovik Decl. ¶ 4, Ex. C (Aug. 10–14, 2026 correspondence).) Plaintiff completed personal service on Mr. Lindsey on August 16, 2026. (Dkt. 105.) Mr. Lindsey refused service on behalf of all four trusts, telling the process server he is "not affiliated" with any of them. (Dkt. 109 at 3–6.)

7. On August 18, 2026, the parties held a telephonic conference. Counsel confirmed that Julia Lindsey and Kathleen Woodruff, and their respective trusts, are the current owners of the property and Apple's landlords; confirmed counsel was not authorized to accept service for them; and the parties recorded the action item: "Now that Julia and Kathleen have been confirmed as owners, Ashley to serve them." The parties further discussed "stipulating to add Julia and Kathleen for existing named trusts rather than requiring an amended complaint." Plaintiff memorialized these notes in writing the same day; no attendee disputed them. (Dkt. 109 at 7; Gjovik Decl. ¶ 5, Ex. D.)

8. On August 19, 2026, the parties finalized and filed the parties' stipulated briefing schedule (Dkt. 111), and the Clerk issued the Summons at Dkt. 112, directed to the three individuals "individually and as agents/trustees of" the four named trusts. Plaintiff then did precisely what the parties had agreed she would do: at 4:08 p.m. and 4:11 p.m. PT on August 19, 2026, Plaintiff ordered priority personal service on Julia Lindsey (124 Wildwood Ave, Piedmont) and Kathleen Woodruff (70 Ellsworth St, San Francisco) at her own expense ($220), expressly instructing the process server to serve the named individuals through whom the non-entity trusts act. (Gjovik Decl. ¶¶ 7–8, Ex. F (ABC Legal order confirmations REF-27262637, REF-27262720).)

9. Later that night, defense counsel filed this administrative motion, specially appearing for the two women counsel had confirmed as the owners a day prior, asking the Court to strike the process Plaintiff was mid-stream in serving and had paid to serve in reliance on the parties' August 18 discussion. This is Plaintiff's second round of service expense on these defendants: the first round cost approximately $616, including charges attributable to Mr. Lindsey's refusal of service on behalf of all four trusts. (Gjovik Decl. ¶ 9; Dkt. 109 at 3–6.)

10. Movants' motion does not deny that Julia Lindsey and Kathleen Woodruff are trustees of the named trusts. It also does not identify the trustees of any of the four trusts. After a year of "*working on determining the applicable trustees*," it is silent on the facts that matters.

# III. ARGUMENT

## A. The Trusts Are Named Defendants, and Under California Law They May Be Sued and Served Only Through Their Trustees

11. Capacity to be sued for an entity that is neither an individual nor a corporation is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3). Under California law, an ordinary express trust is not an entity separate from its trustees and cannot sue or be sued in its own name; the trustee, rather than the trust, is the real party in interest. *Greenspan v. LADT LLC*, 191 Cal. App. 4th 486, 521–22 (2010); *see* Cal. Prob. Code § 18004; Cal. Code Civ. Proc. § 369(a)(2). Claims naming a trust are properly understood and routinely treated by federal courts in this Circuit as claims against the trustees in their representative capacity.

12. The consequence for service is straightforward: there is no way to serve a California trust except by serving its trustee. Directing a summons to "*Julia Lindsey … as agent[]/trustee[] of … Lindsey Julia Family Trust*" (Dkt. 112) directs the summons to a defendant named in the 2AC (the trust) through the only person the law recognizes as capable of receiving process and appearing for it. That fully satisfies Rule 4(a)(1)(B)'s requirement that the summons be directed to the defendant. Movants' framing (that the Summons "adds" them as new defendants) inverts the law of trusts: the trustee is not an addition to the trust-defendant; she is the form the trust-defendant takes in litigation.

## B. Movants' Authorities Concern Strangers to a Complaint, Not Trustees of Named-Defendant Trusts

13. *SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007), *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989), and *Wasson v. Riverside County*, 237 F.R.D. 423 (C.D. Cal. 2006), each involve persons who were true strangers to the operative pleading (never named in caption or body) against whom judgments or process nonetheless issued. None involves a trustee receiving process on behalf of a trust that is a named defendant, and none addresses Rule 17(b)(3) or California's rule that a trust litigates only through its trustee. The distinction is dispositive: a judgment in this action would run against the trusts (through their trustees in a representative capacity), which is precisely what the 2AC pleads and the Summons implements. Notably, Movants' motion never asserts that Movants are not the trustees of the named trusts, and never identifies who the trustees are. If Movants are not the trustees, the motion could have said so in one sentence and identified the correct persons, ending the issue. Its studied silence, after counsel's year-long undertaking to "confirm the current trustees," speaks for itself.

## C. The Administrative Motion Is an Improper and Non-Compliant Vehicle for the Substantive Relief Requested

14. Civil L.R. 7-11 exists for "miscellaneous administrative matters, not otherwise governed by a

federal statute, Federal or local rule or standing order" — matters such as sealing, page limits, and scheduling. A request to invalidate the Court's process as to two persons (relief sounding in Rule 4 and personal jurisdiction) is quintessentially substantive. The Federal Rules supply the vehicles: a served party may move under Rule 12(b)(4) or 12(b)(5), with full briefing; a party believing the matter urgent may move to shorten time under Civil L.R. 6-3. Movants used neither. Instead they filed a five-page administrative motion, triggering a four-day opposition window, on a question of trust law and federal process — a compression device, not a procedure.

15. The motion also fails L.R. 7-11 on its own terms: it is accompanied by neither a stipulation nor the required declaration that explains why a stipulation could not be obtained. That omission is not clerical. A truthful declaration would have had to disclose that, the day before filing, the parties conferred; counsel confirmed Movants as the owners through the named trusts; the parties agreed Plaintiff would serve them; and the parties discussed stipulating to substitute the trustees for the named trusts without a further amended complaint. (Dkt. 109 at 7.) No stipulation was sought because the stipulation had, in substance, already been discussed and agreed to be explored — and this motion does the opposite.

16. Movants' invocation of Rule 12(f) fails on its face: that rule permits striking matter from a pleading, and a summons is not a pleading. Fed. R. Civ. P. 7(a), 12(f). Nor does the Court's inherent authority assist Movants: issuance of a summons is ministerial — upon presentation of a properly completed form, the Clerk must sign, seal, and issue it. Fed. R. Civ. P. 4(b). The orderly mechanism for testing the sufficiency of process is a Rule 12 motion by a served defendant, on a real record, with real briefing — at which point the ordinary remedy is amendment or re-service, not dismissal, and certainly not the pre-service, advisory adjudication Movants seek here.

## D. Any Defect in the Summons Is Curable by Amendment, Not Striking

17. Even where a summons is imperfect, Rule 4(a)(2) supplies the remedy: "The court may permit a summons to be amended." The Ninth Circuit construes Rule 4 liberally where the defendant receives actual notice. *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). No party can claim surprise here: Movants' own counsel refused to disclose the defendants for nearly a year, identified Movants as the owners through the named trusts on August 18, filed a stipulation contemplating them as defendants on August 19, and appeared for them the same night.

18. The only colorable imperfection Movants identify is the Summons's use of "individually" alongside the trustee capacities. Tthe surplus individual capacity is severed by judicial admission, and the delivery of the identical Summons and 2AC accomplishes service in the included representative capacity. If the Court nonetheless considers the wording material, Plaintiff requests that the Summons be deemed

amended under Rule 4(a)(2) to state representative capacity only, effective as of its August 19, 2026 issuance and without re-service — amendments to process relate back and do not require re-service where, as here, the recipients have complete actual notice and no prejudice. Plaintiff respectfully asks the Court to not withdraw or supersede Dkt. 112: personal service under that Summons is currently in progress, purchased in reliance on the parties' August 18 agreement, and an order requiring new process would void that service mid-stream and force Plaintiff to cancel and repurchase it. (Gjovik Decl. ¶¶ 7–9, Ex. F.)

### E. Movants' Requested Procedure Would Impose Months of Delay in a Suit Alleging an Ongoing Public-Safety Hazard

19. Movants ask the Court to order that Plaintiff "shall seek leave to amend the complaint pursuant to … Rule 15." (Dkt. 113 at 4.) The practical consequence of that path: a noticed motion (35-day minimum hearing runway, Civil L.R. 7-2), a 14-day opposition, a 7-day reply, a ruling, a deadline to file the amended pleading — and then, because an amended complaint restarts every defendant's response clock under Rule 15(a)(3), the dissolution of the briefing schedule the parties stipulated to at Dkt. 111 and re-litigation of the extension disputes. Conservatively, two to four months of delay, in an action alleging an imminent and substantial endangerment, to accomplish a party-name conformity that Movants' counsel concedes in substance and that the parties discussed resolving by stipulation on August 18.

20. Further, the Court need not use Rule 15 at all: Rule 21 authorizes the Court, "on motion or on its own," to "at any time, on just terms, add or drop a party," and courts routinely employ it for capacity and name conformity. Alternatively, the Court may grant leave to amend in the order resolving this motion, on the condition that the amendment is limited to substituting "[Trustee], as trustee of the [Trust]" for the named trusts and that the Dkt. 111 schedule is preserved. Each path is faster than the one Movants propose; Movants ask the Court to choose the slowest available road to a destination no one disputes.

## IV. CONCLUSION AND REQUESTED RELIEF

21. The motion should be denied. In the alternative, and as set forth in the accompanying Proposed Order, Plaintiff respectfully requests: that the Summons (Dkt. 112) be deemed amended under Rule 4(a)(2) to name Movants solely in their representative capacities as trustees of the named defendant trusts, effective without re-service and without interruption of service in progress; an order directing Movants' counsel to identify, by declaration within seven days, the current trustee(s) and agent(s) for service of each of the named trusts; and, to the extent the Court concludes the 2AC must be conformed, addition of the trustees by order under Rule 21 — in all events preserving the briefing schedule at Dkt. 111 and the validity of service completed or in progress under Dkt. 112. A Proposed Order is submitted herewith.

Respectfully,

**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*
Alviso, San José, California
Dated: Aug. 19 2026