NOSSAMAN LLP
SVEND BRANDT-ERICHSEN (WA BN 23923)
sbrandterichsen@nossaman.com
*Pro Hac Vice*
JENNIFER J. SEELY (AK BN 63021)
jseely@nossaman.com
*Pro Hac Vice*
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206.395.7630
Facsimile: 206.257.0780

NOSSAMAN LLP
BRENDAN F. MACAULAY (CA BN 162313)
bmacaulay@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

*Attorneys for Defendant City of Santa Clara*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ASHLEY M. GJØVIK, AN INDIVIDUAL,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a corporation, CITY OF SANTA CLARA, a local government, MR. KALIL/KHALIL JENAB, individually, & as Agent/Member/Manager of: JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, & as Trustee/Agent of: THE JENAB FAMILY TRUST, JULIA LINDSEY, as trustee of the Lindsey Julia Family Trust & Lindsey Property Trust, KATHLEEN WOODRUFF, as trustee of the Woodruff Kathleen Trust,<br><br>Defendants. | Case No: 5:25-cv-07360-PCP<br><br>**DEFENDANT CITY OF SANTA CLARA'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 5, 2026<br>Time: 10:00 am<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 3

II. FACTUAL ALLEGATIONS ..... 4

III. STANDARD OF REVIEW ..... 4

IV. ARGUMENT ..... 5

A. Gjøvik does not allege a cognizable claim against the City under any of the federal environmental citizen suit provisions invoked in her Third Amended Complaint. ..... 5

1. Gjøvik's RCRA claims against the City are not cognizable under the RCRA citizen suit provision. ..... 7

2. Gjøvik's CAA claims against the City are not cognizable under the CAA citizen suit provision. ..... 10

3. Gjøvik's wastewater and stormwater claims are not cognizable under the CWA citizen suit statute. ..... 11

i. Gjøvik's wastewater allegations do not plausibly state CWA claims against the City. ..... 12

ii. Gjøvik's stormwater allegations do not plausibly state CWA claims against the City. ..... 15

4. Gjøvik has not alleged EPCRA claims against the City and cannot plausibly do so. ..... 15

5. Gjøvik has not alleged TSCA claims against the City and cannot plausibly do so. ..... 18

B. Gjøvik cannot plausibly allege facts sufficient to state a claim against the City for causing a public nuisance. ..... 18

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*All. To Save Mattaponi v. U.S. Army Corps of Eng'rs*,
515 F. Supp. 2d 1 (D.D.C. 2007) .......... 4

*In Re Allen Family Foods, Inc.*,
EPA Docket No. CWA-3-2001-00022002, 2002 WL 461746 (March 18, 2002) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... *passim*

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) .......... 2

*California River Watch v. City of Vacaville*,
39 F.4th 624 (9th Cir. 2022) .......... 7

*City of Fairborn, Ohio v. U.S. E.P.A.*,
No. 3:22-CV-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023) .......... *passim*

*City of Olmstead Falls v. U.S. E.P.A.*,
233 F. Supp. 2d 890 (N.D. Ohio 2002) .......... 4, 7, 11

*Ctr. for Biological Diversity v. United States Forest Serv.*,
80 F.4th 943 (9th Cir. 2023) .......... 7

*Defs. of Wildlife v. Jewell*,
No. CV-14-02472-TUC-JGZ, 2015 WL 11182029 (D. Ariz. Sept. 30, 2015) .......... 3

*Dubois v. Thomas*,
820 F.2d 943 (8th Cir. 1987) .......... 11

*Env't Def. v. Leavitt*,
329 F. Supp. 2d 55 (D.D.C. 2004) .......... 5

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... *passim*

*Hinds Invs., L.P. v. Angioli*,
654 F.3d 846 (9th Cir. 2011) .......... 6

*Los Angeles Waterkeeper v. SSA Terminals, LLC*,
702 F. Supp. 3d 903 (C.D. Cal. 2023) .......... 7, 10

*Mountain States Legal Found. v. Costle*, 630 F.2d 754 (10th Cir. 1980) ....................9

*Nw. Env't Advocs. v. U.S. E.P.A.*, 268 F. Supp. 2d 1255 (D. Or. 2003) ....................5

*Our Children's Earth Found. v. E.P.A.*, 527 F.3d 842 (9th Cir. 2008) ....................5

*Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996) ....................4, 12, 20

*Sierra Club, Inc. v. Exxon Mobil Corp.*, No. 24-CV-07288-RS, 2025 WL 2578218 (N.D. Cal. Sept. 5, 2025) ....................18

*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) .................... *passim*

*WildEarth Guardians v. Jackson*, 885 F. Supp. 2d 1112 (D.N.M. 2012) ....................5

*Zook v. EPA*, 611 Fed. App'x 725 (D.C. Cir. 2015) ....................5

**State Cases**

*Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 213 Cal. Rptr. 3d 538 (2017) ....................17, 18, 19

*City of Modesto Redevelopment Agency v. Superior Ct.*, 119 Cal. App. 4th 28, 13 Cal. Rptr. 3d 865 (2004) ....................18, 19

*Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292, 306 Cal. Rptr. 3d 900 (2023) ....................18

*People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 227 Cal. Rptr. 3d 499 (2017) ....................18

**Federal Statutes**

15 U.S.C. § 2619 ....................1, 16

15 U.S.C. § 2619(a)(1) ....................16

28 U.S.C. § 1367 ....................16

33 U.S.C. § 1319(f) ....................12

33 U.S.C. § 1342 § 402 ....................10

33 U.S.C. § 1365 ....................1, 9

33 U.S.C. § 1365(a)(1) ... 3, 4, 13
33 U.S.C. § 1365(a)(2) ... 1, 3, 20
42 U.S.C. § 6972 ... 1
42 U.S.C. § 6972(a)(1) ... 3, 4, 6
42 U.S.C. § 6972(a)(1)(A) ... 6
42 U.S.C. § 6972(a)(1)(B) ... 6, 7
42 U.S.C. § 6972(a)(2) ... 1, 3, 19
42 U.S.C. § 7604 ... 8, 9
42 U.S.C. § 7604(a)(1) ... 9
42 U.S.C. § 7604(a)(1), (3) ... 3, 4
42 U.S.C. § 7604(a)(2) ... 1, 3, 19
42 U.S.C. § 7604(a)(3) ... 9
42 U.S.C. § 7002 ... 1
42 U.S.C. § 11022(d)(2) ... 15
42 U.S.C. § 11022(e)(3) ... 15
42 U.S.C. § 11023 ... 14
42 U.S.C. § 11023(a) ... 14
42 U.S.C. § 11044(a) ... 15
42 U.S.C. § 11046 ... 1, 14
42 U.S.C. § 11046(a) ... 20
42 U.S.C. § 11046(a)(1)(A) ... 14
42 U.S.C. § 11046(a)(1)(B)(ii)–(iv) ... 14
42 U.S.C. § 11046(a)(1)(C) ... 15
42 U.S.C. § 11046(a)(1)(D) ... 15, 16

**State Statutes**

Cal. Civ. Code § 3479 ... 18

Cal. Civ. Code § 3480 .......... 18

Cal. Civ. Code § 3493 .......... 18

Cal. Code Civ. Pro. § 338 .......... 1

Cal. Code Civ. Pro. § 338 .......... 17

Cal. Code Reg. Tit. 14, § 15112 .......... 1, 17

**Rules**

Fed. R. Civ. P. 8(a)(2) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... *passim*

L.R. 7-2(B)(3) .......... i

L.R. 7-4(A)(3) .......... ii

**Constitutional Provisions**

United States Constitution Article III .......... 16

**Other Authorities**

CalEPA, *More about the Unified Program*, available at: https://calepa.ca.gov/cupa/about/ .......... 2, 8

CalEPA, *Unified Program: Laws and Regulations*, available at: https://calepa.ca.gov/cupa/lawsregs/ .......... 15

EPA, *What is EPCRA?*, available at: https://www.epa.gov/epcra/what-epcra .......... 14

## NOTICE OF MOTION TO DISMISS

To: Ashley Gjøvik

Please take notice that on November 5, 2026, at 10:00 a.m., or as soon as the matter may be heard, in Courtroom 8, of the United States District Court of the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendant City of Santa Clara (the "City") will, and hereby does, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all of Plaintiff Ashley Gjøvik's ("Gjøvik") claims against the City for failure to state a claim upon which relief can be granted.

The City bases this Motion on this Notice of Motion, its Memorandum of Points and Authorities, the pleadings, records, and files in this action, and all other written or oral arguments or evidence that the parties may present to the Court relating to this Motion.

## STATEMENT OF RELIEF SOUGHT (L.R. 7-2(B)(3))

The City seeks an order dismissing all of Gjøvik's claims against the City Pursuant to Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a cognizable claim for relief against the City.

DATED: September 17, 2026

NOSSAMAN LLP
SVEND BRANDT-ERICHSEN
BRENDAN F. MACAULAY
JENNIFER J. SEELY

By: */s/ Svend Brandt-Erichsen*
*Attorneys for Defendant City of Santa Clara*

## STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))

Whether Plaintiff's claims against the City, set forth in her Amended Complaint, are procedurally barred or otherwise fail to state a claim for relief against the City.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The City seeks dismissal of all of Gjøvik's amended claims against the City, which are for alleged inadequacies in the enforcement of various federal environmental laws. *E.g.*, Third Amended Complaint, ECF 119, ¶ 250 (Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972), ¶ 279 (Clean Air Act ("CAA"), 42 U.S.C. § 7002), ¶ 299 (Clean Water Act ("CWA"), 33 U.S.C. § 1365), ¶ 541 (Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11046), ¶ 570 (Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601). Enforcement decisions are inherently discretionary and generally unreviewable by the courts. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Moreover, the "citizen suit" provisions of the environmental laws that form the basis for Gjøvik's claims do not authorize judicial review of discretionary regulatory actions. 42 U.S.C. § 6972(a)(2) (RCRA); 42 U.S.C. § 7604(a)(2) (CAA); 33 U.S.C. § 1365(a)(2) (CWA); 42 U.S.C. § 11046 (EPCRA); 15 U.S.C. § 2619 (TSCA); *Sierra Club v. Whitman*, 268 F.3d 898, 902 (9th Cir. 2001).

Gjøvik also asserts a public nuisance claim against the City related to City parks near the Apple facility. She alleges that the City is liable because pollution from the Apple Facility impacts the City's parks, and City zoning and land use decisions 10–15 years ago allowed the Apple facility to be constructed. ECF 119, ¶¶ 612–618, 648–668. But public nuisance law is not so speculative or attenuated. Even if given leave to amend her Complaint again, Gjøvik cannot plausibly state a claim that the City has *caused* a public nuisance.

Many of Gjøvik's allegations of wrongful activity by the City appear to date back to its planning and zoning process for the Apple facility circa 2010–2014. But decade-old planning decisions under local ordinances do not support claims under federal environmental citizen suit provisions, nor her claim for public nuisance. Additionally, any statutes of limitation for challenging those local planning decisions are long past expired. *See, e.g.*, Cal. Code Reg. Tit. 14, § 15112 (30–35 days for a CEQA appeal); Cal. Code Civ. Pro. § 338 (three years for nuisance).

Gjøvik's real fight is with Apple. She states no claims against the City upon which relief could be granted. As such, the City respectfully asks to be dismissed from this case with prejudice.

## II. FACTUAL ALLEGATIONS

Gjøvik's case concerns Apple's facility at 3250 Scott Blvd in Santa Clara, CA, ("the Apple Facility") and alleged emissions and discharges from that Facility. ECF 119, ¶ 1. The City's connection to the Apple Facility is solely as a regulator. Gjøvik has alleged that the hazardous materials division of the City's Fire Department is a California Certified Unified Program Agency ("CUPA"). ECF 119, ¶ 45. The court also may take judicial notice of the City's CUPA status.[1] Through the Fire Department, the City has assumed regulatory oversight of the Apple Facility's compliance with specific hazardous waste and hazardous materials laws that have been delegated to the City through the CUPA program. *Id.*

Gjøvik makes general allegations that the City has knowingly permitted and facilitated operations at the Apple Facility, failed to enforce environmental regulations, and concealed violations from affected residents and other regulatory agencies. ECF 119, ¶ 3. Her original Complaint focused on the City as a CUPA regulator, and Gjøvik still describes a number of inspections and citations that the City made at the Apple Facility. ECF 119, ¶¶ 141, 144, 181, 183, 450, 451. When the City explained why Gjøvik's claims were not cognizable in its earlier Motion to Dismiss, Gjøvik did not modify those claims but added new claims which are equally flawed.

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v.*

[1] A CUPA is a local agency certified by the California Environmental Protection Agency to implement and enforce six state hazardous waste and hazardous materials regulatory management programs. CalEPA, *More about the Unified Program*, available at: https://calepa.ca.gov/cupa/about/; California CUPA Forum, *What is a CUPA?*, available at: https://calcupa.org/about/mission.html. As relevant to this case, the CUPA programs include enforcement of RCRA requirements.

*Iqbal*, 556 U.S. 662, 678 (2009). In considering the motion, the court must construe the facts and reasonable inferences in the light most favorable to the nonmoving party. *Defs. of Wildlife v. Jewell*, No. CV-14-02472-TUC-JGZ, 2015 WL 11182029, at *5 (D. Ariz. Sept. 30, 2015) (internal citations omitted). However, a court need not accept a pleading's legal conclusions. *Iqbal*, 556 U.S. at 678–79. Instead, plaintiffs' allegations must "nudge[ ] their claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into plausibility. *Iqbal*, 556 U.S. at 678–79. The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombley*, 550 U.S. at 555).

## IV. ARGUMENT

### A. Gjøvik does not allege a cognizable claim against the City under any of the federal environmental citizen suit provisions invoked in her Third Amended Complaint.

The federal environmental citizen suit provisions only authorize two kinds of lawsuits. First, suits against persons for pollution that they cause—like emissions, discharges, or hazardous waste disposal not in compliance with statutory requirements—and for their permit or rule violations. *E.g.*, 42 U.S.C. § 7604(a)(1), (3) (CAA); 33 U.S.C. § 1365(a)(1) (CWA); 42 U.S.C. § 6972(a)(1) (RCRA). These claims may be brought against the regulated entity that is subject to those statutory or regulatory requirements. Second, suits against the U.S. Environmental Protection Agency ("EPA") for failure to perform a nondiscretionary duty. *E.g.*, 42 U.S.C. § 7604(a)(2) (CAA); 33 U.S.C. § 1365(a)(2) (CWA); 42 U.S.C. § 6972(a)(2) (RCRA).

Gjøvik acknowledges that Apple, and not the City, operates the Apple Facility that is the focus of her claims. ECF 119, ¶ 34. Gjøvik has not alleged that the City emitted, discharged, or disposed of pollution from the Apple Facility. Gjøvik has not made a plausible claim that the City has any role in operation of the facility or any responsibility for its emissions or discharges, nor could she, as she acknowledges that the City's relationship to the facility is that of a regulator exercising governmental oversight. *E.g.*, ECF 119, ¶ 272, 294, 309, 334, 450, 451. Accordingly, the pollution-control causes of action authorized by the citizen suit provisions cannot support

Gjøvik's claims against the City. 42 U.S.C. § 7604(a)(1), (3); 33 U.S.C. § 1365(a)(1); 42 U.S.C. § 6972(a)(1). Her claims seeking to hold the City responsible for Apple's operations lack facial plausibility and therefore fail to state claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Many of Gjøvik's claims against the City allege deficiencies in the performance of its role as a regulator. But citizen suits are not available against regulators for alleged deficiencies in the exercise of their enforcement discretion. Enforcement decisions are inherently discretionary and generally unreviewable by the courts. *Heckler v. Chaney*, 470 U.S. at 831–834. This general principle has been specifically applied to enforcement decisions under the environmental statutes. *See, e.g.*, *City of Olmstead Falls v. U.S. E.P.A.*, 233 F. Supp. 2d 890, 900–901 (N.D. Ohio 2002) (concerning the CWA); *City of Fairborn, Ohio v. U.S. E.P.A.*, No. 3:22-CV-102, 2023 WL 2478572, at *9 (S.D. Ohio Mar. 13, 2023) (concerning the CAA).

The City's CUPA hazardous waste program has its origins in federal law (RCRA), oversight of which has been delegated from EPA, through the State, to the City. Gjøvik challenges how the City has enforced the CUPA program, but the citizen suit provisions she relies upon expressly do not authorize review of the exercise of enforcement discretion. *See, e.g.*, *Sierra Club v. Whitman*, 268 F.3d 898, 905 (9th Cir. 2001). Gjøvik does not allege that the City failed to perform any nondiscretionary duty under federal environmental law. But even if she had, she would not have a claim against the City because citizen suit provisions do not authorize nondiscretionary-duty lawsuits against entities other than EPA. In *City of Fairborn*, the district court analyzed the Clean Air Act citizen suit provision and found that "Administrator" in the statute referred only to U.S. EPA, and litigants could not use that provision to sue the State of Ohio. *City of Fairborn, Ohio v. U.S. E.P.A.*, No. 3:22-CV-102, 2023 WL 2478572, at *6 (S.D. Ohio Mar. 13, 2023). Courts have likewise held that "Administrator" in the Clean Water Act citizen suit provision refers only to U.S. EPA, and does not allow suit against the U.S. Army Corps of Engineers. *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1249 (11th Cir. 1996) ("*P.E.A.C.H.*"); *All. To Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 6 (D.D.C. 2007).

Even if it were possible for EPA to delegate one of its nondiscretionary duties to the State of California and thence to a CUPA like the City, Gjøvik has not based her claims on any such requirement. A "nondiscretionary duty" is an obligation whose requirements, such as the deadline for completion, are clearly set forth by law and not left to the discretion of an agency. *See Zook v. EPA*, 611 Fed. App'x 725, 726 (D.C. Cir. 2015) (interpreting the analogous provision in the Clean Air Act). It must be clear from the language of the statute; "readily-ascertainable and not only the product of a set of inferences based on the overall statutory scheme." *Our Children's Earth Found. v. E.P.A.*, 527 F.3d 842, 851 (9th Cir. 2008) (internal citations omitted). Nondiscretionary duties typically have an "express deadline." *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004). For example, in the Clean Water Act context, EPA has a nondiscretionary duty to promptly promulgate revised water quality standards when a state fails to submit its own revisions within 90 days of EPA's notice of disapproval. *Nw. Env't Advocs. v. U.S. E.P.A.*, 268 F. Supp. 2d 1255, 1260 (D. Or. 2003). Conversely, in the Clean Air Act context, when the statute sets a deadline for a state to revise a permit but no deadline for EPA to issue that permit, then EPA does not have a nondiscretionary duty. *WildEarth Guardians v. Jackson*, 885 F. Supp. 2d 1112, 1117 (D.N.M. 2012). Gjøvik has not identified any nondiscretionary duties in the relevant environmental statutes that the City allegedly failed to perform.

Having attempted to invoke this Court's jurisdiction under specific citizen suit provisions of various federal environmental laws, Gjøvik failed to allege any claims against the City that are cognizable under those statutes. Accordingly, Gjøvik's claims against the City must be dismissed. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The absence of a legal basis for Gjøvik's claims against the City is further demonstrated by the following subsections reviewing the claims asserted under each of the statutes that Gjøvik has invoked.

**1. Gjøvik's RCRA claims against the City are not cognizable under the RCRA citizen suit provision.**

Gjøvik makes no plausible RCRA claim against the City upon which relief could be granted. The RCRA citizen suit statute authorizes suit against any person who is alleged to be in violation of "any permit, standard, regulation, condition, requirement, prohibition, or order" under

RCRA. 42 U.S.C. § 6972(a)(1)(A). It also authorizes suit against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent or substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Gjøvik has not alleged the elements of a claim for relief against the City under any portion of the citizen suit statute.

Gjøvik is correct that the citizen suit provision authorizes claims against "any person," including a "governmental instrumentality or agency," ECF 119, ¶ 256, but those claims must allege violations of a "permit, standard, regulation, condition, requirement, prohibition, or order" issued under RCRA. 42 U.S.C. § 6972(a)(1). In her Third Amended Complaint, Gjøvik alleges that the City "contributed" to the "past or present handling, storage, treatment, transportation, or disposal" of solid or hazardous waste. ECF 119, ¶ 256. She alleges that the City "has knowledge" of RCRA violations made by Apple and "contributed" to those violations by failing to cite them and by withholding information from the community and other government agencies. ECF 119, ¶¶ 262, 264, 265, 266, 274. She includes a rote and repeated allegation that ends with a generalized assertion that the City is also liable under "other theories of liability." ECF 119, ¶ 272. She concludes by alleging that the City "allowed, enabled, and concealed" unpermitted hazardous waste activities, and "refused" to report RCRA violations to state and federal agencies despite having knowledge of them. ECF 119, ¶ 335. These conclusory claims are unsupported by specific factual allegations, are not plausible, and in any event do not assert that the City caused any violations of RCRA to occur. Rather, they offer nothing more than pejorative characterizations of the City's role as a regulator. They cannot support a claim against the City.

Gjøvik argues that the City "contributed to" Apple's alleged RCRA violations. ECF 119, ¶¶ 266, 272, 274. However, the City has not, within the meaning of this statute, "contributed to" the "past or present handling, storage, treatment, transportation, or disposal" of hazardous waste at the Apple Facility. 42 U.S.C. § 6972(a)(1)(B). To state a claim "predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011)

(holding that dry cleaning equipment manufacturers are not liable as contributors under RCRA); *see also California River Watch v. City of Vacaville*, 39 F.4th 624, 631–633 (9th Cir. 2022) (holding that that a city was not contributing to past or present "transportation" of hazardous waste by "incidentally" carrying it through its pipes when pumping water to residents).

The Ninth Circuit has specifically considered the scope of contributor liability for regulators. *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023). "An agency's choice not to regulate despite authority to do so does not manifest the type of actual, active control contemplated by RCRA." *Id.* at 954; *see also Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934–935 (C.D. Cal. 2023) (holding the City of Long Beach did not have "actual control" or "actually contributed" to RCRA violations at the Port of Long Beach simply by owning several of the piers). As such, the City has not "contributed" to the handling, storage, treatment, transportation, or disposal of hazardous waste at the Apple Facility. 42 U.S.C. § 6972(a)(1)(B). In any case, neither courts nor Gjøvik are empowered to direct the City's enforcement discretion with regard to its oversight of the Apple Facility through its CUPA program. *Heckler*, 470 U.S. at 831–833; *Sierra Club*, 268 F.3d at 902; *see also City of Olmstead Falls*, 233 F. Supp. 2d at 900–901; *City of Fairborn, Ohio*, No. 3:22-CV-102, 2023 WL 2478572, at *9.

Gjøvik's own allegations also refute her claims regarding the City's oversight. She shows that the City has inspected and enforced RCRA at the Apple Facility. ECF 119, ¶¶ 141, 144, 181, 183. And as to the City's response to incidents, Gjøvik has cited records regarding eleven occasions when the Fire Department responded to calls or alarms from the Apple Facility. ECF 119, ¶¶ 132, 136, 148, 152, 153. These records demonstrate the Fire Department's competent and professional response to the only recorded hazardous material incidents at the Apple Facility, none of which posed a threat to the surrounding community. Gjøvik's own Third Amended Complaint refutes her allegations of deficient oversight of the Apple Facility by the City. Gjøvik's Third Amended Complaint does not state RCRA claims that are plausibly entitled to relief, and so they should be dismissed.

**2. Gjøvik's CAA claims against the City are not cognizable under the CAA citizen suit provision.**

In her CAA claims against the City, Gjøvik fails to make plausible factual allegations or state claims upon which relief can be granted. She ascribes air quality issues to Apple and alleges the City is "responsible and liable through their contribution" to those issues through the City's assumption of the CUPA program (which regulates waste, not air emissions), failure to warn, design and siting, concealment of information, negligent advice, and ownership of adjacent public property—"among other theories of liability." ECF 119, ¶ 294. All of these allegations relate to the City's role as a regulator. Gjøvik claims the City has violated § 304(a)(3)[2] of the CAA "by an unreasonable delay in enforcement." ECF 119, ¶ 295. She also accuses the City of violating the California Public Records Act,[3] obstructing EPA investigations, concealing violations, unlawfully issuing building permits, wrongfully approving a research and development designation for the facility, and failing to require federal permits. ECF 119, ¶ 296. Again, these are regulatory functions. The claims are based on conclusory statements, none of them supported by plausible factual allegations, and even if they were they cannot give rise to cognizable claims against the City under the CAA citizen suit provision.

Gjøvik's allegations against the City are refuted by her own recognition that the Bay Area Air Quality Management District ("BAAQMD"), not the City, is the Apple Facility's air permitting agency. *See, e.g.*, ECF 119, ¶¶ 283, 342, 377, 559. Air permitting is not part of the CUPA program, meaning that authority is not delegated to the City.[4] Even if the City did have a

---

[2] CAA § 304(a)(3) authorizes citizen suits against any person who proposes to construct a source without a required permit, or who has violated a CAA permit, and Gjøvick has not alleged that the City has done either, nor could she.

[3] No part of the CAA citizen suit provision provides a cause of action for alleged violations of the California Public Records Act, as Gjøvik alleges at ECF 119, ¶ 296. 42 U.S.C. § 7604. In any event, even in her Third Amended Complaint Gjøvik does not allege that the City failed to answer or unlawfully denied any of her public record requests. In fact, her Third Amended Complaint makes liberal use of City documents. *E.g.*, ECF 119, ¶¶ 416, 417, 418, 419, 436, 450, 451. Her CAA claim related to the California Public Records Act should be dismissed.

[4] The CUPA Program consolidates the administration, permit, inspection, and enforcement activities of six hazardous waste programs, including underground and aboveground storage tanks and accidental release prevention. CalEPA, *More about the Unified Program*, available at: https://calepa.ca.gov/cupa/about/.

role in air permitting for the Apple Facility, an alleged delay in enforcement is an unreviewable exercise of enforcement discretion. *Heckler*, 470 U.S. at 831–833; *Sierra Club*, 268 F.3d at 903; *City of Fairborn*, 2023 WL 2478572, at *9.

CAA citizen suits against the regulator are restricted to actions seeking to enforce "specific non-discretionary clear-cut requirements." *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 766 (10th Cir. 1980). Gjøvik has alleged that the City should have somehow made Apple get a permit from BAAQMD but does not allege any violation of a statutory nondiscretionary duty, meaning she has not stated a claim under the nondiscretionary-duty portion of the CAA citizen suit provision.

The pollution control portions of the CAA citizen suit provision authorize suit against persons who violate "an emission standard or limitation" or an order issued "with respect to such a standard or limitation," 42 U.S.C. § 7604(a)(1), or who construct an air-pollution-emitting facility without the appropriate permit or violate such a permit, 42 U.S.C. § 7604(a)(3). Gjøvik has not alleged that the City has violated an air pollution emission standard or constructed an air-pollution-emitting facility without a permit, nor could she, since she has acknowledged that Apple, not the City, operates the Apple Facility. ECF 119, ¶ 34. Gjøvik argues the City made a "contribution" to alleged CAA violations by Apple. ECF 119, ¶ 294. Regardless of how she may allege such a contribution occurred, such liability does not exist under the statute. 42 U.S.C. § 7604. As such, none of Gjøvik's CAA claims state a claim upon which relief can be granted, and they should be dismissed.

**3. Gjøvik's wastewater and stormwater claims are not cognizable under the CWA citizen suit statute.**

Gjøvik makes a wide range of CWA allegations against the defendants related to alleged wastewater and stormwater violations at the Apple Facility. *E.g.*, ECF 119, ¶¶ 299–309, 430–537. The claims against the City are premised on Gjøvik's wish to command the City's enforcement discretion, which is not a valid claim under the CWA citizen suit provision, 33 U.S.C. § 1365, and which is not within a court's purview, *Sierra Club*, 268 F.3d at 905. For the sake of organization, this motion responds to Gjøvik's wastewater (discharges to the Regional Wastewater Facility's

wastewater treatment system) and stormwater (discharges into the City's stormwater sewers) claims in turn, both of which are regulated under CWA § 402, 33 U.S.C. § 1342.

As to both wastewater and stormwater, Gjøvik repeats the conclusory allegation that the City is "responsible and liable due to their contribution to these issues" by the City's assumption of the CUPA program, failure to warn, design and siting, concealment of information from the public, negligent advice, and ownership of adjacent public property, "among other theories of liability." ECF 119, ¶ 309. As noted above, the CUPA program regulates hazardous materials; it does not include CWA authority. This case is like *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934 (C.D. Cal. 2023), where the plaintiff "generally group[ed]" the defendant City of Long Beach with industrial facility operators but did not plausibly allege that it had, "in its own right, acted in such a way that it could reasonably be considered to be in violation of federal pollution control requirements[.]" 702 F. Supp. 3d at 934. Gjøvik has not stated a claim against the City under the CWA citizen suit statute and her claims should be dismissed with prejudice.

**i. Gjøvik's wastewater allegations do not plausibly state CWA claims against the City.**

Gjøvik's wastewater-related claims against the City are predicated on a permitting assumption that is belied by her factual allegations. Her wastewater-related claims are based on the premise that the City has been delegated authority for the CWA Section 402 National Pollution Discharge Elimination System ("NPDES") program for wastewater discharges to the sewer system. *E.g.*, ECF 119, ¶¶ 433, 434, 437, 438. But that premise is refuted by her acknowledgment that the Apple Facility's CWA permit is from the San José-Santa Clara Regional Wastewater Facility ("RWF"), which runs the treatment plant. ECF 119, ¶ 437. While the City is a minority owner of the RWF, the treatment plant and its regulatory compliance is the City of San José's responsibility. *See* Declaration of Svend Brandt-Erichsen in Support of City's Motion to Dismiss ("Brandt-Erichsen Decl.") ECF 58-2, Ex. 1 at pdf pages 33–35 ("Administering Agency") and ECF 58-3, Ex. 2 at pdf pages 5 (definition of "Administering Agency"), 22–23 ("Industrial Waste Program"), 57–59 ("Administering Agency").

Gjøvik alleges that in early 2016, the RWF approved a request for Apple to discharge wastewater in accordance with national pretreatment standards. ECF 119, ¶ 440. The RWF cited Apple for various permit violations, ECF 119, ¶ 439, and in late 2016 changed Apple's permit from a research and development permit to a semiconductor fabrication permit, ECF 119, ¶ 438. Gjøvik criticizes the City and the RWF for insufficient enforcement action against Apple but also relates that the RWF cited Apple for permit violations in 2016 and 2020, while failing to recognize that the City does not administer the RWF. ECF 119, ¶¶ 439, 442.

Gjøvik alleges that the City, "individually and jointly" with the RWF, violated the CWA by issuing wastewater discharge permits to the Apple Facility without public notice or participation, ECF 119, ¶ 491, failed to abate violations by not pursuing civil and criminal penalties, ¶ 492, failed to identify the character and volume of pollutants in the permit, ¶ 493, failed to create and maintain a program to assure compliance with pretreatment standards, ¶ 494, failed to ensure the Apple Facility provided adequate notice to the permitting agency of new or different discharges, ¶ 495, or the quality and quantity of effluent, ¶ 496, and failed to ensure the Apple Facility complied with "sections 1284(b), 1317, and 1318" of the CWA, ¶ 497. First, she does not plausibly allege that the City controls the actions of the RWF. Indeed, as noted above, the City of San José is responsible for all administration of the RWF, including its industrial source program. Brandt-Erichsen Decl., ECF 58-2, Ex. 1 at 33–35, ECF 58-3, Ex. 2 at 5, 22–23, 57–59. Second, all she has alleged are unreviewable exercises of discretion by RWF. Gjøvik alleges that the City, through the RWF, failed to comply with its "mandatory obligation" to commence an enforcement action, and describes how she "complained to the EPA in 2023 about unlawful and dangerous discharges" and the EPA also has failed to commence enforcement action. ECF 119, ¶ 502.

Any claim related to administration of the RWF would not be against the City. Brandt-Erichsen Decl., ECF 58-2, Ex. 1 at 33-35, ECF 58-3, Ex. 2 at 5, 22–23, 57–59. And once again, even if she could make such claims against the City, the CWA citizen suit provision does not allow for claims regarding an agency's discretionary actions. *City of Olmstead Falls*, 233 F. Supp. 2d at 900–01 (citing *Heckler*, 470 U.S. at 831); *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) (concluding after an extensive review of the statute, and legislative history, that the CWA imposes

only discretionary duties to take enforcement action); *Sierra Club*, 268 F.3d at 902 (citing *Dubois v. Thomas* with approval). Gjøvik alleges that the City "must know that discharges from the Facility into the sewer system are causing downstream residents to become ill," and should have taken enforcement action. ECF 119, ¶ 300. Again, Gjøvik makes no allegation of a CWA violation by the City; just an unreviewable objection to an alleged exercise of enforcement discretion.

None of Gjøvik's wastewater-related claims allege failure to perform a non-discretionary duty. But even if they did, a local jurisdiction cannot be sued in EPA's shoes for failing to perform a nondiscretionary duty. *P.E.A.C.H.*, 87 F.3d at 1249; *see also, City of Fairborn*, 2023 WL 2478572, at *6 (interpreting the identical CAA provision). In sum, Gjøvik's wastewater claims against the City do not allege facts that she is plausibly entitled to relief, and they should be dismissed.

Gjøvik also asserts that CWA Section 1319(f) imposes an affirmative enforcement duty on owners of certain wastewater treatment facilities who know an industrial user is violating effluent standards. ECF 119, ¶ 503. However, she offers no evidence of the factual predicate triggering that provision and in any event it is not enforceable by citizen suit. This provision authorizes EPA, if the agency "finds that an owner or operator of any source is introducing a pollutant into a treatment works," to notify the owner or operator and the state. 33 U.S.C. § 1319(f). Then, if the "owner or operator of the treatment works does not commence appropriate enforcement action within 30 days of the date of such notification, [EPA] may commence a civil action[.]" *Id.* By its own text, the provision does not authorize action by private parties. Gjøvik asserts that the City's failure to commence appropriate enforcement action authorizes this citizen suit, but she does not allege that EPA made any finding or notification that Apple was introducing a pollutant into a treatment works that would trigger the provision. ECF 119, ¶¶ 500–503. Section 1319(f) gives EPA one of several "enforcement choices" under the CWA, *In Re Allen Family Foods, Inc.*, EPA Docket No. CWA-3-2001-00022002, 2002 WL 461746, *2 (March 18, 2002); it does not empower Gjøvik or any court to direct an owner or operator of a treatment works in the exercise of their enforcement discretion. *Heckler*, 470 U.S. at 832–833; *Sierra Club*, 268 F.3d at 905.

**ii. Gjøvik's stormwater allegations do not plausibly state CWA claims against the City.**

Gjøvik is correct that the CWA authorizes citizen suits against "any person," including a "governmental instrumentality or agency," 33 U.S.C. § 1365(a)(1), for permit violations. But she does not plead any violations of the stormwater permit requirements that she alleges apply to the City. Gjøvik notes that the California State Water Resources Control Board issued a NPDES stormwater permit to the City, ECF 119, ¶ 436, and the City in turn issued an Industrial Stormwater permit to Apple. *See* ECF 119, ¶¶ 437, 447. She alleges that Apple violated requirements of its industrial stormwater permit, and that the City failed to enforce those requirements. ECF 119, ¶¶ 300, 509. Yet her allegations against the City are belied by her descriptions of a 2016 incident in which a City stormwater inspector cited Apple for dumping cooling water into storm drains, ECF 119, ¶ 450, as well as two stormwater inspections of the Apple Facility by the City in 2022. ECF 119, ¶ 451. Thus, Gjøvik acknowledges that the City has conducted *some* enforcement, but just not as much as she desires. She cannot pursue a claim against the City's exercise of its enforcement discretion. *Heckler*, 470 U.S. at 832–833; *Sierra Club*, 268 F.3d at 905.

Gjøvik also alleges that the City violated the CWA by "creating pseudo-permits to Apple and The Property Owners" for stormwater discharge, in an "O&M agreement" and "in dicta" in a wastewater permit. ECF 119, ¶¶ 531–533. How the City is supposed to have created permits without creating permits is left unspecified, as is any associated CWA violation. Gjøvik argues the City failed to ensure public notice and participation in the CWA permitting of the Apple Facility, ECF 119, ¶¶ 534–535, but she does not specify when or what permit is supposed to have been insufficiently noticed, nor identify any associated mandatory CWA requirement. Gjøvik apparently believes that the City should be more aggressive in its regulation of stormwater discharges from the Apple Facility, but that is not an actionable citizen suit claim. Her stormwater CWA claims fail to state a plausible claim against the City, and they should be dismissed.

**4. Gjøvik has not alleged EPCRA claims against the City and cannot plausibly do so.**

Gjøvik fails to state claims against the City under the Emergency Planning and Community

Right-to-Know Act (EPCRA), 42 U.S.C. § 11046. ECF 119, ¶ 541. EPCRA was passed in 1986 in response to concerns regarding hazards posed by storage and handling of toxic chemicals, and imposes planning and reporting requirements for federal, state, tribal, and local governments, as well as industry.[5] Gjøvik makes a general allegation that the City has been delegated "emergency planning coordination," but does not identify where or how the EPCRA responsibilities relevant to her claims were delegated to the City. ECF 119, ¶ 47. Gjøvik's Third Amended Complaint alleges that the City (1) failed to ensure that the Apple Facility submits Toxics Release Inventory (TRI) reports under EPCRA § 313, ¶ 555, (2) failed to provide a mechanism for public availability of information under EPCRA § 324, ¶ 564, and (3) failed to respond to a request for tier II information under EPCRA § 312. ¶ 565. Gjøvik fails to identify any EPCRA provisions that actually impose nondiscretionary obligations on the City, or to allege that any City obligations are actionable under EPCRA's citizen suit provision.

First, Gjøvik's claim that the City failed to ensure that Apple submits TRI reports, ECF 119, ¶ 555, is not allowed under EPCRA's citizen suit provision. EPCRA § 313 creates a framework for toxic chemical release forms, or TRI reports, which facility owners and operators must submit to EPA and state officials annually. 42 U.S.C. § 11023(a). It does not impose any obligations on local jurisdictions. The EPCRA citizen suit provision provides no cause of action against local governments for this claim. 42 U.S.C. § 11046. For failure to complete and submit a report, a citizen suit can be brought against an owner or operator of a facility. 42 U.S.C. § 11046(a)(1)(A). A citizen suit can also be brought against EPA for failure to respond to a petition to add or delete a chemical within 180 days, publish a toxic chemical release form, or establish a computer database. 42 U.S.C. § 11046(a)(1)(B)(ii)–(iv). The City is not the owner or operator of the Apple Facility and it does not have EPA's authority or duties under EPCRA § 313, 42 U.S.C. § 11023. Even if the City somehow could be sued as standing in EPA's shoes for oversight of TRI reporting, 'ensuring the facility submits the required reports' does not fall into any of the categories for which a suit can be brought against EPA. 42 U.S.C. § 11046(a)(1)(B)(ii)–(iv). This cause of action cannot plausibly be maintained and should be dismissed.

---

[5] EPA, *What is EPCRA?*, available at: https://www.epa.gov/epcra/what-epcra.

Second, Gjøvik alleges that the City, delegated as a CUPA from California's emergency response agency, failed to provide a mechanism for the public availability of information in accordance with 42 U.S.C. § 11044(a). ECF 119, ¶ 564. While Gjøvik's allegation that the City is delegated as a CUPA is correct, she is legally incorrect in her assumption that the CUPA program includes delegation of the State's EPCRA functions.[6] Substantively, 42 U.S.C. § 11044(a) requires that documents received from regulated facilities be made available to the general public. But regardless of whether the City has some obligations as a "local emergency planning committee" under 42 U.S.C. § 11044(a), the EPCRA citizen suit statute only authorizes suit against EPA or a state "for failure to provide a mechanism for public availability of information in accordance with 42 U.S.C. § 11044(a)." 42 U.S.C. § 11046(a)(1)(C). It does not authorize citizen suits against a local emergency planning committee or any other municipal unit of government, so this claim cannot be brought against the City. Gjøvik's claim that the City violated this provision also is conclusory, and she does not allege relevant facts to support her claim. ECF 119, ¶ 564. She never alleges that she made any requests for EPCRA reports to the City, or that she failed to receive EPCRA records from the City. Thus, beyond having no statutory basis to bring this claim against the City, it must also be dismissed because Gjøvik fails to plausibly allege any factual basis for such a claim.

Finally, Gjøvik also alleges that the City failed to respond to a request for EPCRA tier II information under 42 U.S.C. § 11022(e)(3). ECF 119, ¶ 565. Gjøvik mentions tier II information once in her Third Amended Complaint; when she alleges the City failed to provide it. *Id.* She alleges no facts that she ever asked the City for tier II information, let alone specifying when she made the request or that the City ever declined such a request. *Id.* The underlying requirement concerns information about chemicals at a facility like the names, amounts present, and location and manner of storage. 42 U.S.C. § 11022(d)(2). The relevant portion of the EPCRA citizen suit provision authorizes suit against "[a] State Governor or a State emergency response commission for failure to respond to a request for tier II information . . . within 120 days after the date of receipt of the request." 42 U.S.C. § 11046(a)(1)(D). As above, the City is not included in the list of entities

---

[6] CalEPA, *Unified Program: Laws and Regulations*, available at: https://calepa.ca.gov/cupa/lawsregs/.

against which Congress authorized suit. 42 U.S.C. § 11046(a)(1)(D). This claim cannot be maintained against the City.

#### 5. Gjøvik has not alleged TSCA claims against the City and cannot plausibly do so.

With regard to TSCA, Gjøvik correctly cites the pollution-control portion of the TSCA citizen suit statute in her Amended Complaint as applying to "any person," including a "governmental instrumentality or agency," ECF 119, ¶ 571. But she has not and cannot identify any provision of TSCA or any rule or order issued under it that the City has violated. 15 U.S.C. § 2619(a)(1). According to Gjøvik, the City's TSCA violation is that the City knew certain toxic chemicals were used at the Apple Facility and knew about some spills and releases of these chemicals but failed to abate or report them or warn others. ECF 119, ¶¶ 606, 609. However, Gjøvik has not identified any TSCA requirement that imposes such obligations on the City for industrial facilities within its borders, nor are there any such obligations. She has not stated a claim against the City under the TSCA citizen suit statute, 15 U.S.C. § 2619, nor could she plausibly do so. The City does not own or operate the Apple Facility. It is not subject to TSCA requirements for the use or disposal of TSCA-regulated chemicals at the Apple Facility, nor is it subject to associated record-keeping requirements. Gjøvik's TSCA claims directed at the City are not plausible given that the City, as stated, does not own or operate the Apple Facility. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

### B. Gjøvik cannot plausibly allege facts sufficient to state a claim against the City for causing a public nuisance.

Gjøvik has not alleged that the City has any responsibility for the Facility or its alleged releases, and cannot plausibly do so.[7] Broadly speaking, Gjøvik argues that the Apple Facility is a

---

[7] Once the citizen suit claims against the City are dismissed, the Court also will no longer have subject matter jurisdiction over Gjøvik's state law claim against the City. Federal district courts have original jurisdiction, they also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. This is a claim-by-claim inquiry. *Id.* Without a federal question claim that 'anchors' jurisdiction, there is no supplemental jurisdiction over related state law claims. *Id.* That is the case here. Without the federal environmental claims against the City, the absence of supplemental jurisdiction is another reason do dismiss Gjøvik's California state law claim against the City.

public nuisance because she alleges that it is releasing and emitting substances that harm the community. ECF No. 119, ¶¶ 648–666. She alleges that the City "has been on notice of the nuisance emanating from" the Apple Facility and impacting nearby parks that are City property, but that the City has failed "prevent or abate the nuisance." *Id.* ¶ 648. Putting aside whether she has plausibly alleged releases sufficient to be detected in any public park, owning public parks does not cause a public nuisance. Any offsite impacts from releases at the Apple Facility are caused by the facility, not by the City. To the extent Gjøvik is arguing that better City enforcement could have avoided or mitigated those impacts, the City's conduct did not cause the impacts and the City's enforcement decisions under the CUPA program are not subject to judicial review or direction. *Heckler*, 470 U.S. at 838; *Sierra Club*, 268 F.3d at 905. Additionally, as Gjøvik acknowledges, the CEQA and zoning procedures for the Apple Facility and Santa Clara Square Apartments were 10–15 years ago. ECF 119, ¶¶ 88–112. CEQA statutes of limitation are 30–35 days depending on the procedures used by the public agency. Cal. Code Reg. Tit. 14, § 15112. The statute of limitations for nuisance is three years, Cal. Code Civ. Pro. § 338, and a 10-year-old zoning decision is not a continuing nuisance. By any measure, over 10 years since these CEQA and zoning decisions is too late to challenge them in court.

While private nuisance is "designed to vindicate individual land ownership interests," public nuisance has "historically distinct origins and aims at the protection and redress of *community* interests." *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 358, 213 Cal. Rptr. 3d 538, 545 (2017) (emphasis original) (citing *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1103, 929 P.2d 596, 603 (1997)). Public nuisances at common law are interferences with "the exercise of rights common to the public" like public health and safety. *Id.* "To qualify as a public nuisance, the interference must be both substantial and objectively unreasonable." *Id.*

California's common law categories for nuisance were codified in 1872 and remain generally unchanged today. *Id.* A nuisance is anything "which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use,

in the customary manner, of . . . any public park, square, street, or highway." Cal. Civ. Code § 3479. A public nuisance "is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480.

Under California law, a "private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. Gjøvik cannot maintain a public nuisance action under California law because nothing related to the Apple Facility is "specially injurious" to her, as required to maintain such an action. Cal. Civ. Code § 3493. At the time she filed the complaint, she lived over 3,000 miles away in Boston. While she has returned to the Bay Area, she alleges no current facts to show that any alleged emissions or discharges from the Apple Facility are "specially injurious" to her. She would be legally unaffected by any nuisance remedy. *Cf. Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292, 326, 306 Cal. Rptr. 3d 900, 928 (2023); *Sierra Club, Inc. v. Exxon Mobil Corp.*, No. 24-CV-07288-RS, 2025 WL 2578218, at *3 (N.D. Cal. Sept. 5, 2025).

Causation also is "an essential element of a public nuisance claim." *City of San Diego*, 8 Cal. App. 5th at 359. A plaintiff must establish a "connecting element" or a "causative link" between the defendant's conduct and the threatened harm. *Id.* (quoting *In re Firearm Cases*, 126 Cal. App. 4th 959, 988, 24 Cal. Rptr. 3d 659, 679 (2005)). The defendant also must be more than just a link in the causation chain. A plaintiff must show the defendant's conduct was a "substantial factor" in causing the alleged harm. *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 102, 227 Cal. Rptr. 3d 499, 543 (2017) (holding that defendant companies' conduct was a substantial factor in causing a lead paint nuisance because they had affirmatively promoted lead paint for interior residential use); *contra City of San Diego*, 8 Cal. App. 5th at 361 (holding that defendant City's conduct was not a substantial factor in causing a noxious sea lion waste odor at La Jolla Cove because the City's fence had not impacted sea lion population dynamics or behavior).

The City did not create or assist in creating any alleged nuisance related to the Apple Facility. *See City of Modesto Redevelopment Agency v. Superior Ct.*, 119 Cal. App. 4th 28, 38, 13

Cal. Rptr. 3d 865, 872 (2004). Gjøvik has not pled or shown how the City's exercise of its authorities related to the Apple Facility caused any nuisance. Any offsite impacts from releases at the Apple Facility are caused by the Facility, not by the City. To the extent Gjøvik is arguing that better City enforcement could have avoided or mitigated those impacts, the City's enforcement decisions are not subject to judicial review or direction. *Heckler*, 470 U.S. at 831; *Sierra Club*, 268 F.3d at 905. The City's conduct is not a "substantial factor" in any nuisance related to the Apple Facility. *City of San Diego*, 8 Cal. App. 5th at 361.

Gjøvik's Third Amended Complaint also alleges that where the City did not "directly cause" the nuisance, the City "did maintain it, protected it, failed to abate it, and failed to warn people of the dangers." ECF 119, ¶ 650. As noted, nuisance liability does not attach without causation, which is lacking here. *City of San Diego*, 8 Cal. App. 5th at 359. Additionally, nuisance liability does not extend to a "failure to warn." *City of Modesto Redevelopment Agency*, 119 Cal. App. 4th at 38. Just as the City has not caused or been a substantial factor in generating any releases from the Apple Facility, it also is not responsible for any dangerous conditions that those releases may have caused outside of its boundaries; the law of public nuisance is not so attenuated. Gjøvik cannot plead a cause of action for public nuisance against the City related to the Apple Facility, and her claim should be dismissed.

## V. CONCLUSION

In sum, Gjøvik states no claim against the City upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Gjøvik wants this Court to compel the City to enforce environmental laws in the way she sees fit, *e.g.* ECF 119, ¶ 669, but government enforcement of environmental law is inherently discretionary, and is not directed by courts. *Heckler*, 470 U.S. at 831; *Sierra Club*, 268 F.3d at 905. The City also does not have CAA, CWA wastewater, EPCRA, or TSCA enforcement authority over the Apple Facility. *See supra.*

Gjøvik wants this Court to compel the City to enforce environmental laws against the Apple Facility. But the citizen suit provisions do not authorize claims seeking to require agencies to exercise discretionary functions. They only grant the Court jurisdiction to compel nondiscretionary government actions. 42 U.S.C. § 6972(a)(2) (RCRA); 42 U.S.C. § 7604(a)(2)

(CAA); 33 U.S.C. § 1365(a)(2) (CWA); 42 U.S.C. § 11046(a) (EPCRA); 15 U.S.C. § 2601 (TSCA). And even if Gjøvik had made a claim seeking performance of nondiscretionary actions cognizable under these citizen suit provisions, the statutes do not make those claims available against the City. *Id.*; *City of Fairborn*, 2023 WL 2478572, at *6; *P.E.A.C.H.*, 87 F.3d at 1249.

Finally, Gjøvik has not plausibly stated a claim against the City under her state law claim for public nuisance. Gjøvik's claims relate to alleged releases from the Apple Facility. The City does not own, operate or control that facility and it has not caused the alleged releases.

For all of the foregoing reasons, the City respectfully requests that the Court dismiss all claims against it in this action, with prejudice.

DATED: September 17, 2026

NOSSAMAN LLP
SVEND BRANDT-ERICHSEN
BRENDAN F. MACAULAY
JENNIFER J. SEELY

By: */s/ Svend Brandt-Erichsen*

Svend Brandt-Erichsen
sbrandterichsen@nossaman.com
*Pro Hac Vice*
Jennifer Seely
jseely@nossaman.com
*Pro Hac Vice*
NOSSAMAN LLP
719 Second Avenue, Suite 120
Seattle, WA 98104
Telephone: 206.395.7630
Brendan F. Macaulay
CA Bar # 162313
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
bmacaulay@nossaman.com

*Attorneys for Defendant City of Santa Clara*

**CERTIFICATE OF SERVICE**

I hereby certify that on this September 17, 2026, I electronically filed the foregoing **DEFENDANT CITY OF SANTA CLARA'S NOTICE OF MOTION TO DISMISS AND MOTION TO DISMISS THIRD AMENDED COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Svend Brandt-Erichsen*