WILLIAM F. TARANTINO [SBN 215343]
WTarantino@mofo.com
ALBERTO J. CORONA [SBN 339906]
ACorona@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

JULIE Y. PARK [SBN 259929]
JuliePark@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, California 92130-3588
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendants APPLE INC., KALIL JENAB, JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, JENAB FAMILY TRUST, JULIA LINDSEY, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and KATHLEEN WOODRUFF, as Trustee of the Woodruff Kathleen Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASHLEY M. GJOVIK,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., ET AL.<br><br>Defendants. | Case No. 5:25-cv-07360-PCP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 5, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Third Am. Compl. Filed: August 31, 2026<br>Trial Date: TBD |

**PLEASE TAKE NOTICE** that on November 5, 2026, at 10:00 a.m., or as soon thereafter as the Motion may be heard in Courtroom 8 on the 4th Floor of the United States District Court of the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendants Apple Inc. ("Apple"), Kalil Jenab, Jenab Family LP, Jenab Family Ventures LLC, Jenab Family Trust, Julia Lindsey, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and Kathleen Woodruff, as Trustee of the Woodruff Kathleen Trust (collectively, the "Landlord Defendants," and together with Apple, "Defendants") move to dismiss Plaintiff's Third Amended Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants base this Motion on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Landlord Defendants' Supplemental Brief in Support of Motion to Dismiss Plaintiff's Third Amended Complaint, the Declaration of William F. Tarantino, the pleadings, records, and files in this action, and all other written or oral arguments or evidence that the parties may present to the Court relating to this Motion. Defendants respectfully ask that the Court dismiss this action with prejudice because the Court lacks subject matter jurisdiction, and Plaintiff fails to state a claim upon which relief can be granted.

## STATEMENT OF RELIEF SOUGHT (L.R. 7-2(b)(3))

Defendants seek an order dismissing all of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, 12(b)(6) because the Third Amended Complaint fails to establish federal subject-matter jurisdiction and fails to state a claim for relief.

Dated: September 17, 2026

MORRISON & FOERSTER LLP

By: /s/ *William F. Tarantino*
William F. Tarantino

Attorneys for Defendants
APPLE INC., KALIL JENAB, JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, JENAB FAMILY TRUST, JULIA LINDSEY, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and KATHLEEN WOODRUFF, as Trustee of the Woodruff Kathleen Trust

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3)) ..... 1
I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. Plaintiff's Related Claims Against Apple Were Dismissed with Prejudice ..... 2
B. Plaintiff's Defective Pre-Suit Notice ..... 3
C. Plaintiff's Current Complaint ..... 3
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 5
A. Plaintiff Lacks Article III Standing ..... 5
1. Plaintiff has not alleged harm to any aesthetic or recreational interest ..... 6
2. Plaintiff does not allege an ongoing threat to her health ..... 8
B. Plaintiff Failed to Provide Adequate Pre-Suit Notice ..... 9
1. The pre-suit notice is technically deficient ..... 10
2. The pre-suit notice is substantively deficient ..... 11
3. Plaintiff cannot advance theories outside the Notice ..... 12
C. The TAC Fails to State a Claim ..... 14
1. Plaintiff does not allege sufficient facts to support her theory that fraud invalidates Apple's permits ..... 14
2. Government enforcement bars Plaintiff's Resource Conservation and Recovery Act (RCRA) claims ..... 15
3. Plaintiff cannot pursue her Clean Air Act (CAA) claims based on past or resolved violations ..... 16
4. Plaintiff alleges no permit noncompliance or ongoing CWA violation ..... 17
5. Plaintiff identifies no TSCA regulation that Defendants violated ..... 18
6. Plaintiff fails to allege the prerequisites to an EPCRA obligation ..... 18
7. Plaintiff's public nuisance claims are precluded by res judicata, time-barred, and based on permitted activity ..... 20
8. Plaintiff vaguely alleges violations of a laundry list of inapplicable, unenforceable, or duplicative statutes and regulations ..... 23
a. Statutory provisions that only direct or allow EPA or state action ..... 23
b. Statutory provisions and regulations that cannot be enforced in a citizen suit ..... 25
c. Statutory provisions and regulations that do not identify a compliance standard ..... 26

**TABLE OF CONTENTS**
(continued)

**Page**


d. Regulations that do not apply to Defendants ................................ 27

e. Statutory provisions and regulations for which Plaintiff has failed to allege facts to support a claim........................................ 27

V. CONCLUSION ........................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 14, 19

*Atl. States Legal Found. v. United Musical Instruments*,
61 F.3d 473 (6th Cir. 1995) ........ 10, 11

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
44 Cal. App. 4th 1160 (1996) ........ 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4, 5

*Candlestick Heights Cmty. All. v. City & Cnty. of S.F.*,
No. 23-cv-00082-SK, 2023 WL 9317153 (N.D. Cal. Dec. 21, 2023),
*aff'd*, 2025 WL 275112 (9th Cir. Jan. 23, 2025) ........ 6

*Cascadia Wildlands v. Scott Timber Co.*,
105 F.4th 1144 (9th Cir. 2024) ........ 9, 11, 12

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 8

*Clarke v. Pac. Gas & Elec. Co.*,
501 F. Supp. 3d 774 (N.D. Cal. 2020) ........ 16

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
305 F.3d 943 (9th Cir. 2002) ........ 10

*Cmty. of Cambridge Env't Health & Dev. Grp. v. City of Cambridge*,
115 F. Supp. 2d 550 (D. Md. 2000) ........ 15

*Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*,
158 F.4th 1052 (9th Cir. 2025) ........ 8, 17

*Ctr. for Biological Diversity v. Marina Point Dev. Co.*,
566 F.3d 794 (9th Cir. 2008), *amended* (May 14, 2009) ........ 11, 12, 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ........ 5

*Demoruelle v. Kucharski*,
No. 19-00269 JAO-RT, 2019 WL 4739285 (D. Haw. Sept. 27, 2019) .................................... 6

*Digby Adler Grp., LLC v. Mercedez-Benz U.S.A., LLC*,
No. 14-cv-02349-TEH, 2015 WL 1548872 (N.D. Cal. Apr. 7, 2015).................................... 14

*Ecological Rts. Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000)........................................................................................... 5

*Eisentecken v. Tahoe Reg'l Plan. Agency*,
No. 2:20-cv-02349-DJC-CKD, 2025 WL 1531678 (E.D. Cal. May 28, 2025)...................... 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................................... 4, 5, 17

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987) ........................................................................................... 15, 16, 18

*Hall v. Norton*,
266 F.3d 969 (9th Cir. 2001)........................................................................................ 8, 9

*Hallstrom v. Tillamook Cnty.*,
493 U.S. 20 (1989) ........................................................................................... 9, 11, 12

*Holmes High Rustler, LLC v. Gomez*,
No. 15-cv-02086-JSC, 2015 WL 4999737 (N.D. Cal. Aug. 21, 2015).................................. 22

*Karr v. Hefner*,
475 F.3d 1192 (10th Cir. 2007)......................................................................................... 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).......................................................................................... 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 1, 4

*Mallon v. City of Long Beach*,
164 Cal. App. 2d 178 (1958)............................................................................................. 22

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001).............................................................................................. 4

*Nilson v. City of San Jose*,
No. C 07-03686 JW, 2008 WL 11387038 (N.D. Cal. July 24, 2008)........................... 9, 11, 12

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
457 F.3d 941 (9th Cir. 2006)...................................................................................... 6, 7, 9

*People ex rel. Bradford v. Goddard*,
47 Cal. App. 730 (1920)................................................................................................... 22

*Phipps v. Saddleback Valley Unified Sch. Dist.*,
204 Cal. App. 3d 1110 (1988) ........ 22

*Pinkert v. Schwab Charitable Fund*,
48 F.4th 1051 (9th Cir. 2022) ........ 5

*Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*,
216 F. Supp. 3d 1198 (W.D. Wash. 2015) ........ 12

*Puget Soundkeeper All. v. Port of Tacoma*,
104 F.4th 95 (9th Cir. 2024) ........ 17

*RE Sources for Sustainable Cmtys. v. Pac. Int'l Terminals, Inc.*,
No. C11-2076-JCC, 2013 WL 11233980 (W.D. Wash. July 23, 2013) ........ 7

*Remington v. Mathson*,
42 F. Supp. 3d 1256 (N.D. Cal. 2012),
*aff'd*, 575 F. App'x 808 (9th Cir. 2014) ........ 19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 4

*S.F. BayKeeper, Inc. v. Tosco Corp.*,
309 F.3d 1153 (9th Cir. 2002) ........ 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
322 F.3d 1064 (9th Cir. 2003) ........ 20

*Thibodeaux v. Port of Oakland*,
No. 18-cv-03353-KAW, 2018 WL 4853299 (N.D. Cal. Oct. 5, 2018) ........ 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5, 8

*Trees v. SEIU Loc. 503*,
574 F. Supp. 3d 856 (D. Or. 2021) ........ 9

*Tripati v. Henman*,
857 F.2d 1366 (9th Cir. 1988) ........ 20

*United States v. Stone Container Corp.*,
196 F.3d 1066 (9th Cir. 1999) ........ 15

*United States ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) .......... 14

*Wash. Trout v. McCain Foods, Inc.*,
45 F.3d 1351 (9th Cir. 1995) .......... 10

*WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*,
375 F.3d 913 (9th Cir. 2004) .......... 11

*W. Radio Servs. Co. v. Glickman*,
123 F.3d 1189 (9th Cir. 1997) .......... 20

*White v. Am. W. Lender Servs. LLC*,
No. 24-cv-07059-WHO, 2025 WL 1359124 (N.D. Cal. May 8, 2025) .......... 14

*Wicker v. Walmart, Inc.*,
533 F. Supp. 3d 944 (C.D. Cal. 2021) .......... 21

**Statutes, Regulations, and Rules**

15 U.S.C.
§ 2604 .......... 28
§ 2605 .......... 24
§ 2606 .......... 25
§ 2607(b)(10)(D) .......... 28
§ 2614 .......... 28
§ 2615(b) .......... 26
§ 2619(b)(1)(A) .......... 11
§ 2681 .......... 26
§ 2682 .......... 25
§ 2683 .......... 25
§ 2684 .......... 25
§ 2685 .......... 25
§ 2686 .......... 25
§ 2687 .......... 26
§ 2688 .......... 25
§ 2689 .......... 28

28 U.S.C. § 2462 .......... 18

33 U.S.C.
§ 1311 .......... 27
§ 1312 .......... 24
§ 1316 .......... 24
§ 1317 .......... 24, 26
§ 1319(c) .......... 26
§ 1342 .......... 17 n.2, 24, 27
§ 1365(b) .......... 11

42 U.S.C.
§ 6922 ........ 24
§ 6923 ........ 24
§ 6924 ........ 24
§ 6925 ........ 24
§ 6928(d)-(e) ........ 25
§ 6972 ........ 11, 15, 27
§ 6973 ........ 24
§ 7410 ........ 23
§ 7411 ........ 27
§ 7412 ........ 23
§ 7413(c) ........ 25
§ 7502 ........ 23
§ 7604(b) ........ 11
§ 7661(1) & (2) ........ 26
§ 7661a(a) ........ 26
§ 11002 ........ 19, 26
§ 11004 ........ 19
§ 11021 ........ 19
§ 11022 ........ 19
§ 11023 ........ 19
§ 11046 ........ 11, 26

40 C.F.R.
pt. 63 subpt. BBBBB ........ 27
pt. 262 ........ 27
pt. 264 ........ 27
pt. 355 ........ 19
pt. 713 ........ 26
pt. 745 ........ 27
pt. 751 ........ 26

40 C.F.R.
§ 54.2(b) ........ 11
§ 54.3(b) ........ 10
§ 135.2(a) ........ 11
§ 135.3(a) ........ 10
§ 254.2(a)(1) ........ 11
§ 254.3(a) ........ 10
§§ 260-265 ........ 25
§ 370.10 ........ 19
§ 372.22 ........ 20
§ 372.23 ........ 20
§ 702.62(a) ........ 10, 12
§ 751 ........ 18
§ 751.301 ........ 26

Cal. Civ. Code
§ 3482 ........ 22
§ 3493 ........ 21

**Other Authorities**

Regulation under the Toxic Substances Control Act: n-Methylpyrrolidone, 89 Fed. Reg. 51,134 (proposed June 14, 2024) ........ 18

Santa Clara City Code § 8.30.050 (2024) ........ 23

**STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(A)(3))**

1. Whether Plaintiff has Article III standing to seek injunctive relief in an environmental citizen-suit enforcement action relating to a California facility under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

2. Whether Plaintiff's Third Amended Complaint is procedurally barred or otherwise fails to state a claim for relief.

## I. INTRODUCTION

Plaintiff Ashley Gjovik—*pro se* and a former Apple employee—again asks this Court to convert theories rejected in prior litigation into a sweeping environmental "citizen suit" against Defendants relating to Apple's Santa Clara research facility. Yet she identifies no impairment to her use of the area, no impairment to the environment, and consequently, no injury in fact.

The Third Amended Complaint ("TAC" Dkt. No. 119) does not allege ongoing violations and redressable injury. Over the course of 161 pages, it invokes more than 150 statutes, ordinances, and regulations—many inapplicable, unenforceable by private plaintiffs, and untethered to any facts. It presents no live controversy and no basis for the extraordinary relief Plaintiff demands.

***First***, Plaintiff lacks Article III standing, which requires a concrete, particularized, and ongoing injury—typically an impairment to a plaintiff's aesthetic or recreational interests or a likelihood of continued exposure to pollution. Plaintiff cannot meet this standard, especially because her alleged past injury cannot support prospective, injunctive relief.

***Second*,** Plaintiff failed to satisfy mandatory pre-suit notice requirements that are strict prerequisites to citizen-suit litigation. Her notice omitted several theories, lacked the required contact information, was not served on the required entities, and most importantly, did not provide reasonably specific information to identify the alleged violations. These defects cannot be cured.

***Third*,** the TAC fails to meet basic pleading standards. Rule 8 does not permit a *pro se* plaintiff to bury claims in hundreds of paragraphs of narrative, conclusory accusations, and irrelevant detours. Nor does plaintiff allege any fraudulent conduct with particularity.

***Finally*,** on the merits, Plaintiff's allegations confirm why this case cannot proceed. She admits the Facility operates under valid permits for air emissions and water discharges, and omits any plausible facts supporting an ongoing exceedance or enforceable violation. Her TSCA claims conflate nonbinding agency risk evaluations with enforceable restrictions. Her EPCRA theories fail to plead conditions to trigger liability, such as a reportable release of an extremely hazardous substance or any basis to infer that Toxic Release Inventory (TRI) reporting is required. Her public nuisance claim is time-barred. It also fails because the Facility operates subject to proper permits and the claim arises from the same facts as her failed private nuisance claim.

These defects persist from her original complaint and cannot be cured by amendment. The Court should dismiss the TAC with prejudice.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Related Claims Against Apple Were Dismissed with Prejudice

Plaintiff is a terminated Apple employee who has pursued Apple in a series of administrative actions, regulatory investigations, and civil litigation based on the same alleged environmental conditions near Apple's research facility at 3250 Scott Boulevard in Santa Clara (the "Facility").

Plaintiff filed this lawsuit while residing in Massachusetts—thousands of miles from the Facility. She only relocated to the San Jose area after Apple moved to dismiss her First Amended Complaint on the ground that she lacked Article III standing because she had left the area. She now alleges she is a current resident of San Jose, California (domiciled in Alviso), and filed the TAC from a hotel in Santa Clara approximately 2,100 feet from the Facility, while allegedly recreating in the area. (TAC ¶¶ 27-28.) She claims that she plans to return monthly to enjoy the natural beauty of the area, and that she personally observed and documented conditions in nearby San Tomas Aquino Creek in spring 2026. (TAC ¶¶ 28, 184.) Plaintiff does not allege impairment to this claimed recreational use or any ongoing exposure to harmful substances during those visits. Notably, Plaintiff's own pre-suit notice concedes that the symptoms allegedly caused by the Facility had fully resolved upon leaving the area: "[w]ithin a week of vacating the location in October 2020, [her] disabling medical issues vanished." (Dkt. No. 119-3 at 10.)

In 2023, Plaintiff brought an employment lawsuit against Apple in the Northern District of California. (*See* TAC ¶ 17; Declaration of William Tarantino in Support of Motion to Dismiss ("Tarantino Decl.") Ex. A.) Though she did not work at the Facility, Plaintiff lived nearby and claimed that the environmental conditions at the Facility made her ill. Her causes of action included private nuisance and intentional infliction of emotional distress based on alleged chemical emissions from the Facility. (Tarantino Decl. Ex. A.) On February 27, 2025, after Plaintiff's multiple opportunities to amend to attempt to state a claim, Judge Chen dismissed those claims with prejudice as time-barred and expressly rejected Plaintiff's "continuing nuisance" theory, finding

that she "moved out of the apartment at issue in October 2020" and therefore lacked standing to challenge any later emissions. (*Id.* Ex. B at 18; see also *id.* Ex. C at 29 n.11.) Final judgment was entered in that case on June 24, 2026. (*Id.* Ex. F.)

**B. Plaintiff's Defective Pre-Suit Notice**

Three months after Judge Chen dismissed Plaintiff's personal injury claims, Plaintiff served a 60-day pre-suit notice for this lawsuit on Apple, the City, and the Jenab Defendants (the "Notice"). (*See* Dkt. No. 3; TAC Ex. A.) The Notice omitted Plaintiff's contact information, was not served on the proper parties—including because it was not served on the correct state authorities or in the manner required by law—and lacked sufficient information to identify the purported violations. The Notice did not include several theories raised for the first time in the TAC. These deficiencies deprived both Apple and the relevant agencies of the opportunity to investigate or correct the supposed issues before litigation, defeating the purpose of the notice requirement.

**C. Plaintiff's Current Complaint**

Plaintiff originally filed this lawsuit on September 2, 2025. This is only one of more than two dozen administrative or judicial proceedings she has brought against Apple in the past five years. (Tarantino Decl. Ex. D at 6-9.) This case—like the employment action—centers around her claim that the Facility emitted or discharged chemicals into the air and water. (*See, e.g.*, TAC ¶ 1.) Plaintiff filed her First Amended Complaint ("FAC") in or about November 2025. Defendants moved to dismiss. (Dkt. Nos. 60, 62.) One of the grounds was that Plaintiff lacked Article III standing because she resided in Massachusetts, had no concrete plans to return to Santa Clara, and had not alleged any impairment to an aesthetic or recreational interest. The Court agreed, finding the allegations inadequate to plead Article III standing and granting Plaintiff leave to amend. (Dkt. No. 101 at 25:13-24.) Plaintiff filed the Second Amended Complaint on August 6. (Dkt. No. 102.) She filed the operative Third Amended Complaint ("TAC") on August 31 to amend the named defendants to substitute Julia Lindsey and Kathleen Woodruff, each in their respective capacities as trustees, in place of James Lindsey. In the TAC, Plaintiff attempts to avoid Apple's permit defenses by alleging for the first time that those permits were procured by fraud. She pleads no particularized facts in support of that theory because none exist.

Plaintiff concedes that Apple operates under lawful permits. She admits that Apple operates under a National Pollutant Discharge Elimination System (NPDES) Permit, which authorizes its routine wastewater discharges. (*See, e.g.*, TAC ¶¶ 437-38.) The TAC does not allege a single violation suggesting that the Facility's discharges were noncompliant with its NPDES permit or any other law. She concedes that Apple has a valid Bay Area Air Quality Management District (BAAQMD) permit for the Facility, authorizing discharge of arsine, phosphine, silane, and chlorine. (*Id.* ¶ 283.) The TAC lacks facts supporting Plaintiff's conclusory statements regarding exceedances of permit limits. She further acknowledges that EPA commenced and concluded an enforcement action for purported violations of RCRA but mischaracterizes it as having "never verified that Apple corrected its violations, limited the action only to violations found during the 2023-2024 inspection, and settled with a relatively small fine." (*Id.* ¶ 26.) Plaintiff also alleges that Apple misrepresented to regulators the nature of the Facility's operations—specifically, that Apple characterized the Facility as a research and development site rather than a semiconductor manufacturing facility. (*Id.* ¶¶ 151, 319, 399, 474.) Plaintiff cites no evidence of any false statement made to any regulator.

## III. LEGAL STANDARD

A plaintiff bears the burden to establish the "irreducible constitutional minimum" of Article III standing for any case to proceed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Rule 12(b)(1) requires dismissal where a plaintiff lacks Article III standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). In a facial Rule 12(b)(1) attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[G]eneral averments" and "conclusory allegations" about effects of pollution cannot establish standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000).

Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks facial

plausibility when there is no "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). Courts do not have to "accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV. ARGUMENT

### A. Plaintiff Lacks Article III Standing

Article III requires a concrete injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-40 (2016). An injury in fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Laidlaw*, 528 U.S. at 180. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To satisfy the "'injury in fact' requirement in environmental cases," a plaintiff must "adequately show[] that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that interest is impaired by a defendant's conduct." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). Future harm must be "certainly impending" to satisfy the imminence requirement. *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1055 (9th Cir. 2022). Plaintiff cannot make either showing here.

Plaintiff identifies no concrete interest that qualifies as standing to enforce these environmental laws. She alleges, at most, that she visits the area and shops nearby, but never alleges that the claimed pollution has impaired her aesthetic or recreational enjoyment of the environment. (*See* TAC ¶ 30.) She likewise never connects the alleged pollution to any harm to the environment, offering conclusory assertions in place of facts. And she alleges no ongoing threat to her health going forward—her claimed injuries are entirely past and, by her own pre-suit admission, resolved—leaving only an abstract fear of "risk for cancer and disease." (*Id.* ¶ 31.) Each of these failures independently defeats standing.

#### 1. Plaintiff has not alleged harm to any aesthetic or recreational interest

Plaintiff cannot satisfy the injury-in-fact requirement because she does not show how her use of the area is impeded by the alleged pollution.

Plaintiffs lack standing where their use of the land is not impaired by the alleged violations of environmental laws. *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 952-53 (9th Cir. 2006) ("*NIRS*"); *see also Candlestick Heights Cmty. All. v. City & Cnty. of S.F.*, No. 23-cv-00082-SK, 2023 WL 9317153, at *10-11 (N.D. Cal. Dec. 21, 2023) (finding plaintiffs lacked injury in fact where they failed to demonstrate how air pollution harmed their use of the park at issue), *aff'd*, 2025 WL 275112 (9th Cir. Jan. 23, 2025). Simply living in the area does not satisfy this condition. *Demoruelle v. Kucharski*, No. 19-00269 JAO-RT, 2019 WL 4739285, at *4 (D. Haw. Sept. 27, 2019) (granting Rule 12(b)(1) motion in environmental citizen suit where the plaintiff failed to allege sufficient impairment to her aesthetic or recreational enjoyment even though she lived in the area).

An environmental plaintiff who fails to establish that "they will be exposed to increases" in contaminants or "that they will curtail their use" of the affected area lacks an injury in fact. *NIRS*, 457 F.3d at 953. In *NIRS*, members of an environmental organization were concerned that the challenged regulation would expose them to harmful radiation because they regularly used streets and highways where radioactive materials might be transported. *Id.* at 951. The Ninth Circuit held those allegations insufficient because the members did not establish that they would actually be exposed to increased radiation or that their concerns would cause them to alter how they used the affected areas. *Id.* at 953-54. Their "undifferentiated 'concerns'" therefore did not establish a concrete injury. *Id.* at 954.

The same defects exist here. Plaintiff alleges that she visits the area and shops nearby, but not that alleged pollution from the Facility impairs those activities. To the contrary, she alleges that she currently "recreates and enjoys the aesthetic beauty" of Santa Clara Square and the adjacent San Tomas Aquino/Saratoga Creek and plans to return monthly "due to her enjoyment of and interest in the natural beauty of this area." (TAC ¶ 28.) As in *NIRS*, Plaintiff does not allege that her concerns cause her to avoid the area, visit less often, change how or where she recreates or

shops, or experience diminished aesthetic enjoyment. Nor does she allege facts showing that her planned visits will expose her to any identified pollutant, at any particular concentration, or through any identified pathway.

Plaintiff thus fails to allege any present impairment to her use or enjoyment of the area. Any claimed threat of future harm is further undermined by settlements with the responsible administrative agencies addressing the alleged violations. Without allegations of a current impairment of her interests, Plaintiff has not alleged a concrete and particularized injury sufficient to establish Article III standing.

The TAC's deficiencies only become more apparent when analyzed on a claim-by-claim basis:

| **Plaintiff's Claim-Specific Failures to Plausibly Allege Injury** | |
|---|---|
| **Statutory Claim** | **Defect** |
| Clean Air Act | Plaintiff does not allege that air emissions from the Facility curb her use of the area; she alleges only generalized fears of future exposure. (TAC ¶ 11.) Nor does she allege that she herself inhales the alleged air pollutants. (*Id.* ¶¶ 339-41.) |
| Clean Water Act | Plaintiff does not allege that her use of Saratoga Creek or any of its receiving waters is impaired by the alleged Facility action, nor does she allege that purported water pollution affects her ability to use the area or shop at local businesses. *See RE Sources for Sustainable Cmtys. v. Pac. Int'l Terminals, Inc.*, No. C11-2076-JCC, 2013 WL 11233980, at *2, *5-6 (W.D. Wash. July 23, 2013) (no injury in fact where the plaintiff organization offered no support for its theory that a member who spent "literally hundreds of hours" in the area studying marine organisms would have her interests impaired by discharges). Here, the disconnect is even more pronounced, as the TAC alleges that the Facility discharges into the nearby creek, but does not allege that any such discharge has caused Plaintiff to curtail recreation, avoid a location, or shop elsewhere. (TAC ¶¶ 184, 515-20.) |
| TSCA | Plaintiff does not allege that she is currently exposed to chemicals at the Facility, including how the alleged manufacturing, processing, distribution, and use of n-methyl-2-pyrrolidone ("NMP") affects her ability to shop. Generalized fears of exposure are insufficient. *NIRS*, 457 F.3d at 953. Though the TAC alleges the potential harms of exposure, it does not allege that Plaintiff herself is exposed to any TSCA-regulated chemicals. (*See, e.g.*, TAC ¶¶ 576-78 (describing potential effects of NMP exposure).) |
| RCRA | Plaintiff does not allege that she is currently exposed to waste, that her ability to recreate or shop in the area is affected by the Facility's waste management practices, or that she is endangered by current and specific waste storage, transport, or handling practices at the Facility. Plaintiff also fails to plausibly allege how the harm is not speculative. Nor is it enough that the TAC alleges that Apple's hazardous-waste exhaust remains "unabated" or that incident reports document releases of arsine, phosphine, and fluorine. (TAC ¶¶ 264-65.) Those allegations concern the existence of |

| | |
|---|---|
| | the condition, not whether Plaintiff is exposed to or is harmed by it. |
| EPCRA | Plaintiff raises only an informational injury—that Apple's failure to file TRI reports caused EPA's ECHO database to show no toxic releases for the Facility and made it appear "quite benign" when she investigated in 2020-2021. (TAC ¶ 550.) Under *TransUnion*, a bare informational injury of this kind does not constitute an injury in fact absent a downstream concrete harm. 594 U.S. at 441-42. Plaintiff alleges none: she does not explain how the missing TRI disclosures for TCE, NMP, or arsenic compounds impaired her ability to recreate or shop, nor does she plausibly allege current exposure to any of those chemicals. |
| Public Nuisance | The TAC lacks any allegation of any current air pollution exposure or effect on Plaintiff's ability to recreate or shop. The TAC only identifies generalized grievances and speculative harm. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420-22 (2013) (finding no Article III standing because the feared injury was not certainly impending). The TAC only raises conclusory allegations that the nuisance was "especially injurious" to Plaintiff, but does not identify any current symptom, exposure, or impairment. (TAC ¶¶ 613-17.) |

Because Plaintiff does not allege that Defendants' conduct impaired her aesthetic or recreational enjoyment, she lacks standing to bring these environmental claims.

**2. Plaintiff does not allege an ongoing threat to her health**

Because Plaintiff seeks only prospective injunctive relief, she must allege an ongoing, credible threat to her health going forward; an entirely past injury does not provide standing to seek injunctive relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (finding no injury in fact to support prospective injunctive relief where an organization member only asserted a past injury); *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1062 (9th Cir. 2025) (no Article III standing to pursue injunctive relief or civil penalties for past Clean Water Act violations); *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001) (noting that standing requires credible contention of ongoing or imminent harm).

*Hall* demonstrates where a plaintiff can establish standing. There, the plaintiff alleged that the defendant's development would disrupt his regular activities of traveling, shopping, and conducting personal business in the area by aggravating his respiratory condition through the release of airborne pollutants. 266 F.3d at 973-74, 976. Here, by contrast, Plaintiff identifies nothing about current or continuing conditions at the Facility that threatens her health going forward. She points only to past alleged exposure. (TAC ¶¶ 14, 31, 137, 201, 205-06, 557.) Plaintiff conceded in her pre-suit notice that her claimed injuries have resolved. (Dkt. No. 119-3 at 10.) Her past physical

injuries are not an "actual or imminent" injury that can give rise to Article III standing for a claim seeking future injunctive relief. *Hall*, 266 F.3d at 975-76.

*NIRS* confirms this deficiency. There, the Ninth Circuit held that environmental plaintiffs who failed to establish "how their health may be affected" by the challenged action lacked an injury in fact. 457 F.3d at 953. The court rejected the plaintiffs' generalized health concerns because they did not allege that any exposure would actually affect their health. *Id.* at 953-54. The same is true here: Plaintiff does not allege any facts showing how current or future conditions at the Facility threaten her health going forward. Her health-related allegations instead concern her alleged exposure in 2020, when she lived across the street from the Facility. (TAC ¶¶ 14, 30-31, 200-03.)

A plaintiff's subjective fear of future illness is not an injury in fact, either. *See Trees v. SEIU Loc. 503*, 574 F. Supp. 3d 856, 865 (D. Or. 2021) ("Plaintiff's unilateral fear is not concrete evidence of a *certainly impending* future injury, versus merely a *possible* future injury."). That is exactly what Plaintiff alleges here. (TAC ¶ 31 (alleging "emotional distress about ongoing risk for cancer and disease").) *Clapper* forecloses that theory, and the Court should likewise reject it.

The case should be dismissed under Rules 12(b)(1) and 12(h)(3) for lack of Article III standing because Plaintiff does not allege harm to an aesthetic or recreational interest and faces no ongoing health threat.

**B. Plaintiff Failed to Provide Adequate Pre-Suit Notice**

Plaintiff's pre-suit notice is insufficient, precluding her claims. *See Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024) (pre-suit notices are prerequisites to citizen suits). Courts have no discretion to excuse noncompliance with the mandatory notice requirements, which are strictly construed. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) (affirming dismissal due to insufficient pre-suit notice). Further, "[t]he law is clear that Plaintiff cannot cure her failure to provide adequate notice subsequent to filing suit." *Nilson v. City of San Jose*, No. C 07-03686 JW, 2008 WL 11387038, at *4 (N.D. Cal. July 24, 2008); *see also Hallstrom*, 493 U.S. at 26-27 (holding that *pro se* plaintiff's failure to strictly follow notice requirement was not subject to "equitable modification and cure"); *Cascadia*, 105 F.4th at 1153 (holding that compliance with citizen suit notice provision is a "mandatory claims-processing rule" and "mandatory condition[]

precedent to commencing suit." (citation omitted)).

The Ninth Circuit emphasizes the importance of pre-suit notice to "provide the agencies and the defendant with information" to allow the agencies the opportunity to "step in, investigate, and bring the defendant into compliance." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002). Litigation is the last resort: "[t]he point is to trigger agency enforcement and avoid a lawsuit" and not "to unduly burden citizens by requiring them to basically carry out the job of the agency." *Id.* Plaintiff's Notice fails both the technical and substantive requirements. It also provided no notice at all for the new theories Plaintiff raises for the first time in her amended complaints.

**1. The pre-suit notice is technically deficient**

The Notice's technical deficiencies mandate dismissal. *See Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995) (affirming dismissal of citizen suit due to technical deficiencies in the notice, including failure to provide contact information of the plaintiffs). A notice must "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." *Thibodeaux v. Port of Oakland*, No. 18-cv-03353-KAW, 2018 WL 4853299, at *4 (N.D. Cal. Oct. 5, 2018) (citation omitted) (describing notices under the Clean Water Act). These requirements apply across analogous environmental citizen-suit provisions. *See* 40 C.F.R. § 135.3(a) (CWA); *see also* 40 C.F.R. § 54.3(b) (CAA) (similar); 40 C.F.R. § 254.3(a) (RCRA) (similar); 40 C.F.R. § 702.62(a) (TSCA) (similar); *Atl. States Legal Found. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir. 1995) (extending notice requirements to EPCRA claims).

Plaintiff failed to meet these requirements. First, she failed to include adequate contact information. The Notice does not include Plaintiff's address; instead, it lists the Sacramento address of Plaintiff's California LLC. (*See* Dkt. No. 3; Dkt. No. 119-1 at 2; TAC ¶ 27.) But Plaintiff's LLC is not a party to this case. Only on the final page does Plaintiff make a passing reference to being in Boston at the time the Notice was served, without providing her actual address.

Plaintiff also failed to serve the Notice on all required parties before filing the Complaint, and her post-filing service is insufficient. *See Hallstrom*, 493 U.S. at 26-27 (holding that failure to comply with pre-suit notice requirements before filing suit is not subject to "equitable modification and cure"); *Nilson*, 2008 WL 11387038, at *4 ("The law is clear that Plaintiff cannot cure her failure to provide adequate notice subsequent to filing suit."); *Cascadia*, 105 F.4th at 1153 (compliance with citizen-suit notice provisions is a "mandatory condition[] precedent to commencing suit" (citation omitted)). The CWA claims require service on "the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred," among other entities. 40 C.F.R. § 135.2(a). Plaintiff did not serve the chief administrative officer of the water pollution control agency for California by certified mail or by personal service. (*See* Dkt. No. 119-2 at 34-37.) The same is true for the claims under the CAA, RCRA, and EPCRA; Plaintiff has failed to serve the relevant state entity as required. *See* 40 C.F.R. § 54.2(b) (CAA) (service of notice by certified mail required on "an authorized representative of the State agency charged with responsibility for air pollution control in the State"); 40 C.F.R. § 254.2(a)(1) (RCRA) (service of notice by personal service or certified mail required on "chief administrative officer of the solid waste management agency for the State in which the violation is alleged to have occurred"); *Atl. States Legal Found.*, 61 F.3d at 478 (EPCRA follows notice requirements for RCRA). These defects foreclose Plaintiff from maintaining a citizen suit. *See Nilson*, 2008 WL 11387038, at *4; *Hallstrom*, 493 U.S. at 26-27; *see also Cascadia*, 105 F.4th at 1153.

**2. The pre-suit notice is substantively deficient**

The Notice also fails to inform the Defendants "precisely what [they] allegedly did wrong, and when." *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2008), *amended* (May 14, 2009); *see* 42 U.S.C. § 6972(b)(1)(A) (RCRA); 42 U.S.C. § 7604(b) (CAA); 33 U.S.C. § 1365(b) (CWA); 15 U.S.C. § 2619(b)(1)(A) (TSCA); 42 U.S.C. § 11046(d)(1) (EPCRA). "Notice is sufficient if it is reasonably specific and if it gives 'the accused company the opportunity to correct the problem.'" *WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004) (quoting *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002)). Plaintiff's Notice does not do so.

The Notice does not provide information about where, when, and how the statutory violations allegedly occurred. At best, it parades through a list of statutes without detail: many simply direct EPA to promulgate certain regulations, rather than identify any specific standard that Defendants purportedly violated. For example, Paragraph 64 cites the entire section of the CAA concerning State Implementation Plans to argue that Defendants have violated the CAA through emissions "that exceed state-specific emission limits." (Dkt. No. 119-1 ¶ 64; *see also id.* ¶¶ 72-78 (referencing large portions of RCRA without further explanation), *id.* ¶¶ 91-95 (same for the CWA), *id.* ¶¶ 99-101 (same for EPCRA).) These allegations contain no detail at all, let alone the detail required by law.

For the TSCA allegations, the Notice likewise fails to identify which standards or regulations that Defendants allegedly violated, relying instead on broad statutory provisions authorizing the regulation of hazardous chemicals. (*See id.* ¶¶ 105-07.) The Notice only establishes that Apple uses chemicals that are regulated, not that Apple's use of those chemicals violated any regulations. (*See id.*) A notice under TSCA's citizen suit provisions must include, among other things, "[t]he specific provision of TSCA or of the rule or order under TSCA alleged to have been violated." 40 C.F.R. § 702.62(a)(1).

A notice must also specify the current conduct that forms the basis of the alleged violations; the Notice's information regarding alleged historical conduct is insufficient. *See Marina Point*, 566 F.3d at 801. Without that information, Defendants and public enforcers cannot investigate the alleged violations, and Plaintiff lacks authority to sue. Amendment cannot cure these defects, so the Court should dismiss the claims. *See Nilson*, 2008 WL 11387038, at *4; *Hallstrom*, 493 U.S. at 26-27; *see also Cascadia*, 105 F.4th at 1153.

### 3. Plaintiff cannot advance theories outside the Notice

Plaintiff cannot expand on theories or raise new ones not included in the Notice. *Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, 216 F. Supp. 3d 1198, 1214 (W.D. Wash. 2015). The TAC purports to do just that, adding the claims identified in the chart below:

| Count | Description |
|---|---|
| 1 | RCRA imminent and substantial endangerment (as to Landlord Defendants). |

| | |
|---|---|
| 4 | RCRA hazardous waste management requirements (as to Landlord Defendants). |
| 5 | RCRA hazardous waste recordkeeping requirements (as to Landlord Defendants). |
| 6 | RCRA operating without required permits (as to Landlord Defendants). |
| 7 | Hazardous waste transport. |
| 8 | RCRA hazardous waste treatment standards (as to Landlord Defendants). |
| 9 | Stationary source without permits. |
| 10 | Title V and preconstruction permits. |
| 11 | Hazardous air pollutant standards (as to Landlord Defendants). |
| 12 | Ozone pollution. |
| 13 | Exceeding emission limits. |
| 16 | Discharging pollution into Saratoga Creek. |
| 17 | Discharging pollution into Saratoga Creek. |
| 18 | CWA unpermitted and forbidden polluted wastewater discharge (as to Landlord Defendants). |
| 19 | Semiconductor manufacturing standards. |
| 20 | CWA failure to properly treat discharged wastewater (as to Landlord Defendants). |
| 22 | City failure to take enforcement action. |
| 23 | Stormwater. |
| 24 | City CWA violations regarding public notice and stormwater permitting. |
| 25 | EPCRA notification and reporting requirements (as to Landlord Defendants). |
| 26 | EPCRA TRI requirements (as to Landlord Defendants). |
| 28 | TSCA violation for NMP. |
| 29 | TSCA violation for mercury. |
| 30 | TSCA violation for TCE. |
| 31 | TSCA violation for lead. |
| 32 | Imminently hazardous chemicals. |
| 34 | California Public Nuisance (as to Landlord Defendants). |

Because Plaintiff's Notice did not advise the relevant agencies of the alleged violation or identify to Defendants "precisely what [they] allegedly did wrong, and when," the foregoing claims must be dismissed. *Marina Point*, 566 F.3d at 801.

### C. The TAC Fails to State a Claim

Plaintiff's allegations of federal statutory violations independently fail to state a claim. Even accepting the TAC's factual allegations as true, Plaintiff does not plead plausible claims for relief under any of the statutes she invokes. *Iqbal*, 556 U.S. at 678. Each category of claims suffers from independent, dispositive defects warranting dismissal.

#### 1. Plaintiff does not allege sufficient facts to support her theory that fraud invalidates Apple's permits

Plaintiff now seeks to avoid Apple's permit defenses by alleging that Apple procured its permits through fraud. Those allegations are not pled with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard" even in situations "[w]here fraud is not an essential element of a claim"); *White v. Am. W. Lender Servs. LLC*, No. 24-cv-07059-WHO, 2025 WL 1359124, at *7 (N.D. Cal. May 8, 2025) (a plaintiff's *pro se* status does not override heightened pleading requirements). These allegations must include the "who, what, when, where, and how" regarding the alleged fraud. *Kearns*, 567 F.3d at 1124 (citation omitted). Plaintiff does not and cannot identify what the false representations were, by whom they were made, or the context in which the representations were made. *See Digby Adler Grp., LLC v. Mercedez-Benz U.S.A., LLC*, No. 14-cv-02349-TEH, 2015 WL 1548872, at *3 (N.D. Cal. Apr. 7, 2015). Her assertions that Apple's permits are invalid should be rejected. (TAC ¶¶ 61, 151.)

Moreover, Plaintiff makes no attempt to establish how "research and development" (regarding semiconductors) does not overlap with "semiconductor fabrication." She instead asserts in a conclusory fashion that Apple "misrepresented" its operations to regulators without identifying any specific statement, submission, or regulatory definition that would render Apple's representations false. *See, e.g.*, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (stating that under Rule 9(b), the plaintiff must state "what is false

or misleading about [the purportedly fraudulent] statement, and why it is false" (citation omitted)). Without facts supporting falsity, Plaintiff cannot proceed on any fraud theory and has not adequately alleged anything to invalidate the Facility's permits.

**2. Government enforcement bars Plaintiff's Resource Conservation and Recovery Act (RCRA) claims**

Plaintiff's claims under RCRA are barred because EPA prosecuted the alleged violations and entered into a settlement with Apple in October 2025. *See* 42 U.S.C. § 6972(b)(1)(B), (2)(B) ("No action may be commenced under subsection (a)(1)(A) of this section . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with [a] permit, standard, regulation, condition, requirement, prohibition, or order."). A citizen suit cannot proceed on violations EPA pursued without supplanting EPA's "discretion to enforce [RCRA] in the public interest." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987). Instead, Congress intended citizen suits as a last resort in the event of government inaction. *See United States v. Stone Container Corp.*, 196 F.3d 1066, 1070 (9th Cir. 1999).

Plaintiff concedes that EPA inspected the Facility, commenced enforcement, and entered into a consent agreement with Apple regarding the alleged RCRA violations. (TAC ¶¶ 16, 26, 315.) Her disagreement with the settlement amount or scope of EPA's inspection (*id.* ¶¶ 26, 316) does not permit her to relitigate through a citizen suit the same violations EPA already addressed. *See Cmty. Cambridge Env't Health & Dev. Grp. v. City of Cambridge*, 115 F. Supp. 2d 550, 556 (D. Md. 2000) (diligent-prosecution bar precluded RCRA citizen suit challenging violations addressed by consent decree). Government enforcement is presumed diligent, and a citizen plaintiff bears a heavy burden to rebut that presumption. *E.g., id.* at 554; *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007). Plaintiff falls far short of that burden: she offers only conclusory criticism of EPA's enforcement and identifies no plausible ongoing violation outside the consent agreement.

Nor can Plaintiff plausibly allege an imminent and substantial endangerment in light of the consent agreement. 42 U.S.C. § 6972(a)(1)(B). Plaintiff relies solely on allegations that EPA did not conduct a follow-up or independently "confirm" or verify that Apple corrected the conditions

addressed by the agreement. (TAC ¶¶ 261, 326.) Plaintiff thus asks the Court to infer noncompliance solely because EPA did not independently verify compliance. That inference is speculative and cannot support an imminent and substantial endangerment. The Court should dismiss Plaintiff's RCRA claims.

**3. Plaintiff cannot pursue her Clean Air Act (CAA) claims based on past or resolved violations**

Plaintiff's allegations identify only past emissions, not the ongoing violation required for a CAA citizen suit. The only specific air emissions she identifies come from 2022 and 2023. (*See* TAC ¶ 343 (alleging that "Apple . . . reported . . . emissions to [BAAQMD]" and citing data from 2022 and 2023).) Significantly, Plaintiff admits that Apple has held a permit for at least some of the Facility's operations since operations began (*id.* ¶ 283), that Apple received an amended permit in 2023, and that the amended permit imposes specific emissions limits (*id.*). Yet she identifies no emissions reports exceeding those limits. A citizen-suit complaint must allege an ongoing, current violation of the relevant statute and cannot rely on "wholly past violations." *See Gwaltney*, 484 U.S. at 64. Plaintiff's conclusory allegation that the violations "are ongoing, long-running, and expected to continue in the future" (TAC ¶ 279) does not satisfy that requirement because she alleges no facts showing a current violation or a reasonable likelihood that any past violation will recur. Plaintiff's claims based on violations of emissions standards should be dismissed.

Plaintiff's own allegations establish that the alleged violations began outside the limitations period. The five-year statute of limitations for citizen suits under the CAA begins to run at the time of the underlying violation, not when the injury is discovered. *See Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 786 (N.D. Cal. 2020). If a violation, such as operating an unpermitted facility, is "ongoing" rather than one of several "repeated, discrete violations," then the claim accrues when the conduct first began. *See id.* Here, Plaintiff alleges unpermitted emissions since the Facility began operations in "approximately 2015" (TAC ¶ 34); any cause of action arising from this alleged continuous violation is time-barred. And if a claim for damages or penalties is barred, a claim for injunctive relief based on the same conduct is also barred. *See Clarke*, 501 F. Supp. 3d at 788 (where CWA claim is time-barred, "the related CWA claim for injunctive relief is likewise barred

by the concurrent remedy doctrine”). Plaintiff’s CAA claims should thus be dismissed in their entirety.

Plaintiff also cannot state an ongoing citizen-suit claim based on the violations identified in BAAQMD’s Notices of Violation. Plaintiff acknowledges that BAAQMD investigated the Facility and issued multiple Notices of Violation regarding permitting and emissions requirements. (TAC ¶¶ 173, 342.) She also concedes that BAAQMD settled those violations with Apple in May 2026. (*Id.* ¶¶ 26, 160.) Plaintiff’s criticism of BAAQMD’s enforcement provides no basis to infer that the alleged violations persist or will recur. *See Coastal Env’t Rts. Found.*, 158 F.4th at 1063 (“[W]hen post-litigation events ‘ma[k]e it absolutely clear that the [defendant’s] violations could not reasonably be expected to recur,’ then claims for civil penalties lose their deterrent effect and become moot.” (quoting *Laidlaw*, 528 U.S. at 193)).

#### 4. Plaintiff alleges no permit noncompliance or ongoing CWA violation

Plaintiff admits that the Facility operates under a National Pollutant Discharge Elimination System (NPDES) Permit, which authorizes its routine wastewater discharges. (*See, e.g.*, TAC ¶¶ 437-38.) While the TAC alleges that heavy metals and solvents were detected in Facility wastewater on one occasion in 2017 (*id.* ¶ 445), detection alone does not establish a CWA violation. Plaintiff identifies no effluent limit that was exceeded and no other permit requirement that these discharges violated. Nor does she allege any ongoing permit exceedance, as required for a citizen suit. The TAC’s own exhibits[1] contradict Plaintiff’s conclusory allegations about heavy metals and solvents and should therefore control. Absent any alleged noncompliance with the permit, Plaintiff cannot state a CWA claim. *See Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024) (“[I]f a permit-holder complies with the terms of its permit, it need not fear liability under the Clean Water Act.” (citing 33 U.S.C. § 1342(k))).[2]

---

[1] The testing cited in Plaintiff’s 2023 citizen complaint reveals that each of the chemicals Plaintiff alleges are in the Facility’s wastewater was detected below the Method Reporting Limit (“MRL”), meaning the reported concentration was too low for the laboratory to quantify reliably. (*See* Dkt. No. 119-3 at 36.)

[2] Plaintiff confusingly claims there is no “permit shield” because “Apple violated 33 U.S.C. § 1342(k) by also violating 33 U.S.C. §§ 1312, 1316, 1317, 1343.” (TAC ¶ 483.) But 33 U.S.C. § 1342(k) specifically says the opposite: “[c]ompliance with a permit issued pursuant to this section shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1312, 1316, 1317, and 1343 . . . .”

Plaintiff's remaining allegations likewise concern only "wholly past violations." *Gwaltney*, 484 U.S. at 64, *supra* § IV.C.3. She points to alleged deficiencies in sampling methods or frequencies in 2016 and 2020 (TAC ¶¶ 439, 442); cooling water disposal in 2016 (*id.* ¶ 450); and maintenance involving cobblestone count or "No Dumping" medallions in 2022 (*id.* ¶ 451). None of these support an ongoing CWA violation. Independently, the five-year statute of limitations bars Plaintiff's claims related to metals in wastewater, sampling, and cooling water disposal. 28 U.S.C. § 2462.

**5. Plaintiff identifies no TSCA regulation that Defendants violated**

Plaintiff bases her claims under the Toxic Substances Control Act (TSCA) in part on Apple's allegedly unlawful manufacturing, processing, distribution, and use of n-methyl-2-pyrrolidone ("NMP"). (*See* TAC ¶¶ 574-79.) But she identifies no regulation that prohibits or restricts that conduct.

The TAC claims that NMP "is regulated under 40 CFR Part 751." (*Id.* ¶ 575.) 40 C.F.R. part 751 is the entire section concerning "Regulation of Certain Chemical Substances and Mixtures Under Section 6 of [TSCA]," and has subparts for the specific chemical substances and mixtures covered. NMP is not included. *See generally* 40 C.F.R. § 751. The TAC further claims that "[i]n 2022, the EPA proposed rules severely restricting the legal use of NMP," apparently referring to EPA's December 2022 Final Risk Evaluation for NMP. (*See* TAC ¶ 575; Tarantino Decl. Ex. G.) The Final Risk Evaluation, however, does not regulate the use of NMP and specifically states that EPA "will propose a risk management regulatory action" limiting use of NMP. (Tarantino Decl. Ex. G at 3 (emphasis added).) EPA proposed regulations on NMP in 2024, but no such regulations have been adopted. *See* Regulation under the Toxic Substances Control Act: n-Methylpyrrolidone, 89 Fed. Reg. 51,134 (proposed June 14, 2024). Thus, no regulations limit Apple's use of NMP, and any claims concerning such use should be dismissed.

**6. Plaintiff fails to allege the prerequisites to an EPCRA obligation**

EPCRA imposes reporting obligations only when specified statutory and regulatory conditions are met. Plaintiff does not allege facts establishing those conditions for any of her EPCRA claims. (TAC ¶¶ 539-62.)

**Alleged Violation of EPCRA § 302 (42 U.S.C. § 11002):** Plaintiff claims that Apple violated EPCRA § 302 "by failure to notify State Emergency Response Commission (SERC) and failure to designate facility representative." (*Id.* ¶ 543.) Plaintiff provides no facts showing that Apple had either obligation, much less that Apple failed to satisfy it. Her conclusory allegations therefore fail. *Iqbal*, 556 U.S. at 678.

**Alleged Violation of EPCRA § 304 (42 U.S.C. § 11004):** Section 304 requires facilities to notify certain emergency response authorities of certain chemical releases. 42 U.S.C. § 11004. These reporting obligations apply to an EPA-designated "extremely hazardous substance" released in excess of its "reportable quantity." 42 U.S.C § 11004(a)(1)-(3); *see also* 40 C.F.R. pt. 355 Appendix A; *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1280 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Plaintiff identifies several chemicals in Apple's February 2025 chemical inventory that appear in Appendix A, including silane, chlorine gas, ammonia, sulfuric acid, and dichlorosilane. (TAC ¶ 545.) But an inventory shows possession, not release. Plaintiff alleges no facts showing that Apple released any of these substances, much less in quantities exceeding their respective reporting thresholds. She therefore fails to allege facts triggering any reporting obligation under § 304.

**Alleged Violation of EPCRA §§ 311 and 312 (42 U.S.C. §§ 11021, 11022):** Sections 311 and 312 require facilities to submit Material Safety Data Sheets and hazardous chemical inventory forms to local and state authorities for certain chemicals present above regulatory thresholds. 40 C.F.R. § 370.10. Plaintiff alleges that Apple failed to maintain an accurate inventory and report its inventories to state and local authorities. (TAC ¶ 545.) Yet the same paragraph identifies "Apple's most recent chemical inventory for the site," submitted in February 2025. (*Id.*) Plaintiff alleges no facts showing that any chemical exceeded an applicable reporting threshold, that the inventories were inaccurate, or that any required report was not submitted to the appropriate authorities. Her conclusory assertion of a reporting violation therefore fails under Rule 8. *See Iqbal*, 556 U.S. at 678.

**Alleged Violation of EPCRA § 313 (42 U.S.C. § 11023)**: Plaintiff alleges that TRI reports were required for TCE, NMP, and arsenic compounds. (TAC ¶ 555.) But EPCRA § 313 does not

require every facility that uses a listed chemical to file TRI reports. Among other prerequisites, the facility must operate within an industry sector covered by the regulation, specified by NAICS code, and meet applicable employee and chemical-activity thresholds. *See* 40 C.F.R. §§ 372.22, 372.23.

Plaintiff does not plausibly allege that the Facility meets those requirements. She acknowledges that the Facility's RCRA registration identifies its NAICS code as 541715 (Research and Development in the Physical, Engineering, and Life Sciences), which is not a covered industry sector. (TAC ¶ 558; *see* 40 C.F.R. § 372.23.) Plaintiff points to a different NAICS code used in an earlier TRI filing, but use of that code in a prior filing does not establish that the Facility falls within a covered industry sector for the periods at issue. (TAC ¶¶ 558-59.) Nor does Plaintiff allege facts showing that the Facility meets the independently required employee or chemical-activity thresholds. She therefore fails to allege facts triggering a TRI reporting obligation under § 313.

**7. Plaintiff's public nuisance claims are precluded by res judicata, time-barred, and based on permitted activity**

**Res Judicata**: "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised *or could have been raised* in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (emphasis added). Prior claims brought in federal court cannot be relitigated between the same parties after final judgment. *Id.* And "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in an earlier action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003). The pendency of an appeal does not change the preclusive effect. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988). Plaintiff's public nuisance claim arises from the same nucleus of facts as her 2023 private nuisance claim against Apple: alleged pollution from the Facility, elevated and spiking VOC levels in her apartment, and resulting adverse health effects. (*Compare* Tarantino Decl. Ex. A "Employment Complaint" ¶¶ 204-05, 1053-57 *with* TAC ¶¶ 14, 30-31, 154-55, 612-15.) Though Plaintiff assigns a new label to her cause of action, it could have been raised previously.

Judge Chen dismissed the private nuisance claim and, on June 24, 2026, entered final judgment in favor of Apple. (*See* Tarantino Decl. Ex. F.) Res judicata precludes Plaintiff's public

nuisance claim, and she cannot re-litigate it here.

**Statute of Limitations**: Plaintiff's public nuisance claim is time-barred because she left the vicinity of the Facility outside the three-year statute of limitations period. *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1216 (1996) ("there is a three-year statute of limitations in a nuisance action brought by a private party"). The limitations period starts at different times for permanent and continuing nuisances, but Plaintiff's departure in 2020 renders her claim untimely under either theory.

For a permanent nuisance, which is a "permanent injury to property," the statute begins to run when the nuisance is created and "bars all claims after its passage." *Id.* at 1216-17. Judge Chen found that Plaintiff knew or reasonably should have known of her nuisance claim more than two years before she filed her prior lawsuit on September 7, 2023. (*See* Tarantino Decl. Ex. C at 27; *id.* Ex. B at 16-18.)

The limitations period for public nuisance is three years—one year longer than for private nuisance. It therefore follows that Plaintiff's public nuisance claim, initially filed on September 2, 2025, more than one year *after* her private nuisance claim, is also time-barred.

Even if framed as a continuing public nuisance, the three-year statute of limitations also bars her claim. Plaintiff does not allege that she sustained <u>any</u> injuries from the alleged nuisance within the preceding three-year period, let alone the type of special injury that is required to bring a public nuisance. *See* Cal. Civ. Code § 3493. "[A] continuing nuisance is considered to be a series of successive injuries for which the plaintiff must bring successive actions." *Beck*, 44 Cal. App. 4th at 1216. "[E]ach repetition of a continuing nuisance is considered a separate wrong which commences a new period in which to bring an action for recovery *based upon the new injury*." *Id.* at 1217 (emphasis added). Though Plaintiff now alleges that she revisits the area surrounding the Facility, that does not save her claim, as she fails to allege any special injury distinct from the general public arising from those recent visits. *See Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 948 (C.D. Cal. 2021) (dismissing public nuisance claim when plaintiff alleged harm indistinguishable from the general public). Her only alleged injuries are adverse health effects before she moved away in 2020. Plaintiff's public nuisance claim is therefore time-barred and

should be dismissed.

**Permitted Discharge**: Even if the statute of limitations did not bar Plaintiff's claim, Plaintiff cannot state a claim for public nuisance because the permitted discharges by definition cannot constitute a nuisance: "[n]othing . . . done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482. This includes permitted activity. *See, e.g.*, *Eisentecken v. Tahoe Reg'l Plan. Agency*, No. 2:20-cv-02349-DJC-CKD, 2025 WL 1531678, at *10 (E.D. Cal. May 28, 2025) (granting dismissal where defendant "was acting under the authority of a governmental permit, [therefore] his conduct cannot form the basis for a [public] nuisance claim").

Plaintiff concedes that Apple obtained a valid air permit from the local air-quality management district on May 1, 2023, limiting annual emissions of arsine, phosphine, silane, and chlorine. (TAC ¶ 283.) She does not allege that Apple exceeded any of these limits or made unpermitted discharges. (*See generally* TAC.) Because Apple operated under a valid permit, section 3482 bars Plaintiff's nuisance theory as to those permitted air emissions as a matter of law.

Nor can Plaintiff be awarded the injunctive relief she seeks because she alleges no ongoing nuisance. At most, she alleges that pre-2023 activity created a nuisance. (*Id.* ¶¶ 283, 619-33 (listing various ways Apple "created" a public nuisance and concluding that the alleged harms are "continuous" with no factual support).) But a past nuisance cannot be enjoined. *People ex rel. Bradford v. Goddard*, 47 Cal. App. 730, 740 (1920) (reversing a trial verdict where public nuisance had been abated, holding "the action should be dismissed, for the very obvious reason that there is then nothing existing against or upon which the injunctive process of the court can or will operate"); *see also Mallon v. City of Long Beach*, 164 Cal. App. 2d 178, 190 (1958) (refusing to grant an injunction when there was no probability of continued harm); *Phipps v. Saddleback Valley Unified Sch. Dist.*, 204 Cal. App. 3d 1110, 1117 (1988) (distinguishing *Mallon* and affirming a permanent injunction after trial because the defendant did not decide to abandon its policy voluntarily). This forecloses the remedy Plaintiff seeks here, precluding her from stating a claim. *Holmes High Rustler, LLC v. Gomez*, No. 15-cv-02086-JSC, 2015 WL 4999737, at *7 (N.D. Cal. Aug. 21, 2015).

Plaintiff refers to local building infrastructure ordinances necessary for operations involving

certain gases. (TAC ¶¶ 628-30.) Plaintiff vaguely concludes that "Apple violated these ordinances," but fails to allege what these ordinances require, much less how Apple violated them. (*See id.* ¶ 630.) In any event, she lacks the authority to enforce the ordinances she cites. Only the City's enforcement officer may do so. *See* Santa Clara City Code § 8.30.050 (2024). The cited ordinances cannot form the basis for her public nuisance claim and dismissal is appropriate.

**8. Plaintiff vaguely alleges violations of a laundry list of inapplicable, unenforceable, or duplicative statutes and regulations[3]**

In addition to the defects identified above, Plaintiff's allegations that Apple violated particular statutory provisions and regulations each fail for one of the several independent reasons set forth below.

**a. Statutory provisions that only direct or allow EPA or state action**

Plaintiff includes a long list of statutory provisions that direct EPA, states, or other government entities to take action, such as promulgating regulations. Because Defendants are not government entities, Defendants cannot violate these provisions and these claims must be dismissed.

| Provision | Count(s) | Scope |
|---|---|---|
| **CAA – 42 U.S.C. § 7410** | 2, 12 | Requires states to develop State Implementation Plans (SIPs) with certain features. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CAA – 42 U.S.C. § 7412** | 2, 10, 11 | Directs EPA to create a list of hazardous air pollutants (HAPs) and categories of sources of HAPs and promulgate emissions standards for each source category. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CAA – 42 U.S.C. § 7502** | 10 | Sets out standards for classification and attainment dates for nonattainment areas, directs states to submit nonattainment plans and sets out what such plans must include, requires revisions of such plans in the event of inadequacies, and directs EPA to adjust regulations in the event of relaxation of NAAQS. This provision is unenforceable by a private citizen and cannot |

[3] Plaintiff conceded that her FAC contained allegations that Apple violated clearly inapplicable statutory provisions and regulations. (*See* Dkt. No. 74 at 20-21.) Rather than remove these allegations, as the Court suggested at the hearing (*see* Dkt. No. 101 at 26:25-27:18 (suggesting that Plaintiff consider whether to remove or modify claims that defendants correctly point out are not valid and remove extraneous citations)), Plaintiff has left nearly all of these allegations in the TAC with little to no modification.

| | | |
|---|---|---|
| | | be violated by a private entity. |
| **RCRA – 42 U.S.C. § 6973** | 1 | Authorizes EPA to sue persons who contribute to imminent and substantial endangerment to health or the environment. This provision is unenforceable by a private citizen. Only EPA can bring a suit under this section. |
| **RCRA – 42 U.S.C. § 6922** | 4 | Directs EPA to establish standards for hazardous waste generators and outlines manifest certification requirements. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **RCRA – 42 U.S.C. § 6923** | 5, 7 | Directs EPA to establish standards for transporters of hazardous waste. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **RCRA – 42 U.S.C. § 6924** | 8 | Directs EPA to establish standards for owners and operators of hazardous waste treatment, storage, and disposal facilities. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **RCRA – 42 U.S.C. § 6925** | 6 | Directs EPA to promulgate regulations requiring owners or operators of new or existing hazardous waste treatment, storage, or disposal facilities to have a permit, sets out requirements for permit applications, permit issuance, permit revocation, and defines certain special categories of facilities. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CWA – 33 U.S.C. § 1312** | 20 | Directs EPA to establish further effluent limitations where application of other standards would not meet water quality goals. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CWA – 33 U.S.C. § 1316** | 3, 19, 20 | Directs EPA to promulgate regulations setting out new source performance standards for certain categories of sources and makes violating those standards illegal. This provision allows states, not private citizens, to enforce the standards. |
| **CWA – 33 U.S.C. § 1317** | 3, 20 | Directs EPA to establish a list of toxic pollutants and set effluent limitations for those pollutants, making violations of those standards illegal. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CWA – 33 U.S.C. § 1317(b)** | 3 | Authorizes EPA to commence civil actions for relief to enforce the CWA. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **CWA – 33 U.S.C. § 1342** | 3, 19, 20, 23 | Sets out the NPDES permit program and authorizes EPA and states to issue permits. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2605** | 28-32 | Directs EPA to promulgate regulations concerning chemicals, the manufacturing, processing, distribution in commerce, use, or disposal (or any combination) thereof presents an unreasonable risk of injury to health or the environment. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |

| | | |
|---|---|---|
| **TSCA – 15 U.S.C. § 2606** | 32 | Authorizes EPA to commence civil actions concerning the use of imminently hazardous chemicals. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2682** | 31 | Directs EPA to promulgate regulations on lead-based paint. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2683** | 31 | Directs EPA to promulgate regulations identifying lead-based paint hazards, lead-contaminated dust, and lead-contaminated soil. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2684** | 31 | Authorizes states to administer and enforce regulations and requirements established under §§ 2682 or 2686. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2685** | 31 | Directs EPA to conduct a program to promote safe, effective, and affordable monitoring, detection, and abatement of lead-based paint and other lead exposure hazards. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2686** | 31 | Directs EPA to publish a lead hazard information pamphlet providing certain information. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |
| **TSCA – 15 U.S.C. § 2688** | 31 | Requires federal government to comply with all requirements concerning lead-based paint, lead-based paint activities, and lead-based paint hazards in the same manner, and to the same extent as any nongovernmental entity. This provision is unenforceable by a private citizen and cannot be violated by a private entity. |

#### b. Statutory provisions and regulations that cannot be enforced in a citizen suit

Plaintiff attempts to plead claims under statutory provisions that cannot be enforced in a citizen suit because they either authorize criminal penalties or are exempted from citizen enforcement. Plaintiff lacks authority to pursue these claims, and they should be dismissed.

| Provision | Count(s) | Scope |
|---|---|---|
| **CAA – 42 U.S.C. § 7413(c)** | 2, 9, 11, 13 | Authorizes imposition of criminal penalties for certain conduct. Citizen-plaintiffs have no authority to seek criminal penalties. |
| **RCRA – 42 U.S.C. § 6928(d)-(e) and 40 C.F.R. §§ 260-265** | 1, 4, 5, 7, 8 | Authorize imposition of criminal penalties for certain conduct. Citizen-plaintiffs have no authority to seek criminal penalties. |

| | | |
|---|---|---|
| **CWA – 33 U.S.C. § 1319(c)** | 3, 23 | Authorizes criminal penalties for certain knowing violations of the CWA where the defendant knowingly places another person in imminent danger of death or serious bodily injury. Citizen-plaintiffs have no authority to seek criminal penalties. |
| **TSCA – 15 U.S.C. § 2615(b)** | 28-32 | Authorizes criminal penalties for knowing and willful violations of TSCA. Citizen-plaintiffs have no authority to seek criminal penalties. |
| **EPCRA – 42 U.S.C. § 11002** | 25 | Requires certain facilities handling substances designated as "extremely hazardous" to notify their state's emergency response commission that it is subject to emergency planning. Alleged violations of 42 U.S.C. § 11002 may only be prosecuted by the state or local government. 42 U.S.C. § 11046(2)(A)(i). |

**c. Statutory provisions and regulations that do not identify a compliance standard**

Plaintiff alleges that Apple has violated a variety of statutes and regulations that do not set out compliance standards, instead setting out definitions, elements of regulations, or descriptions of the regulated activity. Because these do not set out a standard by which compliance can be measured, Plaintiff's claims under these provisions and regulations should be dismissed.

| Provision | Count(s) | Scope |
|---|---|---|
| **CAA – 42 U.S.C. § 7661(1) & (2)** | 9-10 | Defines "affected source" and "major source." |
| **CAA – 42 U.S.C. § 7661a(a)** | 9-10 | Makes it unlawful to violate the terms of a permit issued under a CAA permit program. |
| **CWA – 33 U.S.C. § 1317(d)** | 20 | Makes it unlawful to violate any effluent standard or prohibition or pretreatment standard promulgated under the CWA. |
| **TSCA – 15 U.S.C. § 2681** | 31 | Sets out definitions for the subchapter of TSCA concerning lead and lead-based paint. |
| **TSCA – 15 U.S.C. § 2687** | 31 | Requires that regulations pursuant to this subchapter shall include recordkeeping and reporting requirements. |
| **TSCA – 40 C.F.R. § 751.301** | 30 | "General" section of the regulations on TCE. |
| **TSCA – 40 C.F.R. pt. 713** | 29 | Sets out reporting requirements for the TSCA inventory of mercury. |
| **TSCA – 40 C.F.R. pt. 751** | 28 | General regulations concerning regulation of substances under Section 6 of TSCA. |

### d. Regulations that do not apply to Defendants

Plaintiff cites regulations that only apply to certain types of entities or structures that do not include Defendants or the Facility. Because Defendants are not covered by these regulations, Plaintiff's claims based on these rules should be dismissed.

| Provision | Count(s) | Scope |
|---|---|---|
| **RCRA – 40 C.F.R. pt. 264** | 6, 8 | Regulations concerning standards for owners and operators of hazardous waste treatment, storage, and disposal facilities. Defendants are not owners or operators of a hazardous waste treatment, storage, or disposal facility. |
| **TSCA – 40 C.F.R. pt. 745** | 31 | Regulations concerning "Lead-Based Paint Poisoning Prevention in Certain Residential Structures." The Facility is not a residential structure. |

### e. Statutory provisions and regulations for which Plaintiff has failed to allege facts to support a claim

Plaintiff has failed to make any specific, non-conclusory allegations concerning the following statutory provisions and regulations. In each instance, Plaintiff has failed to plead facts showing that Defendants could be liable for a violation. These claims should be dismissed.

| Provision | Count(s) | Scope |
|---|---|---|
| **CAA – 42 U.S.C. § 7411** | 2, 13 | Establishes the new source performance standards (NSPS) program, directs EPA to develop categories of sources and corresponding performance standards, and makes it unlawful to operate a new source in violation of the relevant standards. No non-conclusory allegations that the Facility is a new source or has violated a particular standard. |
| **CAA – 40 C.F.R. pt. 63 subpt. BBBBB** | 11 | Sets out emissions standards for HAPs for semiconductor manufacturing. No non-conclusory allegations that Defendants violated any specific standard outlined. |
| **RCRA – 40 C.F.R. pt. 262** | 4 | No ongoing violation identified; EPA found Apple returned to compliance in 2024. (*See* TAC ¶¶ 315-16; Dkt. No. 119-4.) |
| **RCRA – 42 U.S.C. § 6972(a)(1)(B)** | 1 | Authorizes citizen suits "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." No non-conclusory allegations that the Facility's operations present imminent and substantial endangerment after EPA settlement. |
| **CWA – 33 U.S.C. § 1311** | 18, 23 | Establishes that discharges of pollutants except in compliance with §§ 1312, 1316, 1328, and 1342 are illegal, and imposes performance-based standards for point sources. The Facility is permitted and Plaintiff does not identify violation of any |

| | | |
|---|---|---|
| | | specific effluent limitation. |
| **TSCA – 15 U.S.C. § 2614** | 28-32 | Makes it illegal to use a chemical, substance, or mixture that the user knew or had reason to know was manufactured, processed, or distributed in commerce in violation of 15 U.S.C. §§ 2604 or 2605, any rules or orders issued under §§ 2604 or 2605, or any order issued in an action brought under §§ 2604 or 2606. No non-conclusory allegations that Defendants have used chemicals that were illegally manufactured, processed, or distributed. |
| **TSCA – 15 U.S.C. § 2604** | 28-31 | Prohibits manufacturing of new chemical substances or manufacturing or processing a chemical for a significant new use without providing notice to EPA. No non-conclusory allegations that Defendants manufactured any new chemicals or used chemicals for a significant new use. |
| **TSCA – 15 U.S.C. § 2689** | 32 | Makes it unlawful for any person to fail or refuse to comply with a provision of the lead subchapter or any regulations issued under it. No non-conclusory allegations that Defendants used lead in a way that violates any specific regulation. |
| **TSCA – 15 U.S.C. § 2607(b)(10)(D)** | 29 | Directs companies to report information on mercury manufacturing and processing. No non-conclusory allegations that Defendants failed to report their mercury usage. |

Plaintiff concedes she already brought her anti-retaliation claims under RCRA. (*See* TAC ¶ 17.) Those claims are precluded. (*Supra* § IV.C.7.) The Court should dismiss them.

## V. CONCLUSION

For the foregoing reasons, and for the additional reasons set forth in the Landlord Defendants' Supplemental Brief filed concurrently herewith, the Court should dismiss Plaintiff's Third Amended Complaint in its entirety with prejudice.

Dated: September 17, 2026 MORRISON & FOERSTER LLP

By: */s/ William F. Tarantino*
William F. Tarantino

Attorneys for Defendants
APPLE INC., KALIL JENAB, JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, JENAB FAMILY TRUST, JULIA LINDSEY, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and KATHLEEN WOODRUFF, as Trustee of the Woodruff Kathleen Trust