# Exhibit B

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M GJOVIK,
Plaintiff,
v.
APPLE INC.,
Defendant.

Case No. 23-cv-04597-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND DENYING PLAINTIFF'S MOTION TO AMEND**

Docket Nos. 145 and 155

Plaintiff Ashley Gjovik, proceeding pro se,[1] is a former employee of Defendant Apple, Inc. She started to work for Apple in February 2015 and was ultimately terminated in September 2021. About two years after she was fired, she initiated this lawsuit. In the operative fifth amended complaint ("5AC"), Ms. Gjovik asserts seven different claims against Apple, all predicated on state law. For the most part, the claims fall into two basic categories: (1) Apple engaged in environmentally unsafe conduct that harmed Ms. Gjovik and (2) Apple retaliated against Ms. Gjovik – including by terminating her from employment – because she complained about certain company conduct, including but not limited to environmentally unsafe conduct.

Now pending before the Court is Apple's motion to dismiss portions of the 5AC. Having considered the parties' briefs and accompanying submissions, as well as the oral argument presented at the hearing on February 21, 2025,[2] the Court hereby **GRANTS** in part and **DENIES**

[1] Ms. Gjovik appears to have a J.D. from Santa Clara University.

[2] After the hearing was held, a declaration was submitted by a third party, Cher Scarlett. *See* Docket No. 186 (Scarlett Decl.). The Court does not consider the declaration because pending before it is a 12(b)(6) motion.

in part the motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

The 5AC is largely consistent with the prior pleadings. That is, as before, the main categories of misconduct by Apple as alleged in the 5AC are as follows:

> (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.
>
> (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.
>
> (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.
>
> (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Docket No. 73 (Order at 2).

Based on, *inter alia*, these factual allegations, Ms. Gjovik asserts the following causes of action in the 5AC:

(1) Wrongful termination in violation of public policy.

(2) Violation of the California Whistleblower Act. *See, e.g.*, Cal. Lab. Code § 1102.5(b) (providing that an employer "shall not retaliate against an employee for disclosing information . . . to [*inter alia*] a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation").

(3) Violation of California Labor Code § 6310. *See, e.g.*, *id.* § 6310(a) (providing that "[n]o person shall discharge or in any manner discriminate against any



United States District Court
Northern District of California

employee because the employee has [*e.g.*] [m]ade any oral or written complaint to the [Division of Occupational Safety and Health] [or] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health").

(4) Violation of California Labor Code § 98.6. *See id.* § 98.6(a) (providing that "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . under or relating to their rights that are under the jurisdiction of the Labor Commissioner . . . or because of the exercise by the employee . . . on behalf of themselves or others of any rights afforded them").

(5) Creation and maintenance of a private nuisance at the ARIA factory.

(6) Intentional infliction of emotional distress – fear of cancer.

(7) Intentional infliction of emotional distress – "traditional."

Apple has challenged Counts 5-7 above (*i.e.*, the non-retaliation claims) in their entirety. It also has moved to dismiss part of two retaliation claims – *i.e.*, the § 1102.5 claim (Count 2) and the § 98.6 claim (Count 4). Apple has not moved to dismiss in whole or in part the other two retaliation claims (Counts 1 and 3, respectively, termination in violation of public policy and violation of § 6310).

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must .



United States District Court
Northern District of California

. . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B. <u>Untimely and Oversized Opposition</u>

As an initial matter, the Court takes note that Ms. Gjovik initially filed an opposition at Docket No. 149 that was 26 pages in length (*i.e.*, only one page over the 25-page limit). However, approximately seven hours later, she filed a corrected version of the brief at Docket No. 150; that corrected opposition is 36 pages in length. She claims that this brief is her "Final 2.0" brief "[r]evised with legal citations & missing sections." Docket No. 150 (Opp'n). The corrected opposition was not timely filed (about seven hours late).

Because Ms. Gjovik filed an untimely and oversized opposition, the Court could well strike her brief – notwithstanding her pro se status. *See, e.g.*, *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996) (holding that district court did not abuse its discretion in striking portions of a brief that violated page limits). Taking this course of action would not be unwarranted given that Ms. Gjovik has, in the past, on more than one occasion failed to comply with deadlines and/or page limits.

Although the Court could fairly take that course of action, it shall not at this time; instead, it shall, in the interest of justice, consider the corrected opposition and address Apple's motion to dismiss on the merits. Ms. Gjovik is forewarned, however, that, in the future, she must comply with all deadlines, page limits, and/or other rules or orders, just as any litigant before this Court

must. The Court has already given Ms. Gjovik substantial leeway in the past and will no longer excuse her compliance with the rules.

C. Environmental Safety Claims

Ms. Gjovik has two environmental safety claims: (1) private nuisance (Count 5) and (2) intentional infliction of emotional distress ("IIED") based on "fear of cancer" (Count 6). Both claims are based on an Apple semiconductor fabrication factory (located at 3250 Scott Blvd.) allegedly releasing toxic chemicals into the environment which affected Ms. Gjovik because she lived in an apartment nearby (located at 3255 Scott Blvd.). The factory is also known as the ARIA factory.

In its most recent order, the Court held that the environmental safety claims were time barred based on the face of the then-operative pleading, but it gave Ms. Gjovik leave to amend to try to plead around the statute-of-limitations bar (specifically, through the delayed discovery rule). The Court also held that, with respect to the IIED claim, Ms. Gjovik failed to state a claim for relief; however, it gave her leave to amend. *See* Docket No. 112 (Order at 31) (indicating that Ms. Gjovik would have to "allege that Apple directed its conduct at her specifically or with knowledge of her presence specifically, and that its conduct was calculated to cause her severe emotional distress").

1. Statute of Limitations

In its motion to dismiss, Apple renews its argument that the environmental safety claims are time barred. Although the statute of limitations is an affirmative defense, it can be raised in a 12(b)(6) motion if it is apparent from the face of the complaint. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

As alleged in the 5AC, Ms. Gjovik sustained injury as a result of the ARIA factory while she lived in the nearby apartment from February 2020 through October 2020. *See* 5AC ¶ 12. Ms. Gjovik, however, did not file this lawsuit until September 2023, *i.e.*, some three years later. This is, on its face, problematic given that Ms. Gjovik's claims for nuisance and IIED have a two-year statute of limitations. *See* Cal. Code Civ. Proc. § 340.8(a) ("In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of

United States District Court
Northern District of California

the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later.").

Ms. Gjovik argues, however, that she is not time barred under § 340.8 because she did not become aware of, and reasonably should not have become aware of, the cause of her injury – *i.e.*, the ARIA factory – until February 2023. *See* 5AC ¶ 269 (asserting that the statute of limitations "should be tolled until February 2023, the date when Plaintiff first discovered the nature of Apple's hazardous activities at 3250 Scott"). As alleged in the 5AC, February 2023 was when Ms. Gjovik discovered that the Apple factory had "permits for semiconductor fabrication equipment" for the ARIA factory. 5AC ¶ 259. Ms. Gjovik obtained these documents "after filing multiple Public Records Act requests about various Apple buildings." 5AC ¶ 259; *see also* RJN, Ex. 2 (tweet from Ms. Gjovik, dated 2/21/2023) (stating that "I just received Public Records results on the 3250 building permits & its [sic] a doozy[;] Apple registered the building in 2015 for haz waste storage & generation").

Ms. Gjovik does not dispute that, well before February 2023, she knew Apple had a factory close to her apartment. In fact, she admits that she knew the factory "was registered as a hazardous waste generator," 5AC ¶ 262, and that she voiced concern about the factory to Apple's Environmental Health & Safety and Legal Departments in 2020 and 2021. *See* 5AC ¶ 265.[3] However, Ms. Gjovik maintains that, until she knew *specifically* that semiconductor fabrication was occurring at the factory, she did not know and should not have reasonably known that her injuries were caused by the factory as opposed to a different cause. *See, e.g.*, 5AC ¶¶ 259, 261 (alleging that "knowledge of the semiconductor operations at the facility" was critical to Ms. Gjovik "connect[ing] Apple's hazardous manufacturing activities at 3250 Scott to her 2020

---

[3] *See also* 5AC ¶ 25 (indicating that, in or about December 2020, "Plaintiff . . . notified Apple EH&S and environmental legal about what occurred to her near 3250 Scott"); 5AC ¶ 36 (alleging that, in or about September 2020, "[t]he plaintiff notified several Apple executives of her findings and activities" with respect to air monitor testing in her apartment next to the Apple factory).



United States District Court
Northern District of California

illness”); 5AC ¶ 268 (alleging that, “[u]pon learning of the semiconductor fabrication at 3250 Scott, Plaintiff immediately identified the facility’s toxic emissions as the plausible cause of her severe health problems”). According to Ms. Gjovik, the fact that she knew the factory was a hazardous waste generator is not important because (1) Apple did not warn her that the factory posed a danger after she raised concerns about it to EH&S and Legal, *see* 5AC ¶ 265; (2) “[r]ecords on the EPA’s Toxics Release Inventory (TRI) and other federal and state databases showed no significant toxic chemical releases from 3250 Scott,” 5AC ¶ 261; and (3) “[t]he region’s history of industrial activity and the current presence of research and development facilities that generate hazardous waste did not raise any alarms.” 5AC ¶ 262. Ms. Gjovik also claims that Apple engaged in action that concealed semiconductor fabrication was occurring at the factory. *See, e.g.*, 5AC ¶ 263 (alleging that Apple pressured government agencies such as “the fire department and EPA to avoid documenting or discussing its activities”); 5AC ¶ 267 (alleging that Apple used “misleading permits and improper classifications that obscured the facility’s true nature”). Finally, she emphasizes that government agencies “investigated the area and found no records that would indicate a direct link to her health issues,” 5AC ¶ 263 – *i.e.*, if the government found no problem, she could not have reasonably been expected to find one either.

In response, Apple argues that Ms. Gjovik’s attempt to rely on the delayed discovery rule fails because, at bottom, the information she discovered in February 2023 – in particular, the permits for the ARIA factory showing that it engaged in semiconductor fabrication – was publicly available at the time she was injured in 2020, and Ms. Gjovik has failed to show why she could not have found that publicly available information until February 2023.

2. <u>Delayed Discovery Rule</u>

Before delving into the merits of the parties’ dispute, the Court first addresses Ms. Gjovik’s contention that the Court is applying the wrong discovery rule. According to Ms. Gjovik, although she has asserted two state law claims, federal law on delayed discovery applies. Ms. Gjovik further argues that, under federal law on delayed discovery, the appropriate standard is not what *she* knew or should have known but rather what a *reasonable person* in her position knew or should have known (*i.e.*, an objective inquiry, not a subjective one).



United States District Court
Northern District of California

Ms. Gjovik is correct that federal law on delayed discovery applies. In *O'Connor v. Boeing North America*, 311 F.3d 1139 (9th Cir. 2002), the plaintiffs sued two companies alleging that substances released from their facilities caused the plaintiffs to suffer illnesses. The plaintiffs brought tort claims under California law. California law had a limitations period of one year. The issue was whether the delayed discovery rule allowed the plaintiffs to get around the time bar.

The Ninth Circuit held that a CERCLA provision, 42 U.S.C. § 9658, applied to the claims even though the plaintiffs were asserting only state law claims "without an accompanying CERCLA action." *Id.* at 1149. Section 9658 provided:

> In the case of any action brought *under State law for personal injury* . . . which [is] caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

*Id.* at 1146 (quoting § 9658(a)(1); emphasis added). Thus, in the case under consideration, "§ 9658 preempts California's commencement date if that date is earlier than the federally required commencement date."[4] *Id.*; *see also id.* at 1143-44 (noting that § 9658 "retains the state statute of limitations[] and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations[;] [t]his federal standard trumps a less generous state rule that would start the limitations period earlier").

The Ninth Circuit went on to evaluate whether the accrual date was different under state and federal law. "Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered his claim," *i.e.*, "through investigation of sources open to her." *Id.* at 1147. But under California law, "a plaintiff discovers a claim when the plaintiff 'suspects or should suspect that her injury was caused by wrongdoing.'" *Id.* In contrast, federal law "requires more than suspicion

[4] In its reply brief, Apple argues that *O'Connor* is not applicable because Ms. Gjovik's "claim is for nuisance and is not brought under CERCLA." Reply at 4 n.4. However, that argument does not square with what the Ninth Circuit held in *O'Connor*.



United States District Court
Northern District of California

alone"; discovery turns on when the plaintiff "knows or reasonably should have known of that cause." *Id.* at 1148. Because federal law on delayed discovery was more generous to the plaintiff, the Ninth Circuit held that federal law, and not state law, applied.

Based on *O'Connor*, Ms. Gjovik is correct that the Court should not have relied on state law for delayed discovery in its prior order. *See, e.g.*, Docket No. 112 (Order at 27) (noting that, under California's delayed discovery rule, "'a cause of action accrues . . . when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action[;] [i]n that case, the statute of limitations . . . will be tolled until such time as a reasonable investigation would have revealed its factual basis'"). To be clear, though, neither party raised § 9658 at the time of the prior hearing.

Ms. Gjovik also argues that, under federal law on delayed discovery, the issue is "not whether Plaintiff herself should have discovered the source of the emissions but rather whether a reasonable person in Plaintiff's position would have been able to identify the source." Opp'n at13; *see also* Opp'n at 13 ("Plaintiff's claims in this case are not simply based on subjective awareness; rather, they are grounded in the objective standard of a reasonable person."). Here, Ms. Gjovik is not entirely correct. As noted above, the delayed discovery rule under federal law turns on when the plaintiff "knows or reasonably should have known" the existence and cause of her injury, *O'Connor*, 311 F.3d at 1148 (emphasis added). In *O'Connor*, the Ninth Circuit stated that

> [a] two-part analysis determines whether Plaintiffs reasonably should have known of their claim. . . . First, we consider whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury. Second, if the plaintiff was on inquiry notice, "we must next determine whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry.

*O'Connor*, 311 F.3d at 1150. While the first inquiry evaluates whether a reasonable person in a plaintiff's situation would have been expected to inquire about the cause of his or her injury, the second inquiry does not use the same benchmark. "The second prong of the test for application of



United States District Court
Northern District of California

United States District Court
Northern District of California

the discovery rule is whether a reasonable inquiry would have put [a] Plaintiff[] on notice of their claim." *Id.* at 1155.

3. "Reasonably Should Have Known"

Because Ms. Gjovik has claimed that she did not *actually know* the cause of her injuries until February 2023, the critical question in the instant case is when she *reasonably should have known* of that cause. As noted above, *O'Connor* establishes a two-part analysis.

In the instant case, Ms. Gjovik does not make any argument that, at the first prong, a reasonable person in her situation would not have been expected to inquire about the cause of her injuries. This is likely because Ms. Gjovik *did*, at or about the time she was suffering her injuries, start to make inquiries about the cause thereof. *Cf. Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) (noting that plaintiff suspected copyright infringement and this suspicion "placed upon [him] a duty to investigate further into possible infringements of his copyright"); *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1048 n.5 (9th Cir. 2020) (stating that *O'Connor* did not discuss *Wood*, which "provides that suspicion of infringement triggers a duty to investigate"). Thus, the question here is whether, at the second prong, "a reasonable inquiry would have put [Ms. Gjovik] on notice of [her] claim." *Id.* at 1155; *see also id.* at 1155-56 (noting that this step "focuses on whether, if the Plaintiffs had inquired about the cause of their illnesses, the result of that inquiry would have provided Plaintiffs with knowledge of the connection between the injury and its cause"). This inquiry *does* bear similarity to the California delayed discovery rule. *See* Docket No. 112 (Order at 27) (noting that, under California's delayed discovery rule, a plaintiff must "'plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action[;] [i]n that case, the statute of limitations . . . will be tolled until such time as a reasonable investigation would have revealed its factual basis'").

4. Permits and Other Publicly Available Documents

As to whether a reasonable inquiry would have put Ms. Gjovik on notice of her claims, the Court must bear in mind what Ms. Gjovik has already alleged in her 5AC. According to Ms. Gjovik, what actually put her on notice was the discovery (in February 2023) of permits for the

Apple factory which showed it was engaged in semiconductor fabrication. Thus, Apple makes a fair contention that, if a reasonable inquiry would have led Ms. Gjovik to the permits *before* February 2023, then her claim she could not have reasonably known about the semiconductor fabrication until February 2023 is not tenable.

Apple has asked the Court to take judicial notice of the fact that the permits for the ARIA factory are publicly available on the website for the City of Santa Clara (https://aca-prod.accela.com/santaclara/Default.aspx (last visited 1/28/2025)).

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | 01/02/2018 | BLD2018-49344 | Building Permit | RENEW APP 02/01/19 ALT TOOL INSTALL: Phase 23- Demolition and installation of tool install(SEM;AFM, and RTA). Oven, bonder, and vector tester. "ARIA" | 3250 SCOTT BL, SANTA CLARA CA 95054 | Finaled |
| ☐ | 12/05/2017 | BLD2017-49104 | Building Permit | RENEW 10/9/2018 PHASE 20 Oerlikon Cluster Sputting tool in Fab | 3250 SCOTT BL, SANTA CLARA CA 95054 | Finaled |
| ☐ | 12/05/2017 | BLD2017-49103 | Building Permit | PHASE 19 HF Vapor tool hook up Installation tool wiht 2 chambers, electrical cabinet, Vacuum pumps, Exhaust ductwork in a Fab clean room | 3250 SCOTT BL, SANTA CLARA CA 95054 | Finaled |

*See* RJN, Ex. 4B (ECF Page 23) (website results search, showing permits from December 2017 that refer to semiconductor fabrication). Notably, these are the same permits that Ms. Gjovik tweeted about in February 2023 when she announced her discovery of the cause of her injuries. *See* RJN, Ex. 1 (ECF Pages 2-3) (tweet, dated 2/21/2023). Apple has also asked the Court to take judicial notice of "historical pages that show the publicly available City of Santa Clara permit website as it existed *back in 2020*." RJN at 6 (noting that "Exhibits 5A-5B show what the City of Santa Clara's permit center website looked like back in 2020, while Exhibits 4A-4G show what the City's permit center website looks like presently"; the historical "'Smart Permit Search' link [was] preserved by the Internet Archive WayBack Machine on November 11, 2020").

In addition to the permits, Apple points out that Ms. Gjovik mentions in the 5AC a "2019 gas leak report" that "confirmed [her] belief that Apple's activities at the facility caused her illness." 5AC ¶ 260. That gas leak report "mentioned phosphine – an indicator of Apple's toxic emissions at 3250 Scott." 5AC ¶ 260. The gas leak report appears to have come from Santa Clara City Fire Department records for the factory. *See* 5AC ¶ 23 (alleging that the records included "chemical spill reports" from 2019-2022 and reflected "eight confirmed leaks/spills: leaks of phosphine and silane on June 1 2019; a phosphine leak on October 21 2019; a tetraethyl orthosilicate leak on July 17 2020; a significant phosphine leak on April 30 2021; a 5% fluorine

gas leak on April 18 2022, a hexafluorobutadiene leak on May 29 2022, and leaks of two unnamed toxic gases on September 20 2022 and December 21 2022"). Apple asks the Court to take judicial notice that the gas leak report is publicly available through the Santa Clara Fire Department website. *See* RJN, Ex. 3 (incident report, dated 6/2019) (ECF Page 15) ("E99 and H99 responded to a gas leak . . . . ERT was on scene . . . . The alarm was for .5 parts per billion that was going through their scrubbers. The chemicals were Silane and Phosephine [sic]."). The face of the document also indicates that the report was publicly accessible as of 2020; the document reflects an "**upload date**" of February 18, 2020. *See* RJN, Ex. 3 (ECF Page 11).

Finally, Apple notes that, in the 5AC, Ms. Gjovik refers to allegedly "difficult-to-find agency filings" – specifically, that Apple made with the Bay Area Air Quality Management Board. According to Ms. Gjovik, the filings reflect that, "in at least 2019-2021, 3250 Scott exhausted reportable amounts of mercury, arsenic, carbon monoxide, and formaldehyde into the ambient air around the factory." 5AC ¶ 25. Apple asks the Court to take judicial notice of the fact that this information was publicly available on the Bay Area Air Quality Management District ("BAAQMD" ) website – specifically, "the BAAQMD 2018 emissions data was publicly available online [back] in August 2021, and shows that 3250 Scott emitted the same substances Plaintiff alleges she saw in the 2019-2021 permits that allegedly put her on notice of potential exposure." Mot. at 13; *see also* RJN, Ex. 6A (BAAMQ website) (ECF Page 46) (reflecting that "Toxic Air Containment Inventory for 2018 – Sorted by County, by City, and by Facility Name" was **posted** on 8/24/2021); RJN, Ex. B (Toxic Air Containment Inventory for 2018) (ECF Pages 52, 170) (reflecting that 3250 Scott produced certain levels of "Diesel Engine Exhaust Particulate Matter" which includes, *e.g.*, formaldehyde, arsenic, and mercury).

In her opposition brief, Ms. Gjovik states she opposes Apple's request for judicial notice, but she did not provide any argument as to why. Nor did she file a brief in opposition to the request for judicial notice concurrently with her opposition to the motion to dismiss. Instead, Ms. Gjovik did not file an opposition to the request for judicial notice until some ten days after the brief was due. *See* Docket No. 154-2 (opposition to RJN). While the Court, in the interest of justice, is considering Ms. Gjovik's substantive opposition to the motion to dismiss in spite of its



United States District Court
Northern District of California

untimeliness, it will not consider Ms. Gjovik's untimely opposition to the request for judicial notice. There is absolutely no reason why this opposition could not have been filed at the time she filed her opposition to the motion to dismiss. Certainly, there is no justification for filing the opposition ten days late.

The Court, therefore, deems Ms. Gjovik's failure to timely oppose the request for judicial notice a waiver of any argument challenging the request for judicial notice. In any event, the Court independently finds that it may take judicial notice of the documents submitted by Apple (*i.e.*, the Santa Clara building permits, a Santa Clara Fire Department gas leak report, and a BAAMQD publication) pursuant to Federal Rule of Evidence 201(b).[5] *See, e.g., Organic Cannabis Found., LLC v. Comm'r*, 962 F.3d 1082, 1096 (9th Cir. 2020) (taking judicial notice that the U.S. Postal Service has reserved a certain zip code for P.O. Boxes in Santa Rosa because "judicial notice may be taken of official information that is posted on a government website and that is not subject to reasonable dispute") (internal quotation marks omitted); *United States SBA v. Bensal*, 853 F.3d 992, 1003 & n.3 (9th Cir. 2017) (indicating that a court may take judicial notice of information "'made publicly available by government entities'"; here, that information was from a government website that "[t]he SBA requires personal guarantees from individuals who own at least 20% of or hold significant management positions in any business seeking a direct loan or guarantee"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("tak[ing] into consideration the list of approved 403(b) vendors displayed publicly on the respective web sites of the South Kitsap and El Dorado School Districts" because "it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"); *United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of information in the Bureau of Prisons Inmate Locator Service because "[w]e take judicial notice of this information that is available to the public").

---

[5] *See* Fed. R. Evid. 201(b) (providing that a court may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Apple also argues that the Court could consider the documents based on the incorporation-by-reference doctrine.

Under the above authorities, the Court may *also* take judicial notice of the dates the documents were publicly available. As noted above, the face of the gas leak report indicates that the report was publicly accessible as of 2020: the document reflects an "upload date" of February 18, 2020. *See* RJN, Ex. 3 (ECF Page 11). Similarly, the BAAMQ website reflects that the "Toxic Air Containment Inventory for 2018 – Sorted by County, by City, and by Facility Name" was posted on August 24, 2021. *See* RJN, Ex. 6A (BAAMQ website) (ECF Page 46).

The closest call concerns the date that the building permits were available; this is because Apple is relying on the Internet Archive's WayBack Machine to show what the Santa Clara permit center website looked like back in 2020. "'The Wayback Machine is an online digital archive of web pages. It is run by the Internet Archive, a nonprofit library in San Francisco, California.'" *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021). District courts in this circuit have routinely taken judicial notice of content from the Wayback Machine. *See Parziale v. HP, Inc.*, No. 5:19-cv-05363-EJD, 2020 U.S. Dist. LEXIS 179738, at *8 (N.D. Cal. Sept. 29, 2020) (stating that "'[d]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule'"; at issue in the case was a "historical snapshot of the online store page for [a product], as archived on the Wayback Machine"). This Court has done so on a prior occasion and was affirmed. *See Steinberg v. Icelandic Provisions, Inc.*, No. 21-CV-05568-EMC, 2022 U.S. Dist. LEXIS 13478, at *4 n.1 (N.D. Cal. Jan. 25, 2022), (granting judicial notice of fact from website as it existed on a given date, preserved by the WayBack Machine), *aff'd*, No. 22-15287, 2023 U.S. App. LEXIS 14431 (9th Cir. June 9, 2023).

The Ninth Circuit does not appear to have explicitly weighed in on the issue of whether content from the Wayback Machine may be judicially noticed. However, the Federal Circuit has held that judicial notice is appropriate, at least for purposes of establishing when a web reference was first made available to the public. *See Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021) (noting that patent "[e]xaminers use The Wayback [M]achine as a source of information to determine when a Web reference was first made available to the public") (internal quotation marks omitted). The Federal Circuit stated as follows:

> District courts have taken judicial notice of the contents of webpages available through the Wayback Machine "as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Erickson v. Neb. Mach. Co.*, No. 15-CV-01147-JD, 2015 U.S. Dist. LEXIS 87417, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (comparing "copies of current versions" of websites with versions available on the Wayback Machine to determine "that the websites were substantively identical during the relevant timeframe"); *see also Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases); *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 603-04 & n.2 (C.D. Cal. 2017) (determining when websites began advertising a certification mark and collecting cases). We agree.

*Id.* at 1374-75.

On the other hand, the Fifth Circuit reached a different conclusion in *Weinhoffer v. David Shoring, Inc.*, 23 F.4th 579 (5th Cir. 2022). There, the court noted that, "[b]eyond the context of judicial notice, our sister circuits have allowed district courts to rely on archived webpages where someone with personal knowledge of the reliability of the archive service has been authenticated pursuant to Rule 901." *Id.* at 584 (citing Second, Seventh, and Third Circuit decision). It then stated:

> This reliance on personal knowledge indicates that exhibits derived from these sources are not inherently or self-evidently reliable in the same way as documents designated as self-authenticating by Rule 902.
>
> . . . .
>
> Our sister circuits' decisions that the Wayback Machine is not self-authenticating are persuasive in the context of judicial notice. In sum, the district court erred in taking judicial notice of the terms because a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned as required by Rule 201.

*Id.*

The Fifth Circuit, however, acknowledged that the Federal Circuit had reached a different result in *Valve*. But it distinguished *Valve* on the following basis:

> At issue [in *Valve*] was whether an exhibit was authenticated as identical to the document viewed by the patent examiner and whether the exhibit could be prior art. . . . [T]he Federal Circuit held that judicial notice of the Wayback Machine could be used to establish that an otherwise authenticated exhibit was publicly



United States District Court
Northern District of California

> accessible on the webpage's archive date as determined by a patent examiner who was "trained and required to determine publication dates." Here [in *Weinhoffer*], the Wayback Machine content containing the auction terms has not been otherwise authenticated.

*Id.*

Even if the Court were to follow the more restrictive view of the Fifth Circuit, the instant case is more analogous to *Valve* which the Fifth Circuit essentially deemed distinguishable. In the case at bar, the building permits themselves are judicially noticeable and thus they are "authenticated"; the limited issue is whether the Court may take judicial notice of information obtained from the Wayback Machine to show that the permits were available to the public on a particular date. That was essentially the issue in *Valve*, and the Federal Circuit held (and the Fifth Circuit did not disagree) that judicial notice was proper for that purpose.[6]

Accordingly, the Court takes judicial notice of not only the documents at issue but also the date the documents were publicly available.[7]

Because the Court takes judicial notice of the information requested by Apple, Ms. Gjovik's position that she could not have reasonably known that ARIA was a semiconductor fabrication factory until February 2023 lacks merit. Given that Ms. Gjovik started investigating causes of her injuries in at least September 2020, *see, e.g.*, 5AC ¶¶ 35-36 (alleging that, "[i]n September 2020, Plaintiff hired an industrial hygienist to evaluate the indoor air at her apartment" and that, the same month, she "set up more air monitors to observe the levels of volatile organic compounds in her apartment"), it is implausible that she could not have found the documents at issue – which were publicly available in 2020 and/or 2021 – until some two to three years later. This is especially true since Ms. Gjovik has actually alleged in the 5AC that she knew the ARIA factory "was registered as a hazardous waste generator." 5AC ¶ 262. Reasonable further inquiry would have led to the discovery of the nature of the ARIA manufacturing activities.

---

[6] The Court also notes that, given Santa Clara's permit center website was operational back in 2020, there is nothing to indicate that the building permits for the ARIA factory were not available at that time, including for the year 2017 which reflected semiconductor fabrication.

[7] Even if Wayback Machine information is not judicially noticeable, that affects only the building permits. The dates that the gas leak report and BAAMQ document were available is reflected on the face of the report and/or BAAMQ website.



United States District Court
Northern District of California

Ms. Gjovik's remaining arguments in her opposition brief are not compelling. For example:

(1) Ms. Gjovik asserts that Apple concealed information which made discovery of the semiconductor fabrication at the factory difficult. The problem with this argument is that, as noted above, the building permits – which she claims were the basis of her discovery of the semiconductor fabrication – were all publicly available before February 2023.

(2) According to Ms. Gjovik, it is reasonable that she did not discover the semiconductor fabrication until February 2023 because government agencies who were also investigating were never able to pinpoint the cause of her injuries. *See* SAC ¶ 263 ("Government agencies, including the EPA, had also investigated the area and found no records that would indicate a direct link to her health issues. They, too, could not identify a clear cause, which further obscured Plaintiff's ability to connect the dots before discovering Apple's involvement in February 2023."). The problem for Ms. Gjovik is that, once again, the building permits reflecting that there was semiconductor fabrication at the factory were publicly available. In addition, the allegations made in ¶ 263 are vague. While government agencies may have, as alleged, investigated Apple after Ms. Gjovik complained, that is not an allegation that the agencies were investigating what the cause of Ms. Gjovik's medical issues were. There are also no allegations that government agencies found, *e.g.*, illegal toxic air emissions and tried to locate the source of the emissions but were not able to do so. The agencies simply may have found no such emissions. Furthermore, as Apple points out in its reply brief, Ms. Gjovik "does not allege in her 5AC that any government agency has ***ever*** concluded that the 'source of the emissions' was 3250 Scott (despite having equal access to the same publicly available documents that Plaintiff relies upon to support her nuisance claim)." Reply at 4 (emphasis in original).

(3) Finally, Ms. Gjovik seems to suggest that she has a different theory to get around



United States District Court
Northern District of California

any limitations bar – *i.e.*, a continuing violations theory. *See* Opp'n at 17-18 (arguing that, because "both parties agree that Plaintiff's Tamney claims [wrongful termination in violation of public policy] are based on Defendant's unlawful retaliation . . . , Plaintiff's claims also satisfy the requirements for tolling due to continuing violations"). But this argument does not make sense. The issue here is whether the environmentally unsafe claims are time barred, not any retaliation claim. And to the extent Ms. Gjovik is trying to argue continuing violations for her nuisance and IIED claims, she fails to take into account that she moved out of the apartment at issue in October 2020. Thus, even if the ARIA factory continued to emit pollutants thereafter, she would not have standing to challenge such subsequent conduct. The Court's prior order already recognized these points. *See* Docket No. 112 (Order at 29 n.11) ("To the extent Ms. Gjovik asserts that there is no time-bar problem because the ARIA factory is a continuing nuisance, that argument lacks merit. Ms. Gjovik moved out of her apartment near the ARIA factory in October 2020."),

5. <u>Summary</u>

For the foregoing reasons, the Court holds that, based on judicially noticeable and other facts, Ms. Gjovik's claims for nuisance and IIED (fear of cancer) are time barred.[8] The Court dismisses with prejudice because it previously gave Ms. Gjovik an opportunity to address the time bar but she failed to do so on amendment.

D. <u>IIED Claim – "Traditional"</u>

In Count 7, Ms. Gjovik has a separate claim for IIED based on post-termination conduct by Apple. According to Ms. Gjovik, Apple engaged in various kinds of misconduct, including but not limited to the following:

- Mailing Ms. Gjovik her personal belongings but intentionally damaging the belongings and covering them in glass shards. *See* 5AC ¶ 296.

---

[8] Because the Court is dismissing the IIED claim based on the time bar, it need not address Apple's additional arguments challenging the claim.



United States District Court
Northern District of California

- Bugging and surveilling her. *See, e.g.*, 5AC ¶¶ 296, 298, 300 (alleging that, when Apple mailed her personal belongings, it put a "hidden listening device" into a statute; also alleging that Apple installed "some sort of electronic equipment" in her fake fig tree and hacked her network).
- Breaking into her residence on multiple occasions (both when she lived in California and when she lived in Massachusetts). *See* 5AC ¶¶ 299, 302-05.
- Harassing her online, including through social media – *e.g.*, "falsely accusing [her] of dishonesty and criminal conduct," making "disparaging remarks" about her, calling her names, and even "suggest[ing] that [she] should be executed." 5AC ¶¶ 308, 310, 312, 316, 320.

Apple moves to dismiss the claim, primarily for two reasons: (1) some of the conduct alleged by Ms. Gjovik is, as a matter of law, not outrageous, and (2) some of the conduct is not sufficiently tied to Apple and, even if it were (*e.g.*, misconduct was committed by an Apple employee), there is not a basis to hold Apple accountable (*e.g.*, no respondeat superior liability).

1. <u>Outrageousness</u>

Apple's arguments have merit. For example, simply claiming that Ms. Gjovik was dishonest is not outrageous as a matter of law. *See* Docket No. 112 (Order at 35) (stating that "[b]eing called, *e.g.*, a liar is, as a matter of law, not outrageous conduct sufficient to support a claim for IIED"). Similarly, the kind of insulting comments identified by Ms. Gjovik in much of the 5AC is not outrageous. *See* 5AC ¶ 316 (alleging that "Apple's agents have publicly [and] repeatedly called Plaintiff a liar, predator, bitch, cunt, toxic, attention-seeking, [etc.]"); *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (noting that "[l]iability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities").

In one paragraph, Ms. Gjovik alleges that "an Apple Global Security Crisis Manager, Vicki, call[ed] Plaintiff on October 2, 2024, to harass Plaintiff about Plaintiff's struggle to litigate against Apple's army of attorneys," 5AC ¶ 342, but without more specific allegations about what the manager said or did that was allegedly harassing, the alleged conduct cannot be said to be

outrageous.

In several paragraphs, Ms. Gjovik asserts that Apple's attorneys representing Apple in the NLRB proceedings she initiated against the company are "implicated in the harassment," *see* 5AC ¶¶ 347-48, but the alleged conduct is either not outrageous, *see, e.g.*, 5AC ¶ 347 (alleging that the attorneys' asked for production of "the defamatory paper trail created by Appleseed"), or not fairly attributable to the attorneys. *See* 5AC ¶ 348 (alleging that the attorneys "used fake social media accounts to attack [Ms. Gjovik]" but providing no factual basis for that conclusory claim).

With respect to Ms. Gjovik's allegation that her personal belongings were damaged and covered in glass shards when Apple mailed them to her, the conduct cannot be deemed outrageous when there are no factual allegations to support the claim that the conduct was intentional. The mere fact that the belongings were damaged and covered in glass shards is not enough by itself to give rise to a reasonable inference of intentional (as opposed to negligent) conduct by Apple.

2. <u>Liability on the Part of Apple</u>

Even if some alleged misconduct is or plausibly could be characterized as outrageous in nature, it is not sufficiently connected to Apple as a factual matter or there is not a sufficient legal basis to hold Apple liable.

For example, as a factual matter, the claims that Apple was responsible for the bugging/surveillance and breaking into her home are entirely speculative. In the 5AC, Ms. Gjovik asserts that "[t]here is no one else except Apple that Plaintiff could plausibly attribute responsibly for the things that occurred to her since 2020. No one else would have the motive or resources to do these things, and the harassment was perfectly timed with her conflict with Apple." 5AC ¶ 295. But again, this is nothing more than speculation.

In some instances, Ms. Gjovik has alleged that misconduct was engaged in by an Apple employee – *e.g.*, the online harassment. But here, Ms. Gjovik has failed to explain how Apple can be held legally liable for such conduct. For example, Ms. Gjovik seems to suggest that Apple actively directed the online harassment, *see* Opp'n at 21, 23, but no concrete facts are alleged to support such. There are no specific allegations that the alleged conduct was done at Apple's behest.



United States District Court
Northern District of California

United States District Court
Northern District of California

To the extent Ms. Gjovik relies on respondeat superior as a basis for Apple's liability, the Court has previously explained that such liability "'should apply only to the type of injuries that as a practical matter are sure to occur in the conduct of the employer's enterprise. The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought.'" Docket No. 112 (Order at 37). In the 5AC, Ms. Gjovik suggests that the employees' misconduct "was an outgrowth of Apple's corporate culture, which emphasized silencing internal dissent at all costs." 5AC ¶ 350. However, Ms. Gjovik has failed to cite any authority indicating that corporate culture could satisfy the requirement that the challenged conduct be "engendered *by the employment*." Docket No. 112 (Order at 37) (emphasis added); *see also Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 12 Cal. 4th 291, 297-99 (1995) (stating that an employer will not be held liable for an "intentional tort that did not have a causal nexus to the employee's work"; *e.g.*, "California courts have . . . asked whether the tort was, in a general way, foreseeable from the employee's duties" or whether "the risk of tortious injury [was] inherent in the working environment or typical of or broadly incidental to the enterprise [the employer] has undertaken") (internal quotation marks omitted); *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 142-43 (1981) (stating that "[t]he test is not whether it is foreseeable that one or more employees might at some time act in such a way as to give rise to civil liability, but rather, whether the employee's act is foreseeable *in light of the duties* the employee is hired to perform") (emphasis in original). The 5AC does not contain specific allegations establishing the requisite causal nexus.

Ms. Gjovik also suggests that Apple could be held liable because it benefitted from the misconduct (*i.e.*, its corporate goals were furthered), *see* Opp'n at 23, and/or because it failed to intervene despite knowledge of employee misconduct. *See* 5AC ¶¶ 346, 349, Opp'n at 26. However, she fails to explain how this could satisfy the level of intent required for an intentional tort such as IIED. *See generally Christensen*, 54 Cal. 3d at 903 (stating that one element of an IIED claim is extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress). Nor does it establish the required nexus for respondeat superior.

Finally, to the extent Ms. Gjovik tries to hold Apple liable for the acts of "Joanna Appleseed" (*i.e.*, Cher Scarlett), *see* Opp'n at 28-29, a former colleague who once supported but no longer supports Mr. Gjovik, the Court noted in a previous order that Ms. Gjovik was relying on conduct taken after Ms. Scarlett was no longer an Apple employee. *See* Docket No. 73 (Order at 44). "That being the case, Ms. Gjovik [could not] argue respondeat superior as a basis to hold Apple liable. And the [then-operative pleading did] not contain any concrete allegations indicating that, post-employment, Ms. Scarlett was part of some kind of conspiracy with Apple." Docket No. 73 (Order at 44). The 5AC does not address these problems. For example, nowhere in the 5AC does Ms. Gjovik clearly point to any alleged misconduct by Ms. Scarlett while she was still an employee of Apple, nor has Ms. Gjovik alleged any concrete facts suggesting that, when Ms. Scarlett left Apple, it was some kind of ruse.

The Court, therefore, dismisses the IIED claim based on post-termination conduct, and with prejudice.

E. <u>Retaliation Claims</u>

In the motion to dismiss, Apple also challenges in part two of the retaliation claims – specifically, the § 1102.5 claim (Count 2) and the § 98.6 claim (Count 4),

1. <u>Section 1102.5 Claim</u>

Section 1102.5 is part of the California Whistleblower Act. It provides, in essence, that an employer shall not retaliate against an employee for disclosing information to the government, or to a person with authority over the employee, if the employee has reasonable cause to believe that the information discloses a violation of the law. *See* Cal. Lab. Code § 1102.5.

In its prior motion to dismiss, Apple argued that, to the extent Ms. Gjovik sought civil penalties for a violation of § 1102.5, there was a time bar. For civil penalties, there is a one-year statute of limitations. Since Ms. Gjovik was fired in September 2021, she had to bring suit by September 2022; however, she did not file suit until September 2023. The Court agreed with Apple that, as a facial matter, there was a time bar. But it noted that there might be a basis for equitable tolling under *Elkins v. Derby*, 12 Cal. 3d 410 (1974).

The California Supreme Court has held that, "whenever the

> exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding." *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974). It has also held that, "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Id.*; *see also id.* at 418 (noting that "this and other courts as well as legislatures have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute").

Docket No. 112 (Order at 12-13).

The Court therefore dismissed the claim for civil penalties for a violation of § 1102.5 but gave Ms. Gjovik leave to amend to plead *Elkins* tolling – *i.e.*, tolling for the period in which she was pursuing legal remedies in a different forum (*e.g.*, with an administrative agency). *See also* Docket No. 112 (Order at 13) (noting that, for *Elkins* tolling, a plaintiff has to prove "three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff") (internal quotation marks omitted).

In the pending motion to dismiss, Apple argues that Ms. Gjovik has failed to plead *Elkins* tolling and thus the claim for civil penalties should be dismissed, this time with prejudice. In evaluating this argument, the Court must first consider whether the 5AC contains allegations that Ms. Gjovik pursued legal remedies in a different forum to address the alleged retaliation against her (*i.e.*, for disclosing violations of the law). There are such allegations. For example, Ms. Gjovik alleges that she filed complaints with (1) EPA, California EPA, and the U.S. Department of Labor, *see* 5AC ¶ 230; (2) the NLRB, *see* 5AC ¶ 230; (3) the California Department of Labor and the U.S. Department of Labor, *see* 5AC ¶¶ 230-31; and (4) the U.S. Department of Justice, the U.S. EEOC, and California DFEH. *See* 5AC ¶ 233. Although not entirely clear, the complaints seemed to have included complaints that she was being retaliated against for disclosing violations of the law.

Although Ms. Gjovik has made reference to various agencies with whom she was pursuing legal remedies, she expressly asserts equitable tolling based on a filing(s) made with one agency only, *i.e.*, the California Department of Labor/Department of Industrial Relations:



United States District Court
Northern District of California

> For California Labor Code §§ 98.6 and 1102.5, any issues with statute of limitations related to the claims or remedies (i.e., penalties/fines) are equitably tolled by Plaintiff's timely complaints sitting in the California Department of Labor queue for years before Plaintiff kicked the claims out into this lawsuit. This lawsuit replaced the California Department of Labor DIR case *Ashley Gjovik v Apple Inc*, RCI-CM-842830. Plaintiff filed the first claim on August 29 2021, before Apple terminat[ed] her employment.

5AC ¶ 205; *see also* Opp'n at 29 ("Plaintiff filed a complaint with the California Department of Industrial Relations (DIR) in August 2021, which tolled the statute of limitations for [the § 1102.5] claim. The DIR complaint sufficiently put Defendant on notice of Plaintiff's retaliation claims, which involved reporting workplace safety violations and environmental hazards."). Given that Ms. Gjovik is limiting herself to the DIR complaint(s), the Court need not consider other complaints she made to different agencies for purposes of *Elkins* tolling.

Ms. Gjovik's allegation above about the DIR complaint(s) is, admittedly, a bit vague. Although she explicitly refers to one specific complaint (RCI-CM-842830) – made before Apple terminated her employment – she also indicates that she made more than one complaint (*e.g.*, mentioning "timely complaint*s*" and "the *first* claim"). Given that Ms. Gjovik is pro se, the Court does not limit her to solely the one specific complaint identified above. This is especially true since, in a prior filing made with the Court, located at Docket No. 35-5, Ms. Gjovik provides not just the DIR complaint made *before* she was fired but also the DIR complaint made *after* she was fired. The latter complaint has the case number RCI-CM-846638 and was filed on September 29, 2021. The Court will consider both DIR complaints.

Consideration of both of these DIR complaints is important because one of Apple's arguments is that the first DIR complaint, taken alone, did not give Apple "timely notice" as required by *Elkins*. "The timely notice requirement essentially means that the first claim [where legal remedies were being pursued] must have been filed within the statutory period. Furthermore[,] the filing of the first claim **must alert** the defendant in the second claim [*i.e.*, the lawsuit under consideration] of the need to begin investigating the facts which form the basis for the second claim." *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014) (internal quotation marks omitted; emphasis added). According to Apple,

> the August 2021 DIR Complaint did not put Apple on notice to investigate the facts that form her Section 1102.5 claim. The August 2021 DIR Complaint contains a general allegation that Plaintiff was retaliated against for "rais[ing] concerns about work place safety" (see Dkt. 35-5 at 5-7) but does not reference retaliation for complaining about the myriad alleged violations of the law on which Plaintiff's Section 1102.5 claim relies.

Mot. at 16.

As noted above, the Court considers whether the timely notice requirement was made based on both DIR complaints, and not just the first. Below is information about the two complaints.

- In the first DIR complaint (RCI-CM-824830), filed in August 2021, Ms. Gjovik described the factual basis for her retaliation complaint as follows: "I raised concerns about work place safety and was told to stop speaking about my concerns. Then I was threatened, harassed, intimidated, suspended, & constructively terminated." Docket No. 35-5 (ECF Page 6).
- In the second DIR complaint (RCI-CM-846638), filed in September 2021, Ms. Gjovik described the retaliation as follows:

> 3/17: Raised concerns abt safety at my Superfund office;
> 3/22: Told to stop sharing concerns;
> 3/29: Reported intimidation to [Employee Relations] & then ER retaliated;
> Apr.: Constructive termination (HWE) by Sr Dir;
> Apr.-Jun: Still raising concerns abt safety & also abt sexism & retaliation;
> July: ER launches 2nd investigation I actually req;
> 8/3: Taking pics of safety issues;
> 8/4: ER suspends me & pressures me to stop organizing with other employees;
> 9/9: Terminated
> 9/10: NLRB affidavit abt Apple.

Docket No. 35-5 (ECF Page 9).

As indicated by the above, the second DIR complaint is more *specific* and more *expansive* than the first, suggesting retaliation for raising concerns about environmental safety specifically (given the reference to "Superfund") *and* sex discrimination and for engaging in employee organization. Given the two DIR complaints, the Court– with certain exceptions – rejects Apple's contention that the subject matter of the DIR complaint is not fairly coextensive with the subject

matter of the § 1102.5 claim asserted in this lawsuit. The § 1102.5 claim, as pled in the 5AC, covers:

- Retaliation related to environmental safety.
  - 42 U.S.C. §§ 9610, 7622. *See* 5AC ¶ 230 & n.45. Section 9610 is an anti-retaliation provision in CERCLA: "No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against, any employee . . . by reason of the fact that such employee or representative has provided information to a State or to the Federal Government, filed, instituted, or caused to be filed or instituted any proceeding under this Act, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this Act." 42 U.S.C. § 9610(a). Section 7622 is an anti-retaliation provision in the Clean Air Act: "No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee . . . – (1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this Act or a proceeding for the administration or enforcement of any requirement imposed under this Act or under any applicable implementation plan . . . ." 42 U.S.C. § 7622(a).
  - 29 U.S.C. § 660. Section 660 includes an anti-retaliation provision as part of OSHA: "No personal shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any rights afforded by this Act." 29 U.S.C. § 660(c)(1).
  - 8 Cal. Code Reg. § 5194. *See* 5AC ¶ 230. This section requires, *inter alia*, "all employers to provide information to their employees about the



United States District Court
Northern District of California

hazardous chemicals to which they may be exposed, by means of a hazard communication program, labels and other forms of warning, safety data sheets, and information and training." 8 Cal. Code Reg. § 5194(b)(1). With respect to information and training, the regulation states: "Employers shall provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment, and whenever a new chemical hazard is introduced into their work area." 8 Cal. Code Reg. § 5194(h)(1). This includes informing employees of the right "[a]gainst discharge or other discrimination due to the employee's exercise of the rights afforded pursuant to the provisions of the Hazardous Substances Information and Training Act." *Id.* § 5194(h)(2)(G)(3).

- Retaliation related to employee organization.
  - NLRA § 8(a)(1). *See* 5AC ¶ 230. Title 29 U.S.C. § 158(a)(1) provides that "[i]t shall be an unfair labor practice for an employer – (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. § 158(a)(1). Section 157 in turn provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." *Id.* § 157.
- Retaliation related to sex discrimination.
  - 42 U.S.C. § 2000e and California Government Code § 12920. *See* 5AC ¶ 233. Related employment discrimination statutes contain anti-retaliation provisions. *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."); Cal. Gov. Code



United States District Court
Northern District of California

§ 12940(h) ("It is an unlawful employment practice . . . (h) For any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.").

To be sure, in the DIR complaints, Ms. Gjovik did not mention the above laws specifically. But the "timely notice" requirement in *Elkins* focuses on whether the *factual* basis of the first claim and second claim are reasonably coextensive. *See Hopkins*, 225 Cal. App. 4th at 747 (stating that "the filing of the first claim must alert the defendant in the second claim of the need to begin *investigating the facts* which form the basis for the second claim") (emphasis added).[9] The DIR complaints give sufficient notice of alleged retaliation based workplace environmental safety and discrimination concerns expressed by Ms. Gjovik.

Notice on other matters is more problematic:

(1) Section 1102.5 provides that an employer cannot retaliate because an employee discloses to the government or to a person with authority over the employee what the employee reasonably believes to be a law violation. Although the DIR complaints suggested that she was retaliated against for presenting concerns about environmental safety and sex discrimination, she claimed she was retaliated against for *engaging* in employee organization – not for *disclosing information* about a law violation related to employee organization.

(2) Ms. Gjovik's § 1102.5 claim includes an allegation that complained to Apple

[9] In this regard, an analogy to Title VII can be made. *See Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) ("[A]n 'administrative charge of discrimination does not strictly limit a Title VII suit which may follow.' Instead, so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'"); *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) ("Although allegations of discrimination not included in a plaintiff's EEOC charge generally may not be considered by a federal court, subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'").



United States District Court
Northern District of California

management about violations of the California Constitution's right to privacy. *See* 5AC ¶ 232 (also alleging that she "shared concerns with a report for an advocacy article in August 2021 . . . and made complaints on social media in August-September 2021"). However, neither DIR complaint seems to mention anything about privacy rights, let alone retaliation for complaining about a violation of privacy rights.

Taking into account all of the above, the Court concludes that, in part, there is not a time bar for civil penalties under § 1102.5 (at least for purposes of 12(b)(6)). However, there is a time bar to the extent civil penalties are sought for retaliation based on complaints made about violation of privacy rights. That was a subject matter not pursued with the DIR. In addition, even though the DIR complaints did reference retaliation for *engaging* in employee organization, § 1102.5 only bars retaliation for *disclosing information* about law violations. Section 1102.5 concerns disclosures only. In short, the § 1102.5 claim for civil penalties as pled is not time barred for alleged retaliation based on disclosing information about law violations related to workplace environmental safety and sex discrimination, but is barred for alleged retaliation for organizing Apple employees and violation of her privacy rights.

2. Section 98.6 Claim

California Labor Code § 98.6 provides that

> [a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . under or relating to their rights that are under the jurisdiction of the Labor Commissioner . . . or because of the exercise by the employee . . . on behalf of themselves or others of any rights afforded them.

Cal. Lab. Code § 98.6(a).

In the 5AC, Ms. Gjovik alleges that Apple violated § 98.6 by retaliating against her for filing her DIR complaint in August 2021. *See* 5AC ¶ 239. She also alleges that Apple violated § 986 because it retaliated against her for exercising her rights as provided for in California Labor Code §§ 232, 232.5, and § 96(k). *See* 5AC ¶¶ 243-55.

- Under § 232(c), "[n]o employer may . . . (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses the amount of his or her wages." Cal. Lab. Code § 232(c).
- Under § 232.5(c), "[n]o employer may . . . (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions." *Id.* § 232.5(c).
- Under § 96(k), "[t]he Labor Commissioner . . . shall, upon the filing of a claim therefor by an employee . . . with the Labor Commissioner, take assignments of . . . (k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises." *Id.* § 96(k). The 5AC indicates that the "lawful conduct occurring during nonworking hours away from the employer's premises" included Ms. Gjovik "complaining on social media and to the press" about (1) "unlawful and unethical surveillance and invasions of privacy by Apple", (2) "the environmental crimes she witnessed" and suffered in her apartment and office, and (3) Apple's intimidation and threats based on her advocacy for crime victim's rights (with Ms. Gjovik also being a victim of Apple's crimes). 5AC ¶¶ 252-54.

a. <u>Civil Penalties</u>

For the § 98.6 claim, Apple launches two arguments. The first argument is that, similar to above, any claim for civil penalties is subject to a one-year statute of limitations and thus there is a time bar. Apple asserts that *Elkins* tolling does not apply because the subject matter of the DIR complaint in August 2021 does not match the subject matter of the § 98.6 claim.

Apple's argument has partial merit. First, neither DIR complaint (*i.e.*, the one in August 2021 or the one in September 2021) contends that Ms. Gjovik was retaliated against for making the August 2021 complaint. Indeed, it would have been impossible for Ms. Gjovik to contend in the August 2021 DIR complaint that she was retaliated against for making that complaint.

Second, neither DIR complaint mentions "unlawful and unethical surveillance and invasions of privacy by Apple" or intimidation and threats based on her advocacy for crime



United States District Court
Northern District of California

victim's rights. 5AC ¶¶ 252, 254.

However, the DIR complaints do mention retaliation because Ms. Gjovik engaged in employee organization (which Apple plausibly would have known was related to wages) and had made complaints about environmental safety.

Therefore, the Court grants in part and denies in part the motion to dismiss the claim for civil penalties for a violation of § 98.6. In short, the § 98.6 claim for civil penalties as pled is not time barred for alleged retaliation related to employee organization and complaints about environmental safety but is barred for alleged retaliation related to the August 2021 complaint, privacy violations, and advocacy for crime victim's rights.

b. Section 232 and 232.5 Violations – Apple's Knowledge of Ms. Gjovik's Conduct

Apple's second challenge to the § 98.6 claim focuses on Ms. Gjovik's assertion that Apple retaliated against because she was exercising her rights under §§ 232 and 232.5 (*e.g.*, engaging with other employees about wages paid by Apple). *See* 5AC ¶¶ 243-44 (alleging that, in July and August 2021, Ms. Gjovik participated in a pay survey among coworkers on Slack (where she suggested that a question should be included about gender) and that, in August 2021, she "openly discussed her wages on social media and encouraged her coworkers to do the same"). In its prior order, the Court noted that, for this part of the § 98.6 claim to be viable, there had to be allegations that Apple knew Ms. Gjovik was engaging in this activity. Without such knowledge, it could not retaliate against her for engaging in the activity. *See* Docket No. 112 (Order at 22) ("The §§ 232 and 232.5 claims – to the extent based on disclosure of wages – shall be dismissed but with leave to amend (i.e., so that Ms. Gjovik can allege knowledge on the part of Apple of the wage disclosure).").

In the motion to dismiss, Apple argues that Ms. Gjovik has still failed to allege knowledge on the part of the company of either her participation in pay surveys on Slack or her discussion of wages on social media. *See* Mot. at 18 (arguing that Ms. Gjovik "does not allege that Apple (and certainly not anyone at Apple who would have been in a position to control the terms or conditions of her employment) knew about those alleged social media posts"). Ms. Gjovik's opposition brief

United States District Court
Northern District of California

is not particularly helpful in evaluating Apple's argument. The 5AC, however, does contain some allegations that suggest knowledge on the part of Apple. For example:

- The timing of events suggest Apple knew about Ms. Gjovik's activity. In August 2021, "the day after she shared a post on Slack referencing Apple's policies on employees' right to speak freely about wages, hours, and working conditions," Apple placed her on leave. 5AC ¶ 245.
- Apple knew about the survey because it shut the survey down. *See* 5AC ¶ 246. Presumably, Ms. Gjovik is suggesting that, if Apple knew about the survey, it can reasonably be inferred it knew who participated in and/or was involved with the survey.
- Apple's shutting down the survey garnered press attention. Presumably, Ms. Gjovik is suggesting that, given the publicity over the survey and its shutdown, Apple was likely to know who participated in and/or was involved with the survey.

For purposes of 12(b)(6), Ms. Gjovik has alleged enough to support knowledge – particularly based on the first and second bullet points above.

F. <u>Outside Scope of the Amendment</u>

As discussed above, the Court has granted in part Apple's motion to dismiss. Specifically, it has:

(1) dismissed the environmental safety claims (private nuisance and IIED based on fear of cancer) based on the statute of limitations;

(2) dismissed the IIED claim based on post-termination conduct because the alleged misconduct is not outrageous as a matter of law and/or because there is no sufficient factual connection to Apple or a legal basis to hold Apple liable; and

(3) dismissed in part the claims for civil penalties for violations of § 1102.5 and § 98.6 based on the statute of limitations.

The only issue remaining is whether Ms. Gjovik has – as claimed by Apple – made amendments outside the scope permitted by the Court.

To the extent Apple argues Ms. Gjovik has made amendments outside the scope related to

her environmental safety claims or her IIED claim based on post-termination conduct, that argument is moot. Those claims are dismissed for the reasons stated above.

Apple, however, still contends that Ms. Gjovik made amendments outside the scope permitted for the § 1102.5 and § 98.6 claims. Here, the only amendment that is problematic is the following: for the § 98.6 claim related to wage disclosures, Ms. Gjovik alleges in ¶ 246 that she "shared information and commented on Twitter about an earlier U.S. Department of Justice lawsuit against Apple for illegal wage-fixing practices." 5AC ¶ 246. That factual allegation is stricken as wage fixing is a subject matter not implicated in any previous complaint.

The other amendments complained about by Apple, however, present a closer call – *e.g.*, new allegations about alleged adverse actions. *See* Mot. at 6. Although the Court recognizes Apple's concern – *i.e.*, that discovery is dictated by the parameters of the complaint – it is hard to say that these factual allegations are *necessarily* improper in this case because, even if not made in a prior complaint, they are still related to allegations that Ms. Gjovik *did* make in her prior complaints. The Court will not dismiss those allegations and shall rely on the good faith of the parties and/or the rulings of the discovery judge to determine the permissible scope of discovery.

G. <u>Motion to Amend (Docket No. 155)</u>

Now that the Court has resolved the motion to dismiss, it turns to Ms. Gjovik's motion to amend. The Court previously stayed briefing and a hearing on the motion to amend so that it could address first the motion to dismiss.

The Court has reviewed the motion to amend. Ms. Gjovik seeks to:

- Add claims that the Court previously dismissed with leave to amend but Ms. Gjovik did not amend. This includes: the RICO claim, the Bane Act claim, the Ralph Act claim, and the claim for nuisance per se.
- Replead claims that the Court previously dismissed with prejudice because she purportedly has new support. This includes: the claim for ultrahazardous activity and the part of the § 1102.5 claim related to privacy.
- Add new facts about the Gobbler application (related to privacy). She indicates this will strengthen one of her IIED claims because Apple has engaged in "revenge



United States District Court
Northern District of California

porn."

- "Revise" her vicarious liability theory.

At the hearing, the Court stated that it was not inclined to allow any further amendment because Ms. Gjovik is already on her 5AC and the pleadings in this case need to be settled so that the litigation can proceed. Nothing in Ms. Gjovik's motion to amend alters the Court's initial views. Ms. Gjovik has had ample multiple opportunities to plead her claims. No further amendment shall be allowed absent Court order. Accordingly, the Court hereby **DENIES** the motion for leave to amend.

## III. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. Based on the Court's rulings, Ms. Gjovik's case is essentially a retaliation case (Counts 1, 2, 3, and 4). Apple did not challenge Counts 1 and 3. Counts 2 and 4 have been limited with respect to civil penalties – *i.e.*, the claims for civil penalties are partially time barred.

This order disposes of Docket Nos. 145 and 155.

**IT IS SO ORDERED**.

Dated: February 27, 2025

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California