# Exhibit C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M GJOVIK,<br>Plaintiff,<br>v.<br>APPLE INC.,<br>Defendant. | Case No. 23-cv-04597-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S MOTION TO STRIKE; AND GRANTING PLAINTIFF'S MOTION TO STRIKE**<br><br>Docket Nos. 78-79, 101 |

Plaintiff Ashley Gjovik, proceeding pro se,[1] is a former employee of Defendant Apple, Inc. She started to work for Apple in February 2015 and was ultimately terminated on September 9, 2021. On September 7, 2023, about two years after she was fired, she initiated this lawsuit. In the operative fourth amended complaint ("4AC"), Ms. Gjovik asserts thirteen different claims against Apple, all predicated on state law. For the most part, the claims fall into two basic categories: (1) Apple engaged in environmentally unsafe conduct that harmed Ms. Gjovik and (2) Apple retaliated against Ms. Gjovik – including by terminating her from employment – because she complained about certain company conduct, including but not limited to environmentally unsafe conduct.

Now pending before the Court are three motions: (1) a motion to dismiss filed by Apple, targeted at eleven of the thirteen claims (either in whole or in part); (2) a motion to strike filed by Apple; and (3) a motion to strike filed by Ms. Gjovik. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part Apple's

[1] Ms. Gjovik appears to have a J.D. from Santa Clara University.

United States District Court
Northern District of California

motion to dismiss, **DENIES** Apple's motion strike, and **GRANTS** Ms. Gjovik's motion to strike.

## I. FACTUAL & PROCEDURAL BACKGROUND

The factual allegations in the 4AC largely replicate the factual allegations in the prior third amended complaint ("TAC"). As the Court stated in its prior order, the main categories of alleged misconduct by Apple are as follows:

> (1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment.
>
> (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, *i.e.*, a Superfund site, and she became ill because of Apple's actions/omissions related to the site.
>
> (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy.
>
> (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.

Docket No. 73 (Order at 2).

Based on, *inter alia*, the above allegations, Ms. Gjovik asserts the following causes of action in the 4AC:

(1) Wrongful termination in violation of public policy.

(2) Violation of the California Whistleblower Act. *See, e.g.*, Cal. Lab. Code § 1102.5(b) (providing that an employer "shall not retaliate against an employee for disclosing information . . . to [*inter alia*] a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation").

(3) Violation of California Labor Code § 6310. *See, e.g.*, *id.* § 6310(a) (providing

that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has [*e.g.*] [m]ade any oral or written complaint to the [Division of Occupational Safety and Health] [or] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health").

(4) Violation of California Labor Code § 6399.7. *See id.* § 6399.7 (providing, *inter alia*, that "[n]o person shall discharge or in any manner discriminate against, any employee because such employee has filed any complaint . . . under or related to the provisions of this chapter [*i.e.*, the Hazardous Substances Information and Training Act]").

(5) Violation of California Labor Code § 98.6. *See id.* § 98.6(a) (providing that "[a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . under or relating to their rights that are under the jurisdiction of the Labor Commissioner . . . or because of the exercise by the employee . . . on behalf of themselves or others of any rights afforded them").

(6) Violation of California Labor Code §§ 232, 232.5, 1101, and 1102. *See id.* § 232 (providing, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages"); *id.* § 232.5 (providing, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions"); *id.* § 1101 (providing, *inter alia*, that an employer shall not "make, adopt, or enforce any rule, regulation or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees"); *id.* § 1102 (providing that "[n]o employer shall coerce or influence . . . his employees

through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity").

(7) Violation of California Labor Code § 96(k). *See id.* § 96(k) (providing that the Labor Commissioner "shall, upon the filing of a claim therefor by an employee, . . . take assignments of . . . [c]laims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises").

(8) Breach of the implied covenant of good faith and fair dealing.

(9) Violation of California Business & Professions Code § 17200.

(10) Intentional infliction of emotional distress – "traditional."

(11) Creation and maintenance of a private nuisance at the ARIA factory.

(12) Strict liability for ultrahazardous activities at the ARIA factory.

(13) Intentional infliction of emotional distress – fear of cancer.

Apple has challenged all of the above claims, either in whole or in part, except for the first and third causes of action.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and

United States District Court
Northern District of California

construe[s] the pleadings in the light most favorable to the nonmoving party."[2] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B. Rule 12(g)(2)

Before the Court considers the specific arguments made by Apple in its motion, and Ms. Gjovik's responses thereto, it notes that there is a procedural matter that affects several, although not all, claims. Specifically, in the pending motion to dismiss, which targets the 4AC, Apple makes arguments that it *could* have made in its prior motion to dismiss the TAC but did not.

[2] On a motion to dismiss, a court generally limits its review to the four corners of the complaint. *See Van Buskirk v. Cnn*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'"). Accordingly, the Court does not consider the declaration filed by Cher Scarlett at Docket No. 99 (and grants Ms. Gjovik's motion to strike the same). For the same reasons, the Court does not consider the bulk of the Gjovik Declaration, including Exhibits D-F thereto.

Exhibits A-C attached to the Gjovik Declaration are documents that Ms. Gjovik created for the asserted purpose of helping the Court understand the history of her claims. They are more in the nature of attorney argument and theoretically could be considered. The Court, however, largely finds the exhibits unhelpful. Moreover, the exhibits arguably reflect an attempt on the part of Ms. Gjovik to get around the page limits on briefing.

Finally, a court may take judicial notice of documents, if appropriate, on a 12(b)(6) motion. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (noting that a court may "consider materials outside a complaint" at the 12(b)(6) phase if it can, e.g., take judicial notice of materials). Ms. Gjovik has filed a request for judicial notice ("RJN") implicating fifteen documents. They include a report issued by the EPA on the ARIA factory (Exhibit A); an article on hazardous production gases (Exhibit C); and chemical safety cards for gases (Exhibit E). It is questionable whether all of the documents can be judicially noticed (*e.g.*, the articles). However, the bigger problem for Ms. Gjovik is that she has failed to explain how the RJN is relevant to the arguments made in her opposition brief. To be clear, the opposition does contain references to the RJN but those references are not followed by any concrete explanation of how the documents at issue are relevant. Thus, at the end of the day, the RJN is largely unhelpful, too.

Notably, this includes challenges to claims pled in the 4AC that Apple did not challenge when pled in the prior TAC (*e.g.*, the claim that the ARIA factory constituted a private nuisance and the claim that Apple violated certain protections provided by California Labor Code §§ 232 and 232.5).

Ms. Gjovik argues that any of these arguments that could have been made, but were not, should be entirely disregarded. In support, she cites Federal Rule of Civil Procedure 12(g)(2). That rule provides as follows: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The exception identified in Rule 12(h)(2) provides: "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or at trial." Fed. R. Civ. P. 12(h)(2).

As a facial matter, Rule 12(g)(2) does lend support to Ms. Gjovik's position. However, in *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313 (9th Cir. 2017), the Ninth Circuit explained that the rule is not as unforgiving as it might appear at first blush:

> We read Rule 12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1. That rule directs that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1.*

*Id.* (emphasis added). Accordingly, "'[a]lthough Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy.'" *Id.* at 319.

Here, the Court shall, in the exercise of its discretion, consider Apple's new arguments. If the Court were to reject consideration of the arguments through the 12(b)(6) vehicle, Apple would no doubt raise the same arguments through a 12(c) motion. As a matter of judicial economy, it makes more sense to address the arguments sooner rather than later. Furthermore, there is no



United States District Court
Northern District of California

indication that Apple's new arguments are being made for purposes of delay or some other "strategically abusive purpose." *Id.* at 319-20. Rather, Apple is trying to streamline this case which, quite frankly, Ms. Gjovik has made unwieldy. Furthermore, Apple's arguments are made in good faith as reflected by the fact that the Court finds merit to Apple's motion to dismiss.

C. Ms. Gjovik's Claims

Ms. Gjovik's 4AC continues to be a sprawling pleading with many claims. She has also made her pleading messier by choosing to restructure some of her claims – in particular, her retaliation claims. For example, in the TAC, she asserted a claim for violation of California Labor Code § 98.6 which was predicated on protections provided in §§ 96(k), 232, and 232.5. *See* TAC, Count 9. However, in the 4AC, she now splits that claim up into three claims: a violation of § 98.6; a violation of §§ 232 and 232.5 (as well as §§ 1101 and 1102); and a violation of § 96(k). *See* 4AC (Counts 5-7).

As a result of the above, Apple's motion to dismiss can be difficult to follow. The Court has attempted to provide some clarity by grouping Ms. Gjovik's claims for analysis. The first group (addressed in Part II.D) consists of her **retaliation** claims. The second group (addressed in Part II.E) consists of her claims asserting injury as a result of **environmentally unsafe conditions**. These two groups seem to contain the most important claims being made by Ms. Gjovik. Finally, the last group (addressed in Part II.F) consists of her **remaining** claims.

D. Retaliation Claims

The retaliation claims are in Counts 1-7. In the motion to dismiss, Apple challenges all of the claims, either in whole or part, except for Count 1 (termination in violation of public policy) and Count 3 (violation of California Labor Code § 6310).

1. Count 2 – Claim for Violation of § 1102.5

In Count 2, Ms. Gjovik asserts a violation of the California Whistleblower Act. *See* Cal. Lab. Code § 1102.5. Section 1102.5 provides in relevant part that an employer

> shall not retaliate against an employee for disclosing information . . . to [*inter alia*] a government or law enforcement agency [or] to a person with authority over the employee . . . if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute, or a violation of or noncompliance with



United States District Court
Northern District of California

a local, state, or federal rule or regulation.

*Id.* § 1102.5(b).

In the prior TAC, Ms. Gjovik included a § 1102.5 claim. In its order addressing the TAC, the Court noted that, for the § 1102.5 claim, Ms. Gjovik made two main allegations – specifically, that Apple retaliated after she complained to various government agencies about (1) the Gobbler application and (2) environmental and safety violations. On (1), the Court held that Ms. Gjovik sufficiently alleged that the Gobbler application violated the right to privacy protected by the California Constitution; however, she failed to allege *to whom* she made complaints about the Gobbler application. On (2), Apple argued that Ms. Gjovik failed to specify which environmental or safety statutes/regulations were allegedly violated. The Court did not decide whether the failure to cite specific provisions deprived Apple of the right to fair notice about the scope of Ms. Gjovik's claims. This was because, "[a]t the hearing, Ms. Gjovik indicated that she had a list of provisions at hand, and, as the Court is already giving Ms. Gjovik leave to amend other claims, she may supplement this claim by including the specific provisions in the amended pleading." Docket No. 73 (Order at 35-36).

In the 4AC, Ms. Gjovik now alleges that Apple retaliated against her after she made complaints to, *inter alia*:

(1) Apple management, the EPA, California EPA, and the California Air Resource Board about violations of CERCLA, RCRA, and/or the Clean Air Act;

(2) the Santa Clara County DA's Office, the EPA, and Apple about fraud related to environmental crimes;

(3) the NLRB, DOL, California DOL, and Cal OSHA about violations of the NLRA, the California Labor Code, and OSHA;

(4) Apple management about violations of the right to privacy under the California Constitution;

(5) the DOJ, EEOC, and California DFEH about violations of anti-discrimination laws (on the basis of sex and disability); and

(6) her supervisors (including Mr. West and Mr. Powers) and the FBI about smuggling



United States District Court
Northern District of California

and violations of sanctions.

*See* 4AC ¶ 168.[3]

Apple now moves to dismiss in part the § 1102.5 claim.

a. Beyond the Scope of Amendment

Apple argues first that part of the claim should be dismissed because Ms. Gjovik made an amendment to the claim beyond the scope permitted by the Court. Specifically, in the 4AC, Ms. Gjovik alleges that she was retaliated against because she made complaints to her supervisors and the FBI about smuggling and sanctions violations. *See* 4AC ¶ 168. Apple asserts that this factual predicate was never part of the § 1102.5 claim in the TAC and the Court never permitted Ms. Gjovik to add new factual predicates to the § 1102.5 claim.

Apple's argument has merit. To be clear, the prior TAC did mention smuggling and sanctions violations. *See, e.g.*, TAC ¶ 84 (alleging that, in September 2021, Ms. Gjovik "told the FBI about Apple's involvement in concealing possible sanctions violations and smuggling[;] in the crime field, she wrote: '*Possible violations of sanctions against Syria, possible cover-up of that knowledge, retaliation for reporting concerns about said violation and coverup*'") (emphasis in original). However, Ms. Gjovik's allegations about smuggling and sanctions violations were made in support of the SOX claim (which the Court ended up dismissing with prejudice), not in support of the § 1102.5 claim. *See* TAC ¶¶ 167-68 (SOX claim).

Ms. Gjovik cannot avoid this problem simply because her § 1102.5 claim, as pled in the TAC, contained the allegation that "Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief." TAC ¶ 204 (§ 1102.5 claim). She shall not be rewarded for this generic allegation, particularly in light of her long and difficult-to-follow complaint. Furthermore, the § 1102.5 claim, as pled in the TAC, clearly had a different focus. She asserted retaliation for three reasons only: "Reporting Unlawful Labor/Employment Conduct," "Reporting Environmental & Safety Violations," and "Refusal to Participate in Unlawful Conduct." *See* TAC ¶¶ 208-12. She did not identify smuggling and

[3] The list in ¶ 168 is longer; the above provides some examples only.



United States District Court
Northern District of California

sanctions violations.

To the extent Ms. Gjovik suggests she should be now allowed to amend to include the factual predicate, the Court does not agree. Ms. Gjovik has filed five pleadings at this point. The Court shall not allow her to continue to modify her positions.

b. Failure to Address Deficiencies Identified in Court Order

Apple argues next that more of the § 1102.5 claim should be dismissed because, when the Court considers the amendment that it *did* permit to the claim, Ms. Gjovik failed to address – in large part – the deficiencies identified by the Court in the TAC. According to Apple:

(1) Ms. Gjovik still fails to specify to whom she made complaints about the Gobbler application; she mentions "Apple management" only.

(2) In multiple instances, Ms. Gjovik does not specify which statutes/regulations were allegedly violated. While Ms. Gjovik does reference some specific statutes/regulations in the 4AC, she also continues to cite to *entire* statutory frameworks – *e.g.*, for CERCLA, RCRA, and the Clean Air Act.

Apple's arguments again have merit. As to (1), Ms. Gjovik contends that Apple is trying to get her to "publicly name who at the company she raised the Gobbler issue to prior to taking it public, despite having said it would fire anyone involved in making Gobbler public – thus demanding Gjovik immediately snitch on her coworker, knowing Apple's lawyers may then fire that person." Opp'n at 11. This argument does not make sense. In the 4AC, Ms. Gjovik asserts that she complained to "Apple management," not a coworker. In any event, regardless of the status of the person to whom she complained, Ms. Gjovik does not have the right to unilaterally decline to disclose the identity of the person. The issue here is one of fair notice to Apple so that it can defend itself, and Ms. Gjovik did not even ask for any protective measures such as disclosure to outside counsel only. Finally, it is notable that Ms. Gjovik did not raise any concern about snitching in the prior 12(b)(6) round. Accordingly, the Court dismisses from the § 1102.5 claim the factual predicate that Ms. Gjovik was retaliated against because she made complaints about privacy rights being violated as a result of the Gobbler application.

As for (2), Ms. Gjovik asserts that she has a valid claim so long as she reasonably believed,



United States District Court
Northern District of California

Case 5:25-cv-07360-PCP Document 1-24 Filed 10/01/26 Page 112 of 412

at the time of her complaint, that there was a violation of the law; she did not have to know at the time what laws exactly were being violated. *See*, *e.g.*, Opp'n at 10 (arguing that a layperson "probably will not know exactly what laws are being violated down to the statute"). The problem for Ms. Gjovik is that Apple is not arguing such. Rather, Apple is making a different point: as a matter of fair notice, Ms. Gjovik now, *as part of litigation*, has to identify specific statutes/regulations so that Apple can properly defend itself. *See Ling La v. San Mateo County Transit Dist.*, No. 14-cv-01768-WHO, 2014 U.S. Dist. LEXIS 131316, at *18 (N.D. Cal. Sept. 16, 2014) (holding that "[plaintiff's] allegation that she disclosed conduct in violation of the Davis-Bacon Act, related federal statutes, and related regulations is . . . insufficient" because "[t]he point of notice pleading is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests,'" and plaintiff's "citation *to a whole statutory framework* does not serve this purpose, in particular where [plaintiff] does not use her opposition brief to clarify the specific statutes and regulations that were violated") (emphasis added).

Apple's position has merit, at least to the extent that all that Ms. Gjovik does is cite an entire statutory framework, without reference to any kind of benchmark (*e.g.*, CERCLA, RCRA, and the Clean Air Act). *See* 4AC ¶ 168. In her papers, Ms. Gjovik contends that, at least in some instances, she cannot provide any more specific information on statutes or regulations because

> CERCLA oversight is implemented through tailored settlements, contracts, and restrictive covenants – not regulations. Plaintiff challenged land use covenants, records of decision, and other contractual matters related to the CERLA site [and] Apple is aware of what those claims are from the emails Plaintiff sent them, the US EPA investigation into her claims and finding Apple at fault in [a] number of ways, including documented on formal reports.

Opp'n at 6. But assuming that is the benchmark, then it is not clear why Ms. Gjovik did not identify that benchmark in the 4AC, and with some specificity (*e.g.*, which tailored settlements, contracts, and restrictive covenants). Again, the issue here is one of fair notice to Apple. Furthermore, it is not sufficient for Ms. Gjovik to refer to documents outside the complaint for additional details because those documents do not define the scope of the complaint.

To the extent Ms. Gjovik suggests that she was waiting for a report from the EPA to put in more specifics, *see* Opp'n at 10 (asserting that she was "waiting to receive the results of the US



United States District Court
Northern District of California

EPA Enforcement inspection report before making a conclusive statement"; adding that "[t]he report was released last month and found "several . . . violations" of "statutes that provide both civil and criminal enforcement"), that makes no sense. Ms. Gjovik should have been able to provide more specifics regardless of what the EPA found. It is also notable that Ms. Gjovik did not assert this excuse (*i.e.*, that she had to wait for the EPA report) during the prior 12(b)(6) hearing.

Accordingly, the Court dismisses any part of the § 1102.5 claim where all that Ms. Gjovik does is cite wholesale to a statutory framework. That includes general reference to CERCLA, RCRA, and the Clean Air Act without any degree of further specificity. Ms. Gjovik still has a § 1102.5 claim (albeit more limited) to the extent she does cite some statutes/regulations in her pleading. *See* 4AC ¶ 168.

Because Ms. Gjovik has failed to cure deficiencies previously identified by the Court, the Court's dismissal here is with prejudice.

c. Time Bar on Civil Penalties

Finally, Apple argues that, for the part of the § 1102.5 claim it does not challenge on the grounds noted above, Ms. Gjovik still cannot seek any civil penalties as relief because they are time barred.[4] *See* 4AC, Prayer for Relief ¶ viii (asking for a civil penalty of $10,000 per employee for each violation of California Labor Code § 98.6 and § 1102.5).[5] In support of this position,

[4] A contention that a claim is time barred is an affirmative defense, and ordinarily a plaintiff need not plead on the subject of an anticipated affirmative defense. But when an affirmative defense is apparent on the face of a complaint, a defendant may raise that defense in a motion to dismiss. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013).

[5]

> Two categories of remedies exist for violations of . . . § 1102.5. The first is a civil penalty. *Id.* § 1102.5(f) ("In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation of this section."). The second is a claim for damages. *Id.* § 1105 ("Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter."); *see also Gardenhire v. Hous. Auth.*, 85 Cal. App. 4th 236, 241 (2000) (recognizing a right of action for damages for violations of § 1102.5); Cal. Sen. Judiciary Comm., Analysis of S.B. 777 (Apr. 8, 2003) (recognizing that § 1102.5 provides for recovery of



United States District Court
Northern District of California

Apple cites California Code of Civil Procedure § 340(a). Section 340(a) provides for a *one*-year limitations period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." Cal. Code Civ. Proc. § 340(a). In the case at bar, the last act of retaliation alleged by Ms. Gjovik was her termination. That occurred in September 2021. However, Ms. Gjovik did not initiate this lawsuit until *two* years later, in September 2023.[6]

As a facial matter, Apple's position has merit. *See Minor v. FedEx Office & Print Servs.*, 182 F. Supp. 3d 966, 988 (N.D. Cal. 2016) (determining that a § 1102.5 claim "must be brought within three years" unless "the suit seeks the civil penalty provided in § 1102.5(f)," in which case "the claim is subject to a one-year limitations period"). However, Ms. Gjovik suggests that there should be some kind of tolling because she was "waiting on California Dept. of Labor to start investigating her claims up until the point she removed her agency claims to this lawsuit" but "[t]he agency failed to act in a timely fashion." Opp'n at 11.

The California Supreme Court has held that, "whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding." *Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974). It has also held that, "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Id.*; *see also id.* at 418 (noting that "this and other courts as well as legislatures have liberally applied tolling rules or their functional equivalents to situations in

---

compensatory damages).

*Newton v. Bank of Am.*, CV 16-09581-AB (RAOx), 2018 U.S. Dist. LEXIS 228955, at *6-7 (C.D. Cal. Jan. 18, 2018).

[6] Ms. Gjovik does assert that Apple harassed her post-termination. *See* 4AC ¶ 138 ("From at least July 2021 through current day – Apple employees stalked, harassed, and tormented Gjovik . . . ."). However, Ms. Gjovik cannot base her § 1102.5 claim on post-termination conduct because she was no longer an employee and the statute provides protection only where there is an employer-employee relationship. *See* Cal. Lab. Code § 1102.5(b) ("An employer, or any person acting on behalf of the employer, shall not retaliate against an employee . . . .").

which the plaintiff has satisfied the notification purpose of a limitations statute”).

> In the wake of *Elkins*, the California Supreme Court has stated that in order to prove the applicability of the equitable tolling doctrine, a party must establish “three elements: ‘timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.’” “““The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second.” “The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.” “The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison v. State of California* [(1978)] 21 Cal. 3d 313[,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended.”””

*Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014).

In the instant case, it is possible that there could be a basis for tolling. However, as the 4AC currently stands, there is not a basis to support such. For instance, Ms. Gjovik has not made allegations establishing that the *Elkins* rule is applicable here; nor has she made allegations supporting the three elements listed above.

The Court therefore grants the motion to dismiss the claim for a civil penalty as time barred. The only question remaining is whether the Court should give Ms. Gjovik leave to amend. Here, the Court does give leave because the time bar is a new argument raised by Apple that it could have asserted in the prior motion to dismiss but did not. Therefore, Ms. Gjovik has not yet had a chance to correct this deficiency, *i.e.*, by pleading some kind of tolling. It is not clear at this juncture that it would be futile for Ms. Gjovik to argue tolling. Any amendment permitted herein is limited to allegations supporting a tolling argument.

d. <u>Summary</u>

Apple’s motion to dismiss with respect to the § 1102.5 claim is granted. The following factual predicates are eliminated from the claim (with prejudice): (1) that Ms. Gjovik complained about smuggling and sanctions violations; (2) that Ms. Gjovik complained about privacy

violations related to Gobbler; and (3) that Ms. Gjovik made complaints about violations of CERCLA, RCRA, the Clean Air Act, and any other whole statutory framework.[7] The Court's ruling here leaves Ms. Gjovik with a substantive § 1102.5 claim based on complaints made about: (1) "[v]iolations of the anti-retaliation provisions of environmental laws," specifically, 42 U.S.C. §§ 9610 and 7622 and 15 U.S.C. 2622; (2) violation of § 8(a)(1) of the NLRA; (3) violation of California General Industry Safety Order 5194; (4) violation of 29 U.S.C. § 660; (5) violation of the California Constitution's right to privacy (but not related to Gobbler); and (6) violation of 42 U.S.C. § 2000e and California Government Code § 12920. To the extent Ms. Gjovik seeks a civil penalty on this remaining portion of the § 1102.5 claim, there is a time bar, but Ms. Gjovik has leave to amend to plead tolling.

2. <u>Count 4 – Claim for Violation of the HSITA</u>

In Count 4, Ms. Gjovik asserts a violation of California Labor Code § 6399.7. Apple has moved to dismiss Count 4 in its entirety.

Section 6399.7 provides, *inter alia*, that "[n]o person shall discharge or in any manner discriminate against, any employee because such employee has filed any complaint . . . under or related to the provisions of this chapter," *i.e.*, the Hazardous Substances Information and Training Act ("HSITA"). Cal. Lab. Code § 6399.7.

Section 6362 of the HSITA covers the application of the statute. It provides as follows:

> The rights and duties set forth in this chapter apply to all employers who use hazardous substances in this state, to any person who sells a hazardous substance to any employer in this state, and to manufacturers who produce or sell hazardous substances in this state. *The provisions of this chapter apply to hazardous substances which are present in the workplace as a result of workplace operations in such a manner that employees may be exposed under normal conditions of work or in a reasonably foreseeable emergency resulting from workplace operations.*

*Id.* § 6362 (emphasis added).

The HSITA also contains the following provisions:

[7] For instance, in the 4AC, Ms. Gjovik alleges that she made complaints about "[f]raud related to environmental claims" and then cites a huge swath of statutes: 42 U.S.C. §§ 7401-7676; 42 U.S.C. §§ 9601-75; 42 U.S.C. §§ 11001-50; and 15 U.S.C. §§ 2601-92. *See* 4AC ¶ 168.



United States District Court
Northern District of California

- "Employers shall furnish employees who may be exposed to a hazardous substance with information on the contents of the MSDS for the hazardous substances or equivalent information, either in written form or through training programs, which may be generic to the extent appropriate and related to the job." *Id.* § 6398(b).
- "Provision shall be made for employees to be informed of their rights under this chapter and under the standard to be adopted." *Id.* § 6398(c).

In the 4AC, Ms. Gjovik alleges that she

> repeatedly complained to Apple about employee's Right to Know about chemical exposure, about Apple's duty to disclose to workers if they were disclosed and if so to what and how much, and to explain the health impacts of those chemical exposures. Apple EH&S [*i.e.*, Environmental Health & Safety] told Gjovik that Apple legal decided that Apple employees "*have no Right to Know*." Gjovik then complained about this to the US EPA and other agencies and told Apple she was complaining about them.

4AC ¶ 176 (emphasis in original).

a. Beyond the Scope of Amendment

As an initial matter, Apple argues that the HSITA claim should be dismissed because Ms. Gjovik did not assert such a claim in the prior TAC and she was never given leave to include a HSITA claim in the 4AC.

Although Apple's argument is not entirely lacking in merit, the Court rejects it. In the prior TAC, Ms. Gjovik asserted in Count 10 a claim for violation of California Labor Code § 6310. *See* Cal. Lab. Code § 6310(a) (providing that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has [*e.g.*] [m]ade any oral or written complaint to the [Division of Occupational Safety and Health] [or] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health"). Count 10 included a reference to the HSITA (*i.e.*, § 6399.7). Paragraph 221 of the TAC stated:

> Apple discriminated against and discharged Gjovik because Gjovik complained about safety and health conditions or practices at the workplace to Apple managers and her coworkers. Apple discriminated against and discharged Gjovik because Gjovik reported work-related injuries and illnesses and requested information about work-related injury and illness reports or records.

> Apple knew about Gjovik's complaints through conversations, emails, meeting notes, internal complaints, external complaints, public interviews, and social media posts. Gjovik complained about possible violations of and issues related to:
>
> . . . .
>
> f. Right-to-Know Protection [Cal. Labor Code § 6399.7].

TAC ¶ 221 (bracketed reference to § 6399.7 in the original).

It appears that, with the 4AC, Ms. Gjovik tried to restructure the pleading by "breaking out" the HSITA claim as a separate claim. But notably, she still seems to consider the HSITA claim as tied her § 6310 claim because she has titled the HSITA claim as "Violation of Cal. Lab. C. § 6399.7 *via § 6310*." 4AC at 52 (emphasis added). She has also alleged in the 4AC that "'[a] violation of the provisions of this section *shall be a violation of the provisions of Section 6310*.'" 4AC ¶ 176 (quoting Cal. Lab. Code § 6399.7; emphasis added).

Given these circumstances, the Court rejects Apple's contention that Ms. Gjovik made an amendment beyond the scope of the original TAC. Ms. Gjovik is not bringing a new standalone claim based on § 6399.7; rather, she is still asserting a § 6310 claim that is predicated (in part) on § 6399.7. (The Court acknowledges that Ms. Gjovik also has a separate § 6310 claim in the 4AC which is pled as Count 3.)

b. <u>Hazardous Substances Present in the Workplace as a Result of Workplace Operations</u>

Apple argues next that, even if the Court were to consider the merits of the HSITA claim, it fails for two reasons: (1) Ms. Gjovik has failed to make allegations about exposure to any "hazardous substances," as that term is defined in the statute; and (2) Ms. Gjovik has failed to allege that there was exposure "as a result of workplace operations." Cal. Lab. Code § 6362.

The Court addresses the issue in (2) first. As noted above, the HSITA provides in relevant part as follows:

> The provisions of this chapter apply to hazardous substances which are present in the workplace *as a result of workplace operations* in such a manner that employees may be exposed under normal conditions of work or in a reasonably foreseeable emergency resulting from workplace operations.

Cal. Lab. Code § 6362 (emphasis added). Here, Apple notes that the workplace is implicitly



United States District Court
Northern District of California

Stewart 1 where Ms. Gjovik's office was located. (In other words, the claim does not implicate the ARIA factory since Ms. Gjovik did not work there.) Apple then argues that Ms. Gjovik has failed to allege that there were hazardous substances in Stewart 1 "as a result of workplace operations." This is because the vapors were allegedly present in Stewart 1 based on prior contamination by prior tenants or owners, and not based on current workplace operations by Apple. *See* Mot. at 21.

Apple's position relies on a reading of § 6362 which is arguably in some tension with the purpose of HSITA. *See* Cal. Lab. Code § 6361(b) ("The Legislature . . . intends by this chapter to ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace."). On the other hand, the California legislature could have specified that the statute applies to hazardous substances present in the workplace *without* the qualifier "as a result of workplace operations," but did not. The fact that the legislature chose to use the qualifier should not be discounted. In any event, the Court need not resolve the matter definitively because, in her opposition brief, Ms. Gjovik failed to address Apple's argument. The Court therefore deems any opposition waived. Although Ms. Gjovik is a pro se litigant, she appears to have a J.D. and is thus aware of the consequences of a failure to oppose. As a practical matter, the Court notes that its ruling here has a limited impact on Ms. Gjovik's case; it simply prevents Ms. Gjovik from including the factual predicate that she complained about employees' "right to know." This ruling does not entirely bar her from asserting retaliation for reporting environmental hazards to governmental authorities.

Given the Court's ruling, it need not address Apple's argument in (1) above (*i.e.*, that Ms. Gjovik failed to make allegations about exposure to any "hazardous substances," as that term is defined in the HSITA).[8]

c. Summary

Ms. Gjovik has alleged a violation of HSITA but only as a predicate to a violation of §

[8] At the hearing, Ms. Gjovik made several references to her sur-reply in support of her opposition to the motion to dismiss the HSITA claim. The Court has stricken the sur-reply, *see* Docket No. 98 (order), and therefore Ms. Gjovik cannot rely on it.



United States District Court
Northern District of California

6310. That particular § 6310 claim is dismissed with prejudice based on Ms. Gjovik's failure to oppose a substantive argument made by Apple (*i.e.*, on exposure "resulting from workplace operations").

3. Count 5 – Claim for Violation of § 98.6

In Count 5, Ms. Gjovik alleges a violation of California Labor Code § 98.6. Section 98.6 provides in relevant part that

> [a] person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . under or relating to their rights that are under the jurisdiction of the Labor Commissioner . . . or because of the exercise by the employee . . . on behalf of themselves or others of any rights afforded them.

Cal. Lab. Code § 98.6(a).

In its motion to dismiss, Apple makes a limited challenge to this claim. It argues only that, to the extent Ms. Gjovik is seeking a civil penalty, *see id.* § 98.6(b)(3) (providing that, "[i]n addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation"); 4AC, Prayer for Relief ¶ viii (asking for a civil penalty of $10,000 per employee for each violation of California Labor Code § 98.6 and § 1102.5), the claim is time barred.

The analysis above in Part II.D.1.c is applicable here. That is, Apple is correct that, under California Code of Civil Procedure § 340(a), there is a one-year limitations period for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." Cal. Code Civ. Proc. § 340(a). Because Ms. Gjovik was terminated in September 2021, she should have filed by September 2022 if she wanted to include a civil penalty as relief. She did not do so. If Ms. Gjovik is asking for equitable tolling, she currently has not pled enough to support such tolling. The Court gives Ms. Gjovik leave to amend to make allegations on tolling.

4. Count 6 – Claim for Violation of §§ 232, 232.5, 1101, and 1102

In Count 6, Ms. Gjovik asserts a claim for violation of various California Labor Code statutes:

- Section 232, which provides, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing the amount of his or her wages." Cal. Lab. Code § 232.
- Section 232.5, which provides, *inter alia*, that an employer may not "[r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions." *Id.* § 232.5.
- Section 1101, which provides, *inter alia*, that an employer shall not "make, adopt, or enforce any rule, regulation or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." *Id.* § 1101.
- Section 1102, which provides that "[n]o employer shall coerce or influence . . . his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." *Id.* § 1102.

Apple moves to dismiss Count 6 in part, as discussed below.

a. Beyond the Scope of Amendment

In the 4AC, Ms. Gjovik argues that Apple violated §§ 232.5, 1101, and 1102 because it retaliated against her for disclosing information about working conditions at Apple. Apple moves to dismiss the claims to the extent they are based on a specific factual predicate – *i.e.*, that it retaliated against her for making "statements to her [co-]workers about Palestinian and Muslim human rights, and [expressing] concerns about a recent article that was published alleging Apple is using Uyghur forced labor in its supply chain." 4AC ¶ 183. Apple argues that this factual predicate was never part of the prior TAC, and the Court did not give Ms. Gjovik leave to add new factual predicates to her claims.

Apple's argument has merit. And notably, in her opposition, Ms. Gjovik does not have any real response, simply arguing that she "may not have mentioned" such in "prior versions of



United States District Court
Northern District of California

her complaint – but her prior complaints were also dedicated to several large complex claims she ha[s] since dropped. Further, Apple is fully aware of the Palestine activism, as Gjovik fought with her managers and HR Business Partner over the matter in July 2021." Opp'n at 14.

To the extent Ms. Gjovik asks for leave to amend to include this factual predicate, the request is denied. Ms. Gjovik has filed five pleadings to date. She did not include the factual predicate in her original complaint or any of her amended complaints until the 4AC. Even if Apple was aware of the Palestine activism, it was not given notice in the pleadings that she has a legal claim against Apple based on that activism. Ms. Gjovik shall not be permitted to continue to modify her litigation positions on this issue.

Because the Court is not permitting an amendment here, it does not address Apple's additional arguments that there are deficiencies with the §§ 232.5, 1101, and 1102 claims to the extent they are based on the allegations related to Palestine, Muslim human rights, and Uyghur forced labor. The Court notes, however, that its ruling above does impact the §§ 1101 and 1102 claims as they seem to be based exclusively on allegations related to Palestine, Muslim human rights, and Uyghur forced labor. In other words, based on the Court's ruling above, Count 6 is now only a claim for violation of §§ 232 and 232.5.

b. Claims Based on §232 and 232.5

Apple argues that the §§ 232 and 232.5 claims must be dismissed to the extent they are based on allegations about disclosure of wages because Ms. Gjovik did not allege that "Apple *knew* about the alleged social media posts disclosing her wages that she contends prompted retaliation." Mot. at 23 (emphasis added); *see also* 4AC ¶ 181 ("[Ms. Gjovik] shared her wages on social media and discussed pay with her coworkers on social media in August 2021.").

In response, Ms. Gjovik suggests that she "posted on Twitter about wages at the same time Defendant was admittedly surveilling her Twitter posts." Opp'n at 14. But she does not point to any allegation that Apple admitted to surveilling or reading her Twitter posts. In her 4AC, she does suggest that Apple must have been surveilling her Twitter posts but again there are no specific facts to support this allegation.

The Court therefore dismisses the claims to the extent the claims are based on allegations

United States District Court
Northern District of California

about disclosure of wages. The only issue remaining is amendment. *See* Opp'n at 14 ("These claims were not pled in detail in the 4AC because of the page limits and because they were not challenged in a way that Plaintiff would expect they would be challenged now."). The Court gives Ms. Gjovik leave to amend to correct this deficiency since Apple presented a new argument that it never did before.

c. Summary

The §§ 232.5, 1101, and 1102 claims shall not be based on the factual predicate related to statements or expressions of concern about Palestine, Muslim human rights, and Uyghur forced labor. Because the §§ 1101 and 1102 claims are based on that factual predicate alone, they are dismissed in their entirety, and with prejudice. The §§ 232 and 232.5 claims – to the extent based on disclosure of wages – shall be dismissed but with leave to amend (*i.e.*, so that Ms. Gjovik can allege knowledge on the part of Apple of the wage disclosure).

5. Count 7 – Claim for Violation of § 96(k)

In Count 7, Ms. Gjovik asserts a claim for violation of California Labor Code § 96(k). *See* Cal. Lab. Code § 96(k) (providing that the Labor Commissioner "shall, upon the filing of a claim therefor by an employee, . . . take assignments of . . . [c]laims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises").

In the prior TAC, Ms. Gjovik included an alleged § 96(k) violation but it was part of her cause of action for violation of § 98.6. She has now in the 4AC pled a separate claim for violation of § 96(k) but she has also asserted that this claim is "via § 98.7." Section 98.7 states: "The complainant may, after notification of the Labor Commissioner's determination to dismiss a complaint, bring an action in an appropriate court, which shall have jurisdiction to determine whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to remedy the violation." Cal. Lab. Code § 98.7(d)(1).

Apple argues that the § 96(k) claim should be dismissed because there is no such thing as a private right of action for violation of § 96(k) – *i.e.*, the claim cannot be brought as a "standalone." Mot. at 24. Apple is correct that there is no such thing as a standalone § 96(k) claim. *See*

*Fleeman v. County of Kern*, No. 1:20-cv-00321-NONE-JLT, 2021 U.S. Dist. LEXIS 64294, at *16 (E.D. Cal. Mar. 31, 2021) (noting that "both state and district courts alike have determined § 96(k) provides only a procedure for the Labor Commissioner and does not provide for a private right of action"); *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 84 (2004) (stating that "section 96, subdivision (k), 'does not set forth an independent public policy that provides employees with any substantive rights, but rather, merely establishes a procedure by which the Labor Commissioner may assert, on behalf of employees, recognized constitutional rights'"). In spite of these authorities, Ms. Gjovik still takes the position that there *may* be a private right of action under § 96(k), but she offers no real support for the position other than public policy.

That being said, in her complaint, Ms. Gjovik has suggested that the § 96(k) claim is really being brought pursuant to § 98.7, which as noted above provides as follows: "The complainant may, after notification of the Labor Commissioner's determination to dismiss a complaint, bring an action in an appropriate court, which shall have jurisdiction to determine whether a violation occurred, and if so, to restrain the violation and order all appropriate relief to remedy the violation." Cal. Lab. Code § 98.7(d)(1). Furthermore, in her opposition, she has returned to § 98.6 as a predicate for the § 96(k) violation (as asserted in the TAC). *See* Opp'n at 17 (arguing that "[t]here is probably a private action for 96(k) via 98.6"). The latter argument has merit. *See Grinzi*, 120 Cal. App. 4th at 85 ("Section 98.6, subdivision (a) prohibits, in relevant part, termination because 'the employee . . . engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96. . . .'").

In light of the above, the Court does not view the § 96(k) claim as a true stand-alone claim. Rather, it construes the claim as a *§ 98.6 claim* predicated on § 96(k) (*i.e.*, consistent with what Ms. Gjovik pled in the TAC).

E. <u>Claims Related to Environmentally Unsafe Conditions</u>

The next group of claims brought by Ms. Gjovik are claims that relate to environmentally unsafe conditions, specifically, at the ARIA factory (located close to an apartment where Ms. Gjovik lived for a time).

- In Count 11, Ms. Gjovik alleges that the ARIA factory is a private nuisance.



United States District Court
Northern District of California

- In Count 12, Ms. Gjovik alleges that there is strict liability because ultrahazardous activities are conducted at the ARIA factory.
- Finally, in Count 13, Ms. Gjovik alleges that Apple intentionally inflicted emotional distress on her by "deliberately vent[in]g deadly substances on [her] and then deliberately ma[king] false statements to conceal [its] actions." 4AC ¶ 241. Ms. Gjovik maintains that the severe emotional distress she has suffered includes "the fear of developing cancer." 4AC ¶ 243.

1. <u>Time Bar</u>

Apple argues that all of the claims – which are tied to environmentally unsafe conditions at the ARIA factory – are time barred. Apple maintains that each of the claims has a two-year limitations period pursuant to California Code of Civil Procedure § 340.8. That statute provides:

> In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later.

Cal. Code Civ. Proc. § 340.8(a). Section 340.8 essentially "incorporates the discovery rule into the statute of limitations for toxic torts."[9] *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378, 1390 (2015). Apple then argues that, based on the allegations in the 4AC, Ms. Gjovik was aware of each of the elements above, or reasonably should have become aware of such, by March 2021 *at the latest*. Apple recites as follows:

- "Plaintiff alleges that she became severely ill in February 2020." Mot. at 13; *see*

[9] Ms. Gjovik suggests that § 340.8 is not the controlling statute on the limitations period but rather § 338(b) and/or § 335.1. *See* Opp'n at 21; *see also* Cal. Code Civ. Proc. § 338(b) (providing for a three-year limitations period for "[a]n action for trespass upon or injury to real property"); *id.* § 335.1 (providing for a two-year limitations period for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"). Ms. Gjovik's reliance on § 338(b) is not on point as she is not claiming injury to real property (as opposed to personal property). *See, e.g.*, 4AC, Prayer for Relief ¶ vi (referring to "cost to replace clothing and other chattel property that were destroyed by Apple's tortfeasing"). As for her citation to § 335.1, it has the same two-year limitations period as § 340.8.

*also* 4AC ¶ 31 (alleging that Ms. Gjovik moved into her apartment on Scott Boulevard in February 2020 and "quickly became severely ill").

- "She further alleges that she discovered 'elevated levels' of chemicals in her apartment in September 2020 and that certain of the chemicals she believes were in her apartment are carcinogenic." Mot. at 13; *see also* 4AC ¶¶ 34-35 (alleging that Ms. Gjovik "discovered elevated levels of volatile organic compounds in her indoor air" in September 2020 and that she thereafter "sought out multiple occupational and environmental exposure doctors, who told [her] that all of her symptoms were consistent with solvent and other chemical exposures"; adding that, "[a]fter Gjovik discovered her medical issues at the apartment were due to a chemical emergency, [she] quickly filed complaints" with the City of Santa Clara, the California EPA and other state agencies, and the EPA); 4AC ¶ 40 (alleging that Ms. Gjovik, hired an industrial hygienist to test the indoor air in her apartment in September 2020; results showed, *e.g.*, the presence of Toluene); 4AC ¶ 242 (alleging that Apple exposed Ms. Gjovik to carcinogens such as "TCE, Toluene, Arsine, and Vinyl Chloride).
- "She further asserts that she concluded in September 2020 that 'her medical issues at the apartment were due to a chemical emergency.'" Mot. at 13; *see also* 4AC ¶¶ 34-35 (alleging that Ms. Gjovik "discovered elevated levels of volatile organic compounds in her indoor air" in September 2020 and that she thereafter "sought out multiple occupational and environmental exposure doctors, who told [her] that all of her symptoms were consistent with solvent and other chemical exposures"; adding that, "[a]fter Gjovik discovered her medical issues at the apartment were due to a chemical emergency, [she] quickly filed complaints" with the City of Santa Clara, the California EPA and other state agencies, and the EPA); 4AC ¶ 41 (alleging that, in September 2020, Ms. Gjovik "set up additional air monitors to observe the levels of VOCs in her apartment" – "though she was not aware of the factory exhaust at the time").

- "She even alleges that she wrote and published an article on March 26, 2021 'about her chemical exposure with the air around ARIA' entitled 'I thought I was dying: My apartment was built on toxic waste' – clearly indicating that she suspected as of that date that her alleged injuries had a tortious cause." Mot. at 13; *see also* 4AC ¶ 57 (referring to article published in the SF Bay View newspaper and adding that, after the article was published, "[m]ore victims and witnesses promptly came forward," some being Apple employees).
- "She moved out of [her] apartment in October 2020." Mot. at 13; *see also* 4AC ¶ 8 (alleging that Ms. Gjovik "held a leasehold . . . in February 2020 through October 2020").

According to Apple, if Ms. Gjovik knew or should have been aware that **(1)** she was ill (an injury) **(2)** due to chemical exposure (the physical cause) **(3)** caused or contributed to by another (someone's toxic waste) – and all by March 2021 at the latest when she published her article – then she should have filed suit by March 2023, but she did not file suit until September 2023. Apple adds that the fact that Ms. Gjovik allegedly did not know the *identity* of the wrongdoer until 2023 is irrelevant because the California Supreme Court has held as follows:

> While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute. As we have observed, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Aggrieved parties generally need not know the exact manner in which their injuries were "effected, nor the identities of all parties who may have played a role therein."

*Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (stating that "[t]he discovery rule . . . allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity . . . because the identity of the defendant is not an element of a cause of action"; adding that, once a plaintiff is aware of a cause of action, "he normally has sufficient opportunity, within the applicable limitations period, to discover the identity") (internal quotation marks omitted).



United States District Court
Northern District of California

United States District Court
Northern District of California

In evaluating Apple's argument, the Court must take into account that § 340.8 effectively "incorporates the discovery rule into the statute of limitations for toxic torts." *Rosas*, 236 Cal. App. 4th at 1390.

> [U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, **unless** the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.

*Fox*, 35 Cal. 4th at 803 (emphasis added).

Based on the allegations in the complaint, the Court agrees with Apple that the statute of limitations began to run at the latest by March 2021: at that time, she knew she was injured and she suspected that her injury was the result of someone else's wrongdoing – as reflected in her article published at the time.[10] *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) (stating that, "[u]nder the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"; "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts" and "cannot wait for the facts to find her").

However, as indicated above, if Ms. Gjovik can

> plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action . . . . , the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis.

*Fox*, 35 Cal. 4th at 803 (emphasis added); *cf. id.* at 808 (stating that "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury").

In the case at bar, Ms. Gjovik would have a factual basis for her environmental claims

---

[10] At the time that she wrote her article in March 2021, it seems Ms. Gjovik believed that her apartment was built on a toxic site. See https://sfbayview.com/2021/03/i-thought-i-was-dying-my-apartment-was-built-on-toxic-waste/ (last visited 9/30/2024).

Case 3:23-cv-04597-EMC Document 124 Filed 10/01/24 Page 28 of 41



against Apple once she knew or suspected that the ARIA factory was the source of the chemical exposure. Apple correctly argues that a plaintiff need not know of a defendant's identity in order for the statute of limitations to begin to run. However, Ms. Gjovik still had to know or suspect that the cause of her injury was chemical exposure emanating from the factory close to her apartment – as opposed to her apartment being located on a toxic site, as she believed at the time she wrote her article in March 2021. *Cf. Fox*, 35 Cal. 4th at 813 (noting that, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim").

The Court also acknowledges that a plaintiff does not have to know of "the specific causal mechanism by which he or she has been injured" in order for the statute of limitations to run – *e.g.*, "the precise manner in which a wrongdoer was negligent." *Knowles v. Superior Ct.*, 118 Cal. App. 4th 1290, 1298 (2004). But there is a difference between a specific causal mechanism and the (purported) cause itself. Even if Ms. Gjovik did not have to know the precise manner in which the factory (allegedly) leaked chemicals into the environment, she still had to know or suspect that it was the factory responsible for the incidental chemical exposure at her home, a site apart from the factory. *Cf. Rosas*, 236 Cal. App. 4th at 1391-92 (noting that, in a prior case, where plaintiff suffered injuries caused by mold exposure, delayed discovery rule was rejected; "[t]here was undisputed evidence that the plaintiff experienced severe bouts of asthma and was hospitalized in the summer of 1984, and on or before October 1984, plaintiff had her condominium unit tested for mold contamination, *retained a microbiologist to pinpoint the source of the mold*, and her husband sent a letter to the defendant stating that the flooding caused mold which caused the plaintiff to suffer extreme allergic reactions a year earlier") (emphasis added).

In the 4AC, Ms. Gjovik has alleged that she did not know about the semiconductor fabrication activities at ARIA until February 2023. *See* 4AC ¶ 149. The problem is that she has not pled any "facts to show (1) the . . . manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Ms. Gjovik attempted to correct this deficiency with her sur-reply, but a sur-reply is not a pleading and, in any event, it was

stricken. *See* Docket No. 98 (order).

That the Court struck the sur-reply does not preclude the Court from giving Ms. Gjovik the opportunity to amend to correct the deficiency in her pleading. Apple contends that amendment should not be permitted because it would be a futile exercise. Specifically, Apple asserts that certain allegations Ms. Gjovik made in her prior second amended complaint ("SAC") are judicial admissions demonstrating that amendment would be futile. *Cf. In re Bang Energy Drink Mktg. Litig.*, No. 18-cv-05758-JST, 2021 U.S. Dist. LEXIS 146977, at *10 (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt may disregard the contradictory pleading").

The Court has reviewed the portions of the SAC identified by Apple. The allegations in the SAC do reflect that Ms. Gjovik knew about the ARIA factory in September 2020 and that, at that time, she seems to have considered it as a possible source of the chemical exposure – specifically, because "'[i]t was registered with the EPA for Toxic Releases (TRI).'" SAC ¶ 185. However, Ms. Gjovik goes on to allege that "[t]he prior TRI registration was for a different company and Apple did not submit their first filing until mid-2021." SAC ¶ 185. The allegations in the SAC, therefore, do not establish futility of amendment. Accordingly, the Court shall allow Ms. Gjovik to amend to address the time-bar problem.[11]

2. Count 12 – Claim for Ultrahazardous Activities

Apple contends that, even if there is no time bar, Count 12 at the very least should still be dismissed because Ms. Gjovik has failed to sufficiently plead ultrahazardous activities (thus giving rise to strict liability).

In its prior order on the TAC, the Court held that Ms. Gjovik's claim that there were ultrahazardous activities at ARIA survived only to the extent she had "made allegations that there are chemicals used for which there is no safe level of exposure, thus implying they are absolutely

[11] To the extent Ms. Gjovik asserts that there is no time-bar problem because the ARIA factory is a continuing nuisance, that argument lacks merit. Ms. Gjovik moved out of her apartment near the ARIA factory in October 2020.



United States District Court
Northern District of California

prohibited under any circumstance." Docket No. 73 (Order at 29). In the pending motion to dismiss, Apple argues that, "for the first time," Ms. Gjovik identifies the "specific statutes on which she relies for the assertion that certain chemicals are 'absolutely prohibited' – yet under the plain language of those statutes, the chemicals at issue are not 'absolutely prohibited.'" Mot. at 17-18. *See, e.g.*, 17 Cal. Code Regs. § 93000 (providing that "[e]ach substance identified in this section has been determined by the State Board to be a toxic air contaminant as defined in Health and Safety Code section 39655" but finding that, for each substance, "there is not sufficient available scientific evidence to support the identification of a threshold exposure level").

In her opposition, Ms. Gjovik argues that the chemicals at issue could establish that Apple engaged in ultrahazardous activities because they are poisonous and there are multiple considerations in whether an activity is ultrahazardous – *e.g.*, "[a]n activity might be reasonably safe if performed in an isolated area, yet involve an unreasonable risk of harm if conducted in a highly populated area." Opp'n at 25. The problem for Ms. Gjovik is that she previously claimed ultrahazardous activity because Apple used chemicals for which there is *no* safe level of exposure. She is now backtracking from that position. The Court holds Ms. Gjovik to her prior position. Because Ms. Gjovik now essentially concedes that the chemicals at issue are not absolutely prohibited, the Court dismisses the claim for ultrahazardous activities, and with prejudice.

3. <u>Count 13 – Claim for IIED</u>

Count 13 is the claim for intentional infliction of emotional distress ("IIED").

> The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . .' Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." The defendant must have engaged in "conduct intended to inflict injury or engaged in with the realization that injury will result."

*Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

For Count 13, Apple argues that, even if there is no time bar, the claim is deficient because Ms. Gjovik has failed to allege that Apple's conduct was "directed at [her] or undertaken with



United States District Court
Northern District of California

Case 5:25-cv-07360-PCP Document 1-8 Filed 09/17/25 Page 31 of 41

United States District Court
Northern District of California

knowledge of [her] presence and [exposure to the chemicals].” Mot. at 14 (internal quotation marks omitted). In *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1002 (1993), the California Supreme Court stated that, to establish an IIED claim, the conduct must be not only intentional and outrageous but also “directed at the plaintiff, or occur[ring] in the presence of a plaintiff of whom the defendant is aware[;] [t]he requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury.” *Id.* at 1002 (internal quotation marks omitted).

*Potter* supports Apple’s position. Notably, *Potter* took into account a possible “finding that [the defendant] had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and subsequently discover the facts.” *Id.* at 1003. Nevertheless, the Court held this was not good enough to support a claim for IIED:

> because knowledge *of these particular plaintiffs* is lacking.
>
> This conclusion is consistent with the result reached in *Christensen, supra*, 54 Cal.3d 868, itself. There we held that, even though it was alleged that defendants' conduct in mishandling the remains of deceased persons was intentional and outrageous and was substantially certain to cause extreme emotional distress to relatives and close friends of the deceased, the plaintiffs' cause of action for intentional infliction of emotional distress was not sufficiently supported where there was no allegation that the defendants' misconduct was directed primarily at plaintiffs, or that it was calculated to cause them severe emotional distress, or that it was done with knowledge of their presence and with a substantial certainty that they would suffer severe emotional injury.

*Id.* (emphasis in original).

Accordingly, the Court dismisses the IIED claim. The Court shall give Ms. Gjovik leave to amend here because Apple has made a new argument in challenging the claim. That being said, the Court notes that it is extremely skeptical that Ms. Gjovik could, in good faith and in compliance with her Rule 11 obligations, allege that Apple directed its conduct at her specifically or with knowledge of her presence specifically, and that its conduct was calculated to cause her severe emotional distress.

United States District Court
Northern District of California

4. <u>Summary</u>

Count 12 is dismissed with prejudice. Counts 11 and 13 are dismissed but with leave to amend. For Count 11, there is the time-bar problem. For Count 13, there is both the time-bar problem and a merits problem. Any amendment will have to overcome these problems.

F. <u>Remaining Claims</u>

1. <u>Count 9 – Claim Related to Privacy Violation</u>

Count 9 is Ms. Gjovik's claim for violation of § 17200.

In its prior order, the Court noted that the claim (as pled in the TAC) seemed

> to be based on three factual predicates: (1) Apple's coercing employees to provide personal data for Apple's commercial use, such as with the Gobbler application, *see* TAC ¶ 255 (alleging that no consent was obtained or compensation provided); (2) Apple's coercing employees to be a part of invasive studies, *see* TAC ¶ 258; and (3) Apple's establishment of a health care clinic, called AC Wellness, which it then used improperly. *See* TAC ¶ 259. (To be frank, the Court does not understand the allegations made with respect to (3).)

Docket No. 73 (Order at 45).

Apple argued that Ms. Gjovik lacked statutory standing to proceed with the claim because she failed to allege that she lost money to Apple which Apple should disgorge. *See* Cal. Bus. & Prof. Code § 17203 (providing that a "court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"); *see also Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497-98 (2007) (noting that the California Supreme Court has "held that the only remedy expressly authorized by section 17203 was restitution to individuals who had an ownership interest in money paid to the defendants; there was nothing, either in the express language of the statute or in its legislative history, to indicate that the legislature intended to authorize a court to 'order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits'"). The Court agreed with Apple that disgorgement would not be an available remedy but stated that Apple had failed to explain why Ms. Gjovik lacked standing to pursue injunctive relief. The Court added that it was giving Ms. Gjovik leave to amend to clarify her claim based on AC Wellness. *See* Docket No. 73 (Order at 45-46).

In the pending motion, Apple moves to dismiss the § 17200 claim as repleaded in the 4AC, even though Ms. Gjovik now seeks only injunctive relief and has dropped allegations related to AC Wellness. *See, e.g.*, 4AC ¶¶ 205-06 (asking the Court to order Apple "to disgorge unlawful data and the fruit of the poisoned data" and to prohibit Apple "from using personal employee data in for-profit product development"); *see also* Opp'n at 18 (stating that "Plaintiff does not need economic restitution – and instead requests disgorgement (deletion) of data and software – not money"). Apple has made multiple arguments – that Ms. Gjovik has made an amendment beyond the scope permitted; that she lacks statutory standing to proceed with the claim; that she also lacks Article III standing; that the claim is time barred; and that the relief sought is improper. In her opposition, Ms. Gjovik addresses at most the standing issues. Because Ms. Gjovik has failed to address the remaining arguments made by Apple, the Court deems any opposition waived, and therefore dismissal of the claim is appropriate.

The Court also concludes, based on its independent review, that, at the very least, Apple's arguments on the time bar and improper relief have merit. Regarding the time bar, there is a four-year limitations period under California Business & Professions Code § 17208. Apple notes that, in her prior pleading (the SAC), Ms. Gjovik alleged that Apple "coerced her to provide personal data in August 2017, nearly seven years before she introduced this cause of action in March 2024." Mot. at 8; *see also* SAC ¶¶ 136-42 (alleging that, in August 2017, an Apple engineering manager emailed a list of Apple employees, including Ms. Gjovik, about a Gobbler user study and that Ms. Gjovik was coerced to use the Gobbler application to provide biometrics and videos at a supposed social event). Ms. Gjovik cannot avoid her own allegations even if these allegations were made in a prior pleading. *See Bang Energy Drink*, 2021 U.S. Dist. LEXIS 146977, at *10 (N.D. Cal. June 30, 2021) (indicating that "factual allegations in a prior complaint are 'judicial admissions,' and 'when the party fails to provide a credible explanation for its "error," the [c]ourt may disregard the contradictory pleading").

Ms. Gjovik could have, but did not, contend there is no time bar because there is some kind of continuing accrual, *i.e.*, because Gobbler is still on her personal account. *See Aryeh v. Canon Bus. Solns., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (noting that, under the continuing accrual

theory, "recurring invasions of the same right can each trigger their own statute of limitations"). Any such argument has been waived.

As for improper relief, Apple argues that, at best, Ms. Gjovik can only obtain relief for herself and not others, especially as she has not pled a class action. The Court agrees. Section 17203 provides in relevant part:

> Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 *and* complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

Cal. Bus. & Prof. Code § 17203 (emphasis added). Section 382 in turn provides:

> If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.

Cal. Code Civ. Proc. § 382; *see also Woods v. Am. Film Instit.*, 72 Cal. App. 5th 1022, 1028-29 (2021) ("A lawsuit may proceed as a class action 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' (Code Civ. Proc., § 382.)"). The California Supreme Court has noted:

> The voters restricted private enforcement of the UCL in 2004, by approving Proposition 64. . . . Proposition 64 . . . required that representative actions by private parties must "compl[y] with Section 382 of the Code of Civil Procedure." Therefore, a private plaintiff must file a class action in order to represent the interests of others.

*Zhang v. Superior Court*, 57 Cal. 4th 364, 372 (2013).

Accordingly, the Court dismisses the § 17200 claim because, even if Ms. Gjovik has standing (both statutory and Article III), she has failed to address the other arguments made by Apple. Apple's arguments on the time bar and improper relief also have merit.

2. <u>Count 10 – Claim Related to Post-Termination Conduct</u>

Count 10 is another claim for IIED. In Count 10, Ms. Gjovik largely targets post-



United States District Court
Northern District of California

termination conduct by Apple employees:

> [S]everal named Apple employees posted on social media, under their own names, claiming Gjovik's claims were bogus, that Gjovik was a liar and bad actor, and that Gjovik deserved the harm Apple was causing her. Five named employees took an active role in posting defamatory and harassing things about Gjovik, contacting Gjovik's friends and associates to speak negatively about Gjovik and urge them not to associate with her, and to create negative rumors about Gjovik in order to ostracize and alienate her.

4AC ¶ 210.

Ms. Gjovik also makes more serious claims, asserting that Apple engaged in

> witness intimidation, witness retaliation, burglary, extortion, threats, and surveillance. Apple stalked Gjovik in California and New Yok, sending people to sit outside her apartment, follow her around, and take photos/videos of her inside her home from outside the windows. Apple surveilled Gjovik and even bugged her property, including, apparently, directly intercepting her home internet.
>
> . . . . Apple repeatedly broke into Gjovik's home in at least the state of California and Commonwealth of Massachusetts, but probably also the state of New York.

4AC ¶¶ 215-16. Ms. Gjovik further asserts that Apple "handle[d] [her dog] during one of the break-ins, leaving a strong odor of cigarettes on his little body," "sent her possessions to her in a box with broken glass and threatened it could contain a severed head," "repeatedly threatened to 'ruin' and 'destroy' her, and even sent her emails pretending to be government employees threatening her to stop speaking about Apple's chemical leaks." 4AC ¶¶ 217-28.

In its motion to dismiss, Apple argues that some of the conduct is not actionable as it is not outrageous – *e.g.*, Ms. Gjovik being called a liar. As for the more serious conduct, Apple argues that Ms. Gjovik's allegations are too conclusory, not giving enough information about how, *e.g.*, Apple stalked her or broke into her home, who at Apple engaged in this conduct (or how Ms. Gjovik knew that it was an Apple employee), and when. The Court agrees with both of Apple's criticisms. Being called, *e.g.*, a liar is, as a matter of law, not outrageous conduct sufficient to support a claim for IIED. *See King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 786 (N.D. Cal. 2021) (noting that "[l]iability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"); *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1124-25, 1129 (1989) (stating that "[defendant's] alleged conduct [which included calling plaintiff a



United States District Court
Northern District of California

liar], while objectively offensive and in breach of common standards of civility, was not so egregiously outside the realm of civilized conduct as to give rise to actionable infliction of mental distress"). To the extent Ms. Gjovik claims that Apple has engaged in more serious conduct, there must be some specificity about what exactly the wrongdoing was (or Apple cannot fairly defend itself). Ms. Gjovik must also provide specific, concrete facts establishing a plausible basis for her belief that the wrongdoing she generally describes was in fact conducted by Apple. *See Iqbal*, 556 U.S. at 678 (stating that a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'"). Specificity is particularly important where the claims on their face strain plausibility. *Cf. Lindblad v. Livermore Chamber of Commerce*, No. 21-cv-06464-WHO, 2021 U.S. Dist. LEXIS 237998, at *1 (N.D. Cal. Dec. 13, 2021) (noting that "[a] court may dismiss a claim as 'clearly baseless,' including allegations that are 'fanciful' or 'fantastic'") (quoting *Denton v. Hernandez*, 504 U.S. 25 (1992)). Furthermore, if Ms. Gjovik is arguing that Apple should be held liable because the misconduct was carried out by an Apple employee, Apple is not automatically liable for the intentional torts of its employees. As the Court noted in its prior order, an employer can be held vicariously liable for the torts of its employees only if they were committed within the scope of the employment; an employer will not be held liable if an employee inflicts injury out of personal malice not engendered by the employment. *See* Docket No. 73 (Order at 32-33); *see also Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 142-43 (1981) (stating that "[t]he test is not whether it is foreseeable that one or more employees might at some time act in such a way as to give rise to civil liability, but rather, whether the employee's act is foreseeable in light of the duties the employee is hired to perform") (emphasis in original).

The only issue remaining is whether Ms. Gjovik should be given leave to amend. The Court shall not permit Ms. Gjovik to base an IIED claim simply because she was allegedly called a liar (or other similar conduct). Such a claim would be futile as that conduct is not, as a matter of law, outrageous. However, the Court shall allow Ms. Gjovik to amend to the extent she has implicated more serious misconduct (*e.g.*, stalking, breaking into her home, etc.) because Apple's challenge is a new one not previously made before. *See* Docket No. 73 (Order at 42) (expressing confusion that Ms. Gjovik made allegations about bugging, etc. but, at that time, did not base her

United States District Court
Northern District of California

IIED claim in her TAC on these allegations). That being said, the Court reiterates statements made in its prior order: even though an employer can be held vicariously liable for the torts of its employees committed within the scope of the employment (even if willful and without the authorization of the employer), "an employer will not be held liable for an intentional tort that did not have a *causal nexus* to the employee's work. For instance, [i]f an employee inflicts an injury out of personal malice, not engendered by the employment, the employer is not liable." Docket No. 73 (Order at 33) (emphasis added; internal quotation marks omitted). "Respondeat superior liability should apply only to the type of injuries that as a practical matter are sure to occur in the conduct of the employer's enterprise. The employment, in other words, must be such as predictably to create the risk employees will commit intentional torts of the type for which liability is sought." Docket No. 73 (Order at 33) (internal quotation marks omitted). If Ms. Gjovik does amend Count 10, she must allege specific concrete facts to support a basis for respondeat superior liability. The Court has strong concerns as to whether Ms. Gjovik can, in good faith, allege a basis for respondeat superior liability.

3. Count 8 – Claim for Breach of the Implied Covenant

Finally, in Count 8, Ms. Gjovik asserts a claim for breach of the implied covenant of good faith and fair dealing.

In its prior order, the Court allowed the claim to proceed to the following extent:

> Apple does not seem to have taken into account the suggestion in the TAC (albeit, not a clear one) that Apple timed her firing her to deprive her of a performance bonus. *See Guz*, 24 Cal. 4th at 353 n.18 (stating that "the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits" – *e.g.*, "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned") (emphasis in original).

Docket No. 73 (Order at 41).

In its motion, Apple's main argument is that the claim should be dismissed because the implied covenant inherent in all contracts simply prevents a contracting party from unfairly frustrating the other party's right to receive the benefits of the contract, and, here, Ms. Gjovik has not identified "any contract obligating Apple to pay out [performance] bonuses [including]

irrespective of whether an employee was terminated prior to payment." Mot. at 25; *see also* 4AC ¶ 190 (simply alleging that "Apple breached the covenant by intentionally terminating Gjovik [in September 2021] when her annual performance review was due, which would have been accompanied by a performance bonus that she had already earned through her successful performance in 2020-2021").

Apple raises a fair argument, and, in her opposition, Ms. Gjovik fails to address it in any way. That being the case, the Court dismisses the claim with prejudice; any opposition has been waived.

G. Motion to Strike

Apple has moved to strike certain allegations to the extent the Court dismisses any of the claims which are based on those allegations. As a practical matter, this is not a helpful approach because it is possible that an allegation may be relevant to more than one cause of action. If Apple's concern here is that Ms. Gjovik will seek discovery beyond the scope of the claims that survive the 12(b)(6) challenge, then it can raise that concern before the magistrate judge or this Court, where needed, and when the adjudicator will have more concrete facts before it. The motion to strike therefore is denied, but without prejudice to Apple seeking relief in a different context, where appropriate.

## III. CONCLUSION

For the foregoing reasons, the Court denies Apple's motion to strike but grants in part and denies in part its motion to dismiss. Specifically:

**Retaliation Claims**

- Count 2 – claim for violation of § 1102.5. Apple has moved to dismiss part of the claim. The motion is granted. The following factual predicates are eliminated from the claim (with prejudice): (1) that Ms. Gjovik complained about smuggling and sanctions violations; (2) that Ms. Gjovik complained about privacy violations related to Gobbler; and (3) that Ms. Gjovik made complaints about violations of CERCLA, RCRA, and the Clean Air Act or any other whole statutory framework. The following substantive claims remain as pled: complaints about (1) violations

United States District Court
Northern District of California

of the anti-retaliation provisions of environmental laws, specifically, 42 U.S.C. §§ 9610 and 7622 and 15 U.S.C. 2622; (2) violation of § 8(a)(1) of the NLRA; (3) violation of California General Industry Safety Order 5194; (4) violation of 29 U.S.C. § 660; (5) violation of the California Constitution's right to privacy (but not related to Gobbler); and (6) violation of 42 U.S.C. § 2000e and California Government Code § 12920. To the extent Ms. Gjovik seeks a civil penalty on the remaining portion of the § 1102.5 claim, there is a time bar; however, Ms. Gjovik has leave to amend. Ms. Gjovik has leave to amend to plead tolling only.

- Count 4 – claim for violation of HSITA. Apple has moved to dismiss the claim in its entirety. The motion is granted. The claim for violation of the HSITA (§ 6399.7) is deemed a claim for violation of § 6310. This specific § 6310 claim is dismissed with prejudice based on Ms. Gjovik's failure to oppose Apple's argument that she failed to allege exposure resulting from workplace operations.
- Count 5 – claim for violation of § 98.6. Apple has moved to dismiss the claim in part. The motion is granted. The claim for a civil penalty is time barred, but Ms. Gjovik has leave to amend to plead tolling.
- Count 6 – claim for violation of §§ 232, 232.5, 1101, and 1102. Apple has moved to dismiss the claim in part. The motion is granted. The factual predicate related to Palestine, Muslim human rights, or Uyghur forced labor is eliminated from the §§ 232.5, 1101, and 1102 claims (with prejudice). As a practical matter, this also results in the dismissal with prejudice of the §§ 1101 and 1102 claims. To the extent the §§ 232 and 232.5 claims are predicated on disclosure of wages, it is dismissed but with leave to amend (*i.e.*, so that Ms. Gjovik can allege knowledge on the part of Apple of the wage disclosure). This is the only amendment permitted.
- Count 7 – claim for violation of § 96(k). Apple has moved to dismiss the claim in its entirety. The motion is denied. The Court does not view the § 96(k) as a true stand-alone claim but rather construes the claim as a § 98.6 claim predicated on §

96(k). This is consistent with the position Ms. Gjovik took in the TAC.

**Claims Related to Environmentally Unsafe Conditions**

- Count 11 – claim for private nuisance. Apple has moved to dismiss the claim in its entirety. The motion is granted. The claim is time barred but Ms. Gjovik has leave to amend to address the statute-of-limitations problem.
- Count 12 – claim for ultrahazardous activities. Apple has moved to dismiss the claim in its entirety. The motion is granted. As above, there is a time bar. Moreover, the Court does not give leave to amend and dismisses the claim with prejudice because Ms. Gjovik previously claimed ultrahazardous activity on the basis that Apple used chemicals for which there is no safe level of exposure, but the chemicals she identified in the 4AC are not absolutely prohibited.
- Count 13 – claim for IIED. Apple has moved to dismiss the claim in its entirety. The motion is granted. As above, there is a time bar. Also, on the merits, the claim fails. Ms. Gjovik has leave to amend to address the statute-of-limitations problem and the merits problem. As to the merits, the Court is extremely skeptical that Ms. Gjovik can amend in good faith and in compliance with her Rule 11 obligations.

**Remaining Claims**

- Count 9 – claim related to privacy violation (§ 17200 violation). Apple has moved to dismiss the claim in its entirety. The motion is granted. Even if Ms. Gjovik has standing, she has failed to address the other arguments made by Apple (*e.g.*, time bar and improper relief sought). Dismissal is with prejudice.
- Count 10 – claim related to post-termination conduct (IIED). Apple has moved to dismiss the claim in its entirety. The motion is granted. The claim is dismissed with prejudice to the extent Ms. Gjovik asserts IIED based on being called a liar, bad actor, and the like. However, Ms. Gjovik has leave to amend to provide nonconclusory allegations on the more serious conduct identified in the 4AC (*e.g.*, stalking, breaking into Ms. Gjovik's home, etc.). If Ms. Gjovik amends, she must plead nonconclusory allegations on the more serious conduct, *and* she must plead

United States District Court
Northern District of California

United States District Court
Northern District of California

concrete facts to support a basis for respondeat superior liability. The Court has serious concerns as to whether Ms. Gjovik can plead in good faith a basis for respondeat superior liability.

- Count 8 – claim for breach of the implied covenant. Apple has moved to dismiss the claim in its entirety. The motion to dismiss is granted and with prejudice. Any opposition has been waived.

The Court emphasizes that Ms. Gjovik is not permitted to amend her pleading except as expressly authorized in this order. If the Court has not explicitly allowed Ms. Gjovik to plead a new claim, legal theory, or factual predicate, then she cannot plead such in the amended complaint.

The fifth amended complaint shall be filed by **October 29, 2024**, and shall be limited to seventy-five (75) pages in length. Apple shall file its response to the amended pleading by **November 26, 2024**.

Based on the Court's ruling here, the only discovery permitted at this time is "Phase I" discovery (*i.e.*, discovery needed for the settlement conference) on Counts 1 and 3 (which Apple did not contest at all in its motion to dismiss) and those parts of the retaliation claims above that were not challenged or that otherwise survived.

This order disposes of Docket Nos. 78, 79, and 101.

**IT IS SO ORDERED**.

Dated: October 1, 2024

EDWARD M. CHEN
United States District Judge