Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIV.

**ASHLEY M. GJØVIK**,
*an individual,*

**PLAINTIFF,**

***vs.***

**APPLE INC.**,
*a corporation,*

**CITY OF SANTA CLARA,**
*a local government,*

**& THE PROPERTY OWNERS: MR. KALIL JENAB,**
*individually and as agent of various entities,*

**AND MS. JULIA LINDSEY & MS. KATHLEEN WOODRUFF.**
*in their respective capacities as trustees.*

**DEFENDANTS**.

**Case No. 25-CV-07360-PCP**

**District Judge**: Honorable P. Casey Pitts

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS APPLE AND PROPERTY OWNERS' MOTION TO DISMISS**

**12(b)(1) & 12(b)(6)**

**HEARING:**
Date: Nov. 5 2026
Time: 10:00 A.M.
Courtroom: 8, 4th Floor

# TABLE OF CONTENTS

**I. STATEMENT OF THE ISSUES .......... 2**

**II. RELEVANT FACTS .......... 2**

**III. STANDARD OF REVIEW .......... 4**

**IV. ARGUMENT .......... 5**

**A. Plaintiff Has Article III Standing 5**

i. Plaintiff's use of the affected area is concrete, current, and diminished .......... 5
ii. Plaintiff's concern is reasonable, and Apple cannot call it speculative .......... 6
iii. Standing extends to each claim .......... 7
iv. The operative complaint establishes standing .......... 8

**B. Plaintiff's Notice Satisfied the Citizen-Suit Notice Provisions 9**

i. The Notice meets the technical requirements .......... 9
ii. The Notice identified the violations with specificity, and each count falls within it .......... 11
iii. Defendants' "cannot be cured" argument misreads the statutes .......... 14

**C. No Agency Action Bars These Claims, and the Violations Are Ongoing 14**

i. Only an action "in a court" bars a citizen suit .......... 14
ii. The TAC alleges ongoing and repeated violations .......... 15
iii. No settlement moots the claims .......... 16
iv. No claim is time-barred .......... 16

**D. The TAC States Claims Under RCRA 17**

i. The TAC pleads an imminent and substantial endangerment .......... 17
ii. Counts 4-8 enforce regulations promulgated under RCRA .......... 17

**E. The TAC States Claims Under the Clean Air Act 18**

i. Apple exceeded its permit limits and operated unpermitted sources .......... 18
ii. Counts 10-12 present questions of fact about potential to emit, and Counts 2 and 9 rest on enforceable requirements .......... 19

**F. The TAC States Claims Under the Clean Water Act 19**

i. No NPDES permit shields Apple's discharges, and its pretreatment obligations are enforceable .......... 19
ii. The violations are ongoing .......... 20

iii. Counts 3, 18, and 23 state claims for unpermitted discharges, including against the owners ..... 20
iv. Counts 16 and 17 state claims for discharges into the buried Saratoga Creek system..... 21

**G. The TAC States Claims Under EPCRA 22**

i. Apple is subject to TRI reporting and stopped reporting ..... 22
ii. The TAC states claims under §§ 304, 311, and 312..... 23

**H. The TAC States Claims Under TSCA 24**

**I. Citing a Provision Is Not Pleading a Claim 25**

**J. Rules 8 and 9(b) Provide No Basis for Dismissal 26**

**K. The TAC States a Claim for Public Nuisance 27**

i. Claim preclusion does not apply, and Apple is estopped from arguing it..... 27
ii. The claim is timely because the nuisance continues ..... 28
iii. Plaintiff alleges special injury ..... 28
iv. Civil Code § 3482 does not apply ..... 29
v. The City Code and the City's own record confirm the nuisance ..... 29

**L. The TAC States Claims Against the Landlord/Owner Defendants 30**

i. The TAC alleges the owners' own conduct and control ..... 30
ii. The owners are liable for the nuisance ..... 31
iii. The trustees had notice through the ownership's agent and counsel ..... 31

**M. Objections to Defendants' Request for Judicial Notice 32**

**N. Any Dismissal Should Be Without Prejudice and With Leave to Amend 33**

**V. CONCLUSION ..... 33**

**VI. [PROPOSED] ORDER ..... 35**

# TABLE OF AUTHORITIES

**Cases**

*Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160 (1996) ........ 27

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) ........ 28, 31

*Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029 (N.D. Cal. 2017) ........ 20

*Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024) ........ 8

*Cent. Valley Eden Env't Defs. v. Castle & King Rock & Ready Mix*, No. 2:23-cv-02616-SCR, ECF No. 23 at 5-6 (E.D. Cal. May 15, 2025) ........ 8

*Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794 (9th Cir. 2009) ........ 11

*Center for Biological Diversity v. U.S. Forest Service*, 80 F.4th 943 (9th Cir. 2023) ........ 30

*Clarke v. Pacific Gas & Electric Co.*, 501 F. Supp. 3d 774 (N.D. Cal. 2020) ........ 16

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943 (9th Cir. 2002) ........ 8, 11, 13

*Cmty. of Cambridge Env't Health & Cmty. Dev. Grp. v. City of Cambridge*, 115 F. Supp. 2d 550 (D. Md. 2000) ........ 13

*Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC*, 158 F.4th 1052 (9th Cir. 2025) ........ 15

*College Park Holdings, LLC v. RaceTrac Petroleum, Inc.*, 239 F. Supp. 2d 1322 (N.D. Ga. 2002) ........ 9

*County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020) ........ 20

*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292 (2006) ........ 30

*Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) ........ 4, 5

*Eisentecken v. Tahoe Regional Planning Agency*, 2025 WL 1531678 (E.D. Cal. May 28, 2025) ........ 28

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 33

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309 (5th Cir. 2024) ........ 6

*Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846 (9th Cir. 1999) ........ 33

*Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir. 1976) ........ 9

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) ........ 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ........ passim

*Gjovik v. Apple Inc.*, No. 3:23-cv-04597-EMC (N.D. Cal.) ........ passim

*Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) ........ 28

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) ........ 14, 19

*Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001) ........ 5, 7

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989) .......... 8, 13, 32
*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) .......... 26
*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .......... 30
*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017) .......... 26
*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825 (9th Cir. 2021) .......... 6
*Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc.*, 190 Cal. App. 4th 1502 (2010) .......... 28
*Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007) .......... 13
*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......... 25
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 4
*Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645 (9th Cir. 2015) .......... 11
*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) .......... 26
*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .......... 32
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 33
*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) .......... 30
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 3, 4, 30
*Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087 (1996) .......... 27
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .......... 4
*Meghrig v. KFC W., Inc.*, 516 U.S. 479 (1996) .......... 16
*Mo. ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) .......... 33
*Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) .......... 11
*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 6, 21, 26
*Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) .......... 7
*Nuclear Information & Resource Service v. NRC*, 457 F.3d 941 (9th Cir. 2006) .......... 5
*O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002) .......... 6
*Otay Land Co. v. U.E. Ltd., L.P.*, 15 Cal. App. 5th 806 (2017) .......... 28
*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) .......... 26
*Price v. U.S. Navy*, 39 F.3d 1011 (9th Cir. 1994) .......... 16
*Puget Soundkeeper Alliance v. Port of Tacoma*, 104 F.4th 95 (9th Cir. 2024) .......... 18
*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) .......... 7
*S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002) .......... 11
*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .......... 3
*Schreiber v. Key*, No. 5:23-cv-155, ECF No. 97 at 8-10 (M.D. Ga. July 29, 2025) .......... 9
*Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir. 1987) .......... 15
*Sierra Club v. Union Oil Co. of Cal.*, 853 F.2d 667 (9th Cir. 1988) .......... 14, 15

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .......... 22
*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .......... 6
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 6
*Uccello v. Laudenslayer*, 44 Cal. App. 3d 504 (1975) .......... 31
*United States v. Midwest Generation, LLC*, 720 F.3d 644 (7th Cir. 2013) .......... 16
*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 32
*Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) .......... 28
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 25
*W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189 (9th Cir. 1997) .......... 26
*Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351 (9th Cir. 1995) .......... 8
*WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913 (9th Cir. 2004) .......... 11
*Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944 (C.D. Cal. 2021) .......... 28
*Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010) .......... 7
*Wilkins v. United States*, 598 U.S. 152 (2023) .......... 8
*Zands v. Nelson*, 797 F. Supp. 805 (S.D. Cal. 1992) .......... 13

**Statutes**

11 U.S.C. § 541 .......... 32
11 U.S.C. § 554 .......... 32
15 U.S.C. § 2607 .......... 23, 24
15 U.S.C. § 2614 .......... 23
15 U.S.C. § 2619 .......... 10, 23
28 U.S.C. § 2462 .......... 15
33 U.S.C. § 1311 .......... 12, 19, 21
33 U.S.C. § 1316 .......... 19, 31
33 U.S.C. § 1317 .......... 11, 19, 24
33 U.S.C. § 1342 .......... 18
33 U.S.C. § 1365 .......... 9, 19, 20, 31
42 U.S.C. § 6922 .......... 16, 24
42 U.S.C. § 6923 .......... 12, 16
42 U.S.C. § 6924 .......... 16
42 U.S.C. § 6925 .......... 16
42 U.S.C. § 6972 .......... passim
42 U.S.C. § 7413 .......... 18

42 U.S.C. § 7604 .......... 13, 14, 18
42 U.S.C. § 7661a .......... 24
42 U.S.C. § 9658 .......... 6
42 U.S.C. § 11004 .......... 22
42 U.S.C. § 11023 .......... 7, 21
42 U.S.C. § 11046 .......... 22
Cal. Civ. Code § 3479 .......... 29
Cal. Civ. Code § 3480 .......... 29
Cal. Civ. Code § 3482 .......... 28
Cal. Civ. Code § 3490 .......... 27
Cal. Civ. Code § 3483 .......... 31
Cal. Civ. Code § 3491 .......... 29
42 U.S.C. § 9658 .......... 6
Cal. Civ. Code § 3493 .......... 28, 29
Cal. Civ. Proc. Code § 340.8 .......... 27
Cal. Health & Safety Code §§ 40000, 40200 .......... 9
Cal. Health & Safety Code § 41509 .......... 29
Cal. Water Code § 1200 .......... 20
Santa Clara City Code §§ 8.30.040, 8.30.050, 15.60.100 .......... 29, 30

**Regulations**

40 C.F.R. Part 52 .......... 17
40 C.F.R. Part 112 .......... 19
40 C.F.R. Part 135 .......... 8
40 C.F.R. Part 254 .......... 9
40 C.F.R. Part 262 .......... 12, 16
40 C.F.R. Part 265 .......... 17
40 C.F.R. Part 270 .......... 17
40 C.F.R. Part 372 .......... 21, 22
40 C.F.R. Part 403 .......... 18, 19
40 C.F.R. Part 469 .......... 2, 12, 19
40 C.F.R. Part 702 .......... 11
40 C.F.R. Part 713 .......... 23, 24
40 C.F.R. Part 751 .......... 23, 24

BAAQMD Reg. 2-1-301, 2-1-302 ........ 11, 12, 18
BAAQMD Reg. 8-30-210, 8-30-304.3 ........ 17, 25
BAAQMD Reg. 9-7-307 ........ 11, 12, 17
89 Fed. Reg. 102,568 (Dec. 17, 2024) ........ 23
90 Fed. Reg. 44,773 (Sept. 17, 2025) ........ 23
91 Fed. Reg. 8810 (Feb. 24, 2026) ........ 9

**Other Authorities**

Fed. R. Civ. P. 8, 9(b), 12(b)(1), 12(b)(6), 15(d) ........ 3, 4, 25, 33
Civil L.R. 7-3(a) ........ 32
Cal. Fire Code § 2701.1 ........ 25
Restatement (Second) of Judgments § 26(1)(a) (1982) ........ 27

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS APPLE AND THE PROPERTY OWNERS' MOTION TO DISMISS

1. Apple operates a semiconductor fabrication facility at 3250 Scott Boulevard in Santa Clara, across the street from 1,840 apartments, a public park, and a children's playground. By Apple's own sworn certification, the Facility used arsine, phosphine, and boron trichloride in 2024 at 84%, 61%, and 824% above the caps in its air permit. It ran an unpermitted hazardous solvent waste tank for years, venting it to the atmosphere. It filed one Toxics Release Inventory report and then stopped. Regulators found new violations as recently as January 2026, and Plaintiff observed polluted conditions this year in the creek that runs past the Facility's stormwater outfall.

2. Defendants' motion (Dkt. 128, "Mot.") and the Landlord/Owner Defendants' supplemental brief (Dkt. 130, "Supp.") do not dispute those facts. They ask the Court to treat penalty-only administrative settlements as if they were court actions, to read the notice rules to require more than the Ninth Circuit requires, to accept Apple's self-reported labels over the TAC's well-pleaded allegations, and to dismiss "claims" that are really citations to the statutory framework. They also ask the Court to hold that this action duplicates a prior case that Apple itself told that court was "factually and legally distinct." The motion should be denied.

## I. STATEMENT OF THE ISSUES

3. Whether Plaintiff, who regularly uses the creek, trail, parks, and neighborhood adjacent to the Facility and has observed pollution there, has Article III standing; whether her Notice satisfied the citizen-suit notice provisions; whether any agency action, claim preclusion, or limitations bars the claims; whether the TAC states claims under RCRA, the CAA, the CWA, EPCRA, and TSCA, and for public nuisance; and whether it states claims against the Landlord/Owner Defendants.

## II. RELEVANT FACTS

4. Since approximately 2015, Apple has operated a semiconductor fabrication facility at 3250 Scott Boulevard (the "Facility") on property owned by the Landlord/Owner Defendants. (TAC ¶¶ 34, 53.) It stores and uses arsine, phosphine, silane, diborane, chlorine, fluorine, and hydrogen fluoride. (*Id.* ¶¶ 187, 219.) It sits across the street from the 1,840-unit Santa Clara Square Apartments, Meadow Park, and a public playground, atop the Synertek Superfund plume. (*Id.* ¶¶ 1, 36.)

5. The violations span a decade. In 2016, the regional wastewater facility found Apple was doing semiconductor fabrication, not R&D, and reclassified its discharge permit (SC-461B) under the categorical standards of 40 C.F.R. Part 469. (*Id.* ¶¶ 107, 118.) From 2017 until EPA's inspection, Apple ran a 1,700-gallon hazardous solvent waste tank without a permit, venting it to the atmosphere through a carbon drum. (*Id.* ¶¶ 158-165.) City incident reports document toxic gas releases and alarms from 2019 through 2023. (*Id.* ¶¶ 148, 157, 169.) Apple filed a Toxics Release Inventory report only for 2020, disclosing more than 17,000 pounds of n-methylpyrrolidone ("NMP"), and none since. (*Id.* ¶¶ 150, 555-559; Dkt. 119-4 at 122.)

6. Plaintiff's June 2023 agency complaints triggered EPA inspections in August 2023 and January 2024, which found nineteen RCRA violations with more than one hundred occurrences, resolved by a penalty-only administrative Consent Agreement and Final Order ("CAFO") in October 2025. (*Id.* ¶¶ 26, 158-159, 207-208, 315-316; Dkt. 119-4 at 2-21.) EPA's records confirm the inspection was based on Plaintiff's tip. (Dkt. 119-4 at 22; Dkt. 119-6 at 65 (Schmidt Dep. 249:22-252:15).)

7. Apple's sworn 2024 throughput certification reports arsine at 143.5 pounds against a 78-pound cap, phosphine at 317.9 against 198, and boron trichloride at 9.24 against 1, in violation of BAAQMD Permit Condition 26031; its 2023 certification is similar. (*Id.* ¶¶ 175, 178.) BAAQMD issued Notices of Violation for NOx and CO exceedances and, in August and

September 2024, for operating sources without required authorizations, resolved by a $125,000 settlement in May 2026. (*Id.* ¶¶ 26, 160, 173-174; Dkt. 119-4 at 152-157.) Apple's 2025 wastewater self-monitoring omits sample results; an October 2025 inspection documented storm drains beside its hazardous waste bunkers; and the City's January 15, 2026 inspection found another unlabeled hazardous waste container and spill-prevention recordkeeping violations. (*Id.* ¶¶ 180-183; Dkt. 119-4 at 136.) EPA's ECHO database lists the Facility out of compliance in nine of the last twelve quarters. (Dkt. 119-4 at 36-43.)

8. Facility stormwater discharges through an 18-inch pipe to San Tomas Aquino Creek. (TAC ¶ 520.) Saratoga Creek, which once crossed the site, was filled and diverted but still flows through culverts and a confined artesian channel beneath the Facility to an outlet that joins San Tomas Aquino Creek. (*Id.* ¶¶ 62-79, 452, 457-462.)

9. Plaintiff lived at Santa Clara Square from February to October 2020 and became seriously ill there; tests showed arsenic, mercury, toluene, and xylenes, and physicians found her symptoms consistent with solvent and toxic-gas exposure. (*Id.* ¶¶ 30-31, 201-205.) Other residents later reported similar exposures. (*Id.* ¶¶ 43, 133-134.) Plaintiff now lives in San Jose, lodges about 2,100 feet from the Facility, uses the San Tomas Aquino Creek trail, Meadow Park, and the surrounding neighborhood, and plans to return monthly. (*Id.* ¶¶ 27-28 & Ex. E (Dkt. 119-5); Gjovik Decl. ¶¶ 3, 5-8.) On April 11, April 18, and May 1, 2026, she observed froth, sheen, and discoloration in the creek immediately downstream of the Facility's outfall and measured pH of 8.9-9.5 and total chlorine of 3-20 ppm. (*Id.* ¶ 184; Gjovik Decl. ¶¶ 10-12 & Exs. A-C.) She served her Notice on June 30, 2025 and filed suit on September 2, 2025. (TAC Exs. A-B.)

## III. STANDARD OF REVIEW

10. Defendants bring a facial Rule 12(b)(1) challenge, so the Court accepts the TAC's allegations as true and asks whether they are sufficient on their face. *Safe Air for Everyone v.*

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

11. Under Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). It may consider documents incorporated in the complaint and judicially noticeable facts, but may not accept a defendant's characterization of extrinsic documents to resolve factual disputes. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1003 (9th Cir. 2018).

## IV. ARGUMENT

### A. PLAINTIFF HAS ARTICLE III STANDING

#### i. Plaintiff's use of the affected area is concrete, current, and diminished

12. Environmental plaintiffs establish injury in fact when they "aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). The relevant injury is to the plaintiff, not the environment, and "reasonable concerns" about a defendant's pollution, coupled with use of the area, suffice. *Id.* at 181-85; *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149-51 (9th Cir. 2000).

13. The TAC alleges exactly that. Plaintiff uses the San Tomas Aquino Creek trail, Meadow Park, and the neighborhood beside the Facility, lodges 2,100 feet from it, and plans to return monthly. (TAC ¶¶ 27-28, 30 & Ex. E (Dkt. 119-5); Gjovik Decl. ¶¶ 5-9.) These are specific, recurring, place-based uses, not "some day" intentions. *Lujan*, 504 U.S. at 564. And she has seen the pollution: froth, sheen, and discoloration in the creek below the Facility's outfall, with anomalous pH and chlorine readings. (TAC ¶ 184; Gjovik Decl. ¶¶ 10-12 & Exs. A-C.) Seeing pollution in a creek one walks along is the paradigm aesthetic injury. *Laidlaw*, 528 U.S. at 181-

83. Defendants say the TAC never alleges impaired enjoyment (Mot. 5-7), but it does, repeatedly, including that "[a]t all times" in the area she is exposed to the Facility's exhaust and pollution, and that the hazard has caused ongoing medical monitoring, distress over continuing risk, and loss of an area she wanted to live in. (TAC ¶¶ 11, 28, 30-31, 288; Gjovik Decl. ¶¶ 14-17.)

14. Defendants also contend Plaintiff must allege she curtailed her visits. (Mot. 6-7.) *Laidlaw* imposes no such requirement, and the Ninth Circuit has rejected it: a plaintiff who continues to use an area with diminished enjoyment is injured. *Pac. Lumber*, 230 F.3d at 1149-50; *see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160-61 (4th Cir. 2000) (en banc). Defendants cannot fault Plaintiff both for living too far away and for not staying away; a rule that only those who avoid an area may sue would bar those most exposed. *Nuclear Information & Resource Service v. NRC*, 457 F.3d 941, 952-54 (9th Cir. 2006), is inapposite; the plaintiffs there feared that radioactive material might someday travel highways they used. Here the source is fixed, identified, and has a documented history of releases next to the places Plaintiff uses.

15. Plaintiff's declaration confirms these allegations, and she has in fact changed how she uses the area because of the Facility's pollution [Decl. ¶ 16]; at a minimum, the declaration shows that any perceived gap could be cured by amendment. (Gjovik Decl. ¶¶ 3-22.)

**ii. <u>Plaintiff's concern is reasonable, and Apple cannot call it speculative</u>**

16. Defendants argue Plaintiff alleges only past exposure and no ongoing threat. (Mot. 5, 8.) But standing rests on her present use of the area combined with a credible risk from the source's emissions, which *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001), holds sufficient. The risk here is pleaded with specificity: permit exceedances and unpermitted sources in 2024, waste violations in 2026, polluted creek conditions in 2026, and Apple's own modeling of toxic endpoints reaching the trail. (TAC ¶¶ 173-178, 183-184, 188; Gjovik Decl. ¶¶ 15, 18-20.)

17. Plaintiff's 2020 illness makes her concern credible, not stale. *Laidlaw*, 528 U.S. at 184-85. Defendants stress that her symptoms resolved after she moved away. (Mot. 2, 8.) That confirms the link between the Facility and her illness; it does not make her concern about returning to the same air speculative, and standing does not require a present illness. *Laidlaw*, 528 U.S. at 181-84. *Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009) (cited at Mot. 8), involved a member with no concrete plan to return to the affected site; Plaintiff returns monthly.

18. Apple took the opposite position in the prior action. There, it obtained dismissal of Plaintiff's toxic-exposure claims by arguing that public records available in 2020 (City permits for a "Fab" and "Fab clean room" at 3250 Scott, a Fire Department report of a silane and phosphine leak, and BAAQMD emissions data) would have told a reasonable person who fell ill nearby that the Facility was the cause. (*Gjovik v. Apple Inc.*, No. 3:23-cv-04597-EMC (N.D. Cal.) ("*Gjovik I*").

19. The court agreed, applying 42 U.S.C. § 9658 and holding that inquiry into those records would have given Plaintiff "knowledge of the connection between the injury and its cause." (Tarantino Decl. Ex. B at 8-10, 16); *see O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002). Having secured a holding that the public record connects illness near the Facility to the Facility, Apple cannot now call a concern grounded in the same records, and in later and worse ones, speculative. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

**iii. <u>Standing extends to each claim</u>**

20. Standing must be shown for each claim and form of relief, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (cited at Mot. 5), but not for each violation. Courts reject a violation-by-violation approach that "would amount to making standing impossible to establish in cases involving sprawling industrial complexes that regularly emit an array of dangerous pollutants." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 325-26 (5th Cir. 2024) (en banc); *see Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 831-32 (9th

Cir. 2021). Defendants' claim-by-claim chart (Mot. 7-8) repeats the same error, faulting Plaintiff for not alleging that she curtailed her visits or "shop[s] elsewhere."

21. The TAC ties each statute to Plaintiff's use. The CAA counts concern toxic gas and VOC emissions from a fixed source 2,100 feet from where she stays and beside the parks she uses; breathing the air near a polluting source is a direct exposure pathway, and no measured dose is required. (TAC ¶¶ 28, 173-178, 188); *Hall*, 266 F.3d at 976. The RCRA counts concern waste units that vented solvents to the air and waste bunkers beside storm drains that discharge to the creek she walks. (TAC ¶¶ 158-165, 182, 520.) The CWA and TSCA counts concern discharges and chemicals reaching the same creek and air. (*Id.* ¶¶ 123, 150, 184, 457-462, 520, 575.)

22. EPCRA § 313 creates a public right to Toxics Release Inventory data, 42 U.S.C. § 11023(h), (j); Plaintiff relied on the Facility's empty TRI record in assessing the area's risks, deciding when and where to visit, and participating as complainant in agency proceedings. (TAC ¶¶ 207-208, 550; Gjovik Decl. ¶¶ 21-22.) Those are the "downstream consequences" an informational injury requires. *TransUnion*, 594 U.S. at 442; *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010). Each injury is redressable: civil penalties "afford redress to citizen plaintiffs" by deterring ongoing violations, and injunctive relief would abate them. *Laidlaw*, 528 U.S. at 185-86.

**iv. <u>The operative complaint establishes standing</u>**

23. Defendants note that Plaintiff was residing in Massachusetts when she filed suit (Mot. 2) and suggest she returned only after their first motion, but make no argument from it. When a plaintiff amends, "courts look to the amended complaint to determine jurisdiction," *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007), and facts pleaded in a later complaint cure any standing defect at filing, *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-48 (9th Cir. 2015). The TAC alleges Plaintiff's current residence in Santa Clara County and her regular use of the area. (TAC ¶¶ 27-28, 184; Gjovik Decl. ¶¶ 3, 7-8.) The Court's

prior order identified three gaps: residence in Massachusetts, no concrete plans to return, and no alleged impairment. (Dkt. 101 at 25:13-24.) The TAC fills each. (TAC ¶¶ 27-28, 30-31, 184.)

### B. Plaintiff's Notice Satisfied the Citizen-Suit Notice Provisions

24. The notice provisions give agencies and the alleged violator an opportunity to act before suit, *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989); they do not require citizens "to basically carry out the job of the agency." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002). Defendants rely on *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1153 (9th Cir. 2024) (cited at Mot. 9), which held that the ESA's parallel sixty-day notice requirement is a mandatory claims-processing rule, not a jurisdictional limit, *see Wilkins v. United States*, 598 U.S. 152, 157-59 (2023); courts in this Circuit have recognized that its reasoning likely extends to the other citizen-suit statutes. *Cent. Valley Eden Env't Defs. v. Castle & King Rock & Ready Mix*, No. 2:23-cv-02616-SCR, ECF No. 23 at 5-6 (E.D. Cal. May 15, 2025). Under any standard, the question is whether the notice served its purpose. Plaintiff's did: the agencies acted. EPA and BAAQMD pursued formal enforcement against the Facility, and the Department of Justice's Environment and Natural Resources Division responded directly to Plaintiff. (TAC ¶¶ 16, 26, 160, 173, 315; Dkt. 66 at 8-12.)

#### i. The Notice meets the technical requirements

25. *Contact information.* The regulations require the "full name, address, and telephone number of the person giving notice." 40 C.F.R. §§ 135.3(a), 254.3(a), 702.62(a)(6); *see id.* § 54.3(b). They require an address, not a residence. The Notice states Plaintiff's full name, mailing address, telephone number, and email. (TAC Ex. A.) Defendants object only that the address belongs to Plaintiff's LLC (Mot. 10); it is where she receives mail, used for privacy and safety. (TAC ¶ 27.) And Defendants used it: Mr. Jenab and defense counsel corresponded with Plaintiff within weeks of service. (Dkt. 14 Ex. F.) *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (9th Cir. 1995), is inapposite; the notice there failed to identify several plaintiffs at all.

26. *Service.* The Notice was served by certified mail on EPA's Administrator and Region 9 and on every original Defendant, and the same written Notice was delivered by email that day to CalEPA, the Department of Toxic Substances Control (California's authorized RCRA agency), and BAAQMD (the agency with primary responsibility for stationary-source air pollution in the region, Cal. Health & Safety Code §§ 40000, 40200). (TAC Ex. B; Dkt. 119-2 at 34-37; Gjovik Decl. ¶ 24 & Exs. D-E.) The statutes require notice to "the State," 42 U.S.C. §§ 6972(b)(1)(A), 7604(b)(1)(A), 11046(d)(1); 33 U.S.C. § 1365(b)(1)(A); the regulations prescribe how copies are routed, and for that purpose "the State and its agencies . . . must be treated as one." *Friends of the Earth v. Carey*, 535 F.2d 165, 175 (2d Cir. 1976). CalEPA is the umbrella agency over the State Water Resources Control Board, the Air Resources Board, and DTSC, and DTSC and BAAQMD are the agencies that administer the programs at issue. Where the written notice actually reached the government in time to act, courts do not dismiss over the method of delivery or the office within the State that received it. *Schreiber v. Key*, No. 5:23-cv-155, ECF No. 97 at 8-10 (M.D. Ga. July 29, 2025) (CWA notice sent by priority rather than certified mail sufficient where received and agencies had sixty days); *College Park Holdings, LLC v. RaceTrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1332 (N.D. Ga. 2002) (RCRA requires "only . . . notice, not any particular form"; § 254.2 not jurisdictional). The Ninth Circuit likewise looks to substance, including "the behavior of [the notice's] recipients." *Cascadia*, 105 F.4th. And EPA has proposed making electronic delivery the default for notice copies to EPA, finding it more reliable and less likely to generate disputes over whether service occurred. 91 Fed. Reg. 8810 (Feb. 24, 2026)

27. *The Notice served its purpose.* This is not a case of agency knowledge standing in for notice: the written Notice of intent to sue itself reached the State's agencies before suit. The surrounding record confirms that those agencies were not learning of the Facility for the first time. Plaintiff's June 2023 complaint, which identified the same Facility, operator, standards, and

releases and warned that she would sue under RCRA § 7002(a)(1)(B) if the agencies did not act, went to CalEPA (which referred it to DTSC), BAAQMD, EPA, the County, and the City, and the San Francisco Bay Regional Water Quality Control Board's enforcement staff forwarded it to the Board's toxics-cleanup division. (TAC ¶ 15 & Ex. C (Dkt. 119-3 at 6-33); Dkt. 119-3 at 35 (CalEPA Complaint No. COMP-57311), 36-38 (June 13, 2023 transmittal to the Mayor and City Council); Gjovik Decl. ¶ 25 & Exs. F-G.) That same month, the State Warning Center of the Governor's Office of Emergency Services logged Plaintiff's reports of the Facility's unreported 2019 silane and phosphine release and 2020 NMP release and transmitted them to DTSC, the Regional Board, the Air Resources Board, and EPA; in February 2024, Plaintiff reported two further 2022 releases to Cal OES as EPCRA matters. (*Id.* ¶ 26 & Exs. H-I.) During the notice period, Plaintiff forwarded notice of this action to BAAQMD and CalEPA. (*Id.* ¶ 28 & Ex. K.) Her December 2025 CWA notice went to the State and Regional Water Boards more than sixty days before the TAC (Dkts. 55, 66), and the complaint itself was served on the California Attorney General, the Regional Board, CalEPA, and BAAQMD (Dkts. 10, 14, 19). The agencies acted on what Plaintiff gave them: EPA's enforcement "credited the Plaintiff for making the complaint and providing the tip," and BAAQMD's Notices of Violation followed Plaintiff's July 2024 complaint within weeks. (TAC ¶¶ 16, 173; Dkt. 119-4 at 22.) Defendants' objection goes to which State office received certified mail, not to whether the State knew. The State has had every opportunity the notice provisions protect and has taken no court action. And TSCA requires notice only to the Administrator and the alleged violator, 15 U.S.C. § 2619(b)(1)(A), so the objection cannot reach Counts 28-32.

**ii. <u>The Notice identified the violations with specificity, and each count falls within it</u>**

28. A notice suffices if it is "reasonably specific" and gives "the accused company the opportunity to correct the problem." *WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004) (cited at Mot. 11). It must enable the recipients to "identify and attempt to

abate the violation," *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015), but need not "list every specific aspect or detail of every alleged violation," *Bosma*, 305 F.3d at 951; *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158-59 (9th Cir. 2002); *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996-97 (9th Cir. 2000). A complaint may include violations of the same type, including later ones. *Bosma*, 305 F.3d at 951-53.

29. The Notice identified the City's incident reports of dated gas releases (Notice ¶¶ 12-31); EPA's RCRA findings, by regulation, and the unpermitted solvent tank (¶¶ 32-43, 71-78); BAAQMD Plant No. 22839, Rules 2-1-301, 2-1-302, and 9-7-307.1, the Notices of Violation, and the permit's usage limits (¶¶ 58-70); Permit SC-461B, 33 U.S.C. § 1317, the warning notices, the stormwater incidents, and the receiving creeks (¶¶ 79-95, 139); the single 2020 TRI report and unreported chemicals (¶¶ 96-102); the TSCA chemicals (¶¶ 103-107); and the owners' role (¶¶ 52-54). That is far more than *WaterKeepers* and *Tosco* require. Defendants' objection that some paragraphs cite whole statutory sections (Mot. 12) ignores the paragraphs around them that identify the specific permits, rules, inspections, dates, and chemicals. For TSCA, the Notice identified the provisions at issue and the specific chemicals and conduct (¶¶ 103-107), as 40 C.F.R. § 702.62(a) requires. And the Notice described current operations and violations through 2025, not merely history. *Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 800-01 (9th Cir. 2009), is not to the contrary; the notice there never mentioned the violation later sued upon. Apple, which told the prior court that public records "clearly identify the facility as 3250 Scott" and its operations (*Gjovik I*; *Gjovik I*, Hr'g Tr. at 13:22-14:5), can hardly claim confusion.

30. Defendants' chart of theories "outside the Notice" (Mot. 12-13) does not withstand comparison with the Notice itself:

a. Counts 1, 4-6, 8, 25-26 (Landlord/Owner Defendants): owner responsibility (¶¶ 52-54); "Defendants" throughout (¶¶ 32-43, 71-78, 96-102).

b. Count 7 (transport): "transporting hazardous waste without manifests and without proper categorization" in violation of § 6923 (¶ 75); 40 C.F.R. § 262.20 (¶ 43), a violation EPA itself charged.

c. Counts 9-10, 12 (permits; nonattainment): "unpermitted air emissions," "failure to obtain required permits," Rules 2-1-301 and 2-1-302, NOx, and ozone precursors including VOCs (¶¶ 46, 59-62, 98).

d. Count 11 (Rule 8-30 solvent emissions): solvent tank venting to atmosphere (¶¶ 33-40, 58-61).

e. Count 13 (emission limits): emissions that "exceed state-specific emission limits"; Rule 9-7-307.1; permit usage limits (¶¶ 59-61, 64-65).

f. Counts 16-17 (Saratoga Creek system): the creeks and their connection to the Bay (¶¶ 79-80); the December 2025 CWA notice (Dkts. 55, 66).

g. Counts 18-20, 23 (wastewater; pretreatment; stormwater): §§ 1311, 1316, 1317, 1342; the Part 469 permit; the 2016 cooling-water dump and 2022 stormwater findings (¶¶ 79-94, 139).

h. Counts 28-32 (TSCA): NMP releases (¶ 105); mercury emissions (¶ 63); TCE in wastewater and missing from inventories (¶¶ 14, 89, 102); lead (¶ 104); imminent endangerment (¶ 73).

i. Counts 33-34 (nuisance): state-law claims to which no federal notice provision applies.

31. The permit-limit exceedances in Count 13 are violations "of the same type" as those noticed: violations of the conditions of the permit for Plant No. 22839, whose usage limits the Notice identified. *Bosma*, 305 F.3d at 953.

**iii. Defendants' "cannot be cured" argument misreads the statutes**

32. Defendants contend any notice defect requires dismissal with prejudice. (Mot. 9, 12.) *Hallstrom* concerned plaintiffs who gave no written notice to EPA or the State at all before suing, and it rejected substituting the agencies' general knowledge for notice. 493 U.S. at 22-24, 26-27. It did not address a written notice that the agencies actually received. Every Defendant and the relevant agencies have now held the operative allegations, through service of the Second Amended Complaint, for more than sixty days. (Dkts. 105, 116.) Courts permit a plaintiff to proceed on a pleading filed after the notice period runs. *Zands v. Nelson*, 797 F. Supp. 805, 809-10 (S.D. Cal. 1992). At most, any defect would warrant dismissal without prejudice.

## C. No Agency Action Bars These Claims, and the Violations Are Ongoing

**i. Only an action "in a court" bars a citizen suit**

33. RCRA and the CAA bar a citizen suit only where EPA or the State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State." 42 U.S.C. § 6972(b)(1)(B) (quoted at Mot. 15); *id.* § 7604(b)(1)(B). The October 2025 CAFO and the May 2026 BAAQMD settlement were administrative. (TAC ¶¶ 26, 160, 315.) Defendants' own authorities involved judicial consent decrees. *Cmty. of Cambridge Env't Health & Cmty. Dev. Grp. v. City of Cambridge*, 115 F. Supp. 2d 550, 554-56 (D. Md. 2000); *Karr v. Hefner*, 475 F.3d 1192, 1197-98 (10th Cir. 2007).

34. Nor was either an action "to require compliance." The CAFO imposes a penalty for violations found in two inspections, contains no injunctive or compliance terms, and "shall only resolve Respondent's liability for federal civil penalties for the violations specifically alleged

herein and does not in any case affect the right of the EPA to pursue appropriate injunctive or other equitable relief." (CAFO ¶ 51, Dkt. 119-4 at 4-21.) The RCRA endangerment claim (Count 1) faces a different list of bars, each requiring an EPA or State endangerment, removal, or remedial action. 42 U.S.C. § 6972(b)(2)(B)-(C). A § 3008 administrative penalty is none of these. And EPA's criminal investigation, which produced no court action, bars nothing; it confirms that the federal government did not regard the conduct as resolved by an administrative penalty. (TAC ¶¶ 209-210.)

35. Apple's reliance on agency enforcement is also new. In the prior action, its counsel told the court that the agencies "couldn't figure out" what Apple was doing "because there was no problem," and "would have come after Apple if there was a problem." (*Gjovik I*, Hr'g Tr.) at 13:17-21.) The agencies then did come after Apple. (TAC ¶¶ 26, 173-174, 217.)

**ii. <u>The TAC alleges ongoing and repeated violations</u>**

36. Good-faith allegations of continuous or intermittent violation are all *Gwaltney* requires at the pleading stage. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64-65 (1987). Repeated violations after an enforcement action plead a continuing likelihood of recurrence. *Sierra Club v. Union Oil Co. of Cal.*, 853 F.2d 667, 671 (9th Cir. 1988). The CAA goes further: it reaches any person "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation." 42 U.S.C. § 7604(a)(1). Congress added that language in 1990 to overrule *Gwaltney*'s "wholly past" rule for the CAA, so Defendants' reliance on *Gwaltney* for the CAA claims (Mot. 16) is misplaced.

37. The TAC alleges a pattern, not a past event: permit exceedances in both 2023 and 2024 (TAC ¶¶ 175, 178); NOx and CO exceedances and successive Notices of Violation for unpermitted sources in 2024 (*id.* ¶¶ 173-174); 2025 wastewater filings omitting sample results (*id.* ¶ 180); hazardous waste and spill-prevention violations found in January 2026, after the CAFO and of the same type EPA had cited (*id.* ¶ 183); polluted creek conditions in 2026 (*id.* ¶ 184); and

nine of the last twelve quarters out of compliance (Dkt. 119-4 at 36-43). Apple confirmed under oath in May 2026 that it continues to operate the Facility. (TAC ¶ 171.) Defendants say EPA found Apple "returned to compliance in 2024" (Mot. 27), but the City found another hazardous waste violation of the same type in January 2026. (TAC ¶ 183.) Defendants' statement that the TAC cites only 2022-2023 air data (Mot. 16) overlooks the 2024 certification (TAC ¶ 178; Dkt. 119-4 at 162). And Apple's history makes recurrence likely: through December 2020, it operated under a state-court consent judgment for hazardous waste violations in California. (TAC ¶ 145 (citing *People v. Apple Inc.*, No. 16-CV-303579 (Santa Clara Super. Ct.)).)

**iii. <u>No settlement moots the claims</u>**

38. A defendant claiming mootness bears the "heavy burden" of showing it is "absolutely clear" that violations "could not reasonably be expected to recur"; voluntary cessation "ordinarily does not suffice to moot a case." *Laidlaw*, 528 U.S. at 189. *Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC*, 158 F.4th 1052, 1063 (9th Cir. 2025), on which Defendants rely (Mot. 17), applies the same standard. The May 2026 BAAQMD settlement resolved specified Notices of Violation without findings of compliance and did not address the throughput exceedances. (TAC ¶¶ 26, 160, 178.) The prior court's own order recites eight confirmed leaks or spills at the Facility between 2019 and 2022. (Tarantino Decl. Ex. B at 11-12.) That history forecloses any showing, on the pleadings, that violations cannot reasonably be expected to recur.

**iv. <u>No claim is time-barred</u>**

39. The five-year period of 28 U.S.C. § 2462 applies to civil penalties, not injunctive relief, and runs from each violation; each day of violation is a separate violation. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1521-24 (9th Cir. 1987). Every violation described above occurred within five years of the Notice and this action. Defendants' argument that the CAA violations "began around 2015" (Mot. 16) treats operating-permit and emission-limit violations as

one-time events. *Clarke v. Pacific Gas & Electric Co.*, 501 F. Supp. 3d 774, 786-88 (N.D. Cal. 2020) (cited at Mot. 16), addressed a single continuing condition; operating-permit and emission-limit violations are discrete in each period they occur. *See United States v. Midwest Generation, LLC*, 720 F.3d 644, 647-48 (7th Cir. 2013) (distinguishing one-time construction violations from ongoing operating obligations). That Apple began operating in 2015 does not start the clock on violations it committed in 2023 and 2024, and the "concurrent remedy" rule Defendants invoke (Mot. 16-17) has nothing to operate on where the penalty claims are timely.

## D. THE TAC STATES CLAIMS UNDER RCRA

### i. The TAC pleads an imminent and substantial endangerment

40. RCRA's endangerment provision reaches waste that "may present" an imminent and substantial endangerment; the threat must be present, though the harm may come later, and no proof of actual harm is required. 42 U.S.C. § 6972(a)(1)(B); *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485-86 (1996); *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994). The TAC alleges a solvent waste tank that operated without a permit for years and vented to the atmosphere beside housing and a playground; hazardous waste bunkers beside storm drains that discharge to a public creek; and continuing waste violations after EPA's action. (TAC ¶¶ 158-165, 182-183.) Whether those conditions present an endangerment is a question of fact. Defendants' argument rests on the inference that EPA's penalty settlement corrected everything (Mot. 15-16), the opposite of the inference the Court must draw.

### ii. Counts 4-8 enforce regulations promulgated under RCRA

41. Defendants contend 42 U.S.C. §§ 6922-6925 cannot be "violated" by a private entity. (Mot. 24.) Counts 4-8 enforce the regulations promulgated under those sections, which are "effective pursuant to" RCRA and enforceable by citizens. 42 U.S.C. § 6972(a)(1)(A). The TAC identifies them: 40 C.F.R. §§ 262.11, 262.17, 262.20, 265.195, 265.1063, 265.1083, and 270.1(c). (TAC ¶¶ 158-159, 165.) Defendants' contention that Part 264 does not apply because Apple does

not operate a treatment, storage, or disposal facility (Mot. 27) is contradicted by EPA's findings that Apple operated hazardous waste treatment systems, including an acid waste neutralization system, a heavy metals rinse system, and the unpermitted solvent tank, in violation of § 270.1(c) and the Part 265 standards. (TAC ¶¶ 158-165.) An unpermitted unit does not escape regulation by being unpermitted.

## E. THE TAC STATES CLAIMS UNDER THE CLEAN AIR ACT

### i. Apple exceeded its permit limits and operated unpermitted sources

42. Defendants assert that Plaintiff "identifies no emissions reports exceeding" Apple's permit limits. (Mot. 16.) The TAC identifies exactly that: Apple's sworn 2024 certification reports arsine, phosphine, and boron trichloride use 84%, 61%, and 824% above the caps in Permit Condition 26031, and its 2023 certification reports similar quantities. (TAC ¶¶ 175, 178.) BAAQMD separately cited Apple for NOx and CO exceedances under Regulation 9-7-307 and, in 2024, after the permit issued, for operating additional sources without required authorizations. (*Id.* ¶¶ 173-174.) EPA's inspection found Apple venting hazardous waste vapors without an air permit and noted that Apple had not submitted its claimed permit application until September 2023. (Dkt. 119-4 at 77-78; *see* Dkt. 119-6 at 54 (Schmidt Dep. 208:1-20).) Permit conditions and "any requirement to obtain a permit as a condition of operations" are enforceable "emission standard[s] or limitation[s]." 42 U.S.C. § 7604(f)(4). Count 11 rests on BAAQMD Regulation 8, Rule 30, which prohibits storing or disposing of waste solvents "in a manner that will allow evaporation into the atmosphere" (Reg. 8-30-304.3), the very practice EPA found. Apple has not published its 2025 or 2026 emissions data; it cannot withhold the data and then fault Plaintiff for not pleading it.

**ii. Counts 10-12 present questions of fact about potential to emit, and Counts 2 and 9 rest on enforceable requirements**

43. Defendants contend Title V, nonattainment new source review, and the semiconductor NESHAP apply only to major sources. (Mot. 23, 26-27.) Major-source status turns on potential to emit, and a source avoids it only through enforceable limits that actually restrict emissions. The throughput caps in Permit Condition 26031 are such limits, and Apple has exceeded them. (TAC ¶¶ 175, 178.) Whether the Facility's potential to emit, absent limits Apple does not observe, reaches major-source thresholds for hazardous air pollutants or ozone precursors in a nonattainment area is a question of fact. (TAC.) Section 7604(f)(3) makes "any requirement under section 7411 or 7412" enforceable by citizens. Count 2 seeks injunctive relief to abate the conditions created by the violations pleaded in Counts 9-13, relief § 7604(a) authorizes. Count 9 rests on Rules 2-1-301 and 2-1-302, enforceable under § 7604(f)(4); its references to §§ 7410 and 7413 identify the framework and penalty factors, not a separate cause of action.

## F. THE TAC STATES CLAIMS UNDER THE CLEAN WATER ACT

**i. No NPDES permit shields Apple's discharges, and its pretreatment obligations are enforceable**

44. Defendants' CWA argument rests on the premise that Apple holds an NPDES permit authorizing its discharges. (Mot. 4, 17.) It does not. Apple discharges industrial wastewater to the publicly owned treatment works under Permit SC-461B, an industrial-user permit issued by the treatment works under its pretreatment program to a Significant Industrial User under 40 C.F.R. § 403.3. (TAC ¶¶ 107, 118, 437.) The TAC's shorthand reference to that permit as "NPDES" (*id.* ¶ 438) does not change what it is; the NPDES permit belongs to the treatment works. The shield applies only to "a permit issued pursuant to" § 1342. 33 U.S.C. § 1342(k) (quoted at Mot. 17 n.2). That provision, and *Puget Soundkeeper Alliance v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024) (cited at Mot. 17), protects NPDES permittees; neither excuses an industrial user from pretreatment standards, which are independently enforceable: it is "unlawful for any

owner or operator of any source to operate any source in violation of any such . . . pretreatment standard." 33 U.S.C. § 1317(d). Defendants' contention that §§ 1316 and 1317 are not enforceable by citizens (Mot. 24) contradicts the statute, which defines enforceable "effluent standard[s] or limitation[s]" to include any "standard of performance under section 1316" and any "prohibition, effluent standard or pretreatment standards under section 1317." 33 U.S.C. § 1365(f)(3)-(4). The TAC identifies the standards: 40 C.F.R. § 403.5's prohibitions and Part 469's categorical standards for semiconductor manufacturing, including the total toxic organics and solvent management requirements of § 469.13. (TAC ¶¶ 118, 437-442.) Apple obtained its original permit as a "research and development" user and was reclassified only after the treatment works discovered its operations in 2016. (*Id.* ¶ 118.) Defendants' footnote on method reporting limits (Mot. 17 n.1) raises a factual dispute about a 2023 exhibit and cannot override the TAC's allegations.

**ii. <u>The violations are ongoing</u>**

45. Defendants call the CWA allegations "wholly past" (Mot. 18), but the TAC alleges 2025 self-monitoring filings that omit results and report inconsistent flows (TAC ¶ 180); inaccurate permit information documented in an October 2025 inspection (¶ 182); spill-prevention violations under 40 C.F.R. Part 112 in January 2026 (¶ 183); and stormwater discharges from a site with hazardous waste bunkers beside storm drains, through an outfall to San Tomas Aquino Creek, where Plaintiff observed polluted conditions in 2026. (¶¶ 182, 184, 506, 520.) Good-faith allegations of continuing violations are all *Gwaltney* requires. 484 U.S. at 64-65.

**iii. <u>Counts 3, 18, and 23 state claims for unpermitted discharges, including against the owners</u>**

46. Section 1311(a) prohibits any discharge of pollutants except in compliance with the Act, and industrial stormwater discharges must comply with a stormwater permit, whose conditions citizens may enforce. 33 U.S.C. §§ 1311(a), 1342(p), 1365(f)(6). The TAC alleges polluted discharges through the Facility's outfall from a site with hazardous waste bunkers beside

its storm drains. (TAC ¶¶ 182, 437, 515-520.) Liability is not limited to Apple. Owners who control an industrial property may be liable for its stormwater discharges from it, and disputes about the extent of their control cannot be resolved on a motion to dismiss. *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029 (N.D. Cal. 2017). Mr. Jenab is the named responsible party under the site's stormwater operations and maintenance plan, and the owners have never filed the maintenance records it requires. (TAC ¶¶ 94, 506.) Count 3 seeks injunctive relief to abate the conditions those violations create, relief § 1365(a) authorizes; the TAC's references to § 1319 describe the penalty framework.

**iv. <u>Counts 16 and 17 state claims for discharges into the buried Saratoga Creek system</u>**

47. Defendants challenge Counts 16 and 17 only on notice. (Mot. 13.) On the merits, the TAC alleges that the buried creek still flows through culverts, pipes, and a confined artesian channel beneath the site, documented in Superfund monitoring wells, to an outlet that joins San Tomas Aquino Creek and the Bay, and that pollutants from the Facility's storm drains, pipes, and releases enter that flow. (TAC ¶¶ 62-79, 452, 457-462.) That states a claim two ways. First, the culverts and pipes carrying the flow are themselves point sources, "discernible, confined and discrete conveyance[s]," including any "pipe, ditch, channel, tunnel, [or] conduit," 33 U.S.C. § 1362(14), and California law treats a subterranean stream "flowing through known and definite channels" as surface water. Cal. Water Code § 1200. Second, even if the flow were treated as groundwater, a point-source discharge that reaches navigable waters through groundwater requires a permit when it is the "functional equivalent of a direct discharge," and the transit time, distance, and dilution that test weighs are questions of fact. *County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165, 183 (2020). The TAC's references to §§ 1341 and 1344 describe the regulatory history of the filled creek; the claims arise under § 1311(a).

## G. THE TAC STATES CLAIMS UNDER EPCRA

### i. Apple is subject to TRI reporting and stopped reporting

48. EPCRA § 313 applies to a facility with ten or more full-time employees, in a covered industry code, that manufactures, processes, or otherwise uses a listed chemical above threshold quantities. 42 U.S.C. § 11023(b); 40 C.F.R. §§ 372.22-.25. The TAC pleads each element.

49. *Covered industry.* Defendants rely on the NAICS code in the Facility's RCRA registration, 541715 (research and development). (Mot. 20.) But Apple's own 2020 Form R reported the Facility under a computer and electronic product manufacturing code, and EPA's ECHO records list semiconductor manufacturing industry codes for the Facility. (TAC ¶¶ 150, 558; Dkt. 119-4 at 38, 111, 122.) EPA's list of covered industries includes every code in NAICS 334, Computer and Electronic Product Manufacturing, except one for media reproduction, and covers 541715 only for certain former aerospace facilities. 40 C.F.R. § 372.23(b). And the treatment works reclassified the Facility as a categorical semiconductor manufacturer in 2016. (TAC ¶ 118.)

50. *Estoppel.* Apple told the prior court that its permits for the Facility "refer to a 'Fab' and 'Fab clean room'" and called it "a manufacturing facility operated by Apple." (*Gjovik I*, Dkt. at 13; *Gjovik I.*) When the court described Apple's defense as resting on a permit that "made it clear . . . that there was semiconductor fabrication going on," Apple's counsel answered: "Correct, Your Honor." (*Gjovik I*, Hr'g Tr. at 3:24-4:12.) The court then noticed the December 2017 permits "that refer to semiconductor fabrication." (Tarantino Decl. Ex. B at 11, 16.) Having obtained dismissal on the premise that the Facility is a fab, Apple cannot dispute that premise here. *New Hampshire*, 532 U.S. at 750-51. Its own 2023 air permit application calls the Facility a "Semiconductor Fab" (TAC ¶ 161), and its Rule 30(b)(6) designee testified about the Facility's

chip fab operations and TRI reporting. (Dkt. 119-6 at 54, 61 (Schmidt Dep. 207:6-25, 230:18-233:7).)

51. *Employees and thresholds.* Apple's Risk Management Plan identifies 100 employees working on the Facility's regulated processes. (TAC ¶ 187; Dkt. 80-3 RMP Ex. B at 11.) Apple reported approximately 17,345 pounds of NMP for 2020, well above the 10,000-pound "otherwise use" threshold, and its February 2025 inventory shows continued large-scale NMP use. (TAC ¶¶ 150, 575; 40 C.F.R. § 372.25.) It is more than plausible that Apple remained subject to § 313 after 2020 and failed to report.

52. *Ongoing violation.* Because the reports for each year since 2020 remain unfiled, the violation is ongoing. EPCRA authorizes suit for an owner's "failure to" complete and submit required reports. 42 U.S.C. § 11046(a)(1). *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 106-09 (1998), involved reports filed before suit; it has no application to reports never filed. Defendants offer no evidence of filed reports.

**ii. <u>The TAC states claims under §§ 304, 311, and 312</u>**

53. Defendants say an inventory shows possession, not release, and that Plaintiff alleges no inaccurate inventory. (Mot. 19.) The TAC alleges both. Apple's inventories omitted or understated chemicals actually present, including reporting zero chlorine while hundreds of pounds were on site, which the City cited in its December 2020 inspection. (TAC ¶¶ 144, 187, 545.) An inventory that omits chemicals present above threshold has not been "complete[d]." 42 U.S.C. § 11046(a)(1)(A)(iii). And the TAC alleges specific, dated releases of extremely hazardous substances: an April 30, 2021 phosphine leak, for which the Fire Department obtained a Cal OES incident number and advised Apple to report, but Apple never did; an August 10, 2023 chlorine high-gas alarm; and a December 8, 2023 chlorine sensor spike. (TAC ¶¶ 148, 157, 169.) Whether those releases met reportable quantities is a question of fact. 42 U.S.C. §§ 11004(c), 11046(a)(1)(A)(i). Plaintiff does not seek to enforce § 302 independently (*see* Mot. 26); the § 302

allegations establish the Facility's status as holding extremely hazardous substances above threshold planning quantities, as Apple's own Risk Management Plan confirms for arsine, chlorine, and ammonia, the predicate for its §§ 304, 311, and 312 obligations. (TAC ¶ 187.)

### H. THE TAC STATES CLAIMS UNDER TSCA

54. TSCA authorizes citizens to "restrain" any person "alleged to be in violation of this chapter or any rule promulgated under section 2603, 2604, or 2605." 15 U.S.C. § 2619(a)(1). "This chapter" includes § 2614, which makes it unlawful to fail to comply with any rule under the chapter, to fail to maintain required records, or to fail to submit required reports. 15 U.S.C. § 2614(1)-(3).

55. The TAC alleges violations of each kind. *TCE (Count 30)*: EPA's final § 2605 rule prohibits most industrial and commercial uses on a phased schedule and imposes workplace exposure limits and protection-program requirements on continuing uses, 89 Fed. Reg. 102,568 (Dec. 17, 2024) (40 C.F.R. Part 751, Subpart D), and the TAC alleges TCE in Apple's wastewater that never appeared in its inventories. (TAC ¶¶ 123, 591-595.) *Mercury (Count 29)*: any person who "intentionally uses mercury in a manufacturing process" must report under 15 U.S.C. § 2607(b)(10)(D) and 40 C.F.R. Part 713; the TAC alleges Apple uses and exhausts mercury and has not reported. (TAC ¶¶ 63, 582-587.) *NMP and lead (Counts 28, 31)*: the TAC alleges large-scale NMP use and lead in Apple's inventory, with corresponding recordkeeping and reporting failures under § 2614. (*Id.* ¶¶ 150, 575-579, 599-602.) EPA has determined that NMP presents unreasonable risk (Tarantino Decl. Ex. F), and Apple itself argued in the prior action that its NMP reporting was enough to alert the community to the Facility's hazards. (*Gjovik I*). Count 32 seeks injunctive relief to restrain the same violations. Defendants' only developed TSCA argument is that no final rule yet restricts NMP use. (Mot. 18.) As to mercury and TCE, they say only, in a chart, that Part 713 "[s]ets out reporting requirements," that § 2607(b)(10)(D) "[d]irects companies

to report information on mercury," and that § 751.301 is a "general" section. (Mot. 26, 28.) That concedes the reporting obligation the TAC alleges Apple has not met, and the TCE rule's specific prohibitions follow its general section. At most, Defendants raise questions about which requirements apply and when, not a basis to dismiss.

## I. CITING A PROVISION IS NOT PLEADING A CLAIM

56. Defendants devote six pages to a chart treating every provision the TAC cites as a separate claim. (Mot. 23-28.) Each citizen-suit statute has the same architecture: substantive provisions that set standards or direct EPA to promulgate them, and a citizen-suit provision that authorizes private enforcement of those standards. When the TAC cites 42 U.S.C. § 6922, it is suing under § 6972 to enforce the generator standards promulgated under § 6922. Citing the underlying provision identifies what was violated, and references to penalty, criminal, and enforcement provisions identify the gravity of the conduct and the remedy factors. The chart identifies no count that lacks an enforceable requirement, and some entries refute themselves. Defendants describe 42 U.S.C. § 7661a(a) as "[m]ak[ing] it unlawful to violate the terms of a permit" and 33 U.S.C. § 1317(d) as "[m]ak[ing] it unlawful to violate any . . . pretreatment standard," yet say neither sets a compliance standard. (Mot. 26.) They list the RCRA regulations at 40 C.F.R. §§ 260-265 as unenforceable criminal provisions (Mot. 25), though citizens may enforce any regulation "which has become effective pursuant to" RCRA. 42 U.S.C. § 6972(a)(1)(A). And Part 264 applies to Apple's hazardous waste treatment units for the reasons stated above. To the extent the Court finds any citation extraneous (*see* Mot. 23 n.3), the remedy is to disregard or strike it, not to dismiss a count that rests on an enforceable requirement.

57. Defendants also say Plaintiff "concedes she already brought her anti-retaliation claims under RCRA" and ask the Court to dismiss them as precluded. (Mot. 28.) The TAC pleads

no retaliation claim. It is a citizen enforcement action, and the paragraph Defendants cite describes the separate employment action. (TAC ¶ 17.) There is nothing to dismiss.

### J. RULES 8 AND 9(B) PROVIDE NO BASIS FOR DISMISSAL

58. The TAC pleads no fraud claim, and none of its counts depends on invalidating a permit. They rest on violations of permit conditions, operation of unpermitted sources, and violations of regulations. Rule 9(b) could at most require the Court to disregard particular allegations "grounded in fraud"; it would not dismiss any claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26 (9th Cir. 2009) (cited at Mot. 14); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Nor are these allegations new (Mot. 3, 14); Apple's misdescription of the Facility has been alleged since the original complaint and the Notice. (*See* Dkt. 48 ¶¶ 3, 5, 37, 49, 164; Dkt. 102-1 ¶¶ 45, 129, 186.)

59. In any event, contrary to Defendants' claim that Plaintiff "cites no evidence of any false statement made to any regulator" (Mot. 4), the TAC pleads the who, what, when, and how: Apple's 2016 communications proposing to keep its name off regulatory testing (TAC ¶ 115); priority pollutants omitted from its discharge permit application (¶ 124); its description of the Facility as a "Semiconductor Fab" in its 2023 air application, contrasted with "research and development" elsewhere (¶¶ 151, 161); sworn emissions submissions varying by orders of magnitude (¶ 175); a Risk Management Plan disclosing three regulated substances while many more are present (¶ 187); and hazard-analysis tables withheld from the Fire Department (¶ 197). Nor is there tension between "research and development" and "semiconductor fabrication": the governing regulations treat semiconductor research areas as fabrication. BAAQMD Reg. 8-30-210; Cal. Fire Code § 2701.1. Apple described the Facility to the prior court as a fab (*Gjovik I*, Hr'g Tr., and its motion now concedes that its research "overlap[s]" with fabrication (Mot. 14). That confirms, rather than refutes, the inaccuracy of the label Apple gave regulators.

### K. THE TAC STATES A CLAIM FOR PUBLIC NUISANCE

#### i. Claim preclusion does not apply, and Apple is estopped from arguing it

60. One year ago, Apple told the prior court that this case and that one were "factually and legally distinct, involving different claims requiring different discovery and presentation of different evidence," that "the events and property at issue are distinct in the two cases," and that the prior action "is not concerned with whether any allegedly unlawful activities occurred at 3250 Scott." (Dkt. 11-1) The court agreed: Case No. 23-cv-4597 "is NOT related" to this one. (Dkt. 12.) Apple now tells this Court that the nuisance claim arises from "the same nucleus of facts." (Mot. 20.) Judicial estoppel bars that reversal: a clearly inconsistent position, accepted by a court, now asserted for advantage. *New Hampshire*, 532 U.S. at 750-51; *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001).

61. Claim preclusion also fails on its own terms. It requires identity of claims and privity, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001), and bars only claims that were raised or could have been raised. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (cited at Mot. 20). A judgment does not bar claims based on conduct after the prior complaint was filed. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039-40 (9th Cir. 2017). Apple argued in the prior action that the nuisance claim was "predicated entirely on alleged harms she contends she experienced during a nine-month window in 2020" (*Gjovik I*), and the court held that Plaintiff lacked standing there to challenge emissions after October 2020. (Tarantino Decl. Ex. B at 18.) A claim the court held she could not bring there is not one she "could have" brought.

62. Apple also kept these claims out of the prior action. It told the court that case "should be centered on the basis for her termination" rather than become "a forum to air her sprawling critiques of Apple's environmental practices," and its counsel said the environmental issues "are being litigated in other forums" and that the TRI allegations were "not what this

complaint is about." (*Gjovik I*); *Gjovik I*, Hr'g Tr. (Dkt. 106-2 at 10:4-25, 17:7-20, 20:25-21:2.) Preclusion does not apply where the defendant acquiesced in separate litigation of the claims. Restatement (Second) of Judgments § 26(1)(a) & cmt. a (1982). Apple cannot keep the claims out of one case and then argue they belonged there. Finally, the claims and parties differ: this claim seeks abatement of a continuing public nuisance based on present conditions, not damages for 2020 injuries, and the Landlord/Owner Defendants were not parties. Apple's position is also internally inconsistent: it calls Plaintiff's 2020 injuries irrelevant to standing (Mot. 8) while calling this action the same claim as one seeking damages for them (Mot. 20-21).

**ii. <u>The claim is timely because the nuisance continues</u>**

63. "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right." Cal. Civ. Code § 3490. A continuing nuisance gives rise to a new cause of action with each repetition. *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1216-17 (1996) (cited at Mot. 21); *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1097 (1996). The TAC alleges a nuisance that continues today. (TAC ¶¶ 171, 174-175, 178, 183-184.) Defendants' argument that Plaintiff "left the vicinity" in 2020 (Mot. 21) conflates limitations with special injury. The prior court's accrual ruling applied Code of Civil Procedure § 340.8 to injuries suffered in 2020 (Tarantino Decl. Ex. B at 5-6); it says nothing about when a claim to abate present conditions accrues. *Goddard* and *Mallon* (Mot. 22) involved nuisances that had ceased; they have no application to an operating facility.

**iii. <u>Plaintiff alleges special injury</u>**

64. A private plaintiff may sue for a public nuisance that is "specially injurious to himself." Cal. Civ. Code § 3493. Personal injury is the classic injury different in kind from the public's. *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550-52 (2009). Plaintiff suffered serious personal injury while living across the street (TAC ¶¶ 14, 30-31, 201-205), requires ongoing medical monitoring (*id.* ¶ 31), and is threatened again whenever she uses the area. (*Id.* ¶¶

27-28, 188.) *Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 948 (C.D. Cal. 2021) (cited at Mot. 21), involved harm indistinguishable from the public's; personal injury from the same continuing nuisance is different in kind.

**iv. <u>Civil Code § 3482 does not apply</u>**

65. Section 3482 protects only conduct done "under the express authority of a statute" and is construed narrowly: the statute must authorize the very act that constitutes the nuisance. *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86, 100-01 (1979); *Varjabedian v. City of Madera*, 20 Cal. 3d 285, 291-92 (1977). A permit is not a statute, and holding permits for some operations does not immunize others. *Otay Land Co. v. U.E. Ltd., L.P.*, 15 Cal. App. 5th 806, 846-47 (2017); *Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc.*, 190 Cal. App. 4th 1502, 1530-32 (2010). No permit authorizes exceeding its own limits (TAC ¶¶ 175, 178), operating unpermitted sources (*id.* ¶¶ 158-165, 174), or the toxic gas releases and siting hazards the TAC describes (*id.* ¶¶ 152-169, 186-198). Apple had no air permit until 2023, BAAQMD's 2026 settlement included operating without required permits, and the permit covers only some gases and exhaust points. (*Id.* ¶¶ 123, 150, 158-165, 283.) Defendants rely on the May 1, 2023 air permit (Mot. 22), but it cannot authorize the years of operation before it issued, Apple's exceedances of its own limits, or sources it does not cover. *Eisentecken v. Tahoe Regional Planning Agency*, 2025 WL 1531678, at *10 (E.D. Cal. May 28, 2025) (cited at Mot. 22), involved conduct the permit authorized. And the Legislature has provided that the air pollution laws do not limit nuisance actions. Cal. Health & Safety Code § 41509.

**v. <u>The City Code and the City's own record confirm the nuisance</u>**

66. Plaintiff sues under Civil Code §§ 3479, 3480, 3491, and 3493, not the City Code. The ordinances she cites (TAC ¶¶ 628-646) matter because conduct that violates health and safety ordinances is a nuisance per se; § 8.30.050 governs the City's administrative abatement procedure and does not displace the Civil Code. The City Council itself found housing not "appropriate" next

to the Facility, and the Fire Department found the Facility's gas plume modeling not "favorable" for residential neighbors. (TAC ¶¶ 235-248.) Defendants say the TAC "vaguely" invokes toxic gas rules (Mot. 23), but it details Apple's noncompliance with the Santa Clara County Toxic Gas Ordinance and the City's confirmation that it has no record of any applications, inspections, or evidence of compliance. (TAC ¶ 170].)

## L. THE TAC STATES CLAIMS AGAINST THE LANDLORD/OWNER DEFENDANTS

### i. The TAC alleges the owners' own conduct and control

67. The Landlord/Owner Defendants describe themselves as "passive landowners." (Supp. 1.) The TAC alleges otherwise. Apple's Rule 30(b)(6) designee testified that the landlord holds environmental, health, and safety responsibilities for the site, including hazardous materials, hazardous waste, and the structure. (TAC ¶ 87; Dkt. 119-6 at 15-16 (Schmidt Dep. 49:15-53:9).) Mr. Jenab is the named responsible party under the stormwater operations and maintenance plan. (*Id.* ¶¶ 94, 506.) The owners participated in the 2014 meetings with the City on accidental-release and explosion-control requirements for the fab buildout (*id.* ¶¶ 91-92); jointly installed the hydrogen storage tank with Apple (*id.* ¶ 99); filed, with Apple, the 2016 application to expand the hazardous-materials yard (*id.* ¶ 117); received the City's code-compliance warnings (*id.* ¶ 120); and sign and file permits for the Facility (*id.* ¶ 53).

68. That is active involvement, not mere ownership. RCRA's endangerment provision reaches any "past or present . . . owner or operator of a treatment, storage, or disposal facility" who "has contributed or who is contributing" to the handling or storage of waste. 42 U.S.C. § 6972(a)(1)(B). An owner that knowingly leases property for a hazardous waste storage and treatment unit, holds contractual responsibility for hazardous waste at the site, and participates in permitting the operation is "actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850-52 (9th Cir. 2011). Defendants' authorities involved owners alleged to have done nothing. In *Center for Biological Diversity v. U.S. Forest Service*, 80 F.4th 943, 953

(9th Cir. 2023), the Forest Service merely owned land on which hunters, under State permits, left lead ammunition. In *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 933-35 (C.D. Cal. 2023), the claims against a city owner alleged only to be a "potentially responsible party" failed for want of factual detail, while claims against the operating owners proceeded. The extent of the owners' involvement here is, at a minimum, a question of fact; their CWA stormwater liability is addressed above.

69. Traceability and redressability follow. Plaintiff's injuries flow from conditions the owners helped create, approved, and are responsible for maintaining, not from "the independent action of some third party." *Lujan*, 504 U.S. at 560. And relief against Apple alone would be incomplete: the building was built out as a semiconductor fab, and nothing would prevent the owners from re-leasing it for the same use. (TAC ¶¶ 91-99, 117.)

**ii. <u>The owners are liable for the nuisance</u>**

70. The owners acknowledge that the City Code makes them responsible for maintaining their property and for "[c]orrection and abatement of violations" of the fire code. (Supp. 4; Santa Clara City Code §§ 8.30.040, 15.60.100.) Liability for a nuisance extends to those who create or assist in creating it and to those who maintain it. *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 306 (2006). "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it." Cal. Civ. Code § 3483. A landlord who participates in creating the condition, or who controls the premises and knows of the hazard, is liable. *Birke*, 169 Cal. App. 4th at 1548-52; *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 512 (1975).

**iii. <u>The trustees had notice through the ownership's agent and counsel</u>**

71. The Lindsey and Woodruff trustees argue they received no pre-suit notice. (Supp. 4-5.) They are in this case late because Defendants did not identify them as owners until August

2026. Every prior complaint identified the Lindsey interests and reserved the right to name current owners (Dkt. 1 ¶¶ 43, 45; Dkt. 48 ¶ 51; Dkt. 102 ¶¶ 52-53), and Plaintiff asked defense counsel to identify the owners beginning in 2025. (Dkt. 114 ¶ 4.) Counsel declined to confirm title, and the ownership's own accounts conflicted. (Dkt. 102 ¶ 52; Dkt. 119-6 at 16 (Schmidt Dep. 54:22-56:25).) Plaintiff served the trustees with notice within days of learning their identities, and the parties stipulated to their substitution. (Dkts. 105, 114 ¶¶ 6, 8, 116-118.) Meanwhile their co-owner and managing agent, Mr. Jenab, received the Notice in July 2025, and the same counsel has represented the ownership group since September 2025. (TAC Ex. B; Dkt. 14 Ex. F.) The ownership had the opportunity to correct the violations, through its agent, fourteen months before the trustees were named.

72. The argument also cannot reach three categories of claims. Counts 33-34 are state-law claims to which no federal notice applies. RCRA Counts 4-8 allege violations of Subchapter III, for which suit "may be brought immediately after such notification," 42 U.S.C. § 6972(b)(1)(A), as may endangerment claims respecting Subchapter III violations, *id.* § 6972(b)(2)(A). And Count 19 alleges violations of § 1316, for which suit likewise may be brought immediately after notice. 33 U.S.C. § 1365(b). As to any remaining federal claim, the sixty-day period runs on October 24, 2026, before the hearing, and nothing in *Hallstrom* supports the dismissal with prejudice the trustees request.

## M. Objections to Defendants' Request for Judicial Notice

73. Under Civil L.R. 7-3(a), Plaintiff objects to Defendants' Request for Judicial Notice (Dkt. 129) and the Tarantino Declaration (Dkt. 128-1) to the extent they seek notice of the truth of disputed facts or of Defendants' characterizations of documents. The Court may notice court filings for their existence and the rulings they contain, not for the truth of facts asserted in them, and may not use judicial notice to resolve a reasonable dispute about what a document establishes.

*Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *Khoja*, 899 F.3d at 999-1003. Specifically:

a. Exhibits B, C, and E (the prior court's orders and judgment) may be noticed for the rulings they contain, not for Defendants' interpretation of their effect here.

b. Exhibit D (a bankruptcy trustee's notice of intent to abandon claims) is not referenced in the TAC and forms no basis of any claim; Defendants offer it only to portray Plaintiff as litigious (Mot. 3) and to create a defense, which *Khoja* forbids. 899 F.3d at 1002-03. A debtor's schedule must list every conceivable claim, 11 U.S.C. § 541, and the document confirms the trustee abandoned Plaintiff's claims, which revested in her. *Id.* § 554.

c. The NMP risk evaluation (cited as Exhibit G at Mot. 18 but identified as Exhibit F in the declaration) is not incorporated by reference: the TAC neither relies on it nor refers to it extensively, and Defendants say only that Plaintiff was "apparently referring" to it. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### N. Any Dismissal Should Be Without Prejudice and With Leave to Amend

74. Leave to amend is granted "with extreme liberality," particularly for a pro se litigant, unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Plaintiff can plead further particulars, including her use of the area, pretreatment exceedances, and potential to emit, and can supplement under Rule 15(d). Any dismissal for lack of jurisdiction must be without prejudice. *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999).

## V. CONCLUSION

75. The TAC alleges, largely from Apple's own sworn submissions, that a semiconductor fab across the street from homes and a playground exceeded its permit limits for some of the most toxic gases in industrial use, operated unpermitted waste and emission units for years, and stopped reporting its toxic releases. Plaintiff uses the creek, trail, and parks beside it and has watched the pollution reach them. That is the citizen enforcement Congress authorized. The Court should deny Defendants' Motion to Dismiss (Dkt. 128) and the Landlord/Owner Defendants' Supplemental Brief (Dkt. 130) in their entirety or, alternatively, grant leave to amend.

Respectfully filed,

**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff)**
Filed Oct. 8 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553,
Sacramento, CA 95816

# VI. [PROPOSED] ORDER

Defendants' Motion to Dismiss the Third Amended Complaint (Dkt. 128) and the Landlord Defendants' Supplemental Brief (Dkt. 130) came on for hearing on November 5, 2026. Having considered the parties' papers, the record, and the arguments presented, and good cause appearing, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (Dkt. 128) and the Landlord Defendants' Supplemental Brief (Dkt. 130) are **DENIED** in their entirety.

2. *Standing.* Plaintiff has adequately alleged Article III standing for each claim. She alleges current, regular use of the area adjacent to the Facility, including the San Tomas Aquino Creek Trail and Meadow Park; concrete plans to continue that use; observed pollution in the creek downstream of the Facility; and diminished enjoyment and reasonable concern arising from the Facility's alleged ongoing violations. As to EPCRA, she alleges an informational injury with concrete downstream consequences. Her alleged injuries are fairly traceable to Defendants, including the Landlord/Owner Defendants, and are redressable by the relief sought.

3. *Pre-suit notice.* Plaintiff's Notice was sufficiently specific to permit Defendants and the agencies to identify and attempt to abate the alleged violations. The asserted defects in the Notice's contact information, form of transmission, and recipients do not warrant dismissal.

4. *Agency enforcement and mootness.* Neither EPA's October 2025 administrative Consent Agreement and Final Order nor BAAQMD's May 2026 administrative settlement is a "civil or criminal action in a court" within the meaning of 42 U.S.C. §§ 6972(b) or 7604(b). Defendants have not shown that it is absolutely clear the alleged violations could not reasonably be expected to recur.

5. *Ongoing violations and limitations.* The TAC alleges ongoing and repeated violations in good faith, and no claim is time-barred on the face of the pleading.

6. *Statutory claims.* The TAC states claims under the Resource Conservation and Recovery Act, the Clean Air Act, the Clean Water Act, the Emergency Planning and Community Right-to-Know Act, and the Toxic Substances Control Act. The TAC's citations to statutory and regulatory provisions that identify the regulatory framework or remedies do not provide a basis to dismiss any count, and Rule 9(b) provides no basis to dismiss any claim.

7. *Public nuisance.* Plaintiff's public nuisance claims (Counts 33 and 34) are not barred by claim preclusion, the statute of limitations, or California Civil Code § 3482, and Plaintiff adequately alleges special injury.

8. *Landlord/Owner Defendants.* The TAC adequately alleges the Landlord/Owner Defendants' own involvement in and responsibility for the conditions at issue. The arguments regarding pre-suit notice to the Lindsey and Woodruff trustees do not warrant dismissal.

9. *Judicial notice.* Defendants' Request for Judicial Notice (Dkt. 129) is **GRANTED** only as to

the existence of the court records submitted and the rulings they contain, and is otherwise **DENIED**. The Court does not take notice of the truth of any disputed fact or of Defendants' characterizations of the documents.

10. Defendants shall file their answers to the Third Amended Complaint within fourteen (14) days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

DATED: ___________________

_________________________________
Hon. P. Casey Pitts
United States District Judge