# EXHIBIT 3

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ASHLEY GJOVIK,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 23-cv-4597-EMC

**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIFTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Dept: Courtroom 5, 17th Floor
Judge: Honorable Edward M. Chen
Date: February 13, 2025
Time: 1:30 p.m.

KATE E. JUVINALL (SBN 315659)
kjuvinall@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA 90401
Telephone: +1 310 633 2800
Facsimile: +1 310 633 2849

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: +1 202 339 8400
Facsimile: +1 202 339 8500

Attorneys for Defendant
Apple Inc.

# TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION TO DISMISS .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION AND STATEMENT OF ISSUES .......... 1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS .......... 3

III. ARGUMENT .......... 4

- A. Amendments Not Authorized by the October 1 Order Should Be Dismissed .......... 4
- B. Claims Related to Alleged Environmentally Unsafe Conditions Should Be Dismissed .......... 7
  - 1. Fifth Claim: Plaintiff's Private Nuisance Claim Is Time-Barred .......... 7
    - a. Plaintiff Admits She Suspected in 2020 That the Alleged Activities at 3250 Scott Caused Her Harm, Which Triggered the Statute of Limitations. .......... 9
    - b. Plaintiff Cannot Invoke Delayed Discovery By Citing Information That Was Publicly Available to Her During the Statute of Limitations. .......... 10
    - c. Plaintiff's Efforts to Blame Apple for Her Lack of Diligence Are Unavailing. .......... 13
  - 2. Sixth Claim: Plaintiff's IIED Claim Is Time Barred, and Plaintiff Does Not Allege Apple's Alleged Conduct Was Specifically Targeted at Plaintiff .......... 14
- C. Several of Plaintiff's Retaliation Claims Should Be Dismissed in Part .......... 15
  - 1. Second Claim: Plaintiff's Section 1102.5 Claim for Civil Penalties Is Time-Barred .......... 15
  - 2. Fourth Claim: Plaintiff's Labor Code Section 98.6 Claim for Penalties Is Time-Barred, and the Portion of the Claim Premised on a Violation of Labor Code Sections 232 and 232.5 Fails .......... 16
- D. Seventh Claim: Plaintiff's IIED Premised on Alleged Post-Termination Conduct Fails .......... 18
- E. No Further Leave to Amend Should Be Permitted .......... 22

IV. CONCLUSION .......... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) .......... 21

*Bell v. St. Clair*,
No. 1:13-cv-01594-SKO (PC), 2015 WL 1606968 (E.D. Cal. Apr. 9, 2015) .......... 3

*Benton v. Baker Hughes*,
No. CV 12-07735 MMM MRWX, 2013 WL 3353636 2, (C. D. Cal. June 30, 2013) .......... 4

*Bettles v. Toyota Motor Corp.*,
645 F. Supp. 3d 978 (C.D. Cal. 2022) .......... 10, 13

*Bhinder v. Bank of Am., N.A.*,
No. 2:13-CV-00216-GEB, 2013 WL 4010583 (E.D. Cal. Aug. 5, 2013) .......... 14

*BMA LLC v. HDR Glob. Trading Ltd.*,
No. 20-CV-03345-WHO, 2021 WL 949371 (N.D. Cal. Mar. 12, 2021) .......... 19

*Camsi IV v. Hunter Tech. Corp.*,
230 Cal. App. 3d 1525 (1991), *reh'g denied and opinion modified* (July 2, 1991) .......... 14

*Contrast Rajkumar v. Cisco Sys., Inc.*,
No. C 08-1600 PVT, 2008 WL 3397851 (N.D. Cal. Aug. 11, 2008) .......... 19

*Coppola v. Smith*,
19 F. Supp. 3d 960 (E.D. Cal. 2014) .......... 4

*Czajkowski v. Haskell & White, LLP*,
208 Cal. App. 4th 166 (2012) .......... 8

*Dowell v. Contra Costa Cnty.*,
928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013) .......... 18

*Drake v. Toyota Motor Corp.*,
No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860 (C.D. Cal. May 17, 2021) .......... 13

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) .......... 8

*Garza v. BNSF R. Co.*,
No. 1:12CV032 DLB, 2012 WL 2118179 (E.D. Cal. June 11, 2012) .......... 20

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
145 F. Supp. 3d 1000 (S.D. Cal. 2015) .......... 9

*Grisham v. Philip Morris, USA, Inc.*,
40 Cal.4th 623 (2007) .......... 8

*Hopkins v. Kedzierski*,
225 Cal. App. 4th 736 (2014) .......... 15, 16, 17

*King v. City & Cnty. of San Francisco*,
No. 21-CV-02843-AGT, 2022 WL 4629448 (N.D. Cal. Sept. 30, 2022) .......... 7, 21

*King v. Facebook, Inc.*,
572 F. Supp. 3d 776 (N.D. Cal. 2021) .......... 19

*Lieberman v. Fieger*,
338 F.3d 1076 (9th Cir.2003) .......... 20

*Lopez v. Wachovia Mortg.*,
No. 2:09-CV-01510-JAM-DAD, 2009 WL 4505919 (E.D. Cal. Nov. 20, 2009) .......... 2

*McGee v. Weinberg*,
97 Cal. App. 3d 798 (1979) .......... 8

*McKenna v. Permanente Med. Grp., Inc.*,
894 F. Supp. 2d 1258 (E.D. Cal. 2012) .......... 18, 20

*MGA Entertainment, Inc. v. Mattel, Inc.*,
41 Cal. App. 5th 554 (2019) .......... 9

*Nghiem v. Santa Clara Univ.*,
710 F. Supp. 3d 748 (N.D. Cal. 2024) .......... 18

*Nguyen v. W. Digital Corp.*,
229 Cal. App. 4th 1522 (2014) .......... 14

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal.4th 965 (1993) .......... 15

*Raifman v. Wachovia Sec., LLC*,
649 F. App'x 611 (9th Cir. 2016) .......... 8, 9

*Raiser v. City of Los Angeles*,
No. CV 13-2925 RGK RZ, 2014 WL 794786 (C.D. Cal. Feb. 26, 2014) .......... 7

*Saaremets v. Whirlpool Corp.*,
No. CV S-09-2337 FCD/EFB, 2010 WL 11571214 (E.D. Cal. Mar. 19, 2010) .......... 8

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 22

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
15 F. Supp. 3d 984 (N.D. Cal. 2014) .................... 22

*Sheahan v. State Farm Gen. Ins. Co.*,
394 F. Supp. 3d 997 (N.D. Cal. 2019) .................... 21

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999), *as amended* (Aug. 4, 1999) .................... 11

**Statutes**

Cal. Code Civ. Proc. §340(a) .................... 16

Cal. Lab. Code §96(k) .................... 17

Cal. Lab. Code §98.6 .................... 1, 16, 17

Cal. Lab. Code §232 .................... *passim*

Cal. Lab. Code §232.5 .................... 1, 2, 16, 18

Cal. Lab. Code §1102.5 .................... *passim*

**Other Authorities**

Cal. Civil Jury Instructions No. 455 .................... 9

Fed. R. Civ. P. 12(b)(6) .................... 1

Fed. R. Civ. P. 15(a)(1) .................... 4

Fed. R. Civ. P. 15(a)(2) .................... 4

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO PLAINTIFF ASHLEY GJOVIK: **PLEASE TAKE NOTICE** that on February 13, 2025, at 1:30 p.m. in Courtroom 5, on the 17th Floor of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. will move the Court for an Order dismissing the Second Claim (in part), the Fourth Claim (in part), and the Fifth through Seventh Claims of Plaintiff's Fifth Amended Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6).[1] This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice in support of this Motion, the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND STATEMENT OF ISSUES

The Court's October 1, 2024 order regarding Plaintiff's prior Fourth Amended Complaint (Dkt. 76; "4AC") granted Plaintiff leave to amend particular causes of action on specific bases (and only those bases): the Labor Code[2] sections 1102.5 and 98.6 claims for civil penalties to plead equitable tolling; the Labor Code sections 232 and 232.5 claims to allege causation; the nuisance claim to plead delayed discovery; the IIED claim premised on fear of cancer to plead delayed discovery and that Apple's alleged conduct was targeted specifically at Plaintiff; and the IIED claim premised on post-termination conduct to plead non-conclusory factual allegations regarding the "more serious" conduct identified in the 4AC and concrete facts to support respondeat superior liability. Dkt. 112 (the "Oct. 1 Order") at 38-41. The Court cautioned Plaintiff that it had "serious concerns" and was "extremely skeptical" as to whether Plaintiff could amend some of the claims in good faith. *Id.* at 40, 41.

Nevertheless, Plaintiff filed a Fifth Amended Complaint ("5AC") and has sought to amend on all grounds the Court permitted.[3] As discussed below, the new allegations in the 5AC that the

---

[1] All references to "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] All references to the "Labor Code" are to California Labor Code unless otherwise noted.

[3] The docket in this case now contains three separate pleadings captioned as a Fifth Amended Complaint: Dkt. 128 (filed Nov. 7, 2024); Dkt. 138 (filed Nov. 20, 2024); and Dkt. 142 (filed Nov.

Court had permitted her to introduce do not save any of her amended claims from dismissal. Plaintiff has additionally sought to add allegations far outside the bounds of this Court's October 1 Order, without seeking leave. Her eleventh-hour attempt to introduce yet further allegations into this litigation should be rejected.

Apple moves to dismiss all of the claims in the 5AC related to alleged **environmentally unsafe conditions** at 3250 Scott Boulevard[4]:

- The Fifth Claim for private nuisance based on the alleged activities of Apple's facility at 3250 Scott Boulevard should be dismissed because it is time-barred.
- The Sixth Claim for intentional infliction of emotional distress premised on a fear of cancer should be dismissed because it is time-barred, and in any event, Plaintiff does not allege the alleged conduct was specifically targeted at Plaintiff as required by the Court's prior order.

In addition, Apple moves to dismiss the following **retaliation claims** that are not adequately pled and/or are not legally cognizable:

- The Second Claim under Labor Code section 1102.5 should be dismissed in part because it seeks time-barred civil penalties.[5]
- The Fourth Claim should be dismissed in part because it seeks time-barred civil penalties, and because it asserts violations of Labor Code sections 232 and 232.5 for which Plaintiff fails to establish the requisite causal link between the alleged protected activities and the alleged adverse action.

Finally, Apple moves to dismiss one of Plaintiff's **remaining claims**:

- The Seventh Claim for intentional infliction of emotional distress premised on post-termination conduct should be dismissed because much of the alleged conduct is not

---

26, 2024). This Motion is directed at the operative 5AC – the one filed on November 26, 2024 (following this Court's orders regarding the prior iterations) at Dkt. 142.

[4] For the Court's convenience and clarity, Apple buckets Plaintiff's claims at issue into the same categories (bolded) that the Court used in the October 1 Order. *See id.* at 7.

[5] Courts can dismiss only a portion of, or one of several theories alleged in, a single claim. *See, e.g.*, *Lopez v. Wachovia Mortg.*, No. 2:09-CV-01510-JAM-DAD, 2009 WL 4505919, at *3-4 (E.D. Cal. Nov. 20, 2009).

outrageous as a matter of law, and the remaining alleged conduct is not supported by either "specific, concrete facts establishing a plausible basis for her belief that the wrongdoing she generally describes was in fact conducted by Apple" (Oct. 1 Order at 36) or "concrete facts to support a basis for respondeat superior liability" (*id.* at 37, 40-41).

Apple respectfully requests that the Court dismiss these claims without further leave to amend. This case has been pending for over a year without moving past the pleading stage, despite the ***eight*** separate complaints Plaintiff has filed. The Court has repeatedly afforded Plaintiff opportunities to try to allege facts in support of her legal claims, despite expressing skepticism about her ability to do so consistent with her ethical obligations. As this Court previously recognized, "[t]he gist of her suit is that Apple retaliated against her because she complained about conduct at the company, including but not limited to environmentally unsafe conditions." Dkt. 73 at 1. The case should proceed on claims that are properly alleged at this stage based on that alleged conduct, so that the Court and the parties can move forward.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS[6]

Plaintiff worked for Apple from February 2015 until Apple terminated her employment in September 2021. 5AC ¶12. Apple told her it was terminating her employment because she disclosed confidential product-related information and failed to cooperate in an investigation. *See* 4AC ¶¶132-33.[7] Plaintiff contends the termination was in retaliation for raising concerns to government agencies and others. *See, e.g.*, 5AC ¶¶3-4.

Beginning in 2017, Complainant was assigned to work at an Apple office located at 825 Stewart Drive in Sunnyvale, California ("825 Stewart"). *See* 4AC ¶47; 5AC ¶48. The office building is located on the TRW Microwave Superfund site, which is monitored and overseen by

---

[6] For purposes of this Motion only and as required under the Rules, Apple recites Plaintiff's factual allegations as if they were true, even though they are not. Given the procedural posture of this Motion, Apple will not present any additional or contrary facts regarding Plaintiff's employment, her termination, or her claims in this case; at the appropriate time, Apple will present its defense. The 5AC also contains numerous irrelevant allegations, which Apple does not summarize here.

[7] Plaintiff omitted certain previously pled facts from the 5AC. But the Court may still consider them here, as a "[p]laintiff may not plead around the deficiencies in [her] claims by omitting previously pled facts." *Bell v. St. Clair*, No. 1:13-cv-01594-SKO (PC), 2015 WL 1606968, at *3 (E.D. Cal. Apr. 9, 2015).

the U.S. Environmental Protection Agency (“EPA”) and for which Northrup Grumman—not Apple—is the statutorily defined Responsible Party. *See* 5AC¶¶48-50. In March 2021, Apple emailed Plaintiff and other Apple employees about an upcoming test for potential vapor intrusion at the office where Plaintiff was assigned to work. *Id.* ¶72. In the following months, Plaintiff expressed safety concerns about vapor intrusion, both internally and to various government entities, including the EPA. *See, e.g., id*. ¶¶73, 84. She contends that she came to believe that a fainting spell that she had experienced in the office in 2019 was due to vapor intrusion. *See id.* ¶81.

Plaintiff further claims that in 2015 Apple began operating a facility at 3250 Scott Boulevard in Santa Clara, California (“3250 Scott”) that allegedly vented gases near an apartment complex where Plaintiff lived from February 2020 to October 2020. *Id.* ¶¶12, 19-20. She contends that shortly after she moved into the apartment complex she fell ill and went on disability. *Id.* ¶¶29-30. She alleges that, throughout 2020-2022, she spent significant time researching potential causes of her illness, including 3250 Scott. *Id.* ¶261.

## III. <u>ARGUMENT</u>

### A. <u>Amendments Not Authorized by the October 1 Order Should Be Dismissed</u>.

A party in federal court is permitted to amend its pleading “once as a matter of course” within specified times frames; other amendments are permitted “only with the opposing party’s consent or the court’s leave.” Fed. R. Civ. P. 15(a)(1), (2). A “procedural problem” arises where a litigant attempts to add new claims or allegations that are “outside the scope of the amendment permitted by the prior dismissal order.” *Coppola v. Smith*, 19 F. Supp. 3d 960, 971 (E.D. Cal. 2014). The appropriate remedy is to strike or dismiss unauthorized new claims or allegations. *See Benton v. Baker Hughes*, No. CV 12-07735 MMM MRWX, 2013 WL 3353636, at *2-3, (C. D. Cal. June 30, 2013) (citing cases). Indeed, in ruling on Plaintiff’s 4AC, the Court “emphasize[d] that Ms. Gjovik is not permitted to amend her pleading except as expressly authorized in this order” and that “[i]f the Court has not explicitly allowed Ms. Gjovik to plead a new claim, legal theory, or factual predicate, then she cannot plead such in the amended complaint.” Oct. 1 Order at 41.

Plaintiff’s 5AC goes well beyond the specific and limited leave the Court afforded in the October 1 Order; in fact, despite having had multiple claims dismissed with prejudice (*see* Oct. 1

Order at 46-47), the 5AC still runs 75 pages—one page ***longer*** than the 4AC. This is in significant part due to the fact that Plaintiff has attempted to add new allegations absent from the 4AC and not authorized by the leave granted by the Court on October 1—to wit:

***Nuisance claim.*** Though the Court only authorized Plaintiff to amend her nuisance claim to "address the statute-of-limitations problem" (*id.* at 40), Plaintiff's nuisance claim now contains new allegations unrelated to demonstrating that the discovery rule should apply. For example, she introduces new allegations regarding Apple's purported conduct (*see* 5AC ¶41 [alleging that an individual "in charge of EH&S legal matters for 3250 Scott" told her that "Apple needed to be doing inspections and testing that it had not done"]), causation (*see id.* ¶34 [alleging that she was "covered in hives" the same day as a purported leak at 3250 Scott]), and injury (*see id.* ¶274 [alleging that 3250 Scott "turned her white clothes yellow"]).

***IIED claim premised on 3250 Scott.*** The Court granted Plaintiff leave to amend her IIED claim premised on 3250 Scott to "address the statute-of-limitations problem" (Oct. 1 Order at 40) and to "allege that Apple directed its conduct at her specifically or with knowledge of her presence specifically" (*id.* at 31). Plaintiff goes beyond what the Court explicitly allowed and presents new allegations regarding, *e.g.*, her alleged fear that her dog will develop cancer and other diseases (5AC ¶282) and Apple's purported conduct at a data center in 2015 (*id.* ¶289).

***Labor Code section 1102.5 claim.*** The Court granted Plaintiff "leave to amend [her Labor Code section 1102.5 claim] to plead tolling ***only***" (Oct. 1 Order at 39) (emphasis added), but Plaintiff alleges additional statutory violations that she purportedly complained about. 5AC ¶230 (alleging that she "complained of violations of environmental laws").

***Labor Code section 232 claim.*** "[T]he ***only*** amendment permitted" to Plaintiff's Labor Code section 232 claim was "knowledge on the part of Apple of the wage disclosure" (Oct. 1 Order at 39) (emphasis added), yet Plaintiff alleges additional activities that she engaged in—and without explaining how Apple knew about such activities. 5AC ¶246 (alleging that she "shared information and commented on Twitter about an earlier U.S. Department of Justice lawsuit against Apple for illegal wage-fixing practices").

***IIED claim premised on post-termination conduct.*** The Court granted Plaintiff leave to amend her IIED claim premised on purported post-termination conduct by Apple to "plead nonconclusory allegations on the more serious conduct" alleged in the 4AC and to "plead concrete facts to support a basis for respondeat superior liability." Oct. 1 Order at 40-41. Despite not being authorized to do so, Plaintiff has peppered her IIED claim with *additional* examples of purported conduct by Apple. *See, e.g.*, ¶5AC 322 (alleging that Twitter account "falsely claimed that Plaintiff's statements about N-Methyl-2-pyrrolidone were misleading and even accused her of improperly laundering clothes"); *id.* ¶329 (alleging that Apple "falsely impersonated government employees to intimidate her"); *id.* ¶348 (alleging that one of Apple's law firms "used fake social media accounts to attack her"); *see also id.* ¶¶310-13, 316-20, 323-26, 338-39, 341, 343 (other purported conduct by Apple not alleged in 4AC).

***Other amendments.*** Plaintiff has introduced a variety of allegations in the "Statement of Facts" section of her 5AC that exceed the scope of amendment. For example, she alleges new examples of complaints that she purportedly raised. *See* 5AC ¶93 (alleging that she complained about the "disparate impact of chemical exposure in Apple buildings"); *id.* ¶100 (alleging that she complained, in April 2021, about a "meeting with Apple EH&S lawyer in November 2020"); *id.* ¶134 (quoting purported Twitter posts by Plaintiff related to concerns she had raised).

Plaintiff also alleges new examples of alleged adverse actions. *See id.* ¶88 (alleging her manager failed to give her a performance review); *id.* ¶¶91-92 (alleging that, after she raised workplace safety concerns, her manager told her she could quit); *id.* ¶100 (alleging that, in May 2021, Apple told her it would not answer her safety or environmental questions); *id.* ¶113 (alleging her manager became upset after Plaintiff expressed excitement about a state hazardous waste bill).

Finally, Plaintiff intersperses her amended complaint with various grievances about Apple's investigation and resolution of workplace concerns. *Id.* ¶114 (alleging that a former Apple employee said she had reported many of the same issues that Plaintiff had reported and that Apple "had done nothing to address the problems"); *id.* ¶123 (alleging that she asked for a "citizen oversight-type role" to help reform Apple's Human Resources practice, but when she was not given the role, she "realized Apple had designed an Employee Relations system to retaliate and cover up

issues"); *id.* ¶136 (alleging that "[o]ne of Plaintiff's friends … told her Apple instructed all the managers to not to write anything about employee issues because they were in trouble"); *id.* ¶¶142-43 (alleging that the document summarizing her complaints to be investigated was "incomplete" and "misleading"); *id.* ¶166 (alleging that she complained to a senior director about Apple Employee Relations). None of these amendments were "expressly authorized" by the Court's October 1 Order.

At some point, the pleadings in this matter—which in turn will frame the facts that Plaintiff must prove, the defenses Apple may assert, and the appropriate boundaries of discovery—must be settled. Plaintiff's unauthorized attempt to add new "legal theories" or "factual predicates" at this juncture should be rejected. Oct. 1 Order at 41; *accord King v. City & Cnty. of San Francisco*, No. 21-CV-02843-AGT, 2022 WL 4629448, at *2 (N.D. Cal. Sept. 30, 2022) ("When a district court grants leave to amend for a specified purpose, it does not thereafter abuse its discretion by dismissing any portions of the amended complaint that were not permitted … This rule applies with equal vigor to pro se plaintiffs.") (quoting *Raiser v. City of Los Angeles*, No. CV 13-2925 RGK RZ, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014)).

### B. <u>Claims Related to Alleged Environmentally Unsafe Conditions Should Be Dismissed</u>.

Plaintiff has repeatedly attempted to expand a case that should be centered on the basis for her termination from Apple into a forum to air her sprawling critiques of Apple's environmental practices. But claims regarding alleged environmental issues at an Apple facility separate from Plaintiff's workplace, and of alleged emotional distress tethered to those issues, are plainly time-barred and should be excised from the case once and for all.

#### 1. <u>Fifth Claim: Plaintiff's Private Nuisance Claim Is Time-Barred</u>.

Plaintiff's private nuisance claim is predicated entirely on alleged harms she contends she experienced during a nine-month window in 2020 when she rented an apartment near an Apple facility. 5AC ¶¶12, 42. In the October 1 Order, the Court found, based on Plaintiff's allegations in the 4AC, that "the [two year] statute of limitations [for this claim] began to run at the latest by March 2021: at that time, she knew she was injured and she suspected that her injury was the result

of someone else's wrongdoing – as reflected in her article published at the time." Oct. 1 Order at 27. In other words, the Court found that based on Plaintiff's allegations to date she had at most two years from March 2021—until March 2023—to file suit. Plaintiff nonetheless continues to claim that it was not until February 2023 that she allegedly discovered that the activities at 3250 Scott were the "true cause of her illness." 5AC ¶266. Although Plaintiff's allegations in the 5AC and documents incorporated by reference make clear her time to file suit began to run long before, even with this allegedly new knowledge Plaintiff did not file suit until September 2023, more than five months after the limitations period had expired.

In the October 1 Order, the Court also found that Plaintiff had not sufficiently pled facts in the 4AC to invoke the delayed discovery rule, and allowed Plaintiff leave to amend her nuisance claim on that basis only. *Id.* at 28-29. Specifically, the Court found that the 4AC had not alleged "facts to show (1) the … manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 28 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)). In the 5AC, Plaintiff still fails to allege sufficient facts to show she could not have discovered Apple's alleged activities earlier despite reasonable diligence, and the nuisance claim should be dismissed with prejudice.

"Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost." *Saaremets v. Whirlpool Corp.*, No. CV S-09-2337 FCD/EFB, 2010 WL 11571214, at *7 (E.D. Cal. Mar. 19, 2010); *see also McGee v. Weinberg*, 97 Cal. App. 3d 798, 804 (1979). To take advantage of the delayed discovery rule as a way to avoid the applicable statute of limitations that would otherwise bar a claim, a plaintiff bears the burden of "specifically plead[ing] facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611, 613 (9th Cir. 2016) (quoting *Grisham v. Philip Morris, USA, Inc.*, 40 Cal.4th 623, 638 (2007)); *accord Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174 (2012) ("[W]hen a plaintiff relies on the discovery rule or allegations of fraudulent concealment as excuses for an apparently belated filing of a complaint, the burden of pleading and proving belated discovery of a cause of action

falls on the plaintiff." (internal quotations omitted)).

"[A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct ***a reasonable investigation of all potential causes of that injury***." *Raifman*, 649 F. App'x at 613 (emphasis added). "If such an investigation ***would have disclosed*** a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Id.* (affirming dismissal when plaintiffs alleged that they were not on notice of defendant's wrongdoing within the statute of limitations period but were only on notice of another's wrongdoing, and holding that "a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of *all potential causes of that injury*") (quoting *Fox*, 35 Cal.4th at 808) (emphasis added). In other words, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. … So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *MGA Entertainment, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 561 (2019) (citations omitted).[8] Plaintiff's allegations in the 5AC fail to establish a basis for applying the delayed discovery rule to salvage her time-barred nuisance claim.

**a. Plaintiff Admits She Suspected in 2020 That the Alleged Activities at 3250 Scott Caused Her Harm, Which Triggered the Statute of Limitations.**

Plaintiff's new allegations actually underscore that she ***did*** have a suspicion regarding Apple's facility being the cause of her injuries in 2020 sufficient to trigger the statute of limitations on this claim. Plaintiff now admits in the 5AC that she suspected in September 2020—over three years pre-filing—that she was being harmed by the tortious conduct of a third party (*i.e.*, by "solvent and other chemical exposure," 5AC ¶33), that she suspected the chemical exposure may have come from Apple's facility at 3250 Scott (which she understood was "registered as a hazardous waste

[8] *See also see also Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1011 (S.D. Cal. 2015) ("[U]nder California's approach to the delayed discovery rule … once a plaintiff possesses information that would cause a reasonable person to inquire into the cause of their injuries [ ] they are under an obligation to investigate the pertinent facts and the statute of limitations begins to run"); California Civil Jury Instructions No. 455 (to invoke delayed discovery rule, plaintiff must establish either that she "did not discover, and did not know of facts that would have caused a reasonable person to suspect," that she had been harmed "***by someone's wrongful conduct***," or that she "did not discover, and a reasonable a diligent investigation would not have disclosed," that some specific "***factual basis" "contributed to" her harm***) (emphasis added).

generator," *id.* ¶262), and that she "spent significant time researching … nearby facilities [to her apartment], including 3250 Scott" (*id.* ¶261). The two-year statute of limitations began to run then. *See* Oct. 1 Order at 27-28 ("Ms. Gjovik would have a factual basis for her environmental claims against Apple once she knew or suspected that the ARIA facility was the source of the chemical exposure."). Plaintiff's claim is time-barred because she did not file her lawsuit until September 7, 2023, nearly three years after the suspicions she alleges and long after the two-year limitations period had expired.

**b. Plaintiff Cannot Invoke Delayed Discovery by Citing Information That Was Publicly Available to Her During the Statute of Limitations.**

Plaintiff has still not alleged any "inability to have made earlier discovery despite reasonable diligence" of Apple's allegedly tortious role in causing her alleged harms. *Fox*, 35 Cal.4th at 808. For the delayed discovery rule to apply, a plaintiff "must specifically plead facts to show … the inability to have made earlier discovery despite reasonable diligence." *Id.* "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, ***and are charged with knowledge of the information that would have been revealed by such an investigation***." *Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 984 (C.D. Cal. 2022) (emphasis added). Plaintiff claims that she was incapable of discovering Apple's activities at 3250 Scott until February 2023, such that the limitations period should have been tolled until that time. But the numerous sources that Plaintiff now relies on to support her claim in the 5AC ***are the publicly available databases that were available to her long before she filed suit*** (and certainly more than two years before September 2023). Plaintiff cannot now invoke the delayed discovery rule when in her pleading she "identifie[d] numerous sources of information concerning the [alleged source of harm] that would have been revealed by such a search." *Id.*

***First***, Plaintiff publicly posted on her Twitter feed on February 21, 2023 (and alleged in her previous filings)[9] that she received building permits for 3250 Scott in response to a February 2023

[9] Plaintiff's Motion for Leave to File Sur-Reply and Sur-Reply – though stricken in connection with consideration of Apple's motion to dismiss the then-operative 4AC – further details how the public records request to the City of Santa Clara was allegedly the source of her "discovery" regarding 3250 Scott: "The only ***documents released were lists of permits***. Gjovik skimmed the permits for 3250 Scott Blvd and ***was flabbergasted to see permits for semiconductor fabrication tools*** (which

public records request to the City of Santa Clara that she claims led her to discover that 3250 Scott was an Apple semiconductor facility. *See* RJN ISO Mot. to Dismiss Exs. 1 and 2, incorporated by reference into Plaintiff's original Fifth Amended Complaint filed on Nov. 7, 2024 (Dkt. 128) ¶214, n.45. However, building permits for 3250 Scott ***dating back to 1973*** are publicly available on the City of Santa Clara website through a permit search portal. *See* RJN, Exs. 4A-4E (screenshot of the City of Santa Clara website listing permits for "3250 SCOTT BL" through 2020); *id.*, Exs. 5A-5B (screenshot of the City of Santa Clara website as of December 3, 2020, including a "Smart Permit Search" link).[10] These publicly available building permits for 3250 Scott refer to a "Fab" and "Fab clean room" (Dec. 5, 2017 Permit Nos. BLD2017-49103, BLD2017-49104). *See* RJN Ex. 4B at 3. (highlighting added). Indeed, these very same permits are the ones Plaintiff listed in her February 21, 2023 tweet regarding her alleged "discovery" of Apple's facility (*see* RJN Ex. 1 at 2 (11:29 pm Feb. 21, 2023 post))—yet they had been available through a simple public records search on the City of Santa Clara website all along.

Plaintiff nonetheless continues to self-servingly claim that, although she had "spent significant time researching potential causes of her illness, reviewing environmental databases and public records for nearby facilities, including 3250 Scott," she "could not connect these records to her illness or find the source of her exposure … [w]ithout knowledge of the semiconductor operations" at 3250 Scott. 5AC ¶261. But this claim is contradicted by the sources on which she relies and that the 5AC incorporates by reference. Indeed, the building permits she claims allowed her to "discover" in 2023 that 3250 Scott was a semiconductor facility ***were publicly available online back in 2020***, such that they could have been discovered through "reasonable diligence"—the very same diligence Plaintiff claims to have exercised belatedly 2.5 years later. *See* RJN Exs. 1, 2, 4A-4E, 5A-5B. In short, the building permits Plaintiff now claims are what triggered her to

---

she recognized only due to her work on hardware development at Apple)." Dkt. 93 ¶48 (emphasis added).

[10] Because these documents are alleged in the complaint, they are incorporated by reference and may be considered by the Court on a motion to dismiss. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (district court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").

realize in 2023 that Apple had a fab facility at 3250 Scott had been available to her on the City of Santa Clara website long before, if she had looked for them. Thus, Plaintiff did not do a reasonably diligent search by failing to look at the building permits when she suspected the Apple facility at 3250 Scott may have been the cause of her alleged injuries in 2020. No tolling is warranted.

***Second***, documents from the Santa Clara Fire Department on which Plaintiff now relies to support her claim were also available to her during the limitations period. Plaintiff relies throughout the 5AC on 2019-2022 records from the Santa Clara Fire Department that include the July 1, 2019 incident report—RJN Ex. 3—which she contends supports her allegation that Apple "intentionally vented its fabrication exhaust, unabated, and consisting of toxic solvent vapors, gases, and fumes, into the ambient air." 5AC ¶22; *see also id.* ¶23 ("Santa Clara City Fire Department records for 3250 Scott include at least sixteen chemical spill reports at 3250 Scott within only three years. These reports included eight confirmed leaks/spills: leaks of phosphine and silane on June [sic] 1 2019…"), ¶260 ("The plaintiff's findings were further substantiated through communication with an environmental safety expert. Lenny highlighted the acute health risks of gases used in semiconductor manufacturing and pointed out a 2019 gas leak report that mentioned phosphine—an indicator of Apple's toxic emissions at 3250 Scott. This information confirmed Plaintiff's belief that Apple's activities at the facility caused her illness"). A simple internet search reveals that Plaintiff, through reasonable diligence, could have accessed the July 1, 2019 incident report while she still lived in the apartment near 3250 Scott in 2020. Indeed, the July 1, 2019 incident report ***was publicly available online as of February 18, 2020*** through the Santa Clara Fire Department website, an agency Plaintiff admits she was aware of at the time (*id.* ¶33). *See* RJN Ex. 3 (July 1, 2019 incident report from Santa Clara Fire Department reporting chemical leak of silane and phosphine at "3250 SCOTT BL", which notes it was available online to the public as of February 18, 2020). Once again, the documents Plaintiff claims connect 3250 Scott to her alleged harms were publicly available to her throughout the limitations period.

***Third***, documents from the Bay Area Air Quality Management Board ("BAAQMD") on which Plaintiff now relies to support her claim were also available to her during the limitations period. Plaintiff relies on filings from BAAQMD to support her nuisance claim, alleging that

"Apple also reported to the [BAAQMD], in difficult-to-find agency filings, that in at least 2019-2021, 3250 Scott exhausted reportable amounts of mercury, arsenic, carbon monoxide, and formaldehyde into the ambient air around the factory" (5AC ¶25). However, the BAAQMD 2018 emissions data ***was publicly available online in August 2021***, and shows that 3250 Scott emitted the same substances Plaintiff alleges she saw in the 2019-2021 permits that allegedly put her on notice of potential exposure. *Compare* RJN Exs. 6A and 6B at 1, 120 (screenshot of BAAQMD website, noting that relevant 2018 emissions data was publicly available on August 24, 2021, and the linked 2018 emissions data file) (green highlighting added) *with* 5AC ¶25.

To invoke the delayed discovery rule, it is Plaintiff's burden to allege facts establishing that she could not have discovered the basis for the claims she now brings through any reasonably diligent search during the limitations period. Plaintiff has not met her burden here. On the contrary, the 5AC "identifies numerous sources of information" regarding 3250 Scott and Apple's activities there that "would have been revealed by such a search." *Bettles*, 645 F. Supp. 3d at 985 (dismissing plaintiff's claim on a motion to dismiss for failure to allege he conducted a diligent investigation when an internet search could have revealed the alleged conduct at issue); *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860, at *2-3 (C.D. Cal. May 17, 2021) (same).

**c. <u>Plaintiff's Efforts to Blame Apple for Her Lack of Diligence Are Unavailing.</u>**

Plaintiff nonetheless appears to allege that she was somehow prevented from learning about activities at 3250 Scott before February 2023 because Apple allegedly (1) used terms like the codename "Aria" on regulatory paperwork (5AC ¶¶19, 267), and (2) pressured government agencies to avoid documenting or discussing its activities (*id.* ¶263).[11] But Plaintiff fails to allege facts to support these allegations and also fails to connect the dots and allege ***how*** any alleged deception by Apple prevented her from accessing the publicly available documents that Plaintiff admits she eventually requested and/or received. Plaintiff has not alleged any facts explaining why she was unable to find these documents—which clearly identify the facility as 3250 Scott, rather

[11] Plaintiff also generically alleges that Apple "fail[ed] to warn her" about 3250 Scott. *See* 5AC ¶265. This unsupported allegation has nothing to do with Plaintiff's obligation to conduct a diligent investigation into her potential claims and to timely file them.

than being disguised under the code name ARIA—during the limitations period triggered by her alleged exposure. *See* RJN Exs. 3, 4B-4D, 6B; *Camsi IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1537 (1991), *reh'g denied and opinion modified* (July 2, 1991) (declining to apply delayed discovery rule in evaluating demurrer, and reasoning that "[t]he burden was on [plaintiff] to plead ***facts*** to show ***inability to have made earlier discovery***," but the "pleading wholly fail[ed] to show that [plaintiff] would have been unable, despite reasonable diligence, to have discovered both the VOC contamination, and that [defendant] was responsible for it") (emphasis added); *Bhinder v. Bank of Am., N.A.*, No. 2:13-CV-00216-GEB, 2013 WL 4010583, at *2 (E.D. Cal. Aug. 5, 2013) (dismissing time-barred claim where plaintiff failed to allege facts showing delayed discovery rule applied).

The delayed discovery rule is intended to "ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause." *Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522, 1539 (2014). It does not apply to individuals like Plaintiff, who suspected in 2020 that Apple's facility at 3250 Scott was the cause of her alleged harm, conducted an inadequate investigation during the limitations period in which she failed to discover the same publicly available information she now relies on to support her claim, and now seeks to salvage her claim by insisting it was not until 2023 that she actually reviewed that information. Because no delayed discovery rule salvages her untimely nuisance claim—and because she has now had multiple opportunities to plead a viable claim but has been unable to do so—the claim should be dismissed with prejudice.

**2. <u>Sixth Claim: Plaintiff's IIED Claim Is Time Barred, and Plaintiff Does Not Allege Apple's Alleged Conduct Was Specifically Targeted at Plaintiff.</u>**

Plaintiff brings an IIED claim (now titled "tort of fear of cancer and disease") premised on the same facts underlying her nuisance claim: her purported fear of developing cancer as a result of alleged exposure to "carcinogenic chemicals" from 3250 Scott in February to October 2020. 5AC ¶¶12, 277-91. In the October 1 Order, the Court dismissed this claim as time-barred under the same analysis as the nuisance claim. *Id.* at 30-32. Thus, because Plaintiff's nuisance claim is incurably time-barred, so is the IIED claim. *See* Section III.B.1, *supra*.

Moreover, even if this claim were timely, it would still fail because Plaintiff continues to allege no facts to demonstrate that any conduct allegedly leading her to develop a fear of cancer was "directed at [her] or undertaken with knowledge of [her] presence and [exposure to the chemicals]." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 974 (1993). Plaintiff generically alleges that Apple knew "people like Plaintiff would be injured," but she does not allege facts to suggest that Apple knew that 3250 Scott vented chemicals into ***her apartment*** or that it was causing ***her harm*** in particular. *See, e.g.*, 5AC ¶277 ("Apple deliberately vented toxic, carcinogenic, and lethal substances into the ambient air around the Santa Clara Square Apartments where Plaintiff lived in 2020"), ¶281 ("Apple knew it would cause tenants at the Santa Clara Square Apartments distress and acted with reckless disregard for the probability that people like Plaintiff would suffer emotional distress knowing she was present where there were lethal and carcinogenic chemicals"), ¶288 ("Apple had knowledge and a reckless disregard for the fact that people just like Plaintiff would be injured by its illegal dumping. Apple knew beyond speculation that people would be injured"). Her IIED claim should be dismissed because Plaintiff has not—and cannot—allege that Apple's purported conduct ***was directed at Plaintiff*** as required to state a claim. *See* Oct. 1 Order at 30-31 (citing *Potter*, 6 Cal.4th at 1003, and noting that "*knowledge of these particular plaintiffs*" is necessary to support an IIED, as opposed to negligent infliction of emotional distress, claim).

**C. <u>Several of Plaintiff's Retaliation Claims Should Be Dismissed in Part.</u>**

**1. <u>Second Claim: Plaintiff's Labor Code Section 1102.5 Claim for Civil Penalties Is Time-Barred.</u>**

In the October 1 Order, the Court held that Plaintiff's claim for civil penalties under Labor Code section 1102.5 was time-barred by the one-year limitations period, but granted Plaintiff leave to amend to plead a basis for tolling. *See* Oct. 1 Order at 13-14, 39. The Court also explained that Plaintiff would need to allege a basis for applying the *Elkins* rule, and the three elements of that rule: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Id.* at 14 (quoting *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014)). The 5AC contains no such allegations, however.

"The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Hopkins*, 225 Cal. App. 4th at 747 (internal quotation marks omitted). Plaintiff argues that equitable tolling applies merely because she filed a complaint with the California Department of Industrial Relations on August 29, 2021: *Ashley Gjovik v. Apple Inc.*, RCI-CM-842830 (the "Aug. 2021 DIR Complaint"). 5AC ¶205. However, the August 2021 DIR Complaint did not put Apple on notice to investigate the facts that form her Section 1102.5 claim. The August 2021 DIR Complaint contains a general allegation that Plaintiff was retaliated against for "rais[ing] concerns about work place safety" (*see* Dkt. 35-5 at 5-7) but does not reference retaliation for complaining about the myriad alleged violations of the law on which Plaintiff's Section 1102.5 claim relies. *See* 5AC ¶¶226-33 (alleging retaliation for complaining about violations of (1) various anti-retaliation provisions; (2) section 8(a)(1) of the NLRA; (3) 29 U.S.C. § 660; (4) her right to privacy; (5) 42 U.S.C. § 2000e; or (6) "California Government Code § 12920 anti-discrimination laws"). Because the August 2021 DIR Complaint did not alert Apple of the need to investigate the facts underlying Plaintiff's Section 1102.5 claim, equitable tolling does not apply to salvage Plaintiff's claim for civil penalties. *Hopkins*, 225 Cal. App. 4th at 747.

**2. <u>Fourth Claim: Plaintiff's Labor Code Section 98.6 Claim for Penalties Is Time-Barred, and the Portion of the Claim Premised on a Violation of Labor Code Sections 232 and 232.5 Fails.</u>**

The Court's October 1 Order granted Apple's motion to dismiss Plaintiff's claim for civil penalties under Labor Code section 98.6 because it was time-barred (Count 5), and also dismissed Plaintiff's claim under Labor Code sections 232 and 232.5 (Count 6). The Court granted Plaintiff leave to amend (1) the Section 98.6 claim for civil penalties to allege a basis for tolling, and (2) the Section 232 and 232.5 claim to allege "knowledge on the part of Apple of the wage disclosure." Oct. 1 Order at 39. In the 5AC, Plaintiff now brings both claims together under Count Four, but fails to remedy either of the defects that previously led to dismissal of these portions of the claim.

***First***, Plaintiff's Section 98.6 claim is barred by the one-year statute of limitations to the extent that it seeks civil penalties (*see* Cal. Code Civ. Proc. §340(a); 5AC, Prayer for Relief at 77),

and equitable tolling does not apply. Like her Section 1102.5 claim, Plaintiff argues that equitable tolling applies because she filed the August 2021 DIR Complaint on August 29, 2021. *See* 5AC ¶205. But again, it is not enough for Plaintiff to point to some earlier complaint she filed with some government agency; she must plead facts showing that the prior complaint would have "alert[ed] the defendant in the second claim of the need to begin investigating ***the facts which form the basis for the second claim***." *Hopkins*, 225 Cal. App. 4th at 747. She alleges no such nexus here.

The August 2021 DIR Complaint did not put Apple on notice to investigate the facts that form her standalone Section 98.6 claim or her Section 98.6 claim predicated on Labor Code section 96(k); indeed, given the asserted bases for those claims, it ***could not have done so***. Plaintiff's Section 98.6 claim is premised on alleged retaliation for filing the August 2021 DIR Complaint, while her Section 98.6 claim predicated on Section 96(k) is premised on alleged retaliation for Plaintiff's conduct occurring during nonworking hours (*i.e.*, after she was placed on leave on August 4, 2021) and away from the employer's premises (*i.e.*, on social media and to the press). The August 2021 DIR Complaint did not raise such claims. Rather, the August 2021 DIR Complaint contains only a general allegation that Plaintiff was retaliated against on August 4, 2021 (when she was placed on administrative leave [*see* 5AC ¶132]) for "rais[ing] concerns about work place safety"). Dkt. 35-5 at 6. The August 2021 DIR Complaint does not (and could not) reference the alleged protected activity underlying her Section 98.6 claim (*i.e.*, alleged further retaliation for having filed the August 2021 DIR Complaint), as that alleged retaliation would necessarily have occurred *after* she filed the August 2021 DIR Complaint. *Id.* at 5-7.

Further, the August 2021 DIR Complaint does not reference the alleged protected activities underlying her Section 98.6 claim predicated on Section 96(k), as Plaintiff alleges that those protected activities occurred *after* she was placed on leave on August 4, 2021 (*see, e.g.*, 5AC ¶208) and therefore those protected activities could not have been at issue in her August 2021 DIR Complaint alleging retaliation on August 4, 2021. Because the August 2021 DIR Complaint did not alert Apple of the need to investigate the facts underlying Plaintiff's Section 98.6 claim or her Section 98.6 claim predicated on Section 98.6(k), equitable tolling does not apply and any attendant claim for civil penalties is time-barred. *Hopkins*, 225 Cal. App. 4th at 747.

***Second***, Plaintiff's Section 232 and 232.5 claims fail because Plaintiff did not heed the Court's instruction that she needed to "allege knowledge on the part of Apple of the wage disclosure" she contends formed a basis for retaliation by Apple. Oct. 1 Order at 39. Plaintiff alleges that she "openly discussed her wages on social media" (5AC ¶245) but does not allege that Apple (and certainly not anyone at Apple who would have been in a position to control the terms or conditions of her employment) knew about those alleged social media posts. Because Plaintiff does not plead facts to raise an inference that Apple knew about the alleged posts "discussing" her wages, no causal link has been plead between any such disclosure and any subsequent conduct by Apple; as such, Plaintiff has failed to state a claim under Section 232 or 232.5. *Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1156 (N.D. Cal. 2013).

### D. Seventh Claim: Plaintiff's IIED Premised on Alleged Post-Termination Conduct Fails.

This Court previously dismissed the entirety of Plaintiff's IIED claim related to alleged post-termination conduct (*i.e.*, conduct she alleges occurred after September 2021, when she was terminated by Apple). Though the Court dismissed with prejudice Plaintiff's IIED claim "to the extent [Plaintiff] asserts IIED based on being called a liar, bad actor, and the like" (Oct. 1 Order at 40), Plaintiff continues to raise similar allegations. Moreover, despite the Court's instruction "to provide nonconclusory allegations on the more serious conduct identified in the 4AC" and "to plead concrete facts to support a basis for respondeat superior liability" (*id.* at 40-41), Plaintiff has failed to do so, as discussed below. Because Plaintiff fails to allege any conduct that meets "the high bar of extreme and outrageous conduct" (*Nghiem v. Santa Clara Univ.*, 710 F. Supp. 3d 748, 755 (N.D. Cal. 2024)) and because she "fails to identify [Apple] employees or management who engaged in alleged outrageous conduct" (*McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1274 (E.D. Cal. 2012)), her IIED claim premised on post-termination conduct should be dismissed with prejudice and in its entirety.

Plaintiff's first theory—under the heading "Burglary, SWATing, & Destruction of Property"—fails to state a claim. ***First***, Plaintiff alleges that, following the termination of her employment, Apple mailed her "a package containing her personal items, which were intentionally

damaged and covered in glass shards." 5AC ¶296. Plaintiff alleges no facts to suggest that Apple intentionally damaged her belongings before mailing them, and Apple's alleged failure to carefully bubble wrap her belongings before mailing them does not meet the high bar for "outrageousness" required by IIED. *See King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 785 (N.D. Cal. 2021) ("Liability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). Plaintiff further claims that the package contained a "bugged statue" (5AC ¶¶296, 298), but she fails to provide any facts to render this claim about attempting to "bug" her plausible. *Contrast Rajkumar v. Cisco Sys., Inc.*, No. C 08-1600 PVT, 2008 WL 3397851, at *5 (N.D. Cal. Aug. 11, 2008) (plaintiff stated IIED claim where he alleged that defendant planted listening devices in his residence *and* caused intercepted communications to be published to others). On the contrary, her allegations suggest that the alleged statue was not, in fact, "bugged." *See* 5AC ¶299 (alleging that the police took possession of the allegedly "bugged statue" but did not otherwise act upon it).[12]

***Second***, Plaintiff lists a slew of purported conduct that she attributes to Apple—including interference with her phone calls, hacking of her network, surveillance, break-ins, trespassing, tampering with her computer, stalking, and harassment (*see* 5AC ¶¶298, 299, 301-07)—but she fails to trace such conduct to any specific individual at Apple or otherwise allege facts indicating that someone at Apple was responsible, despite instruction from the Court that she must do so in order to state a claim. *See* Oct. 1 Order at 35 (instructing Plaintiff to "provide specific, concrete facts establishing a plausible basis for her belief that the wrongdoing she generally describes was in fact conducted by Apple"). Instead, Plaintiff merely insists that Apple is responsible because "[n]o one else would have the motive or resources to do these things." 5AC ¶295. Such speculation falls well short of establishing plausibility. *See BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *7 (N.D. Cal. Mar. 12, 2021) (claim implausible where plaintiff alleged that "only defendants possessed the means, motive, and opportunity" to engage in

[12] Plaintiff also cites a tweet about the package by a Twitter user who she conclusorily claims was "later revealed to be associated with Apple public relations or global security" (5AC ¶297), but Plaintiff does not identify any Apple employee by name (much less allege facts plausibly suggesting that anyone at Apple was responsible), nor does she allege "specific concrete facts to support a basis for respondeat superior," as the Court instructed her to do. Oct. 1 Order at 37.

misconduct). Because Plaintiff's claim lacks the "most basic underlying factual matter" necessary to give Apple fair notice of the allegedly outrageous conduct at issue—including who in particular allegedly engaged in the conduct, such that Apple (and the Court) could assess any asserted basis for respondeat superior liability—her claim should be dismissed. *See Garza v. BNSF R. Co.*, No. 1:12CV032 DLB, 2012 WL 2118179, at *6 (E.D. Cal. June 11, 2012) (dismissing IIED claim where plaintiff failed to allege what employees made outrageous statements); *McKenna*, 894 F. Supp. 2d at1274 (same).

Plaintiff's second theory—under the heading "Defamation, Trade Libel, Intimidation, Retaliation—also falls short for several reasons. ***First***, Plaintiff alleges time-barred, pre-termination conduct, even though the Court has already dismissed such claims with prejudice. *Compare* 5AC ¶¶309-11 (alleging conduct on or before September 3, 2021) *with* Dkt. 73 at 43 (recognizing that a two-year statute of limitations applies to IIED claims and dismissing portion of IIED claim that accrued "more than two years before [Plaintiff] filed her original complaint" on September 9, 2023). ***Second***, Gjovik points to tweets calling her a liar, despite the Court's prior order deeming such allegations insufficient to support an IIED claim. *Compare* 5AC ¶¶310, 340 (alleging that an Apple employee "accus[ed] Plaintiff of lying") *with* Oct. 1 Order at 36 ("The Court shall not permit Ms. Gjovik to base an IIED claim simply because she was allegedly called a liar … Such a claim would be futile as that conduct is not, as a matter of law, outrageous."). ***Third***, Plaintiff identifies just one Apple employee who allegedly caused her distress. *See* 5AC ¶312 (alleging that Apple employee posted defamatory comments on social media about Plaintiff's mental health issues); *see also id.* ¶340 (alleging same employee "made posts accusing Plaintiff of lying and being insane"). But this employee's purported conduct is not outrageous as a matter of law. *See* Oct. 1 Order at 36; *Lieberman v. Fieger*, 338 F.3d 1076, 1082 n.3 (9th Cir.2003) (holding that comments that individual was "Looney Tunes," "crazy," "nuts," and "mentally imbalanced" could not support an IIED claim).[13] ***Fourth***, Plaintiff speculates that other posts were made by an Apple employee (*see*

[13] Elsewhere in her complaint, Plaintiff mentions that "an Apple Global Security Crisis Manager" called her on October 2, 2024 "to harass Plaintiff about Plaintiff's struggle to litigate against Apple's army of attorneys." 5AC ¶342; *see also id.* ¶346 (alleging that employee "publicly mocked Plaintiff's legal efforts"). To the extent Plaintiff contends that this purported conduct amounts to an actionable claim against Apple, Plaintiff is incorrect. The conduct is not outrageous as a matter

5AC ¶312) but does not identify who made the posts or provide any facts to support her theory that the posts were made by an Apple employee. *See* Oct. 1 Order at 36. ***Fifth***, Plaintiff does not attempt to articulate any basis for respondeat superior liability—that is, she does not explain how any of the cited posts were "engendered by the employment" and not made "out of personal malice." *See* Oct. 1 Order at 37. ***Sixth***, Plaintiff points to alleged conduct by Cher Scarlett that took place after Scarlett was no longer an Apple employee.[14] Apple is not liable for such conduct because Plaintiff fails to allege a theory of liability, such as a conspiracy between Apple and Scarlett occurring after Scarlett ceased working for Apple. *See* Dkt. 73 at 43-44 (dismissing Plaintiff's IIED claim premised on alleged conduct by Scarlett that took place after Scarlett was no longer an Apple employee; reasoning that Plaintiff's Third Amended Complaint lacked "concrete allegations indicating that, post-employment, Ms. Scarlett was part of some kind of conspiracy with Apple"). And Plaintiff alleges no facts to suggest that Apple and Scarlett agreed to inflict distress upon Plaintiff. *See* *Sheahan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997, 1006 (N.D. Cal. 2019) (finding defendants not liable for actions of purported co-conspirator where "[t]here is nothing to suggest that [the alleged co-conspirator and defendants] had an agreement"); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1208-09 (N.D. Cal. 2015) (noting that, per *Twombly*, "[a]t the pleading stage, a complaint claiming conspiracy, to be plausible, must … provide 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement").[15]

---

of law. *See King*, 572 F. Supp. at 785. Moreover, Plaintiff conclusorily alleges that "the intent and content of the communication were all related to her official duties as a Global Security Crisis Manager"; she fails to explain what this particular role entails or how the alleged conduct was "engendered by the employment," as this Court has required her to do. *See* Oct. 1 Order at 37. She also conclusorily alleges that another employee "defam[ed]" her. 5AC ¶343. Such a bare-bones allegation also does not establish an IIED claim.

[14] Though Plaintiff alleges that, from late 2021 through 2022, "Apple employee" Scarlett harassed her, and from December 2021 to May 2023, Scarlett posted purportedly objectionable social media posts and "threaten[ed] Plaintiff with legal and professional consequences, including retaliation through law enforcement and civil litigation" (*see* 5AC ¶313), Plaintiff previously alleged Scarlett "supposedly quit Apple in late 2021" (*see* Third Am. Compl. (Dkt. 47) ¶ 137).

[15] Plaintiff continues to allege that Apple "sued her for reporting criminal conduct" (5AC ¶329), despite the Court's prior order dismissing her IIED claim to the extent premised on such a fact. *See* Dkt. 73 at 43-44. As Plaintiff's prior allegations make clear, Apple has done no such thing. Plaintiff previously pled that in 2022 Scarlett—while no longer employed at Apple (Second Am. Compl. (Dkt. 32 to 32-2) ¶622)—filed "retaliatory litigation" against Plaintiff (*see id.* ¶¶879, 1451).

Plaintiff's third theory—under the heading "Stalking, Obstruction, & Deranged Harassment"—also does not spare her IIED claim. ***First***, Plaintiff points to examples of alleged harassment via social media and email (5AC ¶¶316-20, 322-23, ¶338-39), but she does not tether any of these communications to Apple, as the Court held she must do to state a claim. *See* Oct. 1 Order at 36. ***Second***, Plaintiff cites additional alleged conduct by Scarlett that took place after Scarlett was no longer an Apple employee (5AC ¶¶324-26); as discussed *supra*, none of this conduct is actionable because Plaintiff does not allege a conspiracy between Apple and Scarlett.

In sum, none of Plaintiff's scattershot allegations—even if they were plausible, and even if they were credited—would establish a basis for an IIED claim against Apple. This cause of action should be dismissed.

### E. <u>No Further Leave to Amend Should Be Permitted.</u>

Plaintiff has already been afforded five opportunities to amend her complaint and the Court has provided specific guidance on what she needs to allege to state claims against Apple (if she can do so in good faith consistent with Rule 11). *See, e.g.*, Dkt. 73, 112. Plaintiff's failure to adequately plead cognizable claims to date shows any further leave to amend as to those claims would be futile. *See Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 989-92 (N.D. Cal. 2014) (dismissing complaint with prejudice when pro se litigant had "multiple opportunities" to amend his pleading and was given "very specific instructions [by the court] on what was missing from his claims and what he needed to allege in order to state claims"); Oct. 1 Order at 12 ("Because Ms. Gjovik has failed to cure deficiencies in [her Section 1102.5 claim] previously identified by the Court, the Court's dismissal here is with prejudice."). As such, no further leave to amend should be permitted. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (finding no abuse of discretion to deny leave to amend where plaintiff failed to identify facts that could cure deficiencies).

## IV. <u>CONCLUSION</u>

Apple respectfully requests that the Court grant its Motion to Dismiss select claims and portions of claims in Plaintiff's Fifth Amended Complaint. Given the multiple opportunities Plaintiff has already been afforded to amend, Apple requests that the Court grant its motion and

dismiss these claims with prejudice and without any further opportunity to amend, and that the Court direct the parties to proceed on the termination and retaliation-related claims that remain.

Dated: January 7, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: Melinda Riechert

MELINDA S. RIECHERT
Attorneys for Defendant, Apple Inc.