Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIV.

**ASHLEY M. GJØVIK**, *an individual,*

**PLAINTIFF,**

***vs.***

**APPLE INC.**, *a corporation,*

**CITY OF SANTA CLARA,** *a local government,*

**& THE PROPERTY OWNERS: MR. KALIL JENAB,** *individually and as agent of various entities,*

**AND MS. JULIA LINDSEY & MS. KATHLEEN WOODRUFF.** *in their respective capacities as trustees.*

**DEFENDANTS.**

**Case No. 25-CV-07360-PCP**

**District Judge**: Honorable P. Casey Pitts

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DKT. 127)**

**HEARING:**
Date: Nov. 5 2026
Time: 10:00 A.M.
Courtroom: 8, 4th Floor

# TABLE OF CONTENTS


I. STATEMENT OF THE ISSUES TO BE DECIDED .......... 1
II. RELEVANT FACTS .......... 1
  A. The City's Storm Sewer System and MS4 Permit .......... 1
  B. The Plant and the Pretreatment Program .......... 2
  C. The City's Parks .......... 3
  D. The City's Knowledge .......... 3
  E. The City's 2022–2023 Reclassification of the Facility .......... 4
  F. Plaintiff and the Procedural History .......... 5
III. STANDARD OF REVIEW .......... 5
IV. ARGUMENT .......... 6
  A. Plaintiff Has Standing to Pursue the Counts Against the City. .......... 6
  B. The City Is Sued as a Regulated Party, Not as a Regulator. .......... 7
  C. Count 22 States Claims for Violations of the City's MS4 Permit. .......... 9
  D. Count 21 States Claims for Violations of the Pretreatment Conditions of the City's Wastewater Permit. .......... 14
  E. Count 35 States a Claim for Public Nuisance Against the City. .......... 16
    i. The Court has supplemental jurisdiction. .......... 16
    ii. Plaintiff alleges special injury. .......... 16
    iii. The City is liable for conditions it creates or permits on and through its own property. .......... 17
    iv. The Government Claims Act does not bar the claim. .......... 19
    v. The claim is timely and does not challenge any CEQA determination. .......... 19
    vi. *Heckler* does not apply to a state-law nuisance claim. **Error! Bookmark not defined.**
  F. The Remaining Counts Rest on Duties the City Itself Owes. .......... 20
    i. RCRA (Counts 1, 5, and 8) .......... **Error! Bookmark not defined.**
    ii. Clean Air Act (Counts 2, 14, and 15) .......... **Error! Bookmark not defined.**
    iii. EPCRA (Counts 26 and 27) .......... **Error! Bookmark not defined.**
    iv. Count 24 .......... **Error! Bookmark not defined.**
    v. TSCA (Count 32) .......... **Error! Bookmark not defined.**
  G. Any Dismissal Should Be Without Prejudice and With Leave to Amend. .......... 25
V. CONCLUSION .......... 26
VI. [PROPOSED] ORDER .......... 27

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc) .......... 11
*Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012) .......... 35
*America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) .......... 34
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8
*Ashoff v. City of Ukiah*, 130 F.3d 409 (9th Cir. 1997) .......... 29
*Ass'n of Irritated Residents v. EPA*, 10 F.4th 937 (9th Cir. 2021) .......... 12
*Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862 (1985) .......... 26
*Baldwin v. State of California*, 6 Cal. 3d 424 (1972) .......... 26
*Bennett v. Spear*, 520 U.S. 154 (1997) .......... 11
*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) .......... 22, 24
*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .......... 32, 35
*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) .......... 22
*Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024) .......... 10
*Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO (E.D. Cal. July 16, 2026) .......... 12, 30
*Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350 (2017) .......... 25
*City of Claremont v. Kruse*, 177 Cal. App. 4th 1153 (2009) .......... 25
*City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023) .......... 11
*City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28 (2004) .......... 23, 25
*City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002) .......... 11
*Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764 (2d Cir. 1992) .......... 30
*Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984) .......... 26
*Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180 (1st Cir. 1989) .......... 28
*Comm. for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) .......... 11
*Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32 (2010) .......... 26
*Conservation Law Found. v. Mass. Water Res. Auth.*, No. 22-10626-RGS (D. Mass. Feb. 17, 2023) .......... 21
*County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020) .......... 18
*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292 (2006) .......... 23
*Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004) .......... 29
*Cox v. City of Dallas*, 256 F.3d 281 (5th Cir. 2001) .......... 28

*Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) ........................ 28
*Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) ........................ 11
*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005) ........................ 31
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........................ 34
*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................ 8
*Ex parte Young*, 209 U.S. 123 (1908) ........................ 32
*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ........................ 22
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ........................ 9, 10, 33
*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015) ........................ 28
*Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) ........................ 23
*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) ........................ 19
*Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292 (2023) ........................ 22
*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ........................ 8
*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................ 10, 11, 21, 27
*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) ........................ 27
*Huffman v. Lindgren*, 81 F.4th 1016 (9th Cir. 2023) ........................ 8
*Jinks v. Richland County*, 538 U.S. 456 (2003) ........................ 10
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ........................ *passim*
*KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC (N.D. Cal. May 9, 2014) ........................ 28
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........................ 8, 21
*Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605 (1984) ........................ 23
*Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993) ........................ 28
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) ........................ 34
*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) ........................ 11
*Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991) ........................ 27
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ........................ 8
*Martinez v. California*, 444 U.S. 277 (1980) ........................ 26
*McCarthy v. Thomas*, 27 F.3d 1363 (9th Cir. 1994) ........................ 30
*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) ........................ 22
*Minsky v. City of Los Angeles*, 11 Cal. 3d 113 (1974) ........................ 26
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ........................ 10
*Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013) ........................ 18, 21
*Nestle v. City of Santa Monica*, 6 Cal. 3d 920 (1972) ........................ 23, 26, 27
*Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) ........................ 9

*Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979 (9th Cir. 1995) ... 10, 19
*Phillips v. City of Pasadena*, 27 Cal. 2d 104 (1945) ... 27
*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996) ... 11
*Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95 (9th Cir. 2024) ... 21
*Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668 (9th Cir. 2011) ... 23
*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ... 9
*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) ... 9
*San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD (N.D. Cal.) ... 15, 18, 19
*Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098 (D. Haw. 1994) ... 21
*Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012) ... 12
*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) ... 10
*Skinner v. Switzer*, 562 U.S. 521 (2011) ... 8
*Tansavatdi v. City of Rancho Palos Verdes*, 14 Cal. 5th 639 (2023) ... 25
*Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594 (1941) ... 24
*Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) ... 22
*United States v. City of Beaumont*, 786 F. Supp. 634 (E.D. Tex. 1992) ... 20
*United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086 (D. Colo. 2018) ... 18
*Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) ... 23
*Vedder v. County of Imperial*, 36 Cal. App. 3d 654 (1974) ... 24, 26
*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ... 27
*Wade v. Campbell*, 200 Cal. App. 2d 54 (1962) ... 26

**Federal Statutes**

15 U.S.C. § 2619 ... 34
28 U.S.C. § 1367 ... 22
33 U.S.C. § 1319 ... 13, 21
33 U.S.C. § 1342 ... 10, 13, 20
33 U.S.C. § 1362 ... 10, 18
33 U.S.C. § 1365 ... 1, 10, 13, 19
42 U.S.C. § 6903 ... 28
42 U.S.C. § 6926 ... 29
42 U.S.C. § 6972 ... 27, 29
42 U.S.C. § 7412 ... 30
42 U.S.C. § 7602 ... 29

42 U.S.C. § 7604 .......... 12, 29, 30
42 U.S.C. § 11022 .......... 32
42 U.S.C. § 11044 .......... 32
42 U.S.C. § 11046 .......... 32, 33

**California Statutes**

Cal. Bus. & Prof. Code § 16000.3 .......... 16
Cal. Civ. Code § 3479 .......... 23, 26
Cal. Civ. Code § 3483 .......... 23
Cal. Civ. Code § 3490 .......... 26
Cal. Civ. Code § 3493 .......... 22
Cal. Gov't Code § 814 .......... 25
Cal. Gov't Code § 815 .......... 23
Cal. Gov't Code § 818 .......... 22
Cal. Gov't Code §§ 818.2, 818.4, 818.6 .......... 26
Cal. Health & Safety Code § 25404 .......... 5
Cal. Health & Safety Code § 25404.1 .......... 29
Cal. Health & Safety Code § 25509 .......... 32
Cal. Health & Safety Code § 25533 .......... 31
Cal. Pub. Res. Code §§ 21002, 21081, 21151 .......... 30
Cal. Pub. Res. Code § 21167 .......... 26
Cal. Water Code § 1200 .......... 18

**Regulations**

40 C.F.R. § 52.220(c)(63) .......... 30
40 C.F.R. § 68.10 .......... 31
40 C.F.R. § 68.215 .......... 31
40 C.F.R. § 112.3 .......... 5
40 C.F.R. § 122.26 .......... 14, 16, 33
40 C.F.R. § 122.44 .......... 19
40 C.F.R. § 261.4 .......... 28
40 C.F.R. § 271.15 .......... 29
40 C.F.R. § 372.23 .......... 17
40 C.F.R. § 403.3 .......... 20
40 C.F.R. § 403.8 .......... 19, 33
40 C.F.R. § 403.14 .......... 33
40 C.F.R. § 469.10 .......... 17
40 C.F.R. § 751.319 .......... 34

Cal. Code Regs. tit. 27, § 15200 .... 29
46 Fed. Reg. 5965 (Jan. 21, 1981) .... 30
81 Fed. Reg. 52,584 (Aug. 8, 2016) .... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .... 8
Fed. R. Civ. P. 15(a)(2) .... 34
Fed. R. Civ. P. 19(a) .... 31

**Permits, Ordinances, and Public Records**

Regional Board Order No. R2-2015-0049, as amended ("MRP 2.0") (RJN Ex. 1) .... 2, 14, 15, 16
Regional Board Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 ("MRP") (RJN Exs. 2–3) .... *passim*
Regional Board Order No. R2-2025-0027, NPDES No. CA0037842 (RJN Ex. 4) .... 3, 19, 20
Regional Board Order No. R2-2020-0001, NPDES No. CA0037842 (RJN Ex. 5) .... 3, 19
Santa Clara City Code ch. 13.10 (RJN Ex. 6) .... 12, 20
Santa Clara City Code ch. 13.20, as amended by Ord. No. 2072 (Oct. 22, 2024) (RJN Ex. 9) .... 2, 12, 16, 25
City of Santa Clara Ord. No. 1920 (Feb. 25, 2014) and City Attorney Agenda Report (RJN Ex. 7) .... 12, 13
Agenda Report, Director of Water & Sewer Utilities (Jan. 23, 2014) (RJN Ex. 8) .... 13, 20
SCVURPPP, Petition for Review of Order No. R2-2015-0049 (Dec. 15, 2015) (RJN Ex. 10) .... 13
CERS Business Owner/Operator Reports, CERS ID 10633816 (2015–2023) (RJN Ex. 11) .... 6, 7
City of Santa Clara File No. PLN2014-10675, Stormwater Management Plan Submittal (2014) (RJN Ex. 12) .... 2, 3, 15, 16, 30
CalEPA, Response to Evaluation Progress Report #1: Santa Clara City Fire Department (Apr. 17, 2026) (RJN Ex. 13) .... 5, 29, 31
State Water Res. Control Bd., SMARTS Records for 3250 Scott Blvd. (RJN Ex. 14) .... 5, 6, 17, 24, 31
Recorded Parcel Maps and Assessor's Map (RJN Ex. 15) .... 17

**Other Authorities**

Cal. Civil Jury Instructions (CACI) No. 2020 .... 23
Cal OES, State Emergency Response Commission and Local Emergency Planning Committee web pages (RJN Ex. 18) .... 32
EPA, *Multijurisdictional Pretreatment Programs Guidance Manual* (1994) (RJN Ex. 16) .... 21

*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989) (RJN Ex. 17) ........ 21

Unidocs, *Toxic Gas Ordinance Consensus Guidelines* (UN-027) (RJN Ex. 20) ........ 6

Unidocs, Who Regulates What in Santa Clara County (RJN Ex. 19) ........ 6

UPAAG, *Violation Classification Guidance for Unified Program Agencies* (rev. Mar. 6, 2020) (RJN Ex. 21) ........ 5

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS

1. Defendant City of Santa Clara (the "City") moves to dismiss on the premise that its "connection to the Apple Facility is solely as a regulator." Dkt. 127 ("Mot.") at 10. Its own filings refute that premise. The City is a named Permittee under the Bay Area municipal stormwater permit, which, as the City has acknowledged, "obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains." Dkt. 89. It is a named "Discharger" under the NPDES permit for the San José–Santa Clara Regional Wastewater Facility (the "Plant"), which requires that "[t]he Discharger shall implement and enforce its approved pretreatment program." Pl.'s Req. for Judicial Notice ("RJN") Ex. 4 § 5.3.4.1. And it owns the storm drains and sewers that receive discharges from Apple Inc.'s semiconductor fabrication facility at 3250 Scott Boulevard (the "Facility"), and the parks across the street.

2. The Clean Water Act authorizes citizens to enforce "a permit or condition of a permit" against "any person," including "any other governmental instrumentality or agency." 33 U.S.C. § 1365(a)(1), (f)(7). The City concedes the point. Mot. 21. Each of its enforcement-discretion cases involved an effort to compel an agency to act against a third party. None involved a government sued for violating its own permit, which is what the Third Amended Complaint ("TAC") alleges here. Counts 22 and 21 state claims for violations of the City's two NPDES permits. Count 35 states a public nuisance claim arising from conditions on and through City property. Each remaining count rests on a duty the City itself owes. The Court's prior dismissal rested solely on Article III standing, which the TAC cures, and did not reach the City's arguments. Dkts. 98, 101. The motion should be denied; alternatively, any dismissal should be without prejudice and with leave to amend.

## I. STATEMENT OF THE ISSUES TO BE DECIDED

3. Whether Plaintiff has standing against the City; whether Counts 21 and 22 state claims for violations of the City's own NPDES permits; whether Count 35 states a public nuisance claim within the Court's supplemental jurisdiction; whether the remaining counts identify duties the City owes; and whether any dismissal should be with prejudice.

## II. RELEVANT FACTS

### A. THE CITY'S STORM SEWER SYSTEM AND MS4 PERMIT

4. The City is a Permittee under the San Francisco Bay Municipal Regional Stormwater Permit, Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 (the

“MRP”), and under its predecessor, Order No. R2-2015-0049 (“MRP 2.0”). TAC ¶¶ 436, 504; RJN Exs. 1–3. The City “owns and maintains” the surrounding storm drains, including the “21- and 24-inch storm drains in Scott Boulevard.” TAC ¶ 510. Its code defines the “Storm Drain System” as the pipes, conduits, and sewers “of the City,” permits connection only “through a City-approved storm drain connection,” and charges every premises draining “into or through the storm drain system” a monthly fee to fund “the City’s federally mandated stormwater management program pursuant to the MRP.” SCCC §§ 13.20.020(s)(8), 13.20.030(b), 13.20.190(e), 13.20.200 (RJN Ex. 9 at 12–13, 27–28). The City acknowledges that “[t]he Apple facility also discharges to the City’s stormwater system.” Dkt. 89.

5. The Facility’s 2014 redevelopment created or replaced 52,530 square feet of impervious surface, and its stormwater plan identified it as an industrial project subject to Provision C.3, draining to San Tomas Aquino Creek. TAC ¶ 94; RJN Ex. 12 at 5–6. The City-approved plan calls for bioretention areas, storm drain labeling, protected outdoor storage, covered loading docks, and semi-annual inspections, and the City’s published procedure states that “[t]he City conducts periodic post-construction site inspections of BMPs, operation and maintenance practices.” RJN Ex. 12 at 3–4, 7. The owners’ agreement with the City requires annual maintenance logs; none has been filed. TAC ¶ 506. On June 9, 2016, a City inspector reported that Apple had dumped cooling water into the storm drains. The ticket stayed open nearly six years and was closed on February 10, 2022, “27 minutes after being assigned.” *Id.* ¶ 450. The City’s first stormwater inspection, on April 5, 2022, found that one bioretention area “does not appear to be a bioretention area or other stormwater treatment facility,” that others lacked required features, and that no storm drain bore a “No Dumping” medallion, yet recorded the site as “in compliance – implement corrective actions.” Fifty-nine days later, nothing had been corrected. TAC ¶ 451. In October 2025, storm drains sat “immediately adjacent to the hazardous waste storage bunkers.” *Id.* ¶ 182. On April 11, April 18, and May 1, 2026, in dry weather, Plaintiff documented froth, sheen, and discoloration in San Tomas Aquino Creek just below the Facility’s outfall, with pH of 8.9 to 9.5 and total chlorine of 3 to 20 ppm. *Id.* ¶ 184.

### B. THE PLANT AND THE PRETREATMENT PROGRAM

6. The City co-owns the Plant, which discharges to Artesian Slough and San Francisco Bay, and the Plant’s NPDES permit names the City as a Discharger. TAC ¶¶ 43–44, 434–435; RJN Ex. 4 at 1; RJN Ex. 5. The Facility, a categorical Significant Industrial User, discharges about 40,000 gallons of process wastewater a day into “the public sewer system owned by The City,” which carries it to the Plant. TAC ¶¶ 85, 146, 437, 487. That wastewater

has contained trichloroethylene, arsenic, and other metals. *Id.* ¶¶ 147, 149, 445.

7. The Facility's wastewater permit is issued in the Plant's name and enforced under Santa Clara's ordinance. *Id.* ¶¶ 439, 442; Dkt. 134, Ex. 7. In October 2020, the program rated the Facility "low risk" for slug discharges, found "no risk mitigation needed," and stated that the Facility had been "inspected by EPA staff," although EPA did not know of the site until 2023. TAC ¶ 140. The November 2020 renewal states that the permitting agency "intends but is not obligated" to monitor. *Id.* ¶ 146. The pretreatment system "has never been comprehensively inspected": the 2015 inspections were pre-operational, the inspector was not permitted to enter in October 2020, and in October 2025 "the bulk chemical waste storage bunkers were not inspected." *Id.* ¶ 182. The Facility's 2025 reports omit influent volumes and calibration dates, half lack sample results, *id.* ¶ 180, and its permit does not identify the character and volume of its pollutants, *id.* ¶¶ 490, 493.

## C. THE CITY'S PARKS

8. The City owns Meadow Park, Creekside Park, and the Redwood Trail easement across the street, including a children's playground. TAC ¶¶ 186, 192, 194–195, 648. The Meadow Park deed requires compliance with any land-use covenant recorded by the Department of Toxic Substances Control. *Id.* ¶ 195. One of the artesian springs identified in the adjacent project's environmental review, well C6-3, "appears to be in Creekside Park." *Id.* ¶ 77. The City applies recycled water from the Plant in these parks. *Id.* ¶¶ 487–489. In 2024, it approved expanding a nearby school to 900 children inside Apple's modeled arsine plume, under an evacuation plan that sends the children to Meadow Park. *Id.* ¶¶ 188, 224–227.

## D. THE CITY'S KNOWLEDGE

9. City records document toxic gas releases at the Facility, including a 2021 phosphine leak to which the City responded. TAC ¶ 148. In 2022, City plan-check staff asked how silane use would be shut down if exhaust failed and accepted Apple's answer. *Id.* ¶¶ 660–663. The City's December 2020 inspection found that the Facility's chemical inventory omitted 1,700 gallons of diesel and reported no chlorine, and that the Facility had no spill prevention plan; a January 2026 inspection found further hazardous waste and spill-prevention violations. *Id.* ¶¶ 144, 183. The Fire Department has written that Apple's toxic-gas plume models are "not favorable for this area," the City's records acknowledge that the Facility violates the City's 500-foot residential setback for hazardous uses, and in 2025 the City Attorney's office told the Planning Commission that staff "think this is a bad place for housing." *Id.* ¶¶ 235, 242. Plaintiff described her injuries to the Mayor and to the head of the City's water and sewer department in

2020 and 2021, and in June 2023 sent the Mayor and a Councilmember her complaint reporting the Facility's "unlawful disposal of hazardous waste into the air, sewers, and storm drains." *Id.* ¶¶ 15, 43, 134 & Ex. C (Dkt. 119-3 at 8, 36).

10. CalEPA has found that the City is not inspecting hazardous waste generators, business-plan facilities, or CalARP stationary sources every three years as required. TAC ¶ 49; RJN Ex. 13 at 4–6. The generator deficiency, identified in the 2017 and 2020 evaluations, "was not corrected"; five of the City's seven CalARP sources went uninspected from 2021 to 2024, and four remained uninspected in February 2026. RJN Ex. 13 at 5–6. CalEPA also found that the City had classified the Facility's failure to prepare a Spill Prevention, Control, and Countermeasure Plan, a Clean Water Act requirement, 40 C.F.R. § 112.3, as a "minor" violation, a classification "inconsistent with, and less stringent than, the U.S. Environmental Protection Agency." RJN Ex. 13 at 13; *see* TAC ¶ 144. Under the State's classification guidance, on which CalEPA directed the City to train its inspectors, a violation is not minor if it reflects a pattern of neglect or lets the violator avoid a necessary compliance expenditure, and failing to complete such a plan "at a high-risk facility" is a Class I violation. RJN Ex. 21 at 4, 7, 13; RJN Ex. 13 at 13; *see* Cal. Health & Safety Code § 25404(a)(3). The City's own permit for the Facility charged a fee for an aboveground tank of "1,320–10,000 gal capacity." RJN Ex. 14 at 12. The Fire Department also administers the toxic gas ordinance, which places arsine and phosphine in its most hazardous class, yet has no record of a toxic gas permit for the Facility. RJN Ex. 19 at 1; RJN Ex. 20 at 1–2; TAC ¶¶ 170, 187.

### E. THE CITY'S 2022–2023 RECLASSIFICATION OF THE FACILITY

11. From 2015 through February 2022, every hazardous materials business plan report that the Fire Department accepted for the Facility listed SIC code 3571 and NAICS code 33411 or 334111, electronic computer manufacturing. RJN Ex. 11 at 1–8. Apple's 2019 Risk Management Plan listed NAICS 334111, Dkt. 134, Ex. 6; its 2020 Toxics Release Inventory report used NAICS 334413, semiconductor manufacturing, TAC ¶ 558; and the Plant classified the Facility as a categorical semiconductor manufacturer in 2016, *id.* ¶ 118. In 2021, Apple registered the Facility under the State's Industrial General Permit through a No Exposure Certification identifying it as SIC 3571, "Electronic Computers," and certifying that no outdoor storage or waste material was exposed to stormwater. RJN Ex. 14 at 4, 7. A semiconductor manufacturer at the address had held that coverage until 2004. *Id.* at 1.

12. The recoding then began with the City. On October 4, 2022, Apple asked the City's Business Tax and License Department to confirm a new code because "[t]he local

waterboard government department is asking for confirmation that our SIC for 3250 Scott Blvd . . . is updated to 8731." The next day, the City changed the license codes from office administration (NAICS 561110, SIC 8741) to research and development (NAICS 541712, SIC 8731), RJN Ex. 14 at 10–11, although NAICS 541712 had been eliminated more than five years earlier, *see* 81 Fed. Reg. 52,584 (Aug. 8, 2016). Apple filed the City's email with the State Water Board, and on October 7, 2022, the Facility's coverage was terminated on the stated basis of "Other." RJN Ex. 14 at 1–2. The City's license certificate had described the Facility as "ADMINISTRATIVE / IS & T OFFICES" while collecting $13,335.22 in fire permit fees for pyrophoric, toxic, corrosive, and water-reactive materials, onsite hazardous waste treatment, and the CalARP program. *Id.* at 12. On November 21, 2022, Apple recoded the Facility in its business plan as research and development (SIC 8731, NAICS 541715), reporting no change in operations. RJN Ex. 11 at 9. The CUPA manager who had accepted the manufacturing codes in February 2022 accepted the new ones nearly seven months later, on June 12, 2023, *id.* at 7–9: the day after Plaintiff submitted her complaint about the Facility to the agencies, including the Fire Department, and the day before the Fire Department confirmed it was investigating, TAC Ex. C (Dkt. 119-3 at 35–36). Apple now relies on the research code to deny that it must report its toxic releases. *See* Dkt. 128. The TAC pleads the reclassification and the City's acceptance of it, TAC ¶¶ 117, 141, 178, 183, and Plaintiff can plead the remaining particulars if the Court requires. *See* Part IV.G.

### F. PLAINTIFF AND THE PROCEDURAL HISTORY

13. Plaintiff suffered serious personal injury while living across the street from the Facility. TAC ¶¶ 14, 30–31, 201–205. She now lives in the Alviso area of San José, stays overnight near the Facility on her visits, and continues to use the adjacent creek trail and parks. *Id.* ¶¶ 27–28, 184; Decl. of Ashley M. Gjovik, Dkt. 135 ("Gjovik Decl.") ¶¶ 4–8, as corrected by Dkt. 136-1 ("Supp. Decl.").On June 25, 2026, the Court dismissed the prior complaint for failure to plead Article III standing, applied that ruling to the City sua sponte ("even though it wasn't raised by Santa Clara, I have an obligation to consider my jurisdiction sua sponte"), granted leave to amend, and stated that its ruling was "without prejudice to the renewal of any of the motions." Dkt. 98; Dkt. 101 at 24–25. The Court did not reach the City's other arguments, which this motion largely repeats. *Compare* Mot., *with* Dkt. 58. Plaintiff's opposition to the motion of Apple and the property owners is pending. Dkt. 133.

## III. STANDARD OF REVIEW

14. A Rule 12(b)(6) motion tests whether the complaint states a plausible claim.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the allegations as true and draws reasonable inferences in the plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A complaint need not "pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011), and the rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). The Court may notice public records but may not use them to resolve factual disputes against the plaintiff. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018). Plaintiff offers the records in her RJN for what they say and what the City accepted, not for the truth of disputed facts, and asks the Court to consider the 2014 stormwater plan file, which the TAC describes and on which Count 22 relies. TAC ¶ 94; *Khoja*, 899 F.3d at 1002. Because Plaintiff is not a licensed attorney, her complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit has withheld that rule from self-represented lawyers because its logic "does not apply to practicing attorneys," *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023), and Plaintiff is not one.

# IV. ARGUMENT

## A. PLAINTIFF HAS STANDING TO PURSUE THE COUNTS AGAINST THE CITY.

15. The Court found that the prior complaint did not plead a concrete interest in the sites, concrete plans to return, or an impairment of that interest by the challenged conduct. Dkt. 101 at 25. The TAC cures each defect, TAC ¶¶ 27–28, 30–31, 184, and Plaintiff's standing argument against Apple applies here, Dkt. 133 ¶¶ 12–23. Standing is measured on the operative pleading: "courts look to the amended complaint to determine jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)); *see Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043–48 (9th Cir. 2015). That Plaintiff lived in Boston when she first sued, Mot. 26, does not defeat standing on the TAC. Plaintiff lives in Alviso, about 1,340 feet from San Tomas Aquino Creek and Guadalupe Slough. Gjovik Decl. ¶ 4; TAC ¶ 27. She regularly walks the creek trail, "including the segment immediately downstream of the Facility's stormwater outfall," and uses Meadow Park, Creekside Park, and the Redwood Trail. Gjovik Decl. ¶ 5; TAC ¶ 28. She has visited at least eight times since April 2026, has stayed overnight about 2,100 feet from the Facility, and plans to return monthly, next on November 13–14, 2026. Gjovik Decl. ¶¶ 6–7, as corrected by Supp. Decl. ¶ 22; TAC ¶ 28. On three dry-weather visits she saw froth, sheen, and

discoloration below the outfall and measured elevated pH and chlorine; she now avoids touching the water, limits her time near the outfall and the Facility, and has shortened her visits. Gjovik Decl. ¶¶ 9–10, 13–15 & Exs. A–B; TAC ¶ 184. Those are injuries in fact. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (persons who use the area and "for whom the aesthetic and recreational values of the area will be lessened").

16. They are traceable to the City and redressable against it. Count 22 concerns non-stormwater that enters the City's storm drains and reaches the creek Plaintiff walks, and the City's failure to inspect and correct its sources. TAC ¶¶ 184, 450–451, 510, 520. Count 35 concerns conditions in and beside the City's parks. *Id.* ¶¶ 648–651. Count 21 concerns the pretreatment of wastewater that the Plant discharges to waters near Plaintiff's home and that the City applies, as recycled water, in the parks she uses. *Id.* ¶¶ 43–44, 434–435, 487–489; Gjovik Decl. ¶ 4 & Ex. A. An order requiring the City to perform its permit duties and abate those conditions would redress her injuries. *Laidlaw*, 528 U.S. at 185–86.

17. The City does not challenge notice, and the parallel sixty-day notice requirement of the Endangered Species Act "is a mandatory claims-processing rule, not a jurisdictional predicate," *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, (9th Cir. 2024); the same reasoning applies to the Clean Water Act, Dkt. 133 ¶ 24. In any event, the City received Plaintiff's June 2023 complaint, TAC Ex. C (Dkt. 119-3 at 36); her June 30, 2025 notice, TAC Ex. B; Gjovik Decl. ¶ 24; and her December 2025 notice, which named the City and went to the State Water Resources Control Board, Dkt. 55 ¶¶ 7–10; Dkt. 66. In August 2026 Plaintiff also mailed the Second Amended Complaint to the Water Boards and the Plant. Supp. Decl. ¶ 24; Dkts. 105, 116. Her response to Apple's notice arguments applies here. Dkt. 133 ¶¶ 24–32.

### B. THE CITY IS SUED AS A REGULATED PARTY, NOT AS A REGULATOR.

18. Section 505 authorizes suit "against any person (including . . . any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of" an "effluent standard or limitation," which includes "a permit or condition of a permit issued under section 1342." 33 U.S.C. § 1365(a)(1), (f)(7). A municipality is a "person," *id.* § 1362(5), and does not share the States' immunity from suit. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Jinks v. Richland County*, 538 U.S. 456, 466 (2003). "The plain language of CWA § 505 authorizes citizens to enforce *all* permit conditions." *Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995). The defendant there was a city, and the City concedes the rule. Mot. 21.

19. None of the City's authorities holds otherwise. *Heckler v. Chaney*, 470 U.S. 821,

832 (1985), concerned APA review of the FDA's decision not to take enforcement action against third parties. *Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001), held that EPA's enforcement choices are not a nondiscretionary duty under § 1365(a)(2); the plaintiff's § 1365(a)(1) claims against the City of Nogales, whose position the City occupies here, were resolved by consent decree. *Id.* at 901 n.1. *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987), *City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002), and *City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023), involved claims against EPA (and, in *Fairborn*, the Ohio EPA), and *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242 (11th Cir. 1996), a claim against the Corps. In *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934 (C.D. Cal. 2023), the plaintiff "generally group[ed]" a city landowner with industrial operators without alleging that the city had, "in its own right," violated any requirement. *See* Mot. 18. The TAC identifies the City's own permit obligations and its failure to meet them.

20. *Heckler* would not help the City even on its own terms. Its presumption "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," 470 U.S. at 832–33, as a permit condition does, and the Court reserved the case of an agency that has "'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities," *id.* at 833 n.4 (quoting *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc)). The City has told this Court that a decision not to enforce a law "whatsoever" "may be reviewable." Dkt. 81 at 10. And CalEPA has found the City's failure to inspect hazardous waste generators uncorrected since 2017. Part II.D. A municipality cannot shelter behind a discretion it has been found not to exercise. Citizen suits enforce the law "against regulated parties—both private entities and Government agencies." *Bennett v. Spear*, 520 U.S. 154, 173 (1997). The Ninth Circuit has permitted citizens to enforce a government body's own obligations under federal environmental programs. *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181–82 (9th Cir. 2015); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021). Applying those decisions, the Eastern District recently held that "§ 7604(a)(1) provides a cause of action against the Air District for its alleged violation of California's SIP," and that *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012), "is not binding precedent in this circuit." *Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO, ECF No. 41 at 12 (E.D. Cal. July 16, 2026). The City is a regulated party in fact. It holds NPDES permits

for its storm sewer system and, with its co-permittees, for the Plant; it has received eight notices of high-priority Clean Air Act violations in three years for its wastewater operations; and it owns and operates the storm drains, sewers, and parks at issue. TAC ¶¶ 42–43, 434–436, 487–488, 510, 648. The question for each count is whether the TAC alleges that the City violated a duty it owes, and it does. That does not make a city liable whenever a business within its borders pollutes. The claims rest on the City's own permits, outfall, sewers, storm drains, and parks, and on approvals it gave knowing of the hazard.

21. The City's own legislation acknowledges that EPA and the Water Boards regulate it and can penalize it. Its stormwater ordinance recites that "the City is regulated by the Municipal Regional Stormwater National Pollutant Discharge Elimination System Permit" and that its prior ordinance had not been revised since 1994 although the permit had been "significantly updated"; it refers to "the City's NPDES permit," preserves dischargers' liability "for any fines or penalties imposed on the City," and requires dischargers to "protect, defend, indemnify and hold harmless the City" against "administrative or judicial enforcement action." RJN Ex. 9 at 3, 24–25 (SCCC §§ 13.20.130(c), 13.20.140(b)). Its sewer ordinance calls the Plant's NPDES permit "a permit issued to the City pursuant to Section 402 of the Clean Water Act." SCCC § 13.10.020 (RJN Ex. 7 at 9). The Director of Water and Sewer Utilities reported that "[a] 2012 audit by the US EPA and the SWRCB of the pretreatment program administered by the City of San Jose found that ordinance changes were required," and he and the City Attorney each advised that the amendments would keep "the City in compliance with US EPA regulations, consequently avoiding fines and penalties that might result from non-compliance." RJN Ex. 8 at 2–3; RJN Ex. 7 at 2. The regulators audited the joint program and required *this City* to change its own ordinance. The City's countywide stormwater program likewise told the State Water Board in 2015 that the permit carried "potential third party liability consequences to the co-permittees." RJN Ex. 10 at 8. A permittee that amends its ordinances to avoid federal "fines and penalties," demands indemnity against "judicial enforcement action," and acknowledges third-party liability is precisely the "governmental instrumentality or agency" that § 1365(a)(1) reaches.

## C. COUNT 22 STATES CLAIMS FOR VIOLATIONS OF THE CITY'S MS4 PERMIT.

22. Count 22 alleges that the City, as an MRP Permittee, failed to carry out the permit's requirements at the Facility and allowed non-stormwater into its storm drains. TAC ¶¶ 94, 182, 184, 436, 450–451, 504–511. It also cites 33 U.S.C. § 1319(f), TAC ¶¶ 500–503, which Plaintiff treats as the Act's penalty framework, Dkt. 133 ¶¶ 46, 56. The allegations

independently plead violations of "a permit or condition of a permit," § 1365(f)(7), and a count's heading does not control. *Johnson*, 574 U.S. at 11.

23. The permit's terms are specific. Discharge Prohibition A.1 requires each Permittee to "effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses," MRP A.1, a term Congress requires in every MS4 permit, 33 U.S.C. § 1342(p)(3)(B)(ii), to be met "through the timely implementation of control measures and other actions as specified in Provisions C.2 through C.24," MRP C.1. Provision C.4 requires each Permittee to "implement an industrial and commercial site control program" and to "conduct inspections, effective follow-up, and enforcement to abate potential and actual non-stormwater discharges"; its inspection plan must reach sites with "[o]utdoor waste storage, handling, and disposal areas"; and Permittees "shall require actual discharges to cease immediately," with corrective action "before the next rain event, and no longer than 10 business days after" discovery. MRP C.4, C.4.b.ii(1), C.4.c.ii(3). Provision C.5 requires "an illicit discharge program that includes active surveillance and centralized complaint collection and follow-up," investigation of reported discharges within three business days, follow-up "to ensure that corrective measures have been effectively implemented," and logging of every incident "through problem resolution." MRP C.5, C.5.c.ii(6), C.5.d.i. Provision C.3.h requires inspection of treatment systems "at the completion of installation" and "at least once every five years," corrective action "no longer than 30 days after a problem is identified," and assurance that the systems "are properly operated and maintained for the life of the projects." MRP C.3.h.ii(6)(a), (c), (7)(c), C.3.h.iv.

24. MRP 2.0, in effect from January 1, 2016 until July 1, 2022, contained the same terms: Prohibition A.1, the ten-day correction rule, ordinance enforcement and referral, logging "through problem resolution," and the five-year inspection and 30-day correction requirements, effective July 1, 2016 and July 1, 2017. MRP 2.0 A.1, C.3.h.ii(6)(c), (7)(c), C.3.h.iii, C.4.c.ii(3)–(4), C.5.b.ii(3), C.5.d.i. These provisions implement federal requirements for "a program, including inspections, to implement and enforce an ordinance . . . to prevent illicit discharges," 40 C.F.R. § 122.26(d)(2)(iv)(B)(1), and for control of pollutants from "industrial facilities that are subject to section 313 of title III" of SARA, *id.* § 122.26(d)(2)(iv)(C), as the TAC alleges the Facility is, TAC ¶¶ 555–556.

25. The City has acknowledged that "[t]he MS4 permit obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit

the discharge of non-stormwater into storm drains," Dkt. 89; that it "holds a municipal NDPES [sic] stormwater permit as a municipal separate storm sewer system operator," Dkt. 81 at 9; and that Provision C.3 is part of "the City's stormwater discharge permit," RJN Ex. 12 at 16. The permit also forecloses the discretion the City claims: each Permittee "shall enforce its stormwater ordinances to achieve compliance . . . including compliance required by Discharge Prohibition A.1," and where its own tools are inadequate "shall refer the case to the Water Board, district attorney, or other relevant agencies." MRP C.4.c.ii(4), C.5.b.ii(4).

26. The TAC alleges violations of each term. As to Prohibition A.1, cooling water entered the City's storm drains in 2016, TAC ¶ 450, and in dry weather in 2026 Plaintiff documented froth, sheen, alkaline pH, and chlorine below the outfall that carries the Facility's stormwater, *id.* ¶¶ 184, 520. Dry-weather flow at an outfall is "a strong indication that there was a non-stormwater source of flow to that outfall," and "the source of pollution is irrelevant to any finding of a violation." *San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD, ECF No. 417 at 22, 33 (N.D. Cal. Mar. 31, 2026). To the extent Count 3 pleads these discharges from the City's system, its allegations state the same permit claims. *Johnson*, 574 U.S. at 11.

27. As to Provisions C.4 and C.5, a City inspector reported the 2016 cooling-water discharge, yet the ticket stayed open nearly six years and was closed "27 minutes after being assigned"; the City "did not do anything until 2022, and then still did nothing about it." TAC ¶¶ 450, 509. That is neither correction within ten business days nor follow-up "through problem resolution." MRP 2.0 C.4.c.ii(3), C.5.d.i. The City did not inspect this industrial site, whose hazardous waste bunkers sit beside storm drains, until 2022. TAC ¶¶ 182, 451. It received Plaintiff's June 2023 complaint of "unlawful disposal of hazardous waste into the air, sewers, and storm drains," *id.* Ex. C (Dkt. 119-3 at 8, 36), which Provision C.5 required it to log and follow "through problem resolution," MRP C.5.d.i. The TAC alleges no stormwater follow-up after June 2022, and the drains remained beside the bunkers in October 2025. TAC ¶¶ 182, 451.

28. As to Provision C.3.h, the Facility's treatment systems were installed under the 2014 plan, and the City promised periodic post-construction inspections. TAC ¶ 94; RJN Ex. 12 at 4–6. From July 1, 2016, the City had to inspect every regulated project at least once every five years, MRP 2.0 C.3.h.ii(6)(c), C.3.h.iii, yet its first inspection came in April 2022, TAC ¶ 451. That inspection found unlabeled drains and a bioretention area that "does not appear to be a bioretention area," and 59 days later nothing had been corrected, well beyond the 30 days allowed. *Id.*; MRP 2.0 C.3.h.ii(7)(c). The required maintenance logs have never been filed. TAC

¶ 506.

29. The regulations placed the Facility in the City's industrial inspection program from the start. Both permits require each Permittee's inspection plan to include "[i]ndustrial facilities, as defined at 40 CFR 122.26(b)(14)," to record each facility's SIC code, to verify Industrial General Permit coverage, and to list facilities that need coverage but have not filed. MRP C.4.b.ii(1)(b)(i), (3)(b), C.4.d.ii(1)(d), C.4.d.iii(2); MRP 2.0 C.4.b, C.4.d. The City's code ties that coverage to a business's "Standard Industrial Classification (SIC) code." SCCC §§ 13.20.020(i)(3), 13.20.060(c) (RJN Ex. 9 at 9, 19). SIC Major Groups 35 and 36, which include both the computer code the Facility reported and semiconductor manufacturing, are industrial activity, 40 C.F.R. § 122.26(b)(14)(xi); research and development (SIC 8731) is not. Apple's 2021 no-exposure certification cannot be squared with the exterior gas pad and waste storage bunkers the TAC alleges. TAC ¶¶ 182, 187. State law also requires a city, before issuing or renewing a business license, to confirm industrial permit coverage for any business whose SIC code is subject to that permit. Cal. Bus. & Prof. Code § 16000.3(b); SCCC § 13.20.060(c). That statute adds no NPDES liability, Cal. Bus. & Prof. Code § 16000.3(h), but it shows what the City's records disclosed: the license carried the Facility as an administrative office, a code that never triggers verification, while the Fire Department billed the same account for toxic gases and a CalARP process. RJN Ex. 14 at 12. Two days after the City confirmed the new code, the Facility's Industrial General Permit coverage was terminated on the strength of that confirmation, Part II.E, and with it went the Facility's place on the lists the City must keep and the City's exposure for having failed to treat the Facility as an industrial site. The research code also takes the Facility outside the toxic release inventory, which covers NAICS 541715 only for facilities "previously classified under SIC 3764" or 3769. 40 C.F.R. § 372.23(b). But the governing standards turn on what a facility does: the semiconductor categorical standard applies to "all process operations associated with the manufacture of semiconductors," 40 C.F.R. § 469.10, and the Plant applied it to the Facility in 2016, TAC ¶ 118. Why the City accepted the reclassification, and when, are questions of fact.

30. The buried Saratoga Creek bears on Count 22 as well. The TAC alleges that the City filled the creek in the 1970s; that it still flows beneath and beside the Facility in a pressurized channel connected to San Tomas Aquino Creek and the Bay; that one of its springs surfaces in Creekside Park; and that pollutants from the Facility's site enter that flow. TAC ¶¶ 7, 62–79, 452, 457–462. The City counts Saratoga Creek among the creeks where "[a]ny pollutant

that flows into the storm drain ends up." *Id.* ¶ 537. Plaintiff's December 2025 notice, which the City received on December 18, 2025, identified the City's storm drain infrastructure at the site as the buried channel. Dkt. 55 ¶¶ 7–10; Dkt. 66. Parcel maps the City Council approved in 1982 and 1983 show a recorded ten-foot storm drain easement across the Facility's parcel. RJN Ex. 15. Plaintiff has observed dry-weather flow from an outlet of the historic creek system north of Scott Boulevard. Gjovik Decl. ¶ 11 & Ex. C. The City has not denied that the creek's flow passes through its system; it has said that it "has not claimed that the water flowing through its stormwater system is not subject to CWA jurisdiction." Dkt. 81 at 11. A permit is required for "the functional equivalent of a direct discharge," including pollutants that travel through groundwater, and time and distance are "the most important factors in most cases." *County of Maui v. Hawaiʻi Wildlife Fund*, 590 U.S. 165, 183–85 (2020). The distances here are hundreds of feet, through a subterranean stream "flowing through known and definite channels." Cal. Water Code § 1200; TAC ¶¶ 71–79, 452. Insofar as the pipes and culverts carrying that flow form part of the City's system, they are point sources, 33 U.S.C. § 1362(14), and non-stormwater entering them is a discharge the City must "effectively prohibit," MRP A.1. Counts 16 and 17 plead the buried-creek claims against Apple and the property owners, Dkt. 133 ¶ 47; if the Court finds the connection to the City's system insufficiently pleaded, Plaintiff requests leave to plead it and to name the City in those counts.

31. The City responds that it "has conducted some enforcement, but just not as much as she desires." Mot. 21. Judge Davila rejected that defense under the same prohibition: "Sunnyvale has not cited to any legal authority to support its contention that adopting and enforcing its IC/ID Program, as a matter of law, meets its obligations under Discharge Prohibition A.1." *Sunnyvale*, ECF No. 57 at 13 (N.D. Cal. Dec. 28, 2020). After trial, the court found that the cities "have implemented extensive enforcement and related programs" that "have been far from successful," and held that they had violated Prohibition A.1 "daily from January 17, 2019 to present," because the prohibition "is a prohibition on non-stormwater entering MS4s in the first place." *Id.*, ECF No. 417 at 36–37. Liability for violating an NPDES permit "is strict." *United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086, 1089 (D. Colo. 2018) (holding city liable after trial for "a pattern of the City tolerating delays in correcting the problems reported," *id.* at 1101). Permits are construed "like any other contract." *Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). The City's assertion that it "has performed its MS4 permit obligations at the Apple facility," and its account of an

investigation of 1.38 miles of the creek that found no source, Dkt. 89, are factual contentions for trial, not grounds for dismissal. *See Sunnyvale*, ECF No. 57 at 13.

32. The violations are continuing: dry-weather discharges in 2026, maintenance logs never filed, and no record that the 2022 deficiencies were corrected. TAC ¶¶ 184, 451, 506; *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64–65 (1987). The City does not argue otherwise.

## D. COUNT 21 STATES CLAIMS FOR VIOLATIONS OF THE PRETREATMENT CONDITIONS OF THE CITY'S WASTEWATER PERMIT.

33. The City contends that San José, not Santa Clara, is responsible for the Plant. Mot. 18–19. The permit says otherwise. The Regional Board issued it to the "City of San José, City of Santa Clara, and San José/Santa Clara Water Pollution Control Plant, a joint powers authority," collectively "the Discharger," and provided that "[t]he Discharger shall implement and enforce its approved pretreatment program in accordance with federal pretreatment regulations (40 C.F.R. part 403)." RJN Ex. 4 at 1, § 5.3.4.1; *accord* RJN Ex. 5. The Board divided only collection-system duties between the cities ("their respective collection systems"), RJN Ex. 4 § 5.3.4.3, and assigned pretreatment to the Discharger as a whole.

34. An approved pretreatment program is incorporated into the permit "as enforceable conditions of the Permit." 40 C.F.R. § 403.8(c). It must "[i]nspect and sample the effluent from each Significant Industrial User at least once a year," "[e]valuate whether each such Significant Industrial User needs a plan or other action to control Slug Discharges," and publish users in significant noncompliance at least annually, *id.* § 403.8(f)(2)(v), (vi), (viii), and the permit must "[i]dentify, in terms of character and volume of pollutants, any Significant Industrial Users," *id.* § 122.44(j)(1). Citizens may enforce these conditions against the permittee. 33 U.S.C. § 1365(a)(1), (f)(7); *Nw. Envtl. Advocates*, 56 F.3d at 986.

35. The City administers that program within its borders. A "POTW" includes "the municipality . . . which has jurisdiction over the Indirect Discharges to and the discharges from such a treatment works." 40 C.F.R. § 403.3(q). Santa Clara's ordinance supplies the program's authority: a Significant Industrial User may discharge only under "a discharge permit issued by the Director" of the City's Water and Sewer Utilities, in whom "[t]he primary responsibility for enforcement" is vested, and who may enter, inspect, and sample and publishes the annual list of users in significant noncompliance. SCCC §§ 13.10.420, 13.10.530, 13.10.570, 13.10.660 (RJN Ex. 6). The Facility's permit recites that it "is issued under authority established in the Santa Clara City Code," Dkt. 134, Ex. 7 at 1; Decl. of Ashley M. Gjøvik re Public Records Requests

("Records Decl.") Ex. M, and the Plant's warnings to Apple cite the City's ordinance, TAC ¶¶ 439, 442. The 2012 audit required Santa Clara to amend that ordinance to avoid "fines and penalties." RJN Ex. 8 at 2–3. A city that fails to implement its pretreatment program violates its permit. *United States v. City of Beaumont*, 786 F. Supp. 634, 638–39 (E.D. Tex. 1992).

36. The TAC alleges that these conditions were not met: the Facility's pretreatment system "has never been comprehensively inspected," the slug evaluation found "no risk mitigation needed," the renewed permit disclaims any obligation to monitor, and the permit does not identify the character and volume of the Facility's pollutants. TAC ¶¶ 140, 146, 182, 490, 493. These are failures of the program the Discharger must implement, whichever co-permittee's staff performed a given inspection. That the permit issued in the Plant's name and San José staff have inspected, Dkt. 134, Exs. 7–8; TAC ¶ 86, shows how the co-permittees divided the work, not their responsibility under a permit that runs to "the Discharger," RJN Ex. 4 § 5.3.4.1. Count 21 cites the statutes that require these conditions, 33 U.S.C. § 1342(b)(8)–(9), and need not also cite the permit section. *Johnson*, 574 U.S. at 11.

37. Nor is the co-permittees' allocation of duties a ground for dismissal. The City relies on its 1959 and 1983 agreements with San José to assert that San José "is responsible for all administration of the RWF, including its industrial source program." Mot. 18–19 (citing Dkts. 58-2, 58-3). The Court may notice that the agreements exist, but it may not adopt the City's reading of them on this motion, *Khoja*, 899 F.3d at 999–1003, and no agreement can amend a permit the Regional Board issued in 2025 or the City's own ordinance. Even an express permit term limiting a co-permittee's responsibility goes to "the appropriate remedy for Permit violations, not to liability for those violations." *Nat. Res. Def. Council*, 725 F.3d. EPA likewise explains that a contributing jurisdiction "may be made a co-permittee . . . for the limited purpose of making it jointly responsible under state and federal law for the pretreatment program elements in the NPDES permit." RJN Ex. 16 § 2.2.3. And the City may not collaterally attack the permit that names it. *Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024).

38. Neither *Heckler* nor § 1319(f) applies. Count 21 seeks compliance with nondiscretionary program conditions (annual inspection and sampling, slug evaluation, identification of pollutants, and public notice), not direction of the City's discretion against Apple. EPA treats a POTW's failure to perform those duties as a permit violation, RJN Ex. 17 (*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989)), and courts

permit citizens to enforce a POTW's permit conditions, *Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098, 1116 (D. Haw. 1994). *Conservation Law Foundation v. Massachusetts Water Resources Authority*, No. 22-10626-RGS (D. Mass. Feb. 17, 2023), held only that § 1319(f) creates no citizen suit and that a POTW need not "impose a sanction in every instance of a violation," slip op. at 10, 21; it accepted that the enforcement plan "is incorporated into the NPDES permit conditions," *id.* at 17, and did not address mandatory inspection and sampling.

### E. <u>COUNT 35 STATES A CLAIM FOR PUBLIC NUISANCE AGAINST THE CITY.</u>

39. Against the City, Count 35 seeks abatement, remediation, corrective measures, and declaratory relief. Plaintiff does not pursue against the City the request in TAC ¶ 668 for fines or punitive damages. *See* Cal. Gov't Code § 818.

#### i. <u>The Court has supplemental jurisdiction.</u>

40. The City argues that, once the federal claims against it are dismissed, the Court will lack jurisdiction over Count 35. Mot. 24. But supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties," 28 U.S.C. § 1367(a), and the statute draws no distinction between pendent claims and pendent parties, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558–59 (2005). The Ninth Circuit has declined to "impose a per se constitutional bar" to jurisdiction over a defendant sued only under state law. *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173 (9th Cir. 2002). Federal claims against Apple and the property owners arising from the same releases remain pending. Section 1367(c) confers discretion, not a jurisdictional limit, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), and § 1367(c)(3) applies only when the Court "has dismissed all claims over which it has original jurisdiction," *see Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

#### ii. <u>Plaintiff alleges special injury.</u>

41. A private person may sue for a public nuisance that is "specially injurious to himself." Cal. Civ. Code § 3493. An injury "to the health and comfort of an individual, is in its nature special and peculiar." *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550–51 (2009). The City's own authority reversed dismissal on this ground, because the plaintiff's personal-injury allegations were "sufficient to state a private action for public nuisance to redress this personal injury." *Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292, (2023); *see* Mot. 26. *Hacala*'s affirmance as to the City of Los Angeles rested on the Government Claims Act, not on any want of special injury, and the City here has not claimed immunity. Dkt. 81 at 15 ("the

City never claimed immunity"). Plaintiff suffered serious personal injury while living across the street, requires ongoing medical monitoring, and continues to use the adjacent parks and creek. TAC ¶¶ 14, 27–28, 30–31, 184, 201–205. That she lived in Boston when she first sued, Mot. 26, bears on standing, which the TAC now pleads, not on whether her injury differs in kind from the public's.

**iii. The City is liable for conditions it creates or permits on and through its own property.**

42. Public entities may be liable for nuisances "founded on section 3479 of the Civil Code," and section 815 "does not bar nuisance actions against public entities." *Nestle v. City of Santa Monica*, 6 Cal. 3d 920, 937 (1972). Liability "does not hinge on whether the defendant owns, possesses or controls the property"; the question is whether the defendant "created or assisted in the creation of the nuisance." *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 306 (2006) (quoting *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 38 (2004)); *see* Mot. 26. One who, "by acting or failing to act, created a condition or permitted a condition to exist" is liable, CACI No. 2020; *see* Cal. Civ. Code § 3483, and a possessor is liable for failing to abate a nuisance on its land once it knows of the condition and has a reasonable opportunity to act, *Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605, 619–22 (1984); *Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 675 (9th Cir. 2011). Cities have long been held liable for nuisances arising from their own facilities. *Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) (sewage plant); *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) (airport).

43. The TAC alleges exactly that. The Facility discharges to the City's stormwater system, Dkt. 89, and in dry weather Plaintiff documented froth, sheen, and chlorine below its outfall beside the City's parks. TAC ¶¶ 184, 510, 520. The City owns those parks and the playground, invites the public into them, applies the Plant's recycled water in them, and approved a school expansion whose evacuation plan sends 900 children to Meadow Park, inside the modeled plume. *Id.* ¶¶ 188, 192, 194–195, 224–227, 487–489, 648, 650. It allowed the Facility to remain in violation of its own 500-foot setback and carried it as an administrative office while billing it for toxic gases, and it knew of the releases, of its own inspection failures, of Plaintiff's injuries, and of its Fire Department's finding that the plume models are "not favorable for this area." *Id.* ¶¶ 15, 43, 49, 134, 148, 235, 660–663; RJN Ex. 14 at 12. The City answers that "owning public parks does not cause a public nuisance" and that "[a]ny offsite

impacts . . . are caused by the facility." Mot. 25. But the TAC alleges conditions on and through City property that the City created or permits to continue, and "[t]he fact that the defendants' alleged misconduct consists of omission rather than affirmative actions does not preclude nuisance liability." *Birke*, 169 Cal. App. 4th at 1552. Causation is a question of fact.

44. Nor does the Facility's role relieve the City of its own. In *Vedder v. County of Imperial*, 36 Cal. App. 3d 654 (1974), private negligence started a fire at a public airport, and the court reinstated nuisance claims against the public owners: one who "negligently stores gasoline and other highly combustible chemicals on his property, or knowingly permits such negligent storage, may be liable . . . even though the fire was actually started by the negligent conduct of others," because "[i]f an injury is produced by the concurrent effect of two separate wrongful acts, each is a proximate cause of the injury." *Id.* at 660–61 (quoting *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 602 (1941)). The TAC alleges the same structure: Apple's releases, and the City's storm drains, easement, and parks as their conduits and receptors, act concurrently beside a toxic-gas hazard the City's Fire Department has assessed. TAC ¶¶ 134, 148, 184, 450, 487–489, 510, 520, 648–650, 660–663.

45. The City's code declares that "[t]he discharge of . . . solid or liquid industrial wastes into any storm drain or natural outlet or channel, in violation of any provision of this chapter, is hereby declared to be a public nuisance," and makes it "unlawful to discharge, or cause, allow, or permit to be discharged into any storm drain . . . any non-stormwater discharge." SCCC §§ 13.20.030(a), 13.20.120 (RJN Ex. 9 at 13, 23). A condition that a legislative body has declared a nuisance requires no further proof of its harmful character. *See City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1163–64 (2009). The TAC alleges industrial cooling water dumped into the City's drains and dry-weather froth, sheen, and chlorine below the outfall. TAC ¶¶ 184, 450. The City's remaining authorities do not hold otherwise. *Modesto* declined to hold liable manufacturers and suppliers "who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal," 119 Cal. App. 4th at 42–43, not the owner of the property on which a hazard comes to rest, and it recognized liability for "affirmative steps directed toward the improper discharge" of wastes, *id.* at 43. The TAC alleges both affirmative assurances of safety on City parkland and the City's failure to warn of dangers it knew. TAC ¶¶ 650, 656, 659–663. Even where a public entity is immune for the design of an improvement, it "nonetheless retain[s] a duty to warn of known dangers" that the improvement presents. *Tansavatdi v. City of Rancho Palos Verdes*, 14 Cal. 5th 639, (2023). And *Citizens for*

*Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 361 (2017), was decided on summary judgment, on evidence that the city's fence did not affect the sea lions causing the odor.

**iv. <u>The Government Claims Act does not bar the claim.</u>**

46. The Government Claims Act preserves "the right to obtain relief other than money or damages against a public entity," Cal. Gov't Code § 814, and its claim-presentation requirements do not apply to "nonpecuniary actions, such as those seeking injunctive, specific, or declaratory relief," *Minsky v. City of Los Angeles*, 11 Cal. 3d 113, 121 (1974). Its immunities for enforcement, permitting, and inspection, Cal. Gov't Code §§ 818.2, 818.4, 818.6, thus reach damages only, and they are strictly construed: "governmental immunity should not be decreed unless the Legislature has clearly provided for it." *Vedder*, 36 Cal. App. 3d at 660 (citing *Baldwin v. State of California*, 6 Cal. 3d 424, 435–36 (1972)). The inspection immunity also excludes inspection of the entity's own property, Cal. Gov't Code § 818.6, and the storm drains, easement, and parks are the City's. *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984), which applied those immunities to a fire department's inaction on a known hazard at a private business, was a wrongful-death action for damages, not a suit to abate a nuisance on and through the entity's own property. State immunities would not affect the federal counts in any event. *Cf. Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). The City has not claimed immunity, Dkt. 81 at 15, and it challenges no item of the relief Count 35 seeks.

**v. <u>The claim is timely and does not challenge any CEQA determination.</u>**

47. The City argues that any challenge to its 2010–2015 zoning and CEQA decisions is time-barred. Mot. 9, 25. Count 35 does not seek to set aside those decisions, which the TAC cites as evidence of what the City knew, TAC ¶¶ 651–658; it seeks abatement of present conditions. CEQA's short limitations periods govern actions to "attack, review, set aside, void, or annul" an agency's decision. Cal. Pub. Res. Code § 21167; *see Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32, (2010). "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right," Cal. Civ. Code § 3490; *Wade v. Campbell*, 200 Cal. App. 2d 54, 61 (1962) (limitations "inapplicable" where specially injured plaintiffs sought abatement), and the TAC alleges obstruction of the "free passage or use" of public parks and streams, Cal. Civ. Code § 3479; TAC ¶ 651. For a continuing nuisance, "every repetition of the wrong may create further liability." *Nestle*, 6 Cal. 3d at 937; *see Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 869–70 (1985); *Phillips v. City of*

*Pasadena*, 27 Cal. 2d 104, 107–08 (1945). Whether contamination is a continuing nuisance "is ordinarily a question of fact," *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1148 (1991), and limitations supports dismissal only when "the running of the statute is apparent on the face of the complaint," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). It is not. The City's own conduct is recent: in September 2024 it approved the school expansion within the modeled plume, and it is processing a rezoning to high-density residential on the Facility's lot line. TAC ¶¶ 224–227, 233.

48. *Heckler*, a rule of federal administrative law, does not limit a California nuisance claim against a California city, which the Legislature has expressly permitted. *Nestle*, 6 Cal. 3d at 931–37; *see* Mot. 25, 27.

### F. <u>THE REMAINING COUNTS REST ON DUTIES THE CITY ITSELF OWES.</u>

49. The City treats each remaining count as a demand that it regulate Apple more aggressively. As to each, the TAC alleges facts supporting a duty the City itself owes, and a count's label does not control. *Johnson*, 574 U.S. at 11. If the Court concludes otherwise as to any count, Plaintiff requests leave to plead the duty identified below. RCRA's endangerment provision reaches "any person, including . . . any other governmental instrumentality or agency, . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). A contributor "had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011). A land manager's decision not to regulate hunters' lead ammunition is not contribution, but "[i]f USFS required hunters to use lead ammunition, our analysis might be different." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, (9th Cir. 2023).

50. The City is not a bystander to the Facility's waste. Its sewer receives about 40,000 gallons a day of the Facility's process wastewater, including corrosive waste, trichloroethylene, and metals, TAC ¶¶ 85, 146–147, 445, 487; the Facility's discharges also enter the City's storm drains, *id.* ¶¶ 450, 510, 520; and the Facility's wastewater permit, enforced under the City's ordinance, sets the terms of disposal, *id.* ¶¶ 146, 439, 442. Plaintiff recognizes that a mixture of domestic sewage and other wastes "that passes through a sewer system to a publicly-owned treatment works for treatment" is excluded from solid waste, 40 C.F.R. § 261.4(a)(1)(ii); *see* 42 U.S.C. § 6903(27), and Count 1 does not rest on the Plant's receipt of the Facility's wastewater. But the exclusion is narrow and does not reach waste that

leaks from sewer lines before treatment. *Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180, 185–87 (1st Cir. 1989) (exclusion turns "not simply [on] type, but also [on] source"; vacating dismissal of RCRA claims over leaking sewer lines); *Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993). Whether a city's "design of the sewer, any leakage that occurred, and [its] knowledge of that leakage" make it a contributor is a question of fact. *KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC, ECF No. 690 at 20–21 (N.D. Cal. May 9, 2014). The sewer carrying the Facility's discharges runs directly around the apartment where Plaintiff lived, whose plumbing was investigated as a vector for solvent vapors. TAC ¶ 443. The City also authorized the very units EPA later found treating and storing hazardous waste without a RCRA permit, then recorded but did not report RCRA violations at the site. *Id.* ¶¶ 48, 122, 141, 144–145, 334–335. That is the affirmative conduct *Center for Biological Diversity* distinguished. *See Cox v. City of Dallas*, 256 F.3d 281, 294–99 (5th Cir. 2001); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 513–15 (4th Cir. 2015). An entity that approved and oversaw a waste operation and "could have suspended" it "cannot so easily distance itself" from its failures. *Covington v. Jefferson County*, 358 F.3d 626, 639–40 (9th Cir. 2004).

51. Counts 5 and 8 rest on the same facts and also state an independent claim under 42 U.S.C. § 6972(a)(1)(A), which reaches any "governmental instrumentality or agency" that is "in violation of any . . . requirement . . . which has become effective pursuant to this chapter." California administers its hazardous waste program "in lieu of the Federal program," with "the same force and effect as action taken by the Administrator," 42 U.S.C. § 6926(b), (d), so authorized-program requirements are enforceable by citizen suit, *Ashoff v. City of Ukiah*, 130 F.3d 409, (9th Cir. 1997). Federal law conditions authorization on "periodic inspections of the facilities and activities subject to regulation," 40 C.F.R. § 271.15(b)(2), and California assigns that function to unified program agencies, which must inspect onsite treatment units every three years, Cal. Health & Safety Code § 25404.1(a)(2); Cal. Code Regs. tit. 27, § 15200(a)(2)(B). CalEPA found that the City had processed none of 152 onsite-treatment notifications within the required 45 days, a deficiency resolved only during CalEPA's evaluation. RJN Ex. 13 at 20. Because the inspection mandate implements a federal condition of authorization, it is not the kind of "more stringent" state standard that *Ashoff* held unenforceable. If the Court finds the City's role insufficiently pleaded, Plaintiff requests leave to plead it directly.

52. The Act authorizes suit against "any person (including . . . any other

governmental instrumentality or agency . . .)" alleged to violate "an emission standard or limitation," including "any other standard, limitation, or schedule established . . . under any applicable State implementation plan approved by the Administrator." 42 U.S.C. § 7604(a)(1), (f)(4). A city is a "person." *Id.* § 7602(e). California's implementation plan includes core provisions of CEQA, which EPA approved in 1981: Public Resources Code sections 21002 (feasible alternatives and mitigation), 21081 (required findings), and 21151 (environmental impact reports by local agencies). 46 Fed. Reg. 5965 (Jan. 21, 1981); 40 C.F.R. § 52.220(c)(63). Those provisions bind the City as lead agency, and plan obligations that bind a city are enforceable against it. *See Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764, 769–71 (2d Cir. 1992) (city's plan commitment to mitigate is "an emission standard or limitation"); *McCarthy v. Thomas*, 27 F.3d 1363, 1373 (9th Cir. 1994) (plan transit provisions "bind the cities of Tucson and Phoenix").

53. Counts 14 and 15 allege that the City approved the Santa Clara Square EIR and its 2017 addendum knowing that emissions would exceed significance thresholds, without the required cumulative analysis of the adjacent Facility, and approved the Facility's buildout without environmental review. TAC ¶¶ 91, 416–420, 423–427. The City's 2014 routing sheet for the Facility, circulated to the City Attorney, City Manager, Fire Marshal, and Water and Sewer Utilities, listed the CEQA determination as "TBD." RJN Ex. 12 at 1. Those are the duties the plan-approved provisions impose, and the omission was repeated from 2014 through 2017. TAC ¶¶ 91, 427; *see* 42 U.S.C. § 7604(a)(1) (violation that "has been repeated"). That the counts cite ambient standards rather than the plan does not defeat them, *Johnson*, 574 U.S. at 11, and the City's authorities concerned suits against EPA or challenges to an air agency's enforcement discretion, not a local agency's own plan duties, *see Cent. Valley Air Quality Coal.*, ECF No. 41 at 12. If necessary, Plaintiff requests leave to identify the plan provisions.

54. Count 2 enforces the general duty of section 112(r)(1), which requires owners and operators to "identify hazards which may result from such releases," "design and maintain a safe facility," and "minimize the consequences of accidental releases which do occur," against Apple and the property owners. 42 U.S.C. §§ 7412(r)(1), 7604(f)(3); Dkt. 133 ¶ 43. The City is a necessary party to that remedy, which will involve its emergency planning and land-use approvals. Fed. R. Civ. P. 19(a)(1)(A); *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 781–83 (9th Cir. 2005) ("a plaintiff's inability to state a direct cause of action against an absentee does not prevent the absentee's joinder under Rule 19"). Count 2 also rests on a duty the City owes

directly. For sources required to hold a Title V permit, EPA's accidental-release rules require the designated agency to "[v]erify that the source owner or operator has registered and submitted an RMP or a revised plan when required by this part." 40 C.F.R. § 68.215(a), (d)–(e). California designated its unified program agencies to implement "[v]erification of stationary source registration and submission of an RMP or revised RMP." Cal. Health & Safety Code § 25533(d)(1). The TAC alleges that the Facility is a major source required to hold a Title V permit, that the City accepted an RMP application in 2015 that it did not close until December 2022, and that the RMP disclosed three regulated substances although more than twenty others were present. TAC ¶¶ 98, 187, 359–363. CalEPA treats § 25533(d) as a source of the City's duties and found that three of the City's seven CalARP sources had not updated their plans in five years. RJN Ex. 13 at 2, 7–8.

55. The City says its unified program role "regulates waste, not air emissions." Mot. 16. But its Fire Department administers CalARP, under which Apple filed the Facility's Risk Management Plan, and five of the City's seven CalARP sources went uninspected for three years. RJN Ex. 13 at 5; TAC ¶¶ 187, 235; Dkt. 134, Ex. 6. The City's permit for the Facility charges a CalARP fee for "Program 1," RJN Ex. 14 at 12, a tier limited to processes whose worst-case release reaches no public receptor and that have had no accidental release with offsite impacts in five years, 40 C.F.R. § 68.10(g)(1)–(2). Apple's modeling places its arsine worst-case endpoint over 5,343 residents, and the City itself responded in 2021 to a phosphine leak vented out of the Facility. TAC ¶¶ 148, 188.

56. EPCRA requires that emergency plans, safety data sheets, and inventory forms be available to the public "at the location or locations designated by the Administrator, Governor, State emergency response commission, or local emergency planning committee, as appropriate," 42 U.S.C. § 11044(a), and authorizes suit against a commission for "failure to provide a mechanism for public availability of information in accordance with section 11044(a)" or for failure to respond to a request for tier II information, *id.* § 11046(a)(1)(C)–(D). California performs those functions through its unified program agencies: an inventory filed with the agency "shall be deemed to have filed the inventory form required by Section 11022(a) of Title 42 of the United States Code with the state emergency response commission," and the agency "shall make the information . . . available for public inspection." Cal. Health & Safety Code § 25509(b), (d). Cal OES explains that "the SERC has delegated some EPCRA requirements," that inventories go "to the Certified Unified Program Agencies (CUPAs) instead of the

SERC/LEPCs," and that "[i]t is the CUPAs, therefore, that respond to public inquiries regarding business inventories"; it describes the procedures for public requests as "administered by Cal OES and UPAs." RJN Ex. 18. The City is that agency for the Facility. TAC ¶¶ 45–48; Mot. 10. The City denies that the CUPA program includes "delegation of the State's EPCRA functions," Mot. 23, but where the State routes its § 11044 and § 11022(e)(3) functions through the City, a suit to compel their performance falls within § 11046(a)(1)(C)–(D). At most, the question is which entity must be named, which amendment can address, including by adding the commission's chair in an official capacity. *See Ex parte Young*, 209 U.S. 123 (1908).

57. The City also contends that Plaintiff never alleges a request or that the City failed to answer one. Mot. 16, 23. The TAC alleges that the City withheld and delayed records about the Facility, TAC ¶¶ 50, 170, 207, 274, 296, and the particulars show that amendment would not be futile, *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Plaintiff's July 2024 written request for the Facility's hazardous materials "inventories," which California deems to satisfy the federal tier II requirement, went unanswered for sixteen months, far beyond EPCRA's 120-day limit, until after this action was filed. 42 U.S.C. § 11046(a)(1)(D); Records Decl. ¶¶ 5–8 & Exs. A–B. Her May 2023 request for toxic-gas records drew a response that the Fire Department "was unable to locate records under the 'Toxic Gas System (i.e. SCCO B11-380)' designation," and her October 2025 request for toxic-gas inventories and emergency-response information remains unanswered. Records Decl. ¶¶ 10–11, 19 & Exs. C, J. A belated production does not moot a claim unless it is "absolutely clear" the conduct cannot reasonably be expected to recur. *Laidlaw*, 528 U.S. at 189. The City also accepted, as the agency receiving the Facility's business plan, the reclassification on which Apple now relies to deny any duty to report its toxic releases. Part II.E. The same facts state a claim under the Plant's permit, whose pretreatment conditions require that effluent data "be available to the public without restriction" and that users in significant noncompliance be publicly identified each year. 40 C.F.R. §§ 403.8(f)(2)(viii), 403.14(b); TAC ¶¶ 50, 180, 274, 439, 442. Count 26 alleges that the City failed to ensure that the Facility filed its toxic release inventory reports, TAC ¶ 555, facts that bear on the City's knowledge under Counts 21, 22, and 35. Any dismissal of Count 26 as to the City should be without prejudice. Count 24 alleges that the City purported to authorize the Facility's industrial stormwater discharges through a maintenance agreement and wastewater permit terms, without public notice. TAC ¶¶ 531–535. Those facts show the City's failures under MRP C.3.h, C.4, and C.5, *see* Part IV.C, and under the MRP's public-reporting provisions, which implement the

federal requirement of a program to "promote, publicize, and facilitate public reporting of the presence of illicit discharges," 40 C.F.R. § 122.26(d)(2)(iv)(B)(5); MRP C.5.c.ii(1)–(2), C.7.b. The Court should read Count 24 with Count 22 or grant leave to identify those provisions.

58. TSCA authorizes suit against "any person (including . . . any other governmental instrumentality or agency . . .)" alleged to violate the statute or its rules. 15 U.S.C. § 2619(a)(1); *see America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) (TSCA citizen suit against school district officials concerning PCBs). Count 32 alleges that the City knew of the Facility's improper use and disposal of trichloroethylene, NMP, mercury, and lead and did not act. TAC ¶¶ 605–609. A TSCA rule also binds the City directly: by September 15, 2025, "owners or operators of publicly owned treatment works, where there is a reasonable possibility of the presence of TCE," must screen industrial wastewater they receive for TCE or implement EPA's workplace chemical protection program. 40 C.F.R. § 751.319(c). The City co-owns the Plant, and the Facility's effluent has contained TCE that apparently was never selected for testing. TAC ¶¶ 44, 123–125, 147. Count 32's citation of other sections is at most an imperfect statement of the theory, *Johnson*, 574 U.S. at 11, and any dismissal should be without prejudice and with leave to plead § 751.319.

### G. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

59. The City seeks dismissal with prejudice because Plaintiff "did not modify those claims" after its earlier motion. Mot. 10; *see id.* at 9, 28. But the Court has never ruled on the City's arguments: it dismissed for lack of standing and stated that its ruling was "without prejudice to the renewal of any of the motions." Dkt. 101 at 25. Leave to amend should be freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). A pro se complaint should not be dismissed without leave unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted), and the Court may consider facts set out in an opposition in assessing futility, *Broam*, 320 F.3d at 1026 n.2. None of those circumstances is present. This opposition identifies the permit conditions, statutes, and facts supporting each count, and Plaintiff's declarations identify further facts she could plead. Gjovik Decl. ¶¶ 4–11; Records Decl. ¶¶ 4–22. Should the Court find any count insufficiently specific, Plaintiff requests leave to identify the provisions that the pleaded facts show were violated.

# V. CONCLUSION

60. The City is not sued for the manner in which it regulates Apple. It is sued for violating its own stormwater permit, its own wastewater permit, and its own duties as the owner of the storm drains, sewers, and parks at the center of this case. Plaintiff respectfully requests that the Court deny the motion or, in the alternative, dismiss without prejudice and with leave to amend.

Respectfully filed,



**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff)**
Filed October 15, 2026 in San José, California
(408) 883-4428
ashleymgjovik@protonmail.com
2108 N. St. Ste. 4553,
Sacramento, CA 95816

## VI. [PROPOSED] ORDER

Having considered Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127), the papers filed in support of and in opposition to the motion, and the arguments of the parties, and good cause appearing,

**IT IS HEREBY ORDERED:**

1. Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127) is **DENIED** in its entirety.
2. In the alternative, to the extent any claim is dismissed, the dismissal is without prejudice and with leave to amend, and Plaintiff may file an amended complaint within thirty (30) days of this Order.

**IT IS SO ORDERED.**

DATED: ___________________

_________________________________
Hon. P. Casey Pitts
United States District Judge