# EXHIBIT 1

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

# California Regional Water Quality Control Board
# San Francisco Bay Region
# Municipal Regional Stormwater NPDES Permit

## Order No. R2-2015-0049
## NPDES Permit No. CAS612008
## November 19, 2015



# California Regional Water Quality Control Board
# San Francisco Bay Region
# Municipal Regional Stormwater NPDES Permit

## ORDER No. R2-2015-0049
## NPDES PERMIT No. CAS612008

**Issuing Waste Discharge Requirements and National Pollutant Discharge Elimination System (NPDES) Permit for the discharge of stormwater runoff from the municipal separate storm sewer systems (MS4s) of the following jurisdictions and entities, which are permitted under this San Francisco Bay Municipal Regional Stormwater Permit (MRP):**

**The cities of Alameda, Albany, Berkeley, Dublin, Emeryville, Fremont, Hayward, Livermore, Newark, Oakland, Piedmont, Pleasanton, San Leandro, and Union City, Alameda County, the Alameda County Flood Control and Water Conservation District, and Zone 7 of the Alameda County Flood Control and Water Conservation District, which have joined together to form the Alameda Countywide Clean Water Program (Alameda Permittees)**

**The cities of Antioch, Brentwood, Clayton, Concord, El Cerrito, Hercules, Lafayette, Martinez, Oakley, Orinda, Pinole, Pittsburg, Pleasant Hill, Richmond, San Pablo, San Ramon, and Walnut Creek, the towns of Danville and Moraga, Contra Costa County, the Contra Costa County Flood Control and Water Conservation District, which have joined together to form the Contra Costa Clean Water Program (Contra Costa Permittees)**

**The cities of Campbell, Cupertino, Los Altos, Milpitas, Monte Sereno, Mountain View, Palo Alto, San Jose, Santa Clara, Saratoga, and Sunnyvale, the towns of Los Altos Hills and Los Gatos, the Santa Clara Valley Water District, and Santa Clara County, which have joined together to form the Santa Clara Valley Urban Runoff Pollution Prevention Program (Santa Clara Permittees)**

**The cities of Belmont, Brisbane, Burlingame, Daly City, East Palo Alto, Foster City, Half Moon Bay, Menlo Park, Millbrae, Pacifica, Redwood City, San Bruno, San Carlos, San Mateo, and South San Francisco, the towns of Atherton, Colma, Hillsborough, Portola Valley, and Woodside, the San Mateo County Flood Control District, and San Mateo County, which have joined together to form the San Mateo Countywide Water Pollution Prevention Program (San Mateo Permittees)**

**The cities of Fairfield and Suisun City, which have joined together to form the Fairfield-Suisun Urban Runoff Management Program (Fairfield-Suisun Permittees)**

**The City of Vallejo and the Vallejo Sanitation and Flood Control District (Vallejo Permittees)**

# Table of Contents

FINDINGS……………………………………………………………………………………...1
Finding 1: Incorporation of Fact Sheet……………………………………………………….. 1
Findings 2-8: Existing Permits……………………………………………………………….. 1
Findings 9-12: Applicable Federal, State and Regional Regulations…………………………. 2
Findings13-21: Nature of Discharges and Sources of Pollutants…………………………..…… 3
A. Discharge Prohibitions………………………………………………………………………...5
B. Receiving Water Limitations………………………………………………………………….5
C.1. Compliance with Discharge Prohibitions and Receiving Water Limitations…..………… 6
C.2. Municipal Operations………………………………………………………………………...7
C.3. New Development and Redevelopment…………………………………………………12
C.4. Industrial and Commercial Site Controls……………………………………………...50
C.5. Illicit Discharge Detection and Elimination………………………………………….. 56
C.6. Construction Site Control……………………………………………………………...61
C.7. Public Information and Outreach……………………………………………………...67
C.8. Water Quality Monitoring……………………………………………………………..71
C.9. Pesticides Toxicity Control……………………………………………………………91
C.10. Trash Load Reduction…………………………………………………………………97
C.11. Mercury Controls……………………………………………………………………107
C.12. PCBs Controls………………………………………………………………………..113
C.13. Copper Controls……………………………………………………………………... 123
C.14. Bacteria Controls…………………………………………………………………… 125
C.15. Exempted and Conditionally Exempted Discharges…………………………………133
C.16. Discharges to Areas of Special Biological Significance……………………………… 140
C.16.5. Cities of Antioch, Brentwood, and Oakley, and Unincorporated Contra Costa County and Contra Costa County Flood Control and Water Conservation District Incorporation into NPDES Permit No. CAS612008. ……………………………………………………141
C.17. Annual Reports……………………………………………………………………… 149
C.18. Modifications to this Order…………………………………………………………..149
C.19. Standard Provisions…………………………………………………………………. 150
C.20. Expiration Date………………………………………………………………………. 150
C.21. Rescission of Old Order……………………………………………………………...150
C.22. Effective Date……………………………………………………………………….. 150
Acronyms & Abbreviations………………………..…………………………………………. 151
Glossary……………………………………………………………………………………... 154
Attachment A: Municipal Regional Stormwater Permit Fact Sheet……………………….. A-1
Fact Sheet Attachment C10…………………………………………………………A-142
Attachment B: Provision C.3.b. Sample Reporting Table…………………………….….. B-1
Attachment C: Provision C.3.g. Hydromodification Applicability Maps……………..…..C-1
Attachment D: Provision C.8. Standard Monitoring Provisions……………………………..D-1
Attachment E: Provision C.10. Supporting Information……………………………………..E-1
Attachment F: Provision C.16. ASBS Special Protection Zone…………………………….. F-1
Attachment G: Standard NPDES Stormwater Permit Provisions……………………...….G-1

# The California Regional Water Quality Control Board, San Francisco Bay Region, (hereinafter referred to as the Water Board) finds that:

# FINDINGS

## Incorporation of Fact Sheet

1. The Fact Sheet for the San Francisco Bay Municipal Regional Stormwater National Pollutant Discharge Elimination System (NPDES) Permit (Attachment A) includes cited regulatory and legal references and additional explanatory information in support of the requirements of this Permit. The Fact Sheet, including any supplements thereto, is hereby incorporated by reference.

## Existing Permit

2. **Alameda County—**The cities of Alameda, Albany, Berkeley, Dublin, Emeryville, Fremont, Hayward, Livermore, Newark, Oakland, Piedmont, Pleasanton, San Leandro, and Union City, Alameda County (Unincorporated area), the Alameda County Flood Control and Water Conservation District, and Zone 7 of the Alameda County Flood Control and Water Conservation District have joined together to form the Alameda Countywide Clean Water Program (hereinafter collectively referred to as the Alameda Permittees) and have submitted a permit application (Report of Waste Discharge), dated May 30, 2014, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the Alameda Permittees' jurisdictions. The Alameda Permittees are currently subject to NPDES Permit No. CAS612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083 on November 28, 2011, to discharge stormwater runoff from storm drains and watercourses within their jurisdictions.

3. **Contra Costa County—**The cities of Clayton, Concord, El Cerrito, Hercules, Lafayette, Martinez, Orinda, Pinole, Pittsburg, Pleasant Hill, Richmond, San Pablo, San Ramon, and Walnut Creek, the towns of Danville and Moraga, Contra Costa County, and the Contra Costa County Flood Control and Water Conservation District have joined together to form the Contra Costa Clean Water Program (hereinafter collectively referred to as the Contra Costa Permittees) and have submitted a permit application (Report of Waste Discharge), dated June 2, 2014, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the Contra Costa Permittees' jurisdictions. The Contra Costa Permittees are currently subject to NPDES Permit No. CAS612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083 on November 28, 2011, to discharge stormwater runoff from storm drains and watercourses within their jurisdictions.

4. **San Mateo County—**The cities of Belmont, Brisbane, Burlingame, Daly City, East Palo Alto, Foster City, Half Moon Bay, Menlo Park, Millbrae, Pacifica, Redwood City, San Bruno, San Carlos, San Mateo, and South San Francisco, the towns of Atherton, Colma, Hillsborough, Portola Valley, and Woodside, the San Mateo County Flood Control District and San Mateo County have joined together to form the San Mateo Countywide Water

Pollution Prevention Program (hereinafter collectively referred to as the San Mateo Permittees) and have submitted a permit application (Report of Waste Discharge), dated May 30, 2014, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the San Mateo Permittees' jurisdictions. The San Mateo Permittees are currently subject to NPDES Permit No. CAS612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083 on November 28, 2011, to discharge stormwater runoff from storm drains and watercourses within their jurisdictions.

5. **Santa Clara County—**The cities of Campbell, Cupertino, Los Altos, Milpitas, Monte Sereno, Mountain View, Palo Alto, San Jose, Santa Clara, Saratoga, and Sunnyvale, the towns of Los Altos Hills and Los Gatos, the Santa Clara Valley Water District, and the County of Santa Clara have joined together to form the Santa Clara Valley Urban Runoff Pollution Prevention Program (hereinafter collectively referred to as the Santa Clara Permittees) and have submitted a permit application (Report of Waste Discharge), dated May 29, 2014, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the Santa Clara Permittees' jurisdictions. The Santa Clara Permittees are currently subject to NPDES Permit No. CAS612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083 on November 28, 2011, to discharge stormwater runoff from storm drains and watercourses within their jurisdictions.

6. **Fairfield-Suisun—**The cities of Fairfield and Suisun City have joined together to form the Fairfield-Suisun Urban Runoff Management Program (hereinafter referred to as the Fairfield-Suisun Permittees) and have submitted a permit application (Report of Waste Discharge), dated June 2, 2014, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the Fairfield-Suisun Permittees' jurisdictions. The Fairfield-Suisun Permittees are currently subject to NPDES Permit No. CAS0612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083 on November 28, 2011, to discharge stormwater runoff from storm drains and watercourses within their jurisdictions.

7. **Vallejo—**The City of Vallejo and the Vallejo Sanitary District (hereinafter referred to as the Vallejo Permittees) have submitted permit applications (Report of Waste Discharge), dated July 3 and June 2, 2014, respectively, for reissuance of their waste discharge requirements under the NPDES permit to discharge stormwater runoff from storm drains and watercourses within the Vallejo Permittees' jurisdictions. The Vallejo Permittees are currently subject to NPDES Permit No. CAS612008 issued by Order No. R2-2009-0074 on October 14, 2009, and amended by Order No. R2-2011-0083, to discharge stormwater runoff from storm drains and watercourses within the their jurisdictions.

8. The Alameda, Contra Costa, San Mateo, Santa Clara, Fairfield-Suisun, and Vallejo Permittees are hereinafter referred to in this Order as the Permittees.

## Applicable Federal, State and Regional Regulations

9. Section 402(p) of the federal Clean Water Act (CWA), as amended by the Water Quality Act of 1987, requires NPDES permits for stormwater discharges from municipal separate storm sewer systems (MS4s), stormwater discharges associated with industrial activity (including

THESE PAGES REMOVED FROM THIS EXCERPT

**THEREFORE, IT IS HEREBY ORDERED that Order No. R2-2009-0074 and R2-2011-0183 are rescinded upon the effective date of this Order except for enforcement purposes, and, in order to meet the provisions of Water Code division 7 (commencing with § 13000) and regulations adopted thereunder, and the provisions of the CWA and regulations and guidelines adopted thereunder, the Permittees shall comply with the following requirements in this Order. This action in no way prevents the Water Board from taking enforcement action for past violations of the previous orders.**

## A. DISCHARGE PROHIBITIONS

**A.1.** The Permittees shall, within their respective jurisdictions, effectively prohibit the discharge of non-stormwater (materials other than stormwater) into storm drain systems and watercourses. NPDES-permitted discharges are exempt from this prohibition. Provision C.15 describes a tiered categorization of non-stormwater discharges based on potential for pollutant content that may be discharged upon adequate assurance that the discharge contains no pollutants of concern at concentrations that will impact beneficial uses or cause exceedances of water quality standards.

**A.2.** It shall be prohibited to discharge rubbish, refuse, bark, sawdust, or other solid wastes into surface waters or at any place where they would contact or where they would be eventually transported to surface waters, including flood plain areas.

## B. RECEIVING WATER LIMITATIONS

**B.1.** The discharge shall not cause the following conditions to create a condition of nuisance or to adversely affect beneficial uses of waters of the State:

- **a.** Floating, suspended, or deposited macroscopic particulate matter, or foam;
- **b.** Bottom deposits or aquatic growths;
- **c.** Alteration of temperature, turbidity, or apparent color beyond present natural background levels;
- **d.** Visible, floating, suspended, or deposited oil or other products of petroleum origin; and
- **e.** Substances present in concentrations or quantities that would cause deleterious effects on aquatic biota, wildlife, or waterfowl, or that render any of these unfit for human consumption.

**B.2.** The discharge shall not cause or contribute to a violation of any applicable water quality standard for receiving waters. If applicable water quality objectives are adopted and approved by the State Water Board after the date of the adoption of this Order, the Water Board may revise and modify this Order as appropriate.

THESE PAGES REMOVED FROM THIS EXCERPT

## C.1. Compliance with Discharge Prohibitions and Receiving Waters Limitations

The Permittees shall comply with Discharge Prohibitions A.1 and A.2 and Receiving Water Limitations B.1 and B.2 through the timely implementation of control measures and other actions as specified in Provisions C.2 through C.16.5. Compliance with Provisions C.9 through C.12, C.14, and C.16.5 of this Order, which prescribe requirements and schedules for Permittees identified therein to manage their discharges that may cause or contribute to violations of water quality standards (WQS) for pesticides, trash, mercury, polychlorinated biphenyls (PCBs), bacteria, diazinon and chlorpyrifos, and methylmercury shall constitute compliance during the term of this Order with Receiving Water Limitations B.1 and B.2 for the pollutants and the receiving waters identified in the provisions. Compliance with Provisions C.10 and C.16.5, which prescribe requirements and schedules for Permittees to manage their discharges of trash, shall also constitute compliance with Discharge Prohibitions A.1 and A.2 during the term of this Order for discharges of trash. If exceedance(s) of WQS, except for exceedances of WQS for pesticides, trash, mercury, PCBs, bacteria, diazinon and chlorpyrifos, and methylmercury that are managed pursuant to Provisions C.9 through C.12, C.14, and C.16.5, persist in receiving waters notwithstanding the implementation of the required controls and actions, the Permittees shall comply with the following procedure:

a. Upon a determination by either the Permittee(s) or the Water Board that discharges are causing or contributing to an exceedance of an applicable (WQS), the Permittee(s) shall notify, within no more than 30 days, and thereafter submit a report to the Water Board that describes controls or best management practices (BMPs) that are currently being implemented, and the current level of implementation, and additional controls or BMPs that will be implemented, and/or an increased level of implementation, to prevent or reduce the discharge of pollutants that are causing or contributing to the exceedance of water quality standards. The report may be submitted in conjunction with the Annual Report, unless the Water Board directs an earlier submittal, and shall constitute a request to the Water Board for amendment of this NPDES Permit. The report and application for amendment shall include an implementation schedule. The Water Board may require modifications to the report and application for amendment; and

b. Submit any modifications to the report required by the Water Board within 30 days of notification.

As long as Permittees have complied with the procedures set forth above, they do not have to repeat the same procedure for continuing or recurring exceedances of the same receiving water limitations unless directed by the Water Board to develop additional control measures and BMPs and reinitiate the Permit amendment process.

THESE PAGES REMOVED FROM THIS EXCERPT

provide additional analysis and discussion as to how existing data appropriately evaluates how existing practices available for use meet the Permit's HM requirements, including limit conditions. The report shall, as necessary, propose modifications to Contra Costa's current HM practices, or propose alternate practices that have been accepted by the Water Board, to meet the Permit's HM requirements. The report may also: provide additional data on monitored installations; provide additional analysis and discussion as to how existing and additional data appropriately evaluates existing practices, including limit conditions and the range of conditions present across Contra Costa County; and provide other information or discussion, as appropriate.

(3) Reporting of HM projects shall be as described in Provision C.3.b.

(4) Permittees shall report collectively, with each Annual Report, a listing, summary, and date of modifications made to the BAHM, including the technical rationale. This shall be prepared at the countywide program level and submitted on behalf of participating Permittees.

(5) In addition, for each HM Project approved during the reporting period, Permittees shall collect and make available the following information. Information shall be reported electronically, and, where appropriate, in tabular form.

- Device(s) or method(s) used to meet the HM Standard, such as detention basin(s), biodetention unit(s), regional detention basin, or in-stream control(s);
- Method used by the project proponent to design and size the device or method used to meet the HM Standard;
- Site plans identifying impervious areas, surface flow directions for the entire site, and location(s) of HM measures;
- For projects using standard sizing charts, a summary of sizing calculations used;
- For projects using the BAHM, a listing of model inputs; and
- For projects using custom modeling, a summary of the modeling calculations with a corresponding graph showing curve matching (existing, post-project, and post-project-with HM controls curves).

## C.3.h. Operation and Maintenance of Stormwater Treatment Systems

**i. Task Description –** Each Permittee shall implement an Operation and Maintenance (O&M) Verification Program.

**ii. Implementation Level –** At a minimum, the O&M Verification Program shall include the following elements:

(1) Conditions of approval or other legally enforceable agreements or mechanisms for all Regulated Projects that, at a minimum, require at least one of the following from all project proponents and their successors in control of the Project or successors in fee title:

(a) The project proponent's signed statement accepting responsibility for the O&M of the installed pervious pavement system(s) (if any), onsite, joint, and/or offsite stormwater treatment system(s), and HM control(s) (if any) until such responsibility is legally transferred to another entity;

(b) Written conditions in the sales or lease agreements or deed for the project that requires the buyer or lessee to assume responsibility for the O&M of the pervious pavement system(s) (if any), onsite, joint, and/or offsite installed stormwater treatment system(s), and HM control(s) (if any) until such responsibility is legally transferred to another entity;

(c) Written text in project deeds, or conditions, covenants and restrictions (CCRs) for multi-unit residential projects that require the homeowners association or, if there is no association, each individual owner to assume responsibility for the O&M of the installed pervious pavement system(s) (if any), onsite, joint, and/or offsite stormwater treatment system(s), and HM control(s) (if any) until such responsibility is legally transferred to another entity; or

(d) Any other legally enforceable agreement or mechanism, such as recordation in the property deed, that assigns the O&M responsibility for the installed pervious pavement system(s) (if any), onsite, joint, and/or offsite treatment system(s) and HM control(s) (if any) to the project owner(s) or the Permittee.

(2) Coordination with the appropriate mosquito and vector control agency with jurisdiction to establish a protocol for notification of installed stormwater treatment systems and HM controls.

(3) Conditions of approval or other legally enforceable agreements or mechanisms for all Regulated Projects that require the granting of site access to all representatives of the Permittee, local mosquito and vector control agency staff, and Water Board staff, for the sole purpose of performing O&M inspections of the installed pervious pavement system(s) (if any), stormwater treatment system(s) and HM control(s) (if any).

(4) A database or equivalent tabular format of the following:

(a) All pervious pavement system(s) that total 3000 square feet or more installed at Regulated Projects, offsite, or at a Regional Project. The total square footage should not include pervious pavement systems installed as private-use patios for single family homes, townhomes, or condominiums.

(b) All stormwater treatment systems installed onsite at Regulated Projects, offsite, or at a joint or Regional Project.

(c) All HM controls installed onsite at Regulated Projects, offsite, or at a joint or Regional Project.

(5) The database or equivalent tabular format required in Provision C.3.h.ii.(4) shall include the following information for each Regulated Project, offsite project, and Regional Project:

(a) Name and address of the project;

(b) Names of the owner(s) and responsible operator(s) of the installed pervious pavement system(s) (if any), stormwater treatment system(s), and/or HM control(s);

(c) Specific description of the location (or a map showing the location) of the installed pervious pavement system(s) (if any), stormwater treatment system(s), and HM control(s) (if any);

(d) Date(s) that the pervious pavement system(s) (if any), stormwater treatment system(s), and HM controls (if any) was/were installed;

(e) Description of the type and size of the pervious pavement systems (if any), stormwater treatment system(s), and HM control(s) (if any) installed;

(f) Detailed information on O&M inspections. For each inspection, include the following:

(i) Date of inspection.

(ii) Type of inspection (e.g., installation, annual, followup, spot).

(iii) Type(s) of pervious pavement systems inspected (e.g., pervious concrete, pervious asphalt, pervious pavers).

(iv) Type(s) of stormwater treatment systems inspected (e.g., swale, bioretention unit, tree well) and an indication of whether the treatment system is an onsite, joint, or offsite system.

(v) Type of HM controls inspected.

(vi) Inspection findings or results (e.g., proper installation, proper operation and maintenance, system not operating properly because of plugging, bypass of stormwater because of improper installation or maintenance, maintenance required immediately).

(vii) Enforcement action(s) taken, if any (e.g., verbal warning, notice of violation, compliance schedule, administrative citation, administrative order).

(6) A prioritized O&M Inspection Plan for inspecting all pervious pavement systems that total 3,000 square feet or more (excluding private-use patios for single family homes, townhomes, or condominiums), stormwater treatment systems and HM controls installed at Regulated Projects, offsite locations, and/or at joint or Regional Projects. For residential subdivisions with pervious pavement systems that include individual driveways, inspection of a representative number of driveways is sufficient.

At a minimum, the O&M Inspection Plan must specify the following for each fiscal year:

(a) Inspection by the Permittee of all newly installed pervious pavement systems that total 3,000 square feet or more (excluding private-use patios for single family homes, townhomes, or condominiums), stormwater treatment systems, and HM controls (at Regulated Projects, offsite locations, and/or at joint or Regional Projects) at the completion of installation to ensure approved plans have been followed. For residential subdivisions with pervious pavement systems that include individual driveways, inspection of a representative number of driveways is sufficient;

(b) Inspection by the Permittee of an average of 20 percent, but no less than 15 percent, of the total number (at the end of the preceding fiscal year) of Regulated Projects, offsite projects, or Regional Projects. Each inspection shall include inspection of all pervious pavement systems that total 3,000 square feet or more (excluding private-use patios for single family homes, townhomes, or condominiums), stormwater treatment systems, and HM controls installed at the Regulated Project, offsite project, or Regional Project. For residential subdivisions with pervious pavement systems that include individual driveways, inspection of a representative number of driveways is sufficient;

(c) Inspection by the Permittee of all Regulated Projects, offsite projects, or Regional Projects at least once every five years. Each inspection shall include inspection of all pervious pavement systems that total 3,000 square feet or more (excluding private-use patios for single family homes, townhomes, or condominiums), stormwater treatment systems, and HM controls installed at the Regulated Project, offsite project, or Regional Project. For residential subdivisions with pervious pavement systems that include individual driveways, inspection of a representative number of driveways is sufficient; and

(d) For vault-based stormwater treatment systems, Permittees may accept 3rd party inspection reports in lieu of conducting Permittee O&M inspections only if the 3rd party inspections are conducted at least annually. Information from each 3rd party inspection shall be included in the database or tabular format required in Provision C.3.h.ii.(5) and each inspection shall be clearly identified as a 3rd party inspection.

Each 3rd party inspection report must clearly document the following:

(i) Name of 3rd party inspection company.

(ii) Date of inspection.

(iii) Condition of the treatment unit(s) at the time of inspection.

(iv) Description of maintenance activities performed during the inspection.

(v) Date- and time-stamped photographs of the inside of the vault unit(s) before and after maintenance activities.

(7) An Enforcement Response Plan (ERP) for all O&M inspections that serves as a reference document for inspection staff so that consistent enforcement actions can be taken to bring development projects into compliance. At a minimum, the ERP must contain the following:

(a) Enforcement Procedures – A description of the Permittee's procedures from the discovery of problems through the confirmation of implementation of corrective actions. This shall include guidance for recognizing common problems with the different types of pervious pavement systems, stormwater treatment systems, and/or HM controls, remedies for the problems, and appropriate enforcement actions, followup inspections, and appropriate time periods for implementation of corrective actions, and the roles and responsibilities of staff responsible for implementing the ERP.

(b) Enforcement Tools and Field Scenarios – A discussion of the various, escalating enforcement tools appropriate for different field scenarios of problems identified with the pervious pavement systems, stormwater treatment systems, and/or HM controls as well as for different types of inadequate response to enforcement actions taken.

(c) Timely Correction of Identified Problems – A description of the Permittee's procedures for assigning due dates for corrective actions. Permittees shall require timely correction of all identified problems with the pervious pavement systems, stormwater treatment systems, and/or HM controls.

Corrective actions shall be implemented no longer than 30 days after a problem is identified by an inspector. Corrective actions can be temporary and more time may be allowed for permanent corrective actions. If more than 30 days are required for compliance, a rationale shall be recorded in the electronic database or equivalent tabular system.

**iii. Due Date for Implementation:** Immediate, except as follows:

(1) July 1, 2016, for Provision C.3.h.ii.(6) and all requirements pertaining to pervious pavement systems in Provisions C.3.h.ii.(1)-(5), C.3.h.iv., and C.3.h.v.

(2) July 1, 2017, for Provision C.3.h.ii.(7).

**iv. Maintenance Approvals:** The Permittees shall ensure that all pervious pavement systems that total 3,000 square feet or more (excluding private-use patios for single family homes, townhomes, or condominiums), stormwater treatment systems, and HM controls installed onsite, offsite, or at a joint or Regional Project by development proponents are properly operated and maintained for the life of the projects. In cases where the responsible party for a pervious pavement system, stormwater treatment system or HM control has

worked diligently and in good faith with the appropriate State and federal agencies to obtain approvals necessary to complete maintenance activities, but these approvals are not granted, the Permittees shall be deemed to be in compliance with this Provision. Permittees shall ensure that constructed wetlands installed by Regulated Projects and used for urban runoff treatment shall abide by the Water Board's Resolution No. 94-102: Policy on the Use of Constructed Wetlands for Urban Runoff Pollution Control and the O&M requirements contained therein.

**v. Reporting**

(1) The database or equivalent tabular format required in Provisions C.3.b.ii.(4) and (5) shall be maintained by the Permittees. Upon request from the Executive Officer, information from this database or equivalent tabular format shall be submitted to Water Board staff for review. The requested information may include specific details on each inspection conducted within particular timeframes, such as several fiscal years.

(2) On an annual basis, before the wet season, provide a list of newly installed (installed within the reporting period) stormwater treatment systems and HM controls to the local mosquito and vector control agency and the Water Board. This list shall include the facility locations and a description of the stormwater treatment measures and HM controls installed.

(3) Each Permittee shall report the following information in the Annual Report each year:

(a) Total number of Regulated Projects in the Permittee's database or tabular format as of the end of the reporting period (fiscal year).

(b) Total number of Regulated Projects, offsite projects, and Regional Projects inspected during the reporting period (fiscal year).

(c) Percentage of the total number of Regulated Projects that were inspected during the reporting period (fiscal year).

(d) A discussion of the inspection findings for the year and any common problems encountered with various types of pervious pavement systems, treatment systems and/or HM controls. This discussion should include a general comparison to the inspection findings from the previous year.

(e) A discussion of the effectiveness of the Permittee's O&M Program and any proposed changes to improve the O&M Program (e.g., changes in prioritization plan or frequency of O&M inspections, other changes to improve effectiveness of program).

(f) For the 2016 Annual Report, Permittees may report on the total number and percentage of treatment and HM controls inspected, and exclude discussion of inspection findings for pervious pavement systems.

(4) Each Permittee shall certify in the 2017 Annual Report that an Enforcement Response Plan has been completed by July 1, 2017.

### C.3.i. Required Site Design Measures for Small Projects and Detached Single-Family Home Projects

**i. Task Description –** The Permittees shall require all development projects, which create and/or replace $\geq$ 2,500 ft$^2$ to < 10,000 ft$^2$ of impervious surface, and detached single-family home projects,[11] which create and/or replace 2,500 square feet or more of impervious surface, to install one or more of the following site design measures:

- Direct roof runoff into cisterns or rain barrels for reuse.
- Direct roof runoff onto vegetated areas.
- Direct runoff from sidewalks, walkways, and/or patios onto vegetated areas.
- Direct runoff from driveways and/or uncovered parking lots onto vegetated areas.
- Construct sidewalks, walkways, and/or patios with permeable surfaces.[2]
- Construct bike lanes, driveways, and/or uncovered parking lots with permeable surfaces.[2]

This provision applies to all development projects that require approvals and/or permits issued under the Permittees' planning, building, or other comparable authority.

**ii. Reporting –** On an annual basis, discuss the implementation of the requirements of Provision C.3.i, including ordinance revisions, permit conditions, development of standard specifications and/or guidance materials, and staff training.

### C.3.j. Green Infrastructure Planning and Implementation

**i. Task Description –** The Permittees shall complete and implement a Green Infrastructure Plan for the inclusion of low impact development drainage design into storm drain infrastructure on public and private lands, including streets, roads, storm drains, parking lots, building roofs, and other storm drain infrastructure elements.

(1) The Plan is intended to serve as an implementation guide and reporting tool during this and subsequent Permit terms to provide reasonable assurance that urban runoff TMDL wasteload allocations (e.g., for the San Francisco Bay mercury and PCBs TMDLs) will be met, and to set goals for reducing, over the long term, the adverse water quality impacts of urbanization and urban runoff on receiving waters. For this Permit term, the Plan is being required, in part, as an alternative to expanding the definition of Regulated Projects prescribed in Provision C.3.b to include all new and redevelopment projects that create or replace 5,000 square feet or more of impervious surface areas and road projects that just replace

---

[11] **Detached single-family home project** – The building of one single new house or the addition and/or replacement of impervious surface to one single existing house, which is not part of a larger plan of development.

THESE PAGES REMOVED FROM THIS EXCERPT

# C.4. Industrial and Commercial Site Controls

Each Permittee shall implement an industrial and commercial site control program at all sites that could reasonably be considered to cause or contribute to pollution of stormwater runoff. Permittees shall conduct inspections, effective followup, and enforcement to abate potential and actual non-stormwater discharges, consistent with each Permittee's respective Enforcement Response Plan. These combined efforts will prevent the discharge of pollutants and impacts to beneficial uses of receiving waters. Inspections shall confirm implementation of appropriate and effective BMPs and other pollutant controls by industrial and commercial site operators.

## C.4.a. Legal Authority for Effective Site Management

**i. Task Description –** Permittees shall have sufficient legal authority to inspect, require effective stormwater pollutant control, and implement progressively stricter enforcement to achieve expedient compliance and pollutant abatement at commercial and industrial sites within their jurisdiction.

**ii. Implementation Level –** Permittees shall have the legal authority to oversee, inspect, and require expedient compliance and pollution abatement at all industrial and commercial sites which may be reasonably considered to cause or contribute to pollution of stormwater runoff. Permittees shall have the legal authority to require implementation of appropriate BMPs at industrial and commercial facilities to address pollutant sources associated with outdoor process and manufacturing areas; outdoor material storage areas; outdoor waste storage and disposal areas; outdoor vehicle and equipment storage and maintenance areas; outdoor parking areas and access roads; outdoor wash areas; outdoor drainage from indoor areas, rooftop equipment; and contaminated and erodible surface areas; and other sources determined by the Permittees or the Water Board Executive Officer to have a reasonable potential to contribute to pollution of stormwater runoff.

## C.4.b. Industrial and Commercial Business Inspection Plan (Inspection Plan)

**i. Task Description –** Permittees shall continue to update and implement an Inspection Plan that will serve as a prioritized inspection workplan. This Inspection Plan will allow inspection staff to categorize the commercial and industrial sites within the Permittee's jurisdiction by pollutant threat and inspection frequency, change inspection frequency based on site performance, and add and remove sites as businesses open and close.

**ii. Implementation Level**

(1) Facilities For Prioritization Into Inspection Plan

Commercial and industrial facilities with the functional aspects and types described below, and other facilities identified by the Permittees as reasonably likely to contribute to pollution of stormwater runoff, shall be prioritized for inspection on the basis of the potential for water quality impact using criteria such as pollutant sources on site, pollutants of

concern, proximity to a waterbody, potential and actual discharge history of the facility, and other relevant factors. The following are some of the functional aspects of businesses and types of businesses that shall be included in the Inspection Plan:

(a) Sites that include the following types of functions that may produce pollutants when exposed to stormwater include, but are not limited to:

- Outdoor process and manufacturing areas
- Outdoor material storage areas
- Outdoor waste storage and disposal areas
- Outdoor vehicle and equipment storage and maintenance areas
- Outdoor wash areas
- Outdoor drainage from indoor areas
- Rooftop equipment
- Other sources determined by the Permittee or Water Board as reasonably likely to contribute to pollution of stormwater runoff.

(b) The following types of industrial and commercial businesses that have a reasonable likelihood to be sources of pollutants to stormwater and non-stormwater discharges:

- Industrial facilities, as defined at 40 CFR 122.26(b)(14), including those subject to the Statewide NPDES General Permit for Stormwater Discharges Associated with Industrial Activity (hereinafter the Industrial General Permit);
- Vehicle Salvage yards;
- Metal and other recycled materials collection facilities, and waste transfer facilities;
- Vehicle mechanical repair, maintenance, fueling, or cleaning facilities;
- Building trades central facilities or yards, corporation yards;
- Nurseries and greenhouses;
- Building material retailers and storage;
- Plastic manufacturers; and
- Other facilities designated by the Permittee or Water Board to be reasonably likely to contribute to pollution of stormwater runoff.

(2) Inspection Plan – The Inspection Plan shall be updated annually and shall contain the following information:

(a) A description of the process for prioritizing inspections and frequency of inspections. The prioritization criteria shall assign a more frequent inspection schedule to the highest priority facilities per Provision C.4.b.ii.(1). If any geographical areas are to be targeted for

inspections due to high potential for stormwater pollution, these areas should be indicated in the Inspection Plan.

(b) Assign appropriate inspection frequency for each industrial and commercial facility based on the priority established in Provision C.4.b.ii.(2)(a) above, potential for contributing pollution to stormwater runoff, and commensurate with the threat to water quality.

(c) A mechanism to include new businesses that warrant inspections.

(d) Total number and a list of all industrial and commercial facilities requiring inspections, within each Permittee's jurisdiction, based on the prioritization criteria established in Provision C.4.(b)ii.(2)(a). This list shall be updated annually.

(e) List of facilities scheduled for inspection each fiscal year of the MRP permit term. Each fiscal year's inspection list shall be added to the Inspection Plan at the beginning of the fiscal year as part of the annual update. Previous fiscal years' inspection lists shall remain in the Inspection Plan.

(3) **Record Keeping –** For each facility identified in Provision C.4.b.ii.(2)(d), the Permittee shall maintain a database or equivalent tabular system of at least the following information:

(a) Name and address of the business and local business operator;

(b) A brief description of business activity or pollutant source, including SIC code. Examples: outdoor process/manufacturing areas, outdoor material storage areas, outdoor waste storage and disposal areas, outdoor vehicle and equipment storage and maintenance areas, outdoor parking areas and access roads, outdoor wash areas, rooftop equipment, and outdoor drainage from indoor areas;

(c) Inspection priority and inspection frequency; and

(d) If coverage under the Industrial General Permit is required.

**iii. Reporting –** The Permittees shall include the list of all industrial and commercial facilities requiring inspections identified in Provision C.4.b.ii.(2)(d) in each Annual Report.

## C.4.c. Enforcement Response Plan (ERP)

**i. Task Description –** Each Permittee shall implement and update, as needed, its ERP – a reference document for inspection staff to take consistent actions to achieve timely and effective compliance from all commercial and industrial site operators.

**ii. Implementation Level –** The ERP shall contain the following:

(1) Enforcement Procedures – A description of the Permittee's procedures, from the discovery of problems through the confirmation of implementation of corrective actions. This shall include guidance for appropriate enforcement actions, followup inspections, referrals to another agency, appropriate time periods for implementation of corrective actions,

and the roles and responsibilities of staff responsible for implementing the ERP.

(2) Enforcement Tools and Field Scenarios – A discussion of the various, escalating enforcement tools for different field scenarios, including, but not limited to potential discharges (e.g., housekeeping issues, evidence of actual non-stormwater discharges, lack of BMPs, inadequate BMPs, and inappropriate BMPs), actual non-stormwater discharges, non-compliance with previous enforcement actions, and sites with a history of potential and/or actual non-stormwater discharges.

(3) Timely Correction of Potential and Actual Non-stormwater Discharges – A description of the Permittee's procedures for assigning due dates for corrective actions. Permittees shall require timely correction of all potential and actual non-stormwater discharges. Permittees shall require active non-stormwater discharges to cease immediately. Corrective actions shall be implemented before the next rain event, but no longer than 10 business days after the potential and/or actual non-stormwater discharges are discovered. Corrective actions can be temporary and more time can be allowed for permanent corrective actions. If more than 10 business day are required for compliance, a rationale shall be recorded in the electronic database or equivalent tabular system.

(4) Referral and Coordination with Other Agencies – Each Permittee shall enforce its stormwater ordinances to achieve compliance at sites with observed potential and actual non-stormwater discharges required in Discharge Prohibition A.1. For cases in which Permittee enforcement tools are inadequate to remedy the noncompliance, the Permittee shall refer the case to the Water Board, district attorney, or other relevant agencies for additional enforcement.

## C.4.d. Inspections

**i. Task Description** – Each Permittee shall conduct inspections according to the Inspection Plan in Provision C.4.b.ii.(2) and the ERP in Provision C.4.c.ii. to enforce its ordinance to prevent stormwater pollution.

**ii. Implementation Level**

(1) Inspections – Inspections shall be conducted to include at least the following activities:

(a) Observations for appropriate BMPs to prevent stormwater runoff pollution or illicit discharge;

(b) Observations for evidence of unauthorized discharges, illicit connections, and potential discharge of pollutants to stormwater;

(c) Observations for noncompliance with Permittee ordinances and other local requirements; and

(d) Verification of coverage under the Industrial General Permit, if applicable.

(2) Record Keeping – Permittees shall maintain adequate records to demonstrate compliance and appropriate followup enforcement responses for facilities inspected. Permittees shall maintain an electronic database or equivalent tabular system that contains the following information regarding industrial and commercial site inspections:

(a) Name of facility/site inspected

(b) Inspection date

(c) Industrial General Permit coverage required (Yes or No)

(d) Compliance status

(e) Specific problems

(f) Type of enforcement (if applicable)

(g) Problem resolution date

(h) Additional comments

The electronic database or equivalent tabular system shall be made readily available to Water Board staff or its representative during inspections and audits.

(3) Data Evaluation – Permittees shall evaluate the frequency of potential and actual non-stormwater discharges by business category. Note trends and, as needed, implement focused inspections or education in subsequent years to address trends.

**iii. Reporting**

(1) Permittees shall include the following information in the 2015-2016 Annual Report:

(a) Number of inspections conducted, Number of violations issued (excluding verbal warnings), Percentage of sites inspected in violation, and number and percent of violations resolved within 10 working days or otherwise deemed resolved in a longer, but still timely manner;

(b) Frequency and types/categories of violations observed, Frequency and type of enforcement conducted;

(c) Summary of types of violations noted by business category; and

(d) Facilities that are required to have coverage under the Industrial General Permit, but have not filed for coverage.

(2) Beginning with the 2016-2017 Annual Report, Permittees shall include the following information in each Annual Report:

(a) Number of inspections conducted;

(b) Number of each type of enforcement action, as listed in each Permittee’s ERP, issued;

(c) Number of enforcement actions or discreet number of potential and actual discharges fully resolved within 10 working days or otherwise deemed resolved in a longer, but still timely manner;

(d) Frequency of potential and actual non-stormwater discharges by business category; and

(e) A list of facilities that are required to have coverage under the Industrial General Permit, but have not filed for coverage.

## C.4.e. Staff Training

**i.** **Task Description –** Permittees shall provide focused training for industrial and commercial site inspectors and illicit discharge detection and elimination inspectors annually. Trainings may be program-wide, region-wide, or Permittee-specific.

**ii.** **Implementation Level –** At a minimum, provide inspection training, within the 5-year term of this Permit, in the following topics:

(1) Urban runoff pollution prevention;

(2) Inspection procedures;

(3) Business Inspection Plan;

(4) Enforcement Response Plan;

(5) Illicit Discharge Detection and Elimination; and

(6) Appropriate BMPs to be used at different industrial and commercial facilities.

**iii.** **Reporting –** The Permittees shall include the following information in each Annual Report:

(1) Dates of training;

(2) Training topics covered;

(3) Percentage of industrial and commercial site inspectors attending training; and

(4) Percentage of Illicit Discharge, Detection, and Elimination inspectors attending training.

# C.5. Illicit Discharge Detection and Elimination

The purpose of this provision is to implement the illicit discharge prohibition and to ensure illicit discharges are detected and controlled that are not otherwise controlled under provisions C.4. – Industrial and Commercial Site Controls and C.6. – Construction Site Controls. Permittees shall implement an illicit discharge program that includes an active surveillance component and a centralized complaint collection and followup component to detect and eliminate illicit discharges into the MS4. Permittees shall maintain a complaint tracking and followup data system as their primary accountability reporting for this provision.

## C.5.a. Legal Authority

i. **Task Description –** Permittees shall have the legal authority to prohibit and control illicit discharges and implement progressively stricter enforcement to achieve expedient compliance.

ii. **Implementation Level**

(1) Permittees shall have adequate legal authority to address illicit discharges to the MS4, including, but not limited to, the following:

(a) Sewage;

(b) Discharges of wash water resulting from the cleaning of exterior surfaces and pavement, or the equipment and other facilities of any commercial business, or any other public or private facility, including discharges from mobile cleaning businesses;

(c) Discharges of runoff from material storage areas, including those containing chemicals, fuels, or other potentially polluting or hazardous materials;

(d) Discharges of pool or fountain water containing chlorine, biocides, or other chemicals; discharges of pool or fountain filter backwash water;

(e) Discharges of sediment, pet waste, vegetation clippings, or other landscape or construction-related wastes; and

(f) Discharges of food-related wastes (e.g., grease, fish processing wastes, restaurant kitchen mat and trash bin wash water).

(2) Permittees shall have adequate legal authority to prohibit, discover through inspection and surveillance, and eliminate illicit connections and discharges to the MS4.

(3) Permittees shall have adequate legal authority to control the discharge of spills, dumping, or disposal of materials other than storm water to the MS4.

## C.5.b. Enforcement Response Plan (ERP)

i. **Task Description –** Each Permittee shall implement and update, as needed, its ERP – a reference document for inspection staff to take consistent actions to

achieve timely and effective abatement of illicit discharges and compliance from responsible parties.

**ii. Implementation Level –** The ERP shall contain the following:

(1) Enforcement Procedures – A description of the Permittee's procedures from the discovery of a problem through the confirmation of implementation of corrective actions. This shall include guidance for appropriate enforcement actions, followup inspections, referrals to another agency, appropriate time periods for implementation of corrective actions, and the roles and responsibilities of staff responsible for implementing the ERP.

(2) Enforcement Tools and Field Scenarios – A discussion of the various, escalating enforcement tools for different field scenarios, including, but not limited to potential discharges (e.g., housekeeping issues, evidence of actual discharges, lack of BMPs, inadequate BMPs, and inappropriate BMPs), actual discharges, non-compliance with previous enforcement actions, and sites with a history of potential and/or actual discharges.

(3) Timely Correction of Potential and Actual Discharges – A description of the Permittee's procedures for assigning due dates for corrective actions. Each Permittee shall require timely correction of all potential and/or actual discharges. Active discharges shall be required to cease immediately. Corrective actions shall be implemented before the next rain event, but no longer than 10 business days after the potential and/or actual discharges are discovered. Corrective actions can be temporary and more time can be allowed for permanent corrective actions. If more than 10 business days are required for compliance, a rationale shall be recorded in the electronic database or equivalent tabular system.

### C.5.c. Spill, Dumping, and Complaint Response Program

**i. Task Description –** Each Permittee shall implement a program to respond to spills, dumping, and complaints.

**ii. Implementation Level**

(1) Each Permittee shall have a central contact point for the public and Permittee's staff to report spills, dumping, and complaints. At a minimum, this central contact point shall include a phone number. Permittee shall also include, as feasible, user friendly web reporting for spills and dumping.

(2) Each Permittee shall publicize the phone number and web reporting address, if used, to internal Permittee's staff and the public. The Permittee's website shall be one of the places the central contact point is publicized. The Permittee's website shall be updated with the central contact point to report spills and dumping by June 30, 2016. This central contact point shall be readily searchable on the Permittee's website.

(3) Each Permittee shall require its municipal staff conducting routine maintenance and inspection activities to report illicit discharges found during their activities to the central contact point so that illicit discharge staff can investigate and track.

(4) Each Permittee shall maintain and update, as needed, a spill, dumping, and complaint response flow chart and/or phone tree for the Permittee's staff responsible for the spill and dumping response program. At a minimum, this flow chart and/or phone tree shall identify staff or positions responsible for receiving the complaints and investigating and abating the complaints.

(5) Each Permittee shall maintain and update, as needed, a spill, dumping, and complaint response flow chart and phone tree or contact list for internal use that shows the various responsible agencies and their contacts, who would be involved in illicit discharge incident response that goes beyond the Permittee's immediate capabilities.

(6) Each Permittee shall conduct reactive inspections in response to spill, dumping, and complaint reports and shall also conduct followup inspections, as needed, to ensure that corrective measures have been effectively implemented to achieve and maintain compliance.

**iii. Reporting** – Permittees shall provide the following information in the 2016 and 2020 Annual Reports:

(1) The spill and dumping reporting phone number and the web address, if used;

(2) A screen shot of the Permittee's website showing the central contact point; and

(3) A discussion of how the central contact point – spill and dumping reporting phone number and, if used, the web address – is being publicized to Permittees' staff and the public.

## C.5.d. Tracking and Case Followup

**i. Task Description –** All incidents or discharges reported to the spill, dumping, and complaints central contact point, that might discharge into the MS4, shall be logged to track followup and response through problem resolution. The data collected shall be sufficient to demonstrate escalating responses for repeated problems and inter/intra-agency coordination, where appropriate. It is not necessary to track and report data according to this provision if they are tracked and reported according to State Water Resource Control Board Order No. 2006-0003-DWQ.

**ii. Implementation Level –** Maintain a water quality spills, dumping, and complaints tracking and followup in an electronic database or equivalent tabular system.

The spill and discharge complaint tracking system shall contain the following information:

(1) Complaint information:
  (a) Date and time of complaint,
  (b) Type of pollutant, and
  (c) Problem Status (potential or actual discharge.).

(2) Investigation information:
  (a) Date and time started,
  (b) Type of pollutant,
  (c) Entered storm drain and/or receiving water,
  (d) Date and time abated, and
  (e) Type of enforcement based on the Permittee's ERP.

The electronic database or equivalent tabular system shall be made available to Water Board staff or representatives during audits or inspections.

**iii. Reporting –** Permittees shall provide the following information in the Annual Report:

(1) Number of discharges reported;

(2) Number of discharges reaching storm drains and/or receiving waters; and

(3) Number discharges resolved in a timely manner.

**C.5.e. Control of Mobile Sources**

**i. Task Description –** Permittees shall have oversight and control of pollutants associated with mobile businesses.

**ii. Implementation Level –** Each Permittee shall implement a program to reduce the discharge of pollutants from mobile businesses.

(1) The program shall include the following:
  (a) Implementation of minimum standards and BMPs for each of the various types of mobile businesses, such as automobile washing, power washing, steam cleaning, and carpet cleaning.
  (b) Implementation of an enforcement strategy that specifically addresses the unique characteristics of mobile businesses.
  (c) Regularly updating mobile business inventories.
  (d) Implementation of an outreach and education strategy to mobile businesses operating within the Permittee's jurisdiction.
  (e) Inspection of mobile businesses, as needed.

(2) Permittees may cooperate county-wide and/or region-wide with the implementation of their programs for mobile businesses, including sharing

of mobile business inventories, BMP requirements, enforcement action information, and education.

**iii. Reporting**

(1) In the 2017 Annual Report, each Permittee shall provide the following: (a) minimum standards and BMPs for each of the various types of mobile businesses; (b) its enforcement strategy; (c) a list and summary of the specific outreach events and education conducted to the different types of mobile businesses operating within the Permittee's jurisdiction; (d) the number of inspections conducted at mobile businesses and/or job sites in 2016-2017; (e) discuss enforcement actions taken against mobile businesses in 2016-2017; (f) Permittee's inventory of mobile businesses operating within the Permittee's jurisdiction; and (g) a list and summary of the county-wide or regional activities conducted, including sharing of mobile business inventories, BMP requirements, enforcement action information, and education (Permittees' annual reports may refer to the county-wide or regional reports for this information.).

(2) In the 2019 Annual Report, each Permittee shall include at least the following: (a) changes to minimum standards and BMPs for each of the various types of mobile businesses since the 2017 Annual Report; (b) changes to the Permittee's enforcement strategy; (c) minimum standards and BMPs developed for additional types of mobile businesses; (d) a list and summary of specific outreach events and education conducted to each type of mobile businesses operating within the Permittee's jurisdiction during the Permit term; (e) a discussion of the inspections conducted at mobile businesses and/or job sites; (f) Permittee's inventory of mobile businesses operating within the Permittee's jurisdiction; and (g) a discussion of the enforcement actions taken against mobile businesses during the permit term.

## C.5.f. Municipal Separate Storm Sewer System (MS4) Map

**i. Task Description –** Each Permittee shall make the map(s) of its MS4 available.

**ii. Implementation Level –** Permittees shall make maps of the MS4 publicly available, either electronically or in hard copy. Public availability shall be made through a single point of contact that is convenient for the public, such as a staffed counter or web accessible maps. The MS4 map availability shall be publicized through Permittee directories and web pages.

**iii. Reporting –** In the 2016 and 2019 Annual Reports, Permittees shall discuss how they make MS4 maps available to the public and how they publicize the availability of the MS4 maps.

THESE PAGES REMOVED FROM THIS EXCERPT THESE PAGES REMOVED FR