# EXHIBIT 6

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

*City of Santa Clara, CA*
*Friday, October 16, 2026*

# Title 13. Public Services

# Chapter 13.10. SEWERS

[1] *Cross references – Water, Chapter 13.15 SCCC; Storm Drains and Discharges, Chapter 13.20 SCCC; Buildings and Construction, SCCC Title **15**.*

## Article I. GENERAL PROVISIONS

### § 13.10.010. Purpose.

**(a)** Purpose.

**(1)** To provide for and regulate the disposal of sanitary sewage into the sanitary sewer system of the City in such manner and to such extent as is reasonably necessary to maintain and increase the ability of the sanitary sewer system to handle and dispose of sanitary sewage;

**(2)** To provide for and regulate the disposal of industrial wastes into the sanitary sewer system of the City in such manner and to such extent as may be reasonably necessary to maintain and increase the ability of such system to handle and dispose of industrial waste without decreasing the ability of said system to handle and dispose of all sanitary sewage;

**(3)** To prevent the introduction of pollutants into the sanitary sewer system that will pass through the treatment works of the San Jose/Santa Clara Water Pollution Control Plant ("plant") or otherwise be incompatible with such works or interfere with the ability of the plant to treat, discharge, and recycle wastewater, or to use or dispose of plant biosolids;

**(4)** To improve opportunities to recycle and reclaim treated effluent and wastewater sludge;

**(5)** To protect the physical structures of the sanitary sewer system and the efficient functioning of its component parts;

**(6)** To protect the City and its personnel;

**(7)** To preserve and protect the health, safety, and property of the public;

**(8)** To enable the City to comply with all applicable and compatible laws, rules, regulations, and orders of the State of California and of the United States;

**(9)** To provide for the charging and collection of various fees and other charges reasonably necessary for the acquisition, construction, reconstruction, maintenance, and operation of the sanitary sewer system of the City;

**(10)** To protect the environmental health of San Francisco Bay.

**(b)** Conflicts with Other Chapters of This Code. In the event of any conflicts or inconsistencies between the provisions of this chapter and the provisions of any other chapter of this Code, the provisions of this chapter shall control.

**(c)** Responsibility for Enforcement. The primary responsibility for enforcement of the provisions of this chapter shall be vested in the City Manager or his/her designee.
(Ord. 1901 § 2, 11-27-2012)

### § 13.10.020. Definitions.

The definitions set forth below shall govern the application and interpretation of this chapter.

**(a)** "A" definitions:

**(1)** **"Amalgam separator"**
means a device that: employs filtration, settlement, centrifugation, or ion exchange to remove dental amalgam and its metal constituents from a dental office vacuum system before it discharges to the sanitary sewer; has been certified under the International Organization for Standardization's standard for amalgam separators as capable of removing a minimum of ninety-five percent (95%) of dental amalgam at flow rates comparable to the flow rate of the actual vacuum suction system in operation; and does not have any automatic flow bypass.

**(2) "Ammonia"**
means the form of nitrogen that is chemically definable as $NH_3$.

**(3) "Audit protocols"**
means the procedures to be followed in performing flow and pollutant audit studies.

**(4) "Authorized or duly authorized representative of the user"**
means:

**(A)** For a corporation:

**(i)** The president, secretary, treasurer, or a vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision-making functions for the corporation; or

**(ii)** The manager of one or more manufacturing, production, or operating facilities if the following criteria are met:

**a.** The manager is authorized to make management decisions that govern the operation of the regulated facility including having the explicit or implicit duty of making major capital investment recommendations, and initiating and directing other comprehensive measures to assure long-term environmental compliance with environmental laws and regulations;

**b.** The manager can ensure that the necessary systems are established or actions taken to gather complete and accurate information for individual wastewater discharge permit requirements; and

**c.** The manager has the assigned or delegated authority to sign documents in accordance with corporate procedures.

**(B)** For a partnership or sole proprietorship: a general partner or proprietor, respectively.

**(C)** For a Federal, State, or local governmental facility: a director or highest official appointed or designated to oversee the operation and performance of the activities of the government facility, or their designee.

**(D)** The individuals described in subsections (a)(4)(A) through (C) of this section may designate a duly authorized representative in writing, specifying the individual or position responsible for the overall operation of the facility from which the discharge originates or having overall responsibility for environmental matters for the company, and submitting the authorization to the Director.

**(5) "Average concentration"**
means the concentration of a pollutant in an industrial user's discharge that is calculated by adding the concentrations of the particular pollutant in all composite samples taken during a given time period, including, but not limited to, self-monitoring samples, and dividing the total by the number of samples taken.

**(b)** "B" definitions:

**(1) "Baseline monitoring report"**
means a report which shall include all requirements of Federal regulation, including but not limited to 40 CFR Section **403.12(b)**, and:

**(A)** For new sources and sources that become industrial users subsequent to the promulgation of an applicable categorical standard, submitted at least ninety (90) days prior to commencement of discharge and containing identifying information, environmental permits in place, a description of operations, flow measurements, measurements of pollutants, and the pretreatment a new source intends to use to meet the applicable standards, including estimates of measurements;

**(B)** For existing industrial users, submitted within one hundred eighty (180) days after the effective date of a categorical pretreatment standard, or after the final administrative decision, and shall contain, at a minimum, identifying information, environmental permits in place, a description of operations, flow measurements, a measurement of pollutants, proper certification, and a compliance schedule as necessary.

**(2) "Batch discharge"**
means the discharge of wastewater resulting from an intermittent treatment process in which an identified amount of process wastewater is collected, treated to meet discharge standards, and released to the sanitary sewer system.

**(3) "Best management practices"**
means schedules of activities, prohibitions of practices, maintenance procedures, and other management practices, such as standard operating procedures, general good housekeeping, or pollution prevention practices to prevent or reduce the introduction of pollutants to either the sanitary sewer or storm drain system that have been determined by the Director to be cost-effective for particular industry groups, business types, or specific industrial processes. Best management practices may also include approved alternative means (e.g., management plans) of complying with Federal, State or local regulations.

**(4) "Biochemical oxygen demand"**
means the quantity of oxygen expressed in parts per million (ppm) by weight, utilized in the biochemical oxidation of organic matter under standard laboratory conditions for five days at a temperature of twenty degrees centigrade (20º C).

**(c)** "C" definitions:

**(1) "Categorical industrial user" or "CIU"**
means a source performing any categorical process subject to Federal pretreatment standards, as described in 40 CFR Parts **405** through **471**, as amended from time to time, that has any connection to the sanitary sewer system.

**(2) "Categorical pretreatment standard" or "categorical standard"**
means any regulation containing pollutant discharge limits promulgated by EPA that apply to specific categories of users and which appear in 40 CFR Parts **405** through **471**, as amended from time to time.

**(3) "Clean Water Act"**
is the 1972 amendment to the Federal Water Pollution Control Act, 33 U.S.C. Section **1251** et seq. The Act is the primary legislation concerning water pollution and its regulation. The Act establishes a permit system that must be used by point sources of pollution such as industrial facilities, government facilities, and agricultural operations. These point sources are not allowed to discharge or dispose of the pollutants they produce in surface water without a permit from the National Pollutant Discharge Elimination System (NPDES).

**(4) "Code of Federal Regulations"**
(or "CFR") refers to the Code of Federal Regulations as published by the Office of the Federal Register National Archives and Records Administration. Whenever a reference is made to any portion of the CFR, or to any other Federal regulation, such reference shall apply to all amendments and additions to such portion of said regulations now or hereinafter enacted.

**(5) "Composite sample"**
means a flow-proportional or time-proportional sample, which accurately represents the average pollutant concentration discharged during a continuous time period. A composite sample may be obtained manually or automatically, and it may be taken discretely or continuously. For manual composite sampling, at least six individual samples from each sample point shall be combined and mixed to obtain one composite sample; flow-proportion may be obtained either by varying the time interval between each discrete sample or the volume of each discrete sample.

**(6) "Continuous discharge"**
means a discharge which occurs without interruption throughout the operating hours of the facility, except for infrequent shutdowns for maintenance, process changes, or other similar activities.

**(7) "Critical user"**
means a discharger whose wastewater contains priority pollutants, or who discharges any waste which has the potential to cause interference in concentration above those allowed in this chapter and/or who discharges in excess of one hundred thousand (100,000) gallons per day.

**(d)** "D" definitions:

**(1) "Dental amalgam"**
means an alloy of mercury with another metal used by dentists to fill cavities in teeth.

**(2) "Diluting waters"**
means noncontact cooling water, boiler blowdown, domestic sewage, groundwater, stormwater, surface drainage, reverse osmosis reject, water softener regeneration, potable waters, or any other waters that are not part of an industrial process and that do not contain priority pollutants but are combined with industrial wastewater prior to the monitoring point for industrial wastewater discharge. "Diluting waters" also includes excess water used in production processes, such as rinse tanks or rinse water running when in production in excess of operational or quality requirements.

**(3) "Director,"**
for purposes of this chapter, shall mean the Director of Water and Sewer Utilities or his/her designee.

**(4) "Discharger"**
means any person discharging wastewater into the sanitary sewer system.

**(5) "Domestic wastewater"**
means wastewater from private residences and other premises resulting from the use of water for personal washing, sanitary purposes and/or the elimination of human wastes and related matter.

**(e)** "E" definitions:

**(1) "Enforcement response plan"**

means the City's plan used to guide enforcement actions taken in response to violations of this Code.

**(2) "Existing source"**
means any source of discharge that is not a new source.

**(f)** "F" definitions:

**(1) "Food service establishment"**
means a user that prepares and/or sells food for consumption either on or off the premises or washes utensils or dishes on premises that may contribute grease to the sewer system, including, but not limited to, restaurants, sandwich shops, delicatessens, bakeries, cafeterias, markets, bed and breakfast inns, motels, hotels, meeting halls, caterers, retirement and nursing homes or pizzerias. The term, as used in this chapter, does not refer to food stores or establishments that do not prepare food on premises and do not process food in a manner which may contribute grease to the sewer system.

**(g)** "G" definitions:

**(1) "Garbage"**
means wastes from the preparation, cooking, and dispensing of foods, and from the handling, storage, and sale of produce.

**(2) "Grab sample"**
means a single discrete sample collected at a particular time and place that represents the composition of the waste stream only at that time and place.

**(3) "Grease"**
means liquid or other waste containing floatable and/or dispersed grease, vegetable oil, petroleum oil, nonbiodegradable cutting oil, or fat, oil or grease products of animal, vegetable or mineral origin which is detectable and measurable using analytical test procedures established in the United States Code of Federal Regulations, 40 CFR Section **136**.

**(4) "Grease control device"**
means a grease interceptor, grease trap, mechanical grease removal device or other device approved for use by the Director.

**(5) "Grease interceptor"**
means a large tank installed underground and designed to collect and control solid food wastes and floating grease from wastewater prior to discharge into the sanitary sewer collection system. Grease interceptors are normally installed outside the building and use gravity to separate grease from the wastewater as it moves from one compartment of the interceptor to the next.

**(6) "Grease trap"**
means a device placed under or in close proximity to sinks or other fixtures likely to discharge grease in an attempt to separate, trap and hold oil and grease substances.

**(h)** Reserved for future use.

**(i)** "I" definitions:

**(1) "Indirect discharge" or "discharge"**
means the introduction of pollutants or any discharge of wastewater to the sanitary sewer system.

**(2) "Industrial user"**
means any nonresidential user that discharges industrial wastes to the sanitary sewer system.

**(3) "Industrial wastes"**
means the wastes from producing, manufacturing, and processing operations of every kind and nature.

**(4) Interference.**

**(A)** "Interference" means a discharge that, alone or in conjunction with a discharge or discharges from other sources, inhibits or disrupts the processes or operation of the sanitary sewer system, including the plant, or causes or significantly contributes to a violation of any requirement of the National Pollutant Discharge Elimination System (NPDES) permit, which is a permit issued to the City pursuant to Section 402 of the Clean Water Act.

**(B)** "Interference" also includes prevention of biosolids use or disposal by the plant in accordance with published regulations providing guidelines under Section 405 of the Federal Clean Water Act (33 U.S.C. Sections **1251** through **1387**) or in regulations developed pursuant to the Solid Waste Disposal Act (SWDA) (42 U.S.C. Section **6901** et seq.), the Toxic Substances Control Act (15 U.S.C. Sections **2601** through **2654**), or more stringent State regulations (including those contained in any State biosolids management plan prepared pursuant to Title IV of SWDA) applicable to the method of disposal or use employed by the plant.

**(j)** Reserved for future use.

**(k)** Reserved for future use.

**(l)** "L" definitions:

**(1)** **"Low flow discharger"**
means an industrial discharger whose average process flow, as shown on the discharger's application to discharge and as measured as a rolling six-month average, is less than one thousand (1,000) gallons per day.

**(m)** "M" definitions:

**(1)** **"Maximum allowable concentration"**
means the highest permissible concentration or other measure of pollutant magnitude taken at a specific point in time.

**(2)** **"Mechanical grease removal device"**
means a power operated device or combination of devices using electrical equipment to heat, filter, siphon, skim or otherwise separate and retain floating grease and solid food waste prior to the wastewater exiting the trap and entering the sanitary sewer collection system.

**(n)** "N" definitions:

**(1)** **"New source"**
means:

**(A)** Any building, structure, facility or installation from which there is (or may be) a discharge of pollutants, the construction of which commenced after the publication of proposed pretreatment standards under Section 307(c) of the Clean Water Act that will be applicable to such source if such standards are thereafter promulgated in accordance with that section; provided, that:

**(i)** The building, structure, facility, or installation is constructed at a site at which no other source is located; or

**(ii)** The building, structure, facility or installation totally replaces the process or production equipment that causes the discharge of pollutants at an existing source; or

**(iii)** The production or wastewater generating processes of the building, structure, facility or installation are, in the sole judgment of the Director, substantially independent of an existing source at the same site. In determining whether these are substantially independent, factors such as the extent to which the new facility is integrated with the existing plant, and the extent to which the new facility is engaged in the same general type of activity as the existing source, should be considered.

**(B)** Construction on a site at which an existing source is located results in a modification rather than a new source if the construction does not create a new building, structure, facility, or installation meeting the criteria of subsection (n)(1)(A)(ii) or (iii) of this section but otherwise alters, replaces, or adds to existing process or production equipment.

**(C)** Construction of a new source as defined under this definition has commenced if the owner or operator has:

**(i)** Begun, or caused to begin, as part of a continuous on-site construction program:

**a.** Any placement, assembly or installation of facilities or equipment; or

**b.** Significant site preparation work, including clearing, excavating, or removal of existing buildings, structures, or facilities, which is necessary for the placement, assembly, or installation of new source facilities or equipment; or

**(ii)** Entered into a contractual obligation for the purchase of facilities or equipment which are intended to be used in its operation within a reasonable time. Options to purchase or contracts which can be terminated or modified without substantial loss, and contracts for feasibility, engineering, and design studies do not constitute a contractual obligation under this subsection.

**(2)** **"Ninety (90) day compliance report"**
means a report which shall include all requirements of Federal regulation, including but not limited to 40 CFR Section **403.12(d)**, and:

**(A)** For a new source, submitted within ninety (90) days following the commencement of the introduction of wastewater into the POTW, and containing, at a minimum, flow measurements, a measurement of pollutants, and certification of compliance with pretreatment standards; and

**(B)** For industrial users, submitted within ninety (90) days following the final date for compliance with an applicable pretreatment standard and containing, at a minimum, flow measurements, a measurement of pollutants, certification of compliance with pretreatment standards and the actual production during sampling period; and

for industrial users subject to equivalent mass or concentration limits, a reasonable measure of the long-term production rate.

**(o)** "O" definitions:

**(1) "Owner"**
means any person who owns private premises that contain a source as defined in this section.

**(2) "Operator"**
means any person who owns, leases, operates, controls, or supervises a source as defined in this section.

**(p)** "P" definitions:

**(1) "Pass-through"**
means a discharge which exits the plant into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the plant's NPDES permit, including an increase in the magnitude or duration of a violation.

**(2) "pH"**
means the logarithm of the reciprocal of the concentration of hydrogen ions in moles per liter of solution.

**(3) "Plant"**
means the San Jose/Santa Clara Regional Wastewater Facility, which is also known as the San Jose/Santa Clara Water Pollution Control Plant.

**(4) "Pollutant not present"**
means a pollutant regulated by a categorical pretreatment standard that is not used or stored in a categorical industrial user's facility, is not added to or created by any industrial or pretreatment process at the facility, and is not present above the background levels of the water supply.

**(5) "Pretreatment requirements"**
means any substantive or procedural requirement related to pretreatment imposed on an industrial user other than a pretreatment standard.

**(6) "Pretreatment standard"**
means prohibited discharge standards, including those in Federal regulations such as 40 CFR Section **403.5**, categorical pretreatment standards, and local limits.

**(7) "Priority pollutants"**
means all pollutants as defined by the "General Pretreatment Regulations" of the Environmental Protection Agency, found at Title 40, Chapter 1, Subchapter W, Parts 401 and 403 of the Code of Federal Regulations.

**(8) "Process flow"**
means the daily, twenty-four (24) hour flow of wastewater from any kind or nature of production, manufacturing, or processing operation, including industrial and commercial operations where water is used for the removal of any type of waste other than sanitary sewage. Process flow does not include diluting waters.

**(q)** Reserved for future use.

**(r)** "R" definitions:

**(1) "Reasonable control measures"**
means control technologies, best management practices, source control practices, and waste-minimization procedures that prevent or reduce the introduction of pollutants to the sanitary sewer system and are determined by the Director to be cost-effective for particular industry groups, business types, or specific industrial processes.

**(s)** "S" definitions:

**(1) "Sanitary sewage"**
means water-carried wastes from residences, business buildings, institutions, and industrial establishments, excluding ground, surface, and stormwaters, subsurface drainage, and also excluding industrial waste.

**(2) "Sanitary sewer overflow"**
is any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from a sanitary sewer system, including overflows or releases that reach waters of the United States, overflows or releases that do not reach waters of the United States, and backups into buildings and/or private property caused by conditions within the publicly owned portion of the sewer system.

**(3) "Sanitary sewer system"**
means all publicly owned treatment works (POTW), including the plant, sewers, treatment plants, and other facilities owned or operated by the City for carrying, collecting, pumping, treating, storing, recycling, and disposing

of sanitary sewage and industrial wastes.

**(4) "Sewer"**
means a pipe or conduit for carrying sewage.

**(5) "Sewer lateral"**
(same as "sewer service lateral") means the sewer connection piping used to convey sewage from a building or facility on a parcel (private or public property) to the City- owned sewer main. Each sewer lateral is owned by the entity that owns the property or facility from which that sewer lateral serves to convey sewage.

**(6) "Significant change"**
means any change in an industrial user's operation that results in any of the following:

**(A)** An increase or decrease in twelve (12) month average process flow of twenty-five percent (25%) over the standard discharger's average process flow for the discharger's most immediate preceding twelve (12) months.

**(B)** An increase or decrease in twelve (12) month average process flow that results in a change from low flow discharger to standard discharger or from standard discharger to low flow discharger.

**(C)** An increase or decrease in twelve (12) month average process flow that results in a change from nonsignificant industrial user to significant industrial user or from significant industrial user to nonsignificant industrial user.

**(D)** An increase or decrease in twelve (12) month production rate of twenty-five percent (25%) for any industrial user subject to production-based limits over the industrial user's production rate for the most immediate preceding twelve (12) months.

**(E)** Adding or deleting processes, process discharges or sample points.

**(F)** Waiver of monitoring requirements for any pollutant not present.

**(7) "Significant industrial user"**
means:

**(A)** An industrial user that has processes subject to categorical pretreatment standards except as provided under subsection (s)(7)(C) of this section; or

**(B)** An industrial user that:

**(i)** Discharges an average of twenty-five thousand (25,000) gpd or more of process wastewater to the sanitary system (excluding sanitary, noncontact cooling and boiler blowdown wastewater); or

**(ii)** Contributes a process waste stream which makes up five percent or more of the average dry weather hydraulic or organic capacity of the plant; or

**(iii)** Is designated as such by the Director on the basis that it has a reasonable potential for adversely affecting the plant's operation or for violating any pretreatment standard or requirement;

**(C)** A significant industrial user includes an industrial user that has processes subject to categorical pretreatment standards if the industrial user:

**(i)** Does not discharge more than one hundred (100) gpd of total categorical process wastewater;

**(ii)** Has complied with all applicable categorical pretreatment standards;

**(iii)** Never discharges any untreated concentrated wastewater; and

**(iv)** Submits annually a certificate statement pursuant to 40 CFR Section **403.12(g)**.

**(8) "Significant noncompliance"**
means a violation or violations by an industrial user meeting one or more of the following criteria:

**(A)** Chronic violations of wastewater discharge limits defined here as those in which sixty-six percent (66%) or more of all the measurements taken during a six-month period exceed (by any magnitude) a numeric pretreatment standard or requirement, including instantaneous limits, as defined by 40 CFR Section **403.3(l)**;

**(B)** Technical review criteria (TRC) violations, defined here as those in which thirty-three percent (33%) or more of all the measurements for each pollutant parameter taken during a six-month period equal or exceed the product of the numeric pretreatment standard or requirement including instantaneous limits, as defined by 40 CFR Section **403.3(l)**, multiplied by the applicable TRC (TRC equals 1.4 for BOD, TSS, fats, oil and grease, and 1.2 for all other pollutants except pH);

**(C)** Any other violation of a pretreatment standard or requirement as defined by 40 CFR Section **403.3(l)** (daily maximum, long-term average, instantaneous limit, or narrative standard) that the Director determines has

caused, alone or in combination with other discharges, interference or pass-through (including endangering the health of the Director, personnel or the general public);

**(D)** Any discharge of a pollutant that has caused imminent endangerment to human health, welfare or to the environment or has resulted in the plant's exercise of its emergency authority to halt or prevent such a discharge;

**(E)** Failure to meet, within ninety (90) days after the scheduled due date, a compliance schedule milestone contained in a discharge permit or enforcement order for starting construction, completing construction, or attaining final compliance;

**(F)** Failure to provide, within forty-five (45) days after the due date, required reports such as baseline monitoring reports, ninety (90) day compliance reports, periodic self-monitoring reports, and reports on compliance with compliance schedules;

**(G)** Failure to accurately report noncompliance; and

**(H)** Any other violation or group of violations, which may include a violation of reasonable control measures, which the Director determines will adversely affect the operation or implementation of the pretreatment program.

**(9) "Slug control plan"**
means the document prepared pursuant to 40 CFR Section **403.8(f)(1)(iii)(B)(6)** by a significant industrial user that describes the procedural and operational controls in place to prevent a slug load or slug discharge.

**(10) "Slug load" or "slug discharge"**
means any discharge of a nonroutine, episodic nature, including but not limited to an accidental spill or noncustomary batch discharge, which has a reasonable potential to cause interference or pass-through or in any other way cause a violation of the provisions of this chapter or applicable permit conditions.

**(11) "Source"**
means any building, structure, facility or installation from which there is or may be a potential as determined by the Director to discharge pollutants above the local limits included in this chapter or State or Federal limits or wastewater of such volume or strength that it may cause interference, pass-through or operational problems in the sanitary sewer system or at the San Jose/Santa Clara Water Pollution Control Plant.

**(12) "Standard discharger"**
means any industrial discharger who is not a low flow discharger.

**(t)** "T" definitions:

**(1) "Total toxic organics (TTOs)"**
are the sum of the concentrations for each of the regulated toxic organic compounds listed at Title 40, Chapter 1, Subchapter W, Part 401, Section **401**.**15** CFR and are found in the discharge at a concentration greater than ten micrograms per liter. Some categorical standards (40 CFR Parts **405** through **471**) list the specific toxic organic compounds that are to be included in the summation.

**(2) "Trucked or hauled waste"**
means any waste discharged into the sanitary sewer system after being placed in a motorized vehicle for removal from the location where the waste was generated or produced.

**(u)** "U" definitions:

**(1) "Upset"**
means an unintentional and temporary noncompliance with categorical pretreatment standards because of factors beyond the reasonable control of the industrial user. An upset does not include noncompliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventative maintenance, or careless or improper operation.

**(2) "User"**
means any person responsible for payment of sewer service charges.

**(v)** Reserved for future use.

**(w)** Reserved for future use.

**(x)** Reserved for future use.

**(y)** "Y" definitions:

**(1) "Yellow grease"**
means grease which is associated with food preparation or processing, which has not been contaminated with wash water or chemicals, or by being spilled or otherwise contaminated.

**(z)** "Z" definitions:

**(1) "Zero discharger" or "ZDC"**
means an industrial facility that performs any categorical process subject to Federal pretreatment standards, as described in 40 CFR Parts **405** through **471**, that has any connection to the sanitary sewer system, but does not discharge wastewater from the categorical process to the sanitary sewer.

(Ord. 1901 § 2, 11-27-2012; Ord. 1920 § 1, 2-25-2014; Ord. 2039 §§ 1 – 9, 1-11-2022)

# Article II. SEWER CONNECTION PROCEDURES AND SERVICE CHARGES

## § 13.10.030. Duty to connect premises with sewer system.

No person owning any premises within the city, and no user of any premises within the city, where domestic or industrial waste is produced and on which premises the nearest outlet of the plumbing system is located within two hundred (200) feet from the point at which a connection can be made to the sewer system, or having no plumbing system, but in which a plumbing system could be installed with the nearest outlet located within two hundred (200) feet from the point at which a connection could be made to the sewer system, shall use any means of sewage waste disposal other than through the City sewer lines. Every person owning any premises or every use of any premises so located and upon or in which any such sewage waste is produced shall be required to connect such premises to the sewer system within sixty (60) days from the date when a main sewer or lateral sewer located within the distance specified in this section is completed and available for connection to such premises. There shall be a separate connection to the sewer system for each building or structure served. Pursuant to a written permit from the Director, any two or more buildings or structures on the same lot may be served by one sewer connection.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.040. Maintenance and inspection of sewer connections.

Each user shall keep his/her sewer connections and sewer lateral(s) in good order at his/her own expense and shall be liable for all damages resulting from failure to do so. Each owner shall maintain their sewer lateral free from displaced joints, open joints, root intrusions, substantial deterioration of pipe material, cracks, leaks, inflow or infiltration of extraneous water, grease and sediment deposits or other similar conditions, defects, or obstructions likely to cause or increase the chance of blockage. A City inspector shall be admitted at all reasonable hours to any premises connected with the sewer system, for the purpose of checking plumbing fixtures, protecting the rights of the City, and determining facts relevant to the establishment, computation, and billing of the sewer service charges provided for in this chapter, including, in the case of industrial users, examination of the users' books for the purpose of checking the quantities of industrial waste produced.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.050. Permit required to connect with sanitary sewer system – Generally – Fees.

No person whose premises are not now connected with the sewer system shall connect any premises or cause any premises to be connected with the sewer system without first obtaining a written permit to do so from the City and paying the established connection fees.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.060. Purpose and use of funds received.

All revenue collected pursuant to the provisions of this article shall be placed into the utilities fund as established by Section **1320** of the City Charter. Said revenue shall be used in accordance with the provisions of Section **1320** of the City Charter.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.070. Connection fee schedule.

Wherever a property is initially connected, or requires an addition of a new connection to the sewer system, a sewage treatment plant expansion calculation fee ("sewer connection fee") shall be charged to and paid for by the property owner in accordance with SCCC § **17.15.210**.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.080. Outlet charge for connection to off-site sewer trunk lines, etc.

In addition to the aforesaid sewer connection fee, each property owner or the developer of real property shall pay to the City an outlet charge as delineated in SCCC § **17.15.210**.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.090. Rates – Users within the city.

**(a)** There is hereby levied and assessed against and upon all premises having (or required by this chapter or any ordinance of the City to have) any sewer connection with or discharging (or required thereby to discharge) into or through the sanitary sewer system of City, a monthly sewer service charge.

**(b)** The City Council may, by resolution, establish and amend the monthly sewer service charges. Said resolution(s) shall contain the effective date of any change in the monthly sewer service charge.

**(c)** The resolution(s) establishing and amending the monthly sewer service charges shall be kept on file and made available to the public at the City Clerk's office.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.100. Rates exclusive of taxes.

The rates herein are exclusive of the monthly utility excise tax prescribed in Chapter **3.30** SCCC and all other prescribed sewer-related fees and charges.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.110. Users outside the city.

**(a)** The City Council may, by resolution, set and fix monthly sewer service charges for various types of users located outside the city that discharge sewage and other wastes into the sanitary sewer system of the City. Such charges will be effective upon adoption of such resolution(s).

**(b)** Notwithstanding any other provisions of this chapter, the City Council shall have power to establish, by resolution or by agreement with the user, the monthly sewer service charges applicable to any person or any user outside the city limits, at rates different from those set forth in this chapter, as long as the charges so established are fair and equitable under the circumstances.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.120. Users obtaining water supply from other than the City to install separate meters.

Where any of the charges enumerated in SCCC § 13.10.090 are based upon the consumption of water by any users, and any such water is furnished otherwise than from the City's water system, and no approved meter is installed in the sewer service connection, then such user shall at his/her own expense install a separate water meter for measurement of such water. Said water meter installation shall be made to comply with all requirements of the Director.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.130. Purpose and use of funds received.

All revenue collected pursuant to the provisions of this article shall be placed into the utilities fund as established by Section **1320** of the City Charter.

Said revenue shall be used in accordance with the provisions of Section **1320** of the City Charter.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.140. Issuance of bills – Information required.

All bills for sewer charges shall be issued by the City's Department of Finance. They shall be combined with bills or statements for water service rendered by the water system in all cases where the premises in question are connected to the water system. The bills shall (a) state their purpose, (b) give the name and last known address of the person responsible for payment as provided in this chapter, and (c) list separately the charge for water service, for sewer service, and the total charge for both services. Neither charge may be paid separately from the other. If premises with sewer service are not connected with the water system, a separate bill shall be rendered. All bills shall be for monthly periods or for such other period as shall be determined by resolution of the City Council.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.150. Delinquent accounts.

The City Manager shall ensure enforcement of this chapter by coordinating the actions of the Director of Finance, the Director, and the other City officers or departments concerned.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.160. Notice – Disconnection from water system.

In the event of a violation of any provision of this chapter, or any rule or regulation established pursuant thereto, the Director, in writing, shall notify the person causing, allowing, or committing such violation, specifying the violation and, if applicable, the time after which, upon failure of such person to prevent or rectify the violation, the Director will exercise his/her authority to disconnect the premises from the water system or the sewer system. Such time shall not be less than five days after the deposit of such notice in a United States Post Office in the city, addressed to the person upon whom notice is given. In the event such violation results in a public hazard or menace, the Director or other authorized representative may enter upon the premises without notice and do such things and expend such sums as may be necessary to abate such hazard. The reasonable value of the things done and the amounts expended in so doing shall be a charge upon the person in violation.
(Ord. 1901 § 2, 11-27-2012)

# Article III. SEWER USE REGULATIONS

# Part 1. Discharge Regulations and General Prohibitions

## § 13.10.170. Limitations on point of discharge.

No person shall discharge any substances directly into a manhole or other opening in a City sewer, other than through a City-approved sewer connection.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.180. Discharge into storm drain prohibited.

It shall be unlawful to discharge any sewage, industrial waste, or other polluted waters into any storm drain or natural outlet or channel without a valid National Pollutant Discharge Elimination System (NPDES) permit.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.190. Regulation of trucked or hauled waste.

No person shall discharge, cause, allow, or permit any trucked or hauled waste to be discharged into the sanitary sewer system, except at a site specifically designated in a wastewater discharge permit issued pursuant to this chapter.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.200. Protection from accidental discharge.

**(a)** Each industrial user shall provide protection from accidental discharge of prohibited materials or other wastes regulated by this chapter into either the storm sewer or the sanitary sewer system.

**(b)** Facilities to prevent accidental discharge of prohibited materials shall be provided and maintained at the industrial user's expense.

**(c)** All industrial users shall notify the City by telephone or in person within one hour of becoming aware of accidentally discharging wastes of reportable quantities as determined in Title 40, Chapter 1, Subchapter D, Part **117** CFR, or discharge of any substance which, if otherwise disposed to, would be hazardous waste under 40 CFR Part **261**, to enable countermeasures to be taken by the City to minimize damage to the sanitary sewer system, the plant, the treatment processes, and/or the receiving waters. If hazardous waste is discharged, the industrial user shall be subject to all requirements in 40 CFR Section **403.12(p)**.

**(d)** Within five days of the date of occurrence a detailed written statement describing the causes of the accidental discharge and the measures being taken to prevent future occurrences shall be provided to City.

**(e)** Notification to the City will not relieve industrial users of notification requirements under any other Federal, State, or local law, nor of liability for any expense, loss, or damage to the sanitary sewer system, plant, or treatment process or receiving

waters, or for any fines or penalties imposed on the City on account thereof under applicable provisions of State or Federal law.

**(f)** All permitted facilities must maintain a spill control plan for protection against accidental discharges, including but not limited to berming of chemicals and waste materials. The review of such plans and procedures shall not relieve the industrial user from the responsibility of modifying the facility as necessary to provide the protection necessary to meet the requirements of this Code or other State or Federal regulations.

**(g)** This plan must be reviewed and revised as needed within thirty (30) days after an accidental discharge has occurred or as required by the Director.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.210. Pretreatment by owner or operator.

Each owner or operator shall, at the owner's or operator's own expense, provide such treatment or take such other measures, as the Director may require to prevent accidental discharge, reduce objectionable characteristics, contents, or rate of discharge of waters or waste being deposited in the sanitary sewer system, to prevent damage to or interference with the sanitary sewer system.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 10, 1-11-2022)

## § 13.10.220. Monitoring facilities.

**(a)** The Director may require any industrial user of the sanitary sewer system to construct, at the industrial user's own expense and at an approved location, monitoring facilities to allow inspection, sampling and flow measurement of the building sewer or internal drainage systems.

**(b)** The monitoring facilities, sampling and measurement equipment, and access thereto, shall be maintained at all times in a safe and proper operating condition at the expense of the discharger.

**(c)** Any required monitoring facilities shall be specified in the wastewater discharge permit issued pursuant to this chapter.

**(d)** A sample box shall be designed in such a way as to retain sufficient wastewater in the sample box at all times to allow sample collection representative of the last wastewater discharge.

(Ord. 1901 § 2, 11-27-2012)

# Part 2. Prohibited Discharges, Substances

## § 13.10.230. Storm and other waters.

**(a)** No person shall discharge, cause, allow, or permit any stormwater, surface water, groundwater, subsurface drainage or roof runoff to be discharged into the sanitary sewer system or any part thereof without a wastewater discharge permit or prior authorization from the Director.

**(b)** A wastewater discharge permit for the discharge of groundwater, subsurface drainage, surface water, roof water or stormwater shall only be issued if there is no reasonable alternative method for disposal of such water.

**(c)** If permitted, discharge of groundwater or subsurface drainage, surface water, roof water or stormwater shall be subject to all applicable requirements of this chapter, including, but not limited to, the payment of applicable permit fees and such terms and conditions as the Director may impose in the wastewater discharge permit.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 11, 1-11-2022)

## § 13.10.240. Obstructing or injurious substances.

No person shall discharge, cause, allow, or permit to be discharged, thrown, or deposited into the sanitary sewer system, or any part thereof, or into any plumbing fixture or private sewer or drain connected either directly or indirectly to the sanitary sewer system, any substance of any kind whatsoever tending to obstruct or injure the sanitary sewer system, or to cause a nuisance or hazard, or which will in any manner interfere with the proper operation or maintenance of the sanitary sewer system.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.250. Flammable or explosive substances.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any wastewater containing any flammable liquid, solid, vapor, or gas, or any other substance, including, but not limited to, any

substance having a closed cup flashpoint of less than one hundred forty (140) degrees Fahrenheit or sixty (60) degrees Celsius, using the test methods specified in 40 CFR Section **261.21**.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.260. Hot substances.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any liquid, solid, vapor, gas, or thing having or developing a temperature of one hundred fifty (150) degrees Fahrenheit or more, or that may cause the temperature at the plant to exceed one hundred four (104) degrees Fahrenheit.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.270. Grease, oils, fats.

**(a)** No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system any liquid or other waste containing grease in excess of one hundred fifty (150) parts per million by weight.

**(b)** No person shall discharge, cause, allow, or permit any grease discharge from a food service establishment into the sanitary sewer system, unless such discharge has first been processed through an approved grease control device.

**(c)** No person shall discharge, cause, allow, or permit to be discharged any yellow grease, or any waste or material mixed with yellow grease, into the sanitary sewer system from a food service establishment. No yellow grease from a food service establishment shall be mixed with grease trap or grease interceptor waste.

**(d)** Any industrial user that violates the grease limit shall resample and submit reports to the City for all pollutants in violation of any applicable permit limits or any other pollutants as required by the Director within thirty (30) days of becoming aware of the violations.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 12, 1-11-2022)

## § 13.10.280. Solid or viscous matter.

No person shall discharge, deposit, throw, or cause to be discharged, deposited, or thrown into the sanitary sewer system, or any part thereof, any ashes, cinders, pulp, paper, sand, cement, mud, straw, shavings, metal, glass, rags, feathers, tar, asphalt, resins, plastics, wood, animal hair, paunch manure, or any heavy solid or viscous substance capable of causing obstruction to the flow in the sanitary sewer system, or any part thereof, or that would interfere with the proper operation of the plant or the treatment of sanitary sewage or industrial waste.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.290. Corrosive matter.

**(a)** No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any liquid, solid, vapor, gas, or thing having a pH lower than 6.0 or equal to or greater than 12.5, or having any other corrosive property capable of causing damage or hazard to the sanitary sewer system, or any part thereof, or to any personnel operating, maintaining, repairing, or constructing said sanitary sewer system, or any part thereof, or working in or about the sanitary sewer system.

**(b)** Any industrial user that violates any of the corrosive matter limits shall resample and submit sample reports for all pollutants in violation of any applicable permit limits or any other pollutants as required by the Director within thirty (30) days of becoming aware of the violation.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 13, 1-11-2022)

## § 13.10.300. Toxic gases, vapors or fumes.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any substance of any kind whatsoever that results in the presence of toxic gases, vapors, or fumes within the sanitary sewer system in a quantity that may cause acute health and/or safety problems for workers in the sanitary sewer system.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.310. Interfering substances.

**(a)** No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any industrial waste containing any of the following toxic substances exceeding the concentrations set forth in Table A.

**(b)** No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any toxic or poisonous substances or any other pollutant, including biochemical oxygen demand, in sufficient quantity to:

**(1)** Injure or cause an interference with the sewage treatment process or pass through the plant;

**(2)** Constitute a hazard to humans or animals;

**(3)** Create a hazard for humans or aquatic life in any waters receiving effluent from the sanitary sewer system; or

**(4)** Create a hazard in the use or disposal of sewage sludge.

**(c)** All samples, including grab and composite, may be used to evaluate compliance with the limits in Table A.

**(d)** Any industrial user that violates any of the interfering substances limits must resample and submit sample reports for all pollutants in violation of any applicable limits or any other pollutants as required by the Director within thirty (30) days of becoming aware of the violation.

**TABLE A**

**INTERFERING SUBSTANCES**

| Toxic Substance | Standard Discharger Maximum | Low Flow Discharger Maximum |
|---|---|---|
| Antimony | 5.0 mg/l | 5.0 mg/l |
| Arsenic | 1.0 mg/l | 1.0 mg/l |
| Beryllium | 0.75 mg/l | 0.75 mg/l |
| Cadmium | 0.7 mg/l | 0.7 mg/l |
| Chromium, total | 1.0 mg/l | 1.0 mg/l |
| Copper | 2.3 mg/l | 2.7 mg/l |
| Cyanide, total | 0.5 mg/l | 0.5 mg/l |
| Lead | 0.4 mg/l | 0.4 mg/l |
| Mercury | 0.010 mg/l | 0.010 mg/l |
| Nickel | 0.5 mg/l | 2.6 mg/l |
| Phenols, total | 30.0 mg/l | 30.0 mg/l |
| Selenium | 1.0 mg/l | 1.0 mg/l |
| Silver | 0.7 mg/l | 0.7 mg/l |
| Zinc | 2.6 mg/l | 2.6 mg/l |

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 14, 1-11-2022)

## § 13.10.320. Prohibition on use of diluting waters.

No industrial user shall ever increase the use of process water, or in any way use diluting waters as a partial or complete substitute for adequate treatment, or to meet local limits or achieve compliance with a discharge limitation unless expressly authorized by an applicable pretreatment standard or requirement.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.330. Suspended solids – Dissolved matter.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any liquid containing suspended solids or dissolved matter of such character and quantity that unusual attention or expense is required to handle, process, or treat such matter at the plant.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.340. Noxious or malodorous matter.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any solid, liquid, vapor, gas, or thing that is so malodorous or noxious that its discharge into the sanitary sewer system would cause a public nuisance.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.350. Radioactive matter.

No person shall discharge, cause, allow, or permit to be discharged any radioactive waste into the sanitary sewer system, except that:

**(a)** Persons authorized to use radioactive materials by the State Department of Health Services or other governmental agency empowered to regulate the use of radioactive materials may discharge, cause to be discharged, or permit to be discharged such wastes; provided, that such wastes are discharged in strict conformance with the California radiation control regulations (California Code of Regulations, Title **17**, Division 1, Chapter 5, Subchapter 4 (entitled "Radiation") et seq.) and Federal regulations and recommendations for safe disposal of such radioactive wastes; and

**(b)** The person so acting does so in compliance with all applicable rules and regulations of all other regulatory agencies having jurisdiction over such discharges.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.360. Colored matter.

No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any wastewater with objectionable color not removed in the treatment process, such as, but not limited to, dye wastes and vegetable tanning solutions.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.370. Garbage.

**(a)** No person shall discharge, deposit, throw, cause, allow, or permit to be discharged, deposited, or thrown into the sanitary sewer system, or any part thereof, (1) any garbage, (2) any fruit, vegetable, or animal material, and/or (3) any other solid material from any food-processing plant (or any other industrial plant or retail grocery store), irrespective of whether or not it shall have been first passed through a mechanical grinder.

**(b)** No person shall install, operate, use, or maintain upon the premises of any food-processing plant (or any other industrial plant or retail grocery store) any mechanical grinder or waste grinder that is connected directly or indirectly to the sanitary sewer system, or any part thereof.

**(c)** No person shall discharge, deposit, throw, or cause, allow, or permit to be discharged, deposited, or thrown into the sanitary sewer system, or any part thereof, any garbage, or fruit, vegetable, animal, or other solid kitchen waste material resulting from the preparation of any food or drinks in any dwelling, restaurant, or eating establishment, unless the same shall have first been passed through a mechanical garbage or waste grinder in conformance with the provisions of the Plumbing and Electrical Code of the City.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.380. Oil and grease removal devices.

**(a)** Any food service establishment, or other type of business or establishment where grease or other viscous, obstructing, or objectionable materials may be discharged into a public or private sewage main or disposal system, shall have a grease control device and related plumbing of a size and design approved by the Director.

- **(1)** Grease interceptors shall meet the following minimum requirements:
  - **(A)** Designed retention time of no less than thirty (30) minutes.
  - **(B)** The effluent from the device must flow through an approved sample box.
  - **(C)** Installed per manufacturer's specifications.
  - **(D)** At least two manholes, situated so all standpipes can be fully observed, and all internal surfaces can be reached, without confined space entry.
  - **(E)** Double-sweep cleanouts, on the interceptor inlet, and sample box outlet.
  - **(F)** Shall meet the specifications and be constructed in accordance with the applicable provisions of Chapter **15.35** SCCC.
- **(2)** Grease traps shall meet the following minimum requirements:
  - **(A)** No injection ports for chemicals or bacteria.
  - **(B)** Installed per manufacturer's specifications.
  - **(C)** Appropriate flow restrictors, whether integral or external to the device, must be installed.

**(D)** Shall meet the specifications and be constructed in accordance with the applicable provisions of Chapter **15.35** SCCC.

**(3)** Mechanical grease removal devices shall be installed in accordance with manufacturers' specifications.

**(b)** Each grease control device shall be so installed and connected that it shall be at all times easily accessible for visual inspection, sampling, cleaning and removal of grease and other matter from all surfaces.

**(c)** A grease control device shall be situated on the discharger's premises, except when such a location would be impractical or cause undue hardship on the discharger, the City may issue an encroachment permit to allow the grease control device to be installed in the public street or sidewalk area and located so that it will not be obstructed by landscaping or parked vehicles.

**(d)** Waste discharged from fixtures and equipment in establishments which may contain grease or other objectionable materials including, but not limited to, scullery sinks, pot and pan sinks, dishwashers, food waste disposals, soup kettles, and floor drains located in areas where such objectionable materials may exist, may be drained into the sanitary sewer through the grease control device if approved by the Director; provided, however, that toilets, urinals, wash basins, and other fixtures containing fecal material shall not flow through the grease control device.

**(e)** Grease control devices shall be maintained in efficient operating condition by periodic removal of the accumulated grease. The use of chemicals, bacteria, enzymes, or other additives that have the effect of emulsifying or dissolving grease is prohibited unless specifically authorized by the Director in writing. No accumulated grease shall be introduced into any drainage piping or public or private sewer.

**(f)** Grease control devices shall be cleaned on a sufficient frequency to prevent objectionable odors, surcharge of the grease control device, or interference with the operation of the sanitary sewer system.

**(1)** Grease traps shall be cleaned at least once every thirty (30) days.

**(2)** Grease interceptors shall be cleaned once every ninety (90) days.

**(3)** Mechanical grease removal devices must be maintained in a manner and frequency consistent with manufacturer specifications and guidance.

**(4)** Grease control devices shall be cleaned when their last chamber is filled to twenty-five percent (25%) or more of capacity with grease or settled solids. Grease interceptors with a sample box shall be cleaned immediately when grease is evident in the sample box.

**(5)** Grease control devices shall be cleaned by being pumped dry and all accumulated sludge on all surfaces shall be removed by washing down the sides, baffles and tees. No water removed from the device during cleaning shall be returned to the grease control device.

**(g)** The Director may grant an exception to the requirements of subsections **(f)(1)** and **(2)** of this section where the Director finds, based on evidence presented by the discharger, that a less frequent cleaning schedule will be sufficient to assure that not more than twenty-five percent (25%) of the capacity of the grease control device will be filled with grease or settled solids.

**(h)** All dischargers shall implement best management practices in their operations to minimize the discharge of grease to the sanitary sewer system.

**(i)** Dischargers shall maintain records on site for a period of at least three years as follows:

**(1)** Dischargers with an installed grease control device shall maintain records showing that the grease control device has been properly maintained and cleaned as required by subsections **(e)** and **(f)** of this section; and

**(2)** Food service establishments shall maintain records showing the following related to all grease hauled off site: date and time material removed off site, volume removed, hauler name, truck license number, type of grease removed, and final destination of material collected.

**(j)** Abandoned grease control devices shall be emptied and filled as required for abandoned septic tanks.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.390. Installation and maintenance of amalgam separators.

**(a)** Except as provided in subsections **(b)** and **(c)** of this section, no person shall discharge, cause, allow or permit any discharge to the sanitary sewer system from a dental vacuum system, unless such discharge has first been processed through an amalgam separator.

**(b)** For each dental vacuum system installed prior to July 1, 2009, an amalgam separator shall be installed on or before December 31, 2010. No dental vacuum system shall be installed on or after January 31, 2009, without an amalgam separator. Proof of certification and installation records shall be submitted to the Director within ninety (90) days of installation.

**(c)** A dental vacuum system may be operated without an amalgam separator; provided, that the system is not used in connection with the removal or placement of fillings that contain dental amalgam, except in limited emergency or unplanned, unanticipated circumstances, and the system is used exclusively by the following types of dental practices: (1) oral pathology, (2) oral and maxillofacial radiology, (3) oral and maxillofacial surgery, (4) orthodontics, (5) periodontics, or (6) prosthodontics.

**(d)** Amalgam separators shall be maintained in accordance with manufacturer recommendations. Installation, certification, and maintenance records shall be maintained for a minimum of five years and available for immediate inspection upon request therefor by the Director or designee during normal business hours.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 15, 1-11-2022)

## § 13.10.400. Screened industrial waste.

**(a)** No person shall discharge, cause, allow, or permit to be discharged into the sanitary sewer system, or any part thereof, any garbage, or any fruit, vegetable, animal, or other solid industrial waste resulting from the processing, packaging, or canning of fruits, vegetables, or other foods or products, unless such waste has first been passed through screens having openings not exceeding one thirty-second (1/32) of an inch in dimension.

**(b)** The Director may authorize, in writing, the discharge into the sanitary sewer system of such waste if it is first passed through screens having larger openings, if the Director is satisfied that such larger openings will provide screening efficiency and effectiveness equal to or better than that provided by the above-specified openings of one thirty-second (1/32) of an inch in dimension.

**(c)** Each person who discharges, causes, allows, or permits to be discharged into the sanitary sewer system, or any part thereof, any such waste shall install and maintain in good operating order, screens as hereinabove specified and appurtenances thereto, including, but not limited to, all necessary conveyors and elevators, all in sufficient quantity and of sufficient size and quality to continuously and effectively screen not less than one hundred percent (100%) of the peak hydraulic and solids loading imposed on such screens and appurtenances during any processing period.

**(d)** No person shall discharge any such screened waste into the sanitary sewer system, or any part of the system, unless and until he/she has obtained a wastewater discharge permit pursuant to this chapter granting approval to do so. Before a wastewater discharge permit is granted, the Director may require that such person provide to the Director a report prepared by a registered professional engineer verifying, to the satisfaction of the Director, that the provisions of this section have been fully complied with.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.410. Use of City's facilities by others.

No person shall enter or remain upon any sanitary sewer manholes, cleanouts, or any appurtenances thereto, or any other property owned or controlled by the Water and Sewer Utilities Department without the consent of the Director.

(Ord. 1901 § 2, 11-27-2012)

# Article IV. WASTEWATER DISCHARGE PERMITS – REPORTS

## § 13.10.420. Mandatory wastewater discharge permits.

No critical user, zero discharge categorical user, or significant industrial user shall connect, discharge, cause, allow, or permit any discharge into the sanitary sewer system except in accordance with a discharge permit issued by the Director.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 16, 1-11-2022)

## § 13.10.430. Permit duration and amendment.

**(a)** Wastewater discharge permits shall be issued for a specific duration, not to exceed five years.

**(b)** Permits shall be subject to amendment by the City as limitations or requirements for wastewater discharge are modified and changed.

**(c)** The holder of a discharge permit shall be informed of any proposed amendment to its permit at least thirty (30) days prior to the effective date of the amendment.

**(d)** The Director may include a compliance schedule in an amended permit.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.440. Permit application.

**(a)** All persons requiring a discharge permit shall file a complete application, in the form prescribed by the Director, and accompanied by the applicable fees, as established by resolution of the City Council.

**(b)** For new construction, permit applications shall be filed with the Director at the time that an application for a building permit for a new building or structure is made.

**(c)** All persons discharging wastewater into the sanitary sewer system for which a wastewater discharge permit has been issued must apply for a new permit prior to making a significant change in the operations affecting their discharge.

**(d)** Waiver of Pollutants Not Present.

**(1)** A categorical industrial user seeking to request a waiver of monitoring requirements for pollutants not present must submit the following with its permit application:

**(A)** Data from at least one sampling of the facility's process wastewater prior to any treatment that is representative of all wastewater from all processes;

**(B)** Signature in compliance with SCCC § 13.10.460;

**(C)** Certification statement as specified under 40 CFR Section **403.6(a)(2)(ii)**; and

**(D)** Other technical factors as may be required by the Director to demonstrate that the pollutant is not present in the industrial user's discharge.

**(2)** If approved, the waiver shall be included as part of the categorical industrial user's discharge permit. The categorical industrial user must certify in each self-monitoring report with the statement set forth in 40 CFR Section **403.12(e)(2)(v)** that there has been no increase in the waste stream due to the activities of the user of the pollutant that was waived.

**(3)** The waiver shall only be valid for the term of the permit, and a new request for waiver must be submitted for each new permit.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 17, 1-11-2022)

## § 13.10.450. Delinquent fees.

**(a)** Discharge permit applications are due ninety (90) days prior to (1) commencing discharge to the sanitary sewer system, (2) commencing operation of a zero discharging categorical process, or (3) expiration of the existing discharge permit. Any person who fails to file a discharge permit application by the application due date prior to discharge shall be assessed a penalty for delinquent filing as follows:

**(1)** Up to and including thirty (30) days after the application due date, the penalty shall be fifty percent (50%) of the permit fee.

**(2)** Thirty-one (31) to ninety (90) days after the application due date, the penalty shall be one hundred percent (100%) of the permit fee.

**(3)** Ninety-one (91) days to one year after the application date, the penalty shall be two hundred percent (200%) of the permit fee.

**(4)** More than one year after the application due date, the penalty shall be one thousand percent (1,000%) of the permit fee.

**(b)** Such penalties shall be in addition to any other penalties or fines that may be levied, and they are in addition to any other remedies that the City may have with respect to the discharge.

**(c)** The Director may waive the assessment of penalty if the industrial discharger meets all of the following requirements:

**(1)** The industrial discharger has submitted a completed application no later than thirty (30) days from the date the application was due;

**(2)** The industrial discharger has applied to the Director for a waiver no later than thirty (30) days from the date the application was due;

**(3)** The industrial discharger submitted timely applications for (A) the five years immediately prior to the present late application, or (B) the two years immediately prior to the present late application if the industrial discharger has discharged for less than five years; and

**(4)** The industrial discharger can provide documentation that (A) the application was postmarked or received by the plant no later than three days after the application due date, or (B) failure to submit a timely application was due to circumstances beyond the control of the industrial discharger, and cured despite the exercise of ordinary care and the absence of willful neglect.

(Ord. 1901 § 2, 11-27-2012; Ord. 1920 § 2, 2-25-2014)

# § 13.10.460. Signature requirements.

**(a)** Permit applications, discharge reports, and any other reports required by the Director to be signed shall be signed by an authorized or duly authorized representative of the user filing the application.

**(b)** Reports subject to the requirements of Title **40** of the Code of Federal Regulations shall include the following certification statement as contained in Title **40** of the Code of Federal Regulations:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 18, 1-11-2022)

# § 13.10.470. Additional information.

**(a)** If the Director is not satisfied that the permit application has sufficient information to determine whether the permit should be issued, the Director may refuse to issue the permit or request that the applicant submit further information.

**(b)** The applicant shall have fourteen (14) calendar days, or such longer period of time as allowed by the Director, after reviewing a request for information, to complete the application.

**(c)** If the returned application is not resubmitted within the specified time period, then a new application for a discharge permit must be submitted along with the application fees and any delinquent fees for a new permit.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 19, 1-11-2022)

# § 13.10.480. No transfer of permit.

**(a)** Discharge permits are issued to a specific user for a specific operation. A discharge permit shall not be reassigned or transferred or sold to a new owner, new user, different premises, or a new or changed operation without prior approval of the Director.

**(b)** Wastewater discharge permits may be transferred to a new owner or operator only if the permittee provides advance written notice to the Director and the Director approves the transfer of a wastewater discharge permit.

**(1)** The notice to the Director must include a certification by the new owner or operator which:

**(A)** States the new owner and/or operator has no immediate intent to change the facility's operations and processes;

**(B)** Identifies the specific date on which the transfer is to occur; and

**(C)** Acknowledges full responsibility for complying with the existing individual wastewater discharge permit.

**(2)** Failure to provide advance notice of a transfer renders the wastewater discharge permit void as of the date of facility transfer.

**(c)** Upon an approved transfer, the existing owner or operator shall provide a copy of the wastewater discharge permit to the new owner or operator. The new owner or operator shall submit a wastewater discharge permit application and appropriate permit application fee within thirty (30) days of the date of the approved transfer.

**(d)** Nothing in this section shall be construed to prevent the application of terms and conditions of this chapter, including enforcement penalties, from applying to a succeeding owner or operator, successor in interest, or other assigns of an existing contract or permit holder.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 20, 1-11-2022)

# § 13.10.490. Denial of permit.

The Director may deny a wastewater discharge permit if any one or more of the following conditions exist:

**(a)** The application is not accompanied by the required fee(s).

**(b)** The application contains false or misleading information.

**(c)** The issuance of the permit would result in the discharge of industrial wastes of such quantity or strength that the public health or safety, or public or private property are endangered.

**(d)** The issuance of the permit would cause the plant to violate any permit conditions, laws, or regulations of the State and/or Federal government.

**(e)** The applicant has not provided adequate information to establish that its discharge will comply with all requirements of this chapter and with such other terms and conditions as the Director may deem necessary to include in the discharger's permit.

**(f)** The applicant has not provided plans for sufficient protection from accidental discharges to the land, storm sewer system, and sanitary sewer system.

**(g)** If the Director refuses to issue a permit, the application fees shall not be returned to the applicant unless the Director has ascertained that a permit is not required to discharge the wastewater for which the permit application is made.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.500. Permit conditions.

**(a)** Discharge permits shall be expressly subject to all provisions of this chapter and all other regulations, user charges, discharge limitations, and fees established by the City and all applicable local, State, and Federal law and regulations.

**(b)** The permit may include such terms and conditions as the Director may deem necessary to implement this chapter, or any other applicable local, State, or Federal law and regulations, including, but not limited to:

**(1)** Limits on the average and maximum wastewater volume, constituents and characteristics;

**(2)** Requirements for installation and maintenance of flow monitoring, inspection, and sampling facilities;

**(3)** Specifications and pretreatment requirements for monitoring programs which may include sampling locations, frequency of sampling, number, types and standards for tests, and reporting schedule;

**(4)** Compliance schedules;

**(5)** Requirements for submission of technical reports or discharge reports;

**(6)** Requirements for maintaining and retaining plant records relating to wastewater discharge as specified by the City and affording the City access thereto;

**(7)** Requirements for notification to the City of any new introduction of wastewater constituents or any significant change in the volume or character of the wastewater constituents being introduced into the wastewater stream;

**(8)** Requirements and plans for protection against accidental discharges, including, but not limited to, berming of chemicals and waste materials. The review and approval of such plans and operating procedures shall not relieve the user of the responsibility of modifying the facility as necessary to provide the protection necessary to meet the requirements of this Code or other State or Federal regulations;

**(9)** Requirements for notification of accidental discharges;

**(10)** Requirements for submission of a slug control plan or specific elements thereof.

**(c)** No person shall fail to comply with the terms and conditions of a discharge permit, or fail to comply with any other mandatory provision of this chapter, or other regulations, or discharge limitations established by the City, or local, State and Federal laws and regulations. Each violation of the permit condition or other rule, regulation, or law shall be a separate violation under this Code.

(Ord. 1901 § 2, 11-27-2012; Ord. 1920 § 3, 2-25-2014; Ord. 2039 § 21, 1-11-2022)

## § 13.10.510. Permit appeals.

Any permittee or permit applicant may appeal a notice of revocation of a wastewater discharge permit, notice of denial of a permit, any term or condition of a permit, amendment of a permit, or notice of termination of service in accordance with the provisions of Chapter **2.115** SCCC.

(Ord. 1901 § 2, 11-27-2012; Ord. 2007 § 18, 11-19-2019)

## § 13.10.520. Record keeping.

All industrial users subject to the reporting requirements of this chapter shall retain and make available for inspections and copying all records of information obtained pursuant to any monitoring activities required by this chapter, and additional records of information obtained pursuant to monitoring activities undertaken by the industrial user independent of such requirements. These records shall remain available for a period of at least three years. This period shall be automatically extended for the duration of any enforcement action concerning the industrial user, or where the industrial user has been specifically notified of a longer retention period by the Director.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.525. Best management practices.

**(a)** The Director may develop best management practices (BMPs), by ordinance or in individual wastewater discharge permits, to implement local limits, Federal regulations, and the requirements under this chapter.

**(b)** All industrial users shall follow BMPs established by ordinance, individual wastewater discharge permit, or implement BMPs in their operations to minimize the discharge of pollutants to the sanitary sewer system and ensure appropriate monitoring, treatment, and other measures are being taken to prevent violations.

**(c)** When an industrial user develops BMPs in response to an enforcement action, the user shall continue to implement those BMPs and any associated record keeping unless approved to discontinue.

**(d)** Industrial users subject to BMPs as a means of complying with the standards of this title shall maintain documentation to demonstrate compliance with the applicable BMP standards.

**(e)** Periodic reports on continued compliance for BMP regulated dischargers shall require the discharger to certify that the BMPs have been implemented during the reporting period.

(Ord. 2039 § 22, 1-11-2022)

# Article V. ENFORCEMENT

## § 13.10.530. Responsibility.

The primary responsibility for enforcement of the provisions of this chapter shall be vested in the Director or such agents of the City as he/she shall designate; and provided further, that field inspectors or other employees of the City are hereby authorized to act as agents of the City or of the sewage treatment plant for and on behalf of the Director, with the power to inspect and issue notices for violations of this chapter.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.540. Federal pretreatment regulations.

No industrial user shall discharge, cause, allow, or permit a discharge into the sanitary sewer system in violation of any Federal or State regulation regulating discharges by such users, including, but not limited to, the Federal pretreatment regulations found in Title **40** CFR.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.550. Public nuisance.

Waste or wastewater discharge, threatened waste or wastewater discharge, or any condition or act in violation of any provision of this chapter, or any provision of any permit issued pursuant to this chapter, or any directive or order of the Director authorized by this chapter or applicable law is hereby declared to be a public nuisance. Such nuisance may be abated, removed, or enjoined and damages assessed therefor, in any manner provided by law.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.560. Falsification of information.

**(a)** It shall be unlawful to make any false statement, representation, record, report, plan, or other document; to tamper with or render inaccurate any monitoring device or equipment; or to divert flow from any monitoring device or equipment installed or operated to further the purpose of this chapter or the purpose of any permit issued under this chapter.

**(b)** In addition to any other punishment or remedy provided by law, any such falsification or tampering shall be grounds for revocation of any permit issued under this chapter.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.570. Power to inspect.

**(a)** The Director and other duly authorized employees and agents of the City bearing credentials and identification shall have the right to access upon all properties for the purpose of investigating compliance, with all the requirements of this Code, State and Federal regulations, and any permit, and for inspecting any sewer or storm drain connection, including, but not limited to, all discharge connections of roof and surface drains and plumbing fixtures; inspecting, observing, measuring, photographing, sampling, and testing the quality, consistency, and characteristics of sewage and industrial wastewaters being discharged into any public sewer or natural outlet; and inspecting and copying any records relating to quantity and

quality of wastewater discharges, including, but not limited to, water usage and effluent discharge, chemical usage, and hazardous waste records.

**(b)** It shall be unlawful to unreasonably obstruct, delay, or interfere with the City's access to the owner's and/or operator's premises.

**(c)** The Director may terminate service or revoke the permit of any person who has unreasonably refused or delayed access to the City.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 23, 1-11-2022)

## § 13.10.580. Discharge reports.

**(a)** Dischargers are subject to the reporting requirements as contained in Title **40** CFR. The Director may require that any person connected to or discharging wastewater into the sanitary sewer system file additional periodic discharge reports or a zero discharge report, including, but not limited to, the requirements contained in 40 CFR Section **403.12**, or other applicable Federal regulation.

**(b)** The periodic discharge report may be required to include, but need not be limited to, nature of process, volume, rates of flow, mass emission rate, hours of operation, number of employees, hauling record, potential slug discharge, or other information which relates to the generation of waste, including wastewater constituents and characteristics in the wastewater discharge and the ability of the discharger to meet applicable discharge limits.

**(c)** The zero discharge report shall certify that the zero discharge user does not discharge any process water to the sanitary sewer system, or, for a zero discharge categorical user, discharge any categorical process water or ancillary process water to the designated zero discharge categorical sample point or into the sanitary sewer system. This report may be required to include, but need not be limited to, the nature of the process, hours of operation, number of employees, hauling records, or other information that relates to the generation of wastes.

**(d)** The Director may also require such periodic discharge reports and zero discharge reports to include information concerning the chemical constituents and quantity of chemicals stored on site, including waste hauling records or other information, which relates to the generation of wastes even though they may not normally be discharged.

**(e)** In addition to discharge reports, the Director may require dischargers to submit such additional reports as may be necessary to allow the City to evaluate the discharger's ability to comply with this chapter, including but not limited to best management practice or self-monitoring reports.

**(f)** It shall be unlawful for any person who has discharged wastewater to the sanitary sewer system to refuse to file any report requested by the Director, to file an incomplete or inaccurate report, or to file any report after the application due date specified by the Director.

**(g)** Sampling and analysis shall be performed in accordance with Federal regulations including 40 CFR Section **403.12** and amendments thereto. Where Federal regulations do not contain sampling or analytical methods for the pollutant in question, or where the Director determines that Federal regulations are inappropriate for the pollutant in question, sampling and analysis shall be performed by using analytical methods validated by the Director.

(Ord. 1901 § 2, 11-27-2012; Ord. 1920 § 4, 2-25-2014; Ord. 2039 § 24, 1-11-2022)

## § 13.10.585. Upset – Rebuttal.

The following circumstances may be raised as an affirmative defense to an action brought for noncompliance with categorical pretreatment standards:

**(a)** The industrial user can demonstrate through properly signed, contemporaneous operating logs, or other relevant evidence that:

- **(1)** The industrial user can identify the cause(s) of the upset;
- **(2)** When the upset occurred, the facility was being operated in a prudent and workman-like manner, and in compliance with applicable operation and maintenance procedures;
- **(3)** The industrial user has submitted the following information to the plant:
  - **(A)** A description of the discharge to the plant and the cause of the noncompliance;
  - **(B)** The period of noncompliance, including exact dates and times or, if not corrected, the anticipated time the noncompliance is expected to continue; and
  - **(C)** Steps being taken and/or planned to be taken to reduce, eliminate and prevent recurrence of the noncompliance.
- **(4)** The industrial user shall report the information specified in subsection **(a)(3)** of this section to the Director within twenty-four (24) hours of becoming aware of the upset, and provide written notice within five days of becoming aware of the

upset.

**(b)** The industrial user seeking to establish the occurrence of an upset as an affirmative defense shall have the burden of proof.

**(c)** The industrial user shall control production of all discharges to the extent necessary to maintain compliance with categorical pretreatment standards upon reduction, loss, or failure of its treatment facility until the facility is restored or an alternative method of treatment is provided. The requirement under this section applies even in a situation where the primary source of power of the treatment facility is reduced, lost, or fails.

(Ord. 1920 § 4, 2-25-2014)

## § 13.10.590. Termination of service.

**(a)** The Director may revoke any wastewater discharge permit, and/or terminate, or cause to be terminated, wastewater service to any premises:

**(1)** If a discharge of wastewater from the premises causes or threatens to cause a violation of any provision of this chapter or applicable local, State, or Federal regulations;

**(2)** If a discharge of wastewater from the premises causes or threatens to cause a condition of contamination, pollution, or nuisance; or

**(3)** If a permittee violates any provision of this chapter or applicable local, State or Federal regulations or permit condition.

**(b)** This provision is in addition to other statutes, rules or regulations authorizing termination of service for delinquency in payment.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 25, 1-11-2022)

## § 13.10.600. Permit revocation.

Wastewater discharge permits may be revoked if a permittee violates any provision of this chapter or applicable local, State, or Federal regulations or permit conditions or for one or more material violations of this chapter, including but not limited to:

**(a)** Failure to notify the City of changes to the user's operations or systems as described in the wastewater discharge permit application;

**(b)** Misrepresentation of or failure to fully disclose all relevant facts in the wastewater discharge permit application;

**(c)** Falsifying self-monitoring reports;

**(d)** Tampering with monitoring facilities or equipment;

**(e)** Refusing to allow the City timely access to the facility premises and records;

**(f)** Failure to meet the prohibitions on discharge according to applicable State, Federal and local law;

**(g)** Failure to meet compliance time schedules or any wastewater discharge permit conditions or requirements;

**(h)** Failure to pay fines and/or penalties;

**(i)** Failure to pay sewer charges;

**(j)** Failure to complete a wastewater discharge permit application or submit a discharge report;

**(k)** Violation of any pretreatment standard or requirement.

(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 26, 1-11-2022)

## § 13.10.610. Issuance of cease and desist orders.

When the Director finds that a discharge of wastewater has taken place or is likely to take place in violation of this chapter or the provisions of any wastewater discharge permit, the Director may issue an order to cease and desist such discharge, or practice, or operation likely to cause such discharge and direct those persons not complying with such prohibitions, limits, requirements, or provisions to:

**(a)** Comply immediately; or

**(b)** Comply in accordance with a time schedule; and/or

**(c)** Take appropriate remedial or preventative action.

(Ord. 1901 § 2, 11-27-2012)

## § 13.10.620. Emergency corrections, remedial or preventative action.

In the event cleanup, repairs, construction, or other work is performed on any premises pursuant to any provision of law relating to an emergency or that authorizes public work on private property to correct, eliminate or abate a condition that threatens to cause, causes, or has caused a violation of any provision of this chapter or the provisions of a wastewater discharge permit, the user or persons responsible for the occurrence or condition giving rise to such work and/or the owner and/or occupant of the premises shall be liable, jointly and severally, to the City for such public expenditures, and subject to all enforcement and administrative penalty provisions of this Code.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.630. Notice of termination of service and/or permit revocation.

**(a)** Written notice of the permit revocation or service termination, and a statement of the grounds therefor, shall be delivered to the discharger. The notice shall be effective ten calendar days after it is served on the discharger unless the Director determines that immediate permit revocation or suspension of service is necessary for the preservation of public health or safety or for the protection of public or private property. If the Director determines that immediate permit revocation or suspension of service is necessary, the Director may act to revoke the permit or suspend service immediately after written notice is delivered to the discharger.

**(b)** It shall be unlawful for any person to discharge any material into the sanitary sewer system from any premises for which the permit has been revoked or wastewater service has been suspended or terminated.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.640. Violations and penalties.

**(a)** No person shall discharge in violation of, or fail to comply with the requirements of, a discharge permit, or any other provision of this chapter, or other regulations, or discharge limitations established by the City, or local, State and Federal laws and regulations. Each violation of the permit condition or other rule, regulation, or law, shall be a separate violation under this Code.

**(b)** Pursuant to Chapters **1.05** and **1.10** SCCC, the City, in its prosecutorial discretion, may enforce violations of the provisions of this chapter as a criminal, civil, and/or administrative action. All penalties and citations pursuant to applicable law, including but not limited to Government Code Section **54740.5** and Chapters **1.05** and **1.10** SCCC, shall apply to violations of this chapter.

**(c)** In addition to the provisions of Chapters **1.05** and **1.10** SCCC, and due to the significant potential harm caused to the environment by violation of provisions of this chapter, any person who intentionally, accidentally, or negligently violates any provisions of this chapter or any provision of any permit issued pursuant to this chapter, or who intentionally, accidentally, or negligently discharges waste or wastewater that causes pollution or violates any effluent limitation, standard of performance, or pretreatment or toxicity standard shall be civilly liable to the City in a sum up to ten thousand dollars ($10,000.00) for the first day in which such violation occurs, up to twenty-five thousand dollars ($25,000.00) for the second day in which such violation occurs, and fifty thousand dollars ($50,000.00) for each additional day. The City may petition a court of appropriate jurisdiction to impose, assess, and recover such sums. Funds collected pursuant to this section shall be paid to City's environmental compliance fee account.

**(d)** Any assessed penalty shall be paid within ten days from the date of notice of such penalty. Interest shall accrue at the rate of the United States government T-Bills sold at the latest sale prior to the date of the delinquency plus three percent prorated per month or fraction thereof on the amount of penalty from the date of delinquency.

**(e)** The amount of any penalties imposed under this chapter which have remained delinquent for a period of sixty (60) days shall constitute a lien against the real property of the discharger from which the violation occurred resulting in imposition of the penalty. The Director shall cause the amount of uncollected penalty to be recorded with the County Recorder, in accordance with Government Code Section **54740.5**.

**(f)** The City may take enforcement action into immediate effect for any violation of this Code, including through escalation as set forth in the enforcement response plan. Nothing in this Code or the enforcement response plan requires escalation of enforcement and, instead, the City may take any action it deems necessary under the circumstances.

**(g)** Any and all remedies for violations of this chapter are cumulative and not exclusive and shall be in addition to all other remedies available to the City under State and Federal law and local ordinances. Funds collected pursuant to this section shall be paid to City's environmental compliance fee account.
(Ord. 1901 § 2, 11-27-2012; Ord. 2039 § 27, 1-11-2022)

## § 13.10.650. Appeals.

**(a)** Any user, permittee, applicant or other person aggrieved by any decision, action, finding, determination, order or directive of the Director, made or authorized pursuant to this chapter, or relating to any permit issued pursuant to this chapter, or interpreting or implementing the same, may file a written request with the Director for reconsideration thereof within ten days of such decision, action, finding, determination, order or directive. Such request for reconsideration must set forth in detail all supporting facts. No meeting or hearing shall be convened for such request for reconsideration. The Director shall render a final written decision within ten days of the receipt of such request.

**(b)** Any user, permittee, applicant or other person aggrieved by any final determination of the Director may appeal such decision to the City Manager within ten days of the Director's final determination. Written notice of such appeal must be filed with the City Clerk within that ten-day period, and shall set forth all supporting facts. The appeal shall be heard by the City Manager within thirty (30) days from the filing of the notice of appeal. The appellant, the Director, and such other persons as the Director and/or the City Manager may deem appropriate shall be heard at the hearing on such appeal. Upon conclusion of the hearing, the City Manager may affirm, reverse or modify the final determination of the Director in furtherance of the provisions of this chapter. The City Manager's determination on the appeal shall be final.

**(c)** Any decision, action, finding, determination, order or directive of the Director which is subject to a request for reconsideration or appeal shall remain in effect during the pendency of any request for reconsideration and/or appeal.

**(d)** All monetary penalties shall be due and payable during the pendency of any request for reconsideration or appeal. If a determination is not affirmed and the penalty is modified, the Director shall cause any overpayment of penalty to be reimbursed to the payor within thirty (30) days of the final determination.

**(e)** Any administrative citation issued for any violation shall be appealed pursuant to Chapters **1.05** and **1.10** SCCC.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.660. Publication of user in significant noncompliance.

The Director is authorized to publish annually a list of the significant industrial users which, at any time during the previous twelve (12) months, were in significant noncompliance with applicable pretreatment standards and requirements. The term "significant noncompliance" is defined in 40 CFR Section **403.8**.
(Ord. 1901 § 2, 11-27-2012)

## § 13.10.670. Waiver of pollutants not present.

*Repealed by Ord. 2039.*
(Ord. 1920 § 5, 2-25-2014)