# EXHIBIT 9

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

Case 5:25-cv-07360-PCP Document 140-9 Filed 10/16/26 Page 2 of 36 PageID #: 9736

Sign In

City of Santa Clara
The Center of What's Possible

# Legislative Public Meetings

Select Language ▼

City Website | User Guide | Search Files | Calendar | Council and Authorities | Boards and Commissions | TMAC

RSS | Alerts

Details | Reports

| | | | |
|---|---|---|---|
| File #: | 24-1603 Version: 1 | Name: | |
| Type: | Consent Calendar | Status: | Agenda Ready |
| File created: | 12/19/2023 | In control: | City Council and Authorities Concurrent |
| On agenda: | 9/24/2024 | Final action: | |

Title: Action to Waive First Reading and Introduce an Ordinance Amending and Restating in its Entirety Chapter 13.20 (Storm Drains and Discharges) of Title 13 (Public Services) of "The Code of the City of Santa Clara, California" to Enable Compliance with Regional Water Resources Control Board Requirements and Update Administrative Language

Attachments: 1. Ordinance, 2. Ordinance No. 2072 Intro

History (1) | Text

1 record | Group | Export

| Date | Ver. | Action By | Action | Result | Action Details | Meeting Details | Video or Audio |
|---|---|---|---|---|---|---|---|
| 9/24/2024 | 1 | City Council and Authorities Concurrent | Approved the Consent Calendar | Pass | Action details | Meeting details | Not available |

Sign In

City of Santa Clara
The Center of What's Possible

# Legislative Public Meetings

Select Language ▼

City Website | User Guide | Search Files | Calendar | Council and Authorities | Boards and Commissions | TMAC

RSS | Alerts

Details | Reports

| | | | |
|---|---|---|---|
| File #: | 24-1002 Version: 1 | Name: | |
| Type: | Consent Calendar | Status: | Agenda Ready |
| File created: | 9/27/2024 | In control: | City Council and Authorities Concurrent |
| On agenda: | 10/22/2024 | Final action: | |

Title: Action to Waive Second Reading and Adopt Ordinance No. 2072 Amending and Restating in its Entirety Chapter 13.20 (Storm Drains and Discharges) of Title 13 (Public Services) of "The Code of the City of Santa Clara, California" to Enable Compliance with Regional Water Resources Control Board Requirements and Update Administrative Language.

Attachments: 1. Ordinance No. 2072 Intro, 2. Ordinance No. 2072 Adoption

History (1) | Text

1 record | Group | Export

| Date | Ver. | Action By | Action | Result | Action Details | Meeting Details | Video or Audio |
|---|---|---|---|---|---|---|---|
| 10/22/2024 | 1 | City Council and Authorities Concurrent | Approved the Consent Calendar | Pass | Action details | Meeting details | Not available |

**ORDINANCE NO. 2072**

**AN ORDINANCE OF THE CITY OF SANTA CLARA, CALIFORNIA, AMENDING AND RESTATING IN ITS ENTIRETY CHAPTER 13.20 (STORM DRAINS AND DISCHARGES) OF TITLE 13 (PUBLIC SERVICES) OF "THE CODE OF THE CITY OF SANTA CLARA, CALIFORNIA"**

**BE IT ORDAINED BY THE CITY OF SANTA CLARA AS FOLLOWS:**

**WHEREAS,** the City is regulated by the Municipal Regional Stormwater National Pollutant Discharge Elimination System Permit which has been significantly updated since the preceding ordinance was adopted in 1994;

**WHEREAS,** the City is required to implement compliance programs for several sites including new and redevelopment, construction, industrial and commercial, and private land drainage areas;

**WHEREAS,** these new stormwater regulations impose a need for City authority to inspect, monitor, sample, require corrections, and assess appropriate fees to meet compliance requirements; and

**WHEREAS,** City has prepared amendments to its existing Code in order to satisfy applicable legal requirements.

**NOW THEREFORE, BE IT FURTHER ORDAINED BY THE CITY OF SANTA CLARA AS FOLLOWS:**

**SECTION 1**: Chapter 13.20 (entitled "Storm Drains and Discharges") of Title 13 (entitled "Public Services") of "The Code of the City of Santa Clara, California" ("SCCC") is amended and restated as follows:

//

//

“**Chapter 13.20**

**STORM DRAINS AND DISCHARGES**

Sections:

Article I. Storm Drain Discharge, Procedure, Use Regulations, and Prohibited Substances

13.20.010 Purpose.

13.20.020 Definitions.

13.20.030 Discharges into City storm drains.

13.20.040 Stormwater Management Requirements for New and Redevelopment Projects.

13.20.050 Stormwater Management Requirements for Construction Sites.

13.20.060 Stormwater Management Requirements for Industrial and Commercial Sites.

13.20.070 Stormwater Management Requirements for Private Land Drainage Areas (PLDAs).

13.20.080 Stormwater Management Plan Review and Inspection Fees.

13.20.090 Authority to Inspect, Monitor, and Sample.

13.20.100 Suspension of service.

13.20.110 Monitoring of discharge into the storm drain system.

13.20.120 Public nuisance.

13.20.130 Protection from accidental discharge – Accidental discharge notification.

13.20.140 Discharge pursuant to City and/or NPDES permit.

13.20.150 Criminal or Civil penalty for violation, payment of funds to account.

13.20.160 Emergency cleanup or abatement.

13.20.170 Administrative penalties.

13.20.180 Costs of enforcement.

Article II. Storm Drain Environmental Compliance Fee

13.20.190 Definitions.

13.20.200 Rates – Users within the City.

13.20.210 Rates – Issuance of bills – Information required.

Article III. Polystyrene Foam Disposable Service Ware

13.20.220 Definitions.

13.20.230 Polystyrene foam disposable food service ware prohibited.

13.20.240 Exemptions to the polystyrene foam disposable food service ware prohibition.

Article IV. Single-Use Carry-Out Plastic Bags

13.20.250 Definitions.

13.20.260 Single-use carry-out bags prohibited.

13.20.270 Administrative fine.

//

//

//

//

//

//

//

//

//

**Article I. Storm Drain Discharge, Procedure, Use Regulations, and Prohibited Substances**

**13.20.010 Purpose.**

This chapter is enacted for the protection of health, life, resources, and property through prevention and control of unauthorized discharges into watercourses, pursuant to a Federal mandate under (i) what is commonly referred to as the Clean Water Act (33 U.S.C. 1251 et seq.) and in accord with (ii) the California Water Code, Division 7 (entitled "Water Quality" – Section 13020 et seq. and commonly referred to as the "Porter-Cologne Water Quality Control Act"), and (iii) the Municipal Regional Stormwater National Pollution Discharge Elimination System (NPDES) Permit (MRP) issued by the California Regional Water Quality Control Board, San Francisco Bay Region, under which the City is a permittee. The primary goal of this chapter is the cleanup of stormwater pollution from urban runoff that flows to creeks and channels, eventually discharging into the South San Francisco Bay.

**13.20.020 Definitions.**

For the purposes of this Article, the following words and phrases shall have the meanings ascribed to them by this section, unless the context or the provision clearly requires otherwise.

(a) Reserved for future use.

//

//

//

//

//

(b) "B" definitions:

(1) "Best management practices (BMPs)" means activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the discharge of pollutants to nearby creeks, streams, rivers, bays, and other waters of the United States. BMPs include treatment requirements, operation and maintenance procedures, and practices to control site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

(c) "C" definitions:

(1) "City" means and includes all the territory lying within the municipal boundaries of the City of Santa Clara, as presently existing, plus all territory which may be added thereto during the effective term of the ordinance codified herein.

(2) "City Manager" means the City of Santa Clara's City Manager and his/her duly authorized agents and representatives.

(3) "Conditions of Approval (COAs)" means requirements that the City may adopt for a project in connection with a discretionary action (e.g., adoption of an Environmental Impact Report or negative declaration or issuance of a use permit). COAs may include features to be incorporated into the final plans for the project and may also specify uses, activities, and operational measures that must be observed over the life of the project.

(4) "Construction General Permit" means an NPDES permit issued by the California State Water Resources Control Board for construction activity that disturb one (1) or more acres of soil or that are part of a common plan of development or sale that in total disturbs more than one (1) acre of land surface.

//

(d) “D” definitions:

(1) “Discharger” means any person who discharges, causes, or permits the discharge of industrial waste into a City sewer or storm drain.

(e) Reserved for future use.

(f) “F” definitions:

(1) “Full trash capture devices” are treatment controls that block trash from entering stormwater system that meet the trash capture criteria included in the MRP.

(g) Reserved for future use.

(h) “H” definitions:

(1) “Hydromodification” means the modification of the runoff hydrograph from a project site that is caused by land development, resulting in increased peak flows, volumes, and flow durations.

(2) “Hydromodification Management” (HM) refers to the use of detention and/or infiltration facilities that are constructed with special discharge structures to match pre-project runoff peak flows, volumes, and flow durations.

(i) “I” definitions:

(1) “Illegal discharge” means any discharge to a City storm drain or storm sewer that is not composed entirely of stormwater except non-stormwater discharges authorized by an MRP, or other NPDES permit, or the state or regional water control authority.

//

//

//

//

(2) “Impervious surface" means a constructed or modified surface that does not allow rainfall to percolate through to the subsoil and thus creates stormwater runoff. Impervious surface includes, but is not limited to, building rooftops, pavement, sidewalks, patios, driveways or other hardscape where such surfaces are not constructed with pervious materials.

(3) “Industrial General Permit” means an NPDES permit issued by the California State Water Resources Control Board that regulates industrial storm water discharges and authorized non-storm water discharges from certain industrial facilities in California based on their Standard Industrial Classification (SIC) code.

(j) Reserved for future use.

(k) Reserved for future use.

(l) “L” definitions:

(1) “Low Impact Development” or “LID” is a land planning and engineering technique that maintains a site’s predevelopment hydrology by minimizing the amount of disturbed areas and impervious cover and then infiltrating, storing, detaining, evapotranspiring, and/or biotreating stormwater runoff close to its source.

(m) “M” definition:

(1) “Municipal Regional Stormwater Permit (MRP)” means the Municipal Regional Stormwater National Pollution Discharge Elimination System (NPDES) permit issued by the Regional Water Quality Control Board, San Francisco Bay Region to the City of Santa Clara and other permittees.

//

//

//

(n) “N” definitions:

(1) “Non-stormwater” means any discharge that is not composed entirely of stormwater including, but not limited to, sewage, industrial wastes, petroleum products, PAHs, coal tar, or any refuse substance arising from the manufacture of gas from coal or petroleum, chemicals, detergents, solvents, oils, paints, contaminated water, chlorinated swimming pool water, trash, pesticides, wash water containing copper, or any other discharge containing heavy metals (e.g., copper, lead, mercury), pathogens (e.g., bacteria, viruses, protozoa), synthetic organics (e.g., pesticides, herbicides, PCBs), nutrients (e.g., nitrogen and phosphorus fertilizers); oxygen-demanding substances (e.g., decaying vegetation and animal waste), toxins, or other wastewater.

(o) Reserved for future use.

(p) “P” definitions:

(1) “Person” includes any person, firm, association, organization, partnership, business trust, joint venture, corporation, or company, and includes the United States, the State of California, the County of Santa Clara, special purpose districts, and any officer or agency thereof.

(2) “Private Land Drainage Areas (PLDA)” means private parcels, excluding single-family and non-urban use parcels, that are significant trash generating, and that drain to storm drain inlets that the City does not own or operate, but that are plumbed to the City’s storm drain system, and are not already addressed by full trash capture devices.

(q) Reserved for future use.

(r) “R” definitions:

(1) "Regulated Project" is a new development and redevelopment project, including large detached single-family home projects, that create and/or replace an amount of impervious surface area that equals or exceeds the thresholds described in the MRP. The impervious surface area created and/or replaced by the project includes portions of the public right of way, such as the street frontage, that are constructed or reconstructed as part of the project.

(s) "S" definitions:

(1) "Site Design Measures" are site planning techniques to conserve natural spaces and/or limit the amount of impervious surface at new development and redevelopment projects to minimize runoff and the transport of pollutants in runoff.

(2) "Small Development and Redevelopment Projects" and "Smaller Detached Single-Family Home Projects" are projects that create and/or replace an amount of impervious surface area that is less than the threshold for Regulated Projects, but greater than the threshold for Non-Regulated Projects.

(3) "Source Control Measures" are structural or nonstructural measures help prevent runoff pollution by reducing the potential for contact with rainfall runoff at the source of pollution. Source Control Measures minimize the contact between pollutants and urban runoff.

(4) "Stormwater" means rainfall runoff, snow melt runoff, surface runoff, and drainage from natural sources, and excludes infiltration.

(5) "Stormwater Management Plan" means a plan identifying site design, source control, stormwater treatment, and hydromodification management measures as applicable for managing stormwater runoff from a Regulated Project for complying with the MRP.

(6) “Stormwater Pollution” represents a process whereby pollutants, debris, and chemicals generated from various land uses accumulate on streets, construction sites, parking lots, and other exposed surfaces and in sub-surface soils and are washed off and carried away by stormwater runoff into storm drains and watercourses. The major pollutants of concern in these discharges include, but are not limited to, total suspended solids, sediment, heavy metals (e.g., copper, lead, zinc, cadmium, mercury), polychlorinated biphenyls (PCBs), pathogens (e.g.,, bacteria, viruses, protozoa), trash, petroleum products and Polycyclic Aromatic Hydrocarbons (PAHs), synthetic organics (e.g., pesticides, herbicides), nutrients (e.g., nitrogen and phosphorus fertilizers); oxygen-demanding substances (e.g., decaying vegetation and animal waste), toxins, or any other substance or material deleterious to fish, plant life, or bird life.

(7) “Storm Water Pollution Prevention Plan (SWPPP)” means a site-specific document that includes information needed to demonstrate compliance with the Construction General Permit or the Industrial General Permit.

(8) “Storm Drain System” sometimes termed “storm sewer,” means any pipe, conduit (including but not limited to streets, curbs, and gutters), or sewer of the City, designed or used for the disposal of stormwaters, surface waters, and natural drainage, including expressly authorized unpolluted water, but excluding any community sanitary sewer system.

(t) Reserved for future use.

//

//

//

(u) “U” definitions:

(1) “Unpolluted water” means water to which no constituent has been added, either intentionally or accidentally, that would render such water unacceptable for disposal to storm systems, natural drainage, or directly to surface waters.

(v) Reserved for future use.

(w) “W” definitions:

(1) “Waste” includes sewage and soil from erosion and any and all other waste substances, liquid, solid, gaseous or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing operation of whatever nature, including waste placed within containers of whatever nature prior to, and for purposes of, disposal.

(2) “Watercourse” means a channel in which a flow of water occurs, either continuously or intermittently.

(3) “Wastewater” means water that contains any waste.

(x) Reserved for future use.

(y) Reserved for future use.

(z) Reserved for future use.

**13.20.030 Discharges into City storm drains.**

(a) It shall be unlawful to discharge, or cause, allow, or permit to be discharged into any storm drain, storm sewer, or natural outlet or channel any non-stormwater discharge.

(b) No person shall discharge any substance directly into a manhole or other opening in a City storm drain or storm sewer other than through a City-approved storm drain connection.

//

//

(c) Upon permit application and approval by the Department of Public Works, unpolluted water may be discharged into the City's Storm Drain System or into a natural outlet. No discharge other than rainfall runoff shall be allowed, except for such discharge as is expressly permitted by the MRP and will not cause any impairment in the beneficial uses orquality of water of the State as defined in the California Water Code, or any special requirements of the Regional Water Quality Control Board, San Francisco Bay Region, orinjure or interfere with the City's storm drain system or the operation of the State's watercourses.

(d) The City may, from time to time, by resolution of the City council, adopt supplementary rules and regulations on discharge into any storm drain or natural outlet or channel that shall have the same force and effect as if set forth herein and for which the remedies herein for violation shall be applicable.

**13.20.040 Stormwater Management Requirements for New and Redevelopment Projects.**

(a) Regulated Projects shall be required to implement Site Design Measures, source control, stormwater treatment, and, if applicable, hydromodification management (HM) measures. Stormwater treatment shall be provided using Low Impact Development (LID) techniques designed in accordance with the numeric sizing criteria described in the MRP.

(b) All Regulated Project applicants shall submit a Stormwater Management Plan as part of the development application. The Stormwater Management Plan shall include plans and related documentation demonstrating how the requirements of the MRP will be met, and approval shall not be granted until the City determines that the Stormwater ManagementPlan complies with the requirements of the MRP.

//

(c) Certain Regulated Projects, as defined in the MRP, that are smart growth, high density, and affordable housing projects shall be allowed to use specific types of non-LID treatment (i.e., high flow rate tree well filters and media filters), if the use of LID treatment is first evaluated and determined to be infeasible. The project applicant shall submit documentation to show why the use of LID treatment is infeasible and identify the non-LID treatment proposed based on the characteristics of the project.

(d) If allowed by the MRP and authorized by the City, Regulated Projects shall be allowed to provide alternative or in-lieu compliance by treating an equivalent flow and pollutant load of the project's stormwater runoff with LID treatment measures at an on-site location that otherwise would not require treatment, or at an offsite location in the same watershed, or by paying fees to provide stormwater treatment at a regional project or an offsite project constructed and maintained by others. The offsite and fees alternative compliance options shall provide a net environmental benefit, as described in the MRP.

(e) Small Development and Redevelopment Projects and Smaller Detached Single-Family Home Projects that require approvals and/or permits under the City's planning, building, or other comparable authority, shall include at least one of the following site design measures:

(1) Direct roof runoff into cisterns or rain barrels for reuse;

(2) Direct roof runoff onto vegetated areas;

(3) Direct runoff from sidewalks, walkways, and/or patios onto vegetated areas;

(4) Direct runoff from driveways or uncovered parking areas/lots onto vegetated areas;

(5) Construct sidewalks, driveways, and/or patios with permeable surfaces;

(6) Construct bike lanes, driveways, and/or uncovered parking lots or areas with permeable surfaces.

(f) All new development and redevelopment projects subject to planning, building, development, or other comparable reviews by the City, but not meeting the definition of Regulated Projects, Small Development and Redevelopment Projects or Smaller Detached Single-Family Home Projects shall include appropriate site design measures and source control measures, as determined by the City.

(g) All Regulated Projects shall install on-site full trash capture devices. Installed full trash capture devices shall be maintained by the property owner for the life of the project, following the manufacturer's recommendations for maintenance.

(h) All Regulated Project applicants shall enter into a Stormwater Treatment Measures Inspection and Maintenance Agreement with the City to properly maintain all stormwater treatment measures, HM controls, and full trash capture devices installed on-site at the project location, or at an approved off-site location. The agreement shall provide access, to the extent allowable by law, for representatives of the City, the local vector control district, and the Regional Water Quality Control Board, strictly for the purposes of performing operation and maintenance inspections of the installed stormwater treatment measures, HM controls, and full trash capture devices. Any landowner of a property which has been required by this chapter to construct or install and maintain stormwater treatment measures, HM controls, and full trash capture devices, upon transferring ownership of such property, shall provide the new owners with a current copy of this chapter, and shall inform the new owners in writing of their obligation to properly operate, inspect, and maintain the stormwater treatment measures, HM controls, and full trash capture devices.

//

//

//

(i) Failure to properly maintain stormwater treatment measures, HM controls, and full trash capture devices per approved design shall be considered a violation of this chapter, and the landowner shall be required to make corrections within a specified time frame, as determined by the City. The landowner shall be responsible for the cost of corrections. If, after notice by the City to correct a violation, satisfactory corrections are not made by the landowner within a specified time period, the City may correct the violation by performing all necessary work to place the facility or practice in proper working condition. The landowner shall be assessed for the cost of the work and any penalties.

(j) COAs related to stormwater management approved during the building permit application process must be maintained after project completion, for the life of the project. Failure to comply with COAs shall be considered a violation of this chapter, and the landowner shall be required to make corrections within a specified time frame, as determined by the City. The landowner shall be responsible for the cost of corrections.

**13.20.050 Stormwater Management Requirements for Construction Sites.**

(a) All construction sites owners/operators shall implement and maintain adequate and effective erosion control, run-on and runoff control, sediment control, active treatment systems (as appropriate), dewatering, good site management, and non-stormwater management through all phases of construction (including, but not limited to, grubbing, clearing, site grading, filling, excavation, leveling, building, landscaping, and finishing of lots) until the site is fully stabilized by landscaping or the installation of permanent erosion control measures. All temporary erosion and sediment control measures shall be removed upon completion of construction.

//

//

(b) All construction site owners/operators shall submit, for review and approval by the City, an erosion and sediment control plan that includes seasonally appropriate and effective BMP's, as described in the MRP.

(c) Owners/operators of all construction sites that disturb one acre or more of soil shall file a Notice of Intent (NOI) for permit coverage under the Construction General Permit and ensure that a site-specific Stormwater Pollution Prevention Plan (SWPPP) is developed, and amended as necessary, by a qualified SWPPP developer. The owner/operator shall provide evidence of permit coverage prior to the issuance of building, grading, demolition, or site improvement permits.

(d) All construction site owners/operators shall provide access to representatives of the City for inspecting BMPs prior to ground disturbance, during construction, and after the construction is complete. Upon request, the construction site owner/operator shall present the site-specific SWPPP and evidence of permit coverage under the Construction General Permit to the City. Failure to implement and maintain adequate and effective BMPs year round in accordance with the approved Erosion and Sediment Control Plan or the SWPPP (if applicable) shall be considered a violation of this chapter, and the construction site owner shall be required to make corrections within a specified time frame, as determined by the City.

//

//

//

//

//

//

**13.20.060 Stormwater Management Requirements for Industrial and Commercial Sites.**

(a) All industrial and commercial businesses located or operating within the City shall implement and maintain adequate and effective BMPs, as determined by the City at its sole discretion, to address Stormwater Pollution associated with outdoor process and manufacturing areas; outdoor material storage areas; outdoor waste storage, handling, and disposal areas; outdoor vehicle and equipment storage and maintenance areas; outdoor parking areas and access roads; outdoor wash areas (e.g., areas used to wash restaurant equipment and mats, vehicles, etc.); outdoor drainage from indoor areas; fueling areas; rooftop equipment; contaminated and erodible surface areas; and other sources determined by the MRP to have a reasonable potential to contribute to pollution of stormwater runoff.

(b) Owners/operators of industrial and commercial sites that are subject to the Industrial General Permit shall ensure that a site-specific SWPPP is developed and amended as necessary.

(c) Pursuant to Business and Professions Code Section 16100.3, any business applying to the City for a new or renewed business license that is subject to the Industrial General Permit based on its Standard Industrial Classification (SIC) code shall either demonstrate coverage under the Industrial General Permit or provide sufficient proof of non-applicability to the City prior to the business license being issued or renewed.

//

//

//

//

(d) All industrial and commercial sites shall provide access to representatives of the City to inspect BMPs, and to collect samples and measurements to ensure compliance with the MRP. Upon request, and if applicable, the industrial site owners/operators shall present the site-specific SWPPP, evidence of coverage under the Industrial General Permit, and documentation showing the submittal of the Annual Report to the State Water Resources Control Board as required by the Industrial General Permit. Failure to implement and maintain adequate and effective BMPs or comply with the approved SWPPP (if applicable) shall be considered a violation of this chapter, and the site owner shall be required to make corrections within a specified time frame, at the property owner's cost, as determined by the City.

**13.20.070 Stormwater Management Requirements for Private Land Drainage Areas (PLDAs).**

(a) Owners of sites with designated PLDAs shall provide access to authorized representatives of the City to inspect and qualitatively score areas within PLDAs (e.g., driveways, sidewalks, parking lots, and other impervious surfaces) based on the levels of trash visually observed.

(b) Depending on the levels of trash visually observed, as required by the MRP, the City may require PLDA site owners to implement trash control measures, including, but not limited to, installation of full trash capture device(s) and/or other trash management BMPs. Failure to implement and maintain adequate and effective BMPs shall be considered a violation of this chapter, and the site owner shall be required to make corrections within a specified time frame, at the property owner's cost, as determined by the City.

//

//

(c) If required by the City to install a full trash capture device to service a PLDA, the PLDA site owner shall enter into a maintenance agreement with the City to properly maintain the device(s), in perpetuity. The Agreement shall provide access, to the extent allowable by law, to representatives of the City, strictly for the purposes of performing operation and maintenance inspections of the full trash capture device(s). Upon transferring ownership of such property, the original PLDA site owner, shall provide the new owner(s) with a current copy of this chapter, and shall inform the new owner(s) in writing of their obligation to properly operate and maintain the full trash capture device(s).

(d) Failure to properly maintain the full trash capture device(s) serving a designated PLDA shall be considered a violation of this chapter, and the PLDA site owner shall be required to make corrections within a specified time frame, as determined by the City.

**13.20.080 Stormwater Management Plan Review and Inspection Fees.**

(a) The City may, by resolution of the City Council, establish fees for Stormwater Management Plan review, Erosion and Sediment Control Plan review, SWPPP review, construction site inspections, construction and demolition diversion report verification, installation and operation and maintenance verification inspections of stormwater treatment measures, HM controls, and full trash capture devices, PLDA inspections, and inspections of commercial and industrial facilities.

//

//

//

//

//

//

**13.20.090 Authority to Inspect, Monitor, and Sample.**

(a) When deemed necessary by the City Manager, authorized representatives of the City shall, within the limitations of applicable state and federal laws, be allowed to enter any property at all reasonable times to inspect and monitor the same, and to collect samples and measurements to ensure compliance with the MRP. In the event the owner or occupant refuses entry after a request to enter and inspect has been made, the City is hereby empowered to seek assistance from any court of competent jurisdiction in obtaining such entry.

(b) If the inspection, monitoring, or sampling results indicate a violation of the MRP, the City may require the property owner to make appropriate corrections within a specified time frame, or implement appropriate BMPs, at the property owner's cost, as determined by the City.

**13.20.100 Suspension of service.**

When found necessary by the City Manager or his/her duly authorized agents and representatives to prevent violation of, or nonconformance with, any provision of this chapter or resolution adopted pursuant thereto, he/she shall refuse to allow, and shall suspend service connections with, the storm drain system to any person not complying with allowable storm drain discharges or regulations.

**13.20.110 Monitoring of discharge into the storm drain system.**

(a) When deemed necessary by the City Manager or his/her duly authorized agents and representatives, he/she shall require any person to monitor their storm drain discharges to ensure compliance with allowable discharges.

//

//

(b) Where BMP guidelines or requirements have been adopted by any Federal, State, regional, County, or local agency, for any activity, operation, or facility that may cause or contribute to stormwater pollution or contamination, illicit discharges, discharges of non-stormwater to the stormwater system, every person undertaking such activity or operation, or owning or operating such facility, shall comply with such guidelines or requirements as may be identified by the City Manager or his/her duly authorized agents and representatives.

**13.20.120 Public nuisance.**

The discharge of unscreened garbage, fruit, vegetable, animal, or other solid or liquid industrial wastes into any storm drain or natural outlet or channel, in violation of any provision of this chapter, is hereby declared to be a public nuisance. The City Manager or his/her duly authorized agents and representatives may order cleanup of the waste or abatement of the effects of the waste. In the case of threatened pollution or nuisance as determined by the City Manager or his/her duly authorized agents and representatives, the City may take other remedial action, including, but not limited to, the overseeing of the cleanup and abatement efforts, or the City may seek the issuance of a preliminary or permanent injunction, or both, as may be appropriate, restraining any person from the continued violation of this chapter. Any person who violates the cleanup or abatement may be civilly, criminally, or administratively liable pursuant to SCCC 13.20.150.

//

//

//

//

//

**13.20.130 Protection from accidental discharge – Accidental discharge notification.**

(a) Each person shall provide protection from accidental or negligent discharge of non-stormwater discharge, materials, or other wastes regulated by this chapter into any storm drain, storm sewer, natural outlet, or channel. Liability for any such discharge shall be the responsibility of the person causing or responsible for the discharge, and equipment and facilities used to prevent accidental or negligent discharge of prohibited materials shall be provided and maintained at the user's expense.

(b) All persons shall notify the City of Santa Clara Department of Public Works by telephone immediately upon negligent or accidental discharge of non-stormwater or wastes to enable mitigation or countermeasures to be taken by the City to minimize damage to storm drains and the receiving waters.

(c) This notification shall be followed, within five days of the date of occurrence, by a detailed written statement describing the cause of the negligent or accidental non-stormwater discharge and the measures being taken to prevent future occurrences. Such notification will not relieve the person of liability for violations of this chapter or for any fines or penalties imposed on the City on account thereof under Section 13350 of the California Water Code, or for violation of Section 5650 of the California Fish and Game Code, or any other applicable provisions of State or Federal laws, or local ordinances.

**13.20.140 Discharge pursuant to City and/or NPDES permit.**

(a) Subject to review and approval under SCCC Chapter 13.20.030, the provisions of this chapter shall not prohibit any discharge in compliance with a valid NPDES permit issued to the discharger.

//

//

(b) Any discharge that would result in or contribute to a violation of the City-issued permit and the City's NPDES permit, which shall be available from the City's Department of Public Works, and any amendment, revision, or reissuance thereof, either separately considered or when combined with other discharges, is prohibited. Liability for any such non-stormwater discharge shall be the responsibility of the person causing or responsible for the non-stormwater discharge, and such person shall protect, defend, indemnify and hold harmless the City in any administrative or judicial enforcement action relating to such action.

**13.20.150 Criminal or civil penalty for violation, payment of funds to account.**

(a) Pursuant to SCCC 1.05.070, the City in its prosecutorial discretion, may enforce violations(s) of the provisions of this chapter as a criminal, civil, and/or administrative action. Administrative citations issued under this chapter shall follow the process set forth in Chapter 1.10 SCCC.

(b) Citation Authority. The following designated employee positions may enforce the provisions of this chapter by issuance of citations. Persons employed in such positions are authorized to exercise the authority provided in Penal Code Section 836.5 and are authorized to issue citations for violations of this chapter. The designated employee positions are the City Manager, or his/her duly authorized agents and representatives.

//

//

//

//

//

//

**13.20.160 Emergency cleanup or abatement.**

In order to enforce the provisions of this chapter, when the City Manager (or his/her duly authorized agents and representatives) finds and determines that the severity of the violation warrants immediate action, he/she shall clean up or abate violation thereof. The cost of such cleanup or abatement shall be recovered by the City. Such emergency cleanup or abatement will not relieve the person of further action, which may be taken by the City Manager (or his/her duly authorized agents and representatives), including but not limited to, suspension, revocation, or modification of the discharger's permit, liability for any violations of this chapter, or any other applicable provisions of State or Federal laws, or local ordinances.

**13.20.170 Administrative penalties.**

Whenever the City Manager (or his/her duly authorized agents and representatives) finds that any person has violated any notice of violation requiring compliance with any provision of this chapter, or has violated any provision of this chapter, he/she may assess an administrative penalty in a sum not to exceed one thousand dollars ($1,000.00) per violation and ten thousand dollars ($10,000) per day, excluding inspection costs, or cleanup or abatement costs. The remedy provided in this section shall be pursuant to administrative procedures and is cumulative and not exclusive, and shall be in addition to all other remedies available to the City under State and Federal law and local ordinances.

**13.20.180 Costs of enforcement.**

In any civil, criminal, or administrative appeal, hearing, or action commenced by the City under this chapter, the City shall be entitled to recover from the defendant of such action reasonable attorneys' fees, costs of suit, and any other costs of enforcement, including, but not limited to, inspection costs and cleanup or abatement costs.

**Article II. Storm Drain Environmental Compliance Fee**

**13.20.190 Definitions.**

(a) "Commercial, industrial, or miscellaneous premises" means a premises designed, improved, or used for a commercial or industrial purpose, other than multifamily or single- family residential purpose, and includes, but is not limited to, private schools and churches.

(b) "Multifamily residential premises" means a premises designed, improved, or used as a residence for five or more families, including apartments and condominiums, and that is not designed, improved, or used for a commercial, industrial, or miscellaneous purpose.

(c) "Premises" means a separate lot or parcel of land, improved or unimproved, which is connected to, or benefits from, directly or indirectly, the storm drain system, or any portion thereof, or from which any water runoff is discharged directly or indirectly into the City's storm drain system.

(d) "Single-family residential premises" means a premises that is designed, improved, or used as a residence for one family only, which includes but is not limited to, individual duplex, triplex, and fourplex residential dwelling units, and that is not designed, improved, or used for a commercial, industrial, multifamily residential, or miscellaneous purpose.

(e) "Storm Drain Environmental Compliance Fee" means a program established by the City to assess the fees necessary to cover the costs of the City's federally mandated stormwater management program pursuant to the MRP.

//

//

//

//

**13.20.200 Rates – Users within the city.**

There is hereby levied and assessed against and upon all premises having storm drain discharges into or through the storm drain system a monthly storm drain environmental compliance fee The City may, by resolution, establish and amend the monthly storm drain charge and define how such charge will be applied to various types of premises within the city. Said resolution shall contain the effective date of any change in the monthly storm drain charge.

**13.20.210 Rates – Issuance of bills – Information required.**

All bills for storm drain charges shall be issued by the City Department of Finance. Storm drain charge amounts shall be combined with bills or statements for water and sewer service provided by the City. Storm drain charges shall be assessed in all cases where the premises in question is connected to the City's water system, sewer system, or storm drain system.

The bills shall state their purpose and the name and last known address of the person responsible for payment, and list separately each charge for water service, sewer service, and storm drain service. None of these charges shall be paid separately from the other. All bills shall be for monthly periods or for such other period as shall be determined by resolution of the City.

**Article III. Polystyrene Foam Disposable Service Ware**

**13.20.220 Definitions.**

(a) "Director of Public Works" means the Director of Public Works and his/her duly authorized agents and representatives.

//

//

(b) “Disposable food service ware” means single-use disposable products used in the restaurant and food industry for serving prepared food and includes, but is not limited to, plates, trays, cups, bowls and hinged or lidded containers (clamshells). “Disposable food service ware” does not include straws, utensils, drink lids or ice chests.

(c) “Food vendor” means any establishment located in the City of Santa Clara that sells or otherwise provides prepared food for consumption on or off its premises, and includes, but is not limited to, any shop, sales outlet, restaurant, bar, pub, coffee shop, cafeteria, caterer, convenience store, liquor store, grocery store, supermarket, delicatessen, mobile food truck, vehicle or cart, or roadside stand. A “food vendor” does not include a food service provider that is associated with either a nonprofit organization with Section 501(c)(3) status under the Internal Revenue Code or a public agency sponsored program.

(d) “National food vendor” means a food vendor that is a chain of franchised or corporate owned establishments located in more than one state.

(e) “Polystyrene foam” means a thermoplastic petrochemical material made from a styrene monomer and expanded or blown using a gaseous agent (expanded polystyrene), injection molding, form molding, and extrusion-blow molding (extruded foam polystyrene). “Polystyrene foam” is commonly made into disposable food service ware products. “Polystyrene foam” does not include clear or solid polystyrene (oriented polystyrene).

(f) “Prepared food” means food or beverages that are packaged, cooked, chopped, sliced, mixed, brewed, frozen, squeezed or otherwise prepared on the premises. “Prepared food” does not include: (1) any raw, uncooked meat products or fruits or vegetables unless it can be consumed without further preparation; or (2) prepackaged food that is delivered to the food vendor wholly encased, contained or packaged in a container or wrapper, and sold or otherwise provided by the food vendor in the same container or packaging.

**13.20.230 Polystyrene foam disposable food service ware prohibited.**

(a) No national food vendor shall sell or otherwise provide prepared food in polystyrene foam disposable food service ware on or after September 1, 2014.

(b) No food vendor shall sell or otherwise provide prepared food in polystyrene foam disposable food service ware on or after January 1, 2015.

**13.20.240 Exemptions to the polystyrene foam disposable food service ware prohibition.**

(a) A national food vendor or food vendor may seek an exemption from the prohibition under SCCC 13.20.230 due to a “unique packaging hardship” under subsection (b) of this section or a “financial hardship” under subsection (c) of this section.

(b) The national food vendor or food vendor must demonstrate that no reasonably feasible alternative exists to a specific and necessary polystyrene foam disposable food service ware to qualify for a “unique packaging hardship” exemption.

(c) The national food vendor or food vendor must demonstrate both the following to qualify for a “financial hardship” exemption: (1) a gross income under three hundred thousand dollars ($300,000.00) on its annual income tax filing for the most recent tax year, and (2) with respect to each specific and necessary polystyrene foam disposable food service ware, that there is no feasible alternative that would cost the same or less than the polystyrene foam disposable food service ware.

//

//

//

//

//

(d) The national food vendor or food vendor may submit a written application for an exemption on a form provided by the Public Works Department. The Director of Public Works or designee may require the applicant to submit additional information or documentation to make a determination regarding the exemption request. A request for exemption shall be with or without condition, for a period of twelve (12) months. The national food vendor or food vendor must apply for a new exemption period no later than sixty (60) days prior to the expiration of the then current exemption period to preserve a continuous exemption status. Each application shall be reviewed anew and will be based on the most current information available. The determination of the Director or designee shall be final and is not subject to appeal.

**Article IV. Single-Use Carry-Out Plastic Bags**

**13.20.250 Definitions.**

(a) “Customer” means any person obtaining goods from a retail establishment.

(b) “Nonprofit charitable organization” means a charitable organization, as defined in Section 501(c)(3) of the Internal Revenue Code of 1986.

(c) “Person” means any natural person, firm, corporation, partnership or other organization or group however organized.

(d) “Prepared food” means food or beverage which is prepared on the premises by cooking, chopping, slicing, mixing, freezing or squeezing, and which requires no further preparation to be consumed. “Prepared food” does not include any produce, bulk food or meat department within a retail establishment.

(e) “Public eating establishment” means a:

//

//

(1) Restaurant, take-out food establishment or any other business that receives ninety percent (90%) or more of its revenue from the sale of prepared food to be eaten on or off its premises; or

(2) Department, unit or section located within and operated by a retail establishment that generates ninety percent (90%) or more of its revenue from the sale of prepared food to be eaten on or off its premises, and the department, unit or section does not engage in the sale of perishable or nonperishable goods from another department, unit or section within the same retail establishment.

(f) “Recycled paper bag” means a paper bag provided at the check stand, cash register, point of sale or other point of departure for the purpose of transporting food or merchandise out of the establishment that contains no old growth fiber and a minimum of forty percent (40%) post-consumer recycled content; is one hundred percent (100%) recyclable; and has printed in a highly visible manner on the outside of the bag the word “Recyclable,” the name and location of the manufacturer, and the percentage of post-consumer recycled content.

(g) “Retail establishment” means any commercial establishment that sells perishable or nonperishable goods including, but not limited to, clothing, food and personal items directly to the customer; and is located within or doing business within the geographical limits of the city of Santa Clara. “Retail establishment” does not include public eating places, nonprofit charitable organizations, or farmer’s markets.

(h) “Reusable bag” means either a bag made of cloth or machine washable fabric that has handles, or a durable plastic bag with handles that is at least 2.25 mil thick and is specifically designed and manufactured for multiple reuse.

//

(i) "Single-use carry-out bag" means a bag other than a reusable bag provided at the check stand, cash register, point of sale or other point of departure for the purpose of transporting food or merchandise out of the establishment. "Single-use carry-out bags" do not include bags without handles provided to the customer: (1) to transport produce, prepared food, bulk food or meat from a produce, deli, bulk food or meat department within a store to the point of sale; (2) to hold prescription medication dispensed from a pharmacy; (3) to segregate food or merchandise that could damage or contaminate other food or merchandise when placed together in a reusable bag or recycled paper bag; (4) to protect clothing or garments after cleaning; or (5) to place personal items for the purpose of security requirements.

**13.20.260 Single-use carry-out bags prohibited.**

(a) No retail establishment shall provide a single-use carry-out bag to a customer, at the check stand, cash register, point of sale or other point of departure for the purpose of transporting food or merchandise out of the establishment effective December 1, 2014.

(b) On or before December 1, 2014, a retail establishment may make available for sale to a customer a recycled paper bag or a reusable bag for a minimum charge of ten cents ($0.10).

(c) Notwithstanding this section, no retail establishment may make available for sale a recycled paper bag unless the amount of the sale of the recycled paper bag is separately itemized on the sale receipt.

//

//

//

//

(d) A retail establishment may provide a customer participating in the California Special Supplement Food Program for Women, Infants, and Children pursuant to Article 2 (commencing with Section 123275) of Chapter 1 of Part 2 of Division 106 of the Health and Safety Code; and a customer participating in the Supplemental Food Program pursuant to Chapter 10 (commencing with Section 15500) of Part 3 of Division 9 of the California Welfare and Institutions Code; with one or more recycled paper bags at no cost.

**13.20.270 Administrative fine.**

(a) A fine may be imposed upon findings made by the City Manager, his or her designee, or a code enforcement officer that any retail establishment has provided a single-use carry-out bag to a customer in violation of this chapter.

(b) Upon findings made under subsection (a) of this section, the retail establishment shall be subject to an administrative fine as follows:

(1) A fine not exceeding one hundred dollars ($100.00) for a first violation;

(2) A fine not exceeding two hundred dollars ($200.00) for a second violation;

(3) A fine not exceeding five hundred dollars ($500.00) for a third and subsequent violations;

(4) Each instance that a retail establishment has provided single-use carry-out bags to a customer constitutes a separate violation.

**SECTION 2: Ordinances Repealed**. With exception of the provisions protected by the savings clause, all ordinances (or parts of ordinances) in conflict with or inconsistent with this ordinance are hereby repealed.

//

//

//

**SECTION 3**: **Savings clause**. The changes provided for in this ordinance shall not affect any offense or act committed or done or any penalty or forfeiture incurred or any right established or accruing before the effective date of this ordinance; nor shall it affect any prosecution, suit or proceeding pending or any judgment rendered prior to the effective date of this ordinance. All fee schedules shall remain in force until superseded by the fee schedules adopted by the City Council.

**SECTION 4**: **Effective date**. This ordinance shall take effect thirty (30) days after its final adoption; however, prior to its final adoption it shall be published in accordance with the requirements of Section 808 and 812 of "The Charter of the City of Santa Clara, California."

PASSED FOR THE PURPOSE OF PUBLICATION this 24TH day of SEPTEMBER, 2024, by the following vote:

| | | |
|---|---|---|
| AYES: | COUNCILORS: | Becker, Chahal, Hardy, Jain, Park and Watanabe, and Mayor Gillmor |
| NOES: | COUNCILORS: | None |
| ABSENT: | COUNCILORS: | None |
| ABSTAINED: | COUNCILORS: | None |

ATTEST: [signature]
NORA PIMENTEL, MMC
ASSISTANT CITY CLERK
CITY OF SANTA CLARA

Attachments incorporated by reference: None