# EXHIBIT 13

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

CalEPA
California Environmental Protection Agency

Gavin Newsom
Governor

Yana Garcia
Secretary for Environmental Protection

**CERTIFIED UNIFIED PROGRAM AGENCY**

**CALEPA RESPONSE TO EVALUATION PROGRESS REPORT #1**

CUPA: Santa Clara City Fire Department Hazardous Materials Division

2024 Evaluation Assessment: July 2024 through April 2025

Timeframe Evaluated: December 15, 2020, through March 30, 2024

Evaluation Team Members:

- CalEPA Team Lead: Tim Brandt
- DTSC: Pheleep Sidhom, Mia Goings, Jessica Harris
- CalEPA: Alexa Kostrikin
- State Water Board: Michelle Suh
- CAL FIRE-OSFM: Mary Wren-Wilson

Evaluation Progress Report #1 received by CalEPA on December 22, 2025, addressing:

- Deficiency #1-5
- Incidental Finding #1-5

**CalEPA response to Evaluation Progress Report #1**

Evaluation Progress Report #2 due to CalEPA on August 10, 2026, will address uncorrected:

- Deficiency #1-5
- Incidental Finding #1-5

After the Final Summary of Findings Report is issued, the CUPA is required to submit Evaluation Progress Reports to CalEPA in accordance with the specified due date (as approved by the CalEPA Secretary pursuant to California Code of regulations, title 27, section 15330, subdivision (b)(6)(A)).

Questions or comments regarding this evaluation should be directed to the CalEPA Team Lead:

**Tim Brandt**
CalEPA Unified Program
Phone: (916) 323-2204
E-mail: timothy.brandt@calepa.ca.gov

## DEFICIENCIES REQUIRING CORRECTION

Deficiency "is a major deviation in implementation of one or more Unified Program elements from the expected standards set forth in statute or regulation. It is a systemic problem that could impact the safety and protection of human health and the environment." (Cal. Code Regs., tit. 27, § 15100, subd. (k).) In addition, recommendations may be provided.

---

1. **DEFICIENCY:**

The CUPA is not consistently following up and documenting return to compliance (RTC) information in the California Environmental Reporting System (CERS) for Hazardous Waste Generator (HWG) Program facilities, Aboveground Petroleum Storage Act (APSA) tank facilities, and HMBP facilities cited with violations.

Review of inspection, violation and enforcement information, also known as compliance, monitoring, and enforcement (CME) information in CERS and information from the CUPA's data management system finds there is no documented RTC for the following violations:

- HWG Program
  - 338 of 800 (42%) cited between July 1, 2021, and June 30, 2024, as of November 18, 2024
    - 392 of 550 (71%) Minor violations did not obtain RTC within 35 days.
- APSA Program
  - 8 of 11 (73%) cited between July 1, 2023, and March 31, 2024, as of March 10, 2025
    - Including 1 violation for not having, or failure to prepare, a Spill Prevention, Control, and Countermeasure (SPCC) Plan
  - 1 violation for not having, or failure to prepare, an SPCC Plan cited between July 1, 2022, and June 30, 2023, as of March 10, 2025
  - 16 of 38 (42%) cited between July 1, 2021, and June 30, 2022, as of March 10, 2025
  - 27 of 40 (68%) cited between July 1, 2020, and June 30, 2021, as of March 10, 2025
- HMBP Program
  - 116 of 209 (56%) cited between April 1, 2023, and March 31, 2024, July 29, 2024
  - 105 of 269 (39%) cited between April 1, 2022, and March 31, 2023, July 29, 2024
  - 91 of 264 (34%) cited between April 1, 2021, and March 31, 2022, July 29, 2024

Note: This Deficiency was identified during the 2020 CUPA Performance Evaluation for HWG facilities, APSA tank facilities, and Underground Storage Tank (UST) facilities and was corrected during the Evaluation Progress Report process for APSA tank facilities. For UST facilities, this deficiency is addressed as incidental finding #4 in the 2024 CUPA Performance Evaluation. Additionally, during the Progress Report process, an issue causing RTC information to be inconsistent when generating CERS reports was identified. Though the Progress Report process concluded, the CUPA continued to address and work towards resolving the issue.

**CITATION:**

Health & Safety Code (HSC), Chapter 6.5, Sections 25110.8.5, 25117.6, and 25187.8(b) and (g); HSC, Chapter 6.11, Section 25404.1.2(c); HSC Chapter 6.67, Section 25270.4.5(a)
HSC, Chapter 6.95, Sections 25508(a)(4) and 25533(d); California Code of Regulations (CCR), Title 27, Sections 15185(a) and (c), and 15200(a) and (e); [CalEPA, DTSC, OSFM]

**CORRECTIVE ACTION:**
By the 1st Progress Report, the CUPA will revise the Inspection and Enforcement (I&E) Plan, or other applicable procedure, to ensure establishment of a delineated process to:

- Ensure facilities cited with violations RTC through applied enforcement
- Document follow-up actions taken by the CUPA to ensure RTC, and
- Document RTC in CERS.

The CUPA will provide CalEPA with the revised I&E Plan, or other applicable procedure.

By the 1st Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with a sortable spreadsheet obtained from the CUPA's data management system or CERS for the following:

- HWG facilities with open violations cited between July 1, 2021, and June 30, 2024;
- APSA tank facilities with open violations cited between July 1, 2020, and March 31, 2024, including open violations for not having, or failure to, prepare an SPCC Plan; and
- HMBP facilities with open violations cited between January 1, 2021, and December 31, 2023.

At minimum, the sortable spreadsheet will include the following information for each facility with an open violation (no RTC):

- Facility name;
- CERS ID;
- Inspection and violation dates;
- Scheduled RTC date;
- Actual RTC date (when applicable);
- RTC qualifier; and
- In the absence of obtained RTC, a narrative of any applied enforcement or follow-up activity to ensure the facility obtains RTC.

The CUPA will prioritize follow-up actions with each facility based on the level of hazard present to public health and the environment.

By the 2nd Progress Report, if amendments to the revised I&E Plan or other applicable procedure are necessary based on feedback from CalEPA, the CUPA will provide CalEPA with the amended I&E Plan or other applicable procedure. If no amendments are necessary, the CUPA will train personnel on the revised I&E Plan or other applicable procedure. The CUPA will provide training documentation to CalEPA, which at minimum, will include the date training was conducted, an outline of the training conducted, and a list of personnel in attendance. Once training is complete, the CUPA will implement the revised I&E Plan or other applicable procedure.

By the 3rd Progress Report, if amendments to the I&E Plan or other applicable procedure were necessary, the CUPA will train personnel on the amended I&E Plan or other applicable procedure. The CUPA will provide training documentation to CalEPA, which at minimum, will include the date training was conducted, an outline of the training conducted, and a list of personnel in attendance. Once training is complete, the CUPA will implement the amended I&E Plan or other applicable procedure.

By the 3rd Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with three HWG and HMBP Program facility records, as requested by state agency, that include RTC documentation, or a narrative of the follow-up activity and any enforcement applied in the absence of RTC.

**CUPA Update 1:**
See the page 2 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [CalEPA, DTSC, OSFM]:**
The narrative update provided is acknowledged. A revised I&E Plan was not provided.

Review of CERS CME information finds there is no documented RTC for the following violations:

- HWG Program, as of February 27, 2026
  - 245 of 805 (30%) cited between July 1, 2021, and June 30, 2024
- APSA Program, as of February 26, 2026
  - 8 of 11 (73%) cited between July 1, 2023, and March 31, 2024
    - Including 1 violation for failure to prepare an SPCC Plan
  - 1 violation for failure to prepare an SPCC Plan cited between July 1, 2022, and June 30, 2023
  - 4 of 38 (11%) cited between July 1, 2021, and June 30, 2022
  - 0 of 40 (0%) cited between July 1, 2020, and June 30, 2021
- HMBP Program, as of February 26, 2026
  - 84 of 211 (40%) cited between April 1, 2023, and March 31, 2024
  - 88 of 270 (33%) cited between April 1, 2022, and March 31, 2023

With the next Progress Report:

- It is no longer necessary to provide an updated spreadsheet for the following:
  - HWG violations cited between July 1, 2021, and June 30, 2024, with no documented RTC;
  - APSA violations cited between July 1, 2022, and March 31, 2024, with no documented RTC
  - HMBP violations cited between January 1, 2021, and December 31, 2023, with no documented RTC
- In the absence of obtained RTC for any violation cited during the timeframes above, a narrative of any applied enforcement or follow-up activity to ensure RTC can be provided
- CalEPA, DTSC and OSFM will review information in CERS to verify the violations cited during the timeframes above have obtained RTC.
- Revise the I&E Plan, or other applicable procedure, to ensure establishment of a delineated process to:
  - Ensure facilities cited with violations RTC through applied enforcement
  - Document follow-up actions taken by the CUPA to ensure RTC, and
  - Document RTC in CERS.
- Provide the revised I&E Plan, or other applicable procedure

---

**2. DEFICIENCY:**
The CUPA is not inspecting each facility subject to HWG, HMBP, and California Accidental Release Prevention (CalARP) Program requirements at least once every three years.

Review of facility files, information provided by the CUPA, and CME information in CERS finds:

- HWG Program
  - As of November 18, 2024, 302 of 661 (46%) facilities were not inspected between July 1, 2021, and June 30, 2024.
- HMBP Program
  - As of July 29, 2024, 451 of 1,029 (44%) facilities were not inspected between April 1, 2021, and March 31, 2024.

- CalARP Program
  - As of July 29, 2024, 5 of 7 (71%) facilities were not inspected between April 1, 2021, and March 31, 2024.

Note: The DTSC component of this Deficiency was identified during the 2017 and 2020 CUPA Performance Evaluations and was not corrected during the Evaluation Progress Report process. The HMBP component of this Deficiency was identified during the 2020 CUPA Performance Evaluation and was not corrected during the Evaluation Progress Report process. The CalARP Program component of this Deficiency was identified during the 2020 CUPA Performance Evaluation and was corrected during the Evaluation Progress Report process.

**CITATION:**
HSC, Chapter 6.5, Section 25201.4(b)(2); HSC, Chapter 6.95, Sections 25511(b); CCR, Title 27, Section 15200(a)(3)(A); [CalEPA, DTSC]

**CORRECTIVE ACTION:**
By the 1st Progress Report, the CUPA will develop, implement, and provide CalEPA with an action plan to ensure each facility subject to HWG, HMBP, and CalARP Program requirements is inspected at least once every three years. The action plan will include, at minimum:

- An analysis and explanation as to why the inspection frequency is not being met. Factors to consider include existing inspection staff resources and the number of facilities scheduled to be inspected each year, response to declared emergencies such as wildfire response and recovery efforts and impacts of the Coronavirus (COVID-19).
- A sortable spreadsheet exported from the CUPA's data management system or CERS, identifying each facility subject to HWG, HMBP, and CalARP Program requirements that has not been inspected within the last three years. For each HWG, HMBP and CalARP Program facility listed, the sortable spreadsheet will include at minimum:
  - Facility name;
  - CERS ID;
  - Date of the last routine inspection; and
  - A schedule to inspect each facility that has not been inspected within the last three years, prioritizing the most delinquent inspections to be completed prior to any other facility inspection based on risk. For each facility, the schedule to inspect should reflect an estimated date, or date range.
- A narrative as to the logic of prioritization for determining the estimated date, or date range of the next routine HWG Program inspections, and a plan for conducting the prioritized next HWG Program routine inspections.
- A narrative of future actions to ensure all facilities subject to HWG, HMBP, and CalARP Program requirements will be inspected at least once every three years.

By the 2nd Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with an updated sortable spreadsheet and a narrative as to how the CUPA is continuing to ensure all facilities subject to HWG, HMBP, and CalARP Program requirements will be inspected at least once every three years.

By the 5th Progress Report, the CUPA will have inspected each facility subject to HWG, HMBP, and CalARP Program requirements identified in the sortable spreadsheet provided with the 1st Progress Report at least once every three years.

**CUPA Update 1:**
See the page 2 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [CalEPA, DTSC]:**
The ongoing staffing challenges and efforts made to correct this Deficiency are recognized. The CUPA is making significant progress towards the correction of this Deficiency.

The narrative provided is acceptable for the HMBP and CalARP Program action plans. The narrative provided does not address the following for the HWG Program:

- A schedule to inspect each facility that has not been inspected within the last three years.
- A narrative as to the logic of prioritization for determining the estimated date, or date range of the next routine HWG Program inspections, and a plan for conducting the prioritized next HWG Program routine inspections.

Review of CERS CME information finds:

- HWG Program, as of February 27, 2026
  - 200 facilities identified as not being inspected once between July 1, 2021, and June 30, 2024, have been inspected, 102 remain uninspected
- HMBBP Program, as of February 26, 2026
  - 327 facilities identified as not being inspected once between April 1, 2021, and March 31, 2024, have been inspected; 124 remain uninspected.
- CalARP Program, as of February 26, 2026
  - 3 facilities identified as not being inspected once between April 1, 2021, and March 31, 2024, have been inspected; 4 remain uninspected

With the next Progress Report:

- It is no longer necessary to provide an updated spreadsheet identifying each facility subject to HWG, HMBP, and CalARP Program requirements that has not been inspected within the timeframe identified above
- CalEPA, DTSC and OSFM will review information in CERS to verify HWG, HMBP and CalARP Program facilities identified as not being inspected, have been inspected.
- Provide an action plan for the HWG Program that includes:
  - A schedule to inspect each HWG Program facility that has not been inspected within the last three years;
  - A narrative as to the logic of prioritization for determining the estimated date, or date range of the next routine HWG Program inspections, and a plan for conducting the prioritized next HWG Program routine inspections;

---

**3. DEFICIENCY:**
The CUPA is not ensuring all businesses subject to Business Plan reporting requirements annually submit an HMBP or a no-change certification to CERS.

On November 19, 2024, review of HMBPs submitted to CERS between May 30, 2023, and July 29, 2024, by businesses subject to Business Plan reporting requirements finds:

- 272 of 1,029 (26%) Business Plan facilities have not submitted a chemical inventory (including site map) or a no-change certification.
- 290 of 1,019 (28%) Business Plan facilities have not submitted emergency response and employee training plans or a no-change certification.

Note: This Deficiency was identified during the 2020 CUPA Performance Evaluation and was not corrected during the Evaluation Progress Report process.

**CITATION:**
HSC, Chapter 6.95, Sections 25505(a), 25508(a), and 25508.2; [CalEPA]

**CORRECTIVE ACTION:**
By the 1st Progress Report, the CUPA will develop, implement, and provide CalEPA with an action plan to ensure all businesses subject to Business Plan reporting requirements annually submit an HMBP or a no-change certification to CERS. The action plan, at minimum, will include how the CUPA will follow up with facilities that have not annually submitted an HMBP or a no change certification to CERS.

By the 2nd Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with a sortable spreadsheet obtained from the CUPA's data management system or CERS, that includes at minimum the following information for each business subject to Business Plan reporting requirements that has not annually submitted an HMBP or a no-change certification:

- Facility name;
- CERS ID;
- Follow-up actions including:
    - Enforcement applied by the CUPA to ensure an HMBP or no-change certification is annually submitted to CERS.

By the 4th Progress Report, the CUPA will ensure each business subject to Business Plan reporting requirements has annually submitted an HMBP or a no change certification to CERS, or the CUPA will have applied enforcement.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [CalEPA]:**
The narrative provided is acceptable.

On March 2, 2026, review of HMBPs submitted to CERS between May 30, 2020, and July 29, 2024, finds:

- 180 of 272 (66%) Business Plan facilities have not submitted a chemical inventory and site map
- 186 of 290 (64%) Business Plan facilities have not submitted emergency response and employee training plans

With the next Progress Report:

- It is no longer necessary to provide an updated spreadsheet identifying each business subject to Business Plan reporting requirements that has not annually submitted an HMBP or a no-change certification
- CalEPA will review information in CERS to verify each facility subject to HMBP reporting requirements has annually submitted an HMBP or no-change certification to CERS.

---

**4. DEFICIENCY:**
The CUPA is not ensuring each stationary source in the CalARP Program reviews and updates the Risk Management Plan (RMP) at least once every five years.

Review of information provided by the CUPA finds:

- 3 of 7 (43%) stationary sources have not updated the RMP at least once in the last five years.

**CITATION:**
CCR, Title 19, Section 5070.11(a)(1) and (b)(1); [CalEPA]

**CORRECTIVE ACTION:**
By the 1st Progress Report, the CUPA will develop, implement, and provide CalEPA with an action plan to ensure each stationary source in the CalARP Program has reviewed and updated the RMP at least once every five years. As part of the action plan, the CUPA will provide CalEPA with a sortable spreadsheet that includes, at minimum the following for each stationary source:

- Facility name;
- CERS ID;
- Date the RMP was last reviewed and updated by the stationary source; and
- Recent follow-up actions with facilities that have not revised and updated the RMP at least once every five years. If a facility is no longer regulated as a CalARP facility, provide a brief explanation regarding the closure of the facility and de-registration pursuant to CCR, Title 19, Section 5070.11 (c) or (d).

By the 2nd Progress Report, the CUPA will provide a statement to CalEPA confirming each stationary source has either reviewed and updated the RMP at least once within the last five years, or the CUPA will have applied enforcement.

**CUPA Update 1:**
See the page 3 of the document titled, “2025_12-17 - CalEPA EPR1.pdf,” for the CUPA narrative update on this item.

**Evaluation Team Response 1 [CalEPA]:**
The CUPA narrative indicates that there is not an update for this Progress Report. With the next Progress Report, provide an action plan to ensure each stationary source in the CalARP Program has reviewed and updated the RMP at least once every five years. As part of the action plan, the CUPA will provide CalEPA with a sortable spreadsheet that includes, at minimum the following for each stationary source:

- CERS ID
- Date the RMP was last reviewed and updated by the stationary source; and
- Recent follow-up actions with facilities that have not revised and updated the RMP at least once every five years. If a facility is no longer regulated as a CalARP facility, provide a brief explanation regarding the closure of the facility and de-registration pursuant to CCR, Title 19, Section 5070.11(c) or (d).

---

**5. DEFICIENCY:**
The CUPA is not consistently conducting complete annual UST compliance inspections and repeat violations are not being reissued during the subsequent routine UST Inspection.

The CUPA is not citing UST violations identified during annual UST compliance inspections in inspection reports, is not reissuing repeat violations during subsequent routine UST inspections, and is not correctly reporting cited violations to CERS, including technical compliance rate (TCR).

Review of UST compliance inspection reports, associated testing and leak detection documents, and CERS CME information on November 18, 2024, between December 15, 2020, and March 30, 2024, finds the following discrepancies:

- Non-compliance was not cited as a violation in an inspection report, and no violation was reported to CERS:
  - CERS ID 10159517
    - Overfill Prevention Equipment Inspection Report dated March 17, 2021, notes "Need to check for ball floats. I was unable to inspect because vapor adapters were stuck on."
      - No violation was cited in the inspection report or reported to CERS for Unified Program Violation Library Type Number 2030036 – Overfill Prevention (USEPATCR 9b).
  - CERS ID 10084975
    - Monitoring System Certification was completed a month late on October 11, 2022.
      - No violation was cited in the inspection report or reported to CERS for Unified Program Violation Library Type Number 2030002 – Leak Detection Equipment Maintenance (USEPATCR 9d) for late Annual Compliance Testing.
    - Spill Container testing was completed a month late on October 11, 2022.
      - No violation was cited in the inspection report or reported to CERS for Unified Program Violation Library Type Number 2060020 – Spill Container (USEPATCR 9d) for late Spill Container Testing.
- Non-compliance was incorrectly cited as a violation in an inspection report and was incorrectly reported to CERS:
  - CERS ID 10084420
    - Inspection report dated August 20, 2021, notes "Spill bucket did not hold. Technician re- tightened the fitting and retested for 60 min" and cites Unified Program Violation Library Type Number 2030036 – Overfill Prevention (USEPATCR 9b). The correct violation is Unified Program Violation Library Type Number 2060020 – (USEPATCR 9a).
  - CERS ID 10159517
    - Inspection report dated March 8, 2022, notes "UDC 9/10 for diesel bravo float and chain did not activate upon detection of liquid. It was readjusted by the tech and retested and passed. Corrected on site, no further action required at this time" and cites Unified Program Violation Type Number 2030003 – Audible Visual Alarm (USEPA Priority). The correct violation is Unified Program Violation Library Type Number 2030043 – Monitoring Equipment (USEPATCR 9d)
  - CERS ID 10084984
    - Inspection report dated September 21, 2022, notes "Premium mechanical line leak detector did not restrict flow upon detection of a 3.0gph leak at 10psi" and cites Unified Program Violation Library Type Number 2030002 - Leak Detection Equipment Maintenance (USEPATCR 9d). The correct violation is Unified Program Violation Library Type Number 2030025 - Line Leak Detector (LLD) -Double-Walled Pressurized Pipe (USEPATCR 9d).
  - CERS ID 10084975
    - Inspection report dated September 26, 2023, notes "Missing Secondary containment test; Overfill test report. Cannot locate in the files. Please keep all UST records in organized manner fashion to be able to locate" and cites

Unified Program Violation Library Type Number 2010012 - Record Keeping: General The correct violations are Unified Program Violation Library Type Numbers 2030036 - Overfill Prevention (USEPATCR 9b) and 2030048 - Secondary Containment Testing (USEPATCR 9d).

- Incomplete or inaccurate testing information:
  - CERS ID 10084414
    - Monitoring System Certification Form dated August 4, 2022, does not cite results in section 6 for the under-dispenser containment (UDC) float and chain.
  - CERS ID 10473358
    - Secondary Containment Testing Report dated April 30, 2021, does not cite results for the Sumps and UDCs.
- Inconsistent identification of UST construction and inspection information:
  - CERS ID 10159517
    - Monitoring System Certification Form dated March 8, 2022, notes tank gauging is used only for inventory control in Section 8 when the facility has two single-walled tanks.
  - CERS ID 10088173
    - Overfill Prevention Equipment Inspection Report dated April 26, 2023, cites the method as "Fill Tub Shut-off Valve" while CERS states "Audible/Visual Alarm."

Note: This Deficiency was identified during the 2020 CUPA Performance Evaluation and was corrected during the Evaluation Progress Report process.

Note: The examples provided above may not represent all instances of this deficiency.

**CITATION:**
HSC, Chapter 6.7, Sections 25288(b) and 25299; CCR, Chapter 16, Sections 2637, 2637.1, 2637.2, 2638, 2711(d), 2713(c) and (d),2715(f)(2); CCR, Title 27, Section 15290(a)(3); [State Water Board]

**CORRECTIVE ACTION:**
By the 1st Progress Report, the CUPA will provide CalEPA with an analysis and explanation as to why complete annual UST compliance inspections are not consistently conducted. The analysis and explanation will include, at minimum:

- Discussion of what procedures and tools may be needed to consistently conduct complete annual UST compliance inspections and correctly report CME information to CERS
  - e.g., identifying areas of the annual UST compliance inspection checklist that can be improved (refer to California CUPA Forum Board "UST Inspection Checklist," at https://calcupa.org/inspection-checklist/index.html;
- Identification of the types and frequency of training needed to consistently conduct complete UST compliance inspections, identify non-compliance, and ensure CME information is reported to CERS;
- A plan to address all reasons why complete annual UST compliance inspections were not consistently conducted.

By the 2nd Progress Report, based on the findings identified in the analysis and explanation, the CUPA will review and revise the I&E Plan, or other applicable procedure, to establish a process for consistently conducting complete annual UST compliance inspections and correctly reporting UST CME information to CERS. The revised I&E Plan, or other applicable procedure will, at minimum include a process for:

- Conducting complete annual UST compliance inspections at all UST facilities, including single-walled UST facilities;
- Review of and follow-up with UST testing and leak detection documents submitted by UST owners or operators as part of the annual UST compliance inspection;
- Documenting observed non-compliance identified during annual UST compliance inspections in UST compliance inspection reports;
- Reporting all inspections, observed non-compliance identified in UST compliance inspection reports and CME information to CERS;
- Conducting annual UST compliance inspections when UST inspection staff are on-site to witness the monitoring system certification and visually inspect all UST required components;
- Conducting annual UST compliance inspections when UST inspection staff are not on-site and cannot witness the monitoring system certification and visually confirm all UST requirements are met;
- Reviewing the annual UST compliance inspection checklist for thoroughness to capture citations in accordance with UST Regulations, HSC, and the Unified Program Violation Library in CERS;

The CUPA will provide CalEPA with the revised I&E Plan, or other applicable procedure. The CUPA will contact the State Water Board for any assistance needed.

By the 3rd Progress Report, if amendments to the revised I&E Plan, or other applicable procedure, are necessary based on feedback from the State Water Board, the CUPA will provide CalEPA with the amended I&E Plan, or other applicable procedure. If no amendments are necessary, the CUPA will train UST inspection staff on the revised I&E Plan, or other applicable procedure. The CUPA will provide training documentation to CalEPA, which at minimum, will include the date training was conducted, an outline of the training conducted and a list of UST inspection staff in attendance. Once training is complete, the CUPA will implement the revised I&E Plan, or other applicable procedure.

By the 4th Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with four UST facility records, as requested by the State Water Board, including, at minimum, annual UST compliance inspection reports and associated testing and leak detection documents.

**CUPA Update 1:**
See the page 3 of the document titled, “2025_12-17 - CalEPA EPR1.pdf,” for the CUPA narrative update on this item.

**Evaluation Team Response 1 [State Water Board]:**
The response provided is acceptable. With the next Progress Report:

- Review and revise the I&E Plan, or other applicable procedure, to establish a process for consistently conducting complete annual UST compliance inspections and correctly reporting UST CME information to CERS. The revised I&E Plan, or other appliable procedures, will, at minimum, include a process for:
    - Conducting complete annual UST compliance inspections at all UST facilities, including single-walled UST facilities;
    - Review of and follow-up with UST testing and leak detection documents submitted by UST owners or operators as part of the annual UST compliance inspection;
    - Documenting observed non-compliance identified during annual UST compliance inspections in UST compliance inspection reports;

 - Reporting all inspections, observed non-compliance identified in UST compliance inspection reports and CME information to CERS;
 - Conducting annual UST compliance inspections when UST inspection staff are on-site to witness the monitoring system certification and visually inspect all UST required components;
 - Conducting annual UT compliance inspections when UST inspection staff are not on-site and cannot witness the monitoring system certification and visually confirm all UST requirements are met;
 - Reviewing the annual UST compliance inspection checklist for thoroughness to capture citations in accordance with UST Regulations, HSC, and the Unified Program Violation Library in CERS.
- Provide the revised I&E Plan, or other applicable procedure.
- Contact the State Water Board for any assistance needed.

Note: As of January 1, 2026, changes to California Code of Regulations, title 23, division 3, chapter 16, went into effect. For additional information see https://www.waterboards.ca.gov/ust/leak_prevention/chapter16/rewrite.html. The CUPA should ensure that all referenced code sections are updated.

---

**6. DEFICIENCY: CORRECTED DURING EVALUATION**

The CUPA is not inspecting each APSA tank facility that stores 10,000 gallons or more of petroleum for compliance with the SPCC Plan requirements of APSA at least once every three years.

On December 5, 2024, review of information provided by the CUPA and CERS CME information between March 31, 2021, and March 31, 2024, reflects the following APSA tank facilities that store 10,000 gallons or more of petroleum were not inspected:

- 14 of 39 (36%)

**CITATION:**

HSC, Chapter 6.11, Section 25404.1.2(c); HSC, Chapter 6.67, Section 25270.5(a); CCR, Title 27, Sections 15185(a) and (c) and 15200(a) and (e); [OSFM]

**CORRECTIVE ACTION: COMPLETED**

During the evaluation, additional inspections were conducted by the CUPA. On March 10, 2025, review of information provided by the CUPA and CERS CME information reflects the following APSA tank facilities that store 10,000 gallons or more of petroleum remain uninspected:

- 2 of 39 (5%)

This Deficiency is considered corrected.

---

### INCIDENTAL FINDINGS REQUIRING RESOLUTION

"Incidental finding is a minor deviation in implementation of one or more Unified Program elements from the expected standards set forth in statute or regulation. It is a limited, non-systemic problem." (Cal.Code Regs., tit. 27, § 15110, subd. (f).) In addition, recommendations may be provided.

---

**1. INCIDENTAL FINDING:**
The CUPA is not consistently classifying APSA Program violations properly.

Review of facility files and CERS CME information on December 4, 2024, between July 1, 2020, and March 31, 2024, reflects the following non-minor APSA Program violation was classified as a minor violation:

- Not having, or failure to prepare, a Spill Prevention, Control, and Countermeasure (SPCC) Plan was cited as a minor violation. Facilities that operate without an SPCC Plan does not meet the definition of minor violation as defined in HSC, Section 25404(a)(3). In addition, classifying a violation for not having an SPCC Plan as minor is inconsistent with, and less stringent than, the U.S. Environmental Protection Agency (US EPA).
  - CERS ID 10134112
  - CERS ID 10088701
  - CERS ID 10633816

Note: This Incidental Finding was identified during the 2020 CUPA Performance Evaluation and was resolved during the Evaluation Progress Report process.

**CITATION:**
CCR, Title 19, Section 1612(d); [OSFM]

**RESOLUTION:**
By the 1st Progress Report, the CUPA will train inspection staff on the definition of minor violation as defined in HSC, Chapter 6.11, Section 25404(a)(3) and how to properly classify violations during compliance inspections as minor, Class I, and Class II. Training should include, at minimum, review of:

- Violation Classification Training Video 2014 (https://www.youtube.com/watch?v=RB-5V6RfPH8)
- 2020 Violation Classification Guidance for Unified Program Agencies (https://calepa.ca.gov/wp-content/uploads/sites/6/2020/06/Violation-Classification-Guidance-Document-accessible.pdf)
- SPCC violations in the "U.S. EPA Civil Penalty Policy for Section 311(b)(3) and Section 311(j) of the Clean Water Act," August 1998, which specifies that a no SPCC Plan violation is not considered minor (https://19january2017snapshot.epa.gov/enforcement/civil-penalty-policy-section-311b3-and-section-311j-clean-water-act-cwa-august-1998_.html)

The CUPA will provide CalEPA with a statement that training has been conducted.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [OSFM]:**
With the next Progress Report, provide an update on training of inspection staff or a statement that training has been conducted.

**2. INCIDENTAL FINDING:**

The CUPA is not consistently citing nor requiring the correction of construction violations at UST systems identified in State Water Board Local Guidance (LG) Letter 150-3, dated February 2021.

Review of the UST Facility/Tank Data Download report obtained from CERS on November 12, 2024, finds:

- The following USTs with single-walled vent or riser piping utilizing the overfill prevention equipment (OPE) exemption:
  - CERS ID 10086160-005
  - CERS ID 10085143-004
  - CERS ID 10085674-001
  - CERS ID 10521814-005
- The following UST system, installed between July 1, 1987, and June 30, 2003, with single-walled vent or riser/fill piping and equipped with only Audible/Visual alarms with no Ball Float or Fill Tube Shut-off Valve:
  - CERS ID 10128409-001
- The following UST systems indicate "No" for Audible/Visual Alarms, Ball Floats, Fill Tube Shut-off Valve, and Exempt:
  - CERS ID 10119793-004
  - CERS ID 10088056-002

**CITATION:**

CCR, Title 23, Sections 2635(d), 2636(a), and 2665(c); [State Water Board]

**RESOLUTION:**

By the 1st Progress Report, the CUPA will identify and provide CalEPA with a list of UST facilities, including the CERS UST tank ID, with incorrect or incomplete OPE construction.

By the 1st Progress Report, the CUPA will provide written correspondence addressed to the UST facility owners/operators, informing the UST owners/operators of the requirement for installation of OPE, or to construct secondary containment for single-walled vent and fill risers. The written correspondence will include language stating that failure to comply with OPE requirements specified in CCR, Chapter 16, Section 2635(c)(1)(B) or (C) or (D) or secondary containment exemptions in CCR, Chapter 16, Section 2636(a) will lead to enforcement. The CUPA will include the State Water Board as a carbon copy recipient on the correspondence.

By the 2nd Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with an updated list, indicating the status of each UST obtaining compliance. If appropriate steps have not been taken by the UST owners/operators to resolve the construction violations, the CUPA will apply enforcement. The CUPA will provide CalEPA with documentation of the applied enforcement.

By the 3rd Progress Report, if appropriate steps have not been taken by the UST owners/operators to resolve the construction violations, the CUPA will apply enforcement, including but not limited to revocation of the UST Operating Permit and issuance of red tags, which prohibit the deposit and withdrawal of product. The CUPA will provide CalEPA with documentation of the applied enforcement.

The State Water Board will consider this Incidental Finding resolved when the UST owners/operators install and correct OPE or secondarily contain vent and fill piping.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [State Water Board]:**
The State Water Board acknowledges that resources have been limited during the database transition. With the next Progress Report:

- Identify and provide a list of UST facilities, including the CERS UST tank ID, with incorrect or incomplete OPE construction
- Provide a copy of the correspondence addressed to the UST facility owners/operators, informing the UST owners/operators of the requirement for installation of OPE, or to construct secondary containment for single-walled vent and fill risers. The written correspondence will include language stating that failure to comply with OPE requirements will lead to enforcement.

---

**3. INCIDENTAL FINDING:**
The CUPA is not consistently implementing proper UST temporary closure requirements.

Review of Report 6 and CERS information finds temporary closure requirements were not met for CERS UST Tank IDs 10473358-001 and 10473358-002.

- Review of Report 6 information finds the following for each UST Tank ID:
    - Reporting Period January – June 2024 reported August 30, 2024
        - UST placed into temporary closure on November 13, 2023
- Review of CERS information finds the following for each UST Tank ID:
    - There are no CERS submittals that accurately capture the temporary closure. The most recent accepted submittal is dated August 14, 2023.

**CITATION:**
HSC, Chapter 6.7, Sections 25293 and 25298(b); CCR, Chapter 16, Sections 2670(b), 2671(c), and 2672(d); [State Water Board]

**RESOLUTION:**
By the 1st Progress Report, and with each subsequent progress report until considered corrected, the CUPA will provide CalEPA with a list of all USTs in temporary closure and the following documentation for each UST facility:

- CERS UST Tank ID
- Facility address
- Date UST was placed into temporary closure
- Sampling assessment allowing extension of 12 months, if temporary closure extends beyond 12 months
- Annual UST compliance inspection reports
- Quarterly inspection reports conducted by the owner or operator, and
- Temporary closure permit

By the 1st Progress Report, the CUPA will review and revise the I&E Plan, or other applicable procedure, to ensure establishment of a process to correctly implement UST temporary closure requirements, which will include, at minimum:

- Issuing a temporary closure extension of no more than an additional 12 months only after the CUPA reviews and approves a site assessment conducted by the owner or operator or issuing a temporary closure permit that does not extend beyond 12 months.

- Requiring documentation from the owner or operator to show inspections were conducted at least once every three months while the UST was in temporary closure.
- Reviewing the quarterly inspections during the UST compliance inspection to ensure the owner or operator is complying with the temporary closure permit requirements.
- Correctly reporting USTs in a temporary closure in CERS and Report 6, including the date in which the USTs were put in a temporary closure, and
- Putting only those USTs into temporary closure that are intended to be brought back into operation.

The CUPA will provide CalEPA with the revised I&E Plan, or other applicable procedure.

By the 2nd Progress Report, if amendments to the revised I&E Plan, or other applicable procedure, were necessary based on feedback from the State Water Board, the CUPA will provide CalEPA with the amended I&E Plan, or other applicable procedure. If no amendments are necessary, the CUPA will train UST inspection staff on the revised I&E Plan, or other applicable procedure. Once training is complete, the CUPA will implement the revised I&E Plan, or other applicable procedure and provide CalEPA with a statement that training has been conducted.

By the 3rd Progress Report, if amendments to the I&E Plan, or other applicable procedure, were necessary, the CUPA will train UST inspection staff on the amended I&E Plan, or other applicable procedure. Once training is complete, the CUPA will implement the amended I&E Plan, or other applicable procedure and provide CalEPA with a statement that training has been conducted.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [State Water Board]:**
The State Water Board acknowledges that resources have been limited during the database transition. With the next Progress Report:

- Provide CalEPA with a list of all USTs in temporary closure and the following documentation for each UST facility:
    - CERS UST Tank ID
    - Facility address
    - Date UST was placed into temporary closure
    - Sampling assessment allowing extension of 12 months, if temporary closure extends beyond 12 months
    - Annual UST compliance inspection reports
    - Quarterly inspection reports conducted by the owner or operator, and
    - Temporary closure permit
- Review and revise the I&E Plan, or other applicable procedure, to ensure establishment of a process to correctly implement UST temporary closure requirements, which will include, at minimum:
    - Issuing a temporary closure extension of no more than an additional 12 months only after the CUPA reviews and approves a site assessment conducted by the owner or operator or issuing a temporary closure permit that does not extend beyond 12 months.
    - Requiring documentation from the owner or operator to show inspections were conducted at least once every three months while the UST was in temporary closure.

- Reviewing the quarterly inspections during the UST compliance inspection to ensure the owner or operator is complying with the temporary closure permit requirements.
- Correctly reporting USTs in a temporary closure in CERS and Report 6, including the date in which the USTs were put in a temporary closure, and
- Putting only those USTs into temporary closure that are intended to be brought back into operation

- Provide the revised I&E Plan, or other applicable procedure.

---

**4. INCIDENTAL FINDING:**

The UST Operating Permit, issued as a Unified Program Facility Permit (UPFP), includes components that are inconsistent with CCR, Title 23, Division 3, and HSC, Division 20, Chapter 6.7 requirements.

Review of the UST Operating Permit finds the following inconsistencies with CCR, Chapter 16 and HSC, Chapter 6.7:

- Page 1 states "The permit holder must notify the City of Santa Clara Fire Department within 30 days of any changes to the permit or UST systems, unless required to obtain approval before making the changes"
  - The correct method of notification is for the permit holder to "submit to the local agency through the California Environmental Reporting System (CERS)"
- Page 3 cites "HSC Division 20, Chapter 6.7 and 6.75 and Title 23 CCR Chapter 16 and 18"
  - The CUPA does not have regulatory authority to implement clean-up of USTs as a Local Oversight Program agency, and therefore cannot cite CCR, Chapter 18 and HSC, Chapter 6.75. The correct citations are as follows:
    - CCR, Title 23, Sections 2610 through 2717.7
    - HSC, Chapter 6.7 Sections 25280 through 25296 and 25298 through 25299.6
- Page 3 states "The permittee must notify the City of Santa Clara Fire Department within thirty (30) days after any changes in the usage of any UST including: a) changes in any monitoring procedure; b) change of owner/operator; c) changes in construction details. Notification must be made thirty (30) days before changing the substance currently stored in any UST Title 23 Section 2711. The City of Santa Clara Fire Department may review, modify, or terminate the Permit to Operate upon receiving notification of the above changes."
  - This combines components from CCR 2711 and 2712 (d), resulting in inconsistencies with UST regulations.

**CITATION:**

HSC, Sections 25284, 25285(b), 25285.1, 25286, 25292.05, and 25297.01(b); CCR, Chapter 16, Sections 2711 and 2712; [State Water Board]

**RESOLUTION:**

By the 1st Progress Report, the CUPA will revise the UST Operating Permit template, to be consistent with CCR, Chapter 16 and HSC, Chapter 6.7. An example UST Operating Permit and permit conditions template has been made available by the State Water Board at: https://www.waterboards.ca.gov/water_issues/programs/ust/docs/permit-template2.docx

The CUPA will contact the State Water Board for assistance with revising the UST Operating Permit template, if necessary. The CUPA will provide the revised UST Operating Permit template, including the revised UST Operating Permit and Permit Conditions to CalEPA.

By the 2nd Progress Report, the CUPA will, if necessary, amend the revised UST Operating Permit template, based on feedback from the State Water Board. The CUPA will provide the amended

UST Operating Permit template to CalEPA. If no amendments are necessary, the CUPA will begin to issue the revised UST Operating Permit.

By the 3rd Progress Report, if amendments to the revised UST Operating Permit template were necessary, the CUPA will begin to issue the amended UST Operating Permit.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [State Water Board]:**
The State Water Board acknowledges that resources have been limited during the database transition. An example UST Operating Permit and permit conditions template has been made available by the State Water Board at:
https://www.waterboards.ca.gov/ust/leak_prevention/performance-evaluations/ust_permit_review.html

Note: As of January 1, 2026, changes to California Code of Regulations, title 23, division 3, chapter 16, went into effect. For additional information see https://www.waterboards.ca.gov/ust/leak_prevention/chapter16/rewrite.html. The CUPA should ensure that all referenced code sections are updated.

With the next Progress Report:
- Revise the UST Operating Permit template, to be consistent with CCR, Chapter 16 and HSC, Chapter 6.7.
- If necessary, contact the State Water Board for assistance with revising the UST Operating Permit template
- Provide the revised UST Operating Permit template, including the revised UST Operating Permit and Permit Conditions

---

**5. INCIDENTAL FINDING:**
The CUPA is not consistently including all observations, citations, factual basis, and corrective action documentation for each violation cited in HWG Program inspection reports.

Review of HWG Program inspection reports, CERS CME information and Notices of Violation (NOVs) finds information such as full detail of each observation, factual basis, and corrective actions to ensure RTC, are inadequately or improperly documented for cited violations at the following facilities:
- CERS ID 10084831: Inspection report dated October 19, 2023
  - Statements regarding observations are inadequate such as:
    - "Employee training record due March 2023 or HMBP; HW; and Universal waste."
    - "Area does not appear to be inspected as oils are outside and open."
    - "Currently located inside the shed and is hard to get to and labels are not visible."
- CERS ID 10085113: Inspection report dated March 7, 2023
  - Observations, factual basis, and corrective actions are not documented for the following violation cited: "Failure to properly label hazardous waste accumulation containers and portable tanks with the following requirements: "Hazardous Waste", name and address of the generator, physical and chemical characteristics of the Hazardous Waste, and starting accumulation date."

- CERS ID 10087300: Inspection report dated November 5, 2021
    - Observations and factual basis are not documented for the following violation cited: “Provide waste determination for the drained rinsate and chemical bath rinse. Split sample taken and provide site with one of the samples. Samples to be tested for CAM 17 at a certified laboratories.”
- CERS ID 10088017: Inspection report dated November 13, 2023
    - Detail regarding the type and amount of unlabeled containers is not documented.
- CERS ID 10088266: Inspection report dated September 25, 2023
    - Statements regarding observations are inadequate such as:
        - “As demonstrated by the number and type of hazardous waste violations observed at the time of inspection, personnel are not adequately trained to perform their duties in a way that ensures the facility's compliance with hazardous waste laws and regulations, and/or employee training records have not been kept or do not contain all required information, or employees were not trained within 180 days after their hire date or assignment to a new facility or position, and annually thereafter.”
        - “Owner/Operator failed to send hazardous waste offsite for treatment, storage, or disposal within 90 days of accumulation start date.”
- CERS ID 10154459: Inspection report dated March 13, 2023
    - Observations, factual basis, and corrective actions are not documented for the following violation cited: “Owner/Operator failed to send hazardous waste offsite for treatment, storage, or disposal within 90 days of accumulation start date.”
- CERS ID 10418803: Inspection report dated February 14, 2024
    - Detail on the type and amount of open containers is not documented.

Note: It is not necessary to revise the HWG/TP inspection reports for the facilities identified as examples above.

Note: The examples provided above may not represent all instances of this deficiency.

Note: This Incidental Finding was identified as a Deficiency during the 2020 CUPA Performance Evaluation and was corrected during the Evaluation Progress Report process.

**CITATION:**
HSC, Chapter 6.5, Section 25185(c)(2)(A); [DTSC]

**RESOLUTION:**
By the 1st Progress Report, the CUPA will ensure HWG Program inspectors:

- Receive inspection report writing training to include observations, factual basis, citations and corrective actions for each violation cited in an HWG Program inspection report by reviewing the “Elements of a Violation” training.
- Review the following DTSC HWG fact sheets and information:
    - DTSC Hazardous Waste Generator Requirements Fact Sheet https://dtsc.ca.gov/hazardous-waste-generator-requirements-fact-sheet/.
    - Accumulating Hazardous Wastes at Generator Sites https://dtsc.ca.gov/accumulating-hazardous-wastes-at-generator-sites/.
    - HSC, Section 25185(c)(2)(A) https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=HSC&division=20.&title=&part=&chapter=6.5.&article=8

The CUPA will provide CalEPA with a statement that all staff conducting HWG Program facility inspections have reviewed the training materials, fact sheets and information listed above, including the name of each HWG Program facility inspector that reviewed the training materials, and the date the review was completed.

By the 2nd Progress Report, and with each subsequent Progress Report until considered corrected, the CUPA will provide CalEPA with an inspection report citing at least one HWG Program violation, for three HWG Program facilities, as requested by DTSC, that have been inspected within the last three months and after inspection staff have reviewed the training materials, fact sheets and information listed above. Each inspection report will contain observations, factual basis, citations, and corrective actions to correctly identify and classify each observed HWG Program violation.

**CUPA Update 1:**
See the page 3 of the document titled, "2025_12-17 - CalEPA EPR1.pdf," for the CUPA narrative update on this item.

**Evaluation Team Response 1 [DTSC]:**
The ongoing staffing challenges and efforts made to correct this Incidental Finding are recognized. With the next Progress Report, ensure HWG Program inspectors receive the training and review the information identified above, and provide a statement that all staff conducting HWG Program facility inspections have reviewed the training materials, fact sheets and information listed above, including the name of each HWG Program facility inspector and the date the training and review were completed.

---

**6. INCIDENTAL FINDING: RESOLVED DURING EVALUATION**

The CUPA is not properly/consistently reviewing, processing, and authorizing each annual Onsite Hazardous Waste Treatment Notification for Permit-by-Rule (PBR) facilities with a Fixed Treatment Unit (FTU) within 45 calendar days of receiving it.

During the 45-day review process the CUPA must:

- Authorize operation of the FTU; or
- Deny authorization of the FTU in accordance with PBR laws and regulations; or,
- Notify the owner/operator that the notification submittal is inaccurate or incomplete.

Review of CERS information finds the following Tiered Permitting submittals submitted between July 1, 2021, and June 30, 2024, were not reviewed, processed, or authorized by the CUPA within 45 days of receipt:

- 0 of 152 (0%)
  - 92 of 152 (61%) Tiered Permitting submittals were processed in excess of 90 days, with 667 days being the longest.

Note: This Incidental Finding was identified as a Deficiency during the 2020 CUPA Performance Evaluation and was corrected during the Evaluation.

**CITATION:**
CCR Title 22, Sections 67450.2(b)(4) and 67450.3(c)(1) and (d)
HSC, Chapter 6.5, Sections 25200.3(e)(3) and 25201.5(d)(7)
[DTSC]

**RESOLUTION: COMPLETED**
During the evaluation, the CUPA accurately reviewed, processed and authorized each pending Onsite Hazardous Waste Treatment PBR notification.

---

7. **INCIDENTAL FINDING: RESOLVED DURING EVALUATION**

The 2024 area plan is missing a required element.

Review of the 2024 area plan finds the following required element is missing:

- Public Safety and Information
    - Procedures to identify all languages known to be spoken in the administering agency's county or city, as the case may be, and ensure that any individual is able to access services in their native language, as required by required by Section 11135 of the Government Code per CCR, Title 19, Section 5020.6(d). The area plan will outline what these services are and how they will be provided in the languages identified.

**CITATION:**
HSC, Chapter 6.95, Section 25503(c); CCR, Title 19, Division 5, Article 2, Sections 5020.1-5020.8; [CalEPA]

**RESOLUTION: COMPLETED**
During the evaluation, the CUPA provided CalEPA with an updated area plan that included all required elements. This Incidental Finding is considered resolved.

---

8. **INCIDENTAL FINDING: RESOLVED DURING EVALUATION**

Required components of the I&E Plan are inaccurate.

Review of the I&E Plan finds the following components are inaccurate:

- Page 23, Section B (2) Chapter 6.95 HSC, Section 25540 states: (a) civil penalties not to exceed $2,000 per day for each violation
    - Chapter 6.5, HSC, Section 25540 (a)(2) states not more than $5,000 per day per violation.
- Page 25 Section C states: "Chapter 6.7 HSC section 25299.01 - When any person has engaged in, is engaged in, or is about to engage in any acts or practices which violate this chapter or Chapter 6.75 or any rule, regulation, permit, standard, requirement, or order issued, adopted, or executed pursuant to this chapter or Chapter 6.75, the city attorney, the district attorney or the Attorney General may apply to the superior court for any order enjoining these acts or practices, or for an order directing compliance."
    - The CUPA does not have authority to implement cleanup of USTs as a Local Oversight Program agency, and therefore cannot cite HSC, Chapter 6.75.

**CITATION:**
HSC, Chapter 6.7 Sections 25283(b)(3), 25297.01; CCR, Title 27, Section 15200(a); [CalEPA, State Water Board]

**RESOLUTION:**
During the evaluation, the CUPA provided CalEPA with an updated I&E Plan that addressed all requirements previously identified as inaccurate.

This Incidental Finding is considered resolved.

---

9. **INCIDENTAL FINDING: RESOLVED DURING EVALUATION**
The established Unified Program administrative procedures have components that are incomplete.

The following Unified Program administrative procedures are incomplete:

- Data Management Procedures
    - The provided Data Management Procedures do not include the following records required to be retained for a minimum of five years:
        - Self-Audit reports
        - Informal and formal enforcement actions
        - Surcharge billing and collection records following closure of any billing period, or until completion of any audit process

Note: This Incidental Finding was identified during the 2020 CUPA Performance Evaluation regarding incomplete Records Maintenance and Permitting procedures. During the Evaluation Progress Report process the CUPA provided acceptable Records Maintenance and Permitting Procedures.

**CITATION:**
CCR, Title 27, Sections 15185(g); [CalEPA]

**RESOLUTION: COMPLETED**
During the evaluation, the CUPA provided CalEPA with an updated Data Management Procedure that included all required elements.

This Incidental Finding is considered resolved.