# EXHIBIT 16

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

United States
Environmental Protection
Agency

Office Of Water
(4203)

EPA 833-B-94-005
June 1994

EPA

# Multijurisdictional Pretreatment Programs

## Guidance Manual

**THIS DOCUMENT IS AGENCY GUIDANCE ONLY**

It does not establish or affect legal rights or obligations. It does not establish a binding norm and is not finally determinative of the issues addressed. Agency decisions in any particular case will be made by applying the law and regulations on the basis of specific facts when permits are issued, regulations promulgated or programs are approved.

# TABLE OF CONTENTS

Page

1. INTRODUCTION . . . . . . . . . . 1

1.1 Who is required to develop a pretreatment program . . . . . . . . . . 1
1.2 Elements of an approved pretreatment program . . . . . . . . . . 2
1.3 When multijurisdictional programs are necessary . . . . . . . . . . 3
1.4 Overview of the types of multijurisdictional pretreatment programs . . . . . . . . . . 4
1.5 Common deficiencies in multijurisdictional pretreatment programs . . . . . . . . . . 6

2. SOLUTIONS TO MULTIJURISDICTIONAL APPROVED PRETREATMENT PROGRAM IMPLEMENTATION AND ENFORCEMENT PROBLEMS . . . . . . . . 7

2.1 CONTROL AUTHORITY HAS DIRECT AUTHORITY OVER EXTRAJURISDICTIONAL INDUSTRIAL USERS . . . . . . . . . . 9

2.1.1 Control authority applies its local law to extrajurisdictional industrial users under common law theories . . . . . . . . . . 9
2.1.2 Control authority applies its local law to extrajurisdictional industrial users pursuant to authority granted under state statute . . . . . . . . . . 10
2.1.3 Creation under state law of limited function special sewer districts and authorities 11
2.1.4 Annexation . . . . . . . . . . 12

2.2 MULTIJURISDICTIONAL AGREEMENTS: IMPLEMENTING THE APPROVED PRETREATMENT PROGRAM USING THE LEGAL AUTHORITY OF MORE THAN ONE JURISDICTION . . . . . . . . . . 12

2.2.1 Minimum elements of a multijurisdictional agreement . . . . . . . . . . 13
2.2.2 Delegation of authority to control authority . . . . . . . . . . 13
2.2.3 Contributing jurisdiction implements and enforces its own program . . . . . . . . 15
2.2.4 Creation of a limited function authority . . . . . . . . . . 16
2.2.5 Restrictions on delegation of authority . . . . . . . . . . 16

2.3 NONREGULATORY CONTROL: INDUSTRIAL USER CONTRACTS . . . . . . . . 17

2.3.1 Problem with extrajurisdictional industrial user contracts . . . . . . . . . . 17
2.3.2 Enforcement through citizen suits . . . . . . . . . . 17

2.4 OBTAINING THE COOPERATION OF CONTRIBUTING MUNICIPALITIES . . . . 18

2.4.1 Revision of existing agreements . . . . . . . . . . 18
2.4.2 Include contributing jurisdiction on NPDES permit . . . . . . . . . . 19

# LIST OF TABLES AND FIGURES


| | | Page |
|---|---|---|
| TABLE 1. | Basic requirements of an approved pretreatment program | 3 |
| TABLE 2. | Elements of multijurisdictional agreements | 14 |
| TABLE 3. | Elements of a control authority/extrajurisdictional industrial user contract | 17 |
| FIGURE 1. | Municipality with potw receiving discharges from another municipality | 5 |
| FIGURE 2. | Sewer district or authority covering several municipalities created by contributing jurisdictions or by state legislature | 6 |


# APPENDICES


APPENDIX A Example multijurisdictional agreement giving the control authority responsibility over pretreatment program implementation and enforcement

APPENDIX B Example multijurisdictional agreement giving the contributing jurisdiction responsibility for pretreatment program implementation and enforcement

APPENDIX C Example of an industrial user contract

# 1. INTRODUCTION

The National Pretreatment Program was designed to be developed, implemented, and enforced primarily by the municipal entities that own or operate wastewater treatment facilities. Effective pretreatment program implementation and enforcement is more difficult to achieve if some dischargers are located beyond the legal jurisdiction of the municipal entity that administers the Approved Pretreatment Program. As a general rule, the powers of a municipal entity are limited to its geographic boundaries, and additional authority will be needed to regulate industrial users located beyond these boundaries. The U.S. Environmental Protection Agency (EPA) refers to these types of situations as "multijurisdictional," because industrial users are located within the boundaries of one or more jurisdictions other than the municipal entity that is charged with program implementation and enforcement responsibilities. This guidance document is intended to address these multijurisdictional program implementation and enforcement issues and offer some of the options that municipal entities may employ to satisfy federal and state program requirements.

THIS GUIDANCE DOCUMENT DOES NOT PROVIDE SPECIFIC LEGAL ADVICE ON WHETHER ANY ONE OF THE OPTIONS IS ADEQUATE TO SOLVE THE PROBLEMS PRESENTED BY A PARTICULAR SITUATION. EACH MUNICIPAL ENTITY MUST RELY ON ADVICE OF ITS LEGAL COUNSEL WHEN EVALUATING THE USE OF THE OPTIONS PRESENTED.

## 1.1 WHO IS REQUIRED TO DEVELOP A PRETREATMENT PROGRAM

The General Pretreatment Regulations, set out at 40 Code of Federal Regulations (CFR) Part 403, establish uniform federal requirements that apply to wastewater treatment facilities that meet the definition of the term "Publicly Owned Treatment Works" (POTW) and to the industrial users that discharge wastes to these facilities. Pursuant to these regulatory requirements, any POTW, or combination of POTWs operated by the same entity, with a total design flow of greater than 5 Million Gallons Per Day (MGD) and receiving waste from dischargers subject to federal pretreatment standards and requirements must establish a pretreatment program. The National

Pollutant Discharge Elimination System (NPDES) permitting authority, either EPA or a state with an approved NPDES permitting program, also may require that a POTW with a design flow of less than 5 MGD establish a pretreatment program if it determines that it is necessary to prevent interference or pass through at the POTW. A requirement that the POTW implement and enforce this pretreatment program becomes a condition of the POTW's NPDES permit.

The term POTW, as used in the General Pretreatment Regulations, refers not only to the wastewater treatment facility itself, including the sewers, pipes, and other infrastructure used to convey wastewater to the facility, but also to the municipal entity or entities that own or operate the treatment works and have jurisdiction over the persons discharging wastewater to the facility. The terms "municipality" or "municipal entity" are used in this guidance as generic terms and may include towns, villages, cities, counties, sewer districts or authorities, and even the state, where it owns all or part of the POTW. It is the municipal entity or entities that own or operate the POTW that are charged with the responsibility for developing, implementing, and enforcing a pretreatment program.

## 1.2 ELEMENTS OF AN APPROVED PRETREATMENT PROGRAM

Each pretreatment program is evaluated for completeness according to the criteria set out in the General Pretreatment Regulations. An Approved Pretreatment Program must contain six general elements. Table 1 summarizes these general requirements. A municipal entity whose pretreatment program has been approved by EPA or a duly authorized state is referred to as the "Control Authority."

To receive pretreatment program approval, the Control Authority must demonstrate that it has the legal authority to enforce federal, state, and local pretreatment standards and requirements against all industrial users discharging to the POTW and the procedures necessary for program implementation. The Control Authority derives this power through state statute or regulations promulgated thereunder, through its local sewer use ordinance or regulations, or through agreements with other municipal entities in which industrial users of the Control Authority's POTW are located.

The specific legal authorities and procedures that a Control Authority must have to implement a pretreatment program are set out in 40 CFR 403.8(f) of the General Pretreatment Regulations.

| TABLE 1. BASIC REQUIREMENTS OF AN APPROVED PRETREATMENT PROGRAM |
|---|
| 1. Legal Authority to implement and enforce program requirements through a sewer use ordinance or similar authority. |
| 2. Local Discharge Limits developed using site-specific data in order to protect the collection system, treatment plant, POTW employees, sludge reuse and disposal practices, and receiving stream. |
| 3. Industrial User Inventory to provide current information on the sources, nature, and volume of industrial discharges. |
| 4. Control Mechanism such as permits to ensure that industrial users comply with pretreatment standards and requirements. |
| 5. Compliance Monitoring procedures including inspections, sampling of industrial users, and data management. |
| 6. Enforcement Response Plan to facilitate swift and effective enforcement against industrial users violating the sewer use ordinance and/or control mechanism conditions. |

## 1.3 WHEN MULTIJURISDICTIONAL PROGRAMS ARE NECESSARY

A Control Authority's power to implement and enforce its Approved Pretreatment Program is directly related to its regulatory "jurisdiction." Jurisdiction encompasses both the legal/geographical boundary and the regulatory powers of a municipal entity. In essence, it is the area within which a municipal entity has power to regulate the activities of people and organizations. Local jurisdiction limits are usually defined by a state legislature in the charter or enabling legislation creating the municipality and in the general laws of the state. The enabling legislation defines both the Control Authority's ability to exercise regulatory powers and the geographical area within which these powers may be used. The powers described in the enabling legislation should provide the basis for a Control Authority's authority to adopt a local sewer use ordinance that regulates discharges into the POTW. The geographical boundaries outlined in the enabling legislation identify the perimeter within which dischargers are subject to the conditions of the sewer use ordinance. As discussed in Section 2.1.2, this perimeter may be extended by special state legislation. Therefore, the first step in determining whether a pretreatment program is multijurisdictional is to determine the extent of

the Control Authority's legal jurisdiction and compare that to the location of dischargers throughout the service area. For the purposes of this guidance document, dischargers located outside of the Control Authority's jurisdiction are referred to as "extrajurisdictional industrial users."

Control Authorities with multijurisdictional programs must establish legally binding procedures to ensure that all extrajurisdictional industrial users are subject to enforceable pretreatment standards and requirements. See 40 CFR §403.8(f)(1). The Control Authority must either obtain this authority for itself or ensure that some municipal entity has both the authority and the obligation to implement and enforce pretreatment standards and requirements against every industrial user that discharges to the POTW. Where more than one municipal entity is involved, the Control Authority should be able to coordinate their activities and remains liable for all deficiencies in implementation and enforcement of the Approved Pretreatment Program. Implementation and enforcement options for multijurisdictional Approved Pretreatment Programs are discussed in greater detail in Section 2.

## 1.4 OVERVIEW OF THE TYPES OF MULTIJURISDICTIONAL PRETREATMENT PROGRAMS

There are several possible multijurisdictional scenarios. Figure 1 shows a POTW that is owned by one municipal entity (City A) and receives discharges from extrajurisdictional industrial users located in another municipal entity (City B). City A does not possess authority to regulate facilities within City B's boundaries. Two entities have regulatory authority within City B: the state government and City B itself. To ensure that pretreatment program standards and requirements are implemented and enforced against extrajurisdictional industrial users located within City B, City A must either enter into a multijurisdictional agreement with City B or receive additional authority from the state legislature.

In some circumstances, there may not be another local government that is responsible for or able to impose pretreatment program standards and requirements against extrajurisdictional industrial users. For example, City A may own sewer pipes extending to extrajurisdictional industrial users in an unincorporated area of the neighboring county and the county may not have regulatory authority to enforce program standards and requirements against the industrial user. City A's only option may be to obtain additional authority from the state.




FIGURE 1. MUNICIPALITY WITH POTW RECEIVING DISCHARGES FROM ANOTHER MUNICIPALITY

It is not uncommon for a POTW to receive wastewater discharges from many contributing jurisdictions. In such cases, several approaches may be needed to resolve program implementation and enforcement issues. In some major metropolitan areas, scores of local jurisdictions use a single POTW. In such circumstances, some sort of special state authority is a virtual necessity for effective regulation.

In Figure 2, a regional sewer authority has been established with jurisdiction over several communities. A regional sewer authority may be independently empowered by state enabling legislation to fully implement and enforce the Approved Pretreatment Program against all dischargers within a defined area. The service area boundaries are defined, by state law, to include other jurisdictions. This is often referred to as a Sanitary District or Special Sewer Authority. This mechanism gives the Control Authority the ability to cross traditional municipal jurisdictional boundaries to implement and enforce its Approved Pretreatment Program. Because this authority is granted under state law, there is no multijurisdictional problem, if all industrial users are located




FIGURE 2. SEWER DISTRICT OR AUTHORITY COVERING SEVERAL MUNICI-PALITIES CREATED BY CONTRIBUTING JURISDICTIONS OR BY STATE LEGISLATURE

within the district. Note that in Figure 2, however, there are industrial users located outside of the jurisdiction of the Regional Sewer Authority, and these users will need to be controlled using other mechanisms.

## 1.5 COMMON DEFICIENCIES IN MULTIJURISDICTIONAL PRETREATMENT PROGRAMS

Most Control Authorities with multijurisdictional programs have entered into agreements with the municipal entities in which extrajurisdictional industrial users are located. Some of these agreements predate the imposition of the federal pretreatment program requirements and address only conditions for providing collection and treatment of wastewater. Existing agreements are occasionally limited to the following types of provisions:

- Wastewater treatment capacity available to the contributing jurisdiction
- Service fees for wastewater treatment
- Ownership and maintenance of sewer lines and interceptors
- Fiscal responsibilities for future treatment plant or collection system expansion
- Requirement that the total discharge from the contributing jurisdiction meet certain discharge limitations
- Duration of agreement.

Agreements that are limited to the above provisions are inadequate for purposes of Approved Pretreatment Program implementation and enforcement because they fail to provide for the imposition of adequate pretreatment standards and requirements on extrajurisdictional industrial users.

If its existing agreement with a contributing jurisdiction is inadequate, the Control Authority must either renegotiate with the contributing jurisdiction or receive direct regulatory authority from the state legislature. If the contributing jurisdiction refuses to renegotiate an inadequate multijurisdictional agreement, the options discussed in Section 2.4 should be pursued.

## 2. SOLUTIONS TO MULTIJURISDICTIONAL APPROVED PRETREATMENT PROGRAM IMPLEMENTATION AND ENFORCEMENT PROBLEMS

The mechanisms for achieving control of extrajurisdictional industrial users are varied and their use depends largely on the particular circumstances of each Approved Pretreatment Program. This section highlights some of these alternatives. Model language has been included in the Appendices to further illustrate these strategies. The alternatives described here are not exhaustive, and a Control Authority may develop other strategies or use other mechanisms that provide equivalent implementation and enforcement authorities. A Control Authority should

contact its state or EPA Regional Pretreatment Coordinator for advice on the adequacy of existing or proposed multijurisdictional control mechanisms.

Possible solutions to multijurisdictional program implementation and enforcement issues are discussed below. It is preferable that a Control Authority have the direct authority to develop, implement, and enforce pretreatment standards and requirements necessary to regulate all industrial users of its POTW, including extrajurisdictional industrial users. Options for a Control Authority to obtain this direct authority are discussed in Section 2.1. Included in this section is the option of creating new regional entities under state law to implement and enforce the Approved Pretreatment Program.

An adequate but more cumbersome situation exists where the authorities of more than one municipal entity must be used, and implementation and enforcement of the Approved Pretreatment Program are coordinated among these municipal entities. In these cases, it is necessary for the Control Authority and each municipal entity in which extrajurisdictional industrial users are located to enter into agreements that outline which entities will have responsibility for implementing and enforcing pretreatment standards and requirements against the industrial users. Generally, each municipal entity will develop its own pretreatment authorities (e.g., sewer use ordinance). The Approved Pretreatment Program is then enforced either by the Control Authority as agent for the others, jointly by some or all of the municipalities, or by a separately incorporated sewer district or authority that, in effect, acts as agent for all of the municipalities. These scenarios are discussed in Section 2.2.

When a Control Authority is not able to employ any of the options discussed above, it must explore other methods for Approved Pretreatment Program implementation and enforcement. A Control Authority can obtain limited control over extrajurisdictional industrial users by entering into contracts directly with such users. Contracts generally are not sufficiently enforceable to satisfy the minimum federal requirements. It may, however, be necessary for the Control Authority to use contracts until it obtains more effective controls over these users.

Contracts with extrajurisdictional industrial users, together with enforcement through citizen suits for violations of federal pretreatment program requirements, are discussed in Section 2.3.

Finally, means by which the Control Authority may obtain the cooperation of contributing jurisdictions in implementation of a multijurisdictional program are discussed in Section 2.4.

## 2.1 CONTROL AUTHORITY HAS DIRECT AUTHORITY OVER EXTRAJURISDICTIONAL INDUSTRIAL USERS

### 2.1.1 CONTROL AUTHORITY APPLIES ITS LOCAL LAW TO EXTRAJURISDICTIONAL INDUSTRIAL USERS UNDER COMMON LAW THEORIES

Municipal ordinances generally are enforceable only in the jurisdiction of the municipal entity by which they are enacted. Without express authority under state law, most Control Authorities will not have the ability to enforce local ordinance provisions outside of their boundaries.

If the extrajurisdictional industrial user discharges directly into the collection system owned or operated by the Control Authority, the Control Authority's sewer use laws are more likely to apply. Some Control Authorities have been advised by their legal counsel that their local ordinance is applicable to extrajurisdictional industrial users who agree in a contract to be subject to those laws or enter into the Control Authority's jurisdiction and accept a permit to discharge into the system. Again, the efficacy of these approaches will depend on the law of the state in which the Control Authority is located.

Attempts by Control Authorities to directly enforce their local sewer use ordinance against extrajurisdictional industrial users in the absence of authorization under state law to do so have generally been unsuccessful. For example, where an extrajurisdictional industrial user has refused to allow a Control Authority to conduct inspections, Control Authorities have had limited ability to obtain a warrant to gain access to the facility. Similarly, if judicial enforcement is

necessary, the extrajurisdictional industrial user may challenge the Control Authority's ability to enforce its own law against the industrial user. If, given these limitations, the municipal entity does not have extraterritorial authority, it must explore other options, some of which are set out below in this Section. Problems are best eliminated by giving the Control Authority clear authority when the pretreatment program is being developed.

### 2.1.2 CONTROL AUTHORITY APPLIES ITS LOCAL LAW TO EXTRAJURISDICTIONAL INDUSTRIAL USERS PURSUANT TO AUTHORITY GRANTED UNDER STATE STATUTE

As indicated in Section 1.3, municipal entities are generally viewed as having definite geographic boundaries within which they may exercise the governmental power they possess under state and local law. However, pursuant to some states' law, municipal entities have been granted extraterritorial powers over all facilities discharging to their POTWs. Consequently, in these circumstances, a Control Authority may enforce the provisions of its local sewer use ordinance against all of its industrial users, regardless of where such industrial users are located. In these states, multijurisdictional concerns have largely been eliminated because all industrial users are considered to be within the jurisdiction of the Control Authority for the purposes of Approved Pretreatment Program implementation and enforcement.

It should be noted that the scope of this extraterritorial power, in most cases, will be expressly limited by state statute. While some state laws may provide the authority to maintain an enforcement action against an extrajurisdictional industrial user, one must determine if the statute also grants the Control Authority the power to develop limits and monitoring requirements, to permit extrajurisdictional industrial users, or to conduct inspections or monitoring at facilities located in another municipal entity. A Control Authority with extrajurisdictional industrial users should, therefore, determine both whether it has the power under state law to regulate such industrial users and the extent of this authority. If the extraterritorial power does not include all of the authorities required by the General Pretreatment Regulations, then the Control Authority still must seek means of applying the missing requirements to the extrajurisdictional industrial users.

### 2.1.3 CREATION UNDER STATE LAW OF LIMITED FUNCTION SPECIAL SEWER DISTRICTS AND AUTHORITIES

In many municipalities, the responsibility of administering the operation of the local POTW has been delegated to limited function special districts or municipal sewage authorities. The utility of special districts and municipal sewage authorities is that their jurisdictional boundaries may be drawn to include the entire service area of the POTW, thereby effectively eliminating the multijurisdictional nature of the Approved Pretreatment Program. Ideally, the jurisdictional authority of these entities can be created and fashioned to conform to the particular pretreatment implementation and enforcement concerns of a POTW.

These types of municipal entities are in most cases created directly by state enactment. Some states allow for the creation of independent sewer districts or municipal authorities by two or more municipal entities, with the new municipal entity then having total independence from the municipalities that brought it into existence.

Sewer districts or municipal sewage authorities may vary in size, function, and organizational framework from state to state. They are distinct entities that usually are governed by a board of directors, are administratively independent from other units of local government, and have independent revenue raising authority. State statutes dictate the procedural steps that must be followed to bring a special district or municipal sewage authority into existence and may limit the circumstances under which they may be organized.

It should be noted that many states have laws that limit the enforcement authority of these local government entities. Because special districts and municipal sewage authorities have only those powers expressly granted to them under state statute, legislative changes may be necessary to give them full pretreatment authority. To fulfill the legal authority requirements in the General Pretreatment Regulations, special districts or municipal sewage authorities that act as the Control Authority must be granted both the power to enact sewer use ordinances and the police power to enforce these ordinances in the areas in which they provide services. If they

do not have all authorities required under the General Pretreatment Regulations, then these special government entities will face the same problems as traditional local government entities in multijurisdictional Approved Pretreatment Program implementation and enforcement.

### 2.1.4 ANNEXATION

If extrajurisdictional industrial users are located in unincorporated areas, the Control Authority may gain the most complete control by annexing the unincorporated area. If complete annexation is undesirable to the concerned parties, the Control Authority might consider utility annexation where, for purposes of sewer and water services, the unincorporated area is within the Control Authority's jurisdiction. In a more developed area, annexation is probably not a viable option. Procedures for annexation vary between states. Control Authorities should consult with their municipal attorneys if they wish to investigate this option.

## 2.2 MULTIJURISDICTIONAL AGREEMENTS: IMPLEMENTING THE APPROVED PRETREATMENT PROGRAM USING THE LEGAL AUTHORITY OF MORE THAN ONE JURISDICTION

Multijurisdictional agreements entered into by a Control Authority and all contributing jurisdictions are necessary if the Control Authority is unable to extend its jurisdiction to administer the Approved Pretreatment Program over all industrial users of the POTW. Such intermunicipal contracts provide a flexible method for local government to cooperate and share responsibility and cost for the pretreatment program. The implementation and enforcement authority of the Approved Pretreatment Program is then based on the sewer use ordinance or other police powers of more than one municipal entity.

A Control Authority may enter into an agreement with its contributing jurisdictions under which the contributing jurisdictions can either: (1) agree to be responsible for administering the Approved Pretreatment Program against all industrial users located in their jurisdiction; (2) delegate their authority to administer the Approved Pretreatment Program to the municipality that is acting as the Control Authority; or (3) agree that the Control Authority can enforce the contributing jurisdiction's pretreatment program if the contributing jurisdiction fails to do so. A fourth option would be for the existing Control Authority to delegate its authority to a third

entity to which other municipalities also delegate their pretreatment implementation and enforcement authority. These options and legal issues associated with each are discussed below. These categories are not exclusive and hybrid situations are typical. The availability and scope of such agreements will be determined by state law.

### 2.2.1 MINIMUM ELEMENTS OF A MULTIJURISDICTIONAL AGREEMENT

Two basic concepts should be kept in mind when negotiating and drafting a multijurisdictional agreement. First, all contributing jurisdictions must agree to develop and maintain the legal authorities necessary to implement and enforce the Approved Pretreatment Program within their geographic boundaries. This is necessary because the Control Authority does not possess the legal authority over extrajurisdictional industrial users located in the contributing jurisdiction. In some circumstances it may be necessary for the contributing jurisdiction to obtain the authority for itself from its state legislature. Second, for each industrial user, some municipal entity must have the responsibility to implement and enforce the Approved Pretreatment Program. The local sewer use law of a contributing jurisdiction may be enforced by that jurisdiction, by the Control Authority, or by both. The multijurisdictional agreement must be specific as to which party is responsible for implementing and enforcing Approved Pretreatment Program standards and requirements.

The elements of an effective multijurisdictional agreement are listed in Table 2 on the next page.

### 2.2.2 DELEGATION OF AUTHORITY TO CONTROL AUTHORITY

Problems in coordinating administration of the Approved Pretreatment Program are reduced when the multijurisdictional agreement provides for the Control Authority to implement and enforce the Approved Pretreatment Program in the contributing jurisdictions. In this situation,

**TABLE 2. ELEMENTS OF MULTIJURISDICTIONAL AGREEMENTS**

An effective multijurisdictional agreement should address the following elements:

Sewer Use Ordinance - The contributing jurisdiction should agree to adopt a pretreatment sewer use ordinance that is no less stringent than the Control Authority's ordinance.

Local Limits - The contributing jurisdiction should agree to adopt local limits for industrial discharges into its collection system that are at least as stringent as the Control Authority's local limits or should agree to a specific maximum total mass loading of pollutants that the contributing jurisdiction's system will discharge to the POTW. If the contributing jurisdiction has its own POTW or is serviced by another POTW in another area, there may be a conflict in local limits. In this event, the contributing jurisdiction can adopt the most stringent local limit for each pollutant and apply these limits to all users located in its jurisdiction regardless of the POTW to which they discharge. Alternatively, the contributing jurisdiction may choose to adopt two sets of local limits and apply to each user the limit appropriate to the plant to which the user discharges.

Control Mechanism - The agreement should indicate whether the contributing jurisdiction or the Control Authority is responsible for issuing control mechanisms to industrial users located within the contributing jurisdiction. If joint control mechanisms are to be issued, the agreement should indicate which party will take the lead in preparing the draft control mechanisms.

Transfer of Records - The contributing jurisdiction should agree to provide the Control Authority access to all records compiled as part of the contributing jurisdiction's pretreatment program activities. The agreement should also provide for notice to the Control Authority of key activities (e.g., enforcement actions and permit issuance).

Right of Entry/Inspection and Sampling - The contributing jurisdiction should grant the Control Authority the power to enter into the facilities of industrial users to periodically verify compliance with applicable pretreatment standards and requirements. Procedures and responsibility for conducting inspections and other compliance evaluation activities should be established explicitly.

Enforcement - The agreement should indicate whether the contributing jurisdiction or the Control Authority has primary responsibility for enforcing pretreatment standards and requirements against industrial users located within the contributing jurisdiction. If the contributing jurisdiction has primary responsibility for enforcing the ordinance, the agreement should specify whether the Control Authority can enforce if the contributing jurisdiction fails to do so.

Remedies for Breach - Where the contributing jurisdiction has primary responsibility for permitting, compliance monitoring, and/or enforcement, it should agree that the Control Authority has the right to take legal action, as necessary, to enforce the terms of the agreement and/or to take action directly against noncompliant industrial users in the event that the contributing municipality is unable or unwilling to do so. The agreement should also provide for remedies available against the noncomplying municipality, including indemnification and specific performance of pretreatment activities.

Residential Areas - If no industrial users are located within the contributing jurisdiction, the agreement should state: (1) no industrial users are currently located within the contributing jurisdiction; and (2) none shall be allowed to operate unless prior notification is provided to the Control Authority and a new agreement is entered into addressing implementation and enforcement of the pretreatment program. A similar agreement might be appropriate if the only existing nondomestic users are light commercial establishments (e.g., restaurants and hotels).

the Control Authority acts as the agent of the contributing jurisdiction, carrying out program implementation and enforcement on behalf of and under the police powers of the contributing jurisdiction. The designation of the Control Authority as agent should be clear and specific and should also be noted in the contributing jurisdiction's sewer use ordinance. The sole responsibility of the contributing jurisdiction is to maintain adequate pretreatment authorities. A sample agreement where the Control Authority has complete responsibility for implementation and enforcement in a contributing jurisdiction is presented in Appendix A.

### 2.2.3 CONTRIBUTING JURISDICTION IMPLEMENTS AND ENFORCES ITS OWN PROGRAM

Appendix B contains a sample multijurisdictional agreement where the contributing jurisdiction agrees to be responsible for Approved Pretreatment Program implementation and enforcement within its own jurisdiction. In situations where contributing jurisdictions will implement and enforce portions of the Approved Pretreatment Program, the multijurisdictional agreement should specify in detail the distribution of responsibility.

Regardless of the terms of the multijurisdictional agreement, the Control Authority, through its NPDES permit, remains responsible for implementation and enforcement of the Approved Pretreatment Program. The Control Authority must be able to assure that the program is being adequately implemented in the contributing jurisdiction. Such assurance may be gained by jointly issuing industrial user permits, receiving copies of compliance monitoring data, and conducting joint inspections.

Where a contributing jurisdiction has primary responsibility for enforcement of the local sewer use ordinance, the multijurisdictional agreement and the sewer use ordinance must indicate whether the Control Authority has the right to take legal action to enforce the terms of the contributing jurisdiction's ordinance if violations occur. The Control Authority should be given the right to address any such violations at least in the event that the contributing jurisdiction has failed to take appropriate action.

As discussed in Section 2.2.5, it may not be possible for some contributing jurisdictions to delegate their enforcement authority to the Control Authority. In such instances, unless the Control Authority is able to expand its jurisdiction using one of the means discussed in Section 2.1, the Control Authority will not be able to bring enforcement actions on its own behalf against extrajurisdictional users. This greatly complicates the administration of the pretreatment program.

It is particularly important in such cases that the Control Authority have alternative means for requiring compliance by the industrial users in outlying jurisdictions. For example, it should co-issue permits to industries in outlying areas and these permits should enable it to discontinue service to non-complying facilities.

Where only the contributing jurisdiction can take enforcement actions against industrial users within it boundaries, the contributing jurisdiction should be made jointly responsible for administering the pretreatment program. As discussed in Section 2.4.2, the contributing jurisdiction may be made a co-permittee on the Control Authority's NPDES permit for the limited purpose of making it jointly responsible under state and federal law for the pretreatment program elements in the NPDES permit.

### 2.2.4 CREATION OF A LIMITED FUNCTION AUTHORITY

All of the municipal entities that use a portion of the POTW's collection system may want to delegate authority to an entity that they create for this limited purpose. The entity would be separately incorporated and would be controlled by the various municipalities pursuant to the articles of incorporation and other charter documents. This would be like the sewage district or authority discussed in section 2.1.3 except that its power is delegated to it from municipalities rather than being granted to it by the state legislature. Each municipality would have to adopt an adequate sewer use ordinance and then delegate implementation and enforcement responsibility to the new entity. An agreement similar to that presented in Appendix A would be used to transfer implementation and enforcement responsibility and authority to the new entity.

Once again, the ability to create such entities may be limited by state law. It may be necessary to have hybrid situations where some functions are performed by the existing Control Authority or the contributing jurisdictions.

### 2.2.5 RESTRICTIONS ON DELEGATION OF AUTHORITY

The extent to which a municipality can delegate its authority will vary from state to state. Services that are not uniquely governmental, such as trash collection, can usually be contracted out to a third party. At the other extreme, inherently governmental activities, such as making laws, sometimes cannot be delegated. In between are activities such as acting as prosecutor, which only some jurisdictions allow to be delegated.

Some states will allow a municipality to delegate the authority to administer the pretreatment program within its boundaries and some states will not. In states where it is not currently allowed,

it may be possible for the legislature to authorize municipalities to delegate this authority. Elsewhere, there may be a state constitutional limitation on delegation of authority. In the latter states, the multijurisdictional agreement will have to be crafted so that the contributing jurisdiction retains the non-delegable authority. The options in Section 2.1 should also be considered.

## 2.3 NONREGULATORY CONTROL: INDUSTRIAL USER CONTRACTS

### 2.3.1 PROBLEM WITH EXTRAJURISDICTIONAL INDUSTRIAL USER CONTRACTS

Although industrial user contracts will not usually be adequate control mechanisms, a Control Authority may wish to use them while it or a contributing jurisdiction obtains the necessary regulatory authority. In a very few jurisdictions, these contracts may be enforceable through the collection of penalties. Courts may take into account the unique relationship between the parties and the fact that the extrajurisdictional industrial user has agreed to be subject to penalties. As with other issues, local legal counsel will need to be consulted.

A sample extrajurisdictional industrial user contract is included in Appendix C. The minimum elements of these contracts are summarized in Table 3.

**TABLE 3. ELEMENTS OF A CONTROL AUTHORITY/EXTRAJURISDICTIONAL INDUSTRIAL USER CONTRACT**

Sewer Use Ordinance - The contract should require the industrial user to comply with all pretreatment conditions and requirements contained in the Control Authority's sewer use ordinance.

Industrial Wastewater Discharge Permit - Although the requirement to obtain an industrial wastewater discharge permit is generally contained in the sewer use ordinance, it is helpful that the user expressly agree, under the terms of the contract, to obtain and comply with such a permit. If a permit cannot be issued immediately, the industrial user should agree to apply for a permit as soon as the contributing jurisdiction or Control Authority has obtained the necessary authority.

Right of Entry - The contract specifically should allow the Control Authority the right to enter the industrial user's premises at any reasonable time for the purpose of inspecting the entire premises, taking independent samples, and examining and copying records.Remedies for Breach - The contract should specify that the industrial user will be subject to the Control Authority's enforcement powers, as set forth in the sewer use ordinance.

Other Pertinent Provisions - If the industrial user is not to be immediately issued a permit, the contract should include the minimum permit requirements: a statement of duration (up to 5 years); statement of nontransferability without notice; applicable effluent limits; and monitoring, sampling and reporting requirements.

### 2.3.2 ENFORCEMENT THROUGH CITIZEN SUITS

The Clean Water Act (CWA) allows citizens to file suits against violators of the CWA in certain circumstances. Some cities have successfully brought citizen suits against noncompliant industries.

A Control Authority may want to file a citizen suit if it is unable to collect penalties under its own ordinance from a noncompliant extrajurisdictional industrial user. This option also has been used where a city did not have adequate penalty authority and wanted to use the CWA penalty authority of up to $25,000 per violation per day. Upon collection of sufficient evidence, the Control Authority files suit against the extrajurisdictional industrial user under Section 505 of the CWA.

Under Section 505, a citizen must first file a 60-day advance notice of an intent to sue the extrajurisdictional industrial user. This notice must be sent to the industrial user, EPA, and the state. After 60 days, if EPA or the state has not initiated any action and violations are ongoing, a civil complaint may be filed in federal court. A copy of the complaint and any proposed settlement must also be sent to EPA and the state. Control Authorities should note that all penalties collected under Section 505 are currently returned to the United States Treasury. In some instances, the extrajurisdictional industrial user may be required to pay into a fund dedicated to restoring natural resources damaged as the result of their violations.

## 2.4 OBTAINING THE COOPERATION OF CONTRIBUTING MUNICIPALITIES

### 2.4.1 REVISION OF EXISTING AGREEMENTS

A Control Authority has various options if its existing agreement with a contributing jurisdiction is inadequate. It should first attempt to negotiate with the contributing jurisdiction. If a contributing jurisdiction is unwilling to renegotiate prior to expiration, the Control Authority should explore other options.

The Control Authority should review the existing agreement for provisions that may allow it to alter its terms. Some examples include provisions that allow for contract modification when there are "changed conditions" or when there is a change in law that alters the responsibilities of one of the parties to the agreement.

Another option that may be available to the Control Authority is to seek a judicial reformation or invalidation of the agreement on the grounds of impracticability or other legal basis. This may be possible if the existing agreement prevents the Control Authority from meeting obligations under the General Pretreatment Regulations and its NPDES permit that were imposed after the agreement was entered into. A court may rule the agreement illegal to the extent it allows the contributing jurisdiction's collection system to discharge wastes that violate federal pretreatment requirements. The availability of these and other options will depend on state law and will vary from state to state.

### 2.4.2 INCLUDE CONTRIBUTING JURISDICTION ON NPDES PERMIT

Another means of obtaining cooperation is to have EPA or a state with an approved NPDES program name the contributing jurisdiction as a limited co-permittee on the NPDES permit. The NPDES permit would require the contributing jurisdiction to implement and enforce a local pretreatment program for industrial users located within its jurisdictional boundaries. This can be accomplished as a modification to an existing permit or an addition when the Control Authority's permit is reissued. The obvious advantage of this approach is that the contributing jurisdiction would be partially responsible for program implementation deficiencies and/or NPDES permit violations, depending upon how the permit conditions are written.

If the contributing jurisdiction owns or operates the collection system within its boundaries, then it is a co-owner or operator of the POTW. As such, it can be included on the POTW's NPDES permit and be required to develop a pretreatment program. Contributing jurisdictions should be made co-permittees where circumstances or experience indicate that it is necessary to ensure adequate pretreatment program implementation.

The existing Control Authority and the contributing jurisdiction would still need to coordinate certain pretreatment activities (such as allocation of maximum allowable pollutant loadings) and a multijurisdictional agreement would be beneficial. If industrial users in the contributing jurisdiction are not subject to adequate pretreatment program requirements, an enforcement action could be taken by EPA or the state NPDES permitting authority against the contributing jurisdiction alone or with the Control Authority as a co-defendant.

# APPENDIX A

## EXAMPLE MULTIJURISDICTIONAL AGREEMENT GIVING THE CONTROL AUTHORITY RESPONSIBILITY OVER PRETREATMENT PROGRAM IMPLEMENTATION AND ENFORCEMENT

*This model language is intended to be used as a guide for situations where the Control Authority is responsible for implementation and enforcement of the pretreatment program against industrial users located in a contributing jurisdiction. This language addresses only pretreatment issues, but may be adapted to address other issues such as sewer use fees. Items in brackets ("[ ]") must be supplied by the parties to the Agreement.*

Agreement between

[Control Authority]

and

[Contributing Jurisdiction]

This Agreement is entered into this ___ day of______, 19__, between **[Control Authority]** and **[Contributing Jurisdiction]** (hereinafter jointly referred to as the "Parties").

RECITALS

1. **[Control Authority]** owns and operates a wastewater treatment system.

2. **[Contributing Jurisdiction]** currently utilizes this wastewater treatment system.

3. Facilities located in **[Contributing Jurisdiction]** currently contribute wastewater which includes industrial waste. These facilities are hereinafter referred to as industrial users.

4. **[Control Authority]** must implement and enforce a pretreatment program to control discharges from all industrial users of its wastewater treatment system pursuant to requirements set out in 40 CFR Part 403 **[and State Code citation if appropriate]**. In this Agreement **[Contributing Jurisdiction]** agrees to adopt a sewer use ordinance that subjects the industrial users within its boundaries to the necessary pretreatment controls, and **[Control Authority]** is authorized to implement and enforce that sewer use ordinance.

**AGREEMENT**

1.A. **[Contributing Jurisdiction]** will adopt a local sewer use ordinance which is no less stringent and is as broad in scope as the sewer use ordinance **[ordinance citation]** of **[Control Authority]**. **[Contributing Jurisdiction]** will forward to **[Control Authority]** for review a draft of its proposed sewer use ordinance within **[ ]** days of the date of this Agreement. **[Contributing Jurisdiction]** will adopt its sewer use ordinance within **[ ]** days of receiving approval from **[Control Authority]** of its content.

B. Whenever **[Control Authority]** revises its sewer use ordinance, it will forward a copy of the revisions to **[Contributing Jurisdiction]**. **[Contributing Jurisdiction]** will adopt revisions to its sewer use ordinance that are at least as stringent as those adopted by **[Control Authority]**. **[Contributing Jurisdiction]** will forward to **[Control Authority]** for review its proposed revisions within **[ ]** days of receipt of the **[Control Authority]**'s revisions. **[Contributing Jurisdiction]** will adopt its revisions within **[ ]** days of receiving approval from **[Control Authority]** of the content thereof.

C. **[Contributing Jurisdiction]** will adopt pollutant specific local limits which address at least the same pollutant parameters and are at least as stringent as the local limits enacted by

**[Control Authority]** within [ ] days of the date of this Agreement. If **[Control Authority]** makes any revisions or additions to its local limits, **[Control Authority]** will forward to **[Contributing Jurisdiction]** a copy of such revisions or additions within [ ] days of enactment thereof. **[Contributing Jurisdiction]** will adopt any such revisions or additions within [ ] days of receipt thereof.

2.A. **[Contributing Jurisdiction]** designates **[Control Authority]**as the agent of **[Contributing Jurisdiction]** for the purposes of implementation and enforcement of **[Contributing Jurisdiction]**'s sewer use ordinance against industrial users located in **[Contributing Jurisdiction]**. **[Control Authority]** may take any action under **[Contributing Jurisdiction]**'s sewer use ordinance that could have been taken by **[Contributing Jurisdiction]**, including the enforcement of the ordinance in courts of law.

B. **[Control Authority]**, on behalf of and as agent for **[Contributing Jurisdiction]**, will perform technical and administrative duties necessary to implement and enforce **[Contributing Jurisdiction]**'s sewer use ordinance. **[Control Authority]** will: (1) update the industrial waste survey; (2) issue permits to all industrial users required to obtain a permit; (3) conduct inspections, sampling, and analysis; (4) take all appropriate enforcement action as outlined in **[Control Authority]**'s enforcement response plan and provided for in **[Contributing Jurisdiction]**'s sewer use ordinance; and (5) perform any other technical or administrative duties the Parties deem appropriate. In addition, **[Control Authority]** may, as agent of **[Contributing Jurisdiction]**, take emergency action to stop or prevent any discharge which presents or may present an imminent danger to the health or welfare of humans, which reasonably appears to threaten the environment, or which threatens to cause interference, pass through, or sludge contamination.

3. Before an industrial user located outside the jurisdictional boundaries of **[Contributing Jurisdiction]** discharges into **[Contributing Jurisdiction]**'s sewer system, **[Contributing Jurisdiction]** and **[Control Authority]** will enter into an agreement with the jurisdiction in which such industrial user is located. Such agreement will be substantially equivalent to this Agreement and must be entered into prior to a discharge from any such industrial user.

4. *Note: The Control Authority should choose only one of the following paragraphs.*

**[Contributing Jurisdiction]** will reimburse the **[Control Authority]** for all costs incurred in implementing and enforcing **[Contributing Jurisdiction]**'s sewer use ordinance. **[Control Authority]** will provide **[Contributing Jurisdiction]** with a detailed accounting of all such costs.

**or**

**[Control Authority]** will be responsible for all costs incurred by it in implementing and enforcing **[Contributing Jurisdiction]**'s sewer use ordinance.

5.A. If any term of this Agreement is held to be invalid in any judicial action, the remaining terms will be unaffected.

B. The Parties will review and revise this Agreement to ensure compliance with the Federal Clean Water Act (42 U.S.C. §1251 et seq.) and rules and regulations (see 40 CFR Part 403) issued thereunder, as necessary, but at least once every [ ] years on a date to be determined by the Parties.

C. **[Control Authority]** may terminate this Agreement by providing **[ ]** days written notice to the **[Contributing Jurisdiction]**. All benefits and obligations under this Agreement will cease following **[ ]** days from receipt of such notice.

6. If the authority of **[Control Authority]** to act as agent for **[Contributing Jurisdiction]** under this Agreement is questioned by an industrial user, court of law, or otherwise, **[Contributing Jurisdiction]** will take whatever action is necessary to ensure the implementation and enforcement of its sewer use ordinance against its industrial users, including, but not limited to, implementing and enforcing its sewer use ordinance on its own behalf and/or amending this Agreement to clarify the Control Authority's authority.

**[Control Authority]** **[Contributing Jurisdiction]**

# APPENDIX B

## EXAMPLE MULTIJURISDICTIONAL AGREEMENT GIVING THE CONTRIBUTING JURISDICTION RESPONSIBILITY FOR PRETREATMENT PROGRAM IMPLEMENTATION AND ENFORCEMENT

*The following model language is intended as a guide for situations where the contributing jurisdiction is responsible for implementation and enforcement of the pretreatment program against its industrial users. This language addresses only pretreatment issues, but may be adapted to address other issues such as sewer use fees. Items in brackets ("[ ]") must be supplied by the parties.*

Agreement between
[Control Authority]
and
[Contributing Jurisdiction]

This Agreement is entered into this ____ day of ____, 19_, between **[Control Authority]** and **[Contributing Jurisdiction]** (hereinafter jointly referred to as the "Parties").

RECITALS

1. **[Control Authority]** owns and operates a wastewater treatment system.

2. **[Contributing Jurisdiction]** currently utilizes this wastewater treatment system.

3. Facilities located in **[Contributing Jurisdiction]** currently contributes wastewater which includes industrial waste. These facilities are hereinafter referred to as industrial users.

4. **[Control Authority]** must implement and enforce a pretreatment program to control discharges from all industrial users of its wastewater treatment system pursuant to requirements set out in 40 CFR Part 403 **[and State Code citation if appropriate]**. In this Agreement **[Contributing Jurisdiction]** agrees to adopt a sewer use ordinance that subjects the industrial users within its boundaries to the necessary pretreatment controls, and to implement and enforce that sewer use ordinance.

**AGREEMENT**

1.A. **[Contributing Jurisdiction]** will adopt and diligently enforce a sewer use ordinance which is no less stringent and is as broad in scope as the sewer use ordinance **[ordinance citation]** of **[Control Authority]**. **[Contributing Jurisdiction]** will forward to **[Control Authority]** for review a draft of its proposed sewer use ordinance within [ ] days of the date of this Agreement. **[Contributing Jurisdiction]** will adopt its sewer use ordinance within [ ] days of receiving approval from **[Control Authority]** of its content.

B. Whenever **[Control Authority]** revises its sewer use ordinance, it will forward a copy of the revisions to **[Contributing Jurisdiction]**. **[Contributing Jurisdiction]** will adopt revisions to its sewer use ordinance that are at least as stringent as those adopted by **[Control Authority]**. **[Contributing Jurisdiction]** will forward to **[Control Authority]** for review its proposed revisions within [ ] days of receipt of the **[Control Authority]**'s revisions. **[Contributing Jurisdiction]** will adopt its revisions within [ ] days of receiving approval from **[Control Authority]** of its content.

C. **[Contributing Jurisdiction]** will adopt and diligently enforce pollutant specific local limits which address at least the same pollutant parameters and are at least as stringent as the local limits enacted by **[Control Authority]** within [ ] days of the date of this Agreement.

If **[Control Authority]** makes any revisions or additions to its local limits, it will forward to **[Contributing Jurisdiction]** a copy of such revisions or additions within **[ ]** days of enactment thereof. **[Contributing Jurisdiction]** will adopt any such revisions or additions within [ ] days of receipt thereof.

2.A. **[Contributing Jurisdiction]** will take all actions necessary to ensure that industrial users within its boundaries are subject to an approved pretreatment program to the extent required by 40 CFR 403.8, including the performance of all technical and administrative duties necessary to implement and enforce its sewer use ordinance against industrial users located in its jurisdiction. **[Contributing Jurisdiction]** will: (1) update the industrial waste survey; (2) issue permits to all industrial users required to obtain a permit; (3) conduct inspections, sampling, and analysis; (4) perform enforcement activities; and (5) perform any other technical or administrative duties the Parties deem appropriate. In addition, **[Contributing Jurisdiction]** will take emergency action to stop or prevent any discharge which presents or may present an imminent danger to the health or welfare of humans, which reasonably appears to threaten the environment, or which threatens to cause interference, pass through, or sludge contamination.

B. **[Contributing Jurisdiction]** will maintain current information on industrial users located in its jurisdiction. **[Contributing Jurisdiction]** will update the industrial waste survey on **[specific dates - not less than annually]** for industrial users located in its jurisdiction. **[Contributing Jurisdiction]** will forward a copy of this survey to **[Control Authority]**.

C. Whenever a new industrial user begins operations in **[Contributing Jurisdiction]**, or any time an existing industrial user increases its discharge **[by ___%]** or changes its discharge, or any time it is requested by **[Control Authority]**, **[Contributing Jurisdiction]** will require that such industrial user respond to an industrial user questionnaire supplied by **[Control Authority]**. **[Contributing Jurisdiction]** will forward a copy of the completed questionnaire to **[Control Authority]** for review.

D. **[Contributing Jurisdiction]** will provide **[Control Authority]** access to all records or documents relevant to the pretreatment program for any industrial user located in **[Contributing Jurisdiction]** or discharging through **[Contributing Jurisdiction]** to **[Control Authority]**.

E. **[Contributing Jurisdiction]** will inspect and sample all industrial users located in its jurisdiction each year. **[Contributing Jurisdiction]** will submit written notice of scheduled inspections to **[Control Authority]**, providing the opportunity for **[Control Authority]** to attend all inspections. If an inspection is in response to an emergency situation and such notice is not possible, **[Contributing Jurisdiction]** will make every effort to informally notify **[Control Authority]** of the impending inspection so **[Control Authority]** may attend. **[Contributing Jurisdiction]** will forward copies of all inspection reports to **[Control Authority]** within [ ] days of the inspection. **[Contributing Jurisdiction]** will submit to **[Control Authority]** its procedures for sampling and analyses, including all procedures in place for quality assurance and quality control. All procedures will conform to those set out in 40 CFR Part 136, except as otherwise required by the U.S. Environmental Protection Agency.

F. **[Control Authority]** may, with notice to **[Contributing Jurisdiction]**, conduct inspections and sampling at any industrial user's facility located within **[Contributing Jurisdiction]**, as it deems necessary.

G. **[Contributing Jurisdiction]** will issue permits to all industrial users required to be permitted under its sewer use ordinance located in its jurisdiction. Permits must be issued prior to any discharge. Permits must contain, at a minimum, appropriate effluent limitations, monitoring and reporting requirements, a statement of duration, a statement of nontransferability, a statement of applicable civil and criminal penalties, and any other conditions requested to be included in the permit by **[Control Authority]**. After **[Contributing Jurisdiction]** drafts a permit, **[Contributing Jurisdiction]** will forward a copy thereof to **[Control Authority]** for review and comment at least [ ] days prior to the expected date of issuance. Within [ ] days of receipt of the proposed permit, **[Control Authority]** will either approve the permit or request **[Contributing Jurisdiction]** to make additions, deletions, or changes. No permit will be issued if **[Control Authority]** objects.

H. **[Contributing Jurisdiction]** will submit a monthly report to **[Control Authority]** on the compliance status of each significant industrial user and any enforcement response taken or anticipated. Such report will include the time frames for initial enforcement actions, as well as any subsequent enforcement actions.

I. **[Contributing Jurisdiction]** will enforce the provisions of its sewer use ordinance and permits. In the event **[Contributing Jurisdiction]** fails to take adequate enforcement action against noncompliant users in **[Contributing Jurisdiction]** on a timely basis, **[Control Authority]** will take such action on behalf of and as agent for **[Contributing Jurisdiction]**.

3. **[Control Authority]** may take emergency action, whenever it deems necessary, to stop or prevent any discharge which presents, or may present, an imminent danger to the health or welfare of humans, which reasonably appears to threaten the environment, or which threatens to cause interference, pass through, or sludge contamination. **[Control Authority]** will provide informal notice to the industrial user and **[Contributing Jurisdiction]** of its intent to take emergency action prior to taking action. The opportunity to respond, however, may be limited to a hearing after the emergency powers of **[Control Authority]** have been exercised.

4. Before an industrial user located outside the jurisdictional boundaries of **[Contributing Jurisdiction]** discharges into **[Contributing Jurisdiction]**'s sewer system, **[Contributing Jurisdiction]** and **[Control Authority]** will enter into an agreement with the jurisdiction in which such industrial user is located. Such agreement shall be substantially equivalent to this Agreement and must be fully secured prior to a discharge from any industrial user in the outside jurisdiction.

5. **[Contributing Jurisdiction]** will indemnify **[Control Authority]** for all damages, fines, and costs either incurred as a result of industrial waste discharged from **[Contributing Jurisdiction]** or from the failure of **[Contributing Jurisdiction]** to comply with this Agreement.

6.A. If any term of this Agreement is held to be invalid in any judicial action, the remaining terms of this Agreement will be unaffected.

B. The Parties will review and revise this Agreement to ensure compliance with the Federal Clean Water Act (42 U.S.C. §1251 et seq.) and the rules and regulations (see 40 CFR Part 403) issued thereunder, as necessary, but at least every [ ] years on a date to be determined by the Parties.

C. **[Control Authority]** may terminate this Agreement by providing [ ] days written notice to the **[Contributing Jurisdiction]**. All benefits and obligations under this Agreement will cease following [ ] days from receipt of such notice.

**[Control Authority]** ____________ **[Contributing Jurisdiction]** ____________

# APPENDIX C

# EXAMPLE OF AN INDUSTRIAL USER CONTRACT

*This model language is intended as a guide for an individual contract with an industrial user located in a contributing jurisdiction. This language addresses only pretreatment issues and may be adapted to address other issues, such as sewer use fee schedules. Items in brackets ("[ ]") must be supplied by the parties.*

This Agreement is entered into this ____ day of _____, 19__ between **[Control Authority]** and **[Industrial user]** (hereinafter jointly referred to as the "Parties").

RECITALS

1. **[Control Authority]** owns and operates a wastewater treatment system.

2. **[Industrial user]** wishes to utilize the wastewater treatment system.

3. The Parties recognize that **[Control Authority]** must implement and enforce a pretreatment program to control discharges from all industrial users of its wastewater treatment system pursuant to requirements set out in 40 CFR Part 403 **[and State Code citation if appropriate]**.

AGREEMENT

1. **[Control Authority]** will provide sewer service to **[Industrial user]** in consideration for payment of applicable sewer use rates and fees.

2. Prior to discharge, **[Industrial user]** will submit to **[Control Authority]** an application for a permit to discharge industrial wastes according to **[cite appropriate provision in Control Authority's sewer use ordinance]** (hereinafter referred to as the "Ordinance"). The **[Control Authority]** will either issue a permit subject to appropriate terms and conditions or will deny the permit application in accordance with the Ordinance.

3. Industrial user will comply with all applicable prohibitions of the Ordinance, **[State Code citation if appropriate]** and 40 CFR Parts 403 through 471. If **[Control Authority]** issues a permit to **[Industrial user]**, **[Industrial user]** will comply with all conditions and obligations imposed on it by the permit.

4. **[Industrial user]** subjects itself to any enforcement action available to **[Control Authority]** under the terms of the Ordinance for any violation of the Ordinance or its permit. **[Industrial user]** accepts the jurisdiction of **[cite appropriate Court]** for the purposes of enforcing the Ordinance and will comply with any order of that court to comply with this Agreement or pay penalties for the violation thereof.

5. **[Industrial user]** will provide access to **[Control Authority]**, or its agents, to all parts of its facilities for all measuring, sampling, testing, or other inspection to ascertain compliance with **[Control Authority]**'s sewer use ordinance and **[Industrial user]**'s permit. **[Control Authority]** may conduct inspections at all reasonable times and without prior notice.

6. The permit will authorize **[Industrial user]** to discharge to **[Control Authority]**'s wastewater treatment system for a specified period of time. Prior to the expiration of its permit, **[Industrial user]** must submit another application for a permit as specified in the Ordinance. **[Control Authority]** will review the application and decide whether to reissue

a permit to **[Industrial user]**. **[Control Authority]** may deny **[Industrial user]** a permit for whatever reason it deems appropriate.

7. **[Industrial user]** will indemnify **[Control Authority]** for all damages, fines, and costs incurred as a result of its industrial waste discharge.

8. If any term of this Agreement is held to be invalid in any judicial action, the remaining terms will be unaffected.

9. This Agreement will remain in effect for a term of **[ ]** years subject to renewal. Renewal of this Agreement must be executed in a signed writing at least **[ ]** days prior to the expiration of the term of this Agreement.

10. This Agreement may be amended only by written agreement of the Parties.

**[Control Authority]** ______________________ **[Industrial User]** ______________________