# EXHIBIT 17

*Gjovik v Apple Inc, City of Santa Clara, et al,* 25-CV-07360-PCP (Northern District of California). Opposition to City of Santa Clara's Motion to Dismiss (Dkt. 127).

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION I
BEFORE THE ADMINISTRATOR

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| City of Rochester, New Hampshire, Respondent. | ) | Docket No. CWA-1-I-88-1009 |
| | ) | |

ORDER

On November 24, 1987, the United States Environmental Protection Agency ("EPA" or "Complainant") issued a complaint against the City of Rochester, New Hampshire ("Rochester" or "Respondent") pursuant to section 309(g) of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1319(g). The Complaint alleges that Respondent violated sections 301(a) and 307 of the Act, 33 U.S.C. §§1311 (a) and 1317; and its June 11, 1982 National Pollutant Discharge Elimination System (NPDES) permit no. NH0100668, including permit as modified on July 29, 1986. Specifically, Respondent is charged with violating the Act and its permit by failing to timely or completely implement an approved pretreatment program.[1] EPA proposed to assess a Class I penalty of $25,000.00.[2]

[1] The Act directs EPA to make regulations which set limits on pollutants that are discharged from Publicly Owned Treatment Works (POTW's). The NPDES permit required Respondent to submit for EPA approval, by September 9, 1982, a pretreatment program that satisfied the requirements of 40 C.F.R. §§403.8 and 403.9.

[2] The procedures for issuance of Class I administrative penalties under Section 309(g) of the Act, 33 U.S.C. 1319(g) are set forth in Guidance on Class I Clean Water Act Administrative Penalty Procedures, dated July 27, 1987.

Respondent served an Answer, Affirmative Defenses and Request for a Hearing on December 31, 1987. On May 9, 1988, Complainant filed a Motion for Partial Summary Determination on the issue of Respondent's liability. On June 17, 1988, the Respondent filed an Objection and Response to Complainant's Motion for Partial Summary Determination.[3]

Section 126.104(f) of the Class I CWA Administrative Penalty Procedures provides that a party may move for summary determination on any issue on the basis that there is no genuine issue of fact. Furthermore, when a motion for summary determination is made and supported, a party opposing the motion may not rest upon mere allegations or denial but must show, by affidavit or by other materials subject to consideration by the Presiding Officer, that there is a genuine issue of material fact for determination at the hearing. As discussed below, neither the Respondent in its supporting affidavits, nor the administrative record, indicate that there are any geniune issues of material fact.

Section 301 (a) of the Act, 33 U.S.C. § 1311(a) prohibits the discharge of any pollutant by any person except in compliance with the terms of Section 402 of the Act, 33 U.S.C. § 1342, and other sections of the Act. Section 402 of the Act provides that

---

[3] This case has a lengthy procedural history. Initially, Mr. David Struhs was designated to act as Presiding Officer in accordance with Section 126.103 of the Class I Guidance rules. Mr. Struhs issued several orders addressing motions and memoranda filed by the parties. On September 30, 1988, the Regional Administrator reassigned this case to James T. Owens,III.

EPA may issue NPDES permits for the discharge of pollutants upon the condition that such discharges will meet certain requirements of the Act, including applicable pretreatment requirements, or will meet such conditions as the Administrator deems necessary to carry out the provisions of the Act. Compliance with a permit issued pursuant to Section 402 is deemed compliance with Section 301(a). Conversely, violation of a term or condition of a permit issued pursuant to Section 402 is deemed a violation of Section 301(a) of the Act.

In order for EPA to prevail on its motion for Partial Summary Determination of Rochester's liability under the Act, EPA must prove that: Rochester is a person; that it discharged pollutants into a navigable water from a point source; and that the discharge was not in compliance with its NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

The Respondent does not argue the first two grounds for establishing liability. The record clearly establishes that Respondent is a person.[4] The record also establishes that the Respondent discharged a pollutant into navigable water from a point source.[5] The remaining issue is whether Respondent complied with the terms and conditions of its NPDES permit.

---

[4] Complainant's Motion for Summary Determination, Serra Affidavit at ¶ 3,4.

[5] Id. Serra Affidavit at ¶ 15. Respondent's Objection to Summary Determination, Affidavit of Martin LaFerte at ¶ 27.

Paragraphs (d) and (e) of Respondent's NPDES permit issued June 11, 1982, (the 1982 permit) provides as follows[6]:

> d. By <u>September 1, 1982</u>, the permittee shall submit to the director for approval, a pretreatment program. The program proposed must satisfy the requirements of 40 C.F.R. § 403.8 and the request must conform to the requirements of 40 C.F.R. § 403.9.
>
> e. By July 1 1983, the permittee shall notify the EPA that it has implemented an approved pretreatment program. The permittee shall operate the program in a manner consistent with the general Pretreatment Regulations , 40 C.F.R. 403, and the approved program.

By letter dated March 7, 1985, EPA approved Respondent's pretreatment program.[7] On July 29, 1986, EPA modified the 1982 permit to require immediate implementation of Respondent's pretreatment program.[8]

As required by 40 C.F.R. §403.8(f)(2), the pretreatment program submitted by Respondent and approved by EPA (the approved program) sets forth specific procedures which Respondent must implement to ensure compliance with the pretreatment standards and other requirements of its pretreatment program. These procedures include:

a) Submission of an Industrial Pretreatment Program Progress Report annually;

---

[6]EPA refers to this section of Respondent's NPDES permit as condition"B.d and B.e". However, I found nothing labeled "B" in the permit.

[7]Complainant's motion for Summary Determination, Serra Affidavit at ¶ 5.

[8] Id. Serra Affidavit at ¶ 6.

b) Issuance of discharge permits to all industrial contributors required to comply with applicable pretreatment standards;

c) Monitoring the quantity and quality of wastes discharged to the wastewater systems by each permitted contributor;

d) Organizing a data file for each industrial contributor and publishing an annual report citing industries in violation of industrial discharge permits; and

e) Investigating industries in violation of their permit and determining enforcement procedures required to correct these violations.

After review of the record, it is clear that Respondent did not implement these requirements. Therefore, Respondent failed to operate its program in a manner consistent with 40 C.F.R. 403, and with its approved program, as required by the terms and conditions of its permit.

Respondent was required under its approved program to submit, among other things, Industrial Pretreatment Program Progress Reports by the first of February of each year. On December 5, 1985, EPA sent a letter to Respondent, reminding it of the upcoming report due on February 1, 1986.[9] The December 5, 1986 letter served as "both a reminder of the upcoming report due date and an outline of information which should be included".[10] There is nothing in the record which indicates that Respondent took any action in response to EPA's December 5, 1985 letter.

[9]Complainant's Motion for Summary Determination, Attachment 6, Serra.

[10] Id. Attachment 6, at 1

When the Respondent's permit was modified on July 29, 1986, the EPA again reminded Respondent of the past due report. After several meetings, correspondence and a reminder on July 26, 1987, the Respondent submitted a two page report on July 1, 1987. The report merely stated that telephone calls were made to involved industries, files were being "formalized" and scenarios for future testing and discharge acceptance were being developed.[11] The letter may be construed as a "status" report but was inadequate as an annual report because it was lacking in scope and detail.

The next annual report was due on February 1, 1988. The report was not submitted until April 8, 1988. The Respondent clearly failed to timely submit these annual reports and thus violated its permit by failing to comply with a requirement under its approved program.

The approved program also required Respondent to issue Industrial User Discharge Permits to all significant industrial contributors required to comply with applicable pretreatment standards. However, Respondent did not issue industrial user discharge permits as of February 1988 which caused a delay in program implementation of almost three years.[12] This lack of compliance is in violation of its permit.

---

[11] Complainant's Motion for Summary Determination, Attachment # 9.

[12] Complainant's Motion for Summary Determination, Attachment 13, Serra p.13.

The record is clear with respect to Respondent's failure to monitor industrial users in accordance with the requirements of its approved program. The program required annual scheduled and annual unscheduled inspections and sampling analysis of significant industrial users. The Respondent's 1988 annual report shows that the first round of sampling of the applicable industries was not performed until June of 1987, over two years after the program was approved.[13] Although inspections of several industries may have been performed prior to June of 1987, there is no evidence that sampling was done during these inspections or that inspection reports were prepared or filed as required. Respondent failed to monitor industrial users in accordance with its approved program, and therefore violated its permit.

Respondent's approved program required it to organize a data file for each industrial contributor and to publish an annual report citing industries in violation of industrial discharge permit. During June of 1987, EPA conducted a compliance inspection. Respondent was unable to produce files containing inspection reports, monitoring data, or other pertinent information.[14] Respondent's report of July 1, 1987 indicates that it was in the process of "formalizing" its files.[15] It was

---

[13] Complainant's Motion for Summary Determination, Attachment 13, Serra § 4.2.

[14] Complainant's Motion for Summary Determination, Attachment 2, Allen

[15] Complainant's Motion for Summary Determination, Attachment 9, Serra.

not until December of 1988 that the Respondent indicated that files on each industry had been organized. The Respondent's failure to organize data files in a timely manner, as required by its approved program was a violation of its permit.

Another requirement of Respondent's approved program was to investigate industries violating their permits and to determine the appropriate enforcement procedure required to correct such violations. The Respondent's report of July 1, 1987 states that sampling indicated areas of non-compliance with the permit.[16] The report also indicates that the Respondent would be implementing "formal compliance actions".[17] However, the April 1988 annual report states that "no action had been taken or is planned".[18] Respondent's failure to enforce industrial compliance with permit requirements is a violation of its NPDES permit.

Based upon the above, Complainant has established that Respondent violated the terms and conditions of its permit on five counts, by its failure to operate its program in a manner consistent with the general Pretreatment Regulations, 40 C.F.R. 403, and its approved program.

---

[16] Complainant's Motion for Summary Determination, Attachment 9, Serra p.1

[17] Id. p.1

[18] Complainant's Motion for Summary Determination, Attachment 13, Serra p.13

The Respondent raised several affirmative defenses in response to the Complainant's motion for Partial Summary Determination. These arguments are not persuasive.

First, Respondent asserts that the Complainant is estopped from assessing an administrative penalty because the delay in implementation of the pretreatment program was with the knowledge and consent of EPA. Specifically, Rochester alleges that: 1) EPA knew the City was not meeting permit deadlines; and 2) EPA stated they would not use pretreatment program deadlines to penalize the city.

The record shows that EPA sent numerous letters, made phone calls and held several meetings with Respondent. The Respondent characterizes EPA's letters, conversations, and meetings as condoning Respondent's failure to comply with its permit. The record does not support this interpretation of these events. However, regardless of Respondent's characterization, the courts have consistently rejected claims based on agreements by government agents to circumvent the law. The United States is "neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done that which the law does not sanction or permit. Utah Power and Light Co. V. U.S., 243 U.S. 389,409 (1917). See also, Federal Crop Insurance Corp. V. Merrill, 332 U.S. 380, 384 (1947) (Oral representations and promises of government agent to farmer that crops were insurable were contrary to federal regulation and therefore could not be used to estop government from denying

insurance payments when crop failed); Jackson V. United States, 573 F.2d 1189 (1978) (Oral promises by recruiting officer that enlistee would not be assigned to combat-type duty not binding on government). Therefore, even if EPA staff told Rochester's representatives that deadlines would not be enforced, EPA would not be estopped from later enforcing the law.

Second, Respondent argues that EPA's complaint must be dismissed because EPA failed to consult with the State of New Hampshire ("State") prior to assessing an administrative penalty. Section 309(g)(1) of the Act, 33 U.S.C § 1319(g)(1), provides that the "Administrator may, after consultation with the State assess a Class I penalty". The Respondent argues that this provision requires EPA to seek input from the State prior to initiating any administrative penalty proceedings.

EPA has produced evidence to support its claim that it has conferred with the State regarding the assessment of an administrative penalty. EPA called Dan H. Allen of the New Hampshire Department of Environmental Services to discuss EPA's proposal to issue an administrative penalty complaint against Rochester.[19] In addition to these verbal discussions, EPA also sent the State formal notice of the proposed penalty on November 30, 1987. A copy of this letter was filed with the Regional Hearing Clerk. These actions satisfied the state consultation requirement in Section 309(g) of the Act, 33 U.S.C. §1319(g).

---

[19] Complainant's Motion for Summary determination, Serra Affidavit, ¶ 15,16; Allen Affidavit, ¶10

Third, the Respondent claims that the EPA cannot impose administrative penalties under 309(g) of the Act for administrative violations that occurred prior to February 4, 1987, the date that the Act was amended to give EPA authority to seek administrative penalties. Respondent bases its claim on The U.S. Constitution, Article I, 9, clause 3 and U.S. Constitution, Article I, 10. cl.1.

Respondent asserts that an "ex post facto" prohibition "forbids Congress and the States (1) from enacting any law which imposes a punishment for an act which was not punishable at the time the act was committed or from enacting any law which imposes an additional punishment or penalty to the punishment prescribed at the time the act was committed, Weaver V. Graham, 450 U.S. 24, 29-30 (1981), or, (2) from imposing a new punitive measure to an act already consummated, to the detriment or material disadvantage of the alleged wrongdoer, Lindsey v. Washington, 301 U.S.397,401 (1937)".

However, the February 4, 1987 statutory amendment neither changed the existing substantive requirements to which Respondent is subject, nor placed new obligations on the Respondent; nor increased the amount of the penalties that Respondent could be subject to for violations of the substantive requirements of the Act. The change was merely in the forum in which the penalty action will be heard.

Case law in this area is clear. Statutory amendments which in effect merely change the forum for review and do not take away

any substantive rights can be applied retroactively. Bell v. New Jersey, 103 S.Ct 2187,2190, footnote 3 (1983); Hallowell v. Commons, 36 S.Ct. 202, 203 (1916). Thus, § 309(g), of the Act, 33 U.S.C. § 1319(g) which changes the forum in which the penalty will be adjudicated for violations of the Act, but not the substance of the liability, can be applied retroactively to violations which occurred prior to statutory amendment date of February 4, 1987.

In addition, Respondent alleged several procedural defects as defenses in its Answer and Memorandum. First, Respondent argues that it was not afforded the "opportunity to ascertain the facts through traditional discovery methods".[20] The Respondent was concerned with: 1) ascertaining whether or not a true "consultation" occurred between the EPA and the State; and 2) The Respondent's ability to depose EPA personnel on the issue of the proposed penalty assessment.

The question of Respondent's ability to engage in discovery on the "consultation" issue is moot. As noted above, the administrative record indicates that EPA's communications with the State fulfilled the requirements of the Act. There is no need to engage in discovery on this issue.

Respondent's second procedural argument is that it needs to depose EPA personnel on the issue of the proposed penalty assessment. Courts have found that an administrative board's

---

[20] Respondent's Memorandum in Opposition to Complainant's Motion for Partial Summary Determination,p.2.

decision not to allow discovery is not prejudicial since counsel has ample opportunity to cross-examine the government's witnesses at the hearing about the matters on which he wanted to depose them. N.L.R.B. V. Interboro Contractors, Inc., 432 F.2d 854,857 (2nd Cir. 1970). Respondent will have the opportunity to cross examine Complainant's witnesses at the hearing.[21]

Respondent alleges procedural defects in the administrative proceedings. Respondent argues that inter alia: Complainant failed to cite the "name" of the Regional Hearing Clerk in its complaint. Respondent also argues that the Complaint did not include the precise instructions as stated in Class I administrative penalty guidelines regarding "Notice of opportunity to request a hearing". However, in its Answer and Memorandum, Respondent failed to state how it was disadvantaged by any procedural defects. In both instances the information contained in the Complaint was complete and did not disadvantage the respondent's ability to reply. This is evidenced by the proper filing of Respondent's thorough and complete answer and brief.

Respondent's allegations amount to "de minimis" procedural defects. Courts have held that procedural irregularities in administrative pleadings will not invalidate administrative proceedings unless the irregularities were so serious as to

---

[21] Furthermore, it is not apparent that discovery is needed on this issue at this stage of the proceedings. The issue before the Administrator is Summary Determination on the issue of liability, not Penalty Assessment.

prejudice a party. E.G. Usery V. Marquette Mfg. Co., 568 F2d 902 (2nd Cir. 1977). The allegations raised do not rise to the level of materially affecting any of Respondent's rights. In sum, Respondent has failed to show and the administrative record fails to show, how Respondent was prejudiced or had its rights materially affected by the alleged procedural defects.

The Complainant has proved that the Respondent violated Sections 301(a) and 307 of the Act, 33 U.S.C. §§ 1311(a) and 1317. The record supports Complainant's allegations that Respondent failed to timely or completely implement its pretreatment program as required by its permit. Therefore, there is no genuine issue of material fact on the issue of Respondent's liability. Partial Summary Determination on the issue of the City of Rochester's liability is therefore GRANTED.

Pursuant to §126.103(c) of EPA Guidance on Class I Clean Water Act Administrative Penalty Procedures, I am scheduling a prehearing conference for April 24, 1989 for the hearing on the assessment of an administrative civil penalty.

DATE: Mar. 21, 1989

James T. Owens, III
Presiding Officer

CERTIFICATE OF SERVICE

I certify that the foregoing Order dated March 21, 1989 was sent this in the following manner to the below addressess:

Original by hand to:

Marianna Browning
Acting Regional Hearing Clerk
U.S. EPA
J. F. Kennedy Federal Building
RRC-2003
Boston, MA 02203

Copy by hand to:

Tonia D. Bandrowicz
Assistant Regional Counsel
U.S. EPA
J. F. Kennedy Federal Building
RRC-2003
Boston, MA 02203

Copy by U.S. Mail, certified return receipt requested:

Danford Wensley
Michael, Jones & Wensley
P.O. Box 1500
Rochester, NH 03867

James T. Owens, III
Presiding Officer