Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIV.

**ASHLEY M. GJØVIK**,
*an individual,*

**PLAINTIFF,**

***vs.***

**APPLE INC.**,
*a corporation,*

**CITY OF SANTA CLARA,**
*a local government,*

**& THE PROPERTY OWNERS: MR. KALIL JENAB,**
*individually and as agent of various entities,*

**AND MS. JULIA LINDSEY & MS. KATHLEEN WOODRUFF,**
*in their respective capacities as trustees.*

**DEFENDANTS**.

**Case No. 25-CV-07360-PCP**

**District Judge**: Honorable P. Casey Pitts

**PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DKT. 127)**

**HEARING:**
Date: Nov. 5, 2026
Time: 10:00 A.M.
Courtroom: 8, 4th Floor

# TABLE OF CONTENTS


I. STATEMENT OF THE ISSUES TO BE DECIDED ..... 1
II. RELEVANT FACTS ..... 2
A. The City's Storm Drains and MS4 Permit ..... 2
B. The Plant and the Pretreatment Program ..... 2
C. The City's Parks and Knowledge ..... 3
D. The 2022–2023 Reclassification of the Facility ..... 4
E. Plaintiff and the Procedural History ..... 5
III. STANDARD OF REVIEW ..... 5
IV. ARGUMENT ..... 6
A. Plaintiff Has Standing. ..... 6
B. The City Is Sued as a Regulated Party, Not as a Regulator. ..... 7
C. Count 22 States Claims Under the City's MS4 Permit. ..... 9
D. Count 21 States Claims Under the City's Wastewater Permit. ..... 13
E. Count 35 States a Public Nuisance Claim. ..... 15
i. The Court has supplemental jurisdiction. ..... 15
ii. Plaintiff alleges special injury. ..... 16
iii. The City is liable for conditions on and through its property. ..... 16
iv. Neither the Government Claims Act nor *Heckler* bars the claim. ..... 18
v. The claim is timely and does not challenge any CEQA determination. ..... 18
F. The Remaining Counts Rest on the City's Own Duties. ..... 19
i. RCRA (Counts 1, 5, and 8) ..... 19
ii. Clean Air Act (Counts 2, 14, and 15) ..... 21
iii. EPCRA (Counts 26 and 27) ..... 22
iv. Count 24 ..... 23
v. TSCA (Count 32) ..... 24
G. Any Dismissal Should Be With Leave to Amend. ..... 24
V. CONCLUSION ..... 25
VI. [PROPOSED] ORDER ..... 26

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc) .................... 8
*Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012).................... 24
*America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021).................... 24
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 6
*Ashoff v. City of Ukiah*, 130 F.3d 409 (9th Cir. 1997) .................... 20, 21
*Ass'n of Irritated Residents v. EPA*, 10 F.4th 937 (9th Cir. 2021).................... 7
*Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862 (1985) .................... 19
*Baldwin v. State of California*, 6 Cal. 3d 424 (1972).................... 18
*Bennett v. Spear*, 520 U.S. 154 (1997).................... 7
*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) .................... 16, 17
*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003).................... 23, 24
*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) .................... 15
*Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO (E.D. Cal. July 16, 2026) .................... 8, 21
*Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350 (2017) .................... 17
*City of Claremont v. Kruse*, 177 Cal. App. 4th 1153 (2009).................... 17
*City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023).................... 8
*City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28 (2004) .................... 16, 17
*City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002).................... 8
*Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764 (2d Cir. 1992).................... 21
*Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984).................... 18
*Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180 (1st Cir. 1989).................... 20
*Comm. for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) .................... 7
*Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32 (2010) .................... 18
*Conservation Law Found. v. Mass. Water Res. Auth.*, No. 22-10626-RGS (D. Mass. Feb. 17, 2023).................... 15
*County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020) .................... 12
*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292 (2006) .................... 16
*Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004) .................... 20
*Cox v. City of Dallas*, 256 F.3d 281 (5th Cir. 2001) .................... 20
*Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) .................... 19, 20

*Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) .... 8
*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005) .... 22
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .... 24
*Erickson v. Pardus*, 551 U.S. 89 (2007) .... 6
*Ex parte Young*, 209 U.S. 123 (1908) .... 23
*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) .... 15
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .... 7, 23
*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015) .... 20
*Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) .... 16
*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .... 13
*Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292 (2023) .... 16
*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) .... 6
*Heckler v. Chaney*, 470 U.S. 821 (1985) .... 8, 15, 18
*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .... 19
*Huffman v. Lindgren*, 81 F.4th 1016 (9th Cir. 2023) .... 6
*Jinks v. Richland County*, 538 U.S. 456 (2003) .... 7
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .... 6, 9, 14, 21
*KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC (N.D. Cal. May 9, 2014) .... 20
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .... 6, 14
*Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605 (1984) .... 16
*Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993) .... 20
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) .... 24
*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) .... 8
*Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991) .... 19
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .... 6
*Martinez v. California*, 444 U.S. 277 (1980) .... 18
*McCarthy v. Thomas*, 27 F.3d 1363 (9th Cir. 1994) .... 21
*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) .... 15
*Minsky v. City of Los Angeles*, 11 Cal. 3d 113 (1974) .... 18
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .... 7
*Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013) .... 13, 14
*Nestle v. City of Santa Monica*, 6 Cal. 3d 920 (1972) .... 16, 18, 19
*Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) .... 6
*Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979 (9th Cir. 1995) .... 7, 13
*Phillips v. City of Pasadena*, 27 Cal. 2d 104 (1945) .... 19

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996) .... 8
*Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95 (9th Cir. 2024) .... 15
*Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668 (9th Cir. 2011) .... 16
*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) .... 6
*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) .... 6
*San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD (N.D. Cal.) .... 10, 12
*Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098 (D. Haw. 1994) .... 15
*Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012) .... 8
*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) .... 8
*Skinner v. Switzer*, 562 U.S. 521 (2011) .... 6
*Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594 (1941) .... 17
*Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) .... 15
*United States v. City of Beaumont*, 786 F. Supp. 634 (E.D. Tex. 1992) .... 14
*United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086 (D. Colo. 2018) .... 13
*Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) .... 16
*Vedder v. County of Imperial*, 36 Cal. App. 3d 654 (1974) .... 17, 18
*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) .... 19
*Wade v. Campbell*, 200 Cal. App. 2d 54 (1962) .... 18

**<u>Federal Statutes</u>**

15 U.S.C. § 2619 .... 24
28 U.S.C. § 1367 .... 15
33 U.S.C. § 1319 .... 9, 15
33 U.S.C. § 1342 .... 7, 9, 14
33 U.S.C. § 1362 .... 7, 12
33 U.S.C. § 1365 .... 1, 7, 8, 9, 13
42 U.S.C. § 6903 .... 20
42 U.S.C. § 6926 .... 20
42 U.S.C. § 6972 .... 19, 20
42 U.S.C. § 7412 .... 21
42 U.S.C. § 7602 .... 21
42 U.S.C. § 7604 .... 21
42 U.S.C. § 11022 .... 22, 23
42 U.S.C. § 11044 .... 22, 23
42 U.S.C. § 11046 .... 22, 23

**California Statutes**


Cal. Bus. & Prof. Code § 16000.3 .......... 11
Cal. Civ. Code § 3479 .......... 16, 18
Cal. Civ. Code § 3483 .......... 16
Cal. Civ. Code § 3490 .......... 18
Cal. Civ. Code § 3493 .......... 16
Cal. Gov't Code § 814 .......... 18
Cal. Gov't Code § 815 .......... 16
Cal. Gov't Code § 818 .......... 15
Cal. Gov't Code §§ 818.2, 818.4, 818.6 .......... 18
Cal. Health & Safety Code § 25404 .......... 4
Cal. Health & Safety Code § 25404.1 .......... 20
Cal. Health & Safety Code § 25509 .......... 22
Cal. Health & Safety Code § 25533 .......... 22
Cal. Pub. Res. Code §§ 21002, 21081, 21151 .......... 21
Cal. Pub. Res. Code § 21167 .......... 18
Cal. Water Code § 1200 .......... 12


**Regulations**


40 C.F.R. § 52.220(c)(63) .......... 21
40 C.F.R. § 68.10 .......... 22
40 C.F.R. § 68.215 .......... 22
40 C.F.R. § 112.3 .......... 4
40 C.F.R. § 122.26 .......... 10, 11, 24
40 C.F.R. § 122.44 .......... 13
40 C.F.R. § 261.4 .......... 19
40 C.F.R. § 271.15 .......... 20
40 C.F.R. § 372.23 .......... 11
40 C.F.R. § 403.3 .......... 13
40 C.F.R. § 403.8 .......... 13, 23
40 C.F.R. § 403.14 .......... 23
40 C.F.R. § 469.10 .......... 11
40 C.F.R. § 751.319 .......... 24
Cal. Code Regs. tit. 27, § 15200 .......... 20
46 Fed. Reg. 5965 (Jan. 21, 1981) .......... 21
81 Fed. Reg. 52,584 (Aug. 8, 2016) .......... 5

**Rules**


Fed. R. Civ. P. 15(a)(2) .......... 24

Fed. R. Civ. P. 19(a) .......... 22


**Permits, Ordinances, and Public Records**


Regional Board Order No. R2-2015-0049, as amended (“MRP 2.0”) (RJN Ex. 1) .......... 2, 10, 11

Regional Board Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 (“MRP”) (RJN Exs. 2–3) .......... 2, 9, 10, 11, 12, 24

Regional Board Order No. R2-2025-0027, NPDES No. CA0037842 (RJN Ex. 4) .......... 13

Regional Board Order No. R2-2020-0001, NPDES No. CA0037842 (RJN Ex. 5) .......... 13

Santa Clara City Code ch. 13.10 (RJN Ex. 6) .......... 9, 14

Santa Clara City Code ch. 13.20, as amended by Ord. No. 2072 (Oct. 22, 2024) (RJN Ex. 9) .......... 2, 9, 11, 17

City of Santa Clara Ord. No. 1920 (Feb. 25, 2014) and City Attorney Agenda Report (RJN Ex. 7) .......... 9

Agenda Report, Director of Water & Sewer Utilities (Jan. 23, 2014) (RJN Ex. 8) .......... 9, 14

SCVURPPP, Petition for Review of Order No. R2-2015-0049 (Dec. 15, 2015) (RJN Ex. 10) .......... 9

CERS Business Owner/Operator Reports, CERS ID 10633816 (2015–2023) (RJN Ex. 11) .......... 4, 5

City of Santa Clara File No. PLN2014-10675, Stormwater Management Plan Submittal (2014) (RJN Ex. 12) .......... 2, 10, 21

CalEPA, Response to Evaluation Progress Report #1: Santa Clara City Fire Department (Apr. 17, 2026) (RJN Ex. 13) .......... 4, 8, 21, 22

State Water Res. Control Bd., SMARTS Records for 3250 Scott Blvd. (RJN Ex. 14) .......... 4, 5, 11, 22

Recorded Parcel Maps and Assessor’s Map (RJN Ex. 15) .......... 12


**Other Authorities**


Cal. Civil Jury Instructions (CACI) No. 2020 .......... 16

Cal OES, State Emergency Response Commission and Local Emergency Planning Committee web pages (RJN Ex. 18) .......... 23

EPA, *Multijurisdictional Pretreatment Programs Guidance Manual* (1994) (RJN Ex. 16) .......... 14

*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989) (RJN Ex. 17) .......... 15

Unidocs, *Toxic Gas Ordinance Consensus Guidelines* (UN-027) (RJN Ex. 20) .......... 4

Unidocs, Who Regulates What in Santa Clara County (RJN Ex. 19) .......... 4

UPAAG, *Violation Classification Guidance for Unified Program Agencies* (rev. Mar. 6, 2020) (RJN Ex. 21) .......... 4

# PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS

1. Defendant City of Santa Clara ("City") moves to dismiss on the premise that its "connection to the Apple Facility is solely as a regulator." Dkt. 127 ("Mot.") at 10. But the City is a named Permittee under the Bay Area municipal stormwater permit, which, the City concedes, "obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains." Dkt. 89 at 7. It is a named "Discharger" under the NPDES permit for the San José–Santa Clara Regional Wastewater Facility ("Plant"), under which "[t]he Discharger shall implement and enforce its approved pretreatment program." Pl.'s Req. for Judicial Notice ("RJN") Ex. 4 § 5.3.4.1. And it owns the storm drains, sewers, and parks that receive discharges from Apple Inc.'s semiconductor fabrication facility at 3250 Scott Boulevard ("Facility").

2. The Clean Water Act ("CWA") lets citizens enforce "a permit or condition of a permit" against "any person," including "any other governmental instrumentality or agency." 33 U.S.C. § 1365(a)(1), (f)(7); Mot. 21. None of the City's cases involved a government sued for violating its own permit, as the Third Amended Complaint ("TAC") alleges here. The prior dismissal rested solely on standing, which the TAC cures. Dkts. 98, 101. The motion should be denied.

## I. STATEMENT OF THE ISSUES TO BE DECIDED

3. Whether Plaintiff has standing against the City; whether Counts 21 and 22 state claims for violations of the City's NPDES permits; whether Count 35 states a public nuisance claim within the Court's supplemental jurisdiction; whether the remaining counts identify duties the City owes; and whether any dismissal should be with prejudice.

# II. RELEVANT FACTS

## A. THE CITY'S STORM DRAINS AND MS4 PERMIT

4. The City is a Permittee under the San Francisco Bay Municipal Regional Stormwater Permit, Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 ("MRP"), and its predecessor, Order No. R2-2015-0049 ("MRP 2.0"). TAC ¶¶ 436, 504; RJN Exs. 1–3. It "owns and maintains" the surrounding storm drains. TAC ¶ 510. Its code defines the "Storm Drain System" as conduits and sewers "of the City" and charges a fee for "the City's federally mandated stormwater management program pursuant to the MRP." SCCC §§ 13.20.020(s)(8), 13.20.030(b), 13.20.190(e), 13.20.200 (RJN Ex. 9 at 12–13, 27–28). The City admits "[t]he Apple facility also discharges to the City's stormwater system." Dkt. 89 at 7.

5. The Facility's 2014 redevelopment was an industrial project subject to Provision C.3; the City-approved plan required bioretention areas, storm drain labels, covered storage, and inspections, and the City promised "periodic post-construction site inspections." TAC ¶ 94; RJN Ex. 12 at 3–7. The required maintenance logs were never filed. TAC ¶ 506. A City inspector reported Apple dumping cooling water into the storm drains in June 2016; the ticket stayed open nearly six years and was closed in 2022 "27 minutes after being assigned." *Id.* ¶ 450.

6. The City's first stormwater inspection, in April 2022, found a bioretention area that "does not appear to be a bioretention area" and no "No Dumping" medallions, yet recorded the site "in compliance"; 59 days later nothing was corrected. *Id.* ¶ 451. In 2025, storm drains sat "immediately adjacent to the hazardous waste storage bunkers." *Id.* ¶ 182. On three dry-weather days in 2026, Plaintiff documented froth, sheen, and discoloration in San Tomas Aquino Creek below the Facility's outfall, with pH of 8.9 to 9.5 and chlorine of 3 to 20 ppm. *Id.* ¶ 184.

## B. THE PLANT AND THE PRETREATMENT PROGRAM

7. The City co-owns the Plant, whose NPDES permit names it a Discharger. TAC ¶¶

43–44, 434–435; RJN Exs. 4–5. The Facility, a categorical Significant Industrial User, discharges about 40,000 gallons a day of process wastewater containing trichloroethylene ("TCE"), arsenic, and other metals into "the public sewer system owned by The City." TAC ¶¶ 85, 146–147, 149, 437, 445, 487. Its wastewater permit is enforced under the City's ordinance. *Id.* ¶¶ 439, 442; Dkt. 134 Ex. 7. In 2020 the program found "no risk mitigation needed" for slug discharges, citing an EPA inspection of a site EPA did not know of until 2023, and the renewed permit says the agency "intends but is not obligated" to monitor. TAC ¶¶ 140, 146. The pretreatment system "has never been comprehensively inspected." *Id.* ¶ 182. The Facility's 2025 reports omit required data, *id.* ¶ 180, and its permit does not identify the character and volume of its pollutants, *id.* ¶¶ 490, 493.

## C. THE CITY'S PARKS AND KNOWLEDGE

8. The City owns Meadow Park, Creekside Park (where an artesian spring well "appears to be"), and the Redwood Trail easement across the street, including a playground, and applies the Plant's recycled water there. TAC ¶¶ 77, 186, 192, 194–195, 487–489, 648. The Meadow Park deed requires compliance with any toxic-substances land-use covenant. *Id.* ¶ 195. In 2024 the City approved expanding a nearby school to 900 children inside Apple's modeled arsine plume, under an evacuation plan sending them to Meadow Park. *Id.* ¶¶ 188, 224–227.

9. The City responded to a 2021 phosphine leak at the Facility, TAC ¶ 148; accepted Apple's answer about silane shutdown in 2022, *id.* ¶¶ 660–663; and found that the Facility's inventory omitted 1,700 gallons of diesel and all chlorine and that it lacked a spill prevention plan, *id.* ¶¶ 144, 183. Its Fire Department called Apple's plume models "not favorable for this area," its records acknowledge that the Facility violates the City's 500-foot residential setback, and in 2025 the City Attorney's office said staff "think this is a bad place for housing." *Id.* ¶¶ 235, 242. Plaintiff described her injuries to the Mayor and the City's utilities director in 2020–

21, and in 2023 sent City officials her complaint of "unlawful disposal of hazardous waste into the air, sewers, and storm drains." *Id.* ¶¶ 15, 43, 134 & Ex. C (Dkt. 119-3 at 8, 36).

10. CalEPA found that the City is not inspecting hazardous waste generators, business-plan facilities, or CalARP sources every three years as required; the generator deficiency, identified in 2017 and 2020, "was not corrected," and five of seven CalARP sources went uninspected from 2021 to 2024, four still in 2026. TAC ¶ 49; RJN Ex. 13 at 4–6. CalEPA also found that the City classified the Facility's failure to prepare a Spill Prevention, Control, and Countermeasure Plan, a CWA requirement, 40 C.F.R. § 112.3, as "minor," a classification "inconsistent with, and less stringent than," EPA's. RJN Ex. 13 at 13; TAC ¶ 144. Under State guidance on which CalEPA directed the City to train inspectors, failing to complete such a plan "at a high-risk facility" is a Class I violation. RJN Ex. 21 at 4, 7, 13; *see* Cal. Health & Safety Code § 25404(a)(3). The City itself charged the Facility for an aboveground tank of "1,320–10,000 gal capacity." RJN Ex. 14 at 12. And though the Fire Department administers the toxic gas ordinance, which places arsine and phosphine in its most hazardous class, it has no record of a toxic gas permit for the Facility. RJN Exs. 19–20; TAC ¶¶ 170, 187.

## D. THE 2022–2023 RECLASSIFICATION OF THE FACILITY

11. From 2015 to 2022, every business plan the Fire Department accepted for the Facility listed computer-manufacturing codes (SIC 3571; NAICS 334111). RJN Ex. 11 at 1–8. Apple's 2019 Risk Management Plan ("RMP") used NAICS 334111, Dkt. 134 Ex. 6; its 2020 Toxics Release Inventory report used semiconductor manufacturing, TAC ¶ 558; and the Plant classified the Facility as a categorical semiconductor manufacturer, *id.* ¶ 118. In 2021, Apple obtained Industrial General Permit coverage through a No Exposure Certification (SIC 3571) certifying that no outdoor storage or waste was exposed to stormwater. RJN Ex. 14 at 1, 4, 7.

12. On October 4, 2022, Apple asked the City to confirm a new code because "[t]he

local waterboard government department is asking for confirmation that our SIC . . . is updated to 8731." The next day the City changed its license codes from office administration to research and development (NAICS 541712, SIC 8731), RJN Ex. 14 at 10–11, though NAICS 541712 had been eliminated, *see* 81 Fed. Reg. 52,584 (Aug. 8, 2016). Apple filed the City's email with the State Water Board, and two days later the Facility's coverage was terminated for "Other." RJN Ex. 14 at 1–2. The City's license had described the Facility as "ADMINISTRATIVE / IS & T OFFICES" while collecting $13,335.22 in fire permit fees for toxic, pyrophoric, and corrosive materials, onsite hazardous waste treatment, and CalARP. *Id.* at 12. Apple recoded its business plan in November 2022, reporting no change in operations, and the City accepted the new codes on June 12, 2023, the day after Plaintiff submitted her complaint to agencies including the Fire Department. RJN Ex. 11 at 7–9; TAC Ex. C (Dkt. 119-3 at 35–36). Apple now relies on the research code to deny that it must report toxic releases. Dkt. 128 at 32. The TAC pleads the code dispute, TAC ¶¶ 558–561, and relies on the CERS records, *id.* ¶¶ 117, 141, 183; Plaintiff can plead the particulars.

### E. PLAINTIFF AND THE PROCEDURAL HISTORY

13. Plaintiff was seriously injured while living across from the Facility; she now lives in Alviso and uses the adjacent creek trail and parks. TAC ¶¶ 14, 27–28, 30–31, 184, 201–205; Decl. of Ashley M. Gjovik, Dkt. 135 ("Gjovik Decl.") ¶¶ 4–8; *see* Dkt. 136 (errata). In June 2026 the Court dismissed for lack of standing, applying that ruling to the City sua sponte "without prejudice to the renewal of any of the motions." Dkt. 98; Dkt. 101 at 24–25. It did not reach the City's other arguments, which this motion largely repeats. *Compare* Mot., *with* Dkt. 58.

## III. STANDARD OF REVIEW

14. The Court accepts the allegations as true and asks whether they state a plausible

claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A complaint need not "pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011), and may not be dismissed "for imperfect statement of the legal theory," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Noticed records may not resolve factual disputes against the plaintiff. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018). The 2014 stormwater plan file is incorporated by reference. TAC ¶ 94; *Khoja*, 899 F.3d at 1002. Because Plaintiff is not a licensed attorney, her complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *cf. Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) (liberal construction does not extend to practicing attorneys).

# IV. ARGUMENT

## A. PLAINTIFF HAS STANDING.

15. The TAC cures each standing defect the Court identified, Dkt. 101 at 25; TAC ¶¶ 27–28, 30–31, 184, and Plaintiff's standing argument against Apple applies here, Dkt. 133 ¶¶ 12–23. Standing is measured on the operative complaint, *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043–48 (9th Cir. 2015), so where Plaintiff lived when she first sued, Mot. 26, is irrelevant.

16. Plaintiff lives about 1,340 feet from San Tomas Aquino Creek, regularly walks the trail, "including the segment immediately downstream of the Facility's stormwater outfall," and uses the City's parks. Gjovik Decl. ¶¶ 4–5; TAC ¶¶ 27–28. She has visited at least eight times since April 2026, stayed overnight near the Facility, and will return monthly, next on November 13–14. Gjovik Decl. ¶¶ 6–7 (as corrected, *see* Dkt. 136). Having seen the conditions below the outfall, she avoids the water and shortens her visits. Gjovik Decl. ¶¶ 9–10, 13–15 &

Exs. A–B; TAC ¶ 184. Those are injuries in fact. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000).

17. They are traceable to the City and redressable by an order requiring it to perform its permit duties and abate conditions on its property: Count 22 concerns non-stormwater passing through the City's storm drains to the creek she walks, TAC ¶¶ 184, 450–451, 510, 520; Count 35, conditions in and beside the City's parks, *id.* ¶¶ 648–651; and Count 21, wastewater the Plant discharges near her home and the City applies in those parks, *id.* ¶¶ 43–44, 434–435, 487–489; Gjovik Decl. ¶ 4. *See Laidlaw*, 528 U.S. at 185–86.

18. The City does not challenge notice, and Plaintiff's response to Apple's notice arguments applies here. Dkt. 133 ¶¶ 24–32. Regardless, the City received Plaintiff's 2023 complaint, TAC Ex. C; her June 2025 notice, TAC Ex. B; Gjovik Decl. ¶ 24; her December 2025 notice, which named the City and went to the State Water Board, Dkt. 55 ¶¶ 7–10; Dkt. 66; and the Second Amended Complaint, Gjovik Decl. ¶ 30.

### B. THE CITY IS SUED AS A REGULATED PARTY, NOT AS A REGULATOR.

19. Section 505 reaches "any person (including . . . any other governmental instrumentality or agency to the extent permitted by the eleventh amendment . . .)" alleged to violate "a permit or condition of a permit issued under section 1342." 33 U.S.C. § 1365(a)(1), (f)(7). A municipality is a "person," *id.* § 1362(5), without Eleventh Amendment immunity, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Jinks v. Richland County*, 538 U.S. 456, 466 (2003), and citizens may enforce "*all* permit conditions" against a city, *Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995).

20. The City concedes the rule. Mot. 21. Citizen suits reach "regulated parties—both private entities and Government agencies." *Bennett v. Spear*, 520 U.S. 154, 173 (1997); *see Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181–82 (9th Cir. 2015); *Ass'n of Irritated*

*Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021); *Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO, ECF No. 41 at 12 (E.D. Cal. July 16, 2026) (air district; declining to follow *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012)).

21. The City's authorities are not to the contrary. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), concerned the FDA's refusal to act against third parties. *Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001), held that EPA's enforcement choices are not nondiscretionary duties under § 1365(a)(2); the § 1365(a)(1) claims against the City of Nogales, the City's analogue here, ended in a consent decree. *Id.* at 901 n.1. *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987), *City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002), *City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023), and *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996), were suits against federal or state agencies. In *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934 (C.D. Cal. 2023), the plaintiff "generally group[ed]" a city landowner with operators without alleging that the city violated any requirement "in its own right." The TAC identifies the City's own permit obligations.

22. Nor would *Heckler* help the City. Its presumption yields where the statute "has provided guidelines for the agency to follow," 470 U.S. at 832–33, as a permit condition does, and it reserved policies "so extreme as to amount to an abdication of its statutory responsibilities," *id.* at 833 n.4 (quoting *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc)). The City concedes non-enforcement "whatsoever" "may be reviewable," Dkt. 81 at 10; CalEPA found its generator-inspection failure uncorrected since 2017. RJN Ex. 13 at 5.

23. The City is a regulated party. It holds NPDES permits for its storm sewer system and, with co-permittees, the Plant; has received eight notices of high-priority Clean Air Act

violations in three years for its wastewater operations; and owns the drains, sewers, and parks at issue. TAC ¶¶ 42–43, 434–436, 487–488, 510, 648. Its stormwater ordinance recites that "the City is regulated by the [MRP]," refers to "the City's NPDES permit," and requires dischargers to indemnify it against "fines or penalties imposed on the City" and "administrative or judicial enforcement action." RJN Ex. 9 at 3, 24–25. Its sewer ordinance calls the Plant's permit "a permit issued to the City pursuant to Section 402 of the Clean Water Act." SCCC § 13.10.020 (RJN Ex. 7 at 9).

24. After "[a] 2012 audit by the US EPA and the SWRCB of the pretreatment program administered by the City of San Jose found that ordinance changes were required," City officials advised that the amendments would keep "the City in compliance with US EPA regulations, consequently avoiding fines and penalties." RJN Ex. 8 at 2–3; RJN Ex. 7 at 2. And the City's countywide program told the State Water Board that the MRP carried "potential third party liability consequences to the co-permittees." RJN Ex. 10 at 8. That is the "governmental instrumentality or agency" § 1365(a)(1) reaches. The claims rest not on local pollution generally but on the City's own permits, property, and approvals.

## C. COUNT 22 STATES CLAIMS UNDER THE CITY'S MS4 PERMIT.

25. Count 22 alleges that the City, as an MRP Permittee, failed to carry out the permit at the Facility and allowed non-stormwater into its storm drains. TAC ¶¶ 94, 182, 184, 436, 450–451, 504–511. Its citation of 33 U.S.C. § 1319(f) invokes the CWA's penalty framework, TAC ¶¶ 500–503; Dkt. 133 ¶¶ 46, 56; a heading does not control, *Johnson*, 574 U.S. at 11.

26. Prohibition A.1 requires each Permittee to "effectively prohibit the discharge of non-stormwater . . . into storm drain systems and watercourses," as Congress requires, 33 U.S.C. § 1342(p)(3)(B)(ii), through Provisions C.2–C.24. MRP A.1, C.1. Provision C.4 requires a site control program with "inspections, effective follow-up, and enforcement to abate potential and

actual non-stormwater discharges," reaching sites with "[o]utdoor waste storage," and correction "no longer than 10 business days after" discovery. MRP C.4, C.4.b.ii(1), C.4.c.ii(3).

27. Provision C.5 requires "active surveillance and centralized complaint collection and follow-up," prompt investigation, and logging "through problem resolution." MRP C.5, C.5.c.ii(6), C.5.d.i. Provision C.3.h requires inspection of treatment systems at installation and "at least once every five years," correction within 30 days, and maintenance "for the life of the projects." MRP C.3.h.ii(6)(a), (c), (7)(c), C.3.h.iv.

28. MRP 2.0, in effect from 2016 to 2022, had the same terms. MRP 2.0 A.1, C.3.h.ii(6)(c), (7)(c), C.3.h.iii, C.4.c.ii(3)–(4), C.5.b.ii(3), C.5.d.i. They implement federal requirements to enforce an ordinance "to prevent illicit discharges" and to control pollutants from SARA § 313 facilities like the Facility. 40 C.F.R. § 122.26(d)(2)(iv)(B)(1), (C); TAC ¶¶ 555–556. Each Permittee "shall enforce its stormwater ordinances to achieve compliance . . . including compliance required by Discharge Prohibition A.1," or refer the case "to the Water Board, district attorney, or other relevant agencies." MRP C.4.c.ii(4), C.5.b.ii(4). The City acknowledges these obligations. Dkt. 89 at 7; Dkt. 81 at 9; RJN Ex. 12 at 16.

29. The TAC alleges violations of each term. *Prohibition A.1*: cooling water entered the City's drains in 2016, and dry-weather froth, sheen, alkaline pH, and chlorine appeared below the Facility's outfall in 2026. TAC ¶¶ 184, 450, 520. Dry-weather flow is "a strong indication that there was a non-stormwater source," and "the source of pollution is irrelevant to any finding of a violation." *San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD, ECF No. 417 at 22, 33 (N.D. Cal. Mar. 31, 2026). To the extent Count 3 pleads these discharges from the City's system, it states the same claims.

30. *Provisions C.4 and C.5*: the City left its own inspector's 2016 report open for six years and closed it in 27 minutes, TAC ¶¶ 450, 509, which is neither ten-day correction nor

follow-up "through problem resolution"; it did not inspect this industrial site, whose waste bunkers adjoin storm drains, until 2022; and it received Plaintiff's 2023 complaint without stormwater follow-up. *Id.* ¶¶ 182, 451 & Ex. C. *Provision C.3.h*: though required since 2016 to inspect at least every five years, the City first inspected the treatment systems in 2022, left the deficiencies uncorrected past 30 days, and never obtained the maintenance logs. MRP 2.0 C.3.h.ii(6)(c), (7)(c), C.3.h.iii; TAC ¶¶ 94, 451, 506.

31. The regulations placed the Facility in the City's industrial inspection program from the start. Both permits require each inspection plan to include "[i]ndustrial facilities, as defined at 40 CFR 122.26(b)(14)," to record SIC codes, and to verify and list Industrial General Permit coverage. MRP C.4.b.ii(1)(b)(i), (3)(b), C.4.d.ii(1)(d), C.4.d.iii(2); MRP 2.0 C.4.b, C.4.d; *see* SCCC §§ 13.20.020(i)(3), 13.20.060(c) (RJN Ex. 9 at 9, 19). SIC Major Groups 35 and 36, covering both the computer code the Facility reported and semiconductor manufacturing, are industrial activity; research and development (SIC 8731) is not. 40 C.F.R. § 122.26(b)(14)(xi).

32. Apple's no-exposure certification cannot be squared with its exterior gas pad and waste bunkers. TAC ¶¶ 182, 187. State law requires a city to confirm industrial permit coverage before licensing a business whose SIC code requires it. Cal. Bus. & Prof. Code § 16000.3(b). That statute adds no NPDES liability, *id.* § 16000.3(h), but shows what the City's records disclosed: the license carried the Facility as an office, a code that never triggers verification, while the Fire Department billed the same account for toxic gases. RJN Ex. 14 at 12. Apple supported the termination of the Facility's coverage with the City's confirmation of the new code, Part II.D. The new code also takes the Facility outside the toxic release inventory, 40 C.F.R. § 372.23(b), though federal standards turn on what a facility does, *id.* § 469.10 ("all process operations associated with the manufacture of semiconductors"); TAC ¶ 118. Why and when the City accepted the reclassification are fact questions.

33. The buried Saratoga Creek also bears on Count 22. The TAC alleges that the City filled the creek in the 1970s; that it still flows beneath and beside the Facility in a pressurized channel connected to San Tomas Aquino Creek and the Bay; that a spring well "appears to be in Creekside Park"; and that pollutants from the site enter that flow. TAC ¶¶ 7, 62–79, 452, 457–462. The City counts it among the creeks where "[a]ny pollutant that flows into the storm drain ends up." *Id.* ¶ 537. Plaintiff's December 2025 notice identified the City's storm drain infrastructure at the site as the buried channel, Dkt. 55 ¶¶ 7–10; City-approved parcel maps show a storm drain easement across the Facility's parcel, RJN Ex. 15; Plaintiff has observed dry-weather flow from an outlet of the historic creek, Gjovik Decl. ¶ 11 & Ex. C; and the City "has not claimed that the water flowing through its stormwater system is not subject to CWA jurisdiction," Dkt. 81 at 11.

34. A permit is required for "the functional equivalent of a direct discharge," with time and distance "the most important factors." *County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165, 183–85 (2020). Here the distance is hundreds of feet, through a subterranean stream "flowing through known and definite channels." Cal. Water Code § 1200; TAC ¶¶ 71–79, 452. Pipes and culverts carrying that flow are point sources, 33 U.S.C. § 1362(14), and non-stormwater entering them is a discharge the City must prohibit, MRP A.1. If needed, Plaintiff requests leave to plead that connection and to name the City in Counts 16 and 17. *See* Dkt. 133 ¶ 47.

35. The City says it "has conducted some enforcement, but just not as much as she desires." Mot. 21. Judge Davila rejected that defense, finding no authority that adopting and enforcing an illicit-discharge program, "as a matter of law, meets its obligations under Discharge Prohibition A.1." *Sunnyvale*, ECF No. 57 at 13 (Dec. 28, 2020). After trial, he held that cities whose "extensive enforcement and related programs" had "been far from successful" violated

A.1 daily, because it "is a prohibition on non-stormwater entering MS4s in the first place." *Id.*, ECF No. 417 at 36–37. Permit liability "is strict." *United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086, 1089, 1101 (D. Colo. 2018) (city liable for "tolerating delays in correcting the problems reported"). Permits are construed "like any other contract." *Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). The City's claims that it "has performed its MS4 permit obligations," Dkt. 89 at 7, and that its inspection of 1.38 miles of creek "found no evidence of improper stormwater discharges," *id.* at 11–12, are fact disputes. The violations continue. TAC ¶¶ 184, 451, 506; *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64–65 (1987).

### D. COUNT 21 STATES CLAIMS UNDER THE CITY'S WASTEWATER PERMIT.

36. The City says San José, not Santa Clara, runs the Plant. Mot. 18–19. The permit says otherwise. It was issued to the "City of San José, City of Santa Clara, and San José/Santa Clara Water Pollution Control Plant," collectively "the Discharger," and provides that "[t]he Discharger shall implement and enforce its approved pretreatment program in accordance with federal pretreatment regulations." RJN Ex. 4 at 1, § 5.3.4.1; *accord* RJN Ex. 5. The Regional Board divided only collection-system duties between the cities. RJN Ex. 4 § 5.3.4.3.

37. An approved pretreatment program is incorporated into the permit "as enforceable conditions." 40 C.F.R. § 403.8(c). It must annually inspect and sample each Significant Industrial User, evaluate each for a slug-control plan, and publish users in significant noncompliance, *id.* § 403.8(f)(2)(v), (vi), (viii), and the permit must identify those users by "character and volume of pollutants," *id.* § 122.44(j)(1). Citizens may enforce these conditions. 33 U.S.C. § 1365(a)(1), (f)(7); *Nw. Envtl. Advocates*, 56 F.3d at 986.

38. The City administers that program within its borders. A POTW includes "the municipality . . . which has jurisdiction over the Indirect Discharges to" it. 40 C.F.R. § 403.3(q).

Santa Clara's ordinance supplies the program's authority: a Significant Industrial User must hold "a discharge permit issued by the Director" of the City's Water and Sewer Utilities, who has "primary responsibility for enforcement," may inspect and sample, and publishes the noncompliance list. SCCC §§ 13.10.420, 13.10.530, 13.10.570, 13.10.660 (RJN Ex. 6).

39. The Facility's permit "is issued under authority established in the Santa Clara City Code," Dkt. 134 Ex. 7 at 1; Decl. of Ashley M. Gjøvik re Public Records Requests ("Records Decl.") Ex. M; the Plant's warnings cite the City's ordinance, TAC ¶¶ 439, 442; and the 2012 audit required Santa Clara to amend it, RJN Ex. 8 at 2–3. A city that fails to implement its pretreatment program violates its permit. *United States v. City of Beaumont*, 786 F. Supp. 634, 638–39 (E.D. Tex. 1992).

40. The TAC alleges that these conditions were not met: no comprehensive inspection, a slug evaluation finding "no risk mitigation needed," a permit disclaiming any obligation to monitor, and no identification of the character and volume of pollutants. TAC ¶¶ 140, 146, 182, 490, 493. These are failures of the Discharger's program; that the permit issued in the Plant's name and San José staff inspected, Dkt. 134 Exs. 7–8; TAC ¶ 86, shows how the work was divided, not who is responsible. Count 21 cites the statutes requiring these conditions, 33 U.S.C. § 1342(b)(8)–(9), and need not cite the permit section. *Johnson*, 574 U.S. at 11.

41. The City's 1959 and 1983 agreements with San José, Dkts. 58-2, 58-3, do not change this. The Court may not adopt the City's reading of them here, *Khoja*, 899 F.3d at 999–1003, and no agreement can amend a 2025 permit or the City's ordinance. Even an express permit term limiting a co-permittee's responsibility goes to "the appropriate remedy for Permit violations, not to liability for those violations." *Nat. Res. Def. Council*, 725 F.3d at 1206. EPA likewise makes a contributing jurisdiction a co-permittee "for the limited purpose of making it jointly responsible . . . for the pretreatment program elements in the NPDES permit." RJN Ex.

16 § 2.2.3. And the City may not collaterally attack the permit that names it. *Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024).

42. Neither *Heckler* nor § 1319(f) applies. Count 21 seeks compliance with nondiscretionary conditions, not direction of the City's discretion against Apple. EPA treats a POTW's failure to perform them as a permit violation, RJN Ex. 17 (*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989)), and citizens may enforce them, *Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098, 1116 (D. Haw. 1994). *Conservation Law Found. v. Mass. Water Res. Auth.*, No. 22-10626-RGS (D. Mass. Feb. 17, 2023), held only that § 1319(f) creates no citizen suit and that a POTW need not "impose a sanction in every instance of a violation," slip op. at 10, 21; it did not address mandatory inspection and sampling.

### E. COUNT 35 STATES A PUBLIC NUISANCE CLAIM.

43. Against the City, Count 35 seeks abatement, remediation, and declaratory relief; Plaintiff seeks no fines or punitive damages from it. TAC ¶ 668; Cal. Gov't Code § 818.

#### i. The Court has supplemental jurisdiction.

44. The City argues that jurisdiction fails once the federal claims against it are dismissed. Mot. 24. But supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties," 28 U.S.C. § 1367(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558–59 (2005); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173 (9th Cir. 2002), and federal claims against Apple and the owners arising from the same releases remain. Section 1367(c) is discretionary, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), and § 1367(c)(3) applies only when the Court "has dismissed all claims over which it has original jurisdiction," *see Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

**ii. Plaintiff alleges special injury.**

45. A private person may sue for a public nuisance "specially injurious to himself," Cal. Civ. Code § 3493, and an injury "to the health and comfort of an individual, is in its nature special and peculiar," *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550–51 (2009). The City's own authority reversed dismissal because personal-injury allegations were "sufficient to state a private action for public nuisance." *Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292, 311 (2023); *see* Mot. 26. Plaintiff was seriously injured across the street, needs ongoing medical monitoring, and still uses the parks and creek. TAC ¶¶ 14, 27–28, 30–31, 184, 201–205.

**iii. The City is liable for conditions on and through its property.**

46. Public entities may be liable for nuisances "founded on section 3479 of the Civil Code," and section 815 "does not bar nuisance actions against public entities." *Nestle v. City of Santa Monica*, 6 Cal. 3d 920, 937 (1972). Liability "does not hinge on whether the defendant owns, possesses or controls the property," but on whether it "created or assisted in the creation of the nuisance." *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 306 (2006) (quoting *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 38 (2004)).

47. One who, "by acting or failing to act, created a condition or permitted a condition to exist" is liable, CACI No. 2020; *see* Cal. Civ. Code § 3483, as is a possessor that fails to abate a known nuisance on its land, *Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605, 619–22 (1984); *Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 675 (9th Cir. 2011). Cities are liable for nuisances from their own facilities. *Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) (sewage plant); *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) (airport).

48. The TAC alleges such conditions. The Facility discharges to the City's storm drains, Dkt. 89 at 7, and dry-weather froth, sheen, and chlorine appear below the outfall beside

the City's parks. TAC ¶¶ 184, 510, 520. The City owns those parks, invites the public in, applies the Plant's recycled water there, and sends evacuating schoolchildren into Meadow Park, inside the modeled plume, all while knowing of the hazards. *Id.* ¶¶ 188, 192, 194–195, 224–227, 487–489, 648, 650; Part II.C. The City says that "owning public parks does not cause a public nuisance" and that "[a]ny offsite impacts . . . are caused by the facility." Mot. 25. But omissions can support nuisance liability, *Birke*, 169 Cal. App. 4th at 1552, and causation is a fact question.

49. Nor does the Facility's role relieve the City of its own. In *Vedder v. County of Imperial*, 36 Cal. App. 3d 654, 660–61 (1974), the court reinstated nuisance claims against the public owners of an airport where private negligence started a fire, because one who "knowingly permits" negligent storage of combustible chemicals "may be liable . . . even though the fire was actually started by the negligent conduct of others," and concurrent wrongs are each "a proximate cause" (quoting *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 602 (1941)). Here, too, Apple's releases and the City's drains, easement, and parks act concurrently. TAC ¶¶ 134, 148, 184, 450, 487–489, 510, 520, 648–650.

50. The City's code declares the discharge of industrial wastes into storm drains in violation of chapter 13.20 "a public nuisance" and makes it unlawful to "cause, allow, or permit to be discharged" any non-stormwater discharge. SCCC §§ 13.20.030(a), 13.20.120 (RJN Ex. 9 at 13, 23). A declared nuisance needs no further proof of harm. *See City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1163–64 (2009); TAC ¶¶ 184, 450.

51. *Modesto*'s failure-to-warn holding concerned those "who merely placed solvents in the stream of commerce," 119 Cal. App. 4th at 42–43, not property owners on whose land a hazard rests, and recognized liability for "affirmative steps directed toward the improper discharge" of wastes, *id.* at 43. The TAC alleges affirmative assurances of safety on City parkland. TAC ¶¶ 650, 656, 659–663. And *Citizens for Odor Nuisance Abatement v. City of San*

*Diego*, 8 Cal. App. 5th 350, 361 (2017), turned on summary judgment evidence that the city's fence did not cause the odor.

**iv. Neither the Government Claims Act nor *Heckler* bars the claim.**

52. The Government Claims Act preserves "the right to obtain relief other than money or damages," Cal. Gov't Code § 814, and its claim-presentation rules do not apply to actions "seeking injunctive, specific, or declaratory relief," *Minsky v. City of Los Angeles*, 11 Cal. 3d 113, 121 (1974). Its enforcement, permitting, and inspection immunities, Cal. Gov't Code §§ 818.2, 818.4, 818.6, thus reach damages only, are strictly construed, and are not invoked here. *Vedder*, 36 Cal. App. 3d at 660 (citing *Baldwin v. State of California*, 6 Cal. 3d 424, 435–36 (1972)); Dkt. 81 at 15 ("the City never claimed immunity").

53. Section 818.6 also excludes the entity's own property, as the drains, easement, and parks are. *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984), was a damages action over a hazard at a private business. State immunities would not affect the federal counts anyway. *Cf. Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). And *Heckler*, a federal administrative-law rule, does not limit a California nuisance claim the Legislature has permitted. *Nestle*, 6 Cal. 3d at 931–37; *see* Mot. 25, 27.

**v. The claim is timely and does not challenge any CEQA determination.**

54. Count 35 does not seek to set aside the City's 2010–2015 zoning and CEQA decisions, Mot. 9, 25, which the TAC cites as evidence of knowledge, TAC ¶¶ 651–658; it seeks abatement of present conditions. CEQA's limitations periods govern actions to "attack, review, set aside, void, or annul" agency decisions. Cal. Pub. Res. Code § 21167; *see Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32 (2010). "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right," Cal. Civ. Code § 3490; *Wade v. Campbell*, 200 Cal. App. 2d 54, 61 (1962). The TAC alleges such an obstruction of public parks and streams. Cal. Civ. Code § 3479; TAC ¶ 651.

55. For a continuing nuisance, "every repetition of the wrong may create further liability." *Nestle*, 6 Cal. 3d at 937; *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 869–70 (1985); *Phillips v. City of Pasadena*, 27 Cal. 2d 104, 107–08 (1945). It "is ordinarily a question of fact," *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1148 (1991), and limitations supports dismissal only when "apparent on the face of the complaint," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). It is not; the City's conduct is recent, including its 2024 school approval and a pending rezoning on the Facility's lot line. TAC ¶¶ 224–227, 233.

### F. THE REMAINING COUNTS REST ON THE CITY'S OWN DUTIES.

56. If any duty below is insufficiently pleaded, Plaintiff requests leave to plead it.

#### i. RCRA (Counts 1, 5, and 8)

57. RCRA's endangerment provision reaches any "governmental instrumentality or agency . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" that may present an imminent and substantial endangerment. 42 U.S.C. § 6972(a)(1)(B). A contributor "had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011). A land manager that merely declined to regulate hunters' lead ammunition did not contribute, but "[i]f USFS required hunters to use lead ammunition, our analysis might be different." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 954 (9th Cir. 2023).

58. The City is no bystander. Its sewer receives the Facility's corrosive, TCE-bearing wastewater, its storm drains receive the Facility's discharges, and the wastewater permit enforced under its ordinance sets the terms of disposal. TAC ¶¶ 85, 146–147, 439, 442, 445, 450, 487, 510, 520. Count 1 does not rest on the Plant's receipt of the Facility's wastewater, which the City may argue falls within the domestic-sewage exclusion. 40 C.F.R. § 261.4(a)(1)(ii); *see*

42 U.S.C. § 6903(27). But that exclusion turns "not simply [on] type, but also [on] source," and does not reach waste leaking from sewer lines before treatment. *Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180, 185–87 (1st Cir. 1989) (vacating dismissal); *Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993).

59. Whether a city's "design of the sewer, any leakage that occurred, and [its] knowledge of that leakage" make it a contributor is a fact question. *KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC, ECF No. 690 at 20–21 (N.D. Cal. May 9, 2014). The sewer carrying the Facility's discharges runs around the apartment where Plaintiff lived, whose plumbing was investigated as a vector for solvent vapors. TAC ¶ 443. The City also authorized the units EPA later found treating and storing hazardous waste without a RCRA permit, then recorded but did not report RCRA violations at the site. *Id.* ¶¶ 48, 122, 141, 144–145, 334–335. That is the affirmative conduct *Center for Biological Diversity* distinguished. *See Cox v. City of Dallas*, 256 F.3d 281, 294–99 (5th Cir. 2001); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 513–15 (4th Cir. 2015); *Covington v. Jefferson County*, 358 F.3d 626, 639–40 (9th Cir. 2004) (standing; entity that "could have suspended" operation "cannot so easily distance itself").

60. Counts 5 and 8 also state claims under § 6972(a)(1)(A) against any "governmental instrumentality or agency" violating a requirement "effective pursuant to this chapter." California's program operates "in lieu of the Federal program," 42 U.S.C. § 6926(b), (d), so its requirements are enforceable by citizen suit, *Ashoff v. City of Ukiah*, 130 F.3d 409, 412 (9th Cir. 1997). Authorization requires "periodic inspections," 40 C.F.R. § 271.15(b)(2), which California assigns to unified program agencies, including triennial inspection of onsite treatment units, Cal. Health & Safety Code § 25404.1(a)(2); Cal. Code Regs. tit. 27, §

15200(a)(2)(B). CalEPA found the City had processed none of 152 onsite-treatment notifications within the required 45 days, resolved only during CalEPA's evaluation. RJN Ex. 13 at 20. Because that mandate implements a federal condition of authorization, it is not the "more stringent" standard *Ashoff* held unenforceable.

**ii. <u>Clean Air Act (Counts 2, 14, and 15)</u>**

61. The Clean Air Act reaches "any person (including . . . any other governmental instrumentality or agency . . .)" violating a standard "under any applicable State implementation plan." 42 U.S.C. § 7604(a)(1), (f)(4); *id.* § 7602(e). California's plan includes CEQA's core provisions, Public Resources Code sections 21002, 21081, and 21151. 46 Fed. Reg. 5965 (Jan. 21, 1981); 40 C.F.R. § 52.220(c)(63). Plan obligations that bind a city are enforceable against it. *Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764, 769–71 (2d Cir. 1992); *McCarthy v. Thomas*, 27 F.3d 1363, 1373 (9th Cir. 1994) (plan provisions "bind the cities of Tucson and Phoenix").

62. Counts 14 and 15 allege that the City approved the Santa Clara Square EIR and its 2017 addendum knowing emissions would exceed thresholds, without cumulative analysis of the adjacent Facility, and approved the Facility's buildout without environmental review; its 2014 routing sheet listed the CEQA determination as "TBD." TAC ¶¶ 91, 416–420, 423–427; RJN Ex. 12 at 1. Those are plan duties, and the violation "has been repeated" through 2017. 42 U.S.C. § 7604(a)(1). That the counts cite ambient standards does not defeat them, *Johnson*, 574 U.S. at 11, and the City's authorities involved suits against EPA or challenges to enforcement discretion, *see Cent. Valley Air Quality Coal.*, ECF No. 41 at 12.

63. Count 2 enforces section 112(r)(1)'s general duty to "identify hazards," "design and maintain a safe facility," and "minimize the consequences of accidental releases" against Apple and the owners. 42 U.S.C. §§ 7412(r)(1), 7604(f)(3); Dkt. 133 ¶ 43. The City is a necessary party to that remedy, which implicates its emergency planning and land-use approvals.

Fed. R. Civ. P. 19(a)(1)(A); *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 781–83 (9th Cir. 2005). Count 2 also rests on the City's own duty: for Title V sources, the agency designated under § 68.215(d), which state law makes the City, must "[v]erify that the source owner or operator has registered and submitted an RMP or a revised plan when required." 40 C.F.R. § 68.215(a), (d)–(e); Cal. Health & Safety Code § 25533(d)(1). The TAC alleges that the Facility is a major Title V source, that the City accepted an RMP application in 2015 and did not close it until 2022, and that the RMP disclosed three regulated substances though more than twenty were present. TAC ¶¶ 98, 187, 359–363. CalEPA found that three of the City's seven CalARP sources had not updated their plans in five years. RJN Ex. 13 at 2, 7–8.

64. The City says its role "regulates waste, not air emissions." Mot. 16. But its Fire Department administers CalARP, under which the Facility's RMP was filed, and left five of seven CalARP sources uninspected for three years. RJN Ex. 13 at 5; TAC ¶¶ 187, 235; Dkt. 134 Ex. 6. It charges the Facility a "Program 1" fee, RJN Ex. 14 at 12, a tier limited to processes whose worst-case release reaches no public receptor and that have had no offsite-impact release in five years, 40 C.F.R. § 68.10(g)(1)–(2). Yet Apple's arsine worst case reaches 5,343 residents, and the City responded to a 2021 phosphine release from the Facility. TAC ¶¶ 148, 188.

**iii. <u>EPCRA (Counts 26 and 27)</u>**

65. EPCRA requires emergency plans, safety data sheets, and inventories to be publicly available "at the location or locations designated by the . . . State emergency response commission, or local emergency planning committee," 42 U.S.C. § 11044(a), and authorizes suit against a commission for failing to provide that "mechanism" or to answer tier II requests, *id.* § 11046(a)(1)(C)–(D). California performs those functions through unified program agencies: an inventory filed with the agency "shall be deemed to have filed the inventory form required by Section 11022(a)," and the agency "shall make the information . . . available for public inspection." Cal. Health & Safety Code § 25509(b), (d).

66. As Cal OES explains, "[i]t is the CUPAs, therefore, that respond to public inquiries." RJN Ex. 18. The City is that agency. TAC ¶¶ 45–48; Mot. 10. Where the State routes its § 11044 and § 11022(e)(3) functions through the City, a suit to compel them falls within § 11046(a)(1)(C)–(D), Mot. 23 notwithstanding; at most, the question is which entity to name, which amendment can address. *See Ex parte Young*, 209 U.S. 123 (1908).

67. The City says Plaintiff alleges no unanswered request, Mot. 16, 23, but the TAC alleges withheld and delayed records, TAC ¶¶ 50, 170, 207, 274, 296, and the particulars show that amendment would not be futile, *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Plaintiff's July 2024 written request for the Facility's hazardous materials "inventories" went unanswered for sixteen months, far beyond EPCRA's 120 days. 42 U.S.C. § 11046(a)(1)(D); Records Decl. ¶¶ 5–8 & Exs. A–B. Her 2023 request for toxic-gas records drew a response that none could be located "under the 'Toxic Gas System (i.e. SCCO B11-380)' designation," and her October 2025 request for toxic-gas inventories and emergency-response information remains unanswered. Records Decl. ¶¶ 10–11, 19 & Exs. C, J. Belated production does not moot a claim unless it is "absolutely clear" the conduct cannot reasonably be expected to recur. *Laidlaw*, 528 U.S. at 189. And the City accepted the reclassification Apple now invokes.

68. The same facts state a claim under the Plant's permit, which requires that effluent data "be available to the public without restriction" and that users in significant noncompliance be publicly identified. 40 C.F.R. §§ 403.8(f)(2)(viii), 403.14(b); TAC ¶¶ 50, 180, 274, 439, 442. Count 26 alleges that the City failed to ensure the Facility filed its toxic release reports, TAC ¶ 555, facts bearing on the City's knowledge under Counts 21, 22, and 35 that amendment can develop.

**iv. <u>Count 24</u>**

69. Count 24 alleges that the City purported to authorize the Facility's industrial

stormwater discharges through a maintenance agreement and permit terms, without public notice. TAC ¶¶ 531–535. Those facts show violations of MRP C.3.h, C.4, and C.5, Part IV.C, and of its public-reporting provisions. MRP C.5.c.ii(1)–(2), C.7.b; 40 C.F.R. § 122.26(d)(2)(iv)(B)(5). The Court should read Count 24 with Count 22 or grant leave to amend.

**v. <u>TSCA (Count 32)</u>**

70. TSCA authorizes suit against any "governmental instrumentality or agency" violating the statute or its rules. 15 U.S.C. § 2619(a)(1); *see America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) (school district officials). Count 32 alleges that the City knew of the Facility's improper use and disposal of TCE, NMP, mercury, and lead. TAC ¶¶ 605–609. A TSCA rule also binds the City directly: since September 15, 2025, "owners or operators of publicly owned treatment works, where there is a reasonable possibility of the presence of TCE," must screen industrial wastewater for TCE or implement EPA's workplace protection program. 40 C.F.R. § 751.319(c). The City co-owns the Plant, which receives the Facility's TCE-bearing effluent. TAC ¶¶ 44, 123–125, 147. Any dismissal should allow pleading § 751.319.

## G. <u>Any Dismissal Should Be With Leave to Amend.</u>

71. The City seeks dismissal with prejudice because Plaintiff "did not modify those claims" after its earlier motion. Mot. 10; *see id.* at 9, 28. But the Court never ruled on those arguments; it dismissed for lack of standing "without prejudice to the renewal of any of the motions." Dkt. 101 at 25. Leave should be freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

72. A pro se complaint may be dismissed without leave only if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Akhtar v. Mesa*, 698

F.3d 1202, 1212 (9th Cir. 2012), and facts in an opposition bear on futility, *Broam*, 320 F.3d at 1026 n.2. This opposition and Plaintiff's declarations identify the permit conditions, statutes, and facts supporting each count. Gjovik Decl. ¶¶ 4–11; Records Decl. ¶¶ 4–22.

## V. CONCLUSION

73. The City is sued for violating its own permits and duties, not for how it regulates Apple. The City's motion should be denied or, alternatively, any dismissal should be without prejudice and with leave to amend.

Respectfully filed,



**/s/ Ashley M. Gjovik**
**Ashley Gjovik (Plaintiff)**
Filed October 16, 2026 in San José, California
(415) 964-6272
legal@ashleygjovik.com
2108 N. St. Ste. 4553,
Sacramento, CA 95816

## VI. [PROPOSED] ORDER

Having considered Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127), the papers filed in support of and in opposition to the motion, and the arguments of the parties, and good cause appearing,

**IT IS HEREBY ORDERED:**

1. Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127) is **DENIED** in its entirety.
2. In the alternative, to the extent any claim is dismissed, the dismissal is without prejudice and with leave to amend, and Plaintiff may file an amended complaint within thirty (30) days of this Order.

**IT IS SO ORDERED.**

DATED: ___________________

___________________________________
Hon. P. Casey Pitts
United States District Judge