Ashley M. Gjovik, JD
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(415) 964-6272
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIV.

**ASHLEY M. GJØVIK**, *an individual,*

**PLAINTIFF,**

***vs.***

**APPLE INC.**, *a corporation,*

**CITY OF SANTA CLARA,** *a local government,*

**& THE PROPERTY OWNERS: MR. KALIL JENAB,** *individually and as agent of various entities,*

**AND MS. JULIA LINDSEY & MS. KATHLEEN WOODRUFF,** *in their respective capacities as trustees.*

**DEFENDANTS**.

**Case No. 25-CV-07360-PCP**

**District Judge**: Honorable P. Casey Pitts

**PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DKT. 127)**

**HEARING:**
Date: Nov. 5, 2026
Time: 10:00 A.M.
Courtroom: 8, 4th Floor

# TABLE OF CONTENTS


I. STATEMENT OF THE ISSUES TO BE DECIDED ..... 2
II. RELEVANT FACTS ..... 2
A. The City's Storm Drains and MS4 Permit ..... 2
B. The Plant and the Pretreatment Program ..... 3
C. The City's Parks and Knowledge ..... 4
D. The 2022–2023 Reclassification of the Facility ..... 6
E. Plaintiff and the Procedural History ..... 7
III. STANDARD OF REVIEW ..... 8
IV. ARGUMENT ..... 9
A. Plaintiff Has Standing. ..... 9
B. The City Is Sued as a Regulated Party, Not as a Regulator. ..... 10
C. Count 22 States Claims Under the City's MS4 Permit. ..... 14
D. Count 21 States Claims Under the City's Wastewater Permit. ..... 20
E. Count 35 States a Public Nuisance Claim. ..... 23
i. The Court has supplemental jurisdiction. ..... 23
ii. Plaintiff alleges special injury. ..... 23
iii. The City is liable for conditions on and through its property. ..... 24
iv. Neither the Government Claims Act nor *Heckler* bars the claim. ..... 27
v. The claim is timely and does not challenge any CEQA determination. ..... 28
F. The Remaining Counts Rest on the City's Own Duties. ..... 29
i. RCRA (Counts 1, 5, and 8) ..... 29
ii. Clean Air Act (Counts 2, 14, and 15) ..... 31
iii. EPCRA (Counts 26 and 27) ..... 34
iv. Count 24 ..... 35
v. TSCA (Count 32) ..... 36
G. Any Dismissal Should Be With Leave to Amend. ..... 36
V. CONCLUSION ..... 37
VI. [PROPOSED] ORDER ..... 39

# TABLE OF AUTHORITIES

**Cases**


*Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc) ........ ~~11~~8

*Akhtar v. Mesa*, 698 F.3d 1202 (9th Cir. 2012)........ ~~35~~24

*America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021)........ ~~34~~24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ ~~8~~6

*Ashoff v. City of Ukiah*, 130 F.3d 409 (9th Cir. 1997) ........ ~~29~~20, 21

*Ass'n of Irritated Residents v. EPA*, 10 F.4th 937 (9th Cir. 2021)........ ~~12~~7

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862 (1985) ........ ~~26~~19

*Baldwin v. State of California*, 6 Cal. 3d 424 (1972)........ ~~26~~18

*Bennett v. Spear*, 520 U.S. 154 (1997)........ ~~11~~7

*Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540 (2009) ........ ~~22, 24~~16, 17

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003)........ ~~32, 35~~23, 24

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009) ........ ~~22~~15

~~*Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144 (9th Cir. 2024) ........ 10~~

*Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO (E.D. Cal. July 16, 2026) ........ ~~12, 30~~8, 21

*Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350 (2017) ........ ~~25~~17

*City of Claremont v. Kruse*, 177 Cal. App. 4th 1153 (2009)........ ~~25~~17

*City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023)........ ~~11~~8

*City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28 (2004) ........ ~~23, 25~~16, 17

*City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002)........ ~~11~~8

*Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764 (2d Cir. 1992)........ ~~30~~21

*Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984)........ ~~26~~18

*Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180 (1st Cir. 1989)........ ~~28~~20

*Comm. for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) ........ ~~11~~7

*Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32 (2010) ........ ~~26~~18

*Conservation Law Found. v. Mass. Water Res. Auth.*, No. 22-10626-RGS (D. Mass. Feb. 17, 2023)........ ~~21~~15

*County of Maui v. Hawai'i Wildlife Fund*, 590 U.S. 165 (2020) ........ ~~18~~12

*County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292 (2006) ........ ~~23~~16

*Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004) ........ ~~29~~20

*Cox v. City of Dallas*, 256 F.3d 281 (5th Cir. 2001) ........ ~~28~~20

*Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943 (9th Cir. 2023) .............. ~~28~~19, 20
*Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) .............. ~~11~~8
*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005) .............. ~~31~~22
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .............. ~~34~~24
*Erickson v. Pardus*, 551 U.S. 89 (2007) .............. ~~8~~6
*Ex parte Young*, 209 U.S. 123 (1908) .............. ~~32~~23
*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) .............. ~~22~~15
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ~~9, 10, 33~~7, 23
*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015) .............. ~~28~~20
*Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) .............. ~~23~~16
*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .............. ~~19~~13
*Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292 (2023) .............. ~~22~~16
*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) .............. ~~8~~6
*Heckler v. Chaney*, 470 U.S. 821 (1985) .............. ~~10, 11, 21, 27~~8, 15, 18
*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .............. ~~27~~19
*Huffman v. Lindgren*, 81 F.4th 1016 (9th Cir. 2023) .............. ~~8~~6
*Jinks v. Richland County*, 538 U.S. 456 (2003) .............. ~~10~~7
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) .............. ~~*passim*~~6, 9, 14, 21
*KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC (N.D. Cal. May 9, 2014) .............. ~~28~~20
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .............. ~~8, 21~~6, 14
*Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605 (1984) .............. ~~23~~16
*Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993) .............. ~~28~~20
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) .............. ~~34~~24
*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) .............. ~~11~~8
*Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125 (1991) .............. ~~27~~19
*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .............. ~~8~~6
*Martinez v. California*, 444 U.S. 277 (1980) .............. ~~26~~18
*McCarthy v. Thomas*, 27 F.3d 1363 (9th Cir. 1994) .............. ~~30~~21
*Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002) .............. ~~22~~15
*Minsky v. City of Los Angeles*, 11 Cal. 3d 113 (1974) .............. ~~26~~18
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .............. ~~10~~7
*Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013) .............. ~~18, 21~~13, 14
*Nestle v. City of Santa Monica*, 6 Cal. 3d 920 (1972) .............. ~~23, 26, 27~~16, 18, 19
*Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) .............. ~~9~~6
*Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979 (9th Cir. 1995) .............. ~~10, 19~~7, 13

*Phillips v. City of Pasadena*, 27 Cal. 2d 104 (1945) ... ~~27~~19

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242 (11th Cir. 1996) ... ~~11~~8

*Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95 (9th Cir. 2024) ... ~~21~~15

*Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668 (9th Cir. 2011) ... ~~23~~16

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) ... ~~9~~6

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) ... ~~9~~6

*San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD (N.D. Cal.) ~~15, 18, 19~~10, 12

*Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098 (D. Haw. 1994) ... ~~21~~15

*Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012) ... ~~12~~8

*Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001) ... ~~10~~8

*Skinner v. Switzer*, 562 U.S. 521 (2011) ... ~~8~~6

~~*Tansavatdi v. City of Rancho Palos Verdes*, 14 Cal. 5th 639 (2023) ... 25~~

*Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594 (1941) ... ~~24~~17

*Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) ... ~~22~~15

*United States v. City of Beaumont*, 786 F. Supp. 634 (E.D. Tex. 1992) ... ~~20~~14

*United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086 (D. Colo. 2018) ... ~~18~~13

*Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) ... ~~23~~16

*Vedder v. County of Imperial*, 36 Cal. App. 3d 654 (1974) ... ~~24, 26~~17, 18

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ... ~~27~~19

*Wade v. Campbell*, 200 Cal. App. 2d 54 (1962) ... ~~26~~18

**Federal Statutes**

15 U.S.C. § 2619 ... ~~34~~24

28 U.S.C. § 1367 ... ~~22~~15

33 U.S.C. § 1319 ... ~~13, 21~~9, 15

33 U.S.C. § 1342 ... ~~10, 13, 20~~7, 9, 14

33 U.S.C. § 1362 ... ~~10, 18~~7, 12

33 U.S.C. § 1365 ... 1, ~~10~~7, 8, 9, 13~~, 19~~

42 U.S.C. § 6903 ... ~~28~~20

42 U.S.C. § 6926 ... ~~29~~20

42 U.S.C. § 6972 ... ~~27, 29~~19, 20

42 U.S.C. § 7412 ... ~~30~~21

42 U.S.C. § 7602 ... ~~29~~21

42 U.S.C. § 7604 ... ~~12, 29, 30~~21

42 U.S.C. § 11022 ... ~~32~~22, 23

42 U.S.C. § 11044 ........ ~~32~~22, 23
42 U.S.C. § 11046 ........ ~~32, 33~~22, 23

**California Statutes**

Cal. Bus. & Prof. Code § 16000.3 ........ ~~16~~11
Cal. Civ. Code § 3479 ........ ~~23, 26~~16, 18
Cal. Civ. Code § 3483 ........ ~~23~~16
Cal. Civ. Code § 3490 ........ ~~26~~18
Cal. Civ. Code § 3493 ........ ~~22~~16
Cal. Gov't Code § 814 ........ ~~25~~18
Cal. Gov't Code § 815 ........ ~~23~~16
Cal. Gov't Code § 818 ........ ~~22~~15
Cal. Gov't Code §§ 818.2, 818.4, 818.6 ........ ~~26~~18
Cal. Health & Safety Code § 25404 ........ ~~5~~4
Cal. Health & Safety Code § 25404.1 ........ ~~29~~20
Cal. Health & Safety Code § 25509 ........ ~~32~~22
Cal. Health & Safety Code § 25533 ........ ~~31~~22
Cal. Pub. Res. Code §§ 21002, 21081, 21151 ........ ~~30~~21
Cal. Pub. Res. Code § 21167 ........ ~~26~~18
Cal. Water Code § 1200 ........ ~~18~~12

**Regulations**

40 C.F.R. § 52.220(c)(63) ........ ~~30~~21
40 C.F.R. § 68.10 ........ ~~31~~22
40 C.F.R. § 68.215 ........ ~~31~~22
40 C.F.R. § 112.3 ........ ~~5~~4
40 C.F.R. § 122.26 ........ ~~14, 16, 33~~10, 11, 24
40 C.F.R. § 122.44 ........ ~~19~~13
40 C.F.R. § 261.4 ........ ~~28~~19
40 C.F.R. § 271.15 ........ ~~29~~20
40 C.F.R. § 372.23 ........ ~~17~~11
40 C.F.R. § 403.3 ........ ~~20~~13
40 C.F.R. § 403.8 ........ ~~19, 33~~13, 23
40 C.F.R. § 403.14 ........ ~~33~~23
40 C.F.R. § 469.10 ........ ~~17~~11
40 C.F.R. § 751.319 ........ ~~34~~24
Cal. Code Regs. tit. 27, § 15200 ........ ~~29~~20
46 Fed. Reg. 5965 (Jan. 21, 1981) ........ ~~30~~21

81 Fed. Reg. 52,584 (Aug. 8, 2016) .......... ~~6~~5

**Rules**

Fed. R. Civ. P. ~~12(b)(6) ..........~~ ~~8~~15(a)(2) 24

~~Fed. R. Civ. P. 15(a)(2) .......... 34~~

~~Fed. R. Civ. P.~~ 19(a) .......... ~~31~~22

**Permits, Ordinances, and Public Records**

Regional Board Order No. R2-2015-0049, as amended (“MRP 2.0”) (RJN Ex. 1) .......... 2, ~~14, 15, 16~~10, 11

Regional Board Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 (“MRP”) (RJN Exs. 2–3) .......... ~~*passim*~~2, 9, 10, 11, 12, 24

Regional Board Order No. R2-2025-0027, NPDES No. CA0037842 (RJN Ex. 4) .......... ~~3, 19, 20~~13

Regional Board Order No. R2-2020-0001, NPDES No. CA0037842 (RJN Ex. 5) .......... ~~3, 19~~13

Santa Clara City Code ch. 13.10 (RJN Ex. 6) .......... ~~12, 20~~9, 14

Santa Clara City Code ch. 13.20, as amended by Ord. No. 2072 (Oct. 22, 2024) (RJN Ex. 9) .......... 2, ~~12, 16, 25~~9, 11, 17

City of Santa Clara Ord. No. 1920 (Feb. 25, 2014) and City Attorney Agenda Report (RJN Ex. 7) .......... ~~12, 13~~9

Agenda Report, Director of Water & Sewer Utilities (Jan. 23, 2014) (RJN Ex. 8) .......... ~~13, 20~~9, 14

SCVURPPP, Petition for Review of Order No. R2-2015-0049 (Dec. 15, 2015) (RJN Ex. 10) .......... ~~13~~9

CERS Business Owner/Operator Reports, CERS ID 10633816 (2015–2023) (RJN Ex. 11) .......... ~~6, 7~~4, 5

City of Santa Clara File No. PLN2014-10675, Stormwater Management Plan Submittal (2014) (RJN Ex. 12) .......... 2, ~~3, 15, 16, 30~~10, 21

CalEPA, Response to Evaluation Progress Report #1: Santa Clara City Fire Department (Apr. 17, 2026) (RJN Ex. 13) .......... ~~5, 29, 31~~4, 8, 21, 22

State Water Res. Control Bd., SMARTS Records for 3250 Scott Blvd. (RJN Ex. 14) .......... 4, 5, ~~6, 17, 24, 31~~11, 22

Recorded Parcel Maps and Assessor’s Map (RJN Ex. 15) .......... ~~17~~12

**Other Authorities**

Cal. Civil Jury Instructions (CACI) No. 2020 .......... ~~23~~16

Cal OES, State Emergency Response Commission and Local Emergency Planning Committee web pages (RJN Ex. 18) .......... ~~32~~23

EPA, *Multijurisdictional Pretreatment Programs Guidance Manual* (1994) (RJN Ex. 16) .......... ~~21~~14

*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989) (RJN Ex. 17) .......... ~~21~~15

Unidocs, *Toxic Gas Ordinance Consensus Guidelines* (UN-027) (RJN Ex. 20) .......... ~~6~~4

Unidocs, Who Regulates What in Santa Clara County (RJN Ex. 19) ........................................ ~~6~~4

UPAAG, *Violation Classification Guidance for Unified Program Agencies* (rev. Mar. 6, 2020) (RJN Ex. 21) ........................................................................................ ~~5~~4

**PLAINTIFF'S CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF SANTA CLARA'S MOTION TO DISMISS**

1. Defendant City of Santa Clara ~~(the “~~(“City”) moves to dismiss on the premise that its “connection to the Apple Facility is solely as a regulator.” Dkt. 127 (“Mot.”) at 10. ~~Its own filings refute that premise.~~But the City is a named Permittee under the Bay Area municipal stormwater permit, which, ~~as~~ the City ~~has acknowledged~~concedes, “obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains.” Dkt. 89 at 7. It is a named “Discharger” under the NPDES permit for the San José–Santa Clara Regional Wastewater Facility ~~(the “~~(“Plant”), under which ~~requires that~~ “[t]he Discharger shall implement and enforce its approved pretreatment program.” Pl.'s Req. for Judicial Notice (“RJN”) Ex. 4 § 5.3.4.1. And it owns the storm drains ~~and~~, sewers, and parks that receive discharges from Apple Inc.'s semiconductor fabrication facility at 3250 Scott Boulevard ~~(the “~~(“Facility~~”), and the parks across the street.~~”).

2. The Clean Water Act ~~authorizes~~(“CWA”) lets citizens ~~to~~ enforce “a permit or condition of a permit” against “any person,” including “any other governmental instrumentality or agency.” 33 U.S.C. § 1365(a)(1), (f)(7~~). The City concedes the point.~~); Mot. 21. ~~Each~~None of ~~its enforcement discretion~~the City's cases involved ~~an effort to compel an agency to act against a third party. None involved~~ a government sued for violating its own permit, ~~which is what~~as the Third Amended Complaint (“TAC”) alleges here. ~~Counts 22 and 21 state claims for violations of the City's two NPDES permits. Count 35 states a public nuisance claim arising from conditions on and through City property. Each remaining count rests on a duty the City itself owes. The Court's~~The prior dismissal rested solely on ~~Article III~~ standing, which the TAC cures~~, and did not reach the City's arguments.~~. Dkts. 98, 101. The motion should be denied~~; alternatively, any dismissal should be without prejudice and with leave to amend~~.

## I. STATEMENT OF THE ISSUES TO BE DECIDED

3. Whether Plaintiff has standing against the City; whether Counts 21 and 22 state claims for violations of the City’s ~~own~~ NPDES permits; whether Count 35 states a public nuisance claim within the Court’s supplemental jurisdiction; whether the remaining counts identify duties the City owes; and whether any dismissal should be with prejudice.

## II. RELEVANT FACTS

### A. THE CITY’S STORM ~~SEWER SYSTEM~~DRAINS AND MS4 PERMIT

4. The City is a Permittee under the San Francisco Bay Municipal Regional Stormwater Permit, Order No. R2-2022-0018, as amended by Order No. R2-2023-0019 ~~(the “~~(“MRP”), and ~~under~~ its predecessor, Order No. R2-2015-0049 (“MRP 2.0”). TAC ¶¶ 436, 504; RJN Exs. 1–3. ~~The City~~It “owns and maintains” the surrounding storm drains~~, including the “21- and 24-inch storm drains in Scott Boulevard.”~~. TAC ¶ 510. Its code defines the “Storm Drain System” as ~~the pipes,~~ conduits~~,~~ and sewers “of the City~~,” permits connection only “through a City-approved storm drain connection,”~~” and charges ~~every premises draining “into or through the storm drain system” a monthly~~ a fee ~~to fund~~for “the City’s federally mandated stormwater management program pursuant to the MRP.” SCCC §§ 13.20.020(s)(8), 13.20.030(b), 13.20.190(e), 13.20.200 (RJN Ex. 9 at 12–13, 27–28). The City ~~acknowledges that~~admits “[t]he Apple facility also discharges to the City’s stormwater system.” Dkt. 89 at 7.

5. The Facility’s 2014 redevelopment ~~created or replaced 52,530 square feet of impervious surface, and its stormwater plan identified it as~~was an industrial project subject to Provision C.3~~, draining to San Tomas Aquino Creek. TAC ¶ 94; RJN Ex. 12 at 5–6.~~; the City-approved plan ~~calls for~~required bioretention areas, storm drain ~~labeling, protected outdoor~~ labels, covered storage, ~~covered loading docks, and semi-annual~~ and inspections, and the ~~City’s published procedure states that “[t]he~~ City ~~conducts~~ promised “periodic post-construction site

inspections~~ of BMPs, operation and maintenance practices.”~~.” TAC ¶ 94; RJN Ex. 12 at 3–~~4,~~ 7. ~~The owners’ agreement with the City requires annual~~The required maintenance logs~~; none has been~~ were never filed. TAC ¶ 506. ~~On June 9, 2016,~~ A City inspector reported ~~that~~ Apple ~~had dumped~~dumping cooling water into the storm drains~~.~~ in June 2016; the ticket stayed open nearly six years and was closed ~~on February 10,~~in 2022~~,~~ “27 minutes after being assigned.” *Id.* ¶ 450.

6. The City’s first stormwater inspection, ~~on~~in April ~~5,~~ 2022, found ~~that one~~a bioretention area that “does not appear to be a bioretention area~~ or other stormwater treatment facility,” that others lacked required features, and that~~” and no ~~storm drain bore a~~ “No Dumping” medallions, yet recorded the site ~~as~~ “in compliance~~—implement corrective actions.” Fifty-nine~~”; 59 days later~~,~~ nothing ~~had been~~was corrected. ~~TAC~~*Id.* ¶ 451. In~~ October~~ 2025, storm drains sat “immediately adjacent to the hazardous waste storage bunkers.” *Id.* ¶ 182. ~~On April 11, April 18, and May 1, 2026, in~~On three dry-weather days in 2026, Plaintiff documented froth, sheen, and discoloration in San Tomas Aquino Creek ~~just~~ below the Facility’s outfall, with pH of 8.9 to 9.5 and ~~total~~ chlorine of 3 to 20 ppm. *Id.* ¶ 184.

## B. The Plant and the Pretreatment Program

~~7.~~ The City co-owns the Plant, ~~which discharges to Artesian Slough and San Francisco Bay, and the Plant’s~~whose NPDES permit names ~~the City as~~it a Discharger. TAC ¶¶ 43–44, 434–435; RJN Exs. 4~~ at 1; RJN Ex.~~ 5. The Facility, a categorical Significant Industrial User, discharges about 40,000 gallons a day of process wastewater ~~a day~~containing trichloroethylene (“TCE”), arsenic, and other metals into “the public sewer system owned by The City~~,” which carries it to the Plant.~~.” TAC ¶¶ 85, 146~~, 437, 487. That wastewater has contained trichloroethylene, arsenic, and other metals. Id. ¶¶~~ 147, 149, 437, 445~~.~~

~~8.~~7. ~~The Facility’s~~, 487. Its wastewater permit is ~~issued in the Plant’s name and~~ enforced under ~~Santa Clara’s~~the City’s ordinance. *Id.* ¶¶ 439, 442; Dkt. 134~~,~~ Ex. 7. In ~~October~~ 2020~~,~~ the program ~~rated the Facility “low risk” for slug discharges,~~ found “no risk mitigation needed~~,” and stated that the Facility had been “inspected by~~” for slug discharges, citing an EPA

~~staff," although~~ inspection of a site EPA did not know of ~~the site~~ until 2023~~. TAC ¶ 140. The November 2020 renewal states that the permitting~~, and the renewed permit says the agency "intends but is not obligated" to monitor. TAC ¶¶ 140, ~~*Id.*~~ ¶ 146. The pretreatment system "has never been comprehensively inspected~~": the 2015 inspections were pre-operational, the inspector was not permitted to enter in October 2020, and in October 2025 "the bulk chemical waste storage bunkers were not inspected."~~." *Id.* ¶ 182. The Facility's 2025 reports omit ~~influent volumes and calibration dates, half lack sample results~~required data, *id.* ¶ 180, and its permit does not identify the character and volume of its pollutants, *id.* ¶¶ 490, 493.

## C. THE CITY'S PARKS AND KNOWLEDGE

~~9.~~8. The City owns Meadow Park, Creekside Park~~,~~ (where an artesian spring well "appears to be"), and the Redwood Trail easement across the street, including a ~~children's~~ playground~~.~~, and applies the Plant's recycled water there. TAC ¶¶ 77, 186, 192, 194–195, 487–489, 648. The Meadow Park deed requires compliance with any toxic-substances land-use covenant ~~recorded by the Department of Toxic Substances Control.~~. *Id.* ¶ 195. ~~One of the artesian springs identified in the adjacent project's environmental review, well C6-3, "appears to be in Creekside Park." *Id.* ¶ 77.~~In 2024 the City ~~applies recycled water from the Plant in these parks. *Id.* ¶¶ 487–489. In 2024, it~~ approved expanding a nearby school to 900 children inside Apple's modeled arsine plume, under an evacuation plan ~~that sends the children~~sending them to Meadow Park. *Id.* ¶¶ 188, 224–227.

## ~~D.~~ THE ~~CITY'S KNOWLEDGE~~

~~10.~~9. City ~~records document toxic gas releases at the Facility, including~~responded to a 2021 phosphine leak ~~to which~~at the ~~City responded.~~Facility, TAC ¶ 148~~. In 2022, City plan-check staff asked how silane use would be shut down if exhaust failed and~~; accepted Apple's answer~~. *Id.*~~ about silane shutdown in 2022, *id.* ¶¶ 660–663~~. The City's December 2020 inspection~~; and found that the Facility's ~~chemical~~ inventory omitted 1,700 gallons of diesel and

~~reported no~~all chlorine~~,~~ and that ~~the Facility had no~~ it lacked a spill prevention plan~~; a January 2026 inspection found further hazardous waste and spill prevention violations. *Id.*~~, *id.* ¶¶ 144, 183. ~~The~~Its Fire Department ~~has written that~~called Apple's ~~toxic gas~~ plume models ~~are~~ "not favorable for this area," ~~the City's~~its records acknowledge that the Facility violates the City's 500-foot residential setback~~ for hazardous uses~~, and in 2025 the City Attorney's office ~~told the Planning Commission that~~said staff "think this is a bad place for housing." *Id.* ¶¶ 235, 242. Plaintiff described her injuries to the Mayor and ~~to the head of~~ the City's ~~water and sewer department~~utilities director in 2020~~ and 2021~~–21, and in ~~June~~ 2023 sent ~~the Mayor and a Councilmember~~City officials her complaint ~~reporting the Facility's~~of "unlawful disposal of hazardous waste into the air, sewers, and storm drains." *Id.* ¶¶ 15, 43, 134 & Ex. C (Dkt. 119-3 at 8, 36).

~~11.~~10. CalEPA~~ has~~ found that the City is not inspecting hazardous waste generators, business-plan facilities, or CalARP ~~stationary~~ sources every three years as required~~. TAC ¶ 49; RJN Ex. 13 at 4–6.~~; the generator deficiency, identified in ~~the~~ 2017 and 2020~~ evaluations~~, "was not corrected~~";~~," and five of ~~the City's~~ seven CalARP sources went uninspected from 2021 to 2024, ~~and~~ four ~~remained uninspected~~still in ~~February~~ 2026. TAC ¶ 49; RJN Ex. 13 at ~~5~~4–6. CalEPA also found that the City~~ had~~ classified the Facility's failure to prepare a Spill Prevention, Control, and Countermeasure Plan, a ~~Clean Water Act~~CWA requirement, 40 C.F.R. § 112.3, as ~~a~~ "minor~~" violation,~~," a classification "inconsistent with, and less stringent than~~, the U.S. Environmental Protection Agency."~~," EPA's. RJN Ex. 13 at 13; ~~*see*~~ TAC ¶ 144. Under ~~the State's classification~~State guidance~~,~~ on which CalEPA directed the City to train ~~its~~ inspectors~~, a violation is not minor if it reflects a pattern of neglect or lets the violator avoid a necessary compliance expenditure, and~~ failing to complete such a plan "at a high-risk facility" is a Class I violation. RJN Ex. 21 at 4, 7, 13; ~~RJN Ex. 13 at 13;~~ *see* Cal. Health & Safety Code §

25404(a)(3). The ~~City's own permit for~~ City itself charged the Facility ~~charged a fee~~ for an aboveground tank of "1,320–10,000 gal capacity." RJN Ex. 14 at 12. And though the Fire Department ~~also~~ administers the toxic gas ordinance, which places arsine and phosphine in its most hazardous class, ~~yet~~it has no record of a toxic gas permit for the Facility. RJN Exs. 19 ~~at 1; RJN Ex.~~ 20 ~~at 1–2~~; TAC ¶¶ 170, 187.

### ~~E.~~D. THE ~~CITY'S~~ 2022–2023 RECLASSIFICATION OF THE FACILITY

~~12.~~11. From 2015 ~~through February~~ to 2022, every ~~hazardous materials~~ business plan ~~report that~~ the Fire Department accepted for the Facility listed ~~SIC code 3571 and NAICS code 33411 or 334111, electronic~~ computer-manufacturing~~.~~ codes (SIC 3571; NAICS 334111). RJN Ex. 11 at 1–8. Apple's 2019 Risk Management Plan ~~listed~~("RMP") used NAICS 334111, Dkt. 134~~,~~ Ex. 6; its 2020 Toxics Release Inventory report used ~~NAICS 334413,~~ semiconductor manufacturing, TAC ¶ 558; and the Plant classified the Facility as a categorical semiconductor manufacturer ~~in 2016~~, *id.* ¶ 118. In 2021, Apple ~~registered the Facility under the State's~~obtained Industrial General Permit coverage through a No Exposure Certification ~~identifying it as~~ (SIC 3571~~, "Electronic Computers," and~~) certifying that no outdoor storage or waste ~~material~~ was exposed to stormwater. RJN Ex. 14 at 1, 4, 7. ~~A semiconductor manufacturer at the address had held that coverage until 2004. *Id.* at 1.~~

~~13.~~12. ~~The recoding then began with the City.~~ On October 4, 2022, Apple asked the ~~City's Business Tax and License Department~~City to confirm a new code because "[t]he local waterboard government department is asking for confirmation that our SIC ~~for 3250 Scott Blvd~~ ~~-.~~ . . . is updated to 8731." The next day~~,~~ the City changed ~~the~~its license codes from office administration ~~(NAICS 561110, SIC 8741)~~ to research and development (NAICS 541712, SIC 8731), RJN Ex. 14 at 10–11, ~~al~~though NAICS 541712 had been eliminated ~~more than five years earlier~~, *see* 81 Fed. Reg. 52,584 (Aug. 8, 2016). Apple filed the City's email with the State

Water Board, and ~~on October 7, 2022,~~two days later the Facility's coverage was terminated ~~on the stated basis of~~for "Other." RJN Ex. 14 at 1–2. The City's license~~ certificate~~ had described the Facility as "ADMINISTRATIVE / IS & T OFFICES" while collecting $13,335.22 in fire permit fees for toxic, pyrophoric, ~~toxic,~~and corrosive~~, and water-reactive~~ materials, onsite hazardous waste treatment, and ~~the~~ CalARP~~ program~~. *Id.* at 12. ~~On November 21, 2022,~~ Apple recoded ~~the Facility in~~ its business plan ~~as research and development (SIC 8731, NAICS 541715),~~ in November 2022, reporting no change in operations~~. RJN Ex. 11 at 9. The CUPA manager who had accepted the manufacturing codes in February 2022~~, and the City accepted the new ~~ones nearly seven months later,~~ codes on June 12, 2023, ~~*id.* at 7–9;~~ the day after Plaintiff submitted her complaint ~~about the Facility~~ to ~~the~~ agencies~~,~~ including the Fire Department~~, and the day before the Fire Department confirmed it was investigating, TAC Ex.~~. RJN Ex. 11 at 7–9; TAC Ex. C (Dkt. 119-3 at 35–36). Apple now relies on the research code to deny that it must report ~~its~~ toxic releases. ~~*See*~~ Dkt. 128 at 32. The TAC pleads the ~~reclassification and the City's acceptance of it~~code dispute, TAC ¶¶ 558–561, and relies on the CERS records, *id.* ¶¶ 117, 141, ~~178,~~ 183~~, and~~; Plaintiff can plead the ~~remaining~~ particulars~~ if the Court requires. *See* Part IV.G.~~.

## ~~F.~~E. PLAINTIFF AND THE PROCEDURAL HISTORY

~~14.~~13. Plaintiff ~~suffered serious personal injury~~was seriously injured while living across ~~the street~~ from the Facility~~. TAC ¶¶ 14, 30–31, 201–205.~~; she now lives in ~~the~~ Alviso ~~area of San José, stays overnight near the Facility on her visits,~~ and ~~continues to use~~uses the adjacent creek trail and parks. ~~*Id.* ¶¶~~TAC ¶¶ 14, 27–28, 30–31, 184, 201–205; Decl. of Ashley M. Gjovik, Dkt. 135 ("Gjovik Decl.") ¶¶ 4–8~~, as corrected by~~; *see* Dkt. 136~~-1 ("Supp. Decl.").On~~ (errata). In June ~~25,~~ 2026~~,~~ the Court dismissed ~~the prior complaint~~ for ~~failure to plead Article III~~ lack of standing, applyi~~ed~~ng that ruling to the City sua sponte ~~("even though it wasn't raised by Santa Clara, I have an obligation to consider my jurisdiction sua sponte"), granted leave to amend, and~~

~~stated that its ruling was~~ "without prejudice to the renewal of any of the motions." Dkt. 98; Dkt. 101 at 24–25. ~~The Court~~It did not reach the City's other arguments, which this motion largely repeats. *Compare* Mot., *with* Dkt. 58. ~~Plaintiff's opposition to the motion of Apple and the property owners is pending. Dkt. 133.~~

## III. STANDARD OF REVIEW

~~15.~~14. ~~A Rule 12(b)(6) motion tests~~The Court accepts the allegations as true and asks whether ~~the complaint states~~they state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009~~). The Court accepts the allegations as true and draws reasonable inferences in the plaintiff's favor.~~); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A complaint need not "pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011), and ~~the rules "do~~ may not ~~countenance dismissal of a complaint~~ be dismissed "for imperfect statement of the legal theory~~ supporting the claim asserted~~," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). ~~The Court may notice public~~Noticed records ~~but~~ may not ~~use them to~~ resolve factual disputes against the plaintiff. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018). ~~Plaintiff offers the records in her RJN for what they say and what the City accepted, not for the truth of disputed facts, and asks the Court to consider the 2014 stormwater plan file, which the TAC describes and on which Count 22 relies.~~The 2014 stormwater plan file is incorporated by reference. TAC ¶ 94; *Khoja*, 899 F.3d at 1002. Because Plaintiff is not a licensed attorney, her complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007~~) (per curiam~~); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010~~). The Ninth Circuit has withheld that rule from self-represented lawyers because its logic "does not apply to practicing attorneys,"~~); *cf.* *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. ~~2023), and Plaintiff is not one.~~2023) (liberal construction does not extend to practicing attorneys).

# IV. ARGUMENT

## A. PLAINTIFF HAS STANDING TO PURSUE.

### A. THE TAC CURES EACH STANDING DEFECT THE COUNTS AGAINST THE CITY.

15. The Court found that the prior complaint did not plead a concrete interest in the sites, concrete plans to return, or an impairment of that interest by the challenged conduct. Dkt. 101 at 25. The TAC cures each defect,Court identified, Dkt. 101 at 25; TAC ¶¶ 27–28, 30–31, 184, and Plaintiff's standing argument against Apple applies here, Dkt. 133 ¶¶ 12–23. Standing is measured on the operative pleading: "courts look to the amended complaint to determine jurisdiction."complaint, *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)); *see* *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043–48 (9th Cir. 2015). That), so where Plaintiff lived in Boston when she first sued, Mot. 26, does not defeat standing on the TAC. is irrelevant.

16. Plaintiff lives in Alviso, about 1,340 feet from San Tomas Aquino Creek and Guadalupe Slough. Gjovik Decl. ¶ 4; TAC ¶ 27. She, regularly walks the creek trail, "including the segment immediately downstream of the Facility's stormwater outfall," and uses Meadow Park, Creekside Park, and the Redwood Trail.City's parks. Gjovik Decl. ¶ ¶¶ 4–5; TAC ¶ ¶¶ 27–28. She has visited at least eight times since April 2026, has stayed overnight about 2,100 feet fromnear the Facility, and plans towill return monthly, next on November 13–14, 2026. Gjovik Decl. ¶¶ 6–7, (as corrected by Supp. Decl. ¶ 22; TAC ¶ 28. On three dry-weather visits she saw froth, sheen, and discoloration, *see* Dkt. 136). Having seen the conditions below the outfall and measured elevated pH and chlorine; she now , she avoids touching the water, limits her time near the outfall and the Facility, and has shortened and shortens her visits. Gjovik Decl. ¶¶ 9–10, 13–15 & Exs. A–B; TAC ¶ 184. Those are injuries in fact. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (persons who use the area and "for whom

the aesthetic and recreational values of the area will be lessened”).).

17. They are traceable to the City and redressable against by an order requiring it. to perform its permit duties and abate conditions on its property: Count 22 concerns non-stormwater that enterspassing through the City’s storm drains and reachesto the creek Plaintiffshe walks, and the City’s failure to inspect and correct its sources. TAC ¶¶ 184, 450–451, 510, 520.; Count 35 concerns, conditions in and beside the City’s parks., *id.* ¶¶ 648–651.; and Count 21 concerns the pretreatment of, wastewater that the Plant discharges to waters near Plaintiff’sher home and that the City applies, as recycled water, in those parks she uses., *id.* ¶¶ 43–44, 434–435, 487–489; Gjovik Decl. ¶ 4 & Ex. A. An order requiring the City to perform its permit duties and abate those conditions would redress her injuries.¶ 4. *See Laidlaw*, 528 U.S. at 185–86.

18. The City does not challenge notice, and the parallel sixty-day notice requirement of the Endangered Species Act “is a mandatory claims-processing rule, not a jurisdictional predicate,” *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, (9th Cir. 2024); the same reasoning applies to the Clean Water Act, Plaintiff’s response to Apple’s notice arguments applies here. Dkt. 133 ¶¶¶ 24. In any event 32. Regardless, the City received Plaintiff’s June 2023 complaint, TAC Ex. C (C;Dkt. 119-3 at 36); her June 30, 2025 notice, TAC Ex. B; Gjovik Decl. ¶ 24; and her December 2025 notice, which named the City and went to the State Water Resources Control Board, Dkt. 55 ¶¶ 7–10; Dkt. 66. In August 2026 Plaintiff also mailed; and the Second Amended Complaint to the Water Boards and the Plant. Supp., Gjovik Decl. ¶ 24; Dkts. 105, 116. Her response to Apple’s notice arguments applies here. Dkt. 133 ¶¶ 24–32.¶ 30.

### B. THE CITY IS SUED AS A REGULATED PARTY, NOT AS A REGULATOR.

19. Section 505 authorizes suit “against reaches “any person (including . . . any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to

~~the Constitution) who is alleged to be in violation of" an "effluent standard or limitation," which includes~~. . .)" alleged to violate "a permit or condition of a permit issued under section 1342." 33 U.S.C. § 1365(a)(1), (f)(7). A municipality is a "person," *id.* § 1362(5), ~~and does not share the States'~~without Eleventh Amendment immunity~~ from suit.~~, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Jinks v. Richland County*, 538 U.S. 456, 466 (2003~~).~~ ~~"The plain language of CWA § 505 authorizes~~ ), and citizens ~~to~~may enforce "*all* permit conditions~~."~~" against a city, *Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995). ~~The defendant there was a city, and The City concedes the rule. Mot. 21.~~

20. The City concedes the rule. Mot. 21. Citizen suits reach "regulated parties—both private entities and Government agencies." *Bennett v. Spear*, 520 U.S. 154, 173 (1997); *see Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181–82 (9th Cir. 2015); *Ass'n*~~None~~ *of Irritated Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021); *Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO, ECF No. 41 at 12 (E.D. Cal. July 16, 2026) (air district; declining to follow *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012)).

~~20.~~21. The City's authorities ~~holds otherwise.~~are not to the contrary. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), concerned ~~APA review of~~ the FDA's ~~decision not to take enforcement action~~refusal to act against third parties. *Sierra Club v. Whitman*, 268 F.3d 898 (9th Cir. 2001), held that EPA's enforcement choices are not ~~a~~ nondiscretionary dut~~y~~ies under § 1365(a)(2); the ~~plaintiff's~~ § 1365(a)(1) claims against the City of Nogales, ~~whose position~~ the ~~City occupies~~City's analogue here, ~~were resolved by~~ended in a consent decree. *Id.* at 901 n.1. *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987), *City of Olmsted Falls v. U.S. EPA*, 233 F. Supp. 2d 890 (N.D. Ohio 2002), ~~and~~ *City of Fairborn v. U.S. EPA*, No. 3:22-cv-102, 2023 WL 2478572 (S.D. Ohio Mar. 13, 2023), ~~involved claims against EPA (and, in *Fairborn*, the Ohio EPA),~~ and

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng~~inee~~'rs*, 87 F.3d 1242 (11th Cir. 1996), ~~a claim~~were suits against ~~the Corps~~federal or state agencies. In *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 934 (C.D. Cal. 2023), the plaintiff "generally group[ed]" a city landowner with ~~industrial~~ operators without alleging that the city ~~had, "in its own right,"~~ violated any requirement~~. *See* Mot. 18.~~ "in its own right." The TAC identifies the City's own permit obligations~~ and its failure to meet them~~.

22. Nor would *Heckler* ~~would not~~ help the City~~ even on its own terms.~~. Its presumption ~~"may be rebutted~~yields where the ~~substantive~~ statute "has provided guidelines for the agency to follow~~ in exercising its enforcement powers~~," 470 U.S. at 832–33, as a permit condition does, and ~~the Court~~it reserved ~~the case of an agency that has "'consciously and expressly adopted a general policy' that is~~ policies "so extreme as to amount to an abdication of its statutory responsibilities," *id.* at 833 n.4 (quoting *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc)). The City ~~has told this Court that a decision not to enforce a law~~ concedes non-enforcement "whatsoever" "may be reviewable~~."~~," Dkt. 81 at 10~~. And~~; CalEPA ~~has~~ found ~~the City's~~its generator-inspection failure ~~to inspect hazardous waste generators~~ uncorrected since 2017. ~~Part II.D. A municipality cannot shelter behind a discretion it has been found not to exercise. Citizen suits enforce the law "against~~ RJN Ex. 13 at 5.

~~21. regulated parties—both private entities and Government agencies." *Bennett v. Spear*, 520 U.S. 154, 173 (1997). The Ninth Circuit has permitted citizens to enforce a government body's own obligations under federal environmental programs. *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1181–82 (9th Cir. 2015); *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 947 (9th Cir. 2021). Applying those decisions, the Eastern District recently held that "§ 7604(a)(1) provides a cause of action against the Air District for its alleged violation of California's SIP," and that *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012), "is not binding precedent in this circuit." *Cent. Valley Air Quality Coal. v. San Joaquin Valley Unified Air Pollution Control Dist.*, No. 1:23-cv-00794-KES-SKO, ECF No. 41 at 12 (E.D. Cal. July 16, 2026).~~ The City is a regulated party~~ in fact~~. It holds NPDES permits for its storm sewer system

and, with ~~its~~ co-permittees, ~~for~~ the Plant;~~ it~~ has received eight notices of high-priority Clean Air Act violations in three years for its wastewater operations; and ~~it~~ owns ~~and operates~~ the ~~storm~~ drains, sewers, and parks at issue. TAC ¶¶ 42–43, 434–436, 487–488, 510, 648. ~~The question for each count is whether the TAC alleges that the City violated a duty it owes, and it does. That does not make a city liable whenever a business within its borders pollutes. The claims rest on the City's own permits, outfall, sewers, storm drains, and parks, and on approvals it gave knowing of the hazard.~~

23. ~~The City's own legislation acknowledges that EPA and the Water Boards regulate it and can penalize it.~~ Its stormwater ordinance recites that "the City is regulated by the ~~Municipal Regional Stormwater National Pollutant Discharge Elimination System Permit" and that its prior ordinance had not been revised since 1994 although the permit had been "significantly updated"; it~~[MRP]," refers to "the City's NPDES permit," ~~preserves dischargers' liability "for any~~ and requires dischargers to indemnify it against "fines or penalties imposed on the City~~," and requires dischargers to "protect, defend, indemnify and hold harmless the City" against~~" and "administrative or judicial enforcement action." RJN Ex. 9 at 3, 24–25~~ (SCCC §§ 13.20.130(c), 13.20.140(b)).~~. Its sewer ordinance calls the Plant's~~ NPDES~~ permit "a permit issued to the City pursuant to Section 402 of the Clean Water Act." SCCC § 13.10.020 (RJN Ex. 7 at 9). ~~The Director of Water and Sewer Utilities reported that~~

~~22.~~24. After "[a] 2012 audit by the US EPA and the SWRCB of the pretreatment program administered by the City of San Jose found that ordinance changes were required," ~~and he and the~~ City ~~Attorney each~~officials advised that the amendments would keep "the City in compliance with US EPA regulations, consequently avoiding fines and penalties~~ that might result from non-compliance."~~." RJN Ex. 8 at 2–3; RJN Ex. 7 at 2. ~~The regulators audited the joint program and required *this City* to change its own ordinance.~~And the City's countywide ~~stormwater~~ program ~~likewise~~ told the State Water Board ~~in 2015~~ that the ~~permit~~MRP carried "potential third party liability consequences to the co-permittees." RJN Ex. 10 at 8. ~~A permittee~~

~~that amends its ordinances to avoid federal “fines and penalties,” demands indemnity against “judicial enforcement action,” and acknowledges third-party liability is precisely~~That is the “governmental instrumentality or agency” ~~that~~ § 1365(a)(1) reaches. The claims rest not on local pollution generally but on the City’s own permits, property, and approvals.

## C. Count 22 States Claims ~~for Violations of~~Under the City’s MS4 Permit.

~~23.~~25. Count 22 alleges that the City, as an MRP Permittee, failed to carry out the ~~permit’s requirements~~permit at the Facility and allowed non-stormwater into its storm drains. TAC ¶¶ 94, 182, 184, 436, 450–451, 504–511. ~~It also cites~~ Its citation of 33 U.S.C. § 1319(f~~), TAC ¶¶ 500–503, which Plaintiff treats as~~) invokes the CWA~~ct~~’s penalty framework, TAC ¶¶ 500–503; Dkt. 133 ¶¶ 46, 56~~. The allegations independently plead violations of “a permit or condition of a permit,” § 1365(f)(7), and a count’s~~; a heading does not control~~.~~, *Johnson*, 574 U.S. at 11.

~~24.~~26. ~~The permit’s terms are specific. Discharge~~ Prohibition A.1 requires each Permittee to “effectively prohibit the discharge of non-stormwater ~~(materials other than stormwater)~~. . . into storm drain systems and watercourses,” ~~MRP A.1, a term~~as Congress requires~~ in every MS4 permit~~, 33 U.S.C. § 1342(p)(3)(B)(ii), ~~to be met “~~through ~~the timely implementation of control measures and other actions as specified in~~ Provisions C.2~~ through~~–C.24~~,”~~. MRP A.1, C.1. Provision C.4 requires ~~each Permittee to “implement an industrial and commercial~~a site control program~~” and to “conduct~~ with “inspections, effective follow-up, and enforcement to abate potential and actual non-stormwater discharges~~”; its inspection plan must reach,”~~ reaching sites with “[o]utdoor waste storage~~, handling, and disposal areas”; and Permittees “shall require actual discharges to cease immediately,” with corrective action “before the next rain event, and~~,” and correction “no longer than 10 business days after” discovery. MRP C.4, C.4.b.ii(1), C.4.c.ii(3).

~~25.~~27. Provision C.5 requires "~~an illicit discharge program that includes~~ active surveillance and centralized complaint collection and follow-up," prompt investigation ~~of reported discharges within three business days, follow up "to ensure that corrective measures have been effectively implemented," and~~ , and logging ~~of every incident~~ "through problem resolution." MRP C.5, C.5.c.ii(6), C.5.d.i. Provision C.3.h requires inspection of treatment systems ~~"~~at ~~the completion of~~ installation~~"~~ and "at least once every five years," ~~corrective action "no longer than 30 days after a problem is identified," and assurance that the systems "are properly operated and maintained~~ correction within 30 days, and maintenance "for the life of the projects." MRP C.3.h.ii(6)(a), (c), (7)(c), C.3.h.iv.

~~26.~~ MRP 2.0, in effect from ~~January 1,~~ 2016 ~~until July 1,~~ to 2022, ~~contained~~had the same terms~~: Prohibition A.1, the ten-day correction rule, ordinance enforcement and referral, logging "through problem resolution," and the five-year inspection and 30-day correction requirements, effective July 1, 2016 and July 1, 2017.~~. MRP 2.0 A.1, C.3.h.ii(6)(c), (7)(c), C.3.h.iii, C.4.c.ii(3)–(4), C.5.b.ii(3), C.5.d.i. ~~These provisions~~They implement federal requirements ~~for "a program, including inspections, to implement and~~ to enforce an ordinance ~~. . . —~~"to prevent illicit discharges~~,""~~ ~~40 C.F.R. § 122.26(d)(2)(iv)(B)(1),~~ and ~~for~~to control ~~of~~ pollutants from ~~"industrial~~SARA § 313 facilities ~~that are subject to section 313 of title III" of SARA, *id.* § 122.26(d)(2)(iv)(C), as the TAC alleges~~like the Facility. 40 C.F.R. § 122.26(d)(2)(iv)(B)(1), ~~is,~~ (C); TAC ¶¶ 555–556.

~~27.~~28. ~~The City has acknowledged that "[t]he MS4 permit obligates the City to implement a site control program, conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains," Dkt. 89; that it "holds a municipal NDPES [sic] stormwater permit as a municipal separate storm sewer system operator," Dkt. 81 at 9; and that Provision C.3 is part of "the City's stormwater discharge permit," RJN Ex. 12 at 16. The permit also forecloses the discretion the City claims:~~ Each Permittee "shall enforce its stormwater ordinances to achieve compliance . . . including compliance required by Discharge Prohibition A.1," ~~and where its own tools are inadequate "shall~~or refer the case "to the Water

Board, district attorney, or other relevant agencies." MRP C.4.c.ii(4), C.5.b.ii(4). The City acknowledges these obligations. Dkt. 89 at 7; Dkt. 81 at 9; RJN Ex. 12 at 16.

~~28.~~29. The TAC alleges violations of each term. ~~As to~~ *Prohibition A.1*~~,~~: cooling water entered the City's ~~storm~~ drains in 2016, ~~TAC ¶ 450,~~ and ~~in~~ dry-weather ~~in 2026 Plaintiff documented~~ froth, sheen, alkaline pH, and chlorine appeared below the ~~outfall that carries the~~ Facility's ~~stormwater, *id.*~~ outfall in 2026. TAC ¶¶ 184, 450, 520. Dry-weather flow ~~at an outfall~~ is "a strong indication that there was a non-stormwater source~~ of flow to that outfall~~," and "the source of pollution is irrelevant to any finding of a violation." *San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-cv-00824-EJD, ECF No. 417 at 22, 33 (N.D. Cal. Mar. 31, 2026). To the extent Count 3 pleads these discharges from the City's system, ~~its allegations state~~it states the same ~~permit~~ claims~~. *Johnson*, 574 U.S. at 11~~.

~~29. As to~~ *Provisions C.4 and C.5*~~, a~~: the City ~~inspector reported the~~ left its own inspector's 2016 ~~cooling water discharge, yet the ticket stayed~~report open ~~nearly~~for six years and ~~was~~ closed ~~"~~it in 27 minutes~~ after being assigned"; the City "did not do anything until 2022, and then still did nothing about it."~~, TAC ¶¶ 450, 509~~. That~~, which is neither ten-day correction ~~within ten business days~~ nor follow-up "through problem resolution~~." MRP 2.0 C.4.c.ii(3), C.5.d.i. The City~~"; it did not inspect this industrial site, whose ~~hazardous~~ waste bunkers ~~sit beside~~adjoin storm drains, until 2022~~. TAC ¶¶ 182, 451.~~ ; and it received Plaintiff's ~~June~~ 2023 complaint ~~of "unlawful disposal of hazardous waste into the air, sewers, and storm drains," *id.* Ex. C (Dkt. 119-3 at 8, 36), which Provision C.5 required it to log and follow "through problem resolution," MRP C.5.d.i. The TAC alleges no~~without stormwater follow-up. *Id.* ~~after June 2022, and the drains remained beside the bunkers in October 2025. TAC ¶¶ 182, 451.~~

30. ~~As to~~¶¶ 182, 451 & Ex. C. *Provision C.3.h*~~, the Facility's treatment systems were installed under the 2014 plan, and the City promised periodic post-construction inspections. TAC ¶ 94; RJN Ex. 12 at 4–6. From July 1,~~: though required since 2016~~, the City had~~ to inspect ~~every regulated project~~ at least ~~once~~ every five years, ~~MRP 2.0 C.3.h.ii(6)(e), C.3.h.iii, yet its~~ the City first ~~inspection came~~ inspected the treatment systems in ~~April 2022, TAC ¶ 451. That~~

~~inspection found unlabeled drains and a bioretention area that “does not appear to be a bioretention area,” and 59 days later nothing had been corrected, well beyond the~~2022, left the deficiencies uncorrected past 30 days~~ allowed. *Id.*; MRP 2.0 C.3.h.ii(7)(c). The required ~~, and never obtained the maintenance logs~~ have never been filed. TAC ¶~~. MRP 2.0 C.3.h.ii(6)(c), (7)(c), C.3.h.iii; TAC ¶¶ 94, 451, 506.

31. The regulations placed the Facility in the City’s industrial inspection program from the start. Both permits require each ~~Permittee’s~~ inspection plan to include “[i]ndustrial facilities, as defined at 40 CFR 122.26(b)(14),” to record ~~each facility’s~~ SIC ~~code,~~codes, and to verify and list Industrial General Permit coverage~~, and to list facilities that need coverage but have not filed.~~. MRP C.4.b.ii(1)(b)(i), (3)(b), C.4.d.ii(1)(d), C.4.d.iii(2); MRP 2.0 C.4.b, C.4.d~~. The City’s code ties that coverage to a business’s “Standard Industrial Classification (SIC) code.”~~; *see* SCCC §§ 13.20.020(i)(3), 13.20.060(c) (RJN Ex. 9 at 9, 19). SIC Major Groups 35 and 36, ~~which include~~covering both the computer code the Facility reported and semiconductor manufacturing, are industrial activity~~,~~ ;~~40 C.F.R. § 122.26(b)(14)(xi);~~ research and development (SIC 8731) is not. 40 C.F.R. § 122.26(b)(14)(xi).

~~31.~~32. Apple’s ~~2021~~ no-exposure certification cannot be squared with ~~the~~its exterior gas pad and waste ~~storage~~ bunkers~~ the TAC alleges.~~. TAC ¶¶ 182, 187. State law ~~also~~ requires a city~~, before issuing or renewing a business license,~~ to confirm industrial permit coverage ~~for any~~before licensing a business whose SIC code ~~is subject to that permit.~~requires it. Cal. Bus. & Prof. Code § 16000.3(b~~); SCCC § 13.20.060(c).~~). That statute adds no NPDES liability, ~~Cal. Bus. & Prof. Code~~*id.* § 16000.3(h), but ~~it~~ shows what the City’s records disclosed: the license carried the Facility as an~~ administrative~~ office, a code that never triggers verification, while the Fire Department billed the same account for toxic gases~~ and a CalARP process.~~. RJN Ex. 14 at 12. ~~Two days after~~Apple supported the ~~City confirmed the new code,~~ termination of the

Facility's ~~Industrial General Permit~~ coverage ~~was terminated on the strength of that confirmation, Part II.E, and~~ with ~~it went the Facility's place on the lists the City must keep and~~ the City's ~~exposure for having failed to treat the Facility as an industrial site~~confirmation of the new code, Part II.D. The ~~research~~new code also takes the Facility outside the toxic release inventory, ~~which covers NAICS 541715 only for facilities "previously classified under SIC 3764" or 3769.~~ 40 C.F.R. § 372.23(b~~). But the governing~~), though federal standards turn on what a facility does~~: the semiconductor categorical standard applies to "~~, *id.* § 469.10 ("all process operations associated with the manufacture of semiconductors~~," 40 C.F.R. § 469.10, and the Plant applied it to the Facility in 2016,~~"); TAC ¶ 118. Why and when the City accepted the reclassification~~, and when,~~ are fact questions~~ of fact~~.

~~32.~~33. The buried Saratoga Creek also bears on Count 22~~ as well~~. The TAC alleges that the City filled the creek in the 1970s; that it still flows beneath and beside the Facility in a pressurized channel connected to San Tomas Aquino Creek and the Bay; that ~~one of its springs surfaces~~a spring well "appears to be in Creekside Park~~;~~"; and that pollutants from the ~~Facility's~~ site enter that flow. TAC ¶¶ 7, 62–79, 452, 457–462. The City counts ~~Saratoga Creek~~it among the creeks where "[a]ny pollutant that flows into the storm drain ends up." *Id.* ¶ 537. Plaintiff's December 2025 notice~~, which the City received on December 18, 2025,~~ identified the City's storm drain infrastructure at the site as the buried channel~~.~~, Dkt. 55 ¶¶ 7–10; ~~Dkt. 66.~~ City-approved parcel maps ~~the City Council approved in 1982 and 1983~~ show a ~~recorded ten-foot~~ storm drain easement across the Facility's parcel~~.~~, RJN Ex. 15~~.~~; Plaintiff has observed dry-weather flow from an outlet of the historic creek~~ system north of Scott Boulevard.~~, Gjovik Decl. ¶ 11 & Ex. C~~. The City has not denied that the creek's flow passes through its system; it has said that it~~; and the City "has not claimed that the water flowing through its stormwater system is not subject to CWA jurisdiction~~."~~," Dkt. 81 at 11.

~~33.~~34. A permit is required for “the functional equivalent of a direct discharge,” ~~including pollutants that travel through groundwater, and~~with time and distance ~~are~~ “the most important factors~~ in most cases~~.” *County of Maui v. Hawai‘i Wildlife Fund*, 590 U.S. 165, 183–85 (2020). ~~The distances here are~~Here the distance is hundreds of feet, through a subterranean stream “flowing through known and definite channels.” Cal. Water Code § 1200; TAC ¶¶ 71–79, 452. ~~Insofar as the~~ Pipes and culverts carrying that flow~~ form part of the City’s system, they~~ are point sources, 33 U.S.C. § 1362(14), and non-stormwater entering them is a discharge the City must ~~“effectively~~ prohibit~~,”~~. MRP A.1. ~~Counts 16 and 17 plead the buried-creek claims against Apple and the property owners, Dkt. 133 ¶ 47; if the Court finds the connection to the City’s system insufficiently pleaded~~If needed, Plaintiff requests leave to plead ~~it~~ that connection and to name the City in ~~those counts~~Counts 16 and 17. *See* Dkt. 133 ¶ 47.

~~34.~~ The City ~~responds that~~says it “has conducted some enforcement, but just not as much as she desires.” Mot. 21. Judge Davila rejected that defense~~ under the same prohibition: “Sunnyvale has not cited to any legal~~, finding no authority ~~to support its contention~~ that adopting and enforcing ~~its IC/ID Program,~~ an illicit-discharge program, “as a matter of law, meets its obligations under Discharge Prohibition A.1.” *Sunnyvale*, ECF No. 57 at 13 (~~N.D. Cal.~~ Dec. 28, 2020). After trial, ~~the court found~~he held that ~~the~~ cities ~~“have implemented~~ whose “extensive enforcement and related programs” ~~that “have~~ had “been far from successful~~,” and held that they had~~ ” violated ~~Prohibition~~ A.1 ~~“~~daily~~ from January 17, 2019 to present,”~~, because ~~the prohibition~~it “is a prohibition on non-stormwater entering MS4s in the first place.” *Id.*, ECF No. 417 at 36–37. ~~Liability for violating an NPDES permit~~Permit liability “is strict.” *United States v. City of Colorado Springs*, 352 F. Supp. 3d 1086, 1089, 1101 (D. Colo. 2018) (~~holding~~ city liable ~~after trial~~ for “~~a pattern of the City~~ tolerating delays in correcting the problems reported~~,” *id.* at 1101).~~”). Permits are construed “like any other contract.” *Nat. Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). The City’s ~~assertion~~claims that it “has performed its MS4 permit obligations,” Dkt. 89 at ~~the Apple facility,”~~7, and that its ~~account of an investigation~~inspection of 1.38 miles of ~~the~~ creek ~~that~~ “found no ~~source, Dkt. 89~~evidence of improper stormwater discharges,” *id.* at 11–12, are ~~factual contentions for trial, not grounds for dismissal. *See Sunnyvale*, ECF No. 57 at 13.~~

35. fact disputes. The violations ~~are continuing: dry weather discharges in 2026, maintenance logs never filed, and no record that the 2022 deficiencies were corrected~~continue. TAC ¶¶ 184, 451, 506; *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64–65 (1987).~~ The City does not argue otherwise.~~

### D. COUNT 21 STATES CLAIMS ~~FOR VIOLATIONS OF THE PRETREATMENT CONDITIONS OF~~UNDER THE CITY'S WASTEWATER PERMIT.

36. The City ~~contends that~~ says San José, not Santa Clara, ~~is responsible for~~runs the Plant. Mot. 18–19. The permit says otherwise. ~~The Regional Board~~It was issued~~ it~~ to the "City of San José, City of Santa Clara, and San José/Santa Clara Water Pollution Control Plant~~, a joint powers authority~~," collectively "the Discharger," and provide~~d~~s that "[t]he Discharger shall implement and enforce its approved pretreatment program in accordance with federal pretreatment regulations~~ (40 C.F.R. part 403)."~~." RJN Ex. 4 at 1, § 5.3.4.1; *accord* RJN Ex. 5. The Regional Board divided only collection-system duties between the cities~~ ("their respective collection systems"),~~. RJN Ex. 4 § 5.3.4.3~~, and assigned pretreatment to the Discharger as a whole.~~ .

37. An approved pretreatment program is incorporated into the permit "as enforceable conditions~~ of the Permit~~." 40 C.F.R. § 403.8(c). It must ~~"[i]nspect~~annually inspect and sample ~~the effluent from~~ each Significant Industrial User~~ at least once a year," "[e]valuate whether~~, evaluate each ~~such Significant Industrial User needs a plan or other action to~~ for a slug-control ~~Slug Discharges,"~~plan, and publish users in significant noncompliance~~ at least annually~~, *id.* § 403.8(f)(2)(v), (vi), (viii), and the permit must ~~"[i]dentify, in terms of~~ identify those users by "character and volume of pollutants~~, any Significant Industrial Users~~," *id.* § 122.44(j)(1). Citizens may enforce these conditions~~ against the permittee~~. 33 U.S.C. § 1365(a)(1), (f)(7); *Nw. Envtl. Advocates*, 56 F.3d at 986.

38. The City administers that program within its borders. A ~~"~~POTW~~"~~ includes "the

municipality . . . which has jurisdiction over the Indirect Discharges to ~~and the discharges from such a treatment works.”~~” it. 40 C.F.R. § 403.3(q). Santa Clara’s ordinance supplies the program’s authority: a Significant Industrial User ~~may discharge only under~~must hold “a discharge permit issued by the Director” of the City’s Water and Sewer Utilities, ~~in whom “[t]he~~ who has “primary responsibility for enforcement~~” is vested, and who,~~” may ~~enter,~~ inspect and sample, and ~~sample and~~ publishes the ~~annual list of users in significant~~ noncompliance list. SCCC §§ 13.10.420, 13.10.530, 13.10.570, 13.10.660 (RJN Ex. 6).

39. The Facility’s permit ~~recites that it~~ “is issued under authority established in the Santa Clara City Code,” Dkt. 134~~,~~ Ex. 7 at 1; Decl. of Ashley M. Gjøvik re Public Records Requests (“Records Decl.”) Ex. M~~, and~~; the Plant’s warnings ~~to Apple~~ cite the City’s ordinance, TAC ¶¶ 439, 442~~.~~; and the 2012 audit required Santa Clara to amend ~~that ordinance to avoid “fines and penalties.”~~it, RJN Ex. 8 at 2–3. A city that fails to implement its pretreatment program violates its permit. *United States v. City of Beaumont*, 786 F. Supp. 634, 638–39 (E.D. Tex. 1992).

40. The TAC alleges that these conditions were not met: ~~the Facility’s pretreatment system “has never been comprehensively inspected,” the~~ no comprehensive inspection, a slug evaluation ~~found~~finding “no risk mitigation needed,” ~~the renewed~~a permit disclaim~~s~~ing any obligation to monitor, and ~~the permit does not identify~~no identification of the character and volume of ~~the Facility’s~~ pollutants. TAC ¶¶ 140, 146, 182, 490, 493. These are failures of the Discharger’s program ~~the Discharger must implement, whichever co-permittee’s staff performed a given inspection.~~; that the permit issued in the Plant’s name and San José staff ~~have~~ inspected, Dkt. 134~~,~~ Exs. 7–8; TAC ¶ 86, shows how the ~~co-permittees~~work was divided ~~the work, not their responsibility under a permit that runs to “the Discharger,” RJN Ex. 4 § 5.3.4.1.~~, not who is responsible. Count 21 cites the statutes ~~that require~~requiring these conditions, 33 U.S.C. §

1342(b)(8)–(9), and need not ~~also~~ cite the permit section. *Johnson*, 574 U.S. at 11.

41. ~~Nor is the co-permittees' allocation of duties a ground for dismissal. The City relies on its~~ The City's 1959 and 1983 agreements with San José ~~to assert that San José "is responsible for all administration of the RWF, including its industrial source program." Mot. 18–19 (citing,~~ Dkts. 58-2, 58-3~~).~~, do not change this. The Court may ~~notice that the agreements exist, but it may~~ not adopt the City's reading of them ~~on this motion~~here, *Khoja*, 899 F.3d at 999–1003, and no agreement can amend a ~~permit the Regional Board issued in~~ 2025 permit or the City's ~~own~~ ordinance. Even an express permit term limiting a co-permittee's responsibility goes to "the appropriate remedy for Permit violations, not to liability for those violations." *Nat. Res. Def. Council*, 725 F.3d at 1206. EPA likewise ~~explains that~~makes a contributing jurisdiction ~~"may be made~~ a co-permittee ~~. . . "~~"for the limited purpose of making it jointly responsible ~~under state and federal law~~. . . for the pretreatment program elements in the NPDES permit." RJN Ex. 16 § 2.2.3. And the City may not collaterally attack the permit that names it. *Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 105 (9th Cir. 2024).

42. Neither *Heckler* nor § 1319(f) applies. Count 21 seeks compliance with nondiscretionary ~~program~~ conditions ~~(annual inspection and sampling, slug evaluation, identification of pollutants, and public notice),~~, not direction of the City's discretion against Apple. EPA treats a POTW's failure to perform ~~those duties~~them as a permit violation, RJN Ex. 17 (*In re City of Rochester, N.H.*, No. CWA-I-88-1009 (EPA Region I Mar. 21, 1989)), and ~~courts permit~~ citizens ~~to~~may enforce ~~a POTW's permit conditions~~them, *Save Our Bays & Beaches v. City & County of Honolulu*, 904 F. Supp. 1098, 1116 (D. Haw. 1994). *Conservation Law Found~~ation~~. v. ~~Massachusetts~~Mass. Water ~~Resources Authority,~~Res. Auth.,* No. 22-10626-RGS (D. Mass. Feb. 17, 2023), held only that § 1319(f) creates no citizen suit and that a POTW need not "impose a sanction in every instance of a violation," slip op. ~~at 10, 21; it accepted that~~

~~the enforcement plan "is incorporated into the NPDES permit conditions," *id.* at 17, and~~at 10, 21; it did not address mandatory inspection and sampling.

### E. COUNT 35 STATES A ~~CLAIM FOR~~ PUBLIC NUISANCE ~~AGAINST THE CITY~~CLAIM.

43. Against the City, Count 35 seeks abatement, remediation, ~~corrective measures,~~ and declaratory relief~~.~~; Plaintiff ~~does not pursue against the City the request in TAC ¶ 668 for~~seeks no fines or punitive damages~~. *See*~~ from it. TAC ¶ 668; Cal. Gov't Code § 818.

#### i. The Court has supplemental jurisdiction.

44. The City argues that~~,~~ jurisdiction fails once the federal claims against it are dismissed~~, the Court will lack jurisdiction over Count 35.~~. Mot. 24. But supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties," 28 U.S.C. § 1367(a~~), and the statute draws no distinction between pendent claims and pendent parties,~~); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558–59 (2005~~). The Ninth Circuit has declined to "impose a per se constitutional bar" to jurisdiction over a defendant sued only under state law.~~); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173 (9th Cir. 2002~~).~~), and federal claims against Apple and the ~~property~~ owners arising from the same releases remain ~~pending~~. Section 1367(c) ~~confers discretion, not a jurisdictional limit~~is discretionary, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), and § 1367(c)(3) applies only when the Court "has dismissed all claims over which it has original jurisdiction," *see Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

#### ii. Plaintiff alleges special injury.

45. A private person may sue for a public nuisance ~~that is~~ "specially injurious to himself~~."~~," Cal. Civ. Code § 3493~~.~~, and an injury "to the health and comfort of an individual, is in its nature special and peculiar~~."~~," *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540,

1550–51 (2009). The City's own authority reversed dismissal ~~on this ground,~~ because~~ the plaintiff's~~ personal-injury allegations were "sufficient to state a private action for public nuisance~~ to redress this personal injury."~~." *Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292, 311 (2023); *see* Mot. 26. ~~*Hacala*'s affirmance as to the City of Los Angeles rested on the Government Claims Act, not on any want of special injury, and the City here has not claimed immunity. Dkt. 81 at 15 ("the City never claimed immunity").~~ Plaintiff ~~suffered serious personal injury while living~~was seriously injured across the street, ~~requires~~needs ongoing medical monitoring, and ~~continues to use~~still uses the ~~adjacent~~ parks and creek. TAC ¶¶ 14, 27–28, 30–31, 184, 201–205~~. That she lived in Boston when she first sued, Mot. 26, bears on standing, which the TAC now pleads, not on whether her injury differs in kind from the public's~~.

**iii. The City is liable for conditions ~~it creates or permits~~ on and through its ~~own~~ property.**

46. Public entities may be liable for nuisances "founded on section 3479 of the Civil Code," and section 815 "does not bar nuisance actions against public entities." *Nestle v. City of Santa Monica*, 6 Cal. 3d 920, 937 (1972). Liability "does not hinge on whether the defendant owns, possesses or controls the property~~"; the question is,~~," but on whether ~~the defendant~~it "created or assisted in the creation of the nuisance." *County of Santa Clara v. Atlantic Richfield Co.*, 137 Cal. App. 4th 292, 306 (2006) (quoting *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 38 (2004~~)); *see* Mot. 26.~~)).

~~46.~~47. One who, "by acting or failing to act, created a condition or permitted a condition to exist" is liable, CACI No. 2020; *see* Cal. Civ. Code § 3483, ~~and~~as is a possessor ~~is liable for failing~~that fails to abate a known nuisance on its land~~ once it knows of the condition and has a reasonable opportunity to act~~, *Leslie Salt Co. v. S.F. Bay Conservation & Dev. Comm'n*, 153 Cal. App. 3d 605, 619–22 (1984); *Redevelopment Agency of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 675 (9th Cir. 2011). Cities ~~have long been held~~are liable for nuisances ~~arising~~ from their

own facilities. *Varjabedian v. City of Madera*, 20 Cal. 3d 285 (1977) (sewage plant); *Greater Westchester Homeowners Ass'n v. City of Los Angeles*, 26 Cal. 3d 86 (1979) (airport).

~~47.~~48. The TAC alleges ~~exactly that.~~such conditions. The Facility discharges to the City's ~~stormwater system~~storm drains, Dkt. 89 at 7, and ~~in~~ dry-weather ~~Plaintiff documented~~ froth, sheen, and chlorine appear below ~~its~~the outfall beside the City's parks. TAC ¶¶ 184, 510, 520. The City owns those parks~~ and the playground~~, invites the public ~~into them~~in, applies the Plant's recycled water ~~in them, and approved a school expansion whose evacuation plan~~ there, and sends ~~900 children to~~ evacuating schoolchildren into Meadow Park, inside the modeled plume~~.~~, all while knowing of the hazards. *Id.* ¶¶ 188, 192, 194–195, 224–227, 487–489, 648, 650~~. It allowed the Facility to remain in violation of its own 500-foot setback and carried it as an administrative office while billing it for toxic gases, and it knew of the releases, of its own inspection failures, of Plaintiff's injuries, and of its Fire Department's finding that the plume models are "not favorable for this area." *Id.* ¶¶ 15, 43, 49, 134, 148, 235, 660–663; RJN Ex. 14 at 12~~; Part II.C. The City ~~answers~~says that "owning public parks does not cause a public nuisance" and that "[a]ny offsite impacts . . . are caused by the facility." Mot. 25. ~~But the TAC alleges conditions on and through City property that the City created or permits to continue, and "[t]he fact that the defendants' alleged misconduct consists of omission rather than affirmative actions does not preclude~~But omissions can support nuisance liability~~."~~, *Birke*, 169 Cal. App. 4th at 1552~~.~~, and causation is a fact question~~ of fact~~.

~~48.~~49. Nor does the Facility's role relieve the City of its own. In *Vedder v. County of Imperial*, 36 Cal. App. 3d 654, 660–61 (1974), ~~private negligence started a fire at a public airport, and~~ the court reinstated nuisance claims against the public owners~~:~~ of an airport where private negligence started a fire, because one who "~~negligently stores gasoline and other highly~~ knowingly permits" negligent storage of combustible chemicals ~~on his property, or knowingly~~

~~permits such negligent storage,~~ "may be liable . . . even though the fire was actually started by the negligent conduct of others," ~~because "[i]f an injury is produced by the~~and concurrent ~~effect of two separate wrongful acts,~~wrongs are each ~~is~~ "a proximate cause ~~of the injury." *Id.* at 660–61~~ ~~(~~" (quoting *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 602 (1941)). ~~The TAC alleges the same structure:~~Here, too, Apple's releases~~,~~ and the City's ~~storm~~ drains, easement, and parks ~~as their conduits and receptors,~~ act concurrently ~~beside a toxic gas hazard the City's Fire Department has assessed.~~. TAC ¶¶ 134, 148, 184, 450, 487–489, 510, 520, 648–650~~, 660–663~~.

50. The City's code declares ~~that "[t]he~~the discharge of ~~. . . solid or liquid~~ industrial wastes into ~~any~~ storm ~~drain or natural outlet or channel,~~drains in violation of ~~any provision of this~~ chapter~~, is hereby declared to be a~~ 13.20 "a public nuisance~~,~~"" and makes it ~~"~~unlawful to ~~discharge, or~~ "cause, allow, or permit to be discharged ~~into any storm drain . . .~~" any non-stormwater discharge~~."~~. SCCC §§ 13.20.030(a), 13.20.120 (RJN Ex. 9 at 13, 23). A ~~condition that a legislative body has~~ declared ~~a~~ nuisance ~~requires~~needs no further proof of ~~its harmful character.~~harm. *See City of Claremont v. Kruse*, 177 Cal. App. 4th 1153, 1163–64 (2009~~). The TAC alleges industrial cooling water dumped into the City's drains and dry-weather froth, sheen, and chlorine below the outfall.~~); TAC ¶¶ 184, 450. ~~The City's remaining authorities do not hold otherwise. *Modesto* declined to hold liable manufacturers and suppliers~~

~~49.~~51. *Modesto*'s failure-to-warn holding concerned those "who merely placed solvents in the stream of commerce ~~without warning adequately of the dangers of improper disposal~~," 119 Cal. App. 4th at 42–43, not ~~the owner of the~~ property owners on ~~which~~whose land a hazard ~~comes to rest~~rests, and ~~it~~ recognized liability for "affirmative steps directed toward the improper discharge" of wastes, *id.* at 43. The TAC alleges ~~both~~ affirmative assurances of safety on City parkland ~~and the City's failure to warn of dangers it knew.~~. TAC ¶¶ 650, 656, 659–663. ~~Even where a public entity is immune for the design of an improvement, it "nonetheless retain[s] a~~

~~duty to warn of known dangers” that the improvement presents. *Tansavatdi v. City of Rancho Palos Verdes*, 14 Cal. 5th 639, (2023).~~ And *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 361 (2017), ~~was decided~~turned on summary judgment~~, on~~ evidence that the city’s fence did not ~~affect the sea lions causing~~cause the odor.

**iv. Neither the Government Claims Act ~~does not bar~~nor *Heckler* bars the claim.**

~~50.~~52. The Government Claims Act preserves “the right to obtain relief other than money or damages~~ against a public entity~~,” Cal. Gov’t Code § 814, and its claim-presentation ~~requirements~~rules do not apply to ~~“nonpecuniary~~ actions~~, such as those~~ “seeking injunctive, specific, or declaratory relief,” *Minsky v. City of Los Angeles*, 11 Cal. 3d 113, 121 (1974). Its ~~immunities for~~ enforcement, permitting, and inspection immunities, Cal. Gov’t Code §§ 818.2, 818.4, 818.6, thus reach damages only, ~~and they~~ are strictly construed~~: “governmental immunity should~~, and are not ~~be decreed unless the Legislature has clearly provided for it.”~~invoked here. *Vedder*, 36 Cal. App. 3d at 660 (citing *Baldwin v. State of California*, 6 Cal. 3d 424, 435–36 (1972)); Dkt. 81 at 15 (“the City never claimed immunity”). ~~)). The inspection immunity also excludes inspection of the entity’s own property, Cal. Gov’t Code § 818.6, and the storm drains, easement, and parks are the City’s. *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984), which applied those immunities to a fire department’s inaction on a known hazard at a private business, was a wrongful-death action for damages, not a suit to abate a nuisance on and through the entity’s own property. State immunities would not affect the federal counts in any event. *Cf. Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). The City has not claimed immunity, Dkt. 81 at 15, and it challenges no item of the relief Count 35 seeks.~~

53. Section 818.6 also excludes the entity’s own property, as the drains, easement, and parks are. *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405 (1984), was a damages action over a hazard at a private business. State immunities would not affect the federal counts anyway. *Cf. Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). And *Heckler*, a federal

administrative-law rule, does not limit a California nuisance claim the Legislature has permitted. *Nestle*, 6 Cal. 3d at 931–37; *see* Mot. 25, 27.

**v. The claim is timely and does not challenge any CEQA determination.**

~~51.~~54. ~~The City argues that any challenge to its~~Count 35 does not seek to set aside the City's 2010–2015 zoning and CEQA decisions~~ is time-barred.~~, Mot. 9, 25~~. Count 35 does not seek to set aside those decisions~~, which the TAC cites as evidence of ~~what the City knew~~knowledge, TAC ¶¶ 651–658; it seeks abatement of present conditions. CEQA's~~ short~~ limitations periods govern actions to "attack, review, set aside, void, or annul" ~~an agency's decision~~agency decisions. Cal. Pub. Res. Code § 21167; *see Comm. for Green Foothills v. Santa Clara Cnty. Bd. of Supervisors*, 48 Cal. 4th 32~~,~~ (2010). "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right," Cal. Civ. Code § 3490; *Wade v. Campbell*, 200 Cal. App. 2d 54, 61 (1962~~) (limitations "inapplicable" where specially injured plaintiffs sought abatement), and~~). The TAC alleges such an obstruction of ~~the "free passage or use" of~~ public parks and streams~~,~~. Cal. Civ. Code § 3479; TAC ¶ 651.

~~52.~~55. For a continuing nuisance, "every repetition of the wrong may create further liability." *Nestle*, 6 Cal. 3d at 937; ~~*see*~~ *Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal. 3d 862, 869–70 (1985); *Phillips v. City of Pasadena*, 27 Cal. 2d 104, 107–08 (1945). ~~Whether contamination is a continuing nuisance~~It "is ordinarily a question of fact," *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1148 (1991), and limitations supports dismissal only when "~~the running of the statute is~~ apparent on the face of the complaint," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). It is not~~.~~; the City's ~~own~~ conduct is recent~~: in September~~, including its 2024 ~~it approved the~~ school ~~expansion within the modeled plume,~~approval and ~~it is processing~~ a pending rezoning ~~to high-density residential~~ on the Facility's lot line. TAC ¶¶ 224–227, 233.

~~53.~~1. ~~*Heckler*, a rule of federal administrative law, does not limit a California nuisance~~

~~claim against a California city, which the Legislature has expressly permitted. *Nestle*, 6 Cal. 3d at 931–37; *see* Mot. 25, 27.~~

### F. THE REMAINING COUNTS REST ON THE CITY'S OWN DUTIES ~~THE CITY ITSELF OWES~~.

56. ~~The City treats each remaining count as a demand that it regulate Apple more aggressively. As to each, the TAC alleges facts supporting a duty the City itself owes, and a count's label does not control. *Johnson*, 574 U.S. at 11.~~ If ~~the Court concludes otherwise as to~~ any ~~count~~duty below is insufficiently pleaded, Plaintiff requests leave to plead ~~the duty identified below.~~ it.

**i. RCRA (Counts 1, 5, and 8)**

~~54.~~57. RCRA's endangerment provision reaches ~~"~~"any ~~person, including . . . any other~~ "governmental instrumentality or agency~~,~~ . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste~~ which~~" that may present an imminent and substantial endangerment~~ to health or the environment."~~. 42 U.S.C. § 6972(a)(1)(B). A contributor "had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011). A land ~~manager's decision not~~ manager that merely declined to regulate hunters' lead ammunition ~~is~~did not contribut~~ion~~e, but "[i]f USFS required hunters to use lead ammunition, our analysis might be different." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 954 (9th Cir. 2023).

~~55.~~58. The City is ~~not a~~no bystander~~ to the Facility's waste.~~. Its sewer receives ~~about 40,000 gallons a day of~~ the Facility's ~~process~~corrosive, TCE-bearing wastewater, ~~including corrosive waste, trichloroethylene, and metals, TAC ¶¶ 85, 146–147, 445, 487;~~its storm drains receive the Facility's discharges~~ also enter the City's storm drains, *id.* ¶¶ 450, 510, 520; and the Facility's~~ , and the wastewater permit~~,~~ enforced under ~~the City's~~its ordinance~~,~~ sets the terms of

disposal~~, *id.* ¶¶~~. TAC ¶¶ 85, 146–147, 439, 442~~. Plaintiff recognizes that a mixture of domestic sewage and other wastes "that passes through a sewer system to a publicly owned treatment works for treatment" is excluded from solid waste,~~, 445, 450, 487, 510, 520.~~ 40 C.F.R. § 261.4(a)(1)(ii); *see* 42 U.S.C. § 6903(27), and~~ Count 1 does not rest on the Plant's receipt of the Facility's wastewater~~. But the~~ , which the City may argue falls within the domestic-sewage exclusion. 40 C.F.R. § 261.4(a)(1)(ii); *see* 42 U.S.C. § 6903(27~~ is narrow~~). But that exclusion turns "not simply [on] type, but also [on] source," and does not reach waste ~~that leaks~~leaking from sewer lines before treatment. *Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth.*, 888 F.2d 180, 185–87 (1st Cir. 1989) (~~exclusion turns "not simply [on] type, but also [on] source";~~ vacating dismissal~~ of RCRA claims over leaking sewer lines~~); *Lincoln Props., Ltd. v. Higgins*, No. S-91-760 DFL/GGH, 23 Envtl. L. Rep. 20665 (E.D. Cal. Jan. 18, 1993).

~~56.~~59. Whether a city's "design of the sewer, any leakage that occurred, and [its] knowledge of that leakage" make it a contributor is a fact question~~ of fact~~. *KFD Enters., Inc. v. City of Eureka*, No. 08-cv-04571-SC, ECF No. 690 at 20–21 (N.D. Cal. May 9, 2014). The sewer carrying the Facility's discharges runs ~~directly~~ around the apartment where Plaintiff lived, whose plumbing was investigated as a vector for solvent vapors. TAC ¶ 443. The City also authorized the~~ very~~ units EPA later found treating and storing hazardous waste without a RCRA permit, then recorded but did not report RCRA violations at the site. *Id.* ¶¶ 48, 122, 141, 144–145, 334–335. That is the affirmative conduct *Center for Biological Diversity* distinguished. *See Cox v. City of Dallas*, 256 F.3d 281, 294–99 (5th Cir. 2001); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 513–15 (4th Cir. 2015); *Covington v. Jefferson County*, 358 F.3d 626, 639–40 (9th Cir. ~~). An~~2004) (standing; entity that ~~approved and oversaw a waste operation and~~ "could have suspended" ~~it~~operation "cannot so easily distance itself~~" from its failures.~~"). ~~*Covington v. Jefferson County*, 358 F.3d 626, 639–40 (9th Cir. 2004).~~

~~57.~~60. Counts 5 and 8 ~~rest on the same facts and~~ also state ~~an independent claim~~claims under ~~42 U.S.C.~~ § 6972(a)(1)(A~~), which reaches~~) against any "governmental instrumentality or agency" ~~that is "in violation of any . . .~~violating a requirement ~~. . . which has become~~ "effective pursuant to this chapter." ~~California administers its hazardous waste~~ California's program operates "in lieu of the Federal program," ~~with "the same force and effect as action taken by the Administrator,"~~ 42 U.S.C. § 6926(b), (d), so ~~authorized program~~its requirements are enforceable by citizen suit, *Ashoff v. City of Ukiah*, 130 F.3d 409, 412 (9th Cir. 1997). ~~Federal law conditions authorization on~~Authorization requires "periodic inspections~~ of the facilities and activities subject to regulation~~," 40 C.F.R. § 271.15(b)(2), ~~and~~which California assigns ~~that function~~ to unified program agencies, ~~which must inspect~~ including triennial inspection of onsite treatment units~~ every three years~~, Cal. Health & Safety Code § 25404.1(a)(2); Cal. Code Regs. tit. 27, § 15200(a)(2)(B). CalEPA found ~~that~~ the City had processed none of 152 onsite-treatment notifications within the required 45 days, ~~a deficiency~~ resolved only during CalEPA's evaluation. RJN Ex. 13 at 20. Because ~~the inspection~~ that mandate implements a federal condition of authorization, it is not the ~~kind of~~ "more stringent" ~~state~~ standard ~~that~~ *Ashoff* held unenforceable. ~~If the Court finds the City's role insufficiently pleaded, Plaintiff requests leave to plead it directly.~~

### ii. Clean Air Act (Counts 2, 14, and 15)

~~58.~~61. The Clean Air Act ~~authorizes suit against~~reaches "any person (including . . . any other governmental instrumentality or agency . . .)" ~~alleged to violate "an emission~~violating a standard ~~or limitation," including "any other standard, limitation, or schedule established . . .~~ "under any applicable State implementation plan~~ approved by the Administrator."~~." 42 U.S.C. § 7604(a)(1), (f)(4~~). A city is a "person."~~); *id.* § 7602(e). California's~~ implementation~~ plan includes CEQA's core provisions~~ of CEQA, which EPA approved in 1981:~~, Public Resources Code sections 21002~~ (feasible alternatives and mitigation),~~, 21081~~ (required findings),~~, and

21151~~ (environmental impact reports by local agencies).~~. 46 Fed. Reg. 5965 (Jan. 21, 1981); 40 C.F.R. § 52.220(c)(63). ~~Those provisions bind the City as lead agency, and~~ Plan obligations that bind a city are enforceable against it. ~~*See*~~ *Coalition Against Columbus Ctr. v. City of New York*, 967 F.2d 764, 769–71 (2d Cir. ~~1992) (city's plan commitment to mitigate is "an emission standard or limitation");~~1992); *McCarthy v. Thomas*, 27 F.3d 1363, 1373 (9th Cir. 1994) (plan ~~transit~~ provisions "bind the cities of Tucson and Phoenix").

~~59.~~62. Counts 14 and 15 allege that the City approved the Santa Clara Square EIR and its 2017 addendum knowing ~~that~~ emissions would exceed ~~significance~~ thresholds, without ~~the required~~ cumulative analysis of the adjacent Facility, and approved the Facility's buildout without environmental review~~. TAC ¶¶ 91, 416–420, 423–427. The City's~~; its 2014 routing sheet ~~for the Facility, circulated to the City Attorney, City Manager, Fire Marshal, and Water and Sewer Utilities,~~ listed the CEQA determination as "TBD." TAC ¶¶ 91, 416–420, 423–427; RJN Ex. 12 at 1. Those are ~~the~~plan duties ~~the plan-approved provisions impose~~, and the ~~omission was~~violation "has been repeated ~~from 2014~~" through 2017. ~~TAC ¶¶ 91, 427; *see*~~ 42 U.S.C. § 7604(a)(1~~) (violation that "has been repeated").~~). That the counts cite ambient standards ~~rather than the plan~~ does not defeat them, *Johnson*, 574 U.S. at 11, and the City's authorities ~~concerned~~involved suits against EPA or challenges to ~~an air agency's~~ enforcement discretion, ~~not a local agency's own plan duties,~~ *see Cent. Valley Air Quality Coal.*, ECF No. 41 at 12~~. If necessary, Plaintiff requests leave to identify the plan provisions~~.

~~60.~~63. Count 2 enforces ~~the general duty of~~ section 112(r)(1~~), which requires owners and operators~~)'s general duty to "identify hazards ~~which may result from such releases~~," "design and maintain a safe facility," and "minimize the consequences of accidental releases ~~which do occur,"~~" against Apple and the ~~property~~ owners. 42 U.S.C. §§ 7412(r)(1), 7604(f)(3); Dkt. 133 ¶ 43. The City is a necessary party to that remedy, which ~~will involve~~implicates its emergency

planning and land-use approvals. Fed. R. Civ. P. 19(a)(1)(A); *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 781–83 (9th Cir. 2005~~) (“a plaintiff’s inability to state a direct cause of action against an absentee does not prevent the absentee’s joinder under Rule 19”).~~). Count 2 also rests on ~~a~~the City’s own duty ~~the City owes directly. For sources required to hold a~~: for Title V ~~permit, EPA’s accidental-release rules require the~~ sources, the agency designated ~~agency to~~under § 68.215(d), which state law makes the City, must “[v]erify that the source owner or operator has registered and submitted an RMP or a revised plan when required ~~by this part~~.” 40 C.F.R. § 68.215(a), (d)–(e~~). California designated its unified program agencies to implement “[v]erification of stationary source registration and submission of an RMP or revised RMP.”~~); Cal. Health & Safety Code § 25533(d)(1). The TAC alleges that the Facility is a major ~~source required to hold a~~ Title V ~~permit~~source, that the City accepted an RMP application in 2015 ~~that it~~and did not close it until ~~December~~ 2022, and that the RMP disclosed three regulated substances ~~al~~though more than twenty ~~others~~ were present. TAC ¶¶ 98, 187, 359–363. CalEPA ~~treats § 25533(d) as a source of the City’s duties and~~ found that three of the City’s seven CalARP sources had not updated their plans in five years. RJN Ex. 13 at 2, 7–8.

~~61.~~64. The City says its ~~unified program~~ role “regulates waste, not air emissions.” Mot. 16. But its Fire Department administers CalARP, under which ~~Apple filed~~ the Facility’s ~~Risk Management Plan~~RMP was filed, and left five of ~~the City’s~~ seven CalARP sources ~~went~~ uninspected for three years. RJN Ex. 13 at 5; TAC ¶¶ 187, 235; Dkt. 134~~,~~ Ex. 6. ~~The City’s permit for~~ It charges the Facility ~~charges~~ a ~~CalARP fee for~~ “Program 1~~,”~~” fee, RJN Ex. 14 at 12, a tier limited to processes whose worst-case release reaches no public receptor and that have had no ~~accidental~~offsite-impact release ~~with offsite impacts~~ in five years, 40 C.F.R. § 68.10(g)(1)–(2). Yet Apple’s ~~modeling places its~~ arsine worst ~~-~~case ~~endpoint over~~reaches 5,343 residents, and the City ~~itself~~ responded ~~in~~to a 2021 ~~to a~~ phosphine ~~leak vented out of~~release from the

Facility. TAC ¶¶ 148, 188.

**iii. EPCRA (Counts 26 and 27)**

65. EPCRA requires ~~that~~ emergency plans, safety data sheets, and ~~inventory forms~~ inventories to be publicly available ~~to the public~~ "at the location or locations designated by the ~~Administrator, Governor,~~ . . . State emergency response commission, or local emergency planning committee~~, as appropriate~~," 42 U.S.C. § 11044(a), and authorizes suit against a commission for ~~"failure~~failing to provide that "mechanism~~ for public availability of information in accordance with section 11044(a)""~~" or ~~for failure~~ to ~~respond to a request for~~answer tier II ~~information~~requests, *id.* § 11046(a)(1)(C)–(D). California performs those functions through~~ its~~ unified program agencies: an inventory filed with the agency "shall be deemed to have filed the inventory form required by Section 11022(a~~) of Title 42 of the United States Code with the state emergency response commission,")~~)," and the agency "shall make the information . . . available for public inspection." Cal. Health & Safety Code § 25509(b), (d).

~~62.~~66. As Cal OES explains~~ that "the SERC has delegated some EPCRA requirements," that inventories go "to the Certified Unified Program Agencies (CUPAs) instead of the SERC/LEPCs," and that~~, "[i]t is the CUPAs, therefore, that respond to public inquiries~~ regarding business inventories"; it describes the procedures for public requests as "administered by Cal OES and UPAs."~~." RJN Ex. 18. The City is that agency~~ for the Facility.~~. TAC ¶¶ 45–48; Mot. 10.~~ The City denies that the CUPA program includes "delegation of the State's EPCRA functions," Mot. 23, but~~ Where the State routes its § 11044 and § 11022(e)(3) functions through the City, a suit to compel ~~their performance~~them falls within § 11046(a)(1)(C)–(D~~).~~), Mot. 23 notwithstanding; at most, the question is which entity ~~must be named~~to name, which amendment can address~~, including by adding the commission's chair in an official capacity~~. *See Ex parte Young*, 209 U.S. 123 (1908).

67. The City ~~also contends that~~says Plaintiff ~~never~~ alleges ~~a~~no unanswered request~~ or~~

~~that the City failed to answer one.~~, Mot. 16, 23~~.~~, but the TAC alleges ~~that the City~~ withheld and delayed records~~ about the Facility~~, TAC ¶¶ 50, 170, 207, 274, 296, and the particulars show that amendment would not be futile, *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Plaintiff's July 2024 written request for the Facility's hazardous materials "inventories~~," which California deems to satisfy the federal tier II requirement,~~" went unanswered for sixteen months, far beyond EPCRA's 120~~-day limit, until after this action was filed.~~ days. 42 U.S.C. § 11046(a)(1)(D); Records Decl. ¶¶ 5–8 & Exs. A–B. Her~~ May~~ 2023 request for toxic-gas records drew a response that ~~the Fire Department "was unable to locate records~~ none could be located "under the 'Toxic Gas System (i.e. SCCO B11-380)' designation," and her October 2025 request for toxic-gas inventories and emergency-response information remains unanswered. Records Decl. ¶¶ 10–11, 19 & Exs. C, J. ~~A~~ Belated production does not moot a claim unless it is "absolutely clear" the conduct cannot reasonably be expected to recur. *Laidlaw*, 528 U.S. at 189. And the City ~~also~~ accepted~~, as the agency receiving the Facility's business plan,~~ the reclassification ~~on which~~ Apple now ~~relies to deny any duty to report its toxic releases. Part II.E.~~ invokes.

68. The same facts state a claim under the Plant's permit, ~~whose pretreatment conditions require~~which requires that effluent data "be available to the public without restriction" and that users in significant noncompliance be publicly identified~~ each year~~. 40 C.F.R. §§ 403.8(f)(2)(viii), 403.14(b); TAC ¶¶ 50, 180, 274, 439, 442. Count 26 alleges that the City failed to ensure ~~that~~ the Facility filed its toxic release ~~inventory~~ reports, TAC ¶ 555, facts ~~that bear~~bearing on the City's knowledge under Counts 21, 22, and 35~~. Any dismissal of~~ that amendment can develop.

**iv. Count ~~26 as to the City should be without prejudice.~~ 24**

~~63.~~69. Count 24 alleges that the City purported to authorize the Facility's industrial stormwater discharges through a maintenance agreement and ~~wastewater~~ permit terms, without

public notice. TAC ¶¶ 531–535. Those facts show ~~the City's failures under~~ violations of MRP C.3.h, C.4, and C.5, ~~*see*~~ Part IV.C, and ~~under the MRP's~~of its public-reporting provisions~~, which implement the federal requirement of a program to "promote, publicize, and facilitate public reporting of the presence of illicit discharges,"~~. MRP C.5.c.ii(1)–(2), C.7.b; 40 C.F.R. § 122.26(d)(2)(iv)(B)(5~~); MRP C.5.c.ii(1)–(2), C.7.b.~~). The Court should read Count 24 with Count 22 or grant leave to ~~identify those provisions~~amend.

**v. TSCA (Count 32)**

~~64.~~70. TSCA authorizes suit against ~~"~~any ~~person (including . . . any other~~ "governmental instrumentality or agency~~ . . .)" alleged to violate~~" violating the statute or its rules. 15 U.S.C. § 2619(a)(1); *see America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) (~~TSCA citizen suit against~~ school district officials~~ concerning PCBs~~). Count 32 alleges that the City knew of the Facility's improper use and disposal of ~~trichloroethylene~~TCE, NMP, mercury, and lead~~ and did not act.~~. TAC ¶¶ 605–609. A TSCA rule also binds the City directly: ~~by~~since September 15, 2025, "owners or operators of publicly owned treatment works, where there is a reasonable possibility of the presence of TCE," must screen industrial wastewater ~~they receive~~ for TCE or implement EPA's workplace ~~chemical~~ protection program. 40 C.F.R. § 751.319(c). The City co-owns the Plant, ~~and~~which receives the Facility's TCE-bearing effluent~~ has contained TCE that apparently was never selected for testing.~~. TAC ¶¶ 44, 123–125, 147. ~~Count 32's citation of other sections is at most an imperfect statement of the theory, *Johnson*, 574 U.S. at 11, and~~ Any dismissal should ~~be without prejudice and with leave to plead~~allow pleading § 751.319.

## G. Any Dismissal Should Be ~~Without Prejudice and~~ With Leave to Amend.

~~65.~~71. The City seeks dismissal with prejudice because Plaintiff "did not modify those claims" after its earlier motion. Mot. 10; *see id.* at 9, 28. But the Court ~~has~~ never ruled on ~~the~~

~~City's~~those arguments~~:~~; it dismissed for lack of standing ~~and stated that its ruling was~~ "without prejudice to the renewal of any of the motions." Dkt. 101 at 25. Leave ~~to amend~~ should be freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

~~66.~~72. A pro se complaint ~~should not~~may be dismissed without leave ~~unless~~only if "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012~~) (citation omitted~~), and ~~the Court may consider~~ facts ~~set out~~ in an opposition ~~in assessing~~bear on futility, *Broam*, 320 F.3d at 1026 n.2. ~~None of those circumstances is present.~~ This opposition ~~identifies~~ and Plaintiff's declarations identify the permit conditions, statutes, and facts supporting each count~~, and Plaintiff's declarations identify further facts she could plead.~~. Gjovik Decl. ¶¶ 4–11; Records Decl. ¶¶ 4–22~~. Should the Court find any count insufficiently specific, Plaintiff requests leave to identify the provisions that the pleaded facts show were violated~~.

## V. CONCLUSION

~~67.~~73. The City is ~~not sued for the manner in which it regulates Apple. It is~~ sued for violating its own ~~stormwater permit, its own wastewater permit,~~permits and ~~its own~~ duties ~~as the owner of the storm drains, sewers, and parks at the center of this case. Plaintiff respectfully requests that the Court deny the~~, not for how it regulates Apple. The City's motion should be denied or, ~~in the alternative, dismiss~~alternatively, any dismissal should be without prejudice and with leave to amend.

Respectfully filed,





**/s/ Ashley M. Gjovik**

**Ashley Gjovik (Plaintiff)**
Filed October ~~15~~16, 2026 in San José, California
~~(408) 883-4428~~
~~ashleymgjovik@protonmail~~(415) 964-6272
legal@ashleygjovik.com
2108 N. St. Ste. 4553,
Sacramento, CA 95816

## VI. [PROPOSED] ORDER

Having considered Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127), the papers filed in support of and in opposition to the motion, and the arguments of the parties, and good cause appearing,

**IT IS HEREBY ORDERED:**

1. Defendant City of Santa Clara's Motion to Dismiss the Third Amended Complaint (Dkt. 127) is **DENIED** in its entirety.
2. In the alternative, to the extent any claim is dismissed, the dismissal is without prejudice and with leave to amend, and Plaintiff may file an amended complaint within thirty (30) days of this Order.

**IT IS SO ORDERED.**

DATED: ___________________

___________________________________
Hon. P. Casey Pitts
United States District Judge