# EXHIBIT 1

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Dept: Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen<br>Date: May 16, 2024<br>Time: 1:30 p.m. |

KATE E. JUVINALL (SBN 315659)
kjuvinall@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
631 Wilshire Blvd., Suite 2-C
Santa Monica, CA 90401
Telephone: +1 310 633 2800
Facsimile: +1 310 633 2849

RYAN D. BOOMS (SBN 329430)
rbooms@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: +1 202 339 8400
Facsimile: +1 202 339 8500

Attorneys for Defendant
Apple Inc.

TABLE OF CONTENTS


I. INTRODUCTION/STATEMENT OF ISSUES ..... 1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS ..... 3

III. ARGUMENT ..... 4

- A. THE TAC SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE IT VIOLATES FRCP 8(A). ..... 4
- B. PLAINTIFF'S RICO CLAIM SHOULD BE DISMISSED UNDER EACH PROVISION SHE CITES. ..... 5
  - 1. PLAINTIFF'S SECTION 1962(A) CLAIM FAILS FOR LACK OF INJURY. ..... 5
  - 2. PLAINTIFF'S SECTION 1962(C) CLAIM DOES NOT STATE A CLAIM. ..... 6
    - A. PLAINTIFF FAILS TO ALLEGE AN ENTERPRISE DISTINCT FROM APPLE. ..... 6
    - B. PLAINTIFF PLEADS NO FACTS SHOWING THE ALLEGED PREDICATE ACTS ARE RELATED OR POSE A CONTINUOUS THREAT. ..... 8
  - 3. PLAINTIFF'S DERIVATIVE SECTION 1962(D) CLAIM FAILS. ..... 9
- C. PLAINTIFF'S SOX CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE THAT SHE COMPLAINED ABOUT CONDUCT THAT SHE COULD HAVE REASONABLY BELIEVED VIOLATED SOX. ..... 9
  - 1. COMPLAINTS ABOUT ALLEGED "CONFLICTS OF INTEREST" ..... 11
  - 2. COMPLAINTS ABOUT ALLEGEDLY "FALSE PUBLIC STATEMENTS" ..... 11
  - 3. COMPLAINTS ABOUT "SMUGGLING" AND "SKIPPING THE LINE" ..... 12
  - 4. COMPLAINTS ABOUT RETALIATION AND INTIMIDATION ..... 12
- D. PLAINTIFF'S DODD-FRANK CLAIM FAILS FOR LACK OF PROTECTED ACTIVITY UNDER SOX. ..... 13
- E. PLAINTIFF'S NUISANCE CLAIM SHOULD BE DISMISSED IN LARGE PART. ..... 13
- F. PLAINTIFF'S STRICT LIABILITY CLAIM SHOULD BE DISMISSED AS TIME-BARRED AND BECAUSE SHE DOES NOT ALLEGE ANY ULTRAHAZARDOUS ACTIVITIES UNDER THE LAW. ..... 14
- G. PLAINTIFF'S BANE ACT CLAIM FAILS BECAUSE SHE DOES NOT ALLEGE THAT APPLE INTERFERED WITH ANY RIGHT BY THREAT, INTIMIDATION, OR COERCION. ..... 17
- H. PLAINTIFF'S RALPH ACT CLAIM FAILS BECAUSE SHE ALLEGES NO FACTS SUGGESTING ANY THREAT OF VIOLENCE BY APPLE, OR THAT ANY ALLEGED CONDUCT WAS BASED ON POLITICAL AFFILIATION OR ANY PROTECTED CHARACTERISTIC. ..... 19

I. PLAINTIFF'S SECTION 1102.5 FAILS BECAUSE SHE DOES NOT ALLEGE PROTECTED ACTIVITY. .......... 20

J. PLAINTIFF'S SECTION 98.6 CLAIMS FAILS TO THE EXTENT IT ATTEMPTS TO RELY ON SECTION 96(K) BECAUSE SHE DOES NOT ALLEGE CONSTITUTIONALLY PROTECTED CONDUCT.......... 22

K. PLAINTIFF'S CONTRACT-BASED CLAIMS FAIL BECAUSE SHE WAS AN AT-WILL EMPLOYEE. .......... 22

L. PLAINTIFF DOES NOT STATE A CLAIM FOR IIED. .......... 23

M. PLAINTIFF DOES NOT STATE A CLAIM FOR NIED. .......... 24

N. PLAINTIFF'S UCL CLAIM SHOULD BE DISMISSED BECAUSE SHE LACKS STANDING. .......... 25

IV. CONCLUSION .......... 25

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019) .......... 23

*Am. Int'l Specialty Lines Ins. Co. v. Hoot Winc, L.L.C.*, 2006 WL 8455348 (S.D. Cal. Aug. 22, 2006) .......... 21

*Barrous v. BP P.L.C.*, 2011 WL 4595205 (N.D. Cal. Oct. 3, 2011) .......... 13

*Basco v. Toyota Motor Corp*, 2010 WL 11462992 (C.D. Cal. Mar. 3, 2010) .......... 5

*Bell v. St. Clair*, 2015 WL 1606968 (E.D. Cal. Apr. 9, 2015) .......... 3, 14

*Borrello v. Respironics Cal., LLC*, 2023 WL 5986135 (S.D. Cal. Sept. 14, 2023) .......... 18

*In re Burbank Env't Litig.*, 42 F. Supp. 2d 976 (C.D. Cal. 1998) .......... 15, 17

*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990) .......... 23

*Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342 (1992) .......... 23

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) .......... 6

*City of Pontiac Gen. Employees' Ret. Sys. v. Bush*, 2022 WL 1467773 (N.D. Cal. Mar. 1, 2022) .......... 12

*Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*, 2022 WL 80265 (S.D. Cal. Jan. 7, 2022) .......... 20

*Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir. 2023) .......... 6, 7

*Cortez v. City of Oakland*, 2017 WL 1650568 (N.D. Cal. May 2, 2017) .......... 17, 18

*Davenport v. Sacramento Cnty. Child Protective Servs.*,
2016 WL 3362005 (E.D. Cal. June 17, 2016) ... 17

*De Souza v. Dawson Tech., Inc.*,
2022 WL 298368 (S.D. Cal. Feb. 1, 2022) ... 20

*Diaz v. Transatlantic Reinsurance Co.*,
2016 WL 3568071 (S.D.N.Y. June 22, 2016) ... 11

*Digital Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018) ... 13

*In the Matter of Douglas Denneny, v. MBDA, Inc.*,
ARB Case No. 2018-0027, 2021 WL 423979 (Jan. 8, 2021) ... 11

*E.B. v. Liberation Publications, Inc.*,
777 N.Y.S.2d 133 (2004) ... 25

*Edwards v. Post Transp. Co.*,
228 Cal. App. 3d 980 (1991) ... 16, 17

*Erhart v. Bofi Holding, Inc.*,
2016 WL 5369470 (S.D. Cal. Sept. 26, 2016) ... 10, 11, 12, 13

*Erhart v. Bofi Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) ... 13

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ... 25

*Fermino v. Fedco, Inc.*,
7 Cal.4th 701 (1994) ... 25

*Focus 15, LLC v. NICO Corp.*,
2022 WL 2355537 (N.D. Cal. June 30, 2022) ... 8

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ... 14

*Garza v. BNSF R. Co.*,
2012 WL 2118179 (E.D. Cal. June 11, 2012) ... 23

*Gauthier v. Shaw Grp., Inc.*,
2012 WL 6043012 (W.D.N.C. Dec. 4, 2012) ... 11

*Goe Eng'g Co. v. Physicians Formula Cosms., Inc.*,
1997 WL 889278 (C.D. Cal. June 4, 1997) ... 16

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
145 F. Supp. 3d 1000 (S.D. Cal. 2015) ... 15, 16, 17

*Greenstein v. Peters*,
2009 WL 722067 (C.D. Cal. Mar. 16, 2009) ........ 6-7

*Grinzi v. San Diego Hospice Corp.*,
120 Cal. App. 4th 72 (2004) ........ 22

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) ........ 8

*Hamilton v. Juul Labs, Inc.*,
2020 WL 5500377 (N.D. Cal. Sept. 11, 2020) ........ 22

*Hernandez v. City of San Jose*,
2016 WL 5944095 (N.D. Cal. Oct. 13, 2016) ........ 19

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) ........ 9

*James v. PC Matic, Inc.*,
2023 WL 4291668 (C.D. Cal. May 17, 2023) ........ 20, 22

*In re Jamster Mktg. Litig.*,
2009 WL 1456632 (S.D. Cal. May 22, 2009) ........ 8

*Janken v. GM Hughes Elec.*,
46 Cal. App. 4th 55 (1996) ........ 24

*JD Factors, LLC v. Reddy Ice Holdings, Inc.*,
2016 WL 6996152 (C.D. Cal. June 6, 2016) ........ 23

*Johnson v. Lucent Techs. Inc.*,
653 F.3d 1000 (9th Cir. 2011) ........ 24

*King v. S.F. Police Dep't*,
2018 WL 7202482 (N.D. Cal. Dec. 17, 2018) ........ 17

*Lee v. S. of Mkt. Health Ctr.*,
2020 WL 2219032 (N.D. Cal. May 7, 2020) ........ 24

*Libman v. United States*,
2022 WL 18284664 (C.D. Cal. Dec. 1, 2022) ........ 19

*Lopez v. Wachovia Mortg.*,
2009 WL 4505919 (E.D. Cal. Nov. 20, 2009) ........ 2

*Lugrain v. EKO N. Am., Inc.*,
2022 WL 16888547 (C.D. Cal. Oct. 21, 2022) ........ 25

*Magnuson v. Exelon Corp.*,
658 F. Supp. 3d 652 (C.D. Ill. 2023) ........ 11

*McGowan v. Weinstein*,
562 F. Supp. 3d 744 (C.D. Cal. 2020)........ 9

*McKenna v. Permanente Med. Grp., Inc.*,
894 F. Supp. 2d 1258 (E.D. Cal. 2012)........ 23

*Medallion Television Enters., Inc. v. SelecTV of California, Inc.*,
833 F.2d 1360 (9th Cir. 1987)........ 9

*Merrick Gables Ass'n, Inc. v. Town of Hempstead*,
691 F. Supp. 2d 355 (E.D.N.Y. 2010)........ 15

*Metaxas v. Lee*,
503 F. Supp. 3d 923 (N.D. Cal. 2020)........ 7, 8

*Meyers v. City of Fresno*,
2011 WL 902115 (E.D. Cal. Mar. 15, 2011)........ 18

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
2019 WL 1048252 (N.D. Cal. Mar. 5, 2019)........ 9

*Moreno v. Cnty. of Los Angeles*,
2022 WL 1515684 (C.D. Cal. Feb. 28, 2022)........ 19-20

*Napear v. Bonneville Int'l Corp.*,
2023 WL 3025258 (E.D. Cal. Apr. 20, 2023)........ 22

*Nationstar Mortg. LLC v. Presley*,
2023 WL 121746 (E.D. Cal. Jan. 6, 2023)........ 6

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992)........ 5

*Oasis W. Realty, LLC v. Goldman*,
51 Cal.4th 811 (2011)........ 23

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007)........ 6, 8

*Omidi v. Wal-Mart Stores, Inc.*,
2020 WL 1332594 (S.D. Cal. Mar. 23, 2020)........ 25

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018)........ 12

*Ramirez v. City of San Jose*,
2022 WL 875643 (N.D. Cal. Mar. 24, 2022)........ 19

*Richter v. Ausmus*,
2021 WL 580055 (N.D. Cal. Feb. 16, 2021)........ 18

*RJ v. Cigna Behav. Health, Inc.*,
2021 WL 1110261 (N.D. Cal. Mar. 23, 2021) ........ 6

*Schaffer v. GTE, Inc.*,
40 F. App'x 552 (9th Cir. 2002) ........ 25

*Schaldach v. Dignity Health*,
2013 WL 2292054 (E.D. Cal. May 23, 2013) ........ 18

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........ 6

*Schwartzman, Inc. v. General Elec. Co.*,
848 F. Supp. 942 (D.N.M. 1993) ........ 15

*Shoemaker v. Myers*,
52 Cal. 3d 1 (1990) ........ 24

*Snyder v. Alight Solutions, LLC*,
2021 WL 4622392 (C.D. Cal. May 5, 2021) ........ 18

*State of Cal. on Behalf of State Dep't of Toxic Substances Control v. Verticare, Inc.*,
1993 WL 245544 (N.D. Cal. Mar. 1, 1993) ........ 15

*Temming v. Summus Holdings, LLC*,
2021 WL 5014854 (N.D. Cal. Oct. 28, 2021) ........ 6

*Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach*,
334 F. Supp. 3d 1031 (C.D. Cal. 2017) ........ 13-14

*Urman v. S. Bos. Sav. Bank*,
424 Mass. 165 (1997) ........ 24-25

*Verfuerth v. Orion Energy Sys., Inc.*,
879 F.3d 789 (7th Cir. 2018) ........ 11

*Wagh v. Metris Direct, Inc.*,
363 F.3d 821 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ........ 5

*Wagner v. S. California Edison Co.*,
840 F. App'x 993 (9th Cir. 2021) ........ 13

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ........ 7

*Yates v. E. Side Union High Sch. Dist.*,
2021 WL 3665861 (N.D. Cal. Aug. 18, 2021) ........ 19

**Statutes**

18 U.S.C. § 1514A(a)(1) ........ 2, 9, 10

18 U.S.C. § 1961 ........ 6, 8

18 U.S.C. § 1962 ........ 1, 5, 6, 7, 9

Cal. Bus. & Prof. Code § 17204 ........ 25

Cal. Civ. Code § 52.1 ........ 17, 18

Cal. Civ. Proc. Code § 335.1 ........ 14

Cal. Civ. Proc. Code § 340.8 ........ 14

Cal. Lab. Code § 96(k) ........ 2, 22

Cal. Lab. Code § 98.6 ........ 2, 22

Cal. Lab. Code § 1102.5 ........ *passim*

Cal. Lab. Code § 435 ........ 21

Cal. Lab. Code §§ 1101-02 ........ 21

Cal. Lab. Code §§ 3600, 3602 ........ 25

CERCLA, 42 U.S.C. §§ 9601 *et seq.* ........ 15

**Other Authorities**

Fed. R. Civ. P. 8(d)(1) ........ 1, 4, 5, 23

Fed. R. Civ. P. 9(b) ........ 6, 8

Fed. R. Civ. P. 12(b)(6) ........ 1, 10

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFF ASHLEY GJOVIK: **PLEASE TAKE NOTICE** that on May 16, 2024, at 1:30 p.m. in Courtroom 5, on the 17th Floor of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Apple Inc. will move the Court for an Order dismissing Plaintiff's Third Amended Complaint ("TAC") under FRCP 8(a), and the First through Ninth and Twelfth through Fifteenth Claims on the grounds that Plaintiff fails to state a claim upon which relief can be granted under FRCP 12(b)(6). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete pleadings and records on file, and other evidence and arguments as may be presented at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION/STATEMENT OF ISSUES

Apple terminated Plaintiff's employment in September 2021. Two years later, she filed a sprawling complaint arguing Apple spearheaded a far-reaching scheme to allegedly mislead governmental regulators and the broader market. Plaintiff has attempted to transform what should be a straightforward wrongful termination case into much more by asserting unrelated, inadequately pled, and implausible claims. It is clear that Plaintiff is no fan of Apple and disagrees with how Apple runs its business; however, her dislike for Apple is not—and never will be—a basis for her claims, no matter how many times she amends. The TAC lacks specific factual allegations that would entitle her to the relief she seeks under most of the claims pled. Apple moves to dismiss the following claims on these bases:

- The TAC should be dismissed in its entirety because it is not a short, plain statement showing Plaintiff is entitled to relief and thus violates FRCP 8(a).
- The First Claim under RICO should be dismissed. Plaintiff fails to state a claim under 18 U.S.C. § 1962(a) because she does not plead that Apple used or invested money it received from supposed racketeering to injure her. She fails to state a claim under 18 U.S.C. § 1962(c) and (d) because she does not allege the existence of an "enterprise" separate and distinct from Apple or any pattern of racketeering activity.
- The Second Claim under SOX should be dismissed because Plaintiff fails to allege

facts that, if true, would demonstrate she complained about conduct that she reasonably believed violated a provision enumerated in 18 U.S.C. § 1514A(a)(1).

- The Third Claim under Dodd-Frank should be dismissed because it is derivative of her Second Claim, and thus fails for the same reasons her SOX claim fails.
- The Fourth Claim alleging nuisance/nuisance *per se* should be dismissed in part[1] because Plaintiff does not have a property interest in the Apple building she worked in (identified in the TAC as "825 Stewart Dr." or the "Superfund Site"), and has not identified a law that declares it a nuisance to operate a manufacturing facility (identified in the TAC as "3250 Scott Blvd" or "ARIA") or lease an office on a Superfund site.
- The Fifth Claim asserting strict liability for ultrahazardous activities should be dismissed because it is time-barred, and because neither leasing office space on a Superfund site nor operating a manufacturing facility is an ultrahazardous activity.
- The Sixth Claim under the Bane Civil Rights Act should be dismissed because Plaintiff fails to allege facts showing Apple interfered with Plaintiff's constitutional or statutory rights, or that any such interference included actual or attempted threats, intimidation, or coercion.
- The Seventh Claim under the Ralph Civil Rights Act should be dismissed because Plaintiff does not allege facts suggesting any threat of violence by Apple, or that any conduct by Apple was based on her political affiliation or other protected characteristic.
- The Eighth Claim under California Labor Code section 1102.5 should be dismissed because Plaintiff fails to allege any facts that would establish a violation of the underlying statutes she identifies as a predicate for this claim.
- The Ninth Claim under California Labor Code section 98.6 should be dismissed in part to the extent it is predicated on an alleged violation of California Labor Code section 96(k) because Plaintiff fails to allege she was terminated for asserting a recognized constitutional right.
- The Twelfth Claim asserting contract claims should be dismissed because Plaintiff was an at-will employee.

---

[1] Courts can dismiss of only a portion of, or one of several theories alleged in, a single claim. *See, e.g.*, *Lopez v. Wachovia Mortg.*, 2009 WL 4505919, at *3-4 (E.D. Cal. Nov. 20, 2009). Alternatively, Apple is separately moving to strike portions of the Fourth and Ninth Claim.

- The Thirteenth Claim asserting intentional infliction of emotional distress should be dismissed because it is based on non-actionable conduct, it is preempted by California's Workers Compensation exclusivity, and/or it is time-barred.
- The Fourteenth Claim asserting negligent infliction of emotional distress should be dismissed both because Plaintiff cannot allege that Defendants owed her the requisite duty, and because it is preempted by California's Workers Compensation exclusivity.
- The Fifteenth Claim under California's Unfair Competition Law should be dismissed because Plaintiff does not allege any basis for restitution and thus lacks standing.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Despite three amendments and clear direction from this Court, the TAC continues to be littered with many allegations that are irrelevant to any pleaded claim; Apple is concurrently moving to strike those allegations. The allegations that are relevant include the following:[2]

Plaintiff worked for Apple from February 2015 until Apple terminated her employment in September 2021. TAC ¶11. Apple told her it was terminating her employment because she disclosed confidential product-related information and failed to cooperate in an investigation. Second Amended Complaint ("SAC") ¶523[3]; TAC ¶105. Plaintiff contends the termination was in retaliation for raising concerns to government agencies and others. *See, e.g.*, TAC ¶141.

In March 2021, Apple emailed Plaintiff and other Apple employees about upcoming vapor intrusion testing at the office. *Id.* ¶49. In the following months, Plaintiff expressed safety concerns about vapor intrusion, both internally and to various government entities, including the EPA. *Id.* ¶¶49, 52. Plaintiff also alleges that, sometime before her termination, she complained: (1) to Apple and to the SEC about an alleged conflict of interest (*id.* ¶¶167, 169; *see also* Request for Judicial Notice ("RJN"), Ex. A); (2) to Apple about allegedly false statements about Apple's practices (*id.*

[2] For purposes of this Motion only and as required under the FRCP, Apple recites Plaintiff's factual allegations as if they were true, even though they are not. Given the procedural posture of this Motion, Apple will not present any additional or contrary facts regarding Plaintiff's employment, her termination, or her claims in this case; at the appropriate time, Apple will present its defense.

[3] Plaintiff omitted certain facts from her SAC in the TAC. But the Court may still consider them here, as a "[p]laintiff may not plead around the deficiencies in [her] claims by omitting previously pled facts." *Bell v. St. Clair*, 2015 WL 1606968, at *3 (E.D. Cal. Apr. 9, 2015).

¶167); and (3) to Apple and to various government entities about an alleged sanctions violation (*id.* ¶¶84, 167-69) and alleged misconduct related to COVID-19 vaccines (*id.* ¶¶84, 168-69).

Plaintiff also contends that Apple, through a network she refers to as "Worldwide Loyalty," is "engaged in systemic criminal conduct in pursuit of enabling Apple's race to the bottom on regulatory compliance" and other matters. *Id.* ¶123. Plaintiff claims Apple's scheme is to develop "a knowingly false reputation of strong regulatory compliance" to increase its profits. *Id*. Plaintiff argues Apple retaliates against and intimidates whistleblowers (including Plaintiff) to cover up its purportedly unlawful activities. *Id.*

Plaintiff further claims that in 2015 Apple began operating a manufacturing facility that allegedly vented gases near an apartment complex where Plaintiff lived in 2020. *Id.* ¶¶22, 25. She contends that shortly after she moved into the apartment complex she fell ill and went on short-term disability. *Id.* ¶¶25-26. She believes her illness was due to gases from the manufacturing facility *and* the Apple office in which she worked, which was located in a building on a Superfund site that Apple leased from a third party. *See id.* ¶¶184, 186; SAC ¶¶38, 1186.

## III. ARGUMENT

### A. The TAC Should Be Dismissed In Its Entirety Because it Violates FRCP 8(a).

"Rule 8(a) provides that '[a] pleading that states a claim for relief must contain: … (2) a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. 8(a)(2). Rule 8(d) provides that '[e]ach allegation must be simple, concise, and direct.' Fed. R. Civ. P. 8(d)(1)." *See* Dkt. 46 at 2. A complaint must "'be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search' of the nature of the plaintiff's claim." *Id.* (citing *Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012)). The TAC, while it complies with the Court's limit of 75 pages, is still difficult to follow, duplicative, and drafted so as to require Apple (and the Court) sift through all those pages in an effort to understand the nature of and alleged support for Plaintiff's claims.[4] Apple has done its best in drafting this

[4] For example, the crux of Plaintiff's Section 1102.5 claim involves her use of an application called Gobbler. The Section 1102.5 claim section includes only a vague sentence about the Gobbler app (TAC ¶209), which itself is insufficient to support a Section 1102.5 claim. Apple was required to search the Complaint for factual background about Gobbler, which was found in the wrongful termination (¶¶241-42) and UCL (¶¶255-57) sections. And, as the Court aptly noted in its Order

motion to piece together what it ***believes*** Plaintiff's claims to be—but this does not cure the pleading defects, given FRCP 8(d)'s mandate that each allegation be "simple, concise, and direct."

**B. Plaintiff's RICO Claim Should Be Dismissed Under Each Provision She Cites.**

Plaintiff lacks standing to bring a 18 U.S.C. § 1962(a) claim because she fails to allege Apple used or invested money it received from supposed racketeering to injure her. This claim fails because she does not (and cannot) allege an enterprise distinct from Apple or a pattern of racketeering activity, and certainly not with the required particularity. And her section 1962(d) claim, premised on a conspiracy to violate section 1962(c), fails with her section 1962(c) claim.

**1. Plaintiff's Section 1962(a) Claim Fails For Lack of Injury.**

Section 1962(a) prohibits any person who has received income from racketeering "to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To establish standing to sue under Section 1962(a), a plaintiff must allege that funds derived from the alleged racketeering activity were used to injure her. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).

Here, Plaintiff alleges that Apple "intentionally evad[ed] paying required fees and costs associated with hazardous waste management and disposal." TAC ¶115. This allegation—that Apple saved money it would have otherwise spent—is insufficient to state a Section 1962(a) claim. *See Basco v. Toyota Motor Corp*, 2010 WL 11462992, at *3 (C.D. Cal. Mar. 3, 2010) ("Any money Defendants saved themselves by allegedly withholding responsive documents in product liability litigation does not constitute injury by use or investment of racketeering income"). And Plaintiff does not allege Apple used or invested any money it received to injure her, as is required by RICO's plain language. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). She contends only that Apple reinvested profits back into the alleged enterprise. *See* TAC ¶¶115 ("Apple gained a financial advantage, increasing its profits, which it invested in its

---

dismissing the SAC (Dkt. 46), Apple was only able to piece Plaintiff's claim(s) together given its prior engagement with her.

enterprise."), 116. This theory of injury is insufficient. *Temming v. Summus Holdings, LLC*, 2021 WL 5014854, at *7 (N.D. Cal. Oct. 28, 2021) (quoting *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008)) ("Reinvestment of proceeds from the alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation" for a Section 1962(a) claim). Her Section 1962(a) claim should be dismissed.

**2. Plaintiff's Section 1962(c) Claim Does Not State a Claim.**

Section 1962(c) makes it unlawful for a person to conduct the affairs of an "enterprise" through a pattern of racketeering. 18 U.S.C. § 1962(c). A Section 1962(c) plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *16 (N.D. Cal. Nov. 30, 2021), *aff'd*, 85 F.4th 948 (9th Cir. 2023). Plaintiff fails to sufficiently allege any enterprise distinct from Apple or a pattern of racketeering activity.

**a. Plaintiff Fails to Allege an Enterprise Distinct from Apple.**

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an associated-in-fact enterprise, a plaintiff must allege (1) "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) "evidence of an ongoing organization, formal or informal," and (3) "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). Under FRCP 9(b), where the plaintiff alleges the common purpose is to deceive, the plaintiff must plead with particularity facts to support this theory. *See, e.g., RJ v. Cigna Behav. Health, Inc.*, 2021 WL 1110261, at *7 (N.D. Cal. Mar. 23, 2021).

A party cannot be both the defendant and the enterprise. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158 (2001) ("[U]nder § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986) ("the 'person' must be a separate and distinct entity from the 'enterprise'"); *Nationstar Mortg. LLC v. Presley*, 2023 WL 121746, at *4 (E.D. Cal. Jan. 6, 2023); *Greenstein v.*

*Peters*, 2009 WL 722067, at *2 (C.D. Cal. Mar. 16, 2009).

*Coronavirus Reporter v. Apple Inc.* is particularly instructive. 2021 WL 5936910, at *17. There, the plaintiff alleged that Apple, unnamed "individuals within Apple," and outside consultants, including "PR firms, law firms, and rival developer cronies," formed a RICO enterprise. *Id.* This Court found the allegations made "clear that the alleged enterprise *is* Apple itself" and concluded the claim "fail[ed] for lack of distinctiveness." *Id.* Further, this Court rejected, at the pleading stage, the plaintiff's theory that the enterprise included Apple's "'crony app developers,' 'law firms,' and 'PR firms' who allegedly 'divert profits,' 'spread Apple's gospel,' or obfuscate 'Apple's anticompetitive agenda,'" reasoning that none of these groups was "alleged to have participated in an alleged enterprise involving the predicate acts" at issue. *Id*. at 18. This Court also held these allegations were "conclusory" and insufficient for that reason. *Id*. The Ninth Circuit affirmed on both grounds. *See* 85 F.4th at 958.

Plaintiff's RICO claim regarding the alleged "Worldwide Loyalty" enterprise fails for the same reasons. As in *Coronavirus Reporter*, Plaintiff contends that the alleged enterprise is an associated-in-fact enterprise comprised of Apple and a string of entities. TAC ¶120 ("The Association-In-Fact Enterprise includes Apple, the corporation, and employees, along with external lawyers (e.g., Jessica Perry, David Eberhardt, etc.), law firms (e.g., Orrick, Morgan Lewis, OMM, MWE, etc.), [and others]"). Despite this laundry list of purported enterprise members, Plaintiff alleges conduct by only Apple and/or its employees with respect to all but two of the purported predicate acts. *See* TAC ¶¶128-65. And, where Plaintiff alleges conduct by non-Apple entities, she fails to state a RICO violation. *See id.* ¶¶128-39.[5] Plaintiff's "Worldwide Loyalty" enterprise allegation thus is no better than the *Coronavirus Reporter* allegation. 2021 WL 5936910, at *18.

[5] Plaintiff alleges an Apple employee "pa[id] bribes to public officials in exchange for concealed carry handgun permits." TAC ¶128. This purported act has no relation to the alleged scheme (*see id.* ¶123), so Plaintiff cannot point to this purported act to establish a pattern of racketeering activity. *See Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020); *see also infra* III.B.2.b. Plaintiff's vague and conclusory allegation that "the [employee's] teams threatened and obstructed her" (TAC ¶129) is inadequate to tether this purported act to the alleged scheme. Plaintiff further alleges that ex-Apple employee "Joanna Appleseed" committed acts of tampering (*see id.* ¶¶137, 139), but Plaintiff offers no facts to suggest that Apple "conduct[ed]" or "participate[d]" in the alleged tampering, as is required under Section 1962(c). *See Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (defendant not liable under Section 1962(c) where plaintiff failed to show that defendant had "some part in directing [the enterprise's] affairs").

Plaintiff also fails to allege "a common purpose." *Odom*, 486 F.3d at 552. While she alleges that **<u>Apple</u>** intends to (1) "increase profits … through a knowingly false reputation of strong regulatory compliance" and (2) "bridge the gap between its actual practices and what it reports" through retaliation and intimidation (TAC ¶123), she does not allege that any **<u>non-Apple entity</u>** shared this alleged intent. And she does not plead with particularity—as required under FRCP 9(b)—what role Apple or any other entity played in concocting the alleged scheme or ensuring its success. *See Focus 15, LLC v. NICO Corp.*, 2022 WL 2355537, at *3 (N.D. Cal. June 30, 2022); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5-7 (S.D. Cal. May 22, 2009). Absent an adequately alleged common purpose, there is no enterprise.

**b. <u>Plaintiff Pleads No Facts Showing the Alleged Predicate Acts Are Related or Pose a Continuous Threat.</u>**

To allege a "pattern of racketeering activity," Plaintiff must identify "at least two acts of racketeering activity" within a ten-year span. 18 U.S.C. § 1961(5). Plaintiff must also allege "(1) that the racketeering predicates are related ['relatedness requirement'] and (2) 'that they amount to or pose a threat of continued criminal activity ['continuity requirement']." *Metaxas*, 503 F. Supp. 3d at 941. Relatedness is satisfied when predicate acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Continuity is satisfied when "closed-ended" or "open-ended" continuity is alleged; the former involves "a series of related predicates extending over a substantial period of time," while the latter involves "past conduct that by its nature projects into the future with a threat of repetition." *Id.* "[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity." *Id.*

Here, the relatedness requirement is not met. Plaintiff's termination in 2021 and the purported tampering that allegedly followed are wholly unrelated to the other purported RICO predicate acts she first raised in the original complaint in this action 2023. *H.J.*, 492 U.S. at 240.

The continuity requirement has also not been satisfied. With respect to closed-ended continuity, "activity spanning only a matter of months, involving a single victim, with a singular

goal, cannot sustain a RICO claim." *Mocha Mill, Inc. v. Port of Mokha, Inc.*, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019) (citing *Medallion Television Enters., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987)). Plaintiff alleges that Apple's scheme is so "dependent on continued intimidation of witnesses to keep witnesses quiet … that it is impracticable that Apple would ever voluntarily stop[.]" TAC ¶127. However, she does not identify any other "witness" Apple allegedly intimidated. In the SAC, Plaintiff had alleged that she "organized with coworkers about gathering at least photographic evidence of the cracked [ ] floor" (SAC ¶1098; *see id.* ¶¶377-78, 385), but she has never alleged Apple silenced those coworkers. Plaintiff thus fails to allege closed-ended continuity. *See Medallion Television Enters., Inc.*, 833 F.2d at 1363.

As for open-ended continuity, Plaintiff fails to plausibly allege a threat of continuing racketeering activity. Accepting the allegations as true for purposes of this Motion, Apple's alleged scheme—"to increase profits … through a knowingly false reputation" (TAC ¶123)—presents no risk of future misconduct because it became moot once Plaintiff reported Apple's alleged misconduct to various government agencies and in the media. *McGowan v. Weinstein*, 562 F. Supp. 3d 744, 754 (C.D. Cal. 2020) (no open-ended continuity because defendants' goal of keeping misconduct secret could not be pursued anew once plaintiff published a book detailing misconduct).

#### 3. <u>Plaintiff's Derivative Section 1962(d) Claim Fails.</u>

Section 1962(d) prohibits a person from conspiring to violate Section 1962(c). The failure to plead the requisite elements of Section 1962(c) implicitly means that a plaintiff has not pled a conspiracy to violate Section 1962(d). *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Because Plaintiff's section 1962(c) claim fails, her section 1962(d) claim does as well.

### C. <u>Plaintiff's SOX Claim Fails Because She Does Not Allege that She Complained About Conduct that She Could Have Reasonably Believed Violated SOX.</u>

To engage in protected activity under SOX, Plaintiff must provide information regarding "conduct which [she] reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders[.]" 18 U.S.C. § 1514A(a)(1). To "reasonably believe," Plaintiff "must have a

'subjective belief' that the challenged conduct violates a law listed in 18 U.S.C. § 1514A(a)(1), and this belief must be 'objectively reasonable.'" *Erhart v. Bofi Holding, Inc.*, 2016 WL 5369470, at *8 (S.D. Cal. Sept. 26, 2016) (dismissing SOX whistleblower claim on FRCP 12(b)(6) motion because plaintiff failed to plausibly allege objectively reasonable belief). Plaintiff's SOX claim should be dismissed because she fails to allege facts that, even if true, demonstrate she complained about conduct that she reasonably believed violated an enumerated SOX provision.

Plaintiff's various alleged complaints **to Apple** appear to fall into five buckets:

- *Conflicts of interest* ("Gjovik complained to Apple about conflicts of interest related to a board member [Ronald Sugar] and decision about her office, apparent self-dealing by corporate insiders including an interested party transaction … Apple's internal controls … [the oversight of] complaints … by an officer Gjovik was complaining about …" [TAC ¶167; *see id.* ¶98-99, 168, 170-171]);
- *False public statements* ("Gjovik complained to Apple about … Apple's false public statements about Apple's environmental and labor practices … false statements to government and shareholders; material fraudulent conduct …" [*id.* ¶167]);
- "*Smuggling and violations of sanctions*" (*id.*);
- *"Skipping the line" for COVID-19 vaccines* ("Gjovik complained [to Apple] about … the vaccine skipping the line issues …" [*id.*; *see id.* ¶84]);
- *Retaliation and intimidation* ("Gjovik complained to Apple about … retaliating against whistleblowers … witness intimidation … obstruction of justice" [*id.* ¶167]).

Plaintiff further alleges that she complained **to various government agencies**, including the SEC. *Id.* ¶169. In her SEC "tip," she complained about an alleged "conflict of interest" involving Ronald Sugar. RJN, Ex. A at 3-4. She also alleges that she complained to the FBI about "possible sanctions violations and smuggling." TAC ¶84. She further alleges that she complained to the FDA Office of Criminal Investigations and the DOJ National Center for Disaster Fraud about "Apple's apparent attempt to 'skip the line' on COVID-19 vaccines and hoard the vaccines." *Id.* None of these alleged complaints can form the basis of a SOX whistleblower retaliation claim, however; once again, though Plaintiff may argue Apple could and should have conducted itself

differently, none of these complaints are actionable under SOX as a matter of law.

**1. <u>Complaints About Alleged "Conflicts of Interest"</u>**

Plaintiff's complaints about Mr. Sugar reveal she was concerned about workplace safety issues, not fraud against shareholders. *See* SAC ¶808 (complaint to Apple about Mr. Sugar and "due diligence programs for offices on chemical clean-up sites"); RJN, Ex. A at 7 (complaint to SEC about Mr. Sugar and "the clean up of the toxic chemicals under the building"). Where, as here, a SOX claim rests on a complaint rooted in workplace safety rather than securities concerns, it should be dismissed. *See Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 661-62 (C.D. Ill. 2023) (dismissing SOX whistleblower claim where "Plaintiff's words, actions, and the animating beliefs he alleges overwhelmingly demonstrate that a concern for nuclear safety, not fraud" motivated his complaint); *Gauthier v. Shaw Grp., Inc.*, 2012 WL 6043012, at *6 (W.D.N.C. Dec. 4, 2012) (same).

Nor is it objectively reasonable that the alleged conflict of interest involving Mr. Sugar amounted to a violation of any SOX-enumerated provision. *See In the Matter of Douglas Denneny, v. MBDA, Inc.*, ARB Case No. 2018-0027, 2021 WL 423979 (Jan. 8, 2021), at *7-8 (rejecting SOX whistleblower claim based on concern that individual's simultaneous membership on two boards might hypothetically influence one board's decision-making and, in turn, potentially adversely affect the financial condition of a publicly traded company); *Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 793-94 (7th Cir. 2018) (practices about which plaintiff complained, including conflicts of interest, not "fraud" within meaning of SOX); *Diaz v. Transatlantic Reinsurance Co.*, 2016 WL 3568071, at *5 (S.D.N.Y. June 22, 2016) (dismissing SOX whistleblower claim because "purported non-compliance with the company's internal conflict of interest policy" not reasonably construed as securities fraud).

**2. <u>Complaints About Allegedly "False Public Statements"</u>**

Plaintiff does not identify any "false public statement" that she actually complained about to Apple. "[W]ithout knowing what particular conduct [Plaintiff] asserts [she] believed constituted a violation of any of the categories of laws enumerated in Section 1514[A](a)(1), the Court cannot meaningfully analyze whether [she] plausibly alleges a belief that is objectively reasonable." *Erhart*, 2016 WL 5369470, at *11 (dismissing SOX claim).

Granting Plaintiff leave to amend to identify such statements would be futile, as Plaintiff already attempted—and failed—to do so in the SAC. There, she alleged she complained to an Apple senior director about "an article from 2016" stating that Apple's health and safety standards "go well beyond legal requirements." SAC ¶786. Plaintiff did not allege, however, that she told the senior director that the 2016 representation was misleading or false *at the time it was made*. Plaintiff also pointed to an April 2021 press release (*id.* ¶¶787-88), but she did not allege that she actually complained to anyone about the press release before her termination. In any event, Plaintiff could not have reasonably believed the press release—comprised of aspirational statements such as "Apple's focus remains on supporting those communities most impacted by climate change and environmental challenges" (*id.* ¶787)—could violate any SOX-enumerated provision. *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 626 (S.D. Tex. 2018) ("aspirational statement" regarding "commitment to safe and environmentally responsible operations" not actionable under the securities laws); *accord City of Pontiac Gen. Employees' Ret. Sys. v. Bush*, 2022 WL 1467773, at *4 (N.D. Cal. Mar. 1, 2022) ("aspirational assertions" non-actionable).

### 3. **Complaints About "Smuggling" and "Skipping the Line"**

Plaintiff's alleged complaints about "smuggling and violations of sanctions" and "skipping the line" and hoarding vaccines (TAC ¶¶84, 167-68) cannot ground a SOX claim because Plaintiff could not have reasonably believed that the complained-of conduct violated any SOX-enumerated provision. SOX "does not protect an employee from harassment for reporting any believed violation of law." *Erhart*, 2016 WL 5369470, at *10. SOX "protects employees who 'provide information … regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.'" *Id.* (quoting 18 U.S.C. § 1514A(a)(1)). The complained-of conduct is not tethered to any of these six provisions, and thus cannot ground a SOX claim.

### 4. **Complaints About Retaliation and Intimidation**

Plaintiff's alleged complaints to Apple about alleged "silencing and retaliating against whistleblowers" and "witness intimidation and obstruction of justice" (TAC ¶167) also do not

amount to protected activity under SOX. *Erhart*, 2016 WL 5369470, at *10. Moreover, as explained in Sections III.B.1-3 *supra*, Plaintiff never made a SOX-protected complaint in the first instance, and therefore, there could be no SOX-prohibited retaliation or intimidation to complain about.

**D. Plaintiff's Dodd-Frank Claim Fails For Lack of Protected Activity Under SOX.**

"To sue under Dodd-Frank's anti-retaliation provision, a person must first 'provid[e] ... information relating to a violation of the securities laws to the [SEC].'" *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 153 (2018) (citing 15 U.S.C. § 78u-6(a)(6)). As discussed above, Plaintiff's "tip" to the SEC complaining of a purported "conflict of interest" involving Mr. Sugar does not constitute protected activity under SOX. TAC ¶169; RJN, Ex. A at 3-4. Consequently, Plaintiff cannot rely on that complaint to claim Dodd-Frank protection. *See Erhart v. Bofi Holding, Inc.*, 612 F. Supp. 3d 1062, 1107 (S.D. Cal. 2020) (concluding that because "[plaintiff's] reporting of alleged wrongdoing does not meet the protected activity standard for Sarbanes-Oxley, his Dodd-Frank claim similarly fails to the same extent"); *Wagner v. S. California Edison Co.*, 840 F. App'x 993, 994 n.2 (9th Cir. 2021) (affirming judgment on Dodd-Frank claim "dependent" on SOX claim).

**E. Plaintiff's Nuisance Claim Should Be Dismissed in Large Part.**

Plaintiff alleges a claim for nuisance predicated on both the alleged activities at a Superfund site leased by Apple (825 Stewart, where her office was located) and a manufacturing facility operated by Apple (located at 3250 Scott Blvd, which Plaintiff alleges was 0.2 miles from her apartment). The nuisance claim predicated on the Superfund site should be dismissed because Plaintiff, as an employee, does not have standing to sue for damages tied to the workplace premises that her employer rented. *See Barrous v. BP P.L.C.*, 2011 WL 4595205, at *6 (N.D. Cal. Oct. 3, 2011) (dismissing nuisance claim because employee of restaurant had no "no ownership, possessory or any other interest" in property). As to the nuisance *per se* claim relating to the manufacturing facility and Superfund Site, that claim fails because an activity only constitutes a nuisance *per se* if it is "expressly declared to be a nuisance by its very existence by some applicable law."[6] *Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1055 (C.D. Cal.

[6] In this Motion, Apple is not seeking to dismiss Plaintiff's claim for private nuisance related to the manufacturing facility.

2017). Plaintiff has not identified any law declaring it a nuisance to operate a manufacturing facility or lease an office on a Superfund site.

### F. Plaintiff's Strict Liability Claim Should Be Dismissed as Time-Barred And Because She Does Not Allege Any Ultrahazardous Activities Under the Law.

Plaintiff's claim that certain conduct by Apple is "ultrahazardous" (such that Apple is strictly liable for any damages caused by it) fails for multiple reasons. ***First***, Plaintiff's "ultrahazardous activity" claim as it relates to the Superfund site is barred by the two-year limitations period. Cal. Civ. Proc. Code §§ 335.1, 340.8. A plaintiff must bring a claim within the applicable statute of limitations period after the cause of action "accrues," which happens when the wrongful act is done or the wrongful result occurs and the consequent liability arises. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005). Here, Plaintiff filed her lawsuit on September 7, 2023, and thus any claim that accrued ***before September 7, 2021*** is time-barred. The TAC alleges that, long before September 7, 2021, Plaintiff both (1) had actual knowledge of the alleged contamination from the Superfund site, and (2) suffered the injuries complained of. *See* TAC ¶51 (in March 2021, Plaintiff notified Apple "the site was not safe … [and] she now believed her fainting spell in 2019 was due to vapor intrusion").[7]

***Second***, Plaintiff fails to allege facts that would support a finding that leasing office space on a Superfund site or operating a manufacturing facility are ultrahazardous activities. TAC ¶¶184-86.[8] A six-part test is used to determine whether a particular activity is ultrahazardous and thus subject to strict liability: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to

[7] *See also* TAC ¶35 (on April 29, 2021, Plaintiff "notes an unexplained episode of fainting at work in Sept 2019 at her office on a Superfund site with a long history of vapor intrusion issues"), ¶52 (complaints on April 2, May 17, and July 7, 2021 about vapor intrusion and prior testing methods); SAC ¶321.

[8] While Plaintiff now generally alleges the ultrahazardous activities at both the Superfund site and the manufacturing facility "damaged Gjovik's chattel property (discoloring, weakening, dissolving glues, causing reactions) [and] degraded her extremely expensive leasehold conditions" (TAC ¶183), the SAC attributed that alleged damage to the manufacturing facility only. *See* SAC ¶¶694-99 (damage to jeans allegedly from manufacturing facility at 3250 Scott Blvd), ¶1145 (alleged discoloring to property from 3250 Scott Blvd). Plaintiff may not plead around these facts by omitting them from the TAC. *See Bell*, 2015 WL 1606968, at *3. Thus, the two-year limitations period governing personal injury applies.

eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. *See Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1009-10 (S.D. Cal. 2015). Neither leasing a Superfund site nor operating a manufacturing facility is "ultrahazardous" under California law.

Superfund sites are governed by federal law, and compliance with that law determines what is and is not actionable. The existence of regulations and statutes governing a particular activity generally mean that an activity should not be subject to strict liability. *See Schwartzman, Inc. v. General Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993) (dismissing strict liability claim and recognizing that "the premise of many environmental laws [ ] is that proper handling and disposal of [hazardous materials] minimizes or eliminates the risk of their use"); *Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 365 (E.D.N.Y. 2010) (dismissing strict liability claim relating to exposure to wireless telephone equipment because the Federal Telecommunications Act governs the activity). Here, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." *State of Cal. on Behalf of State Dep't of Toxic Substances Control v. Verticare, Inc.*, 1993 WL 245544, at *2 (N.D. Cal. Mar. 1, 1993) (citing *3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir.1990)). "To effectuate these goals, Congress created the Superfund, which empowers the federal government to respond to hazardous waste disposal." *Id.* Thus, Congress has chosen to regulate Superfund sites (rather than outlaw their use entirely) because they can be operated safely. *See* CERCLA, 42 U.S.C. §§ 9601 *et seq.*

Nor is operating a manufacturing facility by itself ultrahazardous. Plaintiff's allegations about use of chemicals and resulting contamination are insufficient to show ultrahazardous activity. *Greenfield MHP Assocs., L.P.*, 145 F. Supp. 3d at 1010 ("the act of using solvents … in an industrial site is not an ultrahazardous activity, because the risks associated with the use, storage, and/or disposal of such industrial solvents can be avoided through the exercise of reasonable car[e]"); *In re Burbank Env't Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998) (dismissing strict liability claims

because "risks associated with the use, storage and/or disposal of industrial solvents such as TCE and PCE can be avoided through the exercise of reasonable care," even "near a highly populated area") (collecting cases); *Goe Eng'g Co. v. Physicians Formula Cosms., Inc.*, 1997 WL 889278, at *21 (C.D. Cal. June 4, 1997) ("Since the Court believes that the exercise of due care could eliminate the hazards of PCE contamination, the Court concludes that Goe's use of PCE does not constitute an ultra-hazardous activity"); *Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980, 987 (1991) (as a matter of law, the use of sulfuric acid is not ultra-hazardous activity because it "can be eliminated through the exercise of reasonable care"). Like Plaintiff's claim, each of these cases involved the release of chemicals that allegedly made people sick.

***Third***, Plaintiff cannot establish that the risks of activities she complains of cannot be eliminated "by the exercise of reasonable care." *Greenfield MHP Assocs., L.P.*, 145 F. Supp. 3d at 1009-10. While Plaintiff includes boilerplate statements that the risks she alleges cannot be eliminated by the exercise of reasonable care, the facts she pleads in support show otherwise. Indeed, the thrust of Plaintiff's claim is that Apple ***negligently or improperly*** managed any pollution or "vapor intrusion." *See* TAC ¶¶51 ("Gjovik advised that Apple had been negligent, the site [825 Stewart] was not safe" due to vapor intrusion), 117 (alleging Apple intentionally violated environmental laws by illegally removing waste), 179 (alleging Apple released chemicals from 3250 Scott Blvd because the "exhaust vents were installed and maintained negligently, recklessly, and unskillfully"). But that contradicts any suggestion that either leasing an office on a Superfund site or operating a manufacturing facility is ***inherently*** dangerous. Indeed, Plaintiff claims that any dangers could be mitigated through what she believes would have been reasonable safety protocols. *See* TAC ¶¶67 (alleging EPA inspected 825 Stewart Drive "to conduct a visual inspection of the building's vapor intrusion mitigation measures"), 147 & 179 (alleging Apple released chemicals from 3250 Scott Blvd into the air without proper abatement because the "exhaust vents were installed and maintained negligently").[9] Because Plaintiff admits that the dangers she alleges could

[9] Although Plaintiff removed from the TAC many of her allegations that Apple's alleged conduct at both 825 Stewart Drive and 3250 Scott Blvd could be mitigated, the Court can still consider Plaintiff's SAC allegations as judicial admissions. *See* SAC ¶¶244 (alleging the "vapor intrusion testing [at 825 Stewart Drive] … were in range"), 295 (EPA can designate Superfund sites as having "Human Exposure" "Under Control"), 300 (acknowledging cracks allowing alleged vapor intrusion

be mitigated through reasonable care, the conduct cannot be "inherently" dangerous, and Plaintiff cannot allege an ultra-hazardous activity. *See Edwards*, 228 Cal. App. 3d at 987 (holding industrial activity is ultra-hazardous *only if* "the danger cannot be eliminated through the use of care"); *Greenfield MHP Assocs., L.P.*, 145 F. Supp. 3d at 1009-10 (same); *In re Burbank Env't Litig.*, 42 F. Supp. 2d at 983 (same). Courts routinely dismiss strict liability claims where, as here, Plaintiff fails to allege the claimed risk cannot be mitigated.

**G. <u>Plaintiff's Bane Act Claim Fails Because She Does Not Allege that Apple Interfered with Any Right by Threat, Intimidation, or Coercion.</u>**

Plaintiff must make two showings to state a Bane Act claim under California Civil Code section 52.1: (1) Apple interfered with her constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion. *See Cortez v. City of Oakland*, 2017 WL 1650568, at *6 (N.D. Cal. May 2, 2017). "Speech alone is not sufficient" unless "the speech itself threatens violence against a specific person[.]" Cal. Civ. Code § 52.1(k).

Plaintiff alleges that "Apple" threatened, intimidated, and coerced her, but she does not identify any Apple employee(s) who engaged in the alleged conduct. *See* TAC ¶¶107-08, 110, 188-89. This is plainly insufficient. *See King v. S.F. Police Dep't*, 2018 WL 7202482, at *2 (N.D. Cal. Dec. 17, 2018), *report and recomm'n adopted*, 2019 WL 450686 (N.D. Cal. Feb. 5, 2019) (dismissing complaint because it failed to "provide adequate notice" where it did not "identify the [Defendant] employees involved"); *Davenport v. Sacramento Cnty. Child Protective Servs.*, 2016 WL 3362005, at *2 (E.D. Cal. June 17, 2016) (dismissing complaint because plaintiff did not "identify what employee or employees … participated in the assault that injured him, when they did so, and other surrounding circumstances").

Plaintiff alleges that "Apple" interfered with various rights by threats, intimidation, and coercion, but none of her allegations state a claim for a host of reasons. ***First***, Plaintiff alleges Apple

---

can be "fixed" or "sealed"), 433 (acknowledging various mitigation systems exist, including sub-slab depressurization systems, groundwater bioremediation systems, sealing concrete slabs and past cracks, excavating contaminated soil, and sealing spaces between walls), 272-73 (acknowledging vapor intrusion at 3250 Scott Blvd could be mitigated with "sub-slab depressurization"), 986 (alleging hazardous waste from 3250 Scott Blvd could be mitigated by removing to offsite waste processing locations), 1136 (alleging Apple released chemicals from 3250 Scott Blvd "without proper abatement" and "without even changing their charcoal filters").

interfered with her right to testify by terminating her employment. TAC ¶192. "But terminating Plaintiff's employment [is] not violence" and thus cannot support a Bane Act claim. *Snyder v. Alight Solutions, LLC*, 2021 WL 4622392, at *2 (C.D. Cal. May 5, 2021); *see also Borrello v. Respironics Cal., LLC*, 2023 WL 5986135, at *8 (S.D. Cal. Sept. 14, 2023); *Schaldach v. Dignity Health*, 2013 WL 2292054, at *9 (E.D. Cal. May 23, 2013). She also alleges Apple interfered with her right to testify by suing her. But Apple has never sued Plaintiff, as Plaintiff made clear in the SAC where she alleged "Joanna Appleseed" sued Plaintiff in 2022 (*see* SAC ¶¶861, 879, 1451), but only *after* Ms. Appleseed no longer worked at Apple (*id.* ¶622).

***Second***, Plaintiff alleges Apple interfered with her right to meet with legislatures and appear as a legislative witness (TAC ¶193), her right to report criminal acts to law enforcement (*id.* ¶194), and her right to privacy (*id.* ¶195). But she does not identify any specific threats, intimidation, or coercion that interfered with those rights. *See Cortez*, 2017 WL 1650568, at *6 (plaintiff must allege that "interference was accompanied by actual or attempted threats, intimidation, or coercion").

***Third***, Plaintiff alleges Apple interfered with her right to protest invasions of privacy by terminating her employment and by engaging a law firm to send her a "harassing letter." TAC ¶193. As discussed above, termination of employment cannot support a Bane Act claim. *Snyder*, 2021 WL 4622392, at *2. Moreover, the letter from the law firm is mere speech, which does not support a Bane Act claim unless "the speech itself threatens violence against a specific person[.]" Cal. Civ. Code § 52.1(k); *see Richter v. Ausmus*, 2021 WL 580055, at *10 (N.D. Cal. Feb. 16, 2021); *Meyers v. City of Fresno*, 2011 WL 902115, at *3 (E.D. Cal. Mar. 15, 2011) (Bane Act claim fails where predicate letter was merely intended to force plaintiffs to abandon their lawsuit). Plaintiff identifies no threat of violence in the letter, nor could she given the text of the letter [*see* SAC ¶545]).

***Fourth***, Plaintiff alleges Apple interfered with her right to free speech and assembly through "retaliatory reports to law enforcement" as well as "retaliatory litigation" that resulted in a "gag order … prohibiting [Plaintiff] from … sharing public records and her legal filings [and] complaining …" TAC ¶196. As the allegations in the SAC made clear, Apple has done none of these things. Plaintiff previously pled that in 2022 "Joanna Appleseed"—while no longer employed at Apple (SAC ¶622)—filed an FBI report about Plaintiff (*id.* ¶¶590-91) and "retaliatory litigation"

against Plaintiff (*see id.* ¶¶879, 1451; *see also id.* ¶635 [“Appleseed’s gag order”]). Even if such conduct were to violate the Bane Act, Apple would not be liable as a matter of law.

Plaintiff alleges other vague and conclusory examples of purported threats, coercion, and intimidation (*see* TAC ¶¶107-10, 188-89) but fails to tie them to any purportedly interfered-with right; as such, they cannot ground a Bane Act claim. *See Libman v. United States*, 2022 WL 18284664, at *18 (C.D. Cal. Dec. 1, 2022) (dismissing Ralph Act claim where plaintiff did not “indicate what legal right [defendant] sought to interfere with”); *Yates v. E. Side Union High Sch. Dist.*, 2021 WL 3665861, at *7 (N.D. Cal. Aug. 18, 2021) (potentially threatening remark had no relation to exercise of rights by plaintiff).

### H. Plaintiff’s Ralph Act Claim Fails Because She Alleges No Facts Suggesting Any Threat of Violence by Apple, or that Any Alleged Conduct Was Based on Political Affiliation or Any Protected Characteristic.

To state a Ralph Act claim, Plaintiff must—but does not—allege: (1) Apple committed or threatened a violent act against her; (2) Apple was motivated by a perceived protected characteristic of Plaintiff; (3) she was harmed; and (4) Apple’s conduct was a substantial factor in causing her harm. *See Ramirez v. City of San Jose*, 2022 WL 875643, at *9 (N.D. Cal. Mar. 24, 2022).

Plaintiff contends Apple threatened and committed violence against her because of her position in a labor dispute. TAC ¶199. Her allegation that Apple “made numerous statements” and “directly complain[ed]” about Plaintiff’s complaints do not state a claim. *See Hernandez v. City of San Jose*, 2016 WL 5944095, at *12 (N.D. Cal. Oct. 13, 2016) (“stern warnings” did not give rise to Ralph Act claim). Further, her allegation that Apple “threatened to seek criminal prosecution of [Plaintiff] for an alleged crime” (TAC ¶199) appears to refer to conduct Plaintiff previously credited to Ms. Appleseed. *See* SAC ¶¶879, 1451; *see also* Section III.G, *supra*. In any event, this allegation is “a formulaic recitation” of Section 51.7(a)(2) and “devoid of ‘further factual enhancement,’” and as such does not suffice to stave off dismissal. *Iqbal*, 556 U.S. 662 at 678 (citations omitted).

Plaintiff further makes conclusory allegations that Apple threatened and committed violence against her because of other various characteristics. TAC ¶¶200-03. This claim fails because she does not provide any facts regarding what Apple supposedly did or said to threaten violence or commit violence against her. *See Moreno v. Cnty. of Los Angeles*, 2022 WL 1515684,

at *4 (C.D. Cal. Feb. 28, 2022) ("conclusory statement that [defendants] 'were engaging in acts of violence because of [decedent's] race and national origin'" was "insufficient").

### I. <u>Plaintiff's Section 1102.5 Fails Because She Does Not Allege Protected Activity.</u>

Labor Code section 1102.5 is California's general whistleblower statute and prohibits employers from retaliating against employees for engaging in "protected activity"—*i.e.*, for reporting conduct the employee reasonably believes violates a "state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation," or for refusing to engage in an activity that would result in such a violation. Cal. Lab. Code § 1102.5(b) & (c). Courts have held that a plaintiff bringing a Section 1102.5(b) or (c) claim must allege both the specific rule, regulation, or statute they reasonably believed has been violated, and the factual basis for their reasonable belief. *See, e.g., James v. PC Matic, Inc.*, 2023 WL 4291668, at *13-14 (C.D. Cal. May 17, 2023); *De Souza v. Dawson Tech., Inc.*, 2022 WL 298368, at *5 (S.D. Cal. Feb. 1, 2022).

Here, Plaintiff alleges she engaged in protected activity under both Section 1102.5(b) and (c)—that she reported conduct she "reasonably believed" violated the law, and that she refused to engage in conduct that would violate the law. Plaintiff alleges that she complained that the "Gobbler" app she installed on her phone "took photos of her while undressed and using the bathroom and engaged in sexual activity." TAC ¶242. Plaintiff's Section 1102.5 claims fail, however, because she does not allege any protected activity within the meaning of the statute.

Regarding Plaintiff's first basis for this claim—that she reported illegal conduct under Section 1102.5(b)—she alleges that she "protest[ed] the Gobbler application" but does not identify to whom she protested.[10] TAC ¶209. However, Section 1102.5(b) only protects employees who make disclosures "to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Since Plaintiff has not specifically identified to whom she complained

---

[10] Plaintiff includes conclusory allegations that Apple violated various other statutes, including OSHA and CERCLA. TAC ¶210. Allegations that Apple violated some unknown section of OSHA or CERCLA are insufficient to state a claim under Section 1102.5 because they do not apprise Apple of "the ground on which the claim rests." *Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*, 2022 WL 80265, at *4 (S.D. Cal. Jan. 7, 2022) (dismissing portion of Section 1102.5 claim premised on the plaintiffs' belief that the "[d]efendant violated some provision of 2 CFR Part 200" as insufficiently pled for lack of fair notice).

and the details of the alleged complaint, her claim fails.

Nor do the laws Plaintiff claims Apple violated—Labor Code sections 435 and 1101-02—apply to the conduct she complains about; as such, Plaintiff could not have had a reasonable belief that these laws were being violated.[11] Labor Code sections 1101-02 provide that employers cannot control or direct an employee's political activities, or threaten to discharge an employee for engaging in political activities. Plaintiff's conclusory allegation that "Face Gobbler violates numerous laws [including] 1101 and 1102" is insufficient because it does not apprise Apple of Plaintiff's claim. Labor Code section 435 provides that "[n]o employer may cause an audio or video recording to be made of an employee in a restroom, locker room, or room designated by an employer for changing clothes." This law was enacted on the heels of other laws prohibiting employers from requiring employees to take polygraphs and lie detectors. *See* 1998 Cal. Legis. Serv. Ch. 515 (A.B. 2303). The intent of Section 435 was to prevent employers from recording employees in facilities without their knowledge. *See Am. Int'l Specialty Lines Ins. Co. v. Hoot Winc, L.L.C.*, 2006 WL 8455348, at *1 (S.D. Cal. Aug. 22, 2006). Here, Plaintiff alleges that the app took a photo of her (TAC ¶242)—but does not allege that Apple used the app to ***record*** Plaintiff in a bathroom, locker room, or other protected location without her knowledge, or that Apple intended the Gobbler application to record her in any such space, or that any recording was in fact made. Plaintiff's allegations do not come within the ambit of Section 435, which requires that an employer record an employee without their knowledge.

Plaintiff's second basis for this claim—that she refused to engage in conduct she "reasonably believed" was illegal under Section 1102.5(c)—is set forth in two conclusory sentences: "Gjovik refused to engage in unlawful acts including participating in Apple's obstruction of justice, violations of environmental law, and Apple's unlawful surveillance and AI data collection" (TAC ¶211) and "Gjovik refused to help Apple in its efforts to conceal and obstruct investigations and reporting of employee complaints" (*id.* ¶212). Plaintiff does not allege what "unlawful acts" she refused to engage in or identify a statute she believes this alleged conduct

[11] Plaintiff also cites the California Constitution, which is irrelevant because Section 1102.5 by its terms applies only to alleged retaliation for reporting violations of statutes, rules, or regulations.

violated; these failures are fatal to her claim. *See James*, 2023 WL 4291668, at *13-14.[12]

**J. <u>Plaintiff's Section 98.6 Claims Fails To The Extent It Attempts to Rely on Section 96(k) Because She Does Not Allege Constitutionally Protected Conduct.</u>**

California Labor Code section 98.6 prohibits retaliation against an employee because the employee engaged in certain delineated conduct protected by California state law, including the conduct described in California Labor Code section 96(k); it is not a "catch-all" retaliation statute, but is implicated only where retaliation allegedly responds to certain enumerated protected acts under California state law or certain constitutional rights. As the text of the statute and caselaw provide, Section 96(k) prohibits demotion, suspension, or discharge from employment for "'lawful conduct occurring during nonworking hours away from the employer's premises' asserting '*recognized constitutional rights*.'" *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 86 (2004) (citations omitted) (emphasis in original). Thus, to state a Section 98.6 claim predicated on an alleged violation of Section 96(k), a plaintiff must allege that she was terminated because she asserted a recognized ***constitutional*** right.

Here, Plaintiff alleges that she "spoke about work conditions and the terms and conditions of her employment" and conclusorily claims that Apple retaliated against her for "asserting 'recognized constitutional rights'" in violation of Section 96(k). TAC ¶¶215-16. But under well-established case law, "a private employee [like Plaintiff] has no recognized ***constitutional*** protection from termination by a private employer [like Apple] based on speech." *Hamilton v. Juul Labs, Inc.*, 2020 WL 5500377, at *3, n.5 (N.D. Cal. Sept. 11, 2020) (emphasis added). Plaintiff's Section 98.6 claim should thus be dismissed to the extent it seeks to invoke Section 96(k). *See Napear v. Bonneville Int'l Corp.*, 2023 WL 3025258, at *10 (E.D. Cal. Apr. 20, 2023) ("free speech" is "insufficient basis to allege the assertion of a recognized constitutional right [under Section 96(k)] where the termination of employment was by a private employer").

**K. <u>Plaintiff's Contract-Based Claims Fail Because She Was An At-Will Employee.</u>**

---

[12] Plaintiff's conclusory attempt to allege a violation of Section 1102.5(a) fails. Section 1102.5(a) provides that "an employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information." Plaintiff simply alleges that "Section 1102.5 also covers Gjovik's public disclosures" but provides no factual support (*see* TAC ¶205), so this claim fails as well.

Plaintiff's breach of contract claim fails because she does not (and cannot) allege a single term that Apple supposedly breached.[13] To state a cause of action for breach of contract, Plaintiff must plead: "(1) the existence of the contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendants' breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Plaintiff's offer letter states that her employment with Apple was at will, and that Apple could terminate her employment "at any time and for any or no reason." RJN, Ex. B. No provisions support Plaintiff's contrary allegations that Apple promised to retain her. TAC ¶¶234-37.

Plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing because it impermissibly duplicates her breach of contract claim. *See* TAC ¶¶234-37; *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated"). The implied covenant of good faith and fair dealing also cannot be read to "prohibit a party from doing that which is expressly permitted by an agreement." *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 347 (1992).

**L. Plaintiff Does Not State a Claim for IIED.**

Plaintiff's IIED claim fails to comply with FRCP 8(a)(2) because it lacks the "most basic underlying factual matter" necessary to give Apple fair notice of the allegedly outrageous conduct at issue. *See Garza v. BNSF R. Co.*, 2012 WL 2118179, at *6 (E.D. Cal. June 11, 2012) (dismissing IIED claim where plaintiff failed to allege what employees made outrageous statements and when); *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1274 (E.D. Cal. 2012) (same).

Plaintiff also alleges conduct that cannot ground an IIED claim. ***First,*** the actions at issue

[13] Plaintiff makes a vague reference to Apple's "policies" and asserts they are implied contracts (TAC ¶234), which does not suffice. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) (under California law, a "complaint for breach of contract must include the contract itself or plead its essential terms"); *JD Factors, LLC v. Reddy Ice Holdings, Inc.*, 2016 WL 6996152, at *2 (C.D. Cal. June 6, 2016) (dismissing claim for failing to attach contract(s) or plead its (their) terms).

here—termination and an investigation into Plaintiff's conduct—constitute normal workplace interactions which, even if improperly motivated, do not constitute extreme or outrageous conduct as a matter of law. TAC ¶¶239, 241-42; *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 80 (1996) (rejecting IIED claim based on alleged personnel management: "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination"); *Lee v. S. of Mkt. Health Ctr.*, 2020 WL 2219032, at *7 (N.D. Cal. May 7, 2020) (dismissing IIED and NIED claims); *see also Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) ("Even if … outrageous, [employment actions are] [] covered by the workers' compensation exclusivity provisions").

***Second,*** Plaintiff alleges that she "was so distressed by … the Face 'Gobbler' app and the ear canal scans" (TAC ¶241) and that Apple "vented deadly substances" on her (TAC ¶243). But Plaintiff previously pled she complained about Gobbler and ear canal scans in August 2021, more than two years before she filed her Complaint in this case. SAC ¶¶461, 629. Moreover, as discussed above in Section III.F, Plaintiff alleges she suffered injury from the "deadly substances" more than two years before she filed the Complaint. *See also* FAC ¶292.[14] The two-year statute of limitations bars any IIED claim on these topics. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011), as amended (Aug. 19, 2011).

***Third,*** as discussed above, Plaintiff previously pled that "Joanna Appleseed"—not Apple—filed "retaliatory litigation" against Plaintiff after Ms. Appleseed was no longer an Apple employee. SAC ¶¶622, 879, 1451. This conduct thus cannot support an IIED claim against Apple.

### M. Plaintiff Does Not State a Claim for NIED.

Plaintiff's NIED claim is premised on an alleged failure to fulfill its duty to consumers to exercise a degree of reasonable care. TAC ¶252. The claim should be dismissed because: (1) NIED claims cannot be predicated on alleged negligent manufacturing of products; and (2) conduct related to employment is preempted by the exclusive remedy of workers' compensation law.

***First***, NIED is only actionable if "the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object." *Potter*, 6 Cal. 4th at 985; *accord Urman v. S.*

[14] Alleging that "as early as February 2020" Plaintiff was "a '*victim of a crime that caused physical injury'* and suffered '*physical, psychological, and financial harm due to the attempted commission of a crime or delinquent act'* from 3250 Scott Boulevard, and possibly 825 Stewart Drive."

*Bos. Sav. Bank*, 424 Mass. 165, 171 (1997); *E.B. v. Liberation Publications, Inc.*, 777 N.Y.S.2d 133, 135 (2004). Plaintiff's claim—premised on her being a consumer, allegedly in California, New York, and Massachusetts—lacks merit because Apple did not owe her, as a mere consumer, any such duty. *See Lugrain v. EKO N. Am., Inc.*, 2022 WL 16888547, at *4 (C.D. Cal. Oct. 21, 2022) (rejecting NIED claim because defendant manufacturer did not owe consumer requisite duty).

***Second***, to the extent Plaintiff's claim is based on damages allegedly suffered in connection with her employment, like other negligence-based torts, claims for NIED are preempted by California's Workers Compensation Act. *See* Lab. Code §§ 3600, 3602; *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 557-58 (9th Cir. 2002) (NIED claim preempted); *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-14 (1994) (employer actions causing injury do not fall outside scope of exclusivity rule merely by attributing to employer a sinister intention).

### N. <u>Plaintiff's UCL Claim Should Be Dismissed Because She Lacks Standing.</u>

To establish standing under the Unfair Competition Law, Plaintiff must allege she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Here, Plaintiff alleges that "Apple exploited [Plaintiff's] image and biometric identifiers for profit." TAC ¶255. But alleging that Apple gained money alone does not establish UCL standing. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 803-804 (N.D. Cal. 2019) ("[T]hat Facebook may have gained money through its sharing or use of the plaintiffs' information … [is] different from saying the plaintiffs lost money."). Plaintiff also alleges that she paid a co-pay to AC Wellness Network LLC. TAC ¶259. However, she does not allege that the defendant in this case (Apple Inc.) received any benefit from the monies she allegedly paid to AC Wellness. *See Omidi v. Wal-Mart Stores, Inc.*, 2020 WL 1332594, at *7 (S.D. Cal. Mar. 23, 2020). Plaintiff thus lacks standing to bring this claim.

## IV. <u>CONCLUSION</u>

Apple respectfully requests that the Court grant its Motion to Dismiss.

Dated: March 26, 2024

By: ______________________

JESSICA R. PERRY
Attorneys for Defendant, Apple Inc.