SVEND BRANDT-ERICHSEN (WA BN 23923)
sbrandterichsen@nossaman.com
*Pro Hac Vice*
JENNIFER J. SEELY (AK BN 2203018)
jseely@nossaman.com
*Pro Hac Vice*
NOSSAMAN LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206.395.7630
Facsimile: 206.257.0780

BRENDAN F. MACAULAY (CA BN 162313)
bmacaulay@nossaman.com
NOSSAMAN LLP
50 CALIFORNIA STREET, 34TH FLOOR
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

*Attorneys for Defendant City of Santa Clara*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ASHLEY M. GJØVIK, AN INDIVIDUAL,

Plaintiff,

vs.

APPLE INC., et al.,

Defendants.

Case No: 5:25-cv-07360-NC

**DEFENDANT CITY OF SANTA CLARA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**Date:** **November 5, 2026**
**Time:** **10:00 am**
**Location:** **Courtroom 8 – 4th Floor**
**280 South 1st Street**
**San Jose, CA**

**Judge:** **Hon. P. Casey Pitts**

## INTRODUCTION

Gjøvik's claims in this action all relate to alleged discharges, releases, and waste management practices at Apple's facility. The City of Santa Clara regulates some of those activities but it does not cause, manage, or direct them. Nothing that Gjøvik has offered in her opposition to the City's Motion to Dismiss changes that reality and she has not countered the clear grounds for dismissing the City from this case.

The federal citizen suit provisions that Gjøvik relies upon provide limited federal jurisdiction over alleged noncompliance with specific statutory requirements. 42 U.S.C. § 7604 (CAA), 42 U.S.C. § 6972 (RCRA), 33 U.S.C. § 1365 (CWA); 42 U.S.C. § 11046 (EPCRA); 15 U.S.C. § 2619 (TSCA). These provisions do not empower this Court to direct the City's exercise of its enforcement discretion as it implements the narrow regulatory role that has been delegated to the City. *Heckler v. Chaney*, 470 U.S. 821, 832–833 (1985); *Sierra Club v. Whitman*, 268 F.3d 898, 905 (9th Cir. 2001).[1] Gjøvik's focus on stormwater and sewer infrastructure also does not save her claims against the City. The City's regulation of Apple's discharges to the storm drains is equally an exercise of enforcement discretion. The City does not manage the regional wastewater treatment plant or its industrial pretreatment program, and its provision of sewer infrastructure that connects to that system does not make it liable for the actions of those who discharge to that system. As Gjøvik has acknowledged, the City neither owns nor operates the Apple facility that is subject to the requirements of federal environmental laws that are the focus of her claims.

Gjøvik also asserts a public nuisance claim related to City parks near the Apple facility. However, the City cannot be held liable for pollution that is allegedly reaching the City's parks

---

[1] Gjøvik attempts to distinguish *Heckler* and its progeny by characterizing the City as a regulated entity that is implementing permits and programs under which it has no discretion, only clear duties that it owes related to "the storm drains, sewers, and parks at issue." ECF 138, ¶ 18–21. The City's implementing role in a web of regulations that protect public health and the environment, with oversight from state and federal agencies, do not put it in the same shoes as a facility owner or operator. For the programs it runs related to hazardous substances and stormwater, the City possesses enforcement discretion that is not subject to review in citizen suits. *E.g. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 50 (1987) (noting that citizen suits are meant to supplement, not supplant, governmental action, and not intrude upon governmental discretion to enforce the law in the public interest).

from the Apple facility. Nor are City zoning and land use decisions made 10-15 years ago relevant to a nuisance claim. ECF 138, at 17. Gjøvik cannot plausibly state a claim that the City has *caused* a public nuisance.

Gjøvik's real fight remains with Apple, not the City. She states no claims against the City upon which relief could be granted, nor could she even if given leave to amend her Complaint yet again. The City should not be forced to waste public funds defending itself from a lawsuit in which it does not belong. The City respectfully asks to be dismissed from this case with prejudice.

## DISCUSSION

### A. Gjøvik's request for judicial notice and declaration related to public records requests are not relevant.

As a threshold matter, the City objects to Gjøvik's request for judicial notice (ECF 140) and her declaration regarding public record requests (ECF 139). Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When matters outside a pleading are presented and not excluded by the court, the 12(b)(6) motion converts to a motion for summary judgment, and both parties must have the opportunity to present pertinent material. *Id.* Incorporation-by-reference and judicial notice are two exceptions to this rule. *Id.*

Under Rule 201(b)(2), a court may judicially notice an "adjudicative" fact that is "not subject to reasonable dispute" because it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Courts do not take judicial notice of irrelevant facts. *United States v. Lumiguid*, 499 F. App'x 689, 691 (9th Cir. 2012); *Boe v. Marshall*, 767 F. Supp. 3d 1208, 1225 (M.D. Ala. 2025) (quoting Wright & Miller that "an irrelevant fact could hardly be an 'adjudicative fact'" within the meaning of Rule 201). Because Rule 201 governs judicial notice of adjudicative facts and not legislative ones, judicial notice is "generally not the appropriate means to establish the legal principles governing the case." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

Gjøvik requests judicial notice of five regional water board orders, four City code or ordinance provisions, six agency records related to stormwater, hazardous materials, and property

parcels, and six guidance documents by governmental and nongovernmental entities, including an administrative complaint. These documents do not meet the standard for Rule 201(b)(2) because they are not relevant. *Lumiguid*, 499 F. App'x at 691; *Boe v. Marshall*, 767 F. Supp.3d at 1225. While the contents of the City's ordinances may be readily confirmed, judicial notice is not appropriate for establishing the law of the case. *Von Saher*, 592 F.3d at 960. More importantly, the ordinances and other documents do not speak to the elements that Gjøvik is required to show to establish liability under the federal environmental citizen suit provisions, nor to the elements required for public nuisance. The proffered documents are not relevant to reaching a decision in this case and are therefore ineligible for judicial notice under Rule 201(b)(2).

Gjøvik also offers a 250-page declaration concerning her public records requests. ECF 139. She includes several documents that she relied upon in her preliminary injunction briefing, like fire department incident reports and industrial wastewater discharge permit, that go well beyond the pleadings and do nothing to advance her claims against the City. But mostly she sets forth the records requests themselves and the City's responses concerning the timeline to gather responsive documents. Gjøvik's Third Amended Complaint includes no claim related to the California Public Records Act. ECF 119. As such, the court should disregard her declaration related to public records requests because it is not relevant to any claim, the material in her declaration falls far beyond the scope of what could justifiably be incorporated by reference in her Third Amended Complaint, and it should be excluded by the court. *Khoja*, 899 F.3d at 998.

**B. Gjøvik's stormwater and wastewater claims against the City are not cognizable under the CWA citizen suit statute.**

The CWA citizen suit statute authorizes suit against any person who is alleged to be in violation of an "effluent standard or limitation" or an order issued by the U.S. Environmental Protection Agency (EPA) or a state with respect to such a standard or limitation. 33 U.S.C. § 1365(a)(1). It also authorizes suit against the EPA where the EPA is alleged to have failed to perform a nondiscretionary duty. 33 U.S.C. § 1365(a)(2). In her Opposition, Gjøvik attempts to fit her stormwater allegations into the first category of an effluent standard or limitation violation, but still only challenges the City's enforcement discretion. ECF 138, ¶ 22–32. For wastewater, Gjøvik

objects to the City's filing of governance documents for the San José-Santa Clara Regional Wastewater Facility, but likewise alleges no violation of an effluent standard or limitation and instead maintains her objections to what she believes is the City's (rather than the Wastewater Facility's) enforcement and compliance. ECF 138, ¶¶ 33–38. Her claims are not cognizable under the CWA citizen suit statute, and no amendment of her Complaint could make them plausible. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

**1. Gjøvik's stormwater allegations do not plausibly state CWA claims against the City.**

Gjøvik is correct that the City holds a municipal National Pollutant Discharge Elimination System (NPDES) stormwater permit as a municipal separate storm sewer system operator (MS4). ECF 138, ¶ 4. The permit is issued by the California Regional Water Quality Control Board with delegated authority from EPA. As Gjøvik notes, the MS4 permit obligates the City to "implement an industrial and commercial site control program," conduct inspections and enforcement, and effectively prohibit the discharge of non-stormwater into storm drains. *Id.* ¶ 23. These permit terms require the City to set up and implement a program to regulate those who discharge to the City stormwater system. The only allegations of the Third Amended Complaint regarding stormwater discharges relate to actions that the City has taken to implement that regulatory program at the Apple facility. ECF 119, ¶¶ 300, 509, 531–533, 534–535. Thus, Gjøvik's Complaint acknowledges that the City has the program required by the stormwater permit in place. She apparently believes that the City should be more aggressive in its regulation of stormwater discharges from the Apple facility, ECF 138, ¶ 31, but that is not an actionable citizen suit claim because it does not allege violation of an effluent standard or limitation. 33 U.S.C. § 1365.

In any case, Gjøvik's allegations against the City are belied by her descriptions of a 2016 incident in which a City stormwater inspector cited Apple for dumping cooling water into storm drains, ECF 119, ¶ 450, as well as two stormwater inspections of the Apple Facility by the City in 2022. ECF 119, ¶ 451. Thus, Gjøvik acknowledges that the City has conducted *some* enforcement, but just not as much as she desires. But she cannot pursue a claim of insufficient enforcement. If a government chooses not to enforce a law at all, then that effective choice to deprive a law of all

pragmatic meaning may be reviewable. *Heckler*, 470 U.S. at 838. But how a government chooses to exercise its enforcement discretion within the context of budget constraints, coordination with other authorities, penalty calculations, and much more, is not something that courts can direct. *Sierra Club*, 268 F.3d at 905.

Courts have considered these principles specifically with regard to MS4 permits like this one, where municipalities are required to create stormwater management programs (SWMP). One district court in Georgia considered a similar challenge and decided that "[b]ecause its MS4 permit only requires [a county] to 'implement and enforce' its SWMP, and because the undisputed facts on the record are that it has implemented and enforced its SWMP to some degree, [the county] has not violated its NPDES permit by failing to enforce the SWMP as a matter of law." *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 98 F. Supp. 3d 1279, 1303 (S.D. Ga. 2015). More broadly, federal courts have held that MS4s need discretion and flexibility in determining how to implement their SWMPs. *E.g.*, *Mrosek v. City of Peachtree City*, 631 F. App'x 757, 760 (11th Cir. 2015) (holding that a city's decision to defer maintenance was not a violation of its NPDES stormwater permit); *Van Zanten v. City of Olympia*, No. C10-5216-JCC, 2011 WL 5299492, at *5 (W.D. Wash. Nov. 2, 2011) (rejecting a plaintiff's argument that a municipality violated its NPDES stormwater permit by not using best management practices or sediment controls because the municipality had adopted and implemented a SWMP). Gjøvik apparently believes that the City should be more aggressive in its regulation of stormwater discharges from the Apple facility, but that is not an actionable citizen suit claim. 33 U.S.C. § 1365. Her stormwater CWA claims fail to state a plausible claim against the City, nor could they even if granted leave to amend yet again. Those claims should be dismissed. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

In her Opposition, Gjøvik also attempts to shoehorn her Saratoga Creek claims into her stormwater argument. ECF 138, ¶ 30. These claims were not in her notice, and Gjøvik acknowledged that these claims are not a part of this case. ECF 78, ¶ 47. She argues that the City "filled the creek" but it "still flows beneath and beside" the Apple facility in a "pressurized channel," and that "pollutants" from the Apple facility "enter that flow." ECF 138, ¶ 30. Gjøvik

argues that the "non-stormwater" entering the "pipes and culverts" carrying the "buried" creek comprises a discharge subject to the CWA that the City must prohibit. *Id.* The only alleged discharge here is from Apple, not the City. The claim that the City has failed to prevent Apple's discharge is just an objection to how the City has implemented its regulatory program. Nor does the addition of allegations regarding Saratoga Creek add anything to Gjøvik's argument. The movement of water through the City's permitted stormwater system, even assuming *arguendo* that it was a daylighted creek before 1974, ECF 119, ¶ 68, is not the "gotcha" that Gjøvik appears to think it is. And it is certainly not a violation of an "effluent standard or limitation" within the meaning of the CWA citizen suit statute. 33 U.S.C. § 1365. Gjøvik's stormwater claims against the City should be dismissed with prejudice.

**2. Gjøvik's wastewater allegations do not plausibly state CWA claims against the City.**

In her Opposition, Gjøvik continues to disregard the governance structure for the San José-Santa Clara Regional Wastewater Facility (RWF) and continues to seek review of that entity's enforcement discretion. ECF 138, ¶¶ 33–38. Gjøvik has acknowledged that the Apple facility's CWA permit is from the RWF, which runs the treatment plant. ECF 119, ¶ 437. While the City is a minority owner of the RWF, the treatment plant and its regulatory compliance is the City of San José's responsibility. ECF No. 59 Ex. 1 at PDF pgs. 33–35; Ex. 2 at PDF pgs. 5; 22–23; 57–59.

Even if the City had authority over the RWF's enforcement and compliance activities, Gjøvik states no claim cognizable under the CWA citizen suit provision regarding those activities. She asserts that the City, "individually and jointly" with the RWF, made a litany of failures to "ensure" the Apple facility's compliance with the Clean Water Act. ECF 119, ¶¶ 491–497. None of these are violations by the RWF of an "effluent standard or limitation" under the CWA citizen suit provision. 33 U.S.C. § 1365. Gjøvik also tries to have it both ways: she blames the City for being a co-owner of the RWF and taking "no action," but then gives the City no credit for being a minority owner of the RWF when the RWF cited Apple for permit violations. ECF 119, ¶ 439. It is not quite clear what Gjøvik would have the City do to avoid her ire, and in any case, she is not empowered to direct its actions or enforcement discretion through the courts. *City of Olmstead*

*Falls*, 233 F. Supp. 2d at 900–01 (citing *Heckler*, 470 U.S. at 831); *Dubois v. Thomas*, 820 F.2d 943 (8th Cir. 1987) (concluding after an extensive review of the statute, and legislative history, that the CWA imposes only discretionary duties to take enforcement action); *Sierra Club*, 268 F.3d at 902 (citing *Dubois v. Thomas* with approval). Gjøvik's wastewater CWA claims fail to state a plausible claim against the City, nor could they even if granted leave to amend again. They should be dismissed. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

**C. Gjøvik cannot plausibly allege facts sufficient to state a claim against the City for causing a public nuisance.**

Gjøvik's public nuisance claim against the City for the Apple facility should be dismissed because she cannot plausibly allege that the City has any responsibility for the Apple facility or releases from that facility.[2] A nuisance is anything "which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway." Cal. Civ. Code § 3479. A public nuisance "is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482.

As discussed in the City's opening brief, ECF 127 at 20, causation is "an essential element of a public nuisance claim" and a plaintiff must establish the connection between the defendant's conduct and the alleged harm. *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017). A plaintiff must show the defendant's conduct was a "substantial factor" in causing the alleged harm. *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548, 87 Cal.

[2] Once the citizen suit claims against the City are dismissed, the Court also will no longer have subject matter jurisdiction over Gjøvik's state law claim against the City. Gjøvik argues that supplemental jurisdiction includes the joinder of additional parties, ECF 138, ¶ 40, but a party may not add or eliminate parties to create jurisdiction where none would exist. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989); *The Forty-Niner Lease v. Dep't of Transp.*, No. CVF07406OWW/WMW, 2007 WL 1411631, at *3 (E.D. Cal. May 11, 2007).

Rptr. 3d 602, 608 (2009) (holding that the defendant apartment complex's conduct was a substantial factor in causing a secondhand tobacco smoke hazard because it provided ashtrays and permitted its employees to smoke); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 102, 227 Cal. Rptr. 3d 499, 543 (2017); *City of San Diego*, 8 Cal. App. 5th at 361.

Here, Gjøvik alleges that she can state a claim for public nuisance against the City because the City owns parks and a playground and invites the public into them, allowed the Apple facility to violate a setback rule when it was sited a decade ago, and knew of releases, inspection failures, Gjøvik's injuries, and a City fire department evaluation that plume models for the area were unfavorable. ECF 138, ¶ 43. None of these allegations demonstrate that the City caused a public nuisance, even assuming for the sake of argument that one exists. Gjøvik's claims relate to alleged emissions from the Apple facility, not any inherent feature of the public parks themselves. Any offsite impacts from releases at the Apple facility are caused by the facility, not by the City. The City's conduct is not a "substantial factor" in any nuisance related to the Apple facility. *City of San Diego*, 8 Cal. App. 5th at 361. To the extent Gjøvik is arguing that better City enforcement could have avoided or mitigated those impacts, the City's conduct did not cause the impacts and the City's enforcement decisions under the CUPA program are not subject to judicial review or direction. *Heckler*, 470 U.S. at 838; *Sierra Club*, 268 F.3d at 905. Gjøvik cannot plead a cause of action for public nuisance against the City related to the Apple facility, and her claim should be dismissed.

Gjøvik argues that *Vedder v. County of Imperial* is on point. ECF 138, ¶ 44. In that case, plaintiffs who leased and occupied premises and conducted business at a county airport suffered losses from a fire at that airport, and pleaded injuries caused by dangerous condition of the property, failure to discharge a mandatory duty, and nuisance. *Vedder v. County of Imperial*, 36 Cal. App. 3d 654, 657 (Ct. App. 1974). The court decided that "[o]ne who negligently stores gasoline and other highly combustible chemicals on his property, or knowingly permits such negligent storage, may be liable to others for a fire-incurred loss even though the fire was actually started by the negligent conduct of others." *Id.* at 660. Here, Gjøvik has not alleged that the City is storing or permitting the storage of hazardous materials at public parks. The City is not

responsible for any hazardous materials at the Apple facility. As noted, the City has regulatory authority over hazardous materials through its delegated CUPA program, but that does not make the City responsible for Apple's management of those materials, and Gjøvik acknowledges that the City has inspected and enforced the CUPA program at the Apple facility. ECF 119, ¶¶ 141, 144, 181, 183.

Gjøvik asserts that the City failed to warn of "dangers it knew" but nuisance liability does not extend to a "failure to warn." *City of Modesto Redevelopment Agency v. Superior Ct.*, 119 Cal. App. 4th 28, 42, 13 Cal. Rptr. 3d 865, 875 (2004). Just as the City has not caused or been a substantial factor in generating any releases from the Apple Facility, it also is not responsible for any dangerous conditions that those releases may have caused outside of its boundaries; the law of public nuisance is not so attenuated. Gjøvik also constructs a strawman argument that the Government Claims Act does not bar her claim. ECF 138, ¶ 46. The City has no need for immunity under the Government Claims Act when it is not liable for public nuisance in the first place, because it has not caused a public nuisance by enforcing the CUPA program or owning public parks near the Apple facility. Cal. Civ. Code § 3479; *e.g. City of San Diego*, 8 Cal. App. 5th at 361. Additionally, as Gjøvik acknowledges, the CEQA and zoning procedures for the Apple facility and Santa Clara Square Apartments were 10–15 years ago. ECF 119, ¶¶ 88–112. CEQA statutes of limitation are 30–35 days depending on the procedures used by the public agency. Cal. Code Reg. Tit. 14, § 15112. The statute of limitations for nuisance is three years, Cal. Code Civ. Pro. § 338, and a 10-year-old zoning decision is not a continuing nuisance. By any measure, over 10 years since these CEQA and zoning decisions is too late to challenge them in court.

**D. Gjøvik has not alleged RCRA, CAA, EPCRA, or TSCA claims against the City, and cannot plausibly do so.**

Gjøvik's Opposition concludes with a cornucopia of arguments related to her claims under the Resource Conservation and Recovery Act (RCRA), ECF 138, ¶¶ 49–51, Clean Air Act (CAA), ¶¶ 54–55, Emergency Planning and Community Right to Know Act (EPCRA), ¶¶ 56–57, and the Toxic Substances Control Act (TSCA), ¶ 58. She argues that her Third Amended Complaint "alleges facts supporting a duty the City itself owes," but she does not plead how any "duty"

actually creates citizen suit liability under any of the above-listed statutes. ECF 138, ¶ 49. Gjøvik also describes allegations related to the decade-old Environmental Impact Report (EIR) for the Santa Clara Square Apartments, but these have no relevance to her federal environmental citizen suit claims, nor her public nuisance claim. ECF 138, ¶ 53.

**1. Gjøvik has not alleged RCRA claims against the City and cannot plausibly do so.**

The RCRA citizen suit statute authorizes suit against any person who is alleged to be in violation of "any permit, standard, regulation, condition, requirement, prohibition, or order" under RCRA. 42 U.S.C. § 6972(a)(1)(A). It also authorizes suit against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent or substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). With regard to RCRA, Gjøvik argues that the City is not a "bystander" to Apple's waste because it "receives" process wastewater and other water discharges. ECF 138, ¶ 50. But the City has no "control" over Apple's waste, and so it has no liability under the statute. *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011); *Ctr. for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023); *California River Watch v. City of Vacaville*, 39 F.4th 624, 631–633 (9th Cir. 2022) (holding that that a city was not contributing to past or present "transportation" of hazardous waste by "incidentally" carrying it through its pipes when pumping water to residents).

Gjøvik also asserts "authorized-program requirements are enforceable by citizen suit," ECF 138 ¶ 51, but she confuses the issues. In support she cites *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997), but that case was "narrowly focused on the question whether [RCRA] authorizes citizen suits in federal courts claiming only violations of state standards that exceed the federal criteria," which it decided in the negative. *Id.* at 412. Gjøvik incompletely quotes the requirement that delegated hazardous waste programs maintain, for compliance evaluation, "[a] program for periodic inspections of the facilities and activities subject to regulation." 40 C.F.R. § 271.15(b)(2) (excerpted at ECF 138, ¶ 51). The City has such a program, thereby meeting that requirement. How the City administers its compliance evaluation program is not a level of

granularity entitled to review in a citizen suit, nor is Gjøvik entitled to direct the City's compliance evaluation program. *Heckler*, 470 U.S. at 838; *Sierra Club*, 268 F.3d at 905. Gjøvik's Third Amended Complaint does not state RCRA claims that are plausibly entitled to relief, and they should be dismissed with prejudice.

**2. Gjøvik has not alleged CAA claims against the City and cannot plausibly do so.**

With regard to the CAA, Gjøvik has recognized that the City is not the air permitting authority for the Apple facility. *E.g.*, ECF 119, ¶¶ 283, 342, 377, 559. She ascribes air quality issues to Apple and alleges the City is "responsible and liable through their contribution" to those issues through the City's assumption of the CUPA program (which regulates waste, not air emissions), failure to warn, design and siting, concealment of information, negligent advice, and ownership of adjacent public property—"among other theories of liability." ECF 119, ¶ 294. The CAA citizen suit provision authorizes suit against persons who violate "an emission standard or limitation" or an order respecting such a standard or limitation, 42 U.S.C. § 7604(a)(1), or who construct an air-pollution-emitting facility without the appropriate permit or violate such a permit, 42 U.S.C. § 7604(a)(3). Gjøvik has not alleged that the City has violated an air pollution emission standard or constructed an air-pollution-emitting facility without a permit, nor could she, since she has acknowledged that the City neither owns nor operates the Apple facility. ECF 119, ¶ 34.

In her Opposition, Gjøvik attempts to bring a brand new argument against the City. She argues the City is a "necessary party" under the rule governing joinder in civil actions (Rule 19) to the remedy for Apple's alleged violation of CAA Section 112(r)(1), which describes a general duty for facility owners and operators to prevent accidental releases of hazardous air pollutants. ECF 138, ¶ 54 (referencing 42 U.S.C. § 7412(r)(1)). This is not an accurate reading of Rule 19 or the Clean Air Act. The City has no "emergency planning" or "land use approvals" implicated by alleged hazardous air pollution violations, ECF 138, ¶ 54, and even if it did, it would not be a necessary party to this case. The court can order Apple to comply with environmental requirements, cease unlawful discharges, reduce emissions, or undertake corrective actions – assuming any such violations are ever proven – without ordering the City to do anything.

Gjøvik also attempts to shoehorn the City's role as a CUPA into the Clean Air Act framework, ECF 138, ¶ 54–55, but the CUPA program is delegated under RCRA (as discussed above) and Gjøvik has already acknowledged that the Apple facility's air quality regulator is the Bay Area Air Quality Management District. *See, e.g.*, ECF 119, ¶¶ 283, 342, 377, 559. Gjøvik has not plausibly stated a claim against the City under the CAA citizen suit statute, nor could she even if given leave to amend her complaint again.

**3. Gjøvik has not alleged EPCRA claims against the City and cannot plausibly do so.**

Gjøvik accuses the City of "fail[ing] to ensure" that Apple complied with EPCRA, *e.g.* ECF 119, ¶ 555, but such liability does not exist under the EPCRA citizen suit statute. 42 U.S.C. § 11046. Gjøvik also alleges that the City "concealed" various Apple alleged violations and failed to provide public information or respond to a request for tier II information, but she can allege no facts to plausibly support these allegations. ECF 119, ¶¶ 555, 564, 565, 568. Fatal to her claims, the EPCRA citizen suit statute does not authorize suits against any local government. 42 U.S.C. § 11046. Gjøvik has not stated any claim against the City under the EPCRA citizen suit statute, nor could she even if given leave to amend her complaint again.

In her Opposition, Gjøvik alleges that the City responded incompletely to what she now characterizes as a request for tier II information, that the City has somehow violated the permit held by the Apple facility from the San José-Santa Clara Regional Wastewater Facility, and again that the City "failed to ensure" that Apple submitted required EPCRA reports. ECF 138, ¶ 57. These assertions are nonsensical and do not state claims under EPCRA's citizen suit provision. Gjøvik does not explain how or why her public records requests qualify as requests for tier II information under EPCRA. *Id.* The Apple facility's wastewater permit under the Clean Water Act does not implicate EPCRA. The City has no obligation to "ensure" that Apple submits toxic chemical release forms. 42 U.S.C. § 11023(a). Fatal to her claims, the EPCRA citizen suit provision only authorizes a person to bring suit, for specific enumerated violations, against an owner or operator of a facility, U.S. EPA, or a state. 42 U.S.C. § 11046(a)(1). It does not authorize suit against the City. *Id.*

Gjøvik claims the state has delegated EPCRA tier II information sharing to the City as a CUPA and so she can bring a claim against the City as if it were a state, ECF 138, ¶ 56, but that is not how Congress wrote the statute. EPCRA provides for tier II information requests to a "State emergency response commission" or "local emergency planning committee," 42 U.S.C. § 11022(e)(3), but only allows suit against a "State Governor" or a "State emergency response commission," 42 U.S.C. § 11046(a)(1)(D). California's State emergency response commission is the California Governor's Office of Emergency Services, a state-level body—not the local CUPAs that receive tier II information under Cal. Health & Safety Code § 25509. The fact that California has routed tier II submissions through CUPAs does not transform those agencies into the State emergency response commission or otherwise bring them within the statute's enumerated defendants. Cal. Health & Safety Code § 25509 is a state-law procedural convenience that routes submissions through the CUPA as a single point of contact; it does not transform the CUPA (delegated under RCRA) into a State emergency response commission (recognized under EPCRA) for purposes of federal citizen suit liability. Gjøvik has not and cannot plausibly plead her EPCRA claims against the City, and they should be dismissed with prejudice. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

**4. Gjøvik has not alleged TSCA claims against the City and cannot plausibly do so.**

With regard to TSCA, Gjøvik correctly cites the pollution-control portion of the TSCA citizen suit statute in her Amended Complaint as applying to "any person," including a "governmental instrumentality or agency," ECF 119, ¶ 571, but has not and cannot identify any provision of TSCA or any rule or order issued under it that the City has violated. 15 U.S.C. § 2619(a)(1). According to Gjøvik, the City's TSCA violation is that the City knew certain toxic chemicals were used at the Apple facility and knew about some spills and releases of these chemicals, but failed to abate or report them or warn others. ECF 119, ¶¶ 606, 609. However, Gjøvik has not identified any TSCA requirement that imposes such obligations on the City for industrial facilities within its borders, nor are there any such obligations. She has not stated a claim

against the City under the TSCA citizen suit statute, 15 U.S.C. § 2619, nor could she plausibly do so.

In her Opposition, Gjøvik argues for the first time that by co-owning the San José-Santa Clara Regional Wastewater Facility, the City is responsible for screening the Apple facility's industrial wastewater for trichloroethylene, and that it has allegedly not done so and is therefore liable under TSCA. This is not a cognizable claim under the TSCA citizen suit statute. 15 U.S.C. § 2619. The City does not own or operate the Apple Facility. It is not subject to TSCA requirements for the use or disposal of TSCA-regulated chemicals at the Apple Facility, nor is it subject to associated record-keeping requirements. Gjøvik's TSCA claims directed at the City are not plausible given that the City, as stated, does not own or operate the Apple Facility, and they should be dismissed. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

**CONCLUSION**

For the reasons set forth above and in the City's motion (ECF 127), Gjøvik has not stated a claim against the City, and cannot do so under the federal laws that form the basis for this Court's jurisdiction over this action, or for a public nuisance under California law. Gjøvik's claims relate to alleged releases from the Apple facility. The City does not own, operate or control that facility and it has not caused the alleged releases. The City respectfully urges the Court to dismiss all claims against the City pursuant to Rule 12(b)(6), with prejudice.

DATED: October 22, 2026

NOSSAMAN LLP
SVEND BRANDT-ERICHSEN
BRENDAN F. MACAULAY
JENNIFER J. SEELY

By: */s/ Svend Brandt-Erichsen*

Svend Brandt-Erichsen
sbrandterichsen@nossaman.com
*Pro Hac Vice*
Jennifer Seely
jseely@nossaman.com
*Pro Hac Vice*
NOSSAMAN LLP
719 Second Avenue, Suite 120
Seattle, WA 98104
Telephone: 206.395.7630
Facsimile: 206.257.0780

Brendan F. Macaulay
CA Bar # 162313
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438
bmacaulay@nossaman.com

*Attorneys for Defendant City of Santa Clara*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of October, 2026, I electronically filed the foregoing **DEFENDANT CITY OF SANTA CLARA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THIRD AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Svend Brandt-Erichsen*