WILLIAM F. TARANTINO [SBN 215343]
WTarantino@mofo.com
ALBERTO J. CORONA [SBN 339906]
ACorona@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

JULIE Y. PARK [SBN 259929]
JuliePark@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, California 92130-3588
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendants APPLE INC., KALIL JENAB, JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, JENAB FAMILY TRUST, JULIA LINDSEY, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and KATHLEEN WOODRUFF, as Trustee of the Woodruff Kathleen Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASHLEY M. GJOVIK,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., ET AL.<br><br>Defendants. | Case No. 5:25-cv-07360-PCP<br><br>**APPLE INC.'S AND THE LANDLORD DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date: November 5, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Action Filed: September 2, 2025<br>Trial Date: TBD |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

- A. Plaintiff Cannot Rewrite Her Complaint Through Her Opposition ........ 1
- B. Manufactured, Generalized, or Past Harms Do Not Establish Standing ........ 2
- C. Plaintiff's Defective Notice Bars Her Federal Claims and Is Uncurable ........ 5
- D. The RCRA Claims Are Barred by Prior Enforcement and Lack Support ........ 6
  - 1. Plaintiff Cannot Attack EPA's Enforcement ........ 6
  - 2. Exempt Wastewater Treatment Units Do Not Make the Facility a Regulated TSDF ........ 7
  - 3. Counts 4 Through 8 List Regulations Without Showing a Violation ........ 7
- E. Plaintiff's CWA Claims Fail Because She Alleges No Permit Exceedance ........ 8
  - 1. Detection Is Not a Violation, and the TAC Identifies No Exceedance ........ 8
  - 2. Plaintiff's 2016 and 2022 Allegations Are Wholly Past and Untimely ........ 8
- F. Plaintiff Cannot Identify a Single Enforceable TSCA Violation ........ 9
  - 1. Plaintiff Concedes No Enforceable Rule Restricts NMP ........ 9
  - 2. Plaintiff's Newly Cited TCE Rule Cannot Save Count 30 ........ 9
  - 3. Plaintiff Identifies No Actual Violation Involving Mercury or Lead ........ 10
  - 4. Count 32 Adds Nothing Beyond the Other Deficient TSCA Counts ........ 10
- G. Plaintiff's CAA Claims Rest on Past, Resolved, or Time-Barred Conduct ........ 10
- H. Nothing Plaintiff Alleges Triggers a Reporting Obligation Under EPCRA ........ 11
- I. The Public Nuisance Claim Is Precluded, Late, and Lacks a Special Injury ........ 12
- J. Passive Ownership Cannot Make the Landlord Defendants Liable ........ 13

III. CONCLUSION ........ 14

- A. APPENDIX: SUMMARY OF CLAIMS AND GROUNDS FOR DISMISSAL ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. United States*,
No. 21-CV-1824-BAS-WVG, 2021 WL 5203294 (S.D. Cal. Nov. 9, 2021) .......................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 3, 8, 9, 11

*Beck Dev. Co. v. S. Pac. Transp. Co.*,
44 Cal. App. 4th 1160 (1996)................................................................................... 13

*Birke v. Oakwood Worldwide*,
169 Cal. App. 4th 1540 (2009)............................................................................ 13, 14

*Candlestick Heights Cmty. All. v. City & Cnty. of S.F.*,
No. 23-cv-00082-SK, 2023 WL 9317153 (N.D. Cal. Dec. 21, 2023),
*aff'd*, 2025 WL 275112 (9th Cir. Jan. 23, 2025)......................................................... 4

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ................................................................................................4-5

*Clarke v. Pac. Gas & Elec. Co.*,
501 F. Supp. 3d 774 (N.D. Cal. 2020) ....................................................................... 11

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
305 F.3d 943 (9th Cir. 2002)....................................................................................... 5

*Cmty. of Cambridge Env't Health & Cmty. Dev. Grp. v. City of Cambridge*,
115 F. Supp. 2d 550 (D. Md. 2000). (Opp'n .) ............................................................ 7

*Ctr. for Bio. Diversity v. Marina Point Dev. Co.*,
566 F.3d 794 (9th Cir. 2008), *amended* (May 14, 2009) ............................................. 6

*Ctr. for Bio. Diversity v. U.S. EPA*,
937 F.3d 533 (5th Cir. 2019)....................................................................................... 3

*Ctr. for Bio. Diversity v. U.S. Forest Serv.*,
80 F.4th 943 (9th Cir. 2023)...................................................................................... 14

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .................................................................................................... 3

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004)...................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 2

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .......... 7, 8, 11

*Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001) .......... 4

*Hallstrom v. Tillamook Cnty.*, 493 U.S. 20 (1989) .......... 5, 6, 14

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .......... 14

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .......... 4

*Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826 (9th Cir. 2021) .......... 4

*Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007) .......... 6, 7

*L.A. Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) .......... 14

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) .......... 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 2, 3, 14

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 13

*Nilson v. City of San Jose*, No. C 07-03686 JW, 2008 WL 11387038 (N.D. Cal. July 24, 2008) .......... 6

*Northstar Fin. Advisor Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) .......... 5 n.3

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941 (9th Cir. 2006) .......... 4

*Otay Land Co. v. U.E. Ltd., L.P.*, 15 Cal. App. 5th 806 (2017) .......... 13

*Ramirez v. City of Buena Park*, 560 F.3d 1012 (9th Cir. 2009) .......... 2

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) .......... 5 n.3

*Saliba v. Am. Airlines Inc.*,
No. CV-25-03511-PHX-SHD, 2026 WL 2249387 (D. Ariz. Aug. 5, 2026) .......... 1

*Savage v. Glendale Union High Sch. Dist. No. 205*,
343 F.3d 1036 (9th Cir. 2003) .......... 1

*Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*,
279 F.3d 817 (9th Cir. 2001) .......... 5

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
322 F.3d 1064 (9th Cir. 2003) .......... 13

*Thibodeaux v. Port of Oakland*,
No. 18-cv-03353-KAW, 2018 WL 4853299 (N.D. Cal. Oct. 5, 2018) .......... 6

*W. Radio Servs. Co. v. Glickman*,
123 F.3d 1189 (9th Cir. 1997) .......... 12

*WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*,
375 F.3d 913 (9th Cir. 2004) .......... 6

*Wicker v. Walmart, Inc.*,
533 F. Supp. 3d 944 (C.D. Cal. 2021) .......... 13

*Wilcox v. Comm'r*,
848 F.2d 1007 (9th Cir. 1988) .......... 2

*Zands v. Nelson*,
797 F. Supp. 805 (S.D. Cal. 1992) .......... 6 n.4

**Statutes, Regulations, and Rules**

15 U.S.C.
§ 2605 .......... 10
§ 2606 .......... 10, 15
§ 2607(b)(10)(D) .......... 10
§ 2615 .......... 10
§ 2619(a)(1) .......... 9
§§ 2681-2689 .......... 10

28 U.S.C. § 2462 .......... 9, 11, 15

42 U.S.C.
§§ 6922-6925 .......... 7
§ 11004(a)(1)-(3) .......... 12
§ 11023(b) .......... 12

40 C.F.R.
pt. 355 App'x A ........ 12
pt. 469 ........ 8
pt. 713 ........ 10
pt. 745 ........ 10
pt. 751 ........ 9

40 C.F.R.
§ 264.1 ........ 7, 15
§ 270.1(c) ........ 7
§ 370.10 ........ 12
§§ 372.22-.25 ........ 12
§ 403.5 ........ 8

Cal. Civ. Code
§ 3482 ........ 13
§ 3483 ........ 14
§ 3493 ........ 13

**Other Authorities**

Civil L.R. 3-12 ........ 12

## I. INTRODUCTION

Plaintiff's Opposition confirms that none of her pleading defects are curable. Rather than defend the Third Amended Complaint ("TAC") as pleaded, Plaintiff tries to amend her complaint through her brief, offering a new declaration, exhibits, and theories that the Court cannot consider on a motion to dismiss. Even if properly before the Court, they do not remedy the issues the Court identified in its previous order. Her standing rests on generalized concerns, past illness, and litigation-driven visits. Her Notice still omits many of the theories she now presses.

The TAC fails on the merits as well. EPA has already prosecuted and resolved the RCRA violations. Her Clean Water Act, TSCA, Clean Air Act, and EPCRA claims identify no permit exceedance, no enforceable rule, no ongoing violation, and no reportable release. Her public nuisance claim is precluded by Judge Chen's final judgment and is time-barred. She pleads nothing but passive ownership against the Landlord Defendants. She has already amended multiple times, such that further amendment would be futile. The Court should dismiss the TAC with prejudice.

## II. ARGUMENT

### A. Plaintiff Cannot Rewrite Her Complaint Through Her Opposition

Whether responding to a facial challenge to standing under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6), Plaintiff is confined to her complaint. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (facial attack); *Saliba v. Am. Airlines Inc.*, 2026 WL 2249387, at *4-5 (D. Ariz. Aug. 5, 2026) (rejecting a pro se plaintiff's attempt to introduce a new theory through an opposition brief in response to a motion to dismiss).

Plaintiff's Opposition attempts precisely what these rules prohibit. The TAC alleges that Plaintiff uses the creek trail, park, and neighborhood near the Facility, but nowhere alleges that the Facility's alleged pollution has altered her use. (TAC ¶¶ 27-28, 30-31.) Her Opposition now asserts for the first time that she "has in fact changed how she uses the area because of the Facility's pollution." (Opp'n at 6.) In support, Plaintiff submits a declaration with facts found nowhere in the TAC. For example, she claims that she avoids touching the creek water, checks wind direction before walking near the Facility, limits time on the trail segment nearest the outfall, shortens her

visits, and showers and launders her clothes to "decontaminate" herself after visiting. (Gjovik Decl. ¶ 15.) The declaration also offers a new account of her reliance on TRI filings in deciding "when, and where to visit" (*id.* ¶ 22) and what she would do differently if the Facility complied with its permits (*id.* ¶ 16). Plaintiff concedes as much, arguing that "at a minimum, the declaration shows that any perceived gap could be cured by amendment." (Opp'n at 6.) But the question before the Court is whether the TAC states a viable claim, not whether Plaintiff could supply missing allegations with yet another amendment. The Court should disregard these new assertions.

Across nearly every claim, the Opposition either drops the TAC's theories or swaps in new ones—for example, she chooses not to defend the TAC's allegations regarding the Facility's NPDES permit, advances a new regulatory theory for trichloroethylene ("TCE"), and recasts the Landlords' passive ownership as active involvement. These pivots are not without consequence: "[a] party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (citation omitted); *see also Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988) (issue deemed abandoned where pro se litigant failed to address it in brief). Plaintiff has therefore abandoned the TAC's original theories, and the new ones raised for the first time in her Opposition are not properly before the Court.

### B. Manufactured, Generalized, or Past Harms Do Not Establish Standing

"[C]onclusory allegations" and "general averments" cannot establish standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (citation omitted). Plaintiff's selective quotation of *Lujan v. Defenders of Wildlife* ignores its requirement that "each element" of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. 555, 561 (1992). At the pleading stage, that requires factual allegations supporting injury, causation, and redressability, which are missing from the TAC.

Nor can Plaintiff manufacture standing after the fact. The Court dismissed her First Amended Complaint for lack of Article III standing on June 25, 2026—expressly because she resided in Massachusetts, had no concrete plans to return to Santa Clara, and had not alleged any

impairment to an aesthetic or recreational interest. (Dkt. No. 101 at 25:13-24.) Most of the activity Plaintiff now offers occurred *after* that ruling. Of the eight dates her new declaration identifies for visits to the area, five—July 21, July 29, August 1, August 21, and October 2, 2026—fall after the June 25 order. (Gjovik Decl. ¶ 6.)[1] Both of the hotel stays she cites near the Facility likewise post-date the order: August 6-7, 2026, and October 2-3, 2026. (*Id.* ¶ 7.) She also plans another visit for November 13-14, 2026—just after briefing on this Motion closes. (*Id.*) *Lujan* instructs that "a plaintiff cannot retroactively create jurisdiction based on postcomplaint litigation conduct." *Lujan*, 504 U.S. at 569 n.4. Trips made only after the previous motion flagged her lack of standing cannot plausibly be read as anything but a post hoc attempt to cure.

Plaintiff's apparent solution to the factual and legal defects identified is to ignore them. Rather than identify where the TAC alleges that pollution has impaired her interests; connects the alleged pollution to any harm to the environment; or states an ongoing rather than resolved health concern, she answers each gap with new assertions in her brief and her untimely declaration. (*See supra* Section II.A.) None of that is in the TAC. This is improper. "Plaintiff is not entitled to 'unreasonable inferences' or 'unwarranted deductions of fact,' even considering the liberalities to which she is afforded as a *pro se* litigant." *Akins v. United States*, 2021 WL 5203294, at *5 (S.D. Cal. Nov. 9, 2021) (citation omitted). Nor must the Court accept Plaintiff's "legal conclusion[s] couched as [] factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Plaintiff's Opposition collapses her entire case down to the creek conditions and generalized concerns regarding ***past*** emissions. (Opp'n at 5.) The only potential aesthetic injuries the TAC identifies flow from her purposeful search for violations, which cannot support her claims as a matter of law. *See Ctr. for Bio. Diversity v. U.S. EPA*, 937 F.3d 533, 541 (5th Cir. 2019) ("successful efforts to locate aesthetically displeasing pollution cannot serve as the basis for an aesthetic injury in fact" and "standing cannot be conferred by a self-inflicted injury" (citation omitted)). She must have standing for each claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (a plaintiff who establishes a discrete injury cannot seek relief for another unrelated

---

[1] Regardless of timing, the other visits are also litigation-driven and should be ignored under *Lujan*, as they all follow Apple's motions to dismiss the original complaint and the FAC.

issue). But she fails to establish a concrete injury for her creek-related claims.

*Inland Empire Waterkeeper v. Corona Clay Co.* does not help her. 17 F.4th 826 (9th Cir. 2021). There, the court looked to the use of the creek itself and the plaintiff's identified "noticeable decrease in water quality conditions because of [the defendant's] discharges." *Id.* at 832. Plaintiff identifies no comparable impairment tied to the creek. *See Candlestick Heights Cmty. All. v. City & Cnty. of S.F.*, 2023 WL 9317153, at *10 (N.D. Cal. Dec. 21, 2023) (finding plaintiffs lacked an injury in fact where they failed to demonstrate how air pollution harmed their use of the park at issue), *aff'd*, 2025 WL 275112 (9th Cir. Jan. 23, 2025). Nor does Plaintiff meaningfully distinguish *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941 (9th Cir. 2006). There, as here, the plaintiffs raised only general concerns of potential exposure, from use of roadways and the possible adverse health consequences of exposure to radiation. *Id.* at 951. Here, Plaintiff's present-day concerns stem from her fears of emissions from past violations from 2024 and theoretical modeling.[2] (Opp'n at 6.) These "concerns" over past air permit exceedances constitute nothing more than generalized grievances. *Candlestick Heights*, 2023 WL 9317153, at *12. For her CAA, RCRA, TSCA, and CWA claims, Plaintiff raises only general concerns about emissions and abstract references to discharges. (Opp'n at 8.) "[S]uch a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). For EPCRA, Plaintiff gestures at "downstream consequences" in "deciding when and where to visit." (Opp'n at 8.) She does not state what those consequences are.

Plaintiff's attempt to commandeer *Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001), is misplaced. The *Hall* plaintiff alleged that anticipated air pollution would aggravate his existing respiratory condition, creating a concrete threat of physical harm. *Id.* at 973-74, 976. Plaintiff alleges no comparable threat. She identifies no current condition, ongoing physical exposure, or an imminent health risk from visiting. Instead, she invokes an alleged illness from 2020 that no longer affects her. (TAC ¶ 31; Opp'n at 7.) But that past illness does not establish a credible threat of future injury sufficient to confer standing to seek prospective relief. *See City of L.A. v. Lyons*, 461

---

[2] Plaintiff also cites to "waste violations in 2026" but those are limited to labeling and record violations, which Plaintiff does not connect to her so-called fear. (Opp'n at 6; TAC ¶ 183.)

U.S. 95, 105-06 (1983) (past chokehold injury did not establish a credible threat of future injury).[3]

Finally, Plaintiff's repeated failures to establish standing demonstrate that she should not be granted leave to amend. Even if Plaintiff were permitted to incorporate every new fact from her declaration into an amended complaint, those facts still would not establish a concrete, particularized injury traceable to Defendants' conduct. *Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 824-25 (9th Cir. 2001) (dismissal with prejudice affirmed where the plaintiff "could not have possibly amended his complaint to allege an injury in fact"). Plaintiff has already amended substantively twice, despite the Court's guidance on the standard and her complaint's deficiencies. A third attempt would be futile, and the Court should not "prolong the litigation by permitting further amendment." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

### C. Plaintiff's Defective Notice Bars Her Federal Claims and Is Uncurable

Plaintiff does not dispute that her Notice was both improperly served and failed to identify several of the violations she now presses; she argues only that neither defect should matter. She is wrong. Strict compliance with notice requirements is a prerequisite to suit, *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989), and Plaintiff's Notice fails to satisfy those requirements.

***First***, Plaintiff concedes that she emailed the Notice to state agencies instead of serving the designated officials by certified mail or personally. (Opp'n at 10.) Her argument that the State and its agencies "must be treated as one" does not excuse noncompliance with the prescribed manner of service. (*Id.* (citation omitted).) The Ninth Circuit "require[s] strict compliance with all aspects of the notice requirement *set out by the EPA*." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 950 (9th Cir. 2002) (emphasis added). Nor does later enforcement cure defective notice.

***Second***, the Notice did not adequately identify the violations alleged in the TAC. A notice must provide "sufficient information to permit the recipient to identify the specific standard,

---

[3] Nor do the cases Plaintiff cites regarding subsequent pleadings apply here. *Rockwell Int'l Corp. v. United States* involved an issue of statutory subject-matter jurisdiction, and therefore, was not subject to *Lujan* footnote four's prohibition against post-complaint litigation conduct. *See* 549 U.S. 457, 473-74 (2007). *Northstar Fin. Advisor Inc. v. Schwab Invs.*, involved an assignment of claim—meaning that someone "clearly had standing" originally before transferring that interest to the plaintiff. 779 F.3d 1036, 1048 (9th Cir. 2015). Her argument fails.

limitation, or order alleged to have been violated," not a recitation of statutory chapters. *Thibodeaux v. Port of Oakland*, 2018 WL 4853299, at *4 (N.D. Cal. Oct. 5, 2018) (citation omitted). Plaintiff's Notice does precisely what that standard forecloses: it cites entire statutory frameworks without identifying the specific standard Apple purportedly violated. (Mot. at 12 (citing Notice ¶¶ 64, 72-78, 91-95, 99-101).) Plaintiff's response that "paragraphs around" her statutory citations supply the missing specificity (Opp'n at 12) does not survive comparison with the Notice itself. A notice that requires the recipient to guess which provision within a cited chapter was supposedly violated does not give "the accused company the opportunity to correct the problem," as the Ninth Circuit requires. *WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004) (citation omitted).

Plaintiff's Opposition confirms that the TAC advances theories either absent from the Notice or supported only by generic statutory citations, including the Landlord Defendants' liability under RCRA, Title V and preconstruction permitting, and TSCA claims involving NMP, mercury, TCE, and lead. (Opp'n at 12-13.) Her reliance on generic statutory citations in the Notice cannot satisfy the requirement that each alleged violation be identified with specificity. *See Ctr. for Bio. Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2008), *amended* (May 14, 2009).

Finally, Plaintiff cannot cure defective pre-suit notice by later serving amended complaints. (Opp'n at 14.) *See Hallstrom,* 493 U.S. at 26-27 (pre-suit notice requirements are not subject to "equitable modification and cure"); *Nilson v. City of San Jose*, 2008 WL 11387038, at *4 (N.D. Cal. July 24, 2008) ("Plaintiff cannot cure her failure to provide adequate notice subsequent to filing suit.").[4] Her claims should therefore be dismissed with prejudice.

### D. The RCRA Claims Are Barred by Prior Enforcement and Lack Support

#### 1. Plaintiff Cannot Attack EPA's Enforcement

The Opposition does not dispute that EPA already prosecuted and resolved the RCRA violations underlying Count 1. (Mot. at 15.) Instead, Plaintiff argues that the diligent-prosecution bar applies only to judicial consent decrees, misreading both *Karr v. Hefner*, 475 F.3d 1192, 1196-

[4] Plaintiff cited *Zands v. Nelson*, 797 F. Supp. 805, 809-10 (S.D. Cal. 1992), for the proposition that "[c]ourts permit a plaintiff to proceed on a pleading filed after the notice period runs." (Opp'n at 14.) But *Zands* does not address pre-suit notice requirements at all.

98 (10th Cir. 2007), and *Cmty. of Cambridge Env't Health & Cmty. Dev. Grp. v. City of Cambridge*, 115 F. Supp. 2d 550, 554-56 (D. Md. 2000). (Opp'n at 14-15.) Neither case supports that limitation. Indeed, *Karr* cautioned against interpreting the bar "in a manner that would undermine the EPA's ability to reach voluntary settlements with defendants." 475 F.3d at 1198. And Plaintiff cannot avoid the CAFO's effect where she acknowledged it settled "the violations specifically alleged herein," including the solvent tank, waste storage, and venting violations underlying Count 1. (Opp'n 14-15; TAC ¶¶ 261-64.) She cannot relitigate violations that EPA already resolved. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61, 64 (1987).

Nor does the TAC plead an ongoing endangerment under RCRA, despite the Opposition's three examples. (Opp'n at 17.) By Plaintiff's own allegations, EPA already addressed two through the consent agreement. (*Compare* Opp'n at 17, *with* TAC ¶¶ 261, 264.) Plaintiff never alleges the tank continued operating unpermitted after that resolution. Her baseless allegation that EPA "failed to confirm Apple corrected the issue" has no bearing on if there was ongoing endangerment. (TAC ¶ 261.) And the third—the location of hazardous waste bunkers near storm drains—does not plausibly describe an alleged violation. Plaintiff never alleges waste reached a storm drain or creek.

### 2. Exempt Wastewater Treatment Units Do Not Make the Facility a Regulated TSDF

Plaintiff argues that EPA's findings concerning an acid waste neutralization system, a heavy metals rinse system, and an unpermitted solvent tank establish that Apple operates a treatment, storage, or disposal facility ("TSDF"). (Opp'n at 18 (citing TAC ¶¶ 158-65).) But the existence of these individual treatment units does not subject the Facility to the TSDF permitting requirements. The regulations exempt "[t]he owner or operator of an elementary neutralization unit or a wastewater treatment unit" from Part 264. 40 C.F.R. §§ 264.1(b), (g)(6). Nor can Plaintiff allege any facts to establish that the solvent tank required a TSDF permit. *Id.* § 270.1(c).

### 3. Counts 4 Through 8 List Regulations Without Showing a Violation

Counts 4 through 8 plead no facts. Plaintiff defends them as enforcing 42 U.S.C. §§ 6922-6925 and several cited regulations. (Opp'n at 17-18 (citing TAC ¶¶ 158-59, 165).) She does not allege facts showing Apple's conduct triggered or violated any of them; the generator and interim-

status standards she cites apply to specific types of generators and facilities, and she lists regulations and asserts that Apple violated them. Legal conclusions are insufficient. *Iqbal*, 556 U.S. at 678.

**E. Plaintiff's CWA Claims Fail Because She Alleges No Permit Exceedance**

The TAC repeatedly alleges Apple's wastewater discharges are authorized by an NPDES permit, which forecloses liability absent an alleged permit exceedance. (Mot. at 17.) Plaintiff now argues that Permit SC-461B is not an NPDES permit, but merely "an industrial-user permit issued by the treatment works under its pretreatment program." (Opp'n at 19.)

Plaintiff's reclassification only weakens her claim. Even accepting her new theory that SC-461B is a pretreatment, indirect discharge permit under 40 C.F.R. § 403.5 and Part 469 rather than an NPDES direct discharge permit, only NPDES permits impose numeric effluent limitations, while a pretreatment permit imposes ***categorical*** standards and prohibitions. (Opp'n at 20 (citing TAC ¶¶ 118, 437-42).) Plaintiff's TAC does not allege Apple exceeded any such standard; her cited paragraphs describe only the permit's existence and Apple's reclassification as a semiconductor manufacturer. Having abandoned the characterization that would supply an effluent limit, she cannot fault Apple for exceeding any such limit; a citizen-suit plaintiff must allege an actual ***exceedance*** of an identified standard, not merely that such standards exist.

**1. Detection Is Not a Violation, and the TAC Identifies No Exceedance**

Plaintiff's remaining CWA theory fares no better under either characterization. The TAC alleges 2017 testing detected trace amounts of chemicals in wastewater. (TAC ¶ 445.) Detection is not a violation—Plaintiff must allege the concentration exceeded an applicable effluent limit or permit condition, and the TAC does not. (Mot. at 17.) Plaintiff identifies no numeric limit the 2017 results exceeded, nor disputes that the concentrations were below the Method Reporting Limit.

**2. Plaintiff's 2016 and 2022 Allegations Are Wholly Past and Untimely**

Plaintiff's remaining CWA allegations concern 2016 and 2020 sampling deficiencies, 2016 cooling water disposal, and 2022 bioretention-area maintenance issues. (TAC ¶¶ 439, 442, 450-51.) These are discrete, wholly past events, not an ongoing violation. *Gwaltney*, 484 U.S. at 64. Recasting 2025-2026 filings as evidence of continuing violations (Opp'n at 20) does not help, because omitting results from a self-monitoring report is not discharging in excess of a permit limit,

and Plaintiff does not allege that it is. Independently, the five-year statute of limitations bars any claim based on the 2016 and 2020 allegations. 28 U.S.C. § 2462. The CWA claims fail.

### F. Plaintiff Cannot Identify a Single Enforceable TSCA Violation

Plaintiff's TSCA counts share one fatal defect that Plaintiff fails to rebut: she cannot identify any enforceable standard Apple violated. TSCA's citizen-suit provision permits suit only against a person "alleged to be in violation of this [chapter] or any rule promulgated under section . . . 2603, 2604, or 2605." 15 U.S.C. § 2619(a)(1). Her mercury, TCE, lead, and "imminently hazardous" counts each recite only a framework and assert, without factual support, that Apple violated it. (TAC ¶ 604-10.) These legal conclusions cast as factual allegations again flunk Rule 8.

#### 1. Plaintiff Concedes No Enforceable Rule Restricts NMP

Count 28 fails because the TAC does not identify any rule restricting Apple's use of NMP, and none exists. Part 751 does not cover NMP, and the cited 2022 EPA action was only a step toward a risk management rule EPA has proposed but not adopted. (Mot. at 18; TAC ¶ 575.) Plaintiff does not dispute this, instead pivoting to Section 15 recordkeeping. (Opp'n at 24-25.) But the TAC alleges only that Apple reported its NMP emissions in 2020 and listed NMP in its 2025 inventory—compliance, not violation. (TAC ¶¶ 575, 578.) A plaintiff cannot satisfy Rule 8 by identifying a recordkeeping provision in the abstract and asserting, without factual support, that a defendant failed to comply, *see Iqbal*, 556 U.S. at 678, nor manufacture a violation from the absence of a final rule by invoking Section 6 itself, which authorizes EPA regulation—not private suit.

#### 2. Plaintiff's Newly Cited TCE Rule Cannot Save Count 30

For TCE, Plaintiff switches theories, now arguing EPA's December 2024 final rule "prohibits most industrial and commercial uses on a phased schedule" and that TCE appeared in Apple's wastewater but not its inventories. (Opp'n at 24 (citing TAC ¶¶ 123, 591-95).) But those paragraphs do not allege Apple used or distributed TCE after the phase-out took effect or exceeded any exposure limit—they allege only that TCE is regulated and that Apple "violated" Sections 6 and 15 in generic language. (TAC ¶¶ 594-96.) An unidentified, trace-level concentration in wastewater is not a plausible violation of a rule that was not in effect during the relevant period.

**3. Plaintiff Identifies No Actual Violation Involving Mercury or Lead**

Counts 29 and 31 fare no better. Plaintiff notes that anyone who "intentionally uses mercury in a manufacturing process" must report, 15 U.S.C. § 2607(b)(10)(D); 40 C.F.R. Part 713, but the cited paragraphs allege only that mercury is present, not that Apple used it in a triggering manufacturing process or failed to file a required report. (Opp'n at 24 (citing TAC ¶¶ 63, 582-87).) Defendants' chart conceding the obligation exists is not a concession it was breached. The allegations on lead fare no better. The TAC recites Part 745 and 15 U.S.C. §§ 2681-2689 (TAC ¶¶ 598-603) without alleging the presence of lead-based paint, and Plaintiff's Opposition does not address this.

**4. Count 32 Adds Nothing Beyond the Other Deficient TSCA Counts**

Count 32 alleges use and disposal of "imminently hazardous chemical substances and mixtures" under 15 U.S.C. §§ 2605-2606 and 2615, and is wholly derivative of Counts 28 through 31 and incorporates the same deficient allegations.[5] (TAC ¶¶ 604-10.) Section 2606 authorizes *only the EPA* to seek relief for an imminent hazard, and Plaintiff's Opposition does not separately defend Count 32. Plaintiff's TSCA counts identify regulated substances and recite regulatory frameworks, but again never allege facts showing Apple's use of any regulated substance violated an enforceable limit. The Court should dismiss Counts 28 through 32 with prejudice.

**G. Plaintiff's CAA Claims Rest on Past, Resolved, or Time-Barred Conduct**

Plaintiff does not dispute that a CAA citizen suit requires an ongoing violation, not a wholly past one. (Mot. at 16 (citing *Gwaltney*, 484 U.S. at 64).) Instead, she argues that Apple's "sworn 2024 certification" shows ongoing exceedances of arsine, phosphine, and boron trichloride caps, and that a January 2026 hazardous waste violation confirms the conduct continues. (Opp'n at 18 (citing TAC ¶¶ 175, 178).) But a 2024 certification describing a past reporting period alleges, at most, discrete exceedances in 2023 and 2024—precisely the "wholly past violation" *Gwaltney* forecloses. 484 U.S. at 64. Plaintiff does not allege any exceedance in 2025 or 2026, nor any fact

---

[5] Plaintiff's reliance on criminal and penalty provisions reverses her concession opposing the FAC motion that 15 U.S.C. § 2615(b) is "not enforceable by private plaintiffs as a criminal case." (Dkt. No. 74 at 20.) She now says such provisions merely "identify the gravity of the conduct." (Opp'n at 25.) Either way, the TAC itself alleges Apple "violated" § 2615(b)—contradicting her own argument. (TAC ¶¶ 579, 596, 602, 608.)

showing the 2023-2024 exceedances are reasonably likely to recur beyond her own conclusory assertion that violations are "ongoing, long-running, and expected to continue." (TAC ¶ 279.) *See Iqbal*, 556 U.S. at 678.

Plaintiff's reliance on a single January 2026 hazardous waste violation (TAC ¶ 183) fares no better because that concerns a RCRA hazardous waste finding, not a CAA emissions or permitting violation. A single, discrete event is not the kind of continuing conduct that avoids the wholly-past-violation bar. *See Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 786 (N.D. Cal. 2020). Nor does the May 2026 BAAQMD settlement help Plaintiff. Defendants do not need to prove mootness of claims that were never adequately pled as ongoing; Plaintiff's allegations confirm that BAAQMD investigated, cited, and resolved the permitting and emissions violations. (TAC ¶¶ 26, 160, 173, 342.) Her speculation that the settlement "did not address the throughput exceedances" carries no factual support, and the inference she draws is unreasonable given her own allegations that the agency resolved the violations. (Opp'n at 16.) *See Iqbal*, 556 U.S. at 678.

Plaintiff's timeliness argument also fails. She concedes that Apple has operated under an air permit since "approximately 2015" (TAC ¶ 34), and argues that this does not matter because operating-permit and emission-limit violations are discrete in each period they occur (Opp'n at 16-17), and her attempt to recast permitting and emission-limit violations as a series of discrete annual events does not rescue claims whose operative conduct—operating without a required permit, or under a permit whose limits were set years ago—began outside the five-year limitations period. *See* 28 U.S.C. § 2462; *Clarke*, 501 F. Supp. 3d at 786. Either way, Plaintiff's own TAC places the operative conduct for Counts 9 through 13 outside the limitations window, and a claim for injunctive relief based on the same time-barred conduct fails for the same reason. *Clarke*, 501 F. Supp. 3d at 788. The Court should dismiss Plaintiff's CAA claims with prejudice.

### H. Nothing Plaintiff Alleges Triggers a Reporting Obligation Under EPCRA

**Section 313 Covered Facility:** Plaintiff now argues that a 2020 regulatory filing (Form R) and the local treatment works' 2016 classification of the Facility as a semiconductor manufacturer establish that the Facility falls within a TRI-covered industry sector, despite the fact that its Research and Development registration code is exempt. (Opp'n at 22 (citing TAC ¶¶ 150, 558).) A

single historical filing under a different code does not plausibly allege that the Facility meets the *current* regulatory definition of a covered industry, particularly where the controlling registration code is exempt from TRI reporting. 40 C.F.R. § 372.23(b). Nor does a wastewater permit's classification under the Clean Water Act establish a NAICS code under an entirely separate statute. Nor does Plaintiff allege facts showing the employee-count or chemical-activity thresholds Section 313 requires for any reporting year after 2020. 42 U.S.C. § 11023(b); 40 C.F.R. §§ 372.22-.25.

**Section 304 Reportable Quantity:** Plaintiff does not dispute that an inventory shows possession, not release. (Mot. at 19.) She instead points to a 2021 phosphine leak and 2023 chlorine incidents as releases triggering a Section 304 report. (Opp'n at 23 (citing TAC ¶¶ 148, 157, 169).) But Section 304 liability requires a release of an extremely hazardous substance in excess of its specific reportable quantity, not merely a documented release, 42 U.S.C. § 11004(a)(1)-(3); 40 C.F.R. pt. 355 App'x A, and Plaintiff alleges no reportable quantity for any of these incidents. An alarm or sensor spike is a safety-system response, not a quantifiable release. Plaintiff's assertion that this presents a "question of fact" (Opp'n at 23) inverts the pleading standard. Plaintiff must allege a reportable-quantity exceedance; Defendants need not disprove one she has not pled.

**Sections 311 and 312 Quantities:** Plaintiff argues that Apple's inventories "omitted or understated" chemicals, alleging that Apple reported zero chlorine while "hundreds of pounds" were onsite. (Opp'n at 23 (citing TAC ¶¶ 144, 187, 545).) Even accepting that, Plaintiff does not allege that the omitted chlorine quantity exceeded the regulatory reporting threshold that triggers a Section 311 or 312 obligation. 40 C.F.R. § 370.10. For all these reasons, the EPCRA claims fail.

### I. The Public Nuisance Claim Is Precluded, Late, and Lacks a Special Injury

Res judicata bars Plaintiff's public nuisance claim, and judicial estoppel offers no escape. Plaintiff argues that Apple cannot contend this case and her prior employment action arise from the "same nucleus of facts" because Apple previously characterized the cases as "factually and legally distinct" for relatedness purposes. (Opp'n at 27 (citing Dkt. No. 11-1).) But whether cases are related for purposes of judicial assignment under Local Rule 3-12 is a different inquiry from whether claims arise from the same transactional nucleus of facts for purposes of res judicata. *Compare* Civil L.R. 3-12, *with W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.

1997). Apple's positions therefore are not "clearly inconsistent," as judicial estoppel requires. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). Plaintiff's TAC confirms that both claims arise from the same alleged pollution at the same Facility and resulting health effects. (*Compare* TAC ¶¶ 14, 30-31, 154-55, 612-15, *with* Dkt. No. 128-2 ¶¶ 204-05, 1053-57.) Prior judgment on the private nuisance claim bars Plaintiff from relitigating that claim under a new label. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

Plaintiff's claim is also time-barred. She does not dispute that she left the vicinity of the Facility in 2020, more than three years before this action was filed in September 2025. *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1216 (1996) (three-year statute of limitations applies to nuisance claims brought by a private party). Her argument that the nuisance "continues today" (Opp'n at 28) conflates the existence of an ongoing condition with the separate requirement that Plaintiff herself have sustained a special injury within the limitations period. Cal. Civ. Code § 3493. Her only alleged personal injuries occurred while she lived across the street from the Facility before 2020. (TAC ¶¶ 14, 30-31, 201-05.) Recent visits do not establish a timely special injury since she alleges no harm distinct from the general public's. *Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1550-52 (2009); *Wicker v. Walmart, Inc.*, 533 F. Supp. 3d 944, 948 (C.D. Cal. 2021).

Plaintiff misconstrues Defendants' reliance on Civil Code section 3482. Defendants do not contend a permit immunizes every act; the permits authorize the Facility's routine operations, and Plaintiff fails to plausibly allege that those operations exceeded applicable limits or caused her any timely, special injury. Plaintiff's reliance on *Otay Land Co. v. U.E. Ltd., L.P.*, 15 Cal. App. 5th 806 (2017), is misplaced. There, the permits at issue did not authorize the specific conduct alleged to constitute a nuisance: leaving spent lead and target debris in the environment. *Id.* at 846-47. Here, by contrast, Plaintiff challenges wastewater discharges, air emissions, and chemical use that are subject to the Facility's permits, without plausibly alleging any actionable exceedance or other ongoing violation. (*See* Sections II.E-H *supra*.) The Court should dismiss this claim with prejudice.

### J. Passive Ownership Cannot Make the Landlord Defendants Liable

Every claim against the Landlord Defendants rests on alleged knowledge of conditions at

the Facility and a failure to act. (*See, e.g.*, TAC ¶¶ 262, 264-65, 274-75.) The Opposition recasts this as "active involvement"—meetings with the City, a jointly installed tank, a joint permit application, and Mr. Jenab's role as stormwater responsible party (Opp'n at 30)—but Plaintiff nowhere alleges that any Landlord Defendant controlled or operated the tank, storage areas, venting equipment, treatment systems, or emissions sources underlying her claims. Plaintiff's own authority, *Hinds Invs., L.P. v. Angioli*, affirmed dismissal of RCRA claims against equipment manufacturers whose passive design and sale of dry-cleaning machines later used by tenants was not the "active involvement" contributor liability requires. 654 F.3d 846, 850-52 (9th Cir. 2011). Attending meetings, jointly applying for a permit, or being a stormwater responsible party is, at most, a knowledge-plus-inaction theory courts repeatedly reject as insufficient to show a passive owner "contributed to" a RCRA violation. *Ctr. for Bio. Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 953-54 (9th Cir. 2023); *L.A. Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 933-35 (C.D. Cal. 2023) (defendant must act "in its own right," not merely own property).

Nor are Plaintiff's alleged injuries fairly traceable to the Landlord Defendants rather than to Apple's independent operation of the Facility. *Lujan*, 504 U.S. at 560; *Easter v. Am. W. Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004). Her concern that the owners could re-lease the building (Opp'n at 30) is speculation about a hypothetical tenant, not a traceable injury. Her nuisance theory fails for the same reason and for those in Section II.I: Civil Code section 3483 and the owners' City Code maintenance obligations (*id.* at 31) do not give Landlord Defendants control over Apple's operations or the ability to correct the alleged hazards, and neither ownership nor general maintenance obligations establishes nuisance liability. *See Birke*, 169 Cal. App. 4th at 1548-52.

Finally, the Lindsey and Woodruff Trustees must be dismissed because Plaintiff did not serve them with the Notice or give them a sixty-day chance to act. (Dkt. No. 130 at 4-5.) That defect cannot be cured after suit is filed. *Hallstrom*, 493 U.S. at 26-27, 31. Notice to a co-owner and shared representation by counsel (Opp'n at 31-32) are no substitute for notice to the separate defendants.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's TAC with prejudice.

## A. APPENDIX: SUMMARY OF CLAIMS AND GROUNDS FOR DISMISSAL

| Count | Reason for Dismissal |
|---|---|
| 1 | EPA already prosecuted and resolved the underlying violations by consent agreement, barring citizen enforcement of the same conduct. |
| 2-3 | No ongoing endangerment; two examples were resolved by EPA's consent agreement, and the third does not allege waste reached a storm drain or creek. |
| 4-8 | No facts show Apple violated the cited regulations; the identified treatment units are exempt from TSDF permitting under 40 C.F.R. §§ 264.1(b), (g)(6). |
| 9-13 | Alleged exceedances are wholly past (2023-2024), not pled as likely to recur, resolved by the May 2026 BAAQMD settlement, and time-barred. |
| 16-17 | No exceedance alleged under either characterization of Permit SC-461B; a plaintiff must allege an exceedance, not just that a standard exists. |
| 18 | 2017 trace detections did not exceed any effluent limit and were below the Method Reporting Limit. |
| 19-20 | Discrete, wholly past 2016-2020 events, independently barred by the five-year limitations period, 28 U.S.C. § 2462. |
| 21-24 | Same defects as Counts 16-20: no alleged exceedance, and the conduct is wholly past or time-barred. |
| 25 | A single historical filing under an exempt registration code does not plausibly allege current TRI-covered status. |
| 26 | No release above a reportable quantity is alleged; a sensor spike is not a quantifiable release. |
| 27 | No allegation that omitted chemical quantities exceeded the reporting threshold triggering Section 311 or 312. |
| 28 | No rule restricts NMP use; the TAC alleges reporting compliance, not violation. |
| 29 | Alleges only that mercury is present, not a triggering use or a failure to report. |
| 30 | No allegation of TCE use after the 2024 phase-out took effect or any exposure-limit exceedance. |
| 31 | Recites the statute without alleging the Facility contains lead-based paint. |
| 32 | Wholly derivative of Counts 28-31; Section 2606 authorizes only EPA to sue. |
| 33-34 | Barred by res judicata and the three-year limitations period; no special injury distinct from the general public is alleged. |
| All | Passive ownership and knowledge-plus-inaction is not "active involvement"; injuries are not traceable to them, and the Trustees lack pre-suit notice. |
| All | Alleged injuries flow from a purposeful search for violations; Plaintiff must establish standing separately for each claim. |
| All | Notice was not properly served on designated officials and omitted several violations and theories now pressed in the TAC. |
| All | Plaintiff's new facts do not cure the pleading defects. |

Dated: October 22, 2026

MORRISON & FOERSTER LLP

By: /s/ *William F. Tarantino*
William F. Tarantino

Attorneys for Defendants
APPLE INC., KALIL JENAB, JENAB FAMILY LP, JENAB FAMILY VENTURES LLC, JENAB FAMILY TRUST, JULIA LINDSEY, as Trustee of the Lindsey Julia Family Trust and Lindsey Property Trust, and KATHLEEN WOODRUFF, as Trustee of the Kathleen Woodruff Trust